Misc. No. 2013-____, -_____

# United States Court of Appeals
# for the Federal Circuit

_____

IN RE NINTENDO CO., LTD., NINTENDO OF AMERICA INC., BEST BUY PURCHASING, LLC, BEST BUY STORES, L.P., BESTBUY.COM, LLC, BJ'S WHOLESALE CLUB, INC., COMPUSA.COM INC., GAMESTOP CORP., KMART CORPORATION, PC CONNECTION, INC., QVC, INC., RADIOSHACK CORPORATION, SEARS, ROEBUCK AND CO., TARGET CORPORATION, TIGERDIRECT, INC., TOYS "R" US-DELAWARE, INC., and TRANS WORLD ENTERTAINMENT CORPORATION

*Petitioners.*

On Petition for a Writ of Mandamus to the
United States District Court For the Eastern District of Texas
In Case Nos. 6:11-CV-496, 6:11-CV-571
Judge Leonard Davis

## PETITION FOR WRIT OF MANDAMUS

CHRISTOPHER M. JOE
BUETHER JOE &
CARPENTER, LLC
1700 Pacific Ave.
Ste. 2390
Dallas, Texas 75201
(214) 466-1272
*Attorney for Petitioner*
*RadioShack Corporation*

ARTHUR S. BEEMAN
DENTONS US LLP
525 Market Street
26th Floor
San Francisco, California
94105
(415) 882-0138
*Attorneys for Petitioners Nintendo Co., Ltd., Nintendo of America Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, BJ's Wholesale Club, Inc., CompUSA.com Inc., GameStop Corp., Kmart Corporation, PC Connection, Inc., QVC, Inc., Sears, Roebuck and Co., Target Corporation, TigerDirect, Inc., Toys "R" Us-Delaware, Inc., and Trans World Entertainment Corporation*

MARK C. NELSON
STEVEN M. GEISZLER
RICHARD D. SALGADO
DENTONS US LLP
2000 McKinney Ave., Ste. 1900
Dallas, Texas 75201
(214) 259-0935

<u>Certificate of Interest for Nintendo Defendants:</u>

1. The full name of every party represented by me is Nintendo Co., Ltd. and Nintendo of America Inc.

2. There are no other real parties in interest represented by me.

3. Nintendo of America Inc. is owned by its parent corporation Nintendo Co., Ltd. Nintendo Co., Ltd., whose stock is publically traded in Japan, owns 100% of Nintendo of America Inc. There are no parent corporations or any publicly held companies that own 10 percent or more of the stock of Nintendo Co., Ltd.

4. The names of all law firms and attorneys that appeared for the Nintendo Defendants in the district court or are expected to appear in this court are:

DENTONS US LLP: Arthur S. Beeman, Mark C. Nelson, Steven M. Geiszler, Richard D. Salgado, Robert Needham

YARBROUGH WILCOX GUNTER PLLC: Trey Yarbrough and Debby E. Gunter

<u>May 10, 2013</u>            <u>/s/ Mark C. Nelson</u>
Date                              Mark C. Nelson

<u>Certificate of Interest for Best Buy Petitioners:</u>

1.  The full name of every party represented by me is Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Purchasing, LLC.

2.  There are no other real parties in interest represented by me.

3.  Best Buy Purchasing LLC is a Minnesota limited liability company. Its parent corporation is Best Buy Enterprise Services, Inc., which is a wholly-owned subsidiary of Best Buy Co., Inc., a publicly traded company.  No publicly held corporation owns 10% or more of Best Buy Co., Inc.'s stock.  Best Buy Stores, LP, is a Virginia limited partnership, with one general partner, BBC Property Co., and one limited partner, BBC Investment Co., both of which are wholly-owned subsidiaries of Best Buy Co., Inc., a publicly traded company.  No publicly held corporation owns 10% or more of Best Buy Co., Inc.'s stock.  BestBuy.com, LLC is a Virginia limited liability company with one member, Best Buy Stores, L.P.  Best Buy Stores, LP, is a limited partnership, with one general partner, BBC Property Co., and one limited partner, BBC Investment Co., both of which are wholly-owned subsidiaries of Best Buy Co., Inc., a publicly traded company.  No publicly held corporation owns 10% or more of Best Buy Co., Inc.'s stock.

4.  The names of all law firms and attorneys that appeared for the Best Buy Petitioners in the district court or are expected to appear in this court are:

> DENTONS US LLP: Arthur S. Beeman, Mark C. Nelson, Steven M. Geiszler, Richard D. Salgado, Robert Needham
>
> YARBROUGH WILCOX GUNTER PLLC: Trey Yarbrough

May 10, 2013            /s/ Mark C. Nelson
Date                    Mark C. Nelson

<u>Certificate of Interest for BJ's Wholesale Club, Inc.</u>:

1.  The full name of every party represented by me is BJ's Wholesale Club, Inc.

2.  There are no other real parties in interest represented by me.

3.  BJ's Wholesale Club, Inc. is a privately held corporation and Beacon Holding, Inc., is its parent corporation.  Beacon Holding, is, in turn, owned by private equity funds managed by  Leonard Green & Partners, L.P. and by CVC Capital Partners,.  No publicly held corporation owns 10% or more of Beacon Holding's stock.

4.  The names of all law firms and attorneys that appeared for BJ's Wholesale Club, Inc. in the district court or are expected to appear in this court are:

    DENTONS US LLP: Arthur S. Beeman, Mark C. Nelson, Steven M. Geiszler, Richard D. Salgado, Robert Needham

    YARBROUGH WILCOX GUNTER PLLC: Trey Yarbrough

May 10, 2013               /s/ Mark C. Nelson
Date                          Mark C. Nelson

<u>Certificate of Interest for CompUSA.com Inc. and TigerDirect, Inc.:</u>

1.  The full name of every party represented by me is CompUSA.com Inc. and TigerDirect, Inc.

2.  There are no other real parties in interest represented by me.

3.  CompUSA.com Inc. and TigerDirect, Inc. are wholly-owned subsidiaries of Systemax Inc., a publically held corporation which has no parent corporation. No publicly held corporation owns 10% or more of Systemax Inc.'s stock.

4.  The names of all law firms and attorneys that appeared for CompUSA.com Inc. and TigerDirect, Inc. in the district court or are expected to appear in this court are:

> DENTONS US LLP: Arthur S. Beeman, Mark C. Nelson, Steven M. Geiszler, Richard D. Salgado, Robert Needham

> YARBROUGH WILCOX GUNTER PLLC: Trey Yarbrough

> DAVIDOFF HUTCHER & CIRTON, LLP: David W. Denenberg

<u>May 10, 2013</u>          <u>/s/ Mark C. Nelson</u>
Date                        Mark C. Nelson

<u>Certificate of Interest for GameStop Corp.:</u>

1.  The full name of every party represented by me is GameStop Corp.

2.  There are no other real parties in interest represented by me.

3.  There are no parent Corporations or any publicly held companies that own 10 percent or more of the stock of GameStop Corp.

4.  The names of all law firms and attorneys that appeared for GameStop Corp. in the district court or are expected to appear in this court are:

DENTONS US LLP: Arthur S. Beeman, Mark C. Nelson, Steven M. Geiszler, Richard D. Salgado, Robert Needham

YARBROUGH WILCOX GUNTER PLLC: Trey Yarbrough

May 10, 2013
Date

/s/ Mark C. Nelson
Mark C. Nelson

<u>Certificate of Interest for PC Connection, Inc.:</u>

1.  The full name of every party represented by me is PC Connection, Inc.

2.  There are no other real parties in interest represented by me.

3.  There are no parent corporations or any publicly held companies that own 10 percent or more of the stock of PC Connection, Inc.

4.  The names of all law firms and attorneys that appeared for PC Connection, Inc. in the district court or are expected to appear in this court are:

DENTONS US LLP: Arthur S. Beeman, Mark C. Nelson, Steven M. Geiszler, Richard D. Salgado, Robert Needham

YARBROUGH WILCOX GUNTER PLLC: Trey Yarbrough

<u>May 10, 2013</u>                    <u>/s/ Mark C. Nelson</u>
Date                                      Mark C. Nelson

<u>Certificate of Interest for QVC, Inc.:</u>

1.  The full name of every party represented by me is QVC, Inc.

2.  There are no other real parties in interest represented by me.

3.  The represented party is a wholly-owned subsidiary of Liberty Interactive Corporation.  There are no parent corporations or any publicly held companies that own 10 percent or more of the stock of Liberty Interactive Corporation.

4.  The names of all law firms and attorneys that appeared for QVC, Inc. in the district court or are expected to appear in this court are:

DENTONS US LLP: Arthur S. Beeman, Mark C. Nelson, Steven M. Geiszler, Richard D. Salgado, Robert Needham

YARBROUGH WILCOX GUNTER PLLC: Trey Yarbrough

BAKER BOTTS L.L.P.: Timothy S. Durst

<u>May 10, 2013</u>                    <u>/s/ Mark C. Nelson</u>
Date                                              Mark C. Nelson

<u>Certificate of Interest for RadioShack Corporation:</u>

1. The full name of every party represented by me is RadioShack Corporation.

2. There are no other real parties in interest represented by me.

3. There are no parent corporations or any publicly held companies that own 10 percent or more of the stock of RadioShack Corporation.

4. The names of all law firms and attorneys that appeared for RadioShack Corporation in the district court or are expected to appear in this court are:

BUETHER JOE & CARPENTER, LLC: Christopher M. Joe, Monica Nguyen Tavakoli, Niknaz Bukovcan

May 10, 2013
Date

/s/ Christopher M. Joe
Christopher M. Joe

<u>Certificate of Interest for Sears, Roebuck and Co. and Kmart Corporation:</u>

1.  The full name of every party represented by me is Sears, Roebuck and Co. and Kmart Corporation.

2.  There are no other real parties in interest represented by me.

3.  Sears, Roebuck and Co. and Kmart Corporation are wholly-owned subsidiaries of Sears Holdings Corporation.  No publicly held corporation owns 10 percent or more of the stock of Sears Holdings Corporation.

4.  The names of all law firms and attorneys that appeared for Sears, Roebuck and Co. and Kmart Corporation in the district court or are expected to appear in this court are:

      Dentons US LLP: Arthur S. Beeman, Mark C. Nelson, Steven M. Geiszler, Richard D. Salgado

      Yarbrough Wilcox Gunter PLLC: Trey Yarbrough

May 10, 2013            /s/ Mark C. Nelson
Date                        Mark C. Nelson

<u>Certificate of Interest for Target Corporation:</u>

1. The full name of every party represented by me is Target Corporation.

2. There are no other real parties in interest represented by me.

3. There are no parent corporations or any publicly held companies that own 10 percent or more of the stock of Target Corporation.

4. The names of all law firms and attorneys that appeared for Target Corporation in the district court or are expected to appear in this court are:

DENTONS US LLP: Arthur S. Beeman, Mark C. Nelson, Steven M. Geiszler, Richard D. Salgado, Robert Needham

YARBROUGH WILCOX GUNTER PLLC: Trey Yarbrough

May 10, 2013                    /s/ Mark C. Nelson
Date                            Mark C. Nelson

<u>Certificate of Interest for Toys "R" Us-Delaware, Inc.:</u>

1.  The full name of every party represented by me is Toys "R" Us-Delaware, Inc.

2.  There are no other real parties in interest represented by me.

3.  Parent corporation Toys "R" Us, Inc. Vornado Realty Trust, a publicly traded company, owns more than 10% of Toys "R" Us, Inc.'s stock.

4.  The names of all law firms and attorneys that appeared for Toys "R" Us-Delaware, Inc. in the district court or are expected to appear in this court are:

DENTONS US LLP: Arthur S. Beeman, Mark C. Nelson, Steven M. Geiszler, Richard D. Salgado, Robert Needham

YARBROUGH WILCOX GUNTER PLLC: Trey Yarbrough

May 10, 2013 _____            /s/ Mark C. Nelson _____
Date                                  Mark C. Nelson

<u>Certificate of Interest for Trans World Entertainment Corporation:</u>

1. The full name of every party represented by me is Trans World Entertainment Corporation.

2. There are no other real parties in interest represented by me.

3. There are no parent corporations or any publicly held companies that own 10 percent or more of the stock of Trans World Entertainment Corporation.

4. The names of all law firms and attorneys that appeared for Trans World Entertainment Corporation in the district court or are expected to appear in this court are:

DENTONS US LLP: Arthur S. Beeman, Mark C. Nelson, Steven M. Geiszler, Richard D. Salgado, Robert Needham

YARBROUGH WILCOX GUNTER PLLC: Trey Yarbrough


<u>May 10, 2013</u>     <u>/s/ Mark C. Nelson</u>
Date          Mark C. Nelson

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................1

RELIEF SOUGHT .........................................................................................2

ISSUE PRESENTED ......................................................................................3

STATEMENT OF FACTS..............................................................................3

      A.     UltimatePointer Included Retailers In The Cases To Maintain
             Venue In The Eastern District Of Texas. .............................................5

      B.     UltimatePointer Asserted Claims Against Non-Nintendo Products
             To Avoid Severance And Transfer. .......................................................6

      C.     UltimatePointer's Inclusion Of Claims Against Non-Nintendo
             Products Results In A Complex And Unmanageable Litigation. ............7

      D.     The District Court Denied Petitioners' Motions for Severance.............8

I.     A WRIT SHOULD ISSUE TO PREVENT PROCEDURAL
      GERRYMANDERING. ...............................................................................10

      A.     Congress Closed The Front Door:  Plaintiffs Cannot Join
             Multiple Defendants Based On Infringement Of A Common
             Patent by Different Products. ...............................................................11

      B.     UltimatePointer's Procedural Maneuvers Result In The Same
             Substantive Outcome As Direct Joinder Of 200 Defendants..............14

      C.     Courts Use Rule 21 To Elevate Substance Over Form And
             Prevent Manipulation Of Procedural Rules........................................15

      D.     The District Court Should Have Upheld Congress' Intent And
             Severed UltimatePointer's Claims Against Non-Nintendo
             Products. ...............................................................................................18

      E.     The Decision Encourages Similar Joinder In The Future....................21

II.    A WRIT SHOULD ISSUE TO PROTECT DUE PROCESS. .....................23

# TABLE OF CONTENTS
## (continued)

**Page**

    A.    The District Court Must Assure That Joinder Is Consistent With Principles Of Due Process And Fundamental Fairness........................23

    B.    The Joinder Congress Sought To Prevent Through Rule 20 And § 299 Runs Afoul Of Due Process.......................................................24

    C.    Joinder In This Litigation Deprives Petitioners Of Due Process And Fundamental Fairness. ................................................................26

III.    A WRIT SHOULD ISSUE TO PREVENT ULTIMATEPOINTER FROM CIRCUMVENTING THIS COURT'S VENUE TRANSFER RULINGS. ....................................................................................29

CONCLUSION ..........................................................................................31

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adrain v. Genetec Inc.*,
   No. 2:08-CV-423, 2009 WL 3063414 (E.D. Tex. Sept. 22, 2009) ...........................11

*Albemarle Paper Co. v. Moody*,
   422 U.S. 405 (1975) ........................................................................................................8

*Alford Safety Servs., Inc., v. Hot-Hed, Inc.*,
   No. 10-1319, 2010 WL 3418233 (E.D. La. Aug. 24, 2010) ......................................12

*Amperex Elec. Corp. v. Perry*,
   168 U.S.P.Q. 615 (7th Cir. 1970) ........................................................... 16, 17

*Better Educ., Inc. v. Einstruction Corp.*,
   No. 2-08-CV-446, 2010 WL 918307 (E.D. Tex. Mar. 10, 2010)................................11

*Ciena Corp. v. Nortel Networks Inc.*,
   No. 2:05-CV-14, 2005 WL 1189881 (E.D. Tex. 2005)........................................ 14, 19

*Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000) ............................................................................ 23, 27

*Commercial Union Ins. Co. v. Gilbane Bldg. Co.*,
   992 F.2d 386 (1st Cir. 1993)...........................................................................18

*Desert Empire Bank v. Ins. Co. of N. Am.*,
   623 F.2d 1371 (9th Cir. 1980) ............................................................................ 23, 26

*Digitech Image Tech., LLC v. Agfaphoto Holding GmbH*,
   No. 8:12-cv-1153-ODW, 2012 WL 4513805 (C.D. Cal. Oct. 1, 2012).............. 22, 23

*Eolas Techs., Inc. v. Adobe Sys., Inc.*,
   No. 6:09-CV-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010) ...........................12

*Fener v. Operating Eng'rs Const. Indus. & Misc. Pension Fund*,
   579 F.3d 401 (5th Cir. 2009) .................................................................................26

*Ford Motor Co. v. Dep't of Treasury of Indiana*,
   323 U.S. 459 (1945) ................................................................................................18

*Freeman v. Northwest Acceptance Corp.*,
  754 F.2d 553 (5th Cir. 1985) ........................................................ 15, 19

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010) ............................................................20

*Hayden v. Manning*,
  106 U.S. 586 (1883) .............................................................................16

*Hertz Corp. v. Friend*,
  130 S. Ct. 1181 (2010) .........................................................................15

*In re EMC Corp.*,
  677 F.3d 1351 (Fed. Cir. 2012)....................................................passim

*In re Fibreboard Corp.*,
  893 F.2d 706 (5th Cir. 1990) ....................................................24, 25, 27

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) ............................................................15

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009) ............................................................30

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)...................................................8, 9, 29

*In re Volkswagen of America, Inc.*,
  545 F.3d 304 (5th Cir. 2008) ................................................................30

*IPVenture, Inc. v. Acer, Inc.*,
  879 F. Supp.2d 426 (D. Del. 2012) .......................................................13

*Jones v. Flowers*,
  547 U.S. 220 (2006) .............................................................................24

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990) ......................................................14, 19

*Kern v. TXO Prod. Corp.*,
  738 F.2d 968 (8th Cir. 1984) ..................................................................8

*LG Elecs., Inc. v. Asustek Computers*,
  126 F. Supp. 2d 414 (E.D. Va. 2000) ...................................................17

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982) ...........................................................................24

*Mannatech, Inc. v. Country Life, LLC*,
    No. 3:10-CV-533-O, 2010 WL 2944574 (N.D. Tex. July 26, 2010) .........................11

*Moore v. Knowles*,
    482 F.2d 1069 (5th Cir. 1973) ........................................................... 23, 24

*Morris v. Princess Cruises, Inc.*,
    236 F.3d 1061 (9th Cir. 2001) ...............................................................16

*MyMail, Ltd. v. America Online, Inc.*,
    223 F.R.D. 455 (E.D. Tex. 2004) ........................................................ 11, 12

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989) ...........................................................................16

*Panalpina Welttransport GmBh v. Geosource, Inc.*,
    764 F.2d 352 (5th Cir. 1985) .................................................................16

*Perry v. Blum*,
    629 F.3d 1 (1st Cir. 2010) ...................................................................24

*Shifferaw v. Emson USA*,
    No. 2:09-cv-54, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ...............................17

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011) .............................................................17

*Spread Spectrum Screening, LLC v. Eastman Kodak Co.*,
    No. 10 C 1101, 2010 WL 3516106 (N.D. Ill. Sept. 1, 2010) .................................17

*Sprint Comm'ns Co. v. Theglobe.com, Inc.*,
    233 F.R.D. 615 (D. Kan. 2006) ..............................................................11

*Standard Fire Ins. Co. v. Knowles*,
    133 S. Ct. 1345 (2013) .......................................................................18

*Stencel Aero Eng'g Corp. v. United States*,
    431 U.S. 666 (1977) ...........................................................................2

*Turner v. Rogers*,
    131 S. Ct. 2507 (2011) ................................................................... 24, 28

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966) ............................................................................ 23, 24

*United States v. Union Pac. R. Co.*,
   353 U.S. 112 (1957) ..................................................................................20

*Wiav Networks, LLC v. 3Com Corp.*,
   No. C10-03448, 2010 WL 3895047 (N.D. Cal. Oct. 1, 2010) ............................ 21, 25

## STATUTES

35 U.S.C. § 299 ..........................................................................................passim

## OTHER AUTHORITIES

157 Cong. Rec. H4420-06 (daily ed. June 22, 2011) ..........................................12

157 CONG. REC. S5429 (daily ed. Sept. 8, 2011) ...............................................13

Federal Rules of Civil Procedure 20 and 21 ...............................................passim

Federal Rules of Civil Procedure 23 and 42 .....................................................25

H.R. REP. NO. 112-98 (2011), *reprinted in* 2011 U.S.C.C.A.N. 67 ............................ 11, 12

Henry J. Friendly, *Indiscretion About Discretion*, 31 EMORY L.J. 747 (1982) ........................8

James Pistorino, *Concentration of Patent Cases in Eastern District of Texas Increases in 2010*, 81 BNA Pat. Trademark & Copyright J. 803 .....................................12

# TABLE OF ABBREVIATIONS AND GLOSSARY

## *Parties*

| | |
|---|---|
| NCL | Nintendo Co., Ltd. |
| Nintendo | Defendant-Petitioners Nintendo Co., Ltd. and Nintendo of America Inc., collectively. |
| NOA | Nintendo of America Inc. |
| Petitioners | Nintendo Co., Ltd., Nintendo of America Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, BJ's Wholesale Club, Inc., CompUSA.com Inc., GameStop Corp., Kmart Corporation, PC Connection, Inc., QVC, Inc., RadioShack Corporation, Target Corporation, TigerDirect, Inc., Toys "R" Us-Delaware, Inc., Sears, Roebuck and Co., and Trans World Entertainment Corporation. |
| Retailers | Defendants Best Buy Stores, L.P., BestBuy.com, LLC, Best Buy Purchasing, LLC, BJ's Wholesale Club, Inc., CompUSA.com Inc., GameStop Corp., PC Connection, Inc., QVC, Inc., RadioShack Corporation, Sam's East, Inc., Sam's West, Inc., Sears, Roebuck and Co., Kmart Corporation, Target Corporation, TigerDirect, Inc., Toys "R" Us-Delaware, Inc., Trans World Entertainment Corporation, Wal-Mart Stores, Inc., and Wal-Mart Stores Texas, LLC. |
| UltimatePointer | Respondent-Plaintiff UltimatePointer, LLC |

## *Defined Terms*

| | |
|---|---|
| A____ | Appendix page(s). |
| AIA | Leahy-Smith America Invents Act. |
| district court | United States District Court for the Eastern District of Texas, the Honorable Leonard Davis, presiding. |

| | |
|---|---|
| Court | United States Court of Appeals for the Federal Circuit, or the Supreme Court of the United States, according to context. |
| Nintendo products | Accused products that are manufactured or developed by Nintendo. |
| Non-Nintendo products | Accused products that are not developed by Nintendo. |
| Rule 18 | Federal Rule of Civil Procedure 18. |
| Rule 20 | Federal Rule of Civil Procedure 20. |
| Rule 21 | Federal Rule of Civil Procedure 21. |

# INTRODUCTION

Over the last two years, Congress and this Court have sought to end the abusive litigation practice of joining multiple defendants in a single case simply because they allegedly infringe the same patent. Yet the district court's decision below allows a plaintiff to assert two patents against more than 2,000 accused products, manufactured or developed by some 200 different companies. The district court's decision permits the same unfairness that 35 U.S.C. § 299 of the America Invents Act ("AIA"), Federal Rule of Civil Procedure 20, and this Court's decision in *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012), prohibit.

The district court applied a two-step reasoning to reach this result. First, the district court determined that the AIA and Rule 20 allow a plaintiff to join as defendants in the same case a group of retailers (19 in the present case) and a manufacturer (Nintendo in this case) based on their purported joint and several liability, so long as the retailers sold the manufacturer's product. The district court next reasoned that, once the initial joinder threshold was satisfied based on the plaintiff's assertions of joint liability, Rule 18 permitted the plaintiff to include all other possible claims they had against the defendant retailers, including claims for selling different allegedly infringing products. This logic enabled the plaintiff to bring claims into this case related to products independently manufactured or developed by more than 200 non-party manufacturers and developers. The district court then

denied the defendants' request to sever claims under Rule 21 to prevent this manifestly unjust result.

The United States Supreme Court long ago stated that courts should not "judicially admit at the back door that which has been legislatively turned away at the front door." *Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 673 (1977). But the district court's decision here does exactly that: It lets in through a "retailer backdoor" a lawsuit with a scope and framing that both the AIA and this Court's interpretation of Rule 20 prohibit.

Congress and this Court have expressly recognized that massive, multi-defendant-product lawsuits deny individual defendants due process. The district court should have exercised its authority under Rule 21 to sever claims or parties to prevent such a result. But instead, absent mandamus, the defendants will all be thrown into the same mass pit. Not only is there significant risk of confusion, but, due to limited trial time, the defendants are unlikely to have any realistic opportunity to present individualized defenses on issues such as infringement, willfulness, and damages. And the jury will be confronted with thousands of separate infringement proofs. Moreover, on top of all this, the named defendants do not possess detailed technical information for the vast majority of the accused products because those products are manufactured or developed by non-parties.

A writ of mandamus is the only remedy available because, by the time this case is tried and appealed, the harm will have been done. A writ of mandamus will also

permit the district court to consider whether this litigation, which has no connection

to the Eastern District of Texas other than the improperly joined claims, should be

transferred to a more convenient venue.

## RELIEF SOUGHT

The Petitioners respectfully request that the Court grant this petition for a writ

of mandamus, vacate the March 27 order of the district court denying their motions

to sever for misjoinder, and remand with instructions to sever and dismiss the claims

against non-Nintendo products.  Once those claims are severed, the district court will

have the opportunity to properly determine whether the retailer defendants should

also be severed and whether the remaining litigation should be transferred to the more

convenient venue of the Western District of Washington.

## ISSUE PRESENTED

In September 2011, Congress enacted § 299 of the AIA to abrogate the

minority interpretation of Rule 20 which had allowed plaintiffs to join multiple

defendants in a single patent suit on the basis that they infringe the same patent(s).

And in May 2012, this Court made clear in *In re EMC*, that "joinder is not

appropriate" under Rule 20 "where different products or processes are involved,"

even when all the products involved are accused of infringing the same patent.  677

F.3d at 1359.  In this case, the plaintiff sidestepped both § 299 and Rule 20 to accuse

more than 2,000 products made or developed by 200 separate companies.  The

question presented is whether the district court abused its discretion by refusing to

exercise its Rule 21 authority to sever claims, when the joinder of those claims directly contradicts Congress' intent and substantially impairs Petitioners' due process rights.

## STATEMENT OF FACTS

This Petition concerns two patent lawsuits, brought by the same plaintiff against the same defendants, in the Eastern District of Texas.

Plaintiff UltimatePointer, LLC ("UltimatePointer") filed the first lawsuit against Nintendo Co., Ltd. ("NCL"), Nintendo of America Inc. ("NOA") (collectively "Nintendo"), and 19 retailers that sell Nintendo products[1] on September 15, 2011, one day before President Obama signed the AIA into law. UltimatePointer alleged that "Nintendo Wii systems, games, and related accessories" infringe United States Patent No. 7,746,321 ("the '321 Patent"). A9.[2] The '321 Patent is generally directed to a system and methods that allegedly use a handheld pointing device, a pointing line and one or more on-screen calibration points to generate data that calculates the precise three-dimensional location and orientation of the hand-held device. A122.

_____

[1] Since filing its first Complaint, UltimatePointer has added and dismissed various retailers. A469-A487; A488-A503. As of the date of this Petition, it has joined nineteen of Nintendo's retailers: Best Buy Stores, L.P., BestBuy.com, LLC, Best Buy Purchasing, LLC, BJ's Wholesale Club, Inc., CompUSA.com Inc., GameStop Corp., PC Connection, Inc., QVC, Inc., RadioShack Corporation, Sam's East, Inc., Sam's West, Inc., Sears, Roebuck and Co., Kmart Corporation, Target Corporation, TigerDirect, Inc., Toys "R" Us-Delaware, Inc., Trans World Entertainment Corporation, Wal-Mart Stores, Inc., and Wal-Mart Stores Texas, LLC (collectively "Retailers"). *Id.* This reflects UltimatePointer's pending voluntary dismissal of Dell Inc.

[2] On September 21, 2011, UltimatePointer filed an amended complaint adding allegations against Nintendo controllers and sensors. A24.

The system then allegedly uses that location and orientation information to control a mouse cursor or other features on a projected computer-generated image. *Id.*

UltimatePointer filed the second lawsuit on November 1, 2011. UltimatePointer accused the same defendants of infringing a continuation of the '321 Patent, United States Patent No. 8,049,729 ("the '729 Patent"). A42.

### A. UltimatePointer Included Retailers In The Cases To Maintain Venue In The Eastern District Of Texas.

As originally filed, UltimatePointer accused only Nintendo products of infringement. A9 (defining accused products as "Nintendo Wii systems, games, and related accessories"); A24; A56; *see also* A61 (alleging that NCL and NOA "manufacture . . . Nintendo Wii systems, games, and related accessories" and "remaining Defendants sell . . . the accused products."). This litigation was about Nintendo's products and nothing else.

UltimatePointer faced an uphill battle to maintain a suit against only Nintendo in the Eastern District of Texas because neither it nor Nintendo have any meaningful connection to that district. A123; A157. Inclusion of the Retailers as defendants based on their resale of the same Nintendo products gave UltimatePointer a nominal basis to avoid transfer. Indeed, UltimatePointer's selective inclusion of only retailers headquartered either in Texas or the eastern half of the United States and corresponding exclusion of retailers based in the western United States reflects its desire to keep this case in Texas. A192.

Other than a nominal venue hook, the Retailers add nothing to a litigation against Nintendo products. The Retailers' liability on the Nintendo products hinges solely on Nintendo's liability as manufacturer. A126; A160. The Retailers are not involved in the design, development, or manufacture of the accused products. A125; A160; A232. And, in any event, Nintendo has already agreed to indemnify the Retailers with respect to the Nintendo products in this case in the event the court imposes liability based on those products. A124; A158.

### B. UltimatePointer Asserted Claims Against Non-Nintendo Products To Avoid Severance And Transfer.

The Retailers and Nintendo moved to sever and stay claims against the Retailers as peripheral to claims against Nintendo and to transfer claims against Nintendo. A116-A137; A151-A172. UltimatePointer did not dispute that claims against the Retailers based on Nintendo products were peripheral to claims against Nintendo. Instead, UltimatePointer asserted—for the first time—that it also accused "different products with different bases of liability." A182; A205; *see also* A218; A225. Those newly accused products are made by non-party manufacturers and developers, but happen to be sold by the same Retailers. UltimatePointer argued that these new claims against different infringing products made the Retailers more than "peripheral." Later, UltimatePointer amended its complaints to reflect this broader scope. *Compare* A61 *with* A474-A475.

### C.    UltimatePointer's Inclusion Of Claims Against Non-Nintendo Products Results In A Complex And Unmanageable Litigation.

The full scope of UltimatePointer's "non-peripheral" claims against the Retailers became clear on June 8, 2012, when UltimatePointer served its Patent Infringement Contentions.  A242; A262-A264; A269-A273; A281-A368. UltimatePointer accused more than 2,000 different products manufactured or developed by more than 200 different companies.  *Id.*  Only one of those companies, Nintendo, is a named party.  *Id.*  Many of the products—such as controllers, sensor bars, and certain games—directly compete with Nintendo's products.  A241.

Despite being the only named real party in interest, Nintendo designed fewer than ten percent of the accused products.  A242; A262-A264; A269-A273; A281-A368.  Accordingly, the Retailers must now defend claims against nearly 2,000 different non-party products, despite lacking the technical information needed to do so for ninety percent of them.   A240; A244.[3]  Many of the Retailers are also still navigating a multitude of separate indemnification agreements and engaging in substantive discussions with those manufacturers, developers and distributors to coordinate regarding the many logistical issues related to indemnification.

---

[3] UltimatePointer speculates that all of the accused controllers, sensor bars, and games are the same.  A243-244; A371.  That is not correct.  Petitioners' investigation of three non-party manufactured controllers, for example, revealed that each contained different chipsets, and that those chipsets were different than the chipsets contained in the Nintendo Wii controller.  A452; A459-A468.  The evidence necessary to fully test UltimatePointer's assumption is not in the hands of the named parties but in the hands of non-parties.  A244.

### D.    The District Court Denied Petitioners' Motions for Severance.

On August 3, 2012, Petitioners moved to sever the Retailers for misjoinder, arguing that joinder of the non-party product claims violated Federal Rules of Civil Procedure 20 and 21, and the AIA.[4]  A252.  On March 27, 2013, the district court denied those motions[5] based on a technical reading of Rules 18 and 20.  A6-A7.

## STANDARD OF REVIEW

"The writ of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008).  Discretion does "not mean that the district court may do whatever pleases it."  *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984); *see Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975) (decision calling for exercise of discretion "hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review").  Instead, a court must exercise its discretion within the applicable rules of law or equity.  *See* Henry J. Friendly, *Indiscretion About Discretion*, 31 EMORY L.J. 747, 765 (1982) ("Even when a statute or rule expressly confers discretion or uses the verb 'may' or some similar locution, there is still the implicit command that the judge shall exercise his power reasonably.").

---

[4] On September 21, 2012, the district court denied Petitioners' motions to sever and transfer as moot, based on the filing of Petitioners' misjoinder motions.  A442-A443.  On October 3, 2012, Petitioners moved for reconsideration of that decision because the earlier motions turned on different legal arguments and sought different remedies for different reasons.  A444.

[5] The district court denied as moot Petitioners' motion for reconsideration.  A7.

8

A "clear" abuse of discretion exists where, as here, the court below reached a "patently erroneous result." *In re TS Tech*, 551 F.3d at 1318. Where there are no other means of correcting a patently erroneous result, the right to issuance of a writ of mandamus is "clear and indisputable." *Id.*

## REASONS WHY THE WRIT SHOULD ISSUE

This Court should issue a writ of mandamus to prevent UltimatePointer from using gerrymandered allegations to contradict Congress' purpose under § 299 and the fundamental fairness underlying the Federal Rules of Civil Procedure generally and Rule 20 in particular, to protect Petitioners' due process rights, and to close the "retailer backdoor." A writ of mandamus is the only remedy available to Petitioners to protect their due process rights. They do not have a remedy by way of an appeal from an adverse final judgment because, by the time the case is tried and appealed, the harm will have been done. *See In re EMC*, 677 F.3d at 1355 ("a defendant would not have an adequate remedy for an improper failure to transfer or sever the case by way of an appeal from an adverse final judgment because the defendant would be unable to demonstrate that," otherwise, "it would have won the case").

Rule 21 empowers a court to sever any claim or party, at any time:

> On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21. One critical use of Rule 21 is to assure that substance is weighed more heavily than form, particularly when fundamental rights and fairness are at stake.

Another critical use of Rule 21 is to assure that joinder which otherwise satisfies the technical requirements of permissive joinder also satisfies due process. The district court should have exercised its Rule 21 authority for both reasons and severed UltimatePointer's claims against the thousands of accused non-Nintendo products.

In addition, severance of the claims under Rule 21 is also necessary so that the district court can properly evaluate venue and specifically consider whether the case should be transferred to the more convenient venue of the Western District of Washington.

## I.    A WRIT SHOULD ISSUE TO PREVENT PROCEDURAL GERRYMANDERING.

As UltimatePointer explicitly stated, the accused products made by other manufacturers and developers are "different products" from Nintendo's accused products. A182; A205. Likewise, the bases for liability for those products are "different." *Id.* As a result, UltimatePointer cannot directly join together Nintendo and the hundreds of other manufacturers and developers of the thousands of other accused products in the same case under § 299 or Rule 20.[6]

Yet the district court's decision enables UltimatePointer to achieve the exact same substantive result through a backdoor by first permitting joinder of the Retailers

---

[6] UltimatePointer effectively conceded as much to the district court when it argued that the key difference between the joinder in this case and the improper joinder in another case was that UltimatePointer has not gone "a few steps further" and joined other manufacturers. A505.

under Rule 20 based on the Retailers' resale of Nintendo products, and then

exploiting Rule 18 to add claims against thousands of other products that the Retailers

also resell, all while refusing to sever parties or claims under Rule 21.  The tool

available to the district court to prevent such procedural maneuvering is Rule 21.  The

court is empowered to "sever any claim," "at any time, on just terms."  Fed. R. Civ. P.

21.  The district court clearly erred by refusing to exercise that authority in this case.

### A.    Congress Closed The Front Door:  Plaintiffs Cannot Join Multiple Defendants Based On Infringement Of A Common Patent by Different Products.

This Petition involves two patent infringement cases—one pre-AIA and one

post-AIA—that UltimatePointer filed against the same defendants.  For purposes of

joinder, however, whether the case was filed before or after AIA is a distinction

without difference.  The AIA and Rule 20, as interpreted by this Court in *In re EMC*,

set forth the same principle:  defendants cannot be joined together in one case based

solely on infringement allegations of a common patent.

Congress enacted § 299 as part of the AIA to "legislatively abrogate the

construction of Rule 20 adopted in" seven enumerated cases.  H.R. REP. NO. 112-98,

at 55 n.61 (2011), *reprinted in* 2011 U.S.C.C.A.N. 67, 85.[7]  That minority construction

---

[7] The seven enumerated cases expressly abrogated by § 299 were *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004); *Sprint Commc'ns Co. v. Theglobe.com, Inc.*, 233 F.R.D. 615 (D. Kan. 2006); *Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414 (E.D. Tex. Sept. 22, 2009); *Better Educ., Inc. v. Einstruction Corp.*, No. 2-08-CV-446,-TJW-CE, 2010 WL 918307 (E.D. Tex. Mar. 10, 2010); *Mannatech, Inc. v. Country Life, LLC*, No. 3:10-CV-533-O, 2010 WL 2944574 (N.D. Tex. July 26,

held that "some connection or logical relationship between the various transactions or occurrences" satisfied the transaction or occurrence requirement of Rule 20. *MyMail, Ltd.*, 223 F.R.D. at 456. That holding opened the door for plaintiffs to sue often dozens of defendants in a single case based on allegations that they infringed the same patent.[8] Congress sought to shut that door once and for all with the AIA. *See* 157 Cong. Rec. H4420-06 (daily ed. June 22, 2011)(stating objective of AIA to end "the abusive practice of treating as codefendants parties who make completely different products and have no relation to each other"); H.R. Rep. No. 112-98, at 55 (2011), *reprinted in* 2011 U.S.C.C.A.N. 67, 85 (stating that § 299 "addresses problems occasioned by the joinder of defendants (sometimes numbering in the dozens) who have tenuous connections to the underlying disputes in patent infringement suits").

According to the House Judiciary Committee's Report, section 299 "clarifies that joinder will not be available if it [is] based solely on allegations that a defendant has infringed the patent(s) in question." H.R. Rep. No. 112-98, at 55. Instead, accused infringers may be joined in one action *only* if the allegations of infringement arise out of the "*same* transaction, occurrence, or series of transactions or occurrences

---

2010); *Alford Safety Servs., Inc., v. Hot-Hed, Inc.*, No. 10-1319, 2010 WL 3418233 (E.D. La. Aug. 24, 2010); and *Eolas Techs., Inc. v. Adobe Sys., Inc.,* No. 6:09-CV-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010).

[8] As of 2010, the average number of defendants in a case in the Eastern District of Texas was 7.0, compared to an average of 2.9 defendants per case in the next nine jurisdictions with the highest number of patent infringement suits. James Pistorino, *Concentration of Patent Cases in Eastern District of Texas Increases in 2010*, 81 BNA Pat. Trademark & Copyright J. 803, 805 tbl.1 (2011).

relating to the making, using, . . . or selling of the *same* accused product or process."
§ 299 (emphasis added).  Both Webster's and Oxford dictionaries define "same" as
"identical."  Simply put, defendants cannot be joined together in the same case based
on allegations of infringement by *different* products.

Congress did not mean for its clarification in § 299 to signal a substantive
change of law.  Instead, Congress conformed joinder in patent infringement cases to
the correct interpretation of Rule 20 already being applied by most courts.  As Senator
Jon Kyl stated, the addition of the word "same" in reference to infringing products in
§ 299 "effectively codifies current law as it has been applied everywhere outside of the
Eastern District of Texas."  157 CONG. REC. S5429 (daily ed. Sept. 8, 2011).

This Court's holding in *In re EMC* further confirmed that § 299 sets forth the
interpretation of Rule 20 that courts should have been applying all along.  Interpreting
Rule 20 in a pre-AIA case, the Court stated, "We agree that joinder is not appropriate
where different products or processes are involved."  677 F.3d at 1359.  The Court
further explained, "The sameness of the accused products is not enough . . . .  Unless
there is an actual link between the facts underlying each claim of infringement,
independently developed products using differently sourced parts are not part of the
same transactions, even if they are otherwise coincidentally identical."  *Id.*  Other
courts have also noted that § 299 is not a radical departure from Rule 20.  *See, e.g.,*
*IPVenture, Inc. v. Acer, Inc.*, 879 F. Supp.2d 426, 429 (D. Del. 2012) (determining § 299
governs, but noting that outcome of joinder analysis "would be the same" under Rule

20).  Under either Rule 20 or § 299, there is little, if any, room for differences between accused products where unrelated defendants are joined in the same suit.

### B.    UltimatePointer's Procedural Maneuvers Result In The Same Substantive Outcome As Direct Joinder Of 200 Defendants.

A suit against retailers that accuses products they purchase from manufacturers and developers to resell is, in substance, a suit against the manufacturers and developers.  This is because a manufacturer, not a retailer, "is the true defendant" in a patent infringement action against the manufacturer's customers (*i.e.*, retailers).  *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (manufacturer "must protect its customers, either as a matter of contract, or good business, in order to avoid the damaging impact of an adverse ruling against its products").  As the Eastern District of Texas recognizes, "infringement determinations should be made in suits involving the true defendant in the plaintiff's suit" and the "true defendant" is "the party that controls the product's design."  *Ciena Corp. v. Nortel Networks Inc.*, No. 2:05-CV-14, 2005 WL 1189881, *9 (E.D. Tex. 2005) (Davis, J.).  Retailers, conversely, are merely peripheral "secondary parties" who manufacturers are often "contractually obligated to defend."  *Id.*

This principle applies with full force here: the Retailers lack technical knowledge of the accused products, must rely on manufacturers and developers to defend against UltimatePointer's claims, and may invoke indemnity agreements that require those manufacturers and developers to pay any judgment that is awarded.

Thus, while UltimatePointer has deliberately pled these cases as actions against only Nintendo and the Retailers, the cases are—in substance—cases against Nintendo and hundreds of unnamed manufacturers and developers of the non-Nintendo products.

### C. Courts Use Rule 21 To Elevate Substance Over Form And Prevent Manipulation Of Procedural Rules.

Courts "are not required to ignore the reality" of a situation simply because a party meets the minimum, technical requirements of the Federal Rules. *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555 (5th Cir. 1985). Accordingly, the Fifth Circuit has directed courts to "not permit themselves to be blinded or deceived by mere forms of law," to "refuse[] to elevate form over substance," to disregard "fictions," and to "deal with the substance of" the case. *Id.* (quoting *Chicago, Milwaukee, & St. Paul R.R. Co. v. Minn. Civic*, 247 U.S. 490, 501 (1918)). Looking to substance over form is especially necessary where "the record reveals attempts at manipulation." *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1195 (2010); *see, e.g.*, *In re Microsoft Corp.*, 630 F.3d 1361, 1363 (Fed. Cir. 2011) (explaining that "Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation").

One of a court's chief tools to prevent procedural manipulations and assure that substance trumps form is Rule 21. For example, courts have repeatedly rejected the manipulation of joinder provisions in the context of diversity jurisdiction by using Rule 21 to sever nominal defendants included by plaintiffs to prevent removal to

federal court.  *See, e.g., Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) (dismissing "dispensable nondiverse party" under Rule 21).  Such parties must be disregarded when they were included merely to defeat diversity jurisdiction.  *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (explaining that court should disregard that defendant and recognize complete diversity).  Likewise, the Supreme Court held a century ago that a plaintiff cannot use an out-of-state proxy to sue on its behalf to create diversity jurisdiction where it does not exist.  *See Hayden v. Manning*, 106 U.S. 586, 588–89 (1883) (out-of-state plaintiff was only standing in for in-state resident and that diversity jurisdiction was improperly created).   As the Fifth Circuit has explained, substance trumps procedural gamesmanship:

> Jurisdictional rules may not be used to perpetrate a fraud or ill-practice upon the court by either improperly creating or destroying diversity jurisdiction.  Were that to occur, we would not elevate form over substance but would accomplish whatever piercing and adjustments considered necessary to protect the court's jurisdiction.

*Panalpina Welttransport GmBh v. Geosource, Inc.*, 764 F.2d 352, 355 (5th Cir. 1985).

   Courts also look to substance and sever nominal or peripheral parties in patent infringement cases to prevent the abuse of permissive joinder to maintain a preferred venue.  In *Amperex Elec. Corp. v. Perry*, for example, the Seventh Circuit issued a writ of mandamus requiring the district court to sever a distributor and purchaser of an accused product from an infringement case.  168 U.S.P.Q. 615, 617 (7th Cir. 1970).  The court did so because the distributor and purchaser were "secondary or nominal

defendants" that would "be bound by the decision in a suit against" the manufacturer. *Id.* As a result of the severance, the Seventh Circuit ordered the district court to transfer the case to another venue. *Id.*

More recently, this Court upheld a lower court decision severing and staying customers of Kodak in a patent infringement case because they were "peripheral" defendants. *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349 (Fed. Cir. 2011). As the lower court explained:

> Kodak's Customers will add nothing to plaintiff's infringement action against Kodak, and it is obvious that plaintiff has attempted to establish proper venue in the Northern District of Illinois by adding Kodak's Customers to the instant action.

*Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, No. 10 C 1101, 2010 WL 3516106, *3 (N.D. Ill. Sept. 1, 2010). The court further recognized that because Kodak's customers were "merely peripheral," it was likely they did "not even understand how the product software actually works." *Id.* Accordingly, they would "not be helpful to determine whether" the accused product infringed. *Id.*; *see also Shifferaw v. Emson USA*, No. 2:09-cv-54, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) (severing claims against manufacturer, transferring claims to more convenient venue, and staying remaining claims against retailers); *LG Elecs., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 422-24 (E.D. Va. 2000) (same).

Courts also look to substance over form in other contexts. Recently, the Supreme Court looked to substance over form to determine whether a putative class

action met the jurisdictional requirement for removal to federal court. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) (rejecting nonbinding stipulation limiting damages to less than jurisdictional minimum because "to hold otherwise would . . . exalt form over substance, and run directly counter to [Congress'] primary objective"). The Supreme Court also looked to substance to enforce sovereign immunity. *See, e.g.*, *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945) (finding State was "real substantial party in interest," ignoring other parties for purposes of determining federal jurisdiction, and dismissing case based on sovereign immunity). More still, courts have looked to substance over form to enforce arbitration agreements. *See, e.g.*, *Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 390 n.6 (1st Cir. 1993) (rejecting "party's reliance upon procedural gamesmanship to avoid the dictates of an arbitration agreement" because "if arbitration defenses could be foreclosed by creative use of joinder rules, utility of such agreements would be seriously compromised.").

### D.    The District Court Should Have Upheld Congress' Intent And Severed UltimatePointer's Claims Against Non-Nintendo Products.

Like procedural manipulations in jurisdictional, venue, and other contexts, the "retailer backdoor" is improper as a means of circumventing Rule 20 and the AIA. The district court should have exercised its Rule 21 authority to sever the claims against the non-Nintendo products.

UltimatePointer's strategy is transparent:

- UltimatePointer was able to join the Retailers under § 299 and Rule 20 because they resell Nintendo's products.  In that capacity, the Retailers are nominal parties and the real party in interest is Nintendo.

- UltimatePointer exploited joinder of the Retailers as a basis to join claims under Rule 18 against thousands of products made by different manufacturers.  In this capacity, the Retailers are nothing more than proxies for the real parties in interest: the manufacturers and developers.

Either way, the Retailers are nothing more than nominal parties.  Moreover, UltimatePointer's approach is circular:  UltimatePointer insists that it can join claims against all the products the Retailers resell because the Retailers are already joined as defendants to the claims against Nintendo's products.  And UltimatePointer insists that the Retailers are not peripheral defendants and should remain joined because it has also joined the claims against the other products.   A equals B because B equals A.  But in substance, UltimatePointer's procedural maneuvers fail.

Precedent of this Court and the Eastern District of Texas makes clear that the "true defendants" are Nintendo and those unnamed manufacturers and developers.  *See Katz*, 909 F.2d at 1464; *Ciena Corp.*, 2005 WL 1189881, at *9.  That this is a case against only Nintendo and the Retailers is a fiction.  The "reality of this situation," *Freeman*, 754 F.2d at 555, is that this is a case against more than 200 "true defendants."  The district court erred by allowing UltimatePointer to use Retailers as stand-ins for the vast majority of the real parties in interest in order to pursue the result § 299 and Rule 20 forbid, thereby subjecting Petitioners to the same prohibited prejudices.

To say this joinder is "proper" because it purports to satisfy the minimum requirements of permissive joinder under § 299 and Rule 20 elevates form far above substance. One jury will be tasked with deciding whether products by Nintendo infringe the '321 and '729 Patents and whether different products, made by different manufacturers around the world, and sold to different customers, also infringe those patents. For example, the same jury that decides whether a Nintendo-designed hand-held controller infringes will also decide whether a competing hand-held controller, made by a different manufacturer with no input from Nintendo and sold to different customers, infringes. This is the result Congress expressly sought to prevent. There is no substantive difference for the manufacturers, developers, or plaintiff between this joinder and the direct joinder Congress prohibited. It is not somehow proper here simply because both products are sold at retail. UltimatePointer's attempt at procedural manipulation cannot override congressional intent. *See United States v. Union Pac. R. Co.*, 353 U.S. 112, 118 (1957) (refusing to "read legislation with a jaundiced eye," saying that "it will not do for us to tell the Congress 'We see what you were driving at but you did not use choice words to describe your purpose.'").

That the controllers and other accused products are "Wii compatible" does not change the analysis. As this Court held in an analogous context, compliance with an industry protocol does not mean that all compliant devices implement the protocol in the same way or are "logically connected." *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327-28 (Fed. Cir. 2010); *Wiav Networks, LLC v. 3Com Corp.*, No. C10-03448,

2010 WL 3895047, at *2 (N.D. Cal. Oct. 1, 2010). Different accused devices may achieve compliance with the same standard through varying designs, with different tolerances, and with competing features. *See WiAV Networks*, 2010 WL 3895047, at *2. For example, a visual inspection of the components of a Nintendo controller and three third party controllers revealed that each contained different chips and components. A452; A459-A468. Simply put, these are different products. It is thus "far from a foregone conclusion" that each of the accused products implement the "same protocol"—here, so-called "Wii compatibility"—in the same fashion. *Id.*[9]

### E.    The Decision Encourages Similar Joinder In The Future.

Plaintiffs will treat the decision below as a blueprint to circumvent § 299. The number of patent suits naming big box retailers and any other potentially nominal parties will increase because plaintiffs will be able to use those nominal parties to construct the massive, multi-defendant-manufacturer product lawsuits Congress intended to prohibit. If the district court's decision stands, the statute aimed at eliminating the mass joinder of manufacturer defendants may inadvertently encourage the mass joinder of claims against both retailer defendants and manufacturer defendants. In this case, for example, the district court's reasoning contains no limitations that would prevent UltimatePointer from also joining claims against the

---

[9] UltimatePointer, in fact, admits they do not: "[B]oth Nintendo and the third parties [the Retailers] offer Wii games that include different calibration functions." A218; *see also* A182 ("The claims against the Retailer Defendants involve different products and different basis of liability.").

Retailers' sales of the Microsoft Xbox, Sony Playstation 3, or even completely

unrelated, allegedly infringing technologies. Similarly, a plaintiff could accuse

products across entire industries—potentially bringing infringement contentions

against virtually every computer manufacturer or chip-maker, cell phone

manufacturer, or television manufacturer, all in one case—simply because those

products are sold through traditional retail channels.

This concern is not academic: another plaintiff already tried the "retailer

backdoor," unsuccessfully, to join dozens of digital camera makers and retailers in a

different court. *See Digitech Image Tech., LLC v. Agfaphoto Holding GmbH,* No. 8:12-cv-

1153-ODW, 2012 WL 4513805 (C.D. Cal. Oct. 1, 2012). In that case, the plaintiff

used the same two-step approach UltimatePointer uses here, first alleging "that certain

Defendant retailers should be joined to a Defendant manufacturer because the

Defendant manufacturer sells its accused digital camera to those Defendant retailers,"

then using the presence of those retailers to join additional claims against hundreds of

other digital cameras made by different manufacturers. *Id.* at *2. UltimatePointer

even admitted to the district court that "to be real honest," the multi-step joinder of

the manufacturer, retailers, and claims against other products sold by the retailers "is a

lot like what we have got in our case, Nintendo in the middle and different

defendants, the retailers of the particular Wii systems on the outside." A505.

UltimatePointer could only distinguish the case based on form over substance: unlike

Digitech, UltimatePointer has not taken the additional step of formally joining the

other manufacturers. *Id.* ("I honestly couldn't tell how many steps they exactly took, but they joined other manufacturers . . . ."). But the *Digitech* court exercised its Rule 21 authority and severed the retailers joined at the *first* step. 2012 WL 4513805, at \*5. While the Central District of California rejected the plaintiff's "transparent" efforts to circumvent § 299, *id.*, the district court's decision in this case leaves the door open for such manipulations in the Eastern District of Texas.

## II.    A WRIT SHOULD ISSUE TO PROTECT DUE PROCESS.

### A.    The District Court Must Assure That Joinder Is Consistent With Principles Of Due Process And Fundamental Fairness.

Even when a joinder satisfies the permissive standards of § 299, Rule 20 and Rule 18, a district court must assure it also satisfies due process. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (joinder must be "consistent with fairness to the parties"); *Moore v. Knowles*, 482 F.2d 1069, 1075 (5th Cir. 1973) ("[J]oinder must be accomplished with the requirements of due process in mind."). This means that the court "must also examine the other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (even when Rule 20 is met, permitting ten plaintiffs to testify in same trial would prejudice defendant and confuse jury).

If joinder does not satisfy due process, a court must exercise its severance authority under Rule 21. Even though severance under Rule 21 is generally discretionary, a district court does not have discretion to deny a defendant due process or otherwise impair its rights to fundamental fairness. *Perry v. Blum*, 629 F.3d 1, 16-17 (1st Cir. 2010) ("[J]oinder in a particular case must comport with the stricture of due process" including "notice and an opportunity to be heard at a meaningful time and in a meaningful manner."). Discretion under Rule 21—like a court's discretion in applying the § 1404(a) factors to decide whether to grant venue transfer—has "boundaries." *In re EMC*, 677 F.3d at 1355. One of those boundaries is due process. *See United Mine Workers*, 383 U.S. at 724; *Moore*, 482 F.2d at 1075.

### B.    The Joinder Congress Sought To Prevent Through Rule 20 And § 299 Runs Afoul Of Due Process.

According to the Supreme Court, the Due Process Clause guarantees an "opportunity for hearing appropriate to the nature of the case." *Jones v. Flowers*, 547 U.S. 220, 223 (2006). That means a party must be able to "present his case and have its merits fairly judged." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982); *see Turner v. Rogers*, 131 S. Ct. 2507, 2517-18 (2011) ("[T]o make a civil proceeding fundamentally fair," court must consider, among other factors, "risk of an erroneous deprivation" of party's property).

One example of how improper joinder may violate due process is *In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990), in which the Fifth Circuit granted

mandamus based on procedural fairness concerns. Faced with the daunting task of trying 3,000 similar asbestos cases, the Eastern District of Texas approved a creative joinder that, at first blush, satisfied the technical requirements of Federal Rules 23 and 42. *Id.* at 707-08. The Fifth Circuit found it "difficult to describe concretely any deprivation of defendants' rights," but was "left with a profound disquiet" at the prospect of trying 3,000 claims *en masse. Id.* at 709. The court questioned whether those claims were actually before the court under the Federal Rules "in any more than a fictional sense." *Id.* at 710-11 ("Ultimately, these concerns find expression in defendants' right to due process."). The Fifth Circuit concluded that the proposed procedure to try all of the claims together failed to satisfy due process, stating that "[i]t is called a trial, but it is not." *Id.* at 712.

Likewise, this Court has observed that procedural safeguards such as Rule 20 and § 299 "are designed to prevent" the procedural unfairness the Fifth Circuit rejected in *In re Fibreboard. In re EMC*, 677 F.3d at 1355. Improper joinder deprives defendants of "the meaningful opportunity to present individualized defenses on issues such as infringement, willfulness, and damages because each defendant will have limited opportunities to present its own defense to the jury." *Id.; see also WiAV Networks,* 2010 WL 3895047, at *2 ("Each defendant has simply been thrown into a mass pit with others to suit plaintiff's convenience."). To allow an end run around the Rule 20 and § 299 safeguards and bring about the same result defeats the purpose. The district court must thus exercise its discretion under Rule 21 to sever claims when

unfair joinder persists and threatens to cause the same procedural infirmities despite application of Rule 20 and § 299.  *See Desert Empire*, 623 F.2d at 1375.

### C.     Joinder In This Litigation Deprives Petitioners Of Due Process And Fundamental Fairness.

Petitioners explained to the district court that all of the due process and fairness concerns this Court has identified as consequences of misjoinder are manifest here.  A252-A254.

- Petitioners will be forced to defend against infringement claims alongside competitors with different products and possibly different strategies.

- Petitioners most likely will be pressured to compromise on litigation strategies and defense theories, even though they may have significantly different positions, and share precious time at hearings and trial.

- Petitioners may also be forced to share experts and must pay increased litigation expenses to coordinate with each other.

- With more than 200 real parties in interest, mediation or similar alternative dispute resolution will likely prove impossible due to the inability of so many parties to align schedules and interests, and work in a concerted manner.

- With limited trial time, it will not be possible to present an individualized defense with respect to non-infringement on a product-by-product basis. Other defenses relating to damages and willfulness will also need to be presented at the 30,000 foot level at best.

These are all disadvantages UltimatePointer does not have and, as a result, Petitioners also face increased settlement pressure.  *See Fener v. Operating Eng'rs Const. Indus. & Misc. Pension Fund*, 579 F.3d 401, 406 (5th Cir. 2009) (recognizing that improper pleading tactic to "force favorable settlements . . . resembles a shakedown").

The proposed trial itself will be a massive and confusing undertaking.   It is asking a great deal of a jury of laypeople to decide whether a single defendant infringed patent claims and what, if any, damages resulted.   Here, however, UltimatePointer has the burden of proof to establish that each and every limitation of each asserted patent claim is met by every product accused under each claim.   If the status quo is maintained, there will be 23 patent claims (18 from the '321 patent and 5 from the '729 patent) asserted against more than 2,000 products made by more than 200 manufacturers and developers, only one of which is a named defendant.[10]

It is unreasonable to expect a jury to hear and process complex infringement proof for so many claims against so many different (and, in many instances, competing) products.   The jury will then have to further differentiate potential damages on a defendant-by-defendant basis according to the particular defendant's sales of only a subset of the accused products.   Even the most attentive juror will struggle to track which defendants are potentially liable for each of the 2,000 accused products.   *See Coleman*, 232 F.3d at 1296.   As in *In re Fibrebroad*, such a "trial" can be "achieved only by lifting the description of the claims to a level of generality that tears them from their substantively required moorings to actual causation and discrete injury."   893 F.2d at 712.   Put another way, the jury will simply lump all of the claims,

---

[10] The daunting complexity of this case is not lessened simply because the products are compatible with the Wii system.   As explained *supra*, section I(D), these are still different products that comply with the system in different ways.

defendants, and products together.  The result is that Petitioners will not have a meaningful opportunity to present individualized defenses.  *In re EMC*, 677 F.3d at 1355.  In reality, each real party in interest will have only a few hours, at most, to present a defense to the jury, which means that "the risk of an erroneous deprivation" of each defendant's property is very high.  *Turner*, 131 S. Ct. at 2517-18.

Finally, UltimatePointer's joinder strategy injects yet another layer of complexity and potential confusion by forcing Retailers to defend products they had no role in designing or manufacturing and know little about.  The Retailers generally sell different products, to different customers, at different times.   Further, the Retailers lack the necessary technical information to defend the accused non-party products.  As a result, they will be forced to either defend this case as proxies for the non-party developers or manufacturers or attempt to bring more than 200 other parties into the case.  Meanwhile, the respective non-party developers and manufacturers will risk having their rights litigated by the Retailers, who lack the necessary knowledge to adequately defend the products and who have different and potentially competing incentives.  But the manufacturers and developers of the other products cannot be readily joined as third-party defendants under Rule 14 in the same case as Nintendo—or even as each other—because there is no "same" product or transaction to satisfy the requirements of Rule 20 or § 299.   Likewise, those same requirements prevent developers and manufacturers from intervening to protect their rights under Rule 24.

The district court gave no indication in its order that it considered any of these due process and fairness problems.  Instead, the district court appeared to base its decision exclusively on a technical application of Rule 18.  A7.  Without acknowledging limits of due process or fairness, the district court suggested that plaintiffs can accuse as many products as a technical reading of the Federal Rules lets them.  *Id.*  ("In fact, . . . Rule 18 explicitly allows for the joinder of as many claims as Plaintiff has against an opposing party.").  By focusing on only the technical application of procedural rules while disregarding its duty to safeguard due process and fairness, the district court clearly erred.

## III.  A WRIT SHOULD ISSUE TO PREVENT ULTIMATEPOINTER FROM CIRCUMVENTING THIS COURT'S VENUE TRANSFER RULINGS.

This Court has made clear that a district court abuses its discretion by, among other things, "giving inordinate weight to the plaintiff's choice of venue" and "denying transfer from a venue with no meaningful ties to the case."  *TS Tech*, 551 F.3d at 1320, 1321.

Because of its error on joinder, the district court never examined whether this litigation has any meaningful ties in the Eastern District of Texas.  It does not.  Once the improperly joined claims are stripped away and the peripheral parties properly disregarded, this is a dispute between only UltimatePointer and Nintendo.  Neither has any connection to the Eastern District of Texas.  UltimatePointer is a Delaware company with its principal place of business in Houston, Texas, in the Southern

District of Texas.  A123; A142; A157.  NCL is a Japanese corporation with its headquarters in Kyoto, Japan,  A123; A144; A157; and NOA is a Washington corporation with its headquarters and principal place of business in Redmond, Washington.  A123; A147; A157.  Many of these and other facts are already set forth in this Court's opinion in *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199-1200 (Fed. Cir. 2009).  As in the Fifth Circuit's grant of mandamus in *In re Volkswagen of America, Inc.*, "[t]he only connection between this case and the Eastern District of Texas is plaintiffs' choice to file there."  545 F.3d 304, 308 (5th Cir. 2008).

The district court maintained this case in the Eastern District of Texas based on joinder of the Retailers and claims against non-Nintendo products.  Severance of the claims against the non-Nintendo products will provide the district court the opportunity to consider, for the first time, whether the peripheral claims against the Retailers should be severed and stayed and whether the remaining litigation against only Nintendo should be transferred to the Western District of Washington.

## CONCLUSION

Petitioners respectfully request that the Court grant this petition for a writ of mandamus, vacate the March 27, 2013 order, and remand with instructions that the district court sever and dismiss the claims against non-Nintendo products.

Dated:  May 10, 2013

Respectfully submitted,

MARK C. NELSON
STEVEN M. GEISZLER
RICHARD D. SALGADO
DENTONS US LLP
2000 McKinney Ave., Ste. 1900
Dallas, Texas 75201
(214) 259-0935

ARTHUR S. BEEMAN
DENTONS US LLP
525 Market Street 26th Floor
San Francisco, California  94105
(415) 882-0138

*Attorneys for Petitioners Nintendo Co., Ltd.,
Nintendo of America Inc., Best Buy Purchasing,
LLC, Best Buy Stores, L.P., BestBuy.com,
LLC, BJ's Wholesale Club, Inc.,
CompUSA.com Inc., GameStop Corp., Kmart
Corporation, PC Connection, Inc., QVC, INC.,
Sears, Roebuck and Co., Target Corporation,
TigerDirect, Inc., Toys "R" Us-Delaware, Inc.,
and Trans World Entertainment Corporation*

CHRISTOPHER M. JOE
BUETHER JOE & CARPENTER, LLC
1700 Pacific Avenue, Suite 4750
Dallas, Texas 75201
(214) 466-1272

*Attorney for Petitioner RadioShack Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May, 2013, copies of the foregoing

Petition for Mandamus and Appendix were served upon the parties as follows:

See attached Service List

via the method indicated.

I further certify that on this 10th day of May, 2013, one original and three

copies of the Petition for Mandamus, as well as a CD-ROM containing electronic

copies of those documents, were hand delivered to the Office of the Clerk.


_____

Mark C. Nelson

| Service Upon | Party Represented | Service Method |
|---|---|---|
| The Honorable Leonard Davis<br>Chief District Judge<br>William M Steger Federal Building and<br>United States Courthouse<br>211 W. Ferguson<br>Third Floor<br>Tyler, TX 75702<br>Phone: (903) 590-1084<br>Fax: (903) 590-1190 | n/a | Overnight Courier |
| Charles J Rogers<br>Gregory Loren Maag<br>Thomas Loyd Warden<br>Conley Rose, P.C. - Houston<br>1001 McKinney Street<br>Suite 1800<br>Houston, TX 77002<br>713-238-8049<br>Fax: 713-238-8008<br>crogers@conleyrose.com<br>gmaag@conleyrose.com<br>twarden@conleyrose.com<br><br>Daymon Jeffrey Rambin<br>Elizabeth L DeRieux<br>Sidney Calvin Capshaw , III<br>Capshaw DeRieux LLP<br>114 E Commerce Avenue<br>Gladewater, TX 75647<br>903-233-4830<br>Fax: 903-236-8787<br>jrambin@capshawlaw.com<br>ederieux@capshawlaw.com<br>ccapshaw@capshawlaw.com<br><br>Michael James Guthrie<br>Conley Rose<br>5700 Granite Parkway | UltimatePointer, L.L.C. | Overnight Courier and Email |

| Service Upon | Party Represented | Service Method |
|---|---|---|
| Suite 330<br>Plano, TX 75024-6616<br>713-238-8000<br>Fax: 713-238-8008<br>mguthrie@conleyrose.com | | |
| David W Denenberg<br>Davidoff Hutcher & Citron, LLP -<br>Garden City NY<br>200 Garden City Plaza<br>Suite 315<br>Garden City, NY 11530<br>516-248-6400<br>Fax: 516-248-6422<br>dwd@dhclegal.com | CompUSA.com Inc.<br>TigerDirect, Inc. | Email |
| Christopher Michael Joe<br>Monica Nguyen Tavakoli<br>Niknaz Bukovcan<br>Buether Joe & Carpenter, LLC<br>1700 Pacific Avenue<br>Suite 2390<br>Dallas, TX 75201<br>(214) 466-1272<br>Fax: (214) 635-1828<br>Chris.Joe@bjciplaw.com<br>monica.tavakoli@bjciplaw.com<br>niky.bukovcan@bjciplaw.com | Radioshack Corporation | Overnight<br>Courier and<br>Email |
| David E Finkelson<br>McGuire Woods - Richmond<br>One James Center<br>901 E Cary St<br>Richmond, VA 23219<br>804/775-1157<br>Fax: 804/225-5377<br>dfinkelson@mcguirewoods.com<br><br>Lawrence Augustine Phillips | Wal-Mart Stores, Inc.<br>Sam's West, Inc.<br>Sam's East Inc<br>Wal-Mart Stores Texas<br>LLC | Overnight<br>Courier and<br>Email |

| Service Upon | Party Represented | Service Method |
|---|---|---|
| Michael Charles Smith<br>Siebman Reynolds Burg & Phillips LLP<br>300 N Travis St<br>Sherman, TX 75090-9969<br>903/870-0070<br>Fax: 903/870/0066<br>larryphillips@siebman.com<br>michaelsmith@siebman.com<br><br>Karen L Carroll<br>McGuire Woods - Chicago<br>77 West Wacker Dr<br>Suite 4100<br>Chicago, IL 60601<br>312/750-8646<br>Fax: 312/698-4549<br>kcarroll@mcguirewoods.com | | |
| Herbert A Yarbrough , III<br>Yarbrough Wilcox, PLLC<br>100 E. Ferguson Street<br>Ste 1015<br>Tyler, TX 75702<br>903-595-3111<br>trey@yw-lawfirm.com<br><br>Mark Christopher Nelson<br>Steven Mark Geiszler<br>Dentons US LLP - Dallas<br>2000 McKinney Avenue<br>Suite 1900<br>Dallas, TX 75201<br>214-259-0901<br>Fax: 12142590910<br>Email: mark.nelson@dentons.com<br>Email: steven.geiszler@dentons.com<br><br>Arthur S Beeman | Nintendo Co., Ltd.<br>Nintendo of America Inc.<br>Best Buy Purchasing, LLC<br>Best Buy Stores, L.P.<br>Bestbuy.Com, LLC<br>BJ's Wholesale Club, Inc.<br>CompUSA.Com Inc.<br>Gamestop Corp.<br>Kmart Corporation<br>PC Connection, Inc.<br>QVC, Inc.<br>Sears, Roebuck and Co.<br>Target Corporation<br>TigerDirect, Inc.<br>Toys "R" Us-Delaware, Inc.<br>Trans World Entertainment Corporation<br>Wal-Mart Stores, Inc.<br>Sam's West, Inc. | |

| Service Upon | Party Represented | Service Method |
|---|---|---|
| SNR Denton US LLP - San Francisco<br>525 Market Street<br>26th Floor<br>San Francisco, CA 94105<br>415/882-5000<br>Fax: 415/882-0300<br>Email:<br>arthur.beeman@dentons.com | Sam's East Inc.<br>Wal-Mart Stores Texas LLC | |

Misc. No. 2013-____, -_____

# United States Court of Appeals
# for the Federal Circuit

IN RE NINTENDO CO., LTD., NINTENDO OF AMERICA INC., BEST BUY
PURCHASING, LLC, BEST BUY STORES, L.P., BESTBUY.COM, LLC, BJ'S
WHOLESALE CLUB, INC., COMPUSA.COM INC., GAMESTOP CORP.,
KMART CORPORATION, PC CONNECTION, INC., QVC, INC.,
RADIOSHACK CORPORATION, SEARS, ROEBUCK AND CO., TARGET
CORPORATION, TIGERDIRECT, INC., TOYS "R" US-DELAWARE, INC., and
TRANS WORLD ENTERTAINMENT CORPORATION

*Petitioners.*

On Petition for a Writ of Mandamus to the
United States District Court For the Eastern District of Texas
In Case Nos. 6:11-CV-496, 6:11-CV-571
Judge Leonard Davis

## PETITIONERS' APPENDIX

CHRISTOPHER M. JOE
BUETHER JOE &
CARPENTER, LLC
1700 Pacific Avenue
Suite 2390
Dallas, TX 75201
(214) 466-1272
*Attorney for Petitioner
RadioShack Corporation*

ARTHUR S. BEEMAN
DENTONS US LLP
525 Market Street
26th Floor
San Francisco, California
94105
(415) 882-0138

MARK C. NELSON
STEVEN M. GEISZLER
RICHARD D. SALGADO
DENTONS US LLP
2000 McKinney Ave., Ste. 1900
Dallas, Texas 75201
(214) 259-0935

*Attorneys for Petitioners Nintendo Co., Ltd., Nintendo of America
Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P.,
BestBuy.com, LLC, BJ's Wholesale Club, Inc., CompUSA.com Inc.,
GameStop Corp., Kmart Corporation, PC Connection, Inc., QVC,
Inc., Sears, Roebuck and Co., Target Corporation, TigerDirect, Inc.,
Toys "R" Us-Delaware, Inc., and Trans World Entertainment
Corporation*

Petitioners' Appendix to Petition for a Writ of Mandamus to the
United States District Court For the Eastern District of Texas
In Case Nos. 6:11-CV-496, 6:11-CV-571
Judge Leonard Davis

**Table of Contents**

| Dkt. No. | Date | Description | Pages |
|---|---|---|---|
| 257 | 3/27/2013 | Order | A1-A7 |
| 1 | 9/15/2011 | Complaint for Patent Infringement, 6:11-cv-496 | A8-A22 |
| 3 | 9/21/2011 | First Amended Complaint for Patent Infringement, 6:11-cv-496 | A23-A40 |
| 1 | 11/1/2011 | Complaint for Patent Infringement, 6:11-cv-571 | A41-A54 |
| 79 | 12/30/2011 | Second Amended Complaint for Patent Infringement, 6:11-cv-496 | A55-A115 |
| 83 | 1/20/2012 | Defendants' Motion to Sever and Transfer the Claims Against Nintendo and To Stay the Claims Against the Retailer Defendants, 6:11-cv-496 | A116-A137 |
| 83-1 | 1/20/2012 | Declaration of Trey Yarbough in Support of Defendants' Motion | A138-A143 |
| 83-6 | 1/20/2012 | Declaration of Toshiro Hibino in Support of Defendants' Motion | A144-A146 |
| 83-7 | 1/20/2012 | Declaration of Jacqualee Story in Support of Defendants' Motion | A147-A150 |
| 9 | 1/20/2012 | Defendants' Motion to Sever and Transfer the Claims Against Nintendo and To Stay the Claims | A151-A172 |

| Dkt. No. | Date | Description | Pages |
|---|---|---|---|
| | | Against the Retailer Defendants, 6:11-cv-571 | |
| 130 | 2/20/2012 | Plaintiff UltimatePointer, L.L.C.'s Response in Opposition to Defendants' Motion to Sever and Transfer The Claims Against Nintendo and To Stay the Claims Against the Retailer Defendants, 6:11-cv-496 | A173-A194 |
| 22 | 2/20/2012 | Plaintiff UltimatePointer, L.L.C.'s Response in Opposition to Defendants' Motion to Sever and Transfer The Claims Against Nintendo and To Stay the Claims Against the Retailer Defendants, 6:11-cv-571 | A195-A214 |
| 132 | 3/12/2012 | Plaintiff UltimatePointer, L.L.C.'s Sur-reply in Opposition to Defendants' Motion to Sever and Transfer The Claims Against Nintendo and To Stay the Claims Against the Retailer Defendants, 6:11-cv-496 | A215-A222 |
| 31 | 3/12/2012 | Plaintiff UltimatePointer, L.L.C.'s Sur-reply in Opposition to Defendants' Motion to Sever and Transfer The Claims Against Nintendo and To Stay the Claims Against the Retailer Defendants, 6:11-cv-571 | A223-A230 |
| 134 | 4/12/2012 | Defendants' Sur-Sur-Reply In Support of Their Motion to Sever and Transfer The Claims Against Nintendo and To Stay the Claims | A231-A235 |

| Dkt. No. | Date | Description | Pages |
|---|---|---|---|
| | | Against the Retailer Defendants, 6:11-cv-496 | |
| 167 | 8/3/2012 | Defendants' Motion to Sever the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and To Dismiss Or, Alternatively, To Stay the Litigation Against the Retailer Defendants | A236-A257 |
| NA | 6/8/2012 | UltimatePointer L.L.C.'s Disclosure of Asserted Claims and Infringement Contentions Pursuant to Local Rule 3-1 and 3-2, 6:11-cv-496 | A258-A268 |
| NA | 6/8/2012 | Exhibit A  -Controllers | A269-A273 |
| NA | 6/8/2012 | Exhibit B - Nintendo Controllers | A274-A275 |
| NA | 6/8/2012 | Exhibit C - Controllers with Gyro | A276-A278 |
| NA | 6/8/2012 | Exhibit D - Nintendo Controllers with Gyro | A279-A280 |
| NA | 6/8/2012 | Exhibit E - Sensor Bars | A281-A284 |
| NA | 6/8/2012 | Exhibit F - Wii Games | A285-A364 |
| NA | 6/8/2012 | Exhibit G - Wii Games with Single Calibration | A365-A366 |
| NA | 6/8/2012 | Exhibit H - Wii Games with Multiple Calibration | A367-A368 |
| NA | 6/8/2012 | Exhibit I - '321 Patent Claim Chart | A369-A423 |
| NA | 6/8/2012 | Exhibit I - '729 Patent Claim Chart | A424-A441 |
| 134 | 9/12/2012 | Order | A442-A443 |

| Dkt. No. | Date | Description | Pages |
|---|---|---|---|
| 136 | 10/3/2012 | Defendants' Motion to Reconsider September 21, 2012 Orders Denying as Moot Defendants' Motion to Sever and Transfer The Claims Against Nintendo and To Stay the Claims Against the Retailer Defendants | A444-A449 |
| 242 | 12/20/2012 | Defendants' Reply in Support of Motion to Enforce Patent Rule 3-1 | A450-A458 |
| 242-1 | 12/20/2012 | Exh 1 to Defendants' Reply in Support of Motion to Enforce PR 3-1 | A459-A468 |
| 189 | 10/9/2012 | Third Amended Complaint for Patent Infringement, 6:11-cv-496 | A469-A487 |
| 139 | 10/9/2012 | Second Amended Complaint for Patent Infringement, 6:11-cv-571 | A488-A503 |
| NA | 1/17/2013 | Excerpt from Transcript of Markman Hearing | A504-A506 |
| NA | 5/6/2013 | 6:11-cv-496 District Court Docket Sheet | A507-A551 |
| NA | 5/6/2013 | 6:11-cv-671 District Court Docket Sheet | A552-A586 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| ULTIMATEPOINTER, L.L.C., | § | |
| | § | CASE NO. 6:11-CV-496  LED |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | **JURY TRIAL** |
| NINTENDO CO., LTD. *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| ULTIMATEPOINTER, L.L.C., | § | |
| | § | CASE NO. 6:11-CV-571  LED |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | **JURY TRIAL** |
| NINTENDO CO., LTD. *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

Before the Court are: Defendants' Motion to Sever the Retailer Defendants for Misjoinder Pursuant to Federal Rules of Civil Procedure 20 and 21 and to Dismiss or, alternatively, to Stay the Litigation Against the Retailer Defendants (6:11-cv-496, Dkt. No. 167; 6:11-cv-571, Dkt. No. 119); and Defendants' Motion to Reconsider the September 21, 2012 Order Denying as Moot Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants (6:11cv496, Dkt. No. 186; 6:11cv571, Dkt. No. 136). After reviewing the parties' briefing and hearing oral argument, the Court **DENIES** the Motions.

**BACKGROUND**

On September 15, 2011, one day before the America Invents Acts ("AIA") went into effect, Plaintiff UltimatePointer, LLC ("UltimatePointer") filed a first suit against Nintendo Co., Ltd. and Nintendo of America (collectively, "Nintendo"), and seventeen Retailer Defendants for infringement of U.S. Patent No. 7,746,321 ("'321 patent") by making, using, selling, offering to sell, and/or importing Nintendo Wii systems, games, and related accessories. On September 21, 2011, UltimatePointer filed an amended complaint adding allegations against Nintendo controllers and sensors, and adding two Retailer Defendants. On November 1, 2011, UltimatePointer obtained a continuation patent, U.S. Patent No. 8,049,729 ("'729 patent"), and filed a second infringement case against the same defendants and the same products. UltimatePointer accuses two classes of products of infringement: Nintendo Wii products manufactured by Nintendo and sold by the Retailer Defendants; and Wii-compatible products manufactured by third parties and sold by the Retailer Defendants. Nintendo's Wii System is composed of a game console, a sensor bar, a controller, and included games.

On January 10, 2012, Defendants moved to sever and stay the claims against the Retailer Defendants, and to transfer the remaining claims against Nintendo to the Western District of Washington ("First Motion to Sever"). Dkt. No. 83. Defendants argued that UltimatePointer's claims identified only Nintendo products and, therefore, adjudication of the claims against Nintendo would dispose of the claims against the Retailer Defendants. Thus, Defendants contended that the claims against the Retailer Defendants were peripheral and should be severed and stayed. Plaintiff responded that its claims included both Nintendo products and accessories and games not made by Nintendo, but sold by the Retailer Defendants. So, the resolution of the claims against Nintendo would not dispose of all of the claims against the Retailer Defendants.

After the First Motion to Sever was fully briefed by the parties, Plaintiff served its Preliminary Infringement Contentions pursuant to Patent Local Rule 3-1 and 3-2. Dkt. No. 149. Defendants, in turn, filed a new Motion to Sever for Misjoinder ("Second Motion to Sever"). In light of the new motion, the Court denied as moot the First Motion to Sever and set the Second Motion to Sever for hearing. Defendants then filed a Motion to Reconsider the September 21, 2012 Order Denying the First Motion to Sever as Moot ("Motion to Reconsider"). Dkt. No. 186. Defendants argue that their First Motion to Sever was not moot because when the case was filed, Nintendo was the single real party in interest, but Plaintiff then expanded the scope of the litigation when they served Infringement Contentions accusing some 1,800 non-Nintendo products. Dkt. No. 186 at 3. However, Defendants recognize that the Court must resolve the Second Motion to Sever before resolving Defendants' First Motion to Sever.[1] Thus, the Court set both the Motion to Reconsider and the Second Motion to Sever for hearing on January 17, 2013.

## APPLICABLE LAW

Defendants may be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in this action." FED. R. CIV. P. 20(a)(2). The Federal Circuit recently clarified that, in patent cases, "joinder is not appropriate where different products and processes are involved." *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012). However, "[j]oinder of independent defendants is . . . appropriate where the accused products or processes are the same in respects relevant to the patent." *Id.* "[I]ndependent defendants satisfy the transaction-or-

---

[1] Defendants request that the Court grant the relief requested in the following manner: first, the Court should decide Defendants' Second Motion to Sever and sever and dismiss all claims involving non-party products; second, as the remaining claims will be only against Nintendo products, the Court should grant Defendants' First Motion to Sever and sever the Retailer Defendants from the case against Nintendo; and third, the Court should transfer the case against Nintendo to the Western District of Washington.

occurrence test of Rule 20 when there is a logical relationship between the separate causes of action. The logical-relationship test is satisfied if there is a substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant. In other words, the defendants' allegedly infringing acts, which give rise to the individual claims of infringement, must share an aggregate of operative facts." *Id.* at 1358. "It is clear that where defendants are alleged to be jointly liable, they may be joined under Rule 20 because the transaction-or-occurrence test is always satisfied." *Id.* at 1356. The Rules encourage joinder of claims, parties, and remedies, in the broadest possible scope of action. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

However, *In re EMC* does not govern the cases filed after the passage of the America Invents Act, 35 U.S.C. § 299. *Id.* at 1356. The AIA, which became effective September 16, 2011, codified new rules governing the joinder of parties in civil actions "arising under any Act of Congress relating to patents." 35 U.S.C. § 299. Pursuant to the AIA, parties accused of patent infringement may be joined in one action as defendants if: (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and (2) questions of fact common to all defendants or counterclaim defendants will arise in the action. 35 U.S.C. § 299. Effectively then, the AIA adds to the first prong of Rule 20 a requirement that the transaction or occurrence relate to the making, using, or selling of the same patented product or process.

Once properly joined, "[a] party asserting a claim, counterclaim, cross-claim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." FED. R. CIV. P. 18(a).

## ANALYSIS

### *Motion to Sever for Improper Joinder*

Defendants seek severance for misjoinder because "[t]here is no substantial evidentiary overlap between the patent infringement claims against the Nintendo products and the patent infringement claims against the non-party products." Dkt. No. 167 at 1. Defendants argue that Plaintiff accuses not only Nintendo products, but also hundreds of products made by roughly 200 other, non-party manufacturers and, therefore, this case presents the classic misjoinder situation where different manufacturers' products are accused of infringing the same patent in a single case. *Id.* Defendants contend that the Retailer Defendants are peripheral with respect to the Nintendo products, and misjoined as to the non-party products because more than 2,000 different accused products made by approximately 200 non-parties are lumped together in a single case. *Id.* at 2.

UltimatePointer responds that the Retailer Defendants are properly joined under Rule 20 because it asserts a common claim for infringement—sales of Nintendo Wii systems—against all parties. Dkt. No. 173 at 1. UltimatePointer asserts that the parties' manufacture, sale, and distribution of an infringing device makes them joint tort-feasors, properly joined under Rule 20. *Id.* at 2. Thus, UltimatePointer argues that there is at least one claim for relief against all Defendants and the same-transaction-or-occurrence test for proper joinder is satisfied. *Id.* at 1. UltimatePointer further argues that asserting additional claims for infringement against only the Retailer Defendants does not defeat proper joinder, because Rule 20 only requires the same

transaction or occurrence with respect to *any* right to relief, not all. *Id.* at 3. Plaintiff argues that Rule 18 of the Federal Rules of Civil Procedure governs joinder of claims and allows a party to join as many claims as it has against an opposing party, even if the claims do not involve common questions of law or fact and arise from unrelated transactions. *Id.* at 6.

Rule 20 requires only that any right to relief that arises out of the same transaction or occurrence be asserted against all defendants. FED. R. CIV. P. 20(a)(2). When there is a substantial evidentiary overlap in the facts giving rise to a right to relief against each defendant, defendants are properly joined.[2] *In re EMC Corp.*, 677 F.3d at 1358. UltimatePointer accuses each defendant of infringement by making, using, selling, or offering to sell Nintendo Wii systems. Thus, there is at least one common claim of patent infringement against all defendants for the same accused product.

This is not the classic misjoinder situation where different defendants, making different products, are accused of infringing the same patent in a single case. Both Rule 20 and the AIA allow for the joinder of two parties accused of patent infringement if *any* right to relief is asserted against the parties jointly, severally, or in the alternative. FED. R. CIV. P. 20(a)(2); 35 U.S.C. § 299. The word "any" indicates that so long as joinder is appropriate for one or more

---

[2] As an ancillary matter, UltimatePointer filed the instant cases both before and after the AIA went into effect with new guidelines for determining whether joinder of parties is appropriate. Therefore, both the AIA and the pre-AIA joinder requirements may apply. Several courts have recognized that the newly enacted statute requires a higher standard for joinder. *Digitech Image Techs., LLC v. Agfaphoto Holding GmbH,* No. 8:12-cv-1153-ODW, 2012 U.S. Dist. LEXIS 142034 (C.D. Cal. Oct. 1, 2012) at *7; *Omega Patents, LLC v. Skypatrol,* LLC, No. 1:11-cv-24201-KMM, 2012 WL 2339320 (S.D. Fla. June 19, 2012) at *1; *Motorola Mobility, Inc. v. Tivo, Inc.*, No. 5:11-cv-53-JRG, 2012 WL 2935450 (E.D. Tex. July 18, 2012) at *1. The AIA prohibits joinder unless the relief arises out of the same transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process. 35 U.S.C. § 299. *In re EMC* guides joinder of parties in patent cases filed before the AIA's enactment: to be properly joined, "the defendants' allegedly infringing acts, which give rise to the individual claims of infringement, must share an aggregate of operative facts." *In re EMC Corp.*, 677 F.3d at 1358. Nonetheless, the Federal Circuit recognized that "where defendants are alleged to be jointly liable, they may be joined under Rule 20 because the transaction-or-occurrence test is always satisfied." *Id.* at 1356. Thus, the transaction-or-occurrence test is satisfied under both the AIA and *In re EMC* when, as here, there is an allegation that defendants are jointly liable for the manufacture and sale of the *same* product. Accordingly, under both the AIA and the pre-AIA standard, the Retailer Defendants are properly joined.

claims, misjoinder will not result from the presence of other independent infringement claims against a defendant. In fact, because Defendants are properly joined, Rule 18 explicitly allows for the joinder of as many claims as Plaintiff has against an opposing party. FED. R. CIV. P. 18(a). Since the parties are not improperly joined, the Court will not sever the Retailer Defendants. Accordingly, the Court **DENIES** Defendants' Second Motion to Sever.

***Motion to Reconsider***

Defendants recognize in the Motion to Reconsider that the Court must grant Defendants' Second Motion to Sever if they are to receive the relief sought in their First Motion to Sever—stay of the claims against the Retailer Defendants and transfer of the case against Nintendo to the Western District of Washington. Dkt. No. 186 at 4. Because the Retailer Defendants are properly joined, the Court will not sever them. Accordingly, the Court **DENIES** Defendants' Motion to Reconsider.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Sever the Retailer Defendants for Misjoinder and **DENIES** Defendants' Motion to Reconsider the September 21, 2012 Order Denying as Moot Defendants' Motion to Sever.

**So ORDERED and SIGNED this 27th day of March, 2013.**



**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | § | |
|---|---|---|
| ULTIMATE POINTER, L.LC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| NINTENDO CO., LTD., | § | CIVIL ACTION NO.  6:11-cv-496 |
| NINTENDO OF AMERICA INC., | § | |
| JJ GAMES, LLC, | § | |
| GAME STOP CORPORATION, | § | |
| BESTBUY CO., INC., | § | |
| SEARS, ROEBUCK AND CO., | § | |
| KMART CORPORATION, | § | |
| TARGET CORPORATION, | § | |
| WAL-MART STORES, INC., | § | |
| SAM'S WEST, INC., | § | |
| RADIOSHACK CORPORATION, | § | |
| TOYS R US, INC., | § | |
| DELL INC., | § | |
| QVC, INC., | § | |
| TRANS WORLD ENTERTAINMENT | § | |
| CORPORATION, | § | |
| BJ'S WHOLESALE CLUB, INC., | § | |
| PC CONNECTION, INC., | § | |
| COMPUSA.COM, INC., and | § | |
| TIGER DIRECT, INC., | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |
| | § | |

## <u>COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiff UltimatePointer, L.L.C., files this Complaint for Patent Infringement against

Defendants Nintendo Co., Ltd.; Nintendo of America Inc.; JJ Games, LLC; GameStop

Corporation; Best Buy Co., Inc.; Sears, Roebuck and Co.; Kmart Corporation; Target

Corporation; Wal-Mart Stores, Inc.; Sam's West, Inc.; RadioShack Corporation; Toys R Us, Inc.;

Dell Inc.; QVC, Inc.; Trans World Entertainment Corporation; BJ's Wholesale Club, Inc.; PC Connection, Inc.; CompUsa.com, Inc.; and Tiger Direct, Inc. (collectively the "Defendants"). In support, Plaintiff UltimatePointer, L.L.C. alleges as follows:

## INTRODUCTION

1.      This is an action for patent infringement brought under 35 U.S.C. § 271 for Defendants' infringement of United States Patent No. 7,746,321 ("the '321 patent) by making, using, selling, offering to sell, and/or importing Nintendo Wii systems, games, and related accessories (the "accused products"), in this Judicial District and elsewhere in the United States, without authorization of the owner of the '321 patent, Plaintiff UltimatePointer, L.L.C.

## THE PARTIES

2.      Plaintiff UltimatePointer, L.L.C. ("UltimatePointer") is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business at 5038 Creekbend Drive, Houston, Texas 77035.

3.      Defendant Nintendo Co., Ltd. ("Nintendo Japan") is a Japanese corporation with a regular place of business at 11-1 Kamitoba hokotate-cho, Minami-ku, Kyoto 601-8501 Japan. Nintendo Japan is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas. Nintendo Japan may be served with process as provided under Rule 4(d) of the Federal Rules of Civil Procedure, or under Rule 4(f) of the Federal Rules of Civil Procedure effected pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

4.      Defendant Nintendo of America Inc. ("Nintendo America") is a corporation organized and existing under the laws of the State of Washington, with a regular place of business at 4820 150th Avenue N.E., Redmond, Washington 98052. Nintendo America is

registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

5.    Defendant JJ Games, LLC ("JJ Games") is a limited liability company organized and existing under the laws of the State of Colorado with a regular place of business at 2995 South Tejon Street, Englewood, Colorado 80110.  JJ Games is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas.  JJ Games may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

6.    Defendant GameStop Corporation ("GameStop") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 625 Westport Parkway, Grapevine, Texas 76051.  GamesStop is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

7.    Defendant Best Buy Co., Inc. ("Best Buy") is a corporation organized and existing under the laws of the State of Minnesota with a regular place of business at 7601 Penn Ave South, Richfield, Minnesota 55423.  Best Buy is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

8.    Defendant Sears, Roebuck and Co. ("Sears") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Sears is registered to do business in Texas and may be

served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

9.     Defendant Kmart Corporation ("Kmart") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179. Kmart has a regular place of business in Texas at 1100 McCann Road, Longview, Texas 75601, but has not appointed an agent for service of process in Texas. Kmart may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

10.     Defendant Target Corporation ("Target") is a corporation organized and existing under the laws of the State of Minnesota with a regular place of business at 1000 Nicollet Mall, Minneapolis, MN 55403. Target is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

11.     Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716. Wal-Mart is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

12.     Defendant Sam's West, Inc. ("Sam's") a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 SW 8th Street, Bentonville, Arkansas 72716. Sam's is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

13.     Defendant RadioShack Corporation ("RadioShack") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 300 Trinity Campus Circle, Fort Worth, Texas 76102.  RadioShack is registered to do business in Texas and may be served with process by serving its registered agent for service of process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

14.     Defendant Toys R Us, Inc. ("Toys R Us") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at One Geoffrey Way, Wayne, New Jersey 07470.  Toys R Us is registered to do business in Texas and has a regular place of business in Texas located at 414 East Southeast Loop 323, Tyler, Texas 75701. However, Toys R Us has not appointed an agent for service of process in Texas.  Toys R Us may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

15.     Defendant Dell Inc. ("Dell") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 1 Dell Way, Round Rock, Texas 78682.  Dell is registered to do business in Texas and may be served with process by serving its registered agent for service of process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

16.     Defendant QVC, Inc. ("QVC") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 12300 Liberty Boulevard, Englewood, Colorado 80112.  QVC is registered to do business in Texas and has a regular place of business in Texas located at 9855 Westover Hills Boulevard San Antonio, Texas 78251. However, QVC has not appointed an agent for service of process in Texas.  QVC may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

17.     Defendant Trans World Entertainment Corporation ("Trans World") is a corporation organized and existing under the laws of the State of New York with a regular place of business at 38 Corporate Circle, Albany, New York 12203.  Trans World is registered to do business in Texas and has a regular place of business in Texas located at 16535 Southwest Freeway, Sugar Land, Texas 77479.  However, Trans World has not appointed an agent for service of process in Texas.  Trans World may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

18.     Defendant BJ's Wholesale Club, Inc. ("BJ's Wholesale") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 25 Research Drive, Westborough, Massachusetts 01581.  BJ's Wholesale is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas.  BJ's Wholesale may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

19.     Defendant PC Connection, Inc. ("PC Connection") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 730 Milford Road, Merrimack, New Hampshire 03054.  PC Connection is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas.  PC Connection may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

20.     Defendant CompUsa.com, Inc. ("CompUsa") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 7795 West Flagler Street, Suite 35, Miami, Florida 33144.  CompUsa is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for

426463 v1/2882.00100

service of process in Texas.  CompUsa may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

21.     Defendant Tiger Direct, Inc. ("Tiger Direct") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 7795 West Flagler Street, Suite 35, Miami, Florida 33144.  Tiger Direct is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas.  Tiger Direct may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

22.     Defendants Nintendo Japan and Nintendo America manufacture, import, sell, offer for sale, and/or import the accused Nintendo Wii systems, games, and related accessories. The remaining Defendants sell, offer for sale, and/or import the accused products.

## JURISDICTION AND VENUE

23.     The Court has original and exclusive federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Act, 35 U.S.C. § 271.  Venue is proper in this Judicial District pursuant to 28 U.S.C. 1400(b) because each of the Defendants resides in this District, is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c), and/or has committed or induced acts of infringement and has a regular and established place of business in this District.

24.     Each of the Defendants is subject to this Court's specific personal jurisdiction in compliance with the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because each Defendant has sold accused products in the State of Texas,  actively induced infringement in Texas, and/or has established regular and systematic business contacts with the State of Texas.

**COUNT ONE**
**INFRINGEMENT OF UNITED STATES PATENT NO. 7,746,321**

25.      On June 29, 2010, U.S. Patent No. 7,746,321 ("the '321 patent") was duly and lawfully issued for an invention entitled "Easily Deployable Interactive Direct-Pointing System and Presentation Control System and Calibration Method Therefor."

26.      The '321 patent was issued from United States Patent Application Serial No. 11/135,911, which was published on December 8, 2005 as United States Patent Application Publication No. 2005/0270494 A1 ("the '494 publication").

27.      By written assignment from the sole inventor, Plaintiff UltimatePointer owns all right, title, and interest in and to the '321 patent, and all rights arising thereunder, including the right to bring suit and recover damages for past infringement.  A true and correct copy of the '321 patent is attached hereto as Exhibit A.

28.      Nintendo Japan has directly infringed and continues to directly infringe the '321 patent by making, using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including resellers and end users) to use, sell, offer for sale, and/or import the accused products.  Nintendo Japan's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

29.      Nintendo America has directly infringed and continues to directly infringe the '321 patent by making, using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others  (including resellers and end users) to use, sell, offer for sale, and/or import the accused products.  Nintendo America's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

30.     Prior to the issuance of the '321 patent or the filing of this action, Nintendo America was expressly and specifically notified of the existence of the '494 publication and that that its unauthorized manufacturing, sales, and importation of the accused products would infringe any patent issued with claims as published in the '494 publication.

31.     Prior to the filing of this action, Nintendo America was further expressly and specifically notified of the issuance and existence of the '321 patent, and that that its unauthorized manufacturing, sales, and importation of the accused products was an infringement of the '321 patent.

32.     Nintendo America refused to cease its infringement after notice of the '494 publication and notice of the '321 patent.   Instead, Nintendo America continued and still continues to deliberately infringe the '321 patent.   Nintendo America's infringement of the '321 patent was and is willful and in bad faith, entitling UltimatePointer to increased damages under 35 U.S.C. § 284 and to reasonable attorney fees under 35 U.S.C. § 285.

33.     JJ Games has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.   JJ Games' actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

34.     GameStop has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. GameStop's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

35.     Best Buy has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  Best Buy's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

36.     Sears has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Sears's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

37.     Kmart has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Kmart's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

38.     Target has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Target's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

39.     Wal-Mart has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing

others (including end users) to use, sell, offer for sale, and/or import the accused products.  Wal-Mart's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

40.     Sam's has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Sam's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

41.     RadioShack has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  RadioShack's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

42.     Toys R Us has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  Toys R Us's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

43.     Dell has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Dell's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

44.     QVC has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. QVC's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

45.     Trans World has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  Trans World's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

46.     BJ's Wholesale has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  BJ's Wholesale's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

47.     PC Connection has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  PC Connection's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

48.    CompUsa has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. CompUsa's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

49.    Tiger Direct has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Tiger Direct's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

50.    Defendants' infringement of the '321 patent has caused harm and damage to UltimatePointer. Pursuant to 35 U.S.C. § 284, UltimatePointer is entitled to damages adequate to compensate it for Defendants' infringement in an amount to be determined at trial, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the court.

51.    Nintendo America infringed and continues to infringe claims from the '321 patent that were present in the '494 publication. Pursuant to 35 U.S.C. § 154(d), UltimatePointer is therefore entitled to a reasonable royalty for Nintendo America's infringement beginning on the date of publication of the '494 publication.

**JURY DEMAND**

52.    UltimatePointer hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff UltimatePointer requests the entry of a judgment in its favor and against Defendants including the following:

a)      A finding that Defendants have directly and/or indirectly infringed the '321 patent either literally or under the doctrine of equivalents;

b)      An award of the damages due to Defendants' infringement of the '321 patent, including a reasonable royalty for Nintendo America's infringement after publication of the '494 publication;

c)      A finding that Defendant Nintendo America's infringement was willful and an award of enhanced damages since issuance of the '321 patent pursuant to 35 U.S.C. § 284;

d)      A finding that the remaining Defendants' infringement was willful since acquiring knowledge of the '321 patent and continuing to persist in infringement in bad faith, which is a date no later than the filing of this Complaint;

e)      A finding that this case is exceptional, and an award of reasonable attorney fees to UltimatePointer pursuant to 35 U.S.C. § 285;

f)      An award of pre-judgment and post-judgment interest as allowed by law;

g)      Costs of court; and

h)      Such other and further relief, at law or in equity, as the Court may deem just and proper.

/ / /

426463 v1/2882.00100

DATE: September 15, 2011.                    Respectfully submitted,


/s/ Gregory L. Maag, with permission by
    Thomas L. Warden
Gregory L. Maag, *Lead Attorney*
State Bar No. 12748500
gmaag@conleyrose.com
Charles J. Rogers
State Bar No. 00786205
Thomas L. Warden
State Bar No. 24004174
twarden@conleyrose.com
CONLEY ROSE, P.C.
600 Travis Street, Suite 7100
Houston, Texas 77002
Telephone: (713) 238-8000
Facsimile:  (713) 238-8088

ATTORNEYS FOR PLAINTIFF
ULTIMATEPOINTER, L.L.C.

426463 v1/2882.00100
A22

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ULTIMATEPOINTER, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| NINTENDO CO., LTD., | § | CIVIL ACTION NO.  6:11-CV-496-LD |
| NINTENDO OF AMERICA INC., | § | |
| JJ GAMES, LLC, | § | |
| GAME STOP CORPORATION, | § | |
| BESTBUY CO., INC., | § | |
| SEARS, ROEBUCK AND CO., | § | |
| KMART CORPORATION, | § | |
| TARGET CORPORATION, | § | |
| WAL-MART STORES, INC., | § | |
| WAL-MART STORES TEXAS, L.L.C., | § | |
| SAM'S EAST, INC., | § | |
| SAM'S WEST, INC., | § | |
| RADIOSHACK CORPORATION, | § | |
| TOYS R US, INC., | § | |
| DELL INC., | § | |
| QVC, INC., | § | |
| TRANS WORLD ENTERTAINMENT | § | |
| CORPORATION, | § | |
| BJ'S WHOLESALE CLUB, INC., | § | |
| PC CONNECTION, INC., | § | |
| COMPUSA.COM, INC., and | § | |
| TIGER DIRECT, INC., | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |
| | § | |

## <u>FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiff UltimatePointer, L.L.C., files this First Amended Complaint for Patent

Infringement against Defendants Nintendo Co., Ltd.; Nintendo of America Inc.; JJ Games, LLC;

GameStop Corporation; Best Buy Co., Inc.; Sears, Roebuck and Co.; Kmart Corporation; Target

Corporation; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas, L.L.C.; Sam's East, Inc.; Sam's

West, Inc.; RadioShack Corporation; Toys R Us, Inc.; Dell Inc.; QVC, Inc.; Trans World Entertainment Corporation; BJ's Wholesale Club, Inc.; PC Connection, Inc.; CompUsa.com, Inc.; and Tiger Direct, Inc. (collectively the "Defendants"). In support, Plaintiff UltimatePointer, L.L.C. alleges as follows:

## INTRODUCTION

1.      This is an action for patent infringement brought under 35 U.S.C. § 271 for Defendants' direct and indirect infringement of United States Patent No. 7,746,321 ("the '321 patent) by making, using, selling, offering to sell, and/or importing Nintendo Wii systems, games, controllers, sensors and related accessories (the "accused products"), in this Judicial District and elsewhere in the United States, without authorization of the owner of the '321 patent, Plaintiff UltimatePointer, L.L.C.

## THE PARTIES

2.      Plaintiff UltimatePointer, L.L.C. ("UltimatePointer") is a limited liability company organized and existing under the laws of the state of Delaware.

3.      Defendant Nintendo Co., Ltd. ("Nintendo Japan") is a Japanese corporation with a regular place of business at 11-1 Kamitoba hokotate-cho, Minami-ku, Kyoto 601-8501 Japan. Nintendo Japan is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas.  Nintendo Japan may be served with process as provided under Rule 4(d) of the Federal Rules of Civil Procedure, or under Rule 4(f) of the Federal Rules of Civil Procedure effected pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

4.      Defendant Nintendo of America Inc. ("Nintendo America") is a corporation organized and existing under the laws of the State of Washington, with a regular place of

-2-

business at 4820 150th Avenue N.E., Redmond, Washington 98052.  Nintendo America is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

5.      Defendant JJ Games, LLC ("JJ Games") is a limited liability company organized and existing under the laws of the State of Colorado with a regular place of business at 2995 South Tejon Street, Englewood, Colorado 80110.  JJ Games is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas.  JJ Games may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

6.      Defendant GameStop Corporation ("GameStop") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 625 Westport Parkway, Grapevine, Texas 76051.  GamesStop is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

7.      Defendant Best Buy Co., Inc. ("Best Buy") is a corporation organized and existing under the laws of the State of Minnesota with a regular place of business at 7601 Penn Ave South, Richfield, Minnesota 55423.  Best Buy is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

8.      Defendant Sears, Roebuck and Co. ("Sears") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Sears is registered to do business in Texas and may be

-3-

A25

served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

9.     Defendant Kmart Corporation ("Kmart") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Kmart has a regular place of business in Texas at 1100 McCann Road, Longview, Texas 75601, but has not appointed an agent for service of process in Texas.  Kmart may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

10.    Defendant Target Corporation ("Target") is a corporation organized and existing under the laws of the State of Minnesota with a regular place of business at 1000 Nicollet Mall, Minneapolis, MN 55403.  Target is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

11.    Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716.  Wal-Mart is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

12.    Defendant Wal-Mart Stores Texas, L.L.C. ("Wal-Mart Texas") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 SW 8th Street, Bentonville, Arkansas 72716.  Wal-Mart Texas is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

426912.2/2884.00100

13.     Defendant Sam's West, Inc. ("Sam's West") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 SW 8th Street, Bentonville, Arkansas 72716.  Sam's West is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

14.     Defendant Sam's East, Inc. ("Sam's East") is a corporation organized and existing under the laws of the State of Arkansas with a regular place of business at 805 Moberly Lane, Bentonville, Arkansas 72716.  Sam's East is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

15.     Defendant RadioShack Corporation ("RadioShack") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 300 Trinity Campus Circle, Fort Worth, Texas 76102.  RadioShack is registered to do business in Texas and may be served with process by serving its registered agent for service of process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

16.     Defendant Toys R Us, Inc. ("Toys R Us") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at One Geoffrey Way, Wayne, New Jersey 07470.  Toys R Us is registered to do business in Texas and has a regular place of business in Texas located at 414 East Southeast Loop 323, Tyler, Texas 75701. However, Toys R Us has not appointed an agent for service of process in Texas.  Toys R Us may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

17.     Defendant Dell Inc. ("Dell") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 1 Dell Way, Round Rock, Texas 78682.  Dell is registered to do business in Texas and may be served with process by serving its registered agent for service of process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

18.     Defendant QVC, Inc. ("QVC") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 12300 Liberty Boulevard, Englewood, Colorado 80112.  QVC is registered to do business in Texas and has a regular place of business in Texas located at 9855 Westover Hills Boulevard San Antonio, Texas 78251. However, QVC has not appointed an agent for service of process in Texas.  QVC may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

19.     Defendant Trans World Entertainment Corporation ("Trans World") is a corporation organized and existing under the laws of the State of New York with a regular place of business at 38 Corporate Circle, Albany, New York 12203.  Trans World is registered to do business in Texas and has a regular place of business in Texas located at 16535 Southwest Freeway, Sugar Land, Texas 77479.  However, Trans World has not appointed an agent for service of process in Texas.  Trans World may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

20.     Defendant BJ's Wholesale Club, Inc. ("BJ's Wholesale") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 25 Research Drive, Westborough, Massachusetts 01581.  BJ's Wholesale is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an

agent for service of process in Texas. BJ's Wholesale may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

21.     Defendant PC Connection, Inc. ("PC Connection") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 730 Milford Road, Merrimack, New Hampshire 03054. PC Connection is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas. PC Connection may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

22.     Defendant CompUsa.com, Inc. ("CompUsa") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 7795 West Flagler Street, Suite 35, Miami, Florida 33144. CompUsa is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas. CompUsa may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

23.     Defendant Tiger Direct, Inc. ("Tiger Direct") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 7795 West Flagler Street, Suite 35, Miami, Florida 33144. Tiger Direct is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas. Tiger Direct may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

24.     Defendants Nintendo Japan and Nintendo America manufacture, import, sell, offer for sale, and/or import the accused Nintendo Wii systems, games, and related accessories. The remaining Defendants sell, offer for sale, and/or import the accused products.

## JURISDICTION AND VENUE

25.     The Court has original and exclusive federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Act, 35 U.S.C. § 271.  Venue is proper in this Judicial District pursuant to 28 U.S.C. 1400(b) because each of the Defendants resides in this District, is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c), and/or has committed or induced acts of infringement and has a regular and established place of business in this District.

26.     Each of the Defendants is subject to this Court's specific personal jurisdiction in compliance with the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because each Defendant has sold accused products in the State of Texas,  actively induced and/or contributed to infringement in Texas, and/or has established regular and systematic business contacts with the State of Texas.

## COUNT ONE
## INFRINGEMENT OF UNITED STATES PATENT NO. 7,746,321

27.     On June 29, 2010, U.S. Patent No. 7,746,321 ("the '321 patent") was duly and lawfully issued for an invention entitled "Easily Deployable Interactive Direct-Pointing System and Presentation Control System and Calibration Method Therefor."

28.     The '321 patent was issued from United States Patent Application Serial No. 11/135,911, which was published on December 8, 2005 as United States Patent Application Publication No. 2005/0270494 A1 ("the '494 publication").

29.     By written assignment from the sole inventor, Plaintiff UltimatePointer owns all right, title, and interest in and to the '321 patent, and all rights arising thereunder, including the right to bring suit and recover damages for past infringement.  A true and correct copy of the '321 patent is attached hereto as Exhibit A.

30.     Nintendo Japan has directly infringed and continues to directly infringe the '321 patent by making, using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including resellers and end users) to use, sell, offer for sale, and/or import the accused products.  Nintendo Japan's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

31.     Nintendo America has directly infringed and continues to directly infringe the '321 patent by making, using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others  (including resellers and end users) to use, sell, offer for sale, and/or import the accused products.  Nintendo America's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

32.     Prior to the issuance of the '321 patent or the filing of this action, Nintendo America and/or Nintendo Japan was expressly and specifically notified of the existence of the '494 publication and that its unauthorized manufacturing, sales, and importation of the accused products would infringe any patent issued with claims as published in the '494 publication.

33.     Prior to the filing of this action, Nintendo America was further expressly and specifically notified of the issuance and existence of the '321 patent, and that its unauthorized manufacturing, sales, and importation of the accused products was an infringement of the '321 patent.

34.     Nintendo America and/or Nintendo Japan refused to cease infringement after notice of the '494 publication and notice of the '321 patent.  Instead, Nintendo America and/or Nintendo Japan continue and still continues to deliberately infringe the '321 patent.  Nintendo

America's and/or Nintendo Japan's infringement of the '321 patent was and is willful and in bad faith, entitling UltimatePointer to increased damages under 35 U.S.C. § 284 and to reasonable attorney fees under 35 U.S.C. § 285.

35.     JJ Games has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. JJ Games' actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

36.     GameStop has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. GameStop's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

37.     Best Buy has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Best Buy's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

38.     Sears has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Sears's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

39.     Kmart has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Kmart's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

40.     Target has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Target's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

41.     Wal-Mart has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  Wal-Mart's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

42.     Wal-Mart Texas has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  Wal-Mart Texas' actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

43.     Sam's West has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has

-11-

A33

indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Sam's West's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

44.    Sam's East has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Sam's East's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

45.    RadioShack has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. RadioShack's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

46.    Toys R Us has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Toys R Us' actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

47.    Dell has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly

infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Dell's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

48.     QVC has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. QVC's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

49.     Trans World has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Trans World's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

50.     BJ's Wholesale has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. BJ's Wholesale's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

51.     PC Connection has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and

-13-

inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. PC Connection's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

52. CompUsa has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. CompUsa's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

53. Tiger Direct has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Tiger Direct's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

54. With knowledge of the '321 patent and with the intent to induce end users to infringe, Defendants have induced infringement, and will continue to induce infringement of the '321 patent by, among other activities, providing the accused products without license or authority to end users and instructing end users how to use the accused products in an infringing manner, and by actively encouraging and promoting that infringing use. With respect to Defendants other than Nintendo America and Nintendo Japan, such conduct inducing infringement by end users has occurred from at least as early as the filing date of this Complaint and, with respect to Nintendo America and Nintendo Japan, has occurred from at least as early as December 10, 2010.

55.     In addition, with knowledge of the '321 patent, and with the intent to induce retailers to infringe, Nintendo America and Nintendo Japan have, from at least as early as December 10, 2010, induced infringement, and will continue to induce infringement of the '321 patent by, among other activities, providing the accused products without license or authority to retailers and inducing those retailers to use, offer for sale, and sell the accused products to others, and by encouraging and promoting those infringing activities.

56.     With knowledge of the '321 patent and the intent to contribute to the infringement by others, defendants have contributorily infringed the '321 patent at least by making, selling, offering for sale and/or importing supplemental, ancillary and/or replacement components adapted for infringing use with the accused products, including but not limited to, for example, Wii controllers and Wii games, all of which are designed and intended for use with the accused products, are especially adapted to infringe, and have no substantial non-infringing use.  With respect to Defendants other than Nintendo America and Nintendo Japan, such contributory infringement has occurred from at least as early as the filing date of this Complaint and, with respect to Nintendo America and Nintendo Japan, has occurred from at from at least as early as December 10, 2010.  Such contributory infringement by Defendants has contributed to the direct infringement by end users who purchase and use the accused products.  In addition, the contributory infringement by Nintendo America and Nintendo Japan has contributed to the direct infringement by retailers who, in turn, offer for sale and sell the accused products to end users.

57.     Defendants' infringement of the '321 patent has caused harm and damage to UltimatePointer.  Pursuant to 35 U.S.C. § 284, UltimatePointer is entitled to damages adequate to compensate it for Defendants' infringement in an amount to be determined at trial, but in no

-15-

event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the court.

58.     Nintendo America and/or Nintendo Japan have infringed and continue to infringe claims from the '321 patent that were present in the '494 publication and others that are substantially identical to those present in the '494 publication.  Pursuant to 35 U.S.C. § 154(d), UltimatePointer is therefore entitled to a reasonable royalty for such infringement beginning on the date of publication of the '494 publication.

## JURY DEMAND

59.     UltimatePointer hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff UltimatePointer requests the entry of a judgment in its favor and against Defendants including the following:

a)      A finding and judgment that Defendants have directly and/or indirectly infringed the '321 patent either literally or under the doctrine of equivalents;

b)      A judgment and award of the damages due to Defendants' infringement of the '321 patent,  including damages for any continuing post-verdict infringement occurring between time of verdict and entry of final judgment, with an order for an accounting as required, and also including a reasonable royalty for infringement by Nintendo America and/or Nintendo Japan after publication of the '494 publication;

c)      A finding and judgment that infringement by Defendant Nintendo America and/or Nintendo Japan was willful and in bad faith and an award of enhanced damages since issuance of the '321 patent pursuant to 35 U.S.C. § 284;

-16-

     d)     A finding and judgment that the remaining Defendants' infringement was willful since acquiring knowledge of the '321 patent and continuing to persist in infringement in bad faith, which is a date no later than the filing of this Complaint, and an award of enhanced damages pursuant to 35 U.S.C. § 284;

     e)     A finding and judgment that this case is exceptional, and an award of reasonable attorney fees to UltimatePointer pursuant to 35 U.S.C. § 285;

     f)     An award of pre-judgment and post-judgment interest as allowed by law;

     g)     Costs of court; and

     h)     Such other and further relief, at law or in equity, as the Court may deem just and proper.

DATE: September 21, 2011          Respectfully submitted,

          /s/ Gregory L. Maag
          Gregory L. Maag, *Lead Attorney*
          State Bar No. 12748500
          gmaag@conleyrose.com
          Charles J. Rogers
          State Bar No. 00786205
          crogers@conleyrose.com
          Thomas L. Warden
          State Bar No. 24004174
          twarden@conleyrose.com
          CONLEY ROSE, P.C.
          600 Travis Street, Suite 7100
          Houston, Texas 77002
          Telephone: (713) 238-8000
          Facsimile:  (713) 238-8088

          ATTORNEYS FOR PLAINTIFF
          ULTIMATEPOINTER, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of September 2011, the foregoing *First Amended Complaint for Patent Infringement* was filed electronically using the Court's CM/ECF system, that no party has appeared in this action to receive a Notice of Electronic Filing under Local Rule CV-5(a)(3)(A), and that a copy of the forgoing will be served on all parties, together with the summons, pursuant to Fed. R. Civ. P. 4.


/s/ Gregory L. Maag
Gregory L. Maag

-18-

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ULTIMATEPOINTER, L.L.C., §<br>§<br>§<br>Plaintiff, §<br>§<br>vs. §<br>§<br>NINTENDO CO., LTD., §<br>NINTENDO OF AMERICA INC., §<br>JJ GAMES, LLC, §<br>GAME STOP CORPORATION, §<br>BEST BUY CO., INC., §<br>SEARS, ROEBUCK AND CO., §<br>KMART CORPORATION, §<br>TARGET CORPORATION, §<br>WAL-MART STORES, INC., §<br>WAL-MART STORES TEXAS, L.L.C., §<br>SAM'S EAST, INC., §<br>SAM'S WEST, INC., §<br>RADIOSHACK CORPORATION, §<br>TOYS R US, INC., §<br>DELL INC., §<br>QVC, INC., §<br>TRANS WORLD ENTERTAINMENT §<br>CORPORATION, §<br>BJ'S WHOLESALE CLUB, INC., §<br>PC CONNECTION, INC., §<br>COMPUSA.COM, INC., and §<br>TIGER DIRECT, INC., §<br>§<br>Defendants. §<br>§ | CIVIL ACTION NO. _____<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff UltimatePointer, L.L.C., files this Complaint for Patent Infringement against

Defendants Nintendo Co., Ltd.; Nintendo of America Inc.; JJ Games, LLC; GameStop

Corporation; Best Buy Co., Inc.; Sears, Roebuck and Co.; Kmart Corporation; Target

Corporation; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas, L.L.C.; Sam's East, Inc.; Sam's

West, Inc.; RadioShack Corporation; Toys R Us, Inc.; Dell Inc.; QVC, Inc.; Trans World Entertainment Corporation; BJ's Wholesale Club, Inc.; PC Connection, Inc.; CompUsa.com, Inc.; and Tiger Direct, Inc. (collectively the "Defendants"). In support, Plaintiff UltimatePointer, L.L.C. alleges as follows:

## INTRODUCTION

1.      This is an action for patent infringement brought under 35 U.S.C. § 271 for Defendants' infringement of United States Patent No. 8,049,729 ("the '729 patent) by the Defendants' making, using, selling, offering to sell, and/or importing Nintendo Wii systems, as well as games, controllers, sensors and related accessories compatible and intended for use with Wii systems (collectively, the "accused products"), in this Judicial District and elsewhere in the United States, without authorization of the owner of the '729 patent, Plaintiff UltimatePointer, L.L.C.

## THE PARTIES

2.      Plaintiff UltimatePointer, L.L.C. ("UltimatePointer") is a limited liability company organized and existing under the laws of the state of Delaware.

3.      Defendant Nintendo Co., Ltd. ("Nintendo Japan") is a Japanese corporation with a regular place of business at 11-1 Kamitoba hokotate-cho, Minami-ku, Kyoto 601-8501 Japan. Nintendo Japan is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas.  Nintendo Japan may be served with process as provided under Rule 4(d) of the Federal Rules of Civil Procedure, or under Rule 4(f) of the Federal Rules of Civil Procedure effected pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

-2-

4.    Defendant Nintendo of America Inc. ("Nintendo America") is a corporation organized and existing under the laws of the State of Washington, with a regular place of business at 4820 150th Avenue N.E., Redmond, Washington 98052.  Nintendo America is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

5.    Defendant JJ Games, LLC ("JJ Games") is a limited liability company organized and existing under the laws of the State of Colorado with a regular place of business at 2995 South Tejon Street, Englewood, Colorado 80110.  JJ Games is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas.  JJ Games may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

6.    Defendant GameStop Corporation ("GameStop") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 625 Westport Parkway, Grapevine, Texas 76051.  GamesStop is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

7.    Defendant Best Buy Co., Inc. ("Best Buy") is a corporation organized and existing under the laws of the State of Minnesota with a regular place of business at 7601 Penn Ave South, Richfield, Minnesota 55423.  Best Buy is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

-3-

8.      Defendant Sears, Roebuck and Co. ("Sears") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179. Sears is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

9.      Defendant Kmart Corporation ("Kmart") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179. Kmart has a regular place of business in Texas at 1100 McCann Road, Longview, Texas 75601, but has not appointed an agent for service of process in Texas. Kmart may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

10.      Defendant Target Corporation ("Target") is a corporation organized and existing under the laws of the State of Minnesota with a regular place of business at 1000 Nicollet Mall, Minneapolis, MN 55403. Target is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

11.      Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716. Wal-Mart is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

12.      Defendant Wal-Mart Stores Texas, L.L.C. ("Wal-Mart Texas") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at

-4-

702 SW 8th Street, Bentonville, Arkansas 72716. Wal-Mart Texas is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

13.    Defendant Sam's West, Inc. ("Sam's West") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 SW 8th Street, Bentonville, Arkansas 72716. Sam's West is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

14.    Defendant Sam's East, Inc. ("Sam's East") is a corporation organized and existing under the laws of the State of Arkansas with a regular place of business at 805 Moberly Lane, Bentonville, Arkansas 72716. Sam's East is registered to do business in Texas and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

15.    Defendant RadioShack Corporation ("RadioShack") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 300 Trinity Campus Circle, Fort Worth, Texas 76102. RadioShack is registered to do business in Texas and may be served with process by serving its registered agent for service of process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

16.    Defendant Toys R Us, Inc. ("Toys R Us") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at One Geoffrey Way, Wayne, New Jersey 07470. Toys R Us is registered to do business in Texas and has a regular place of business in Texas located at 414 East Southeast Loop 323, Tyler, Texas 75701. However, Toys R Us has not appointed an agent for service of process in Texas. Toys R Us may

-5-

be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

17.     Defendant Dell Inc. ("Dell") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 1 Dell Way, Round Rock, Texas 78682.  Dell is registered to do business in Texas and may be served with process by serving its registered agent for service of process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

18.     Defendant QVC, Inc. ("QVC") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 12300 Liberty Boulevard, Englewood, Colorado 80112.  QVC is registered to do business in Texas and has a regular place of business in Texas located at 9855 Westover Hills Boulevard San Antonio, Texas 78251.  However, QVC has not appointed an agent for service of process in Texas.  QVC may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

19.     Defendant Trans World Entertainment Corporation ("Trans World") is a corporation organized and existing under the laws of the State of New York with a regular place of business at 38 Corporate Circle, Albany, New York 12203.  Trans World is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas. Trans World may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

20.     Defendant BJ's Wholesale Club, Inc. ("BJ's Wholesale") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 25 Research Drive, Westborough, Massachusetts 01581.  BJ's Wholesale is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an

431606.1/2884.00100

agent for service of process in Texas. BJ's Wholesale may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

21.     Defendant PC Connection, Inc. ("PC Connection") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 730 Milford Road, Merrimack, New Hampshire 03054. PC Connection is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas. PC Connection may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

22.     Defendant CompUsa.com, Inc. ("CompUsa") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 7795 West Flagler Street, Suite 35, Miami, Florida 33144. CompUsa is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas. CompUsa may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

23.     Defendant Tiger Direct, Inc. ("Tiger Direct") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 7795 West Flagler Street, Suite 35, Miami, Florida 33144. Tiger Direct is not registered to do business in Texas, does not have a regular place of business in Texas, and has not appointed an agent for service of process in Texas. Tiger Direct may be served with process as provided under Rule 4(d) or (e) of the Federal Rules of Civil Procedure.

24.     Defendants Nintendo Japan and Nintendo America manufacture, sell, offer for sale, and/or import the accused products. The remaining Defendants sell, offer for sale, and/or import the accused products.

-7-

## JURISDICTION AND VENUE

25.     The Court has original and exclusive federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Act, 35 U.S.C. § 271.  Venue is proper in this Judicial District pursuant to 28 U.S.C. 1400(b) because each of the Defendants resides in this District, is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c), and/or has committed or induced acts of infringement and has a regular and established place of business in this District.

26.     Each of the Defendants is subject to this Court's specific personal jurisdiction in compliance with the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because each Defendant has sold accused products in the State of Texas, actively induced and/or contributed to infringement in Texas, and/or has established regular and systematic business contacts with the State of Texas.

## COUNT ONE
## INFRINGEMENT OF UNITED STATES PATENT NO. 8,049,729

27.     On November 1, 2011, U.S. Patent No. 8,049,729 ("the '729 patent") was duly and lawfully issued for an invention entitled "Easily Deployable Interactive Direct-Pointing System and Presentation Control System and Calibration Method Therefor."

28.     The '729 patent was issued from United States Patent Application Serial No. 12/782,980, which was published on November 11, 2010 as United States Patent Application Publication No. 2010/0283732 ("the '732 publication").

29.     By written assignment from the sole inventor, Plaintiff UltimatePointer owns all right, title, and interest in and to the '729 patent, and all rights arising thereunder, including the right to bring suit and recover damages for past infringement.  A true and correct copy of the '729 patent is attached hereto as Exhibit A.

-8-

30. Nintendo Japan has directly infringed and continues to directly infringe the '729 patent by making, using, selling, offering for sale, and/or importing the accused products. Nintendo Japan's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

31. Nintendo America has directly infringed and continues to directly infringe the '729 patent by making, using, selling, offering for sale, and/or importing the accused products. Nintendo America's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

32. Prior to the issuance of the '729 patent, and prior to the filing of this action, Nintendo America and Nintendo Japan were expressly and specifically notified of the issuance and existence of U.S. Patent No. 7,746,321 ("the '321 patent"), the parent patent from which the '729 patent is a continuation, and notified that their unauthorized manufacturing, use, sales, and importation of the accused products was an infringement of the '321 patent.

33. The '321 patent was issued from U.S. Patent Application Serial No. 11/135,911, which was published on December 8, 2005 as U.S. Patent Application Publication No. 2005/0270494A1 ("the '494 publication"). Prior to the issuance of the '729 patent and prior to the filing of this action, Nintendo America and/or Nintendo Japan was expressly and specifically notified of the existence of the '494 publication and that its unauthorized manufacturing, use, sales, and importation of the accused products would infringe any patent issued with claims as published in the '494 publication.

34. Nintendo America and/or Nintendo Japan refused to cease infringement after notice of the '494 publication and notice of their infringement of the '321 patent. Instead, Nintendo America and/or Nintendo Japan continue and still continues to deliberately infringe at least the '321 patent.

35.  JJ Games has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. JJ Games' actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

36.  GameStop has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. GameStop's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

37.  Best Buy has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Best Buy's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

38.  Sears has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Sears's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

39.  Kmart has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Kmart's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

40.  Target has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Target's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

41.  Wal-Mart has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Wal-Mart's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

-10-

42.     Wal-Mart Texas has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  Wal-Mart Texas' actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

43.     Sam's West has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  Sam's West's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

44.     Sam's East has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  Sam's East's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

45.     RadioShack has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  RadioShack's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

46.     Toys R Us has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  Toys R Us' actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

47.     Dell has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  Dell's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

48.     QVC has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  QVC's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

-11-

49. Trans World has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Trans World's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

50. BJ's Wholesale has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. BJ's Wholesale's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

51. PC Connection has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. PC Connection's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

52. CompUsa has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. CompUsa's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

53. Tiger Direct has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Tiger Direct's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

54. Defendants' infringement of the '729 patent has caused harm and damage to UltimatePointer. Pursuant to 35 U.S.C. § 284, UltimatePointer is entitled to damages adequate to compensate it for Defendants' infringement in an amount to be determined at trial, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the court.

## JURY DEMAND

55. UltimatePointer hereby demands a trial by jury on all issues so triable.

-12-

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff UltimatePointer requests the entry of a judgment in its favor and against Defendants including the following:

a)     A finding and judgment that Defendants have infringed the '729 patent either literally or under the doctrine of equivalents;

b)     A judgment and award of the damages arising from Defendants' infringement of the '729 patent, including damages for any continuing post-verdict infringement occurring between time of verdict and entry of final judgment, with an order for an accounting as required;

c)     An award of pre-judgment and post-judgment interest as allowed by law;

d)     Costs of court; and

e)     Such other and further relief, at law or in equity, as the Court may deem just and proper.

DATE:   November 1, 2011                Respectfully submitted,

/s/ *Gregory L. Maag*
Gregory L. Maag, *Lead Attorney*
State Bar No. 12748500
gmaag@conleyrose.com
Charles J. Rogers
State Bar No. 00786205
crogers@conleyrose.com
Thomas L. Warden
State Bar No. 24004174
twarden@conleyrose.com
CONLEY ROSE, P.C.
600 Travis Street, Suite 7100
Houston, Texas 77002
Telephone: (713) 238-8000
Facsimile:  (713) 238-8088

ATTORNEYS FOR PLAINTIFF
ULTIMATEPOINTER, L.L.C.

431606.1/2884.00100

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November, 2011, the foregoing ***Complaint for Patent Infringement*** was filed electronically using the Court's CM/ECF system, that no party has appeared in this action to receive a Notice of Electronic Filing under Local Rule CV-5(a)(3)(A), and that a copy of the forgoing will be served on all parties, together with the summons, pursuant to Fed. R. Civ. P. 4.


/s/ *Gregory L. Maag*
Gregory L. Maag


-14-

431606.1/2884.00100

A54

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ULTIMATEPOINTER, L.L.C., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| NINTENDO CO., LTD., | § | CIVIL ACTION NO. 6:11-CV-00496-LED |
| NINTENDO OF AMERICA INC., | § | |
| JJ GAMES, LLC, | § | |
| GAME STOP CORPORATION, | § | |
| BEST BUY STORES, L.P., | § | |
| BESTBUY.COM, LLC, | § | |
| BEST BUY PURCHASING, LLC, | § | |
| SEARS, ROEBUCK AND CO., | § | |
| KMART CORPORATION, | § | |
| TARGET CORPORATION, | § | |
| WAL-MART STORES, INC., | § | |
| WAL-MART STORES TEXAS, L.L.C., | § | |
| SAM'S EAST, INC., | § | |
| SAM'S WEST, INC., | § | |
| RADIOSHACK CORPORATION, | § | |
| TOYS "R" US-DELAWARE, INC., | § | |
| DELL INC., | § | |
| QVC, INC., | § | |
| TRANS WORLD ENTERTAINMENT | § | |
| CORPORATION, | § | |
| BJ'S WHOLESALE CLUB, INC., | § | |
| PC CONNECTION, INC., | § | |
| COMPUSA.COM, INC., and | § | |
| TIGER DIRECT, INC., | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |
| | § | |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff UltimatePointer, L.L.C., files this Second Amended Complaint for Patent

Infringement against Defendants Nintendo Co., Ltd.; Nintendo of America Inc.; JJ Games, LLC;

GameStop Corporation; Best Buy Stores, L.P.; BestBuy.com, LLC; Best Buy Purchasing, LLC;

Sears, Roebuck and Co.; Kmart Corporation; Target Corporation; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas, L.L.C.; Sam's East, Inc.; Sam's West, Inc.; RadioShack Corporation; Toys "R" Us-Delaware, Inc.; Dell Inc.; QVC, Inc.; Trans World Entertainment Corporation; BJ's Wholesale Club, Inc.; PC Connection, Inc.; CompUsa.com, Inc.; and Tiger Direct, Inc. (collectively the "Defendants"). In support, Plaintiff UltimatePointer, L.L.C. alleges as follows:

## INTRODUCTION

1.    This is an action for patent infringement brought under 35 U.S.C. § 271 for Defendants' direct and indirect infringement of United States Patent No. 7,746,321 ("the '321 patent) by making, using, selling, offering to sell, and/or importing Nintendo Wii systems, games, controllers, sensors and related accessories (the "accused products"), in this Judicial District and elsewhere in the United States, without authorization of the owner of the '321 patent, Plaintiff UltimatePointer, L.L.C.

## THE PARTIES

2.    Plaintiff UltimatePointer, L.L.C. ("UltimatePointer") is a limited liability company organized and existing under the laws of the state of Delaware.

3.    Defendant Nintendo Co., Ltd. ("Nintendo Japan") is a Japanese corporation with a regular place of business at 11-1 Kamitoba hokotate-cho, Minami-ku, Kyoto 601-8501 Japan. Nintendo Japan is not registered to do business in Texas and does not have a regular place of business in Texas.  Nintendo Japan has appeared in this action through its counsel of record.

4.    Defendant Nintendo of America Inc. ("Nintendo America") is a corporation organized and existing under the laws of the State of Washington, with a regular place of business at 4820 150th Avenue N.E., Redmond, Washington 98052.  Nintendo America is registered to do business in Texas and has appeared in this action through its counsel of record.

5.      Defendant JJ Games, LLC ("JJ Games") is a limited liability company organized and existing under the laws of the State of Colorado with a regular place of business at 2995 South Tejon Street, Englewood, Colorado 80110.  JJ Games is not registered to do business in Texas and does not have a regular place of business in Texas.  JJ Games has appeared in this action through its counsel of record.

6.      Defendant GameStop Corporation ("GameStop") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 625 Westport Parkway, Grapevine, Texas 76051.  GamesStop is registered to do business in Texas and has appeared in this action through its counsel of record.

7.      Defendant Best Buy Stores, L.P. ("Best Buy Stores") is a corporation organized and existing under the laws of the Commonwealth of Virginia with a regular place of business at 7601 Penn Ave South, Richfield, Minnesota 55423.  Best Buy Stores may be served with process by serving its counsel and specially appointed agent for service of process in this action, Mark C. Nelson of SNR Denton US, LLP, 2000 McKinney Avenue, Suite 1900, Dallas, Texas 75201-1858.

8.      Defendant BestBuy.com, LLC ("BestBuy.com") is a corporation organized and existing under the laws of the Commonwealth of Virginia with a regular place of business at 7601 Penn Ave South, Richfield, Minnesota 55423.  BestBuy.com may be served with process by serving its counsel and specially appointed agent for service of process in this action, Mark C. Nelson of SNR Denton US, LLP, 2000 McKinney Avenue, Suite 1900, Dallas, Texas 75201-1858.

9.      Defendant Best Buy Purchasing, LLC ("Best Buy Purchasing") is a corporation organized and existing under the laws of the State of Minnesota with a regular place of business

-3-

at 7601 Penn Ave South, Richfield, Minnesota 55423.  Best Buy Purchasing may be served with process by serving its counsel and specially appointed agent for service of process in this action, Mark C. Nelson of SNR Denton US, LLP, 2000 McKinney Avenue, Suite 1900, Dallas, Texas 75201-1858.

10.     Defendant Sears, Roebuck and Co. ("Sears") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Sears is registered to do business in Texas and has appeared in this action through its counsel of record.

11.     Defendant Kmart Corporation ("Kmart") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Kmart has a regular place of business in Texas at 1100 McCann Road, Longview, Texas 75601 and has appeared in this action through its counsel of record.

12.     Defendant Target Corporation ("Target") is a corporation organized and existing under the laws of the State of Minnesota with a regular place of business at 1000 Nicollet Mall, Minneapolis, MN 55403.  Target is registered to do business in Texas and has appeared in this action through its counsel of record.

13.     Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716.  Wal-Mart is registered to do business in Texas and has appeared in this action through its counsel of record.

14.     Defendant Wal-Mart Stores Texas, L.L.C. ("Wal-Mart Texas") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at

-4-

702 SW 8th Street, Bentonville, Arkansas 72716.  Wal-Mart Texas is registered to do business in Texas and has appeared in this action through its counsel of record.

15.     Defendant Sam's West, Inc. ("Sam's West") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 SW 8th Street, Bentonville, Arkansas 72716.  Sam's West is registered to do business in Texas and has appeared in this action through its counsel of record.

16.     Defendant Sam's East, Inc. ("Sam's East") is a corporation organized and existing under the laws of the State of Arkansas with a regular place of business at 805 Moberly Lane, Bentonville, Arkansas 72716.  Sam's East is registered to do business in Texas and has appeared in this action through its counsel of record.

17.     Defendant RadioShack Corporation ("RadioShack") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 300 Trinity Campus Circle, Fort Worth, Texas 76102.  RadioShack is registered to do business in Texas and has appeared in this action through its counsel of record.

18.     Defendant Toys "R" Us-Delaware, Inc. ("Toys R Us") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at One Geoffrey Way, Wayne, New Jersey 07470.  Toys R Us is not registered to do business in Texas, but has a regular place of business in Texas located at 414 East Southeast Loop 323, Tyler, Texas 75701.  Toys R Us may be served with process through its counsel and specially appointed agent for service of process in this action, Mark C. Nelson of SNR Denton US, LLP, 2000 McKinney Avenue, Suite 1900, Dallas, Texas 75201-1858.

19.     Defendant Dell Inc. ("Dell") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 1 Dell Way, Round Rock, Texas

78682. Dell is registered to do business in Texas and has appeared in this action through its counsel of record.

20. Defendant QVC, Inc. ("QVC") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 12300 Liberty Boulevard, Englewood, Colorado 80112. QVC is registered to do business in Texas and has a regular place of business in Texas located at 9855 Westover Hills Boulevard San Antonio, Texas 78251. QVC has appeared in this action through its counsel of record.

21. Defendant Trans World Entertainment Corporation ("Trans World") is a corporation organized and existing under the laws of the State of New York with a regular place of business at 38 Corporate Circle, Albany, New York 12203. Trans World is registered to do business in Texas and has a regular place of business in Texas located at 16535 Southwest Freeway, Sugar Land, Texas 77479. Trans World has appeared in this action through its counsel of record.

22. Defendant BJ's Wholesale Club, Inc. ("BJ's Wholesale") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 25 Research Drive, Westborough, Massachusetts 01581. BJ's Wholesale is not registered to do business in Texas and does not have a regular place of business in Texas. BJ's Wholesale has appeared in this action through its counsel of record.

23. Defendant PC Connection, Inc. ("PC Connection") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 730 Milford Road, Merrimack, New Hampshire 03054. PC Connection is not registered to do business in Texas and does not have a regular place of business in Texas. PC Connection has appeared in this action through its counsel of record.

-6-

24.     Defendant CompUsa.com, Inc. ("CompUsa") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 7795 West Flagler Street, Suite 35, Miami, Florida 33144. CompUsa is not registered to do business in Texas and does not have a regular place of business in Texas. CompUsa has appeared in this action through its counsel of record.

25.     Defendant Tiger Direct, Inc. ("Tiger Direct") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 7795 West Flagler Street, Suite 35, Miami, Florida 33144. Tiger Direct is not registered to do business in Texas and does not have a regular place of business in Texas. Tiger Direct has appeared in this action through its counsel of record.

26.     Defendants Nintendo Japan and Nintendo America manufacture, import, sell, offer for sale, and/or import the accused Nintendo Wii systems, games, and related accessories. The remaining Defendants sell, offer for sale, and/or import the accused products.

## JURISDICTION AND VENUE

27.     The Court has original and exclusive federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Act, 35 U.S.C. § 271. Venue is proper in this Judicial District pursuant to 28 U.S.C. 1400(b) because each of the Defendants resides in this District, is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c), and/or has committed or induced acts of infringement and has a regular and established place of business in this District.

28.     Each of the Defendants is subject to this Court's specific personal jurisdiction in compliance with the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because each Defendant has sold accused products in the State of Texas, actively

induced and/or contributed to infringement in Texas, and/or has established regular and systematic business contacts with the State of Texas.

**COUNT ONE**
**INFRINGEMENT OF UNITED STATES PATENT NO. 7,746,321**

29.     On June 29, 2010, U.S. Patent No. 7,746,321 ("the '321 patent") was duly and lawfully issued for an invention entitled "Easily Deployable Interactive Direct-Pointing System and Presentation Control System and Calibration Method Therefor."

30.     The '321 patent was issued from United States Patent Application Serial No. 11/135,911, which was published on December 8, 2005 as United States Patent Application Publication No. 2005/0270494 A1 ("the '494 publication").

31.     By written assignment from the sole inventor, Plaintiff UltimatePointer owns all right, title, and interest in and to the '321 patent, and all rights arising thereunder, including the right to bring suit and recover damages for past infringement.  A true and correct copy of the '321 patent is attached hereto as Exhibit A.

32.     Nintendo Japan has directly infringed and continues to directly infringe the '321 patent by making, using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including resellers and end users) to use, sell, offer for sale, and/or import the accused products.  Nintendo Japan's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

33.     Nintendo America has directly infringed and continues to directly infringe the '321 patent by making, using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others  (including resellers and end users) to use, sell, offer for sale, and/or import

the accused products. Nintendo America's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

34. Prior to the issuance of the '321 patent or the filing of this action, Nintendo America and/or Nintendo Japan was expressly and specifically notified of the existence of the '494 publication and that its unauthorized manufacturing, sales, and importation of the accused products would infringe any patent issued with claims as published in the '494 publication.

35. Prior to the filing of this action, Nintendo America was further expressly and specifically notified of the issuance and existence of the '321 patent, and that its unauthorized manufacturing, sales, and importation of the accused products was an infringement of the '321 patent.

36. Nintendo America and/or Nintendo Japan refused to cease infringement after notice of the '494 publication and notice of the '321 patent. Instead, Nintendo America and/or Nintendo Japan continue and still continues to deliberately infringe the '321 patent. Nintendo America's and/or Nintendo Japan's infringement of the '321 patent was and is willful and in bad faith, entitling UltimatePointer to increased damages under 35 U.S.C. § 284 and to reasonable attorney fees under 35 U.S.C. § 285.

37. JJ Games has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. JJ Games' actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

38. GameStop has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly

-9-

infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. GameStop's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

39.    Best Buy Stores has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  Best Buy Stores' actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

40.    BestBuy.com has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  BestBuy.com's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

41.    Best Buy Purchasing has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  Best Buy Purchasing's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

42.    Sears has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly

-10-

infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Sears's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

43.     Kmart has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Kmart's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

44.     Target has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Target's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

45.     Wal-Mart has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  Wal-Mart's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

46.     Wal-Mart Texas has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused

products. Wal-Mart Texas' actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

47.     Sam's West has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Sam's West's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

48.     Sam's East has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Sam's East's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

49.     RadioShack has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. RadioShack's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

50.     Toys R Us has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing

-12-

others (including end users) to use, sell, offer for sale, and/or import the accused products.  Toys R Us' actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

51.     Dell has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Dell's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

52.     QVC has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. QVC's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

53.     Trans World has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  Trans World's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

54.     BJ's Wholesale has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused

426912 2/2884 00100

products.  BJ's Wholesale's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

55.     PC Connection has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  PC Connection's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

56.     CompUsa has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. CompUsa's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

57.     Tiger Direct has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  Tiger Direct's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

58.     With knowledge of the '321 patent and with the intent to induce end users to infringe, Defendants have induced infringement, and will continue to induce infringement of the '321 patent by, among other activities, providing the accused products without license or authority to end users and instructing end users how to use the accused products in an infringing manner, and

-14-

by actively encouraging and promoting that infringing use. With respect to Defendants other than Nintendo America and Nintendo Japan, such conduct inducing infringement by end users has occurred from at least as early as the filing date of this Complaint and, with respect to Nintendo America and Nintendo Japan, has occurred from at least as early as December 10, 2010.

59.     In addition, with knowledge of the '321 patent, and with the intent to induce retailers to infringe, Nintendo America and Nintendo Japan have, from at least as early as December 10, 2010, induced infringement, and will continue to induce infringement of the '321 patent by, among other activities, providing the accused products without license or authority to retailers and inducing those retailers to use, offer for sale, and sell the accused products to others, and by encouraging and promoting those infringing activities.

60.     With knowledge of the '321 patent and the intent to contribute to the infringement by others, defendants have contributorily infringed the '321 patent at least by making, selling, offering for sale and/or importing supplemental, ancillary and/or replacement components adapted for infringing use with the accused products, including but not limited to, for example, Wii controllers and Wii games, all of which are designed and intended for use with the accused products, are especially adapted to infringe, and have no substantial non-infringing use. With respect to Defendants other than Nintendo America and Nintendo Japan, such contributory infringement has occurred from at least as early as the filing date of this Complaint and, with respect to Nintendo America and Nintendo Japan, has occurred from at from at least as early as December 10, 2010. Such contributory infringement by Defendants has contributed to the direct infringement by end users who purchase and use the accused products. In addition, the contributory infringement by Nintendo America and Nintendo Japan has contributed to the direct infringement by retailers who, in turn, offer for sale and sell the accused products to end users.

61.     Defendants' infringement of the '321 patent has caused harm and damage to UltimatePointer.  Pursuant to 35 U.S.C. § 284, UltimatePointer is entitled to damages adequate to compensate it for Defendants' infringement in an amount to be determined at trial, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the court.

62.     Nintendo America and/or Nintendo Japan have infringed and continues to infringe claims from the '321 patent that were present in the '494 publication and others that are substantially identical to those present in the '494 publication.  Pursuant to 35 U.S.C. § 154(d), UltimatePointer is therefore entitled to a reasonable royalty for such infringement beginning on the date of publication of the '494 publication.

## JURY DEMAND

63.     UltimatePointer hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff UltimatePointer requests the entry of a judgment in its favor and against Defendants including the following:

a)     A finding and judgment that Defendants have directly and/or indirectly infringed the '321 patent either literally or under the doctrine of equivalents;

b)     A judgment and award of the damages due to Defendants' infringement of the '321 patent,  including damages for any continuing post-verdict infringement occurring between time of verdict and entry of final judgment, with an order for an accounting as required, and also including a reasonable royalty for infringement by Nintendo America and/or Nintendo Japan after publication of the '494 publication;

-16-

c)      A finding and judgment that infringement by Defendant Nintendo America and/or Nintendo Japan was willful and in bad faith and an award of enhanced damages since issuance of the '321 patent pursuant to 35 U.S.C. § 284;

d)      A finding and judgment that the remaining Defendants' infringement was willful since acquiring knowledge of the '321 patent and continuing to persist in infringement in bad faith, which is a date no later than the filing of this Complaint, and an award of enhanced damages pursuant to 35 U.S.C. § 284;

e)      A finding and judgment that this case is exceptional, and an award of reasonable attorney fees to UltimatePointer pursuant to 35 U.S.C. § 285;

f)      An award of pre-judgment and post-judgment interest as allowed by law;

g)      Costs of court; and

h)      Such other and further relief, at law or in equity, as the Court may deem just and proper.

DATE: December 30, 2011                    Respectfully submitted,

                                           /s/ Gregory L. Maag
                                           Gregory L. Maag, *Lead Attorney*
                                           State Bar No. 12748500
                                           gmaag@conleyrose.com
                                           Charles J. Rogers
                                           State Bar No. 00786205
                                           crogers@conleyrose.com
                                           Thomas L. Warden
                                           State Bar No. 24004174
                                           twarden@conleyrose.com
                                           CONLEY ROSE, P.C.
                                           600 Travis Street, Suite 7100
                                           Houston, Texas 77002
                                           Telephone: (713) 238-8000
                                           Facsimile:  (713) 238-8088

                                           ATTORNEYS FOR PLAINTIFF
                                           ULTIMATEPOINTER, L.L.C.

-17-

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of December 2011, the foregoing **Second Amended Complaint for Patent Infringement** was filed electronically using the Court's CM/ECF system, that for parties who have appeared through counsel of record, the Notice of Electronic Filing from the court is proof of service of the document on all counsel who are deemed to have consented to electronic service, and that for parties who have not appeared, a copy of the forgoing will be served together with the summons pursuant to FED. R. CIV. P. 4.


/s/ Gregory L. Maag
Gregory L. Maag



US007746321B2

(12) **United States Patent**
Banning

(10) **Patent No.:**     **US 7,746,321 B2**
(45) **Date of Patent:**      **Jun. 29, 2010**

(54) **EASILY DEPLOYABLE INTERACTIVE DIRECT-POINTING SYSTEM AND PRESENTATION CONTROL SYSTEM AND CALIBRATION METHOD THEREFOR**

(76) Inventor: **Erik Jan Banning**, 5038 Creekbend Dr., Houston, TX (US) 77035

( * ) Notice:     Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1406 days.

(21) Appl. No.: **11/135,911**

(22) Filed: **May 24, 2005**

(65)               **Prior Publication Data**

US 2005/0270494 A1       Dec. 8, 2005

**Related U.S. Application Data**

(60) Provisional application No. 60/575,671, filed on May 28, 2004, provisional application No. 60/644,649, filed on Jan. 18, 2005.

(51) **Int. Cl.**
*G06F 3/033*          (2006.01)

(52) **U.S. Cl.** ...................................... **345/157**; 345/156

(58) **Field of Classification Search** .......... 345/156–173
See application file for complete search history.

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,349,815 | A | 9/1982 | Spooner |
| 4,562,433 | A | 12/1985 | Biferno |
| 4,565,999 | A | 1/1986 | King et al. |
| 4,567,479 | A | 1/1986 | Boyd |
| 4,641,255 | A | 2/1987 | Hohmann |
| 4,654,648 | A | 3/1987 | Herrington et al. |
| 4,682,159 | A | 7/1987 | Davison |
| 4,682,195 | A | 7/1987 | Yilmaz |
| 4,730,186 | A | 3/1988 | Koga et al. |
| 4,745,402 | A | 5/1988 | Auerbach |
| 4,768,028 | A | 8/1988 | Blackie |
| 4,787,051 | A | 11/1988 | Olson |
| 4,796,019 | A | 1/1989 | Auerbach |
| 4,823,170 | A | 4/1989 | Hansen |
| 4,959,721 | A | 9/1990 | Micic et al. |
| 5,009,501 | A | 4/1991 | Fenner et al. |
| 5,023,943 | A | 6/1991 | Heberle |
| 5,045,843 | A | 9/1991 | Hansen |
| 5,047,754 | A | 9/1991 | Akatsuka et al. |

(Continued)

OTHER PUBLICATIONS

Mark S.D. Ashdown, "Personal projected displays", Mar. 2004, ISSN 1476-2986, pp. 83-87 (http://www.mark.ashdown.name/research/Ashdown-UCAM-CL-TR-585.pdf).

(Continued)

*Primary Examiner*—Nitin Patel
(74) *Attorney, Agent, or Firm*—Wong, Cabello, Lutsch, Rutherford & Brucculeri LLP

(57)               **ABSTRACT**

A method for controlling movement of a computer display cursor based on a point-of-aim of a pointing device within an interaction region includes projecting an image of a computer display to create the interaction region. At least one calibration point having a predetermined relation to said interaction region is established. A pointing line is directed to substantially pass through the calibration point while measuring a position of and an orientation of the pointing device. The pointing line has a predetermined relationship to said pointing device. Movement of the cursor is controlled within the interaction region using measurements of the position of and the orientation of the pointing device.

**53 Claims, 20 Drawing Sheets**



A73

## US 7,746,321 B2

Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,095,302 A | | 3/1992 | McLean et al. |
| 5,231,674 A | | 7/1993 | Cleveland et al. |
| 5,235,363 A | | 8/1993 | Vogeley et al. |
| 5,262,777 A | | 11/1993 | Low et al. |
| 5,274,363 A | | 12/1993 | Koved et al. |
| 5,296,838 A | | 3/1994 | Suzuki |
| 5,339,095 A | | 8/1994 | Redford |
| 5,359,348 A | | 10/1994 | Pilcher et al. |
| 5,367,315 A | | 11/1994 | Pan |
| 5,394,360 A | | 2/1995 | Fukumoto |
| 5,448,261 A | | 9/1995 | Koike et al. |
| 5,469,193 A | | 11/1995 | Giobbi et al. |
| 5,484,966 A | | 1/1996 | Segen |
| 5,502,459 A | | 3/1996 | Marshall et al. |
| 5,506,605 A | | 4/1996 | Paley |
| 5,602,568 A | | 2/1997 | Kim |
| 5,631,669 A | | 5/1997 | Stobbs et al. |
| 5,638,092 A | | 6/1997 | Eng et al. |
| 5,654,741 A | | 8/1997 | Sampsell et al. |
| 5,668,574 A | | 9/1997 | Jarlance-Huang |
| 5,734,371 A | | 3/1998 | Kaplan |
| 5,793,354 A | | 8/1998 | Kaplan |
| 5,796,386 A | | 8/1998 | Lipscomb et al. |
| 5,883,616 A | | 3/1999 | Koizumi et al. |
| 5,898,421 A | | 4/1999 | Quinn |
| 5,898,424 A | | 4/1999 | Flannery |
| 5,926,168 A | * | 7/1999 | Fan ........................... 345/158 |
| 5,929,444 A | | 7/1999 | Leichner |
| 5,952,996 A | | 9/1999 | Kim et al. |
| 5,963,134 A | | 10/1999 | Bowers et al. |
| 5,999,167 A | | 12/1999 | Marsh et al. |
| 6,037,943 A | | 3/2000 | Crone et al. |
| 6,067,085 A | | 5/2000 | Modh et al. |
| 6,069,594 A | | 5/2000 | Barnes et al. |
| 6,084,556 A | | 7/2000 | Zwern |
| 6,104,380 A | | 8/2000 | Stork et al. |
| 6,104,390 A | | 8/2000 | Sturgeon et al. |
| 6,130,663 A | | 10/2000 | Null |
| 6,130,664 A | | 10/2000 | Suzuki |
| 6,171,190 B1 | | 1/2001 | Thanasack et al. |
| 6,184,863 B1 | | 2/2001 | Sibert et al. |
| 6,186,630 B1 | | 2/2001 | Miyashita |
| 6,212,296 B1 | | 4/2001 | Stork et al. |
| 6,271,831 B1 | | 8/2001 | Escobosa et al. |
| 6,275,214 B1 | | 8/2001 | Hansen |
| 6,292,171 B1 | * | 9/2001 | Fu et al. ........................ 345/156 |
| 6,297,804 B1 | | 10/2001 | Kashitani |
| 6,326,979 B1 | | 12/2001 | Radeztsky |
| 6,335,723 B1 | | 1/2002 | Wood et al. |
| 6,342,878 B1 | | 1/2002 | Chevassus et al. |
| 6,353,434 B1 | | 3/2002 | Akebi |
| 6,373,961 B1 | | 4/2002 | Richardson et al. |
| 6,385,331 B2 | | 5/2002 | Harakawa et al. |
| 6,388,656 B1 | | 5/2002 | Chae |
| 6,400,139 B1 | | 6/2002 | Khalfin et al. |
| 6,404,416 B1 | | 6/2002 | Kahn et al. |
| 6,411,277 B1 | | 6/2002 | Shah-Nazaroff |
| 6,417,840 B1 | | 7/2002 | Daniels |

| | | | |
|---|---|---|---|
| 6,424,340 B1 | | 7/2002 | Holtzman et al. |
| 6,452,606 B1 | | 9/2002 | Luzzatto |
| 6,483,499 B1 | | 11/2002 | Li et al. |
| 6,492,981 B1 | | 12/2002 | Stork et al. |
| 6,504,526 B1 | | 1/2003 | Mauritz |
| 6,507,339 B1 | | 1/2003 | Tanaka |
| 6,520,647 B2 | | 2/2003 | Raskar |
| 6,529,186 B1 | | 3/2003 | Thayer |
| 6,545,661 B1 | | 4/2003 | Goschy et al. |
| 6,545,664 B1 | | 4/2003 | Kim |
| 6,558,002 B1 | | 5/2003 | Miyashita |
| 6,559,833 B2 | | 5/2003 | Rowe |
| 6,567,071 B1 | | 5/2003 | Curran et al. |
| 6,600,478 B2 | | 7/2003 | White et al. |
| 6,606,083 B1 | | 8/2003 | Murray et al. |
| 6,608,668 B2 | | 8/2003 | Gharib et al. |
| 6,642,918 B2 | | 11/2003 | Uchida et al. |
| 6,764,185 B1 | | 7/2004 | Beardsley |
| 6,877,863 B2 | | 4/2005 | Wood et al. |
| 7,091,949 B2 | * | 8/2006 | Hansen ........................ 345/158 |
| 7,158,117 B2 | * | 1/2007 | Sato et al. ................... 345/158 |
| 7,158,118 B2 | | 1/2007 | Liberty |
| 7,239,301 B2 | | 7/2007 | Liberty et al. |
| 7,262,760 B2 | | 8/2007 | Liberty |
| 7,414,611 B2 | | 8/2008 | Liberty |
| 7,489,298 B2 | | 2/2009 | Liberty et al. |
| 2001/0010514 A1 | * | 8/2001 | Ishino ........................ 345/158 |
| 2001/0043719 A1 | | 11/2001 | Harakawa et al. |
| 2001/0045940 A1 | * | 11/2001 | Hansen ........................ 345/158 |
| 2002/0042699 A1 | | 4/2002 | Tanaka et al. |
| 2002/0075386 A1 | | 6/2002 | Tanaka |
| 2002/0079143 A1 | | 6/2002 | Silverstein et al. |
| 2002/0084980 A1 | | 7/2002 | White et al. |
| 2002/0085097 A1 | | 7/2002 | Colmenarez et al. |
| 2002/0089489 A1 | | 7/2002 | Carpenter |
| 2003/0006959 A1 | | 1/2003 | Varanda |
| 2003/0169233 A1 | * | 9/2003 | Hansen ........................ 345/158 |
| 2003/0193572 A1 | | 10/2003 | Wilson |
| 2003/0222892 A1 | * | 12/2003 | Diamond et al. ............ 345/647 |
| 2004/0027328 A1 | * | 2/2004 | Yang ........................ 345/156 |
| 2004/0070564 A1 | | 4/2004 | Dawson |
| 2004/0095317 A1 | | 5/2004 | Zhang |
| 2004/0233461 A1 | | 11/2004 | Armstrong et al. |
| 2004/0252102 A1 | | 12/2004 | Wilson |
| 2005/0091297 A1 | * | 4/2005 | Sato et al. ................... 708/442 |
| 2005/0093823 A1 | | 5/2005 | Hinckley et al. |
| 2005/0270494 A1 | | 12/2005 | Banning |
| 2007/0060383 A1 | | 3/2007 | Dohta |
| 2007/0066394 A1 | | 3/2007 | Ikeda et al. |
| 2007/0298882 A1 | | 12/2007 | Marks et al. |
| 2008/0136796 A1 | * | 6/2008 | Dowling ........................ 345/204 |

### OTHER PUBLICATIONS

Mark Ashdown, Peter Robinson; The Escritoire: A Personal Projected Display for Interacting With Documents; Technical Report; No. 538; University of Cambridge Computer Laboratory; Jun. 2002; UCAM-CL-TR-538; ISSN 1476-2986.

* cited by examiner

**U.S. Patent**    Jun. 29, 2010    Sheet 1 of 20    US 7,746,321 B2

A75



Fig. 1

A76



70
Projection
image

721c

71
Interaction
region

72
Interaction
structure

721d

60
Projection
region

721a

721b

211
Point-of-aim-
distance

21
Pointing line

20
Pointing device

40
Projection device

30
Base station

521a

521c

501
Cursor

521d

521b

50
Computer
screen
image

51
Computer
screen
interaction
region

z

y

x

Fig. 2

Case 6:11-cv-00496-LED   Document 79-1   Filed 12/30/11   Page 5 of 42 PageID #: 314

U.S. Patent    Jun. 29, 2010    Sheet 3 of 20    US 7,746,321 B2

A77



Fig. 3

Case 6:11-cv-00496-LED   Document 79-1   Filed 12/30/11   Page 6 of 42 PageID #: 315

U.S. Patent

Jun. 29, 2010

Sheet 4 of 20

US 7,746,321 B2

A78



Fig. 4



Fig. 5

U.S. Patent    Jun. 29, 2010    Sheet 6 of 20    US 7,746,321 B2

Case 6:11-cv-00496-LED    Document 79-1    Filed 12/30/11    Page 8 of 42 PageID #: 317

A80



Fig. 6

Case 6:11-cv-00496-LED    Document 79-1    Filed 12/30/11    Page 9 of 42 PageID #: 318

U.S. Patent    Jun. 29, 2010    Sheet 7 of 20    US 7,746,321 B2

A81



Fig. 7

Case 6:11-cv-00496-LED    Document 79-1    Filed 12/30/11    Page 10 of 42 PageID #: 319

U.S. Patent    Jun. 29, 2010    Sheet 8 of 20    US 7,746,321 B2

A82



Fig. 8

**U.S. Patent**

Jun. 29, 2010

Sheet 9 of 20

US 7,746,321 B2

A83



Fig. 9

Case 6:11-cv-00496-LED   Document 79-1   Filed 12/30/11   Page 12 of 42 PageID #:  321

U.S. Patent

Jun. 29, 2010

Sheet 10 of 20

US 7,746,321 B2

A84



Fig. 10

A85



- Conceive set P of n 3D points C(i)  that completely determine interaction structure **72**
- Conceive 3D point CA lying perpendicularly away from interaction region **71**
- Conceive set A of n 3D lines A(i) connecting points C(i) to CA
- Initialize counters a = n

120a

Construct a-priori relationships between coords of points in set P, based on available positional and/or orientational information

yes

Info available on position/orientation of interaction structure **72** ?

120b

120c

no

120d

1. Remove line A(a) from set A
2.  a = a – 1

120g

no

a = 0 ?

yes

yes

All C(i) uniquely determinable using set A and a-priori relationships ?

no

Add line A(a+1) to set A

120e

120f

Obtain full 3D information on lines in set A

120h

Fig. 11

A86



Fig. 12

Case 6:11-cv-00496-LED   Document 79-1   Filed 12/30/11   Page 15 of 42 PageID #: 324

U.S. Patent       Jun. 29, 2010       Sheet 13 of 20       US 7,746,321 B2

A87



Fig. 13

A88



Fig. 14

U.S. Patent

Jun. 29, 2010

Sheet 15 of 20

US 7,746,321 B2

Case 6:11-cv-00496-LED    Document 79-1    Filed 12/30/11    Page 17 of 42 PageID #: 326

A89



Fig. 15

Case 6:11-cv-00496-LED    Document 79-1    Filed 12/30/11    Page 18 of 42 PageID #:  327

U.S. Patent

Jun. 29, 2010

Sheet 16 of 20

US 7,746,321 B2

A90



Fig. 16

Case 6:11-cv-00496-LED    Document 79-1    Filed 12/30/11    Page 19 of 42 PageID #: 328

U.S. Patent

Jun. 29, 2010

Sheet 17 of 20

US 7,746,321 B2

A91



Fig. 17

U.S. Patent          Jun. 29, 2010          Sheet 18 of 20          US 7,746,321 B2



*Fig. 18*



207
Contact-sensing
means

20
Pointing device

203b
Button

203a
Button

200
Any or all of
features 201-206

205
Power source

204
Communication and
control means

Fig. 19



Fig. 20

Prior art

US 7,746,321 B2

1

**EASILY DEPLOYABLE INTERACTIVE DIRECT-POINTING SYSTEM AND PRESENTATION CONTROL SYSTEM AND CALIBRATION METHOD THEREFOR**

CROSS-REFERENCE TO RELATED APPLICATIONS

Priority is claimed from U.S. Provisional Application No. 60/575,671 filed on May 28, 2004 and from U.S. Provisional Application No. 60/644,649 filed on Jan. 18, 2005.

STATEMENT REGARDING FEDERALLY SPONSORED RESEARCH OR DEVELOPMENT

Not applicable.

BACKGROUND OF THE INVENTION

1. Field of the Invention

The invention relates generally to devices for making presentations in front of audiences and, more specifically, to devices and methods for making presentations for which interaction with the displayed information through direct-pointing is desired or for which verbal interaction with the audience may be anticipated.

2. Background Art

Technology for presenting computer-generated images on large screens has developed to the point where such presentations are commonplace. For example, the software package POWERPOINT, sold by Microsoft Corp., Redmond, Wash., may be used in combination with a so-called 'beamer' to generate interactive presentation material and project for viewing by an audience. Often, such presentations are held in rooms not specifically equipped for the purpose of showing presentations, in which case use is made of a portable beamer in combination with a so-called 'laptop' computer. Under these circumstances the projection surface may be a wall of the room.

During a presentation it is desirable for the presenter to be able to move freely in front of the audience while retaining the capability to interact with the presentation and point to specific features on the displayed images. It would also be desirable for the presenter to be able to capture verbal comments made by members of the audience so as to amplify and/or play them back to the larger audience.

In general, interaction with a computer is often facilitated by pointing devices such as a 'mouse' or a 'trackball' that enable manipulation of a so-called 'cursor'. Traditionally, these devices were physically connected to the computer, thus constraining the freedom-of-movement of the user. More recently, however, this constraint has been removed by the introduction of wireless pointing devices such as the GYRO-MOUSE, as manufactured by Gyration, Inc.

Broadly speaking, pointing devices may be classified in two categories: a) devices for so-called 'direct-pointing' and b) devices for so-called 'indirect-pointing'. Direct pointing devices are those for which the physical point-of-aim coincides with the item being pointed at, i.e., it lies on the line-of-sight. Direct pointing devices include the so-called 'laser pointer' and the human pointing finger. Indirect pointing devices include systems where the object of pointing (e.g., a cursor) bears an indirect relationship to the physical point-of-aim of the pointing device; examples include a mouse and a trackball. It needs no argument that direct-pointing systems are more natural to humans, allowing faster and more accurate pointing actions.

2

Indirect pointing devices known in the art include the following. U.S. Pat. No. 4,654,648 to Herrington et al. (1987), U.S. Pat. No. 5,339,095 to Redford (1994), U.S. Pat. No. 5,359,348 to Pilcher et al. (1994), U.S. Pat. No. 5,469,193 to Giobbi et al. (1995), U.S. Pat. No. 5,506,605 to Paley (1996), U.S. Pat. No. 5,638,092 to Eng et al. (1997), U.S. Pat. No. 5,734,371 to Kaplan (1998), U.S. Pat. No. 5,883,616 to Koizumi et al. (1999), U.S. Pat. No. 5,898,421 to Quinn (1999), U.S. Pat. No. 5,963,134 to Bowers et al. (1999), U.S. Pat. No. 5,999,167 to Marsh et al. (1999), U.S. Pat. No. 6,069,594 to Barnes et al. (2000), U.S. Pat. No. 6,130,664 to Suzuki (2000), U.S. Pat. No. 6,271,831 to Escobosa et al. (2001), U.S. Pat. No. 6,342,878 to Chevassus et al. (2002), U.S. Pat. No. 6,388,656 to Chae (2002), U.S. Pat. No. 6,411,277 to Shah-Nazaroff (2002), U.S. Pat. No. 6,492,981 Stork et al. (2002), U.S. Pat. No. 6,504,526 to Mauritz (2003), U.S. Pat. No. 6,545,664 to Kim (2003), U.S. Pat. No. 6,567,071 to Curran et al. (2003) and U.S. Patent Application Publication No. 2002/0085097 to Colmenarez et al. (2002). Each of the foregoing publications discloses a system for which the 2 dimensional or 3 dimensional position, orientation and/or motion of an object, such as a handheld pointing device, are measured with respect to some reference coordinate system using appropriate means. Such means include acoustic devices, electromagnetic devices, infrared devices, visible light emitting diode (LED) devices, charge coupled devices (CCD), accelerometer and gyroscopic motion detectors, etc. Although for some of the foregoing devices the reference coordinate system may be positioned close to the display means, no information on the actual position of the presentation display with respect to the system is used, causing the resulting pointing action to be inherently indirect and, hence, less natural to the human operators of such systems.

Other inherently indirect-pointing systems that do not require the position or orientation of the pointing device to be known include devices such as disclosed in U.S. Pat. No. 5,095,302 to McLean et al. (1992) and U.S. Pat. No. 5,668,574 to Jarlance-Huang (1997). The foregoing patents describe indirect-pointing methods, that do not provide the speed and intuitiveness afforded by direct-pointing systems.

Direct pointing devices are disclosed, for example, in U.S. Pat. No. 4,823,170 to Hansen (1989), which describes a direct-pointing system comprising a light source, a position-sensing detector located adjacent to the light source and a focusing reflector that, in one application, is parabolic shaped and is attached to the pointing device. Additionally, procedures are described to calibrate the system. In the understanding of current applicant, however, the physical location of the position-sensing detector needs to be, at least preferably, adjacent to the display means. The system disclosed in the Hansel '170 patent cannot easily be ported to a room not specifically equipped for this system.

U.S. Pat. No. 5,929,444 to Leichner (1999) discloses a system primarily intended for target shooting practice, but an application as a direct-pointing cursor control apparatus may arguably be anticipated. The system includes transmitting and detecting equipment in a fixed reference base and a moveable pointing device. A calibration routine is described that aligns the detecting and transmitting means while keeping the pointing device (i.e., a gun) aimed at the center of the target. The Leichner '444 patent does not describe methods or means that allow determination of a point-of-aim of a pointing device on a target of which the size and/or orientation have not been predetermined. Consequently, the system disclosed in the Leichner '444 patent is not suitable to be used as a cursor control means for projection surfaces not specifically adapted to be used with such system.

US 7,746,321 B2

3

U.S. Pat. No. 5,952,996 to Kim et al. (1999), U.S. Pat. No. 6,184,863 to Sibert et al. (2001) and US Patent Application Publication No. 2002/0084980 to White et al. (2002) disclose direct-pointing systems where the 3 dimensional position and/or orientation of the pointing device is measured with respect to sources and/or detectors, the physical position of which in relation to the display means is presumed known. Such systems only work in rooms specifically equipped for their use.

U.S. Pat. No. 5,484,966 to Segen (1996) , U.S. Pat. No. 6,335,723 to Wood et al. (2002) and U.S. Pat. No. 6,507,339 to Tanaka (2003) disclose methods suitable for direct-pointing that are useful only if the pointing device is physically close to or touching the display area or volume, for example used with so-called 'interactive whiteboards'. Some of the foregoing patents describe appropriate pointer calibration routines. Such systems are not suitable for presentations where the display surface is out of the presenter's physical reach.

U.S. Pat. No. 6,104,380 to Stork et al. (2000) discloses a direct-pointing system in which at least the 3 dimensional orientation of a handheld pointing device is measured by appropriate means. Additionally, a direct measurement is made of the distance between the pointing device and the displayed image or volume. However, the system disclosed in the Stork et al. '380 patent does not include methods to ascertain the position and orientation of the display means relative to the pointing device. In the foregoing system, these appear to be presumed known. This is also the case for a system disclosed in U.S. Pat. No. 4,768,028 to Blackie (1988), in which the orientation of a helmet-mounted direct-pointing apparatus is measured electromagnetically. The foregoing systems therefore appear to be ill-suited to operate in rooms not specifically equipped for presentation purposes.

U.S. Pat. No. 6,373,961 to Richardson et al. (2002) discloses a direct-pointing system using helmet-mounted eye tracking means. The point-of-gaze relative to the helmet is measured as well as the position and orientation of the helmet relative to the display. The latter is accomplished by equipping the helmet either with means to image sources mounted at fixed positions around the display or with means to image a displayed calibration pattern. Of course, the foregoing system relies on sophisticated helmet mounted equipment capable of, among other things, tracking eye-movement. Moreover, such a system relies on an unobstructed line-of-sight with respect to the display and a substantially constant distance from the display to the helmet-mounted equipment. The disclosed invention does not lend itself to be easily used by a human operator in an arbitrary (not predetermined) presentation setting.

U.S. Pat. No. 6,385,331 to Harakawa et al. (2002) discloses a system that uses infrared technology in combination with image recognition software to distinguish pointing gestures made by the presenter, without the need for an artificial pointing device. The disclosed system, however, requires the presentation room to be set up with highly tuned and sophisticated equipment, and is therefore not easily ported to a different venue.

U.S. Pat. No. 6,404,416 to Kahn et al. (2002) discloses a direct-pointing system where a handheld pointing device is equipped with an optical sensor. In such system either the display is required to be of a specific type (e.g., a cathode ray-based display that uses an electron beam) or the displayed image is required to be enhanced by timed and specific emanations. When pointed to the display, a handheld pointing device may detect the electron beam or the timed emanations, and the timing of these detections may then be used to ascer-

4

tain the point-of-aim. The disclosed system is somewhat similar to the technologies used for so-called light guns in video games as disclosed, for example, in U.S. Pat. No. 6,171, 190 to Thanasack et al. (2001) and U.S. Pat. No. 6,545,661 to Goschy et al. (2003). Of course, such systems require either a specific display apparatus or a specialized modification of the displayed images. Moreover, an uncompromised line-of-sight between the pointer and the display is a prerequisite for such systems.

U.S. Patent Application Publication No. 2002/0089489 to Carpenter (2002) discloses a direct-pointing system that, in one embodiment, positions a computer cursor at a light spot projected by a laser-pointer. The system relies on the use of an image-capturing device to compare a captured image with a projected image. As such, the system disclosed in the '489 application publication makes use of calibration routines in which the user is required to highlight computer-generated calibration marks with the laser pointer. The system disclosed in the '489 patent application publication is not unlike a system disclosed in U.S. Pat. No. 5,502,459 to Marshall et al. (1996). Also, U.S. Pat. No. 5,654,741 to Sampsell et al. (1997), U.S. Pat. No. 6,292,171 to Fu et al. (2001), U.S. Patent Application Publication No. 2002/0042699 to Tanaka et al. (2002) and U.S. Patent Application Publication No. 2002/0075386 to Tanaka (2002) all disclose systems that can detect a light-spot using optical means. Such systems specifically generally require the use of computationally expensive image processing technologies. All of these inventions require a projection surface with adequate diffusion properties, as well as some form of optical system with a steady and uncompromised view of the display area. As such, they limit the freedom-of-movement of the presenter and place limitations on the position and optical characteristics of the necessary equipment. Also, in some of these inventions fast and involuntary movement of the user's hand may result in a cursor that does not move smoothly or a cursor that does not perfectly track the light spot, causing possible confusion with the user.

Other pointing systems known in the art may be classified as other than entirely direct-pointing or indirect-pointing systems. Such systems include one disclosed in U.S. Pat. No. 6,417,840 to Daniels (2002), which is combination of a cordless mouse with a laser pointer. Although this system incorporates a direct-pointing device (i.e., the laser pointer), the method used by the system for interacting with the presentation is indirect (i.e., by means of the mouse) and therefore does not afford the fast and more accurate interactive pointing actions provided by some other direct-pointing systems described in some of the foregoing publications.

Another system known in the art that uses both direct and indirect-pointing methods is described in U.S. Pat. No. 6,297, 804 to Kashitani (2001). The disclosed system is a system for pointing to real and virtual objects using the same pointing device. In the disclosed system, the pointing means switch between a computer controlled light source (e.g., a laser) and a conventional computer cursor, depending on whether or not the user's intended point-of-aim has crossed a boundary between the real and virtual display (i.e., computer-displayed imagery). Various methods are described to establish these boundaries. Although the computer-controlled light source may be regarded as pointing in a direct manner, its point-of-aim is essentially governed by the system operator using an indirect-pointing system such as a mouse. Thus, the disclosed system does not allow for the desired flexibility afforded by truly direct-pointing methods.

Other systems known in the art include those such as disclosed in U.S. Pat. No. 5,796,386 to Lipscomb et al. (1998),

US 7,746,321 B2

5                                       6

which discloses a calibration procedure to establish the relation between coordinate systems associated with a handheld device and, in one embodiment, a display unit. The system disclosed in the Lipscomb et al. '386 patent may arguably be applicable as a direct-pointing cursor control system. The disclosed calibration routine requires the user to register at least three 3 dimensional positions of the handheld device with a central processing unit. The disclosed system does not appear to include calibration methods for the case where the display unit is out of physical reach of the system operator. The system is thus not practical for use at an arbitrary venue.

U.S. Pat. No. 6,084,556 to Zwern (2000) discloses a head-mounted display unit that displays information governed by the orientation of the apparatus, as measured by a tracking device. This way, the system creates the illusion of a large virtual display that is being looked at by the system operator. Of course, the large display alluded to does not constitute a projected presentation. Also, no methods are disclosed in the Zwern '556 patent to establish the relative position of the head-mounted apparatus with respect to the display.

U.S. Patent Application Publication No. 2002/0079143 to Silverstein et al. (2002) discloses a system in which the position of a moveable display with respect to a physical document is established. The '143 patent application publication describes calibration routines in which the user is required to activate a registration button when the moveable display is over some predetermined position on the physical document. The disclosed system only relates to 2 dimensional applications and, moreover, cannot be used in situations where the interaction region is out of the system operator's physical reach.

U.S. Pat. No. 5,339,095 to Redford (1994) discloses an indirect-pointing system where the pointing device is equipped with non-directional microphone. Also, U.S. Pat. No. 5,631,669 to Stobbs et al. (1997) discloses the inclusion of a non-directional microphone unit in an indirect-pointing device.

SUMMARY OF THE INVENTION

One aspect of the invention is a method for controlling a parameter related to a position of a computer display cursor based on a point-of-aim of a pointing device within an interaction region. The method includes projecting an image of a computer display to create the interaction region. At least one calibration point having a predetermined relation to the interaction region is established. A pointing line is directed to substantially pass through the calibration point while measuring a position of and an orientation of the pointing device. The pointing line has a predetermined relationship to said pointing device. The parameter related to the position of the cursor within the interaction region is controlled using measurements of the position of and the orientation of the pointing device.

Another aspect of the invention is a method for controlling a computer display cursor in an interaction region. According to this aspect, the method includes establishing a calibration point having a predetermined relation to the interaction region. At least one of a position and orientation of a pointing line is first measured while directing the pointing line to substantially pass through the calibration point. The first measurement is used to constrain a parameter of the calibration point. The pointing line has a predetermined relationship to at least one of position and orientation of a pointing device. A characteristic feature of the interaction region is used to establish a property of a common point of the pointing line and the interaction region measured relative to the interaction region.

At least one of position and orientation of the pointing device is measured, and the characteristic feature of the interaction region and measurement of the pointing device are used to control the cursor on a computer display image.

Another aspect of the invention is a method for controlling a parameter related to position of a cursor on a computer screen image. The method according to this aspect includes measuring a first angle between a pointing line and a first line, and measuring a second angle between the pointing line and a second line. The first line is related in a predetermined way to a geographic reference, and the second line is related in a predetermined way to a geographic reference. The pointing line has a predetermined relation to said pointing device. A first parameter related to the first angle, and a second parameter related to the second angle are used to control the parameter of the cursor on said computer screen image, whereby the cursor position parameter is controlled by movement of the pointing device.

Other aspects and advantages of the invention will be apparent from the following description and the appended claims.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows a pointing device and base station according to a first embodiment.

FIG. 2 shows a presentation venue and computer screen.

FIG. 3 shows program steps for selection of appropriate assumptions according to embodiments 1, 2 and 3.

FIG. 4 shows program steps for construction of information set according to a first embodiment.

FIG. 5 shows program steps for ascertaining necessary 3D data according to a first embodiment.

FIG. 6 shows program steps for control of pointing device elements and computer cursor according to several embodiments.

FIG. 7 shows one example of a first embodiment.

FIG. 8 shows a second example of one embodiment of the invention.

FIG. 9 shows a third example of one embodiment.

FIG. 10 shows a pointing device and base station according to a second embodiment.

FIG. 11 shows program steps for construction of information set according to a second and third embodiment.

FIG. 12 shows program steps for ascertaining necessary 3D data according to the second embodiment.

FIG. 13 shows a pointing device and base station according to a third embodiment

FIG. 14 shows program steps for ascertaining necessary 3D data according to the third embodiment.

FIG. 15 shows projection of interaction structure on horizontal and vertical planes.

FIG. 16 shows a presentation device according to a fourth embodiment.

FIG. 17 shows program steps for sound recording and playback according to the fourth embodiment.

FIG. 18 shows an image of calibration point and light spots at the points-of-aim.

FIG. 19 shows an alternative embodiment of pointing device.

FIG. 20 shows a prior art: construction of method M for a quadrangle.

DETAILED DESCRIPTION

A first embodiment of the invention will be described with reference to FIG. 1. A pointing device 20 has associated with

US 7,746,321 B2

7

it a coordinate system x' y' z'. A portable base station **30** has associated with it a coordinate system x y z. Pointing device **20** and base station **30** may be equipped with coordinate sensing devices, **201** and **301**, respectively, that enable measurement of the 3 dimensional position and 3 dimensional orientation of pointing device **20** and, therefore, of a pointing line **21** (see also FIG. **2**) that substantially intersects pointing device **20**, all measured relative to the x y z coordinate system. Pointing line **21** may substantially coincide with the long axis of pointing device **20**. For example, coordinate sensing devices **201** and **301** may be electromagnetic tracking devices, such as the 3SPACE FASTRAK® system, manufactured by Polhemus, a Kaiser Aerospace & Electronics Company, Colchester, Vt. Alternatively, coordinate sensing device **201** and **301** may be based on ultrasonic tracking systems such as those used in the LOGITECH 2D/6D computer mouse, commercially available from Logitech Inc., Fremont, Calif. Other embodiments for coordinate sensing device **201** and **301** may include, without limitation, sensors based on LEDs, CCDs, accelerometers, inclinometers, gyroscopes, compasses, magnetometers, etc. Also, combinations of such different types of sensors may be used to acquire redundant measurements for quality control purposes. For example, a controlled-source electromagnetic position tracking system may be combined with compasses and inclinometers. Those skilled in the art will appreciate that independent measurements of the Earth's magnetic field and gravity may be used to enhance the measurements made by a controlled-source position detecting system. In the invention, any system may be used that is capable of determining at least parts of the orientation and position in three dimensions, with respect to coordinate system x y z, of a line-segment that substantially intersects pointing device **20**.

Base station **30** may comprise a plurality of related physical entities, such as described in U.S. Pat. No. 6,608,668 to Faul et al. (2003); for clarity of explanation one of these physical entities will be associated with coordinate system x y z and be denoted as base station **30**, the center of which substantially coincides with the origin of coordinate system x y z. For purposes of explanation of the invention, the origin of coordinate system x' y' z' substantially coincides with the center of pointing device **20**, and the z'-axis is substantially aligned with the long axis of pointing device **20**.

Pointing device **20** may also be provided with a light-beam projector **202**, for example a laser. The physical position and orientation of the projected beam of light with respect to coordinate system x' y' z' may be established with suitable accuracy at the place of manufacture of the pointing device **20** and may be presumed to be known. For purposes of explanation, the beam of light from the light beam projector **202** substantially coincides with the z'-axis. Additionally, one or more control buttons **203***a*, **203***b* or the like may be provided, as well as communication and control device **204**. Communication and control device **204** may be used to control various features of pointing device **20** and may also communicate via wire, or wirelessly, with base station **30** and/or a central processing unit (not shown separately), such as a COMPAQ Armada M700 as manufactured by Hewlett Packard Company, Palo Alto, Calif. The central processing unit may also control a presentation with which user interaction is desired. For clarity of the description which follows, the central processing unit will be referred to hereinafter as "the computer". Furthermore, pointing device **20** may include an internal power source **205**, for example a battery, or instead may be connected such as by wire to an external power source.

In addition to coordinate sensing device **301**, base station **30** may be provided with communication and control device

8

**304**. Communication and control device **304** may be used to control various features of base station **30**. Communication and control device **304** may communicate with pointing device **20** and/or with the computer (not shown) that may control the presentation images. The communication and control device **304** may use wire- or wireless technology. In the present embodiment communication with the computer occurs via a universal serial bus (USB) compatible device or the like (not shown). Communication and control device **304** may communicate wirelessly with a relay device (not shown) that communicates via a USB compatible device or the like with the computer (not shown) that may control the presentation with which user-interaction is desired. There may be visible markings **302** on base station **30** that indicate the orientation of one or more coordinate planes defined by prescribed relations between coordinates x, y, z, as well as features of the position of the origin of the x y z coordinate system. For example, a line may be used to indicate the z-x-plane of the x y z coordinate system, for which the y-coordinate is zero; another line may be used to indicate the z-y-plane, for which the x-coordinate is zero. Base station **30** may be provided with a level-sensing device **303** to determine whether or not one of the coordinate planes of coordinate system x y z is substantially horizontal. Level-sensing device **303** may measure two angles or equivalent characteristics that define the orientation of one of the coordinate planes of coordinate system x y z with respect to a horizontal surface. Level-sensing device **303** can be a device such as disclosed in U.S. Pat. No. 6,466,198 to Feinstein (2002), which makes use of model ADXL202 accelerometers sold by Analog Devices Inc., Norwood, Mass. The disclosed accelerometers provide tilt angle information depending on their inclination relative to Earth's gravity. It will be apparent to those skilled in the art that many other types of sensors may be used as embodiment for level-sensing device **303**, for example, capacitance-type bubble levels. See, for example, U.S. Pat. No. 5,606,124 to Doyle et al. Finally, base station **30** may be equipped with a power source **305**, for example a battery, or may have a connection to an external power source.

Referring to FIG. **2**, a projection device **40** is arranged to project an image **50** generated by, for example, the computer (not shown). The projection device **40** may be used to generate a projection image **70** on a projection region **60**. For example, projection device **40** may be a 2000 lumen projector, model XL8U, manufactured by Mitsubishi Corp. Projection region **60** may be a surface, such as a wall or a projection screen. The projection region **60** may define a flat plane or a may define a more elaborate 2 dimensional (2D) or even 3 dimensional (3D) structure. In FIG. **2**, projection region **60** is shown as a screen, but this is only for purpose of illustrating the principle of the invention and is not intended to limit the scope of the invention. Alternatively the combination of projection device **40** and projection region **60** may be incorporated in one and the same physical device, such as a television receiver (cathode ray tube display), liquid crystal display (LCD) screen or the like.

There is a region of space that is designated as a region on which interaction with the user is desired. This region is denoted as the interaction region **71**. The interaction region **71** may be flat (planar) or may be a more elaborate 2D or even 3D structure. The interaction region **71** may have features in common with projection image **70** and may be associated in some way with a computer screen interaction region **51**. In the present embodiment, however, it will be assumed that interaction region **71** or a scaled version thereof, is substantially part of or substantially coincides with projection image **70**. Moreover, it will be assumed in this embodiment that inter-

US 7,746,321 B2

9
10

action region **71** substantially coincides with the projection of computer screen interaction region **51** as projected by projection device **40**.

For display systems which include a separate projection device **40** and projection region **60**, the optical axis of projection device **40** may not be aligned with any vector normal to projection region **60**. Moreover, projection region **60** may not be flat and therefore may not even be a 2D shape. Consequently, projection image **70** and interaction region **71** may in general not be flat or rectangular, even if the imagery generated by the computer is scaled so as to be presented in rectangular form. In this embodiment, however, it is assumed that projection region **60**, projection image **70** and interaction region **71** are substantially flat. Furthermore, it is assumed in this embodiment that interaction region **71** is substantially a quadrangle and that the associated computer screen interaction region **51** is substantially rectangular.

Additionally, calibration points **721a**, **721b**, **721c**, **721d** may be provided that may define characteristic features of interaction region **71**. For example, interaction region **71** may be trapezoidal in shape, in which case calibration points **721a**, **721b**, **721c**, **721d** may define corners of interaction region **71** or corners of a scaled version thereof. Furthermore, screen marks **521a**, **521b**, **521c**, **521d** may be provided, and may but need not be associated with calibration points **721a**-**721d**. For example, calibration points **721a**-**721d** may coincide with the projected versions of screen marks **521a**-**521d** and may in this way be identified by projection device **40**. Calibration points **721a**-**721d** may also be identified by other means than projection, for example by unique descriptions such as the 'upper right corner of interaction region **71**', 'center of interaction region **71**' etc.

The operation of the present embodiment will now be described with reference to FIGS. **1**, **2** and **3**. A display system is set up at the venue where a presentation is to made, which can be a combination of a portable projection device **40** and projection surface **60**, for example a wall. The display system is connected, using appropriate interconnection devices, to the computer (which may be in the base station **30** or located elsewhere) that generates the presentation images.

The system user positions base station **30** at a convenient location, preferably not far from where the user intends to make the presentation display. The user may position base station **30** in such a way that one of the coordinate planes of the x y z coordinate system is substantially parallel or substantially coincident with projection region **60**. The visual markings **302** may assist in such positioning. Subsequently, the user connects base station **30** to the computer (not shown), for example via a USB compatible device connection (not shown), or using a wireless relay device (not shown). The computer may be disposed in the base station **30** in some embodiments. In some embodiments, the computer may recognize the base station connection and start a program, part of which may be contained in the communication and control device **304**, in communication and control device **204**, or in control logic contained in the wireless relay device (not shown). Alternatively, the user may be required to load the program into the computer manually via a CD-ROM drive, a floppy drive, memory stick (USB mass storage device—not shown) or the like. However it is loaded into the computer, the program may initiate a calibration routine that has as its object establishment of the shape, position, size and orientation of a defined interaction structure **72** relative to the x y z coordinate system. The interaction structure **72** is assumed to substantially coincide with interaction region **71**. The operation of the program will now be explained with reference to FIG. **3**.

At **80a** the program is initiated. During step **80b** a default assumption is made regarding interaction region **71**. Specifically, interaction region **71** is assumed to substantially coincide with a well-defined interaction structure **72** (FIG. **2** shows an interaction region **71** and an interaction structure **72** that are clearly not identical; this difference is however only meant as an example, and as a practical matter is preferably as small as possible). At **80b** default values are entered for the orientation and position of this interaction structure **72**. For example, the default setting may assume interaction region **71** to substantially coincide with an interaction structure **72** that is a (flat) quadrangle positioned in a vertical plane that substantially intersects the origin of the x y z coordinate system associated with base station **30**. As another example, the default setting may provide that interaction region **71** substantially coincides with an interaction structure **72** that is an isosceles trapezoid of which the parallel edges are horizontal and of which the position is unknown. Using such default values, calibration points **721a**-**721d** not only define characteristic features of interaction region **71** but also of interaction structure **72**.

At **80c** a decision is made whether the default values for interaction region **71** and interaction structure **72** should be accepted or overridden by the user. In making this decision, input from level-sensing device **303** and visible markings **302** on base station **30** may be used. If the defaults are to be accepted, the program continues to **80j**, the details of which are explained below with reference to FIG. **4**. If the defaults are overridden, the program continues at **80d** to **80i**, during each of which the user may override any of the default settings. The user may be aided during any of **80d** to **80i** by a library of predetermined shapes, predetermined orientations and/or predetermined positions, or the user can be provided by the program with the capability to construct custom shapes, orientations and/or positions. In any case, the program continues to **80j**.

It will be appreciated by those skilled in the art that once an assumption has been made regarding the shape of interaction structure **72**, it is possible to construct a set of three dimensionally distributed points in space that completely determines the 3D position, orientation and size of the interaction structure **72**. The number of points in the set will depend on the complexity of the assumed shape and the ingenuity with which the points are chosen. For example, a rectangular shape that is arbitrarily oriented in space is completely determined by a set of 3 points that coincide with 3 of its corners, but is also completely determined by a set of 8 points, pairs of which may determine each of the four edges of the rectangle.

Referring to FIG. **4**, describing details of program element **80j**, the computer program continues at **90a**, at which a set P is generated that includes a quantity n of points in space, each represented as C(i) ($0 < i < n+1$) that uniquely determine interaction structure **72**, together with descriptions of their roles in determining this structure. For example, if the program elements outlined in FIG. **3** reveal that interaction region **71** is assumed rectangular, set P may hold three points described as the upper-left corner, the lower-left corner and the upper-right corner of a rectangular interaction structure **72**. If, alternatively, the projection of computer screen interaction region **51** is substantially rectangular, and this projected rectangle has the same center but is physically two times smaller than interaction structure **72**, the three points may be described as the upper-right corner, the lower-left corner and the lower-right corner of a rectangle that has the same center but is two times smaller than interaction structure **72**. Thus, by carefully choosing the points in set P together with their description, any interaction structure **72** may be completely determined.

US 7,746,321 B2

11

In addition to set P, a 3D point CA and another 3D point CB are determined at **90**a. These additional 3D points are determined so as to lie away from interaction region **71**, that is, they lie at some distance out of the plane that is closest to or substantially contains interaction region **71**. The distance may be comparable to an edge of projection image **70**. For example, point CA may be determined to lie near projection device **40** and point CB may be determined to lie at a distance from point CA that may be equal to the distance between projection device **40** and projection surface **60**, measured substantially parallel to projection surface **60**. Other choices for point CA and point CB may also be used. Additionally, sets A and B are generated during step **90**a. Set A includes a number n of lines A(i), each of which connects point CA to one of the points C(i) (0<i<n+1) in set P. Likewise, set B holds a number n of lines B(i), each of which connects point CB to one of the points C(i) (0<i<n+1) in set P. Finally, at **90**a, counters a, b are both initialized to the value of n.

Flow then continues on to step **90**b, where a decision is made whether the program elements outlined in FIG. **3** have revealed any information on the 3D position and orientation of interaction structure **72**. If the decision is positive flow continues to step **90**c, where this information is used to establish a priori relationships between the coordinates of the points in set P. For example, the steps outlined in FIG. **3** may have revealed that interaction structure **72** is assumed to coincide with the x-z plane, in which case the a priori relationships may include the requirement that the y-coordinates of all points in set P are equal to zero. A pre-set library of a priori relationships may be provided to aid in the execution of this program element.

The program continues to **90**d, which may also be reached from **90**b if the decision at **90**b is negative. At **90**d, line B(b) is removed from set B, after which counter b is decremented by 1.

The program continues to **90**e, where a decision is made whether complete 3D information on the lines in sets A and B, together with a priori information, constitutes enough information to uniquely determine the coordinates of all the points in set P. For example, the program elements outlined in FIG. **3** may have determined that interaction region **72** is assumed to be rectangular, but no information is known regarding its orientation or position. In this case set P may contain three points, corresponding to three corners of a rectangular interaction structure **72**. Each point C(i) (0<i<4) in set P would then be uniquely determined by the intersection of a line from set A and a line from set B if and only if sets A and B contained three lines each.

If the decision at **90**e is negative, the program continues to **90**f, where line B(b+1) is added once more to set B.

If the decision at **90**e is positive, program flow continues to **90**g. The program flow may also continue from **90**f to **90**g. At **90**g a decision is made whether counter b has reached zero, in which case the lines left in set B (which number may be equal to zero) are deemed necessary for unique determination of the coordinates of all the points in set P. If the decision at **90**g is positive, program flow continues to **90**h. If the decision at **90**g is negative, program flow reverts to **90**d.

During **90**h, line A(a) is removed from set A, after which counter a is decremented by 1. Program flow then continues to **90**i, where a decision is made whether complete 3D information on the lines in sets A and B, together with a priori information, constitute enough information to uniquely determine the coordinates of all the points in set P.

If the decision at **90**i is negative, program flow continues to step **90**j, where line A(a+1) is added once more to set A.

12

If the decision at **90**i is positive, program flow continues to step **90**k. The program flow also continues from **90**j to **90**k. At **90**k, a decision is made whether counter a has reached zero, in which case the lines left in set A (which number may be equal to zero) are deemed necessary for unique determination of the coordinates of all the points in set P. If the decision at **90**k is negative, program flow reverts to **90**i. If the decision at **90**k is positive, program flow continues to **90**m, the details of which are described with reference to FIG. **5**.

In FIG. **5**, the program continues to **100**a, where counter p is initialized to 1 and variable n is set to the number of points in set P.

Program flow then continues to **100**b where a decision is made whether line A(p) (connecting point CA to point C(p)) is included in set A. If the decision is negative, program flow continues to **100**c, where counter p is incremented by 1.

If the decision at **100**b is positive, program flow continues to **100**e, at which the program identifies point C(p) to the user and then can query the user to highlight this point using light-beam projection device **202**, preferably from a position such as point CA, as determined previously at **90**a (FIG. **4**). The user can also be queried to affirm the highlighting action by, for example, activating one of the buttons **203**a or **204**b, or the like. The identification of point C(p) may occur, for example, by having the program display a visible screen mark **521**a-**521**d at a position on computer screen interaction region **51** associated with C(p), which may then be projected by projection device **40** to coincide with point C(p). Other means of identification are also possible, such as the characterization of point C(p) as 'upper-right corner' or the like.

Program flow then continues on to **100**f, where the program can wait until the highlighting action is affirmed by the user, after which the 3D orientation of the z'-axis and the 3D position of the z'=0 point (of the z'-axis) are measured with respect to the x y z coordinate system, using coordinate sensing device **201** and **301**, and communicated to the computer using communication and control device **204** and/or **304**. This 3D orientation and position is then associated with line A(p) and stored in memory. Program flow then continues to **100**c.

After **100**c program flow continues to **100**d where a decision is made whether p is equal to n+1. If the decision is positive, it can be concluded that all necessary data on lines A(p) have been ascertained and program flow can continue to **100**g. If the decision at **100**d is negative, program flow reverts to **100**b.

At **100**g a decision is made whether set B is empty. If the decision is positive, it can be concluded that enough information to uniquely determine the 3D coordinates of all the points in set P is contained in the a priori relationships combined with the available data on the lines in set A, and program flow continues to **100**p. If the decision at **100**g is negative, program flow continues to **100**h.

At **100**h counter p is again initialized to 1. The user is subsequently required to reposition the pointing device **20** to a different location, displacing it substantially parallel to projection region **60** over a distance substantially equal to the distance between projection region **60** and his or her present location. Other locations may also be used.

Flow then continues to **100**i where a decision is made whether line B(p) (connecting point CB to point C(p)) is included in set B. If the decision is negative, program flow continues to **100**j where counter p is incremented by 1.

If the decision at **100**i is positive, program flow continues to **100**m, at which point the program identifies point C(p) to the user and can query the user to highlight this point using light-beam projection device **202**. The program can also

A100

US 7,746,321 B2

13

query the user to affirm the highlighting by, for example, activating one of the buttons 203a or 204b or the like. The identification of point C(p) may occur, for example, by having the program display a visible screen mark 521a, 521b, . . . at a position on computer screen interaction region 51 associated with C(p), which may then be projected by projection device 40 to coincide with point C(p). Other means of identification are also possible, such as the characterization of point C(p) as 'upper-right corner' or the like.

Program flow then continues to 100n, where the program may wait until the highlighting action is affirmed. After affirmation, the 3D orientation of the z'-axis and the 3D position of the point z'=0 (of the z'-axis) are measured with respect to the x y z coordinate system, using coordinate sensing device 201 and 301, and are communicated to the program using communication and control device 204 and/or 304. The 3D orientation and position are then associated with line B(p) and can be stored in memory. Program flow then continues to 100j.

After 100j program flow continues to 100k where a decision is made whether p is equal to n+1. If the decision is positive, it is concluded that all necessary data for lines B(p) has been ascertained and program flow continues to 100p. If the decision is negative, program flow reverts to 100i.

At 100p it is concluded that the combined information of the a priori relationships and the data for lines in sets A and B that is stored in memory is enough to establish the coordinates of all points in P, as is further explained with reference to FIG. 6.

Referring to FIG. 6, as will be appreciated by those skilled in the art, at 110a the available information contained in the a priori relationships and the orientations and positions of the lines in sets A and B may be used to establish the coordinates of each of the points in set P, all measured with respect to the x y z coordinate system. It may happen that the 3D data associated with lines A(p) and B(p) (1<p<n+1) cause them not to intersect at point C(p); for example, this could be the case due to insufficient accuracy in determining the orientations and positions of lines A(p) and B(p). Under such circumstances point C(p) may be estimated or determined in such a way that it lies halfway along the shortest line-segment that connects lines A(p) and B(p). Other methods for determining point C(p) are also possible.

Once the complete 3D description of interaction structure 72 has been established (given the available data and assumptions), program flow continues to 110b. At 110b, a method M is constructed that maps points of interaction structure 72 to computer screen interaction region 51. Such methods are well known to those skilled in the art. For example, a method such as that described in U.S. Pat. No. 6,373,961 to Richardson et al. (2002) may be used, but other appropriate methods may also be used. For completeness, the method disclosed in the Richardson et al. '961 patent will briefly be explained here. Referring to FIG. 20, interaction structure 72 may be defined by line segments JK and ML. Furthermore, point F may define point-of-aim 210, which is also the intersection between the z'-axis and interaction structure 72. The line segments JK and ML are generally not parallel. If not parallel, then the line segments JK, ML are extended until they meet at a point H. Then a line is drawn through F and H, that intersects segment. JM at point P and segment KL at point O. If the segments JK and ML are parallel, a line is drawn instead through F that is parallel to JK, and which intersects the other two line segments as described. The process continues similarly with the other segments, which are extended to meet at point G. A line through F and G intersects segment JK at point R and segment ML at point Q. Subsequently, the following

14

distances are measured and noted as percentages: JR/JK, KO/KL, LQ/LM and MP/MJ. Then four points S, T, U, V are chosen as shown in FIG. 20, that form an exact rectangle STUV; this rectangle may define computer screen interaction region 51. Further, points W, X, Y, Z are chosen on the sides of the rectangle STUV in such a way that SZ/ST=JR/JK, TW/TU=KO/KL, UX/UV=LQ/LM and VY/VS=MP/MJ. Then the points Z and X are joined by a line, and the points Y and W are joined by a line. The point of the intersection of these latter two lines is N, which is the point that results from the operation of method M.

Referring once again to FIG. 6, after 110b, program flow continues to 110c where a decision is made whether the user has requested the program to end. If the decision is positive, the program ends at 110k.

If the decision at 110c is negative, program flow continues to 110d, where a decision is made regarding whether the user has requested a direct-pointing action, such as activating button 203a or 203b or the like.

If the decision at 110d is negative, program flow continues to 110e, where the light-beam projection device 202 can be instructed or caused to de-activate (using, for example, control device 204 and/or 304). Furthermore, a software routine (not shown) that controls computer cursor 501 (see also FIG. 2) is instructed that the user does not want to execute a direct-pointing action, after which program flow reverts to 110c. Such cursor control routines are well known to those skilled in the art and are therefore not described here.

If the decision at 110d is positive, program flow continues to 110f, where a decision is made whether the z'-axis intersects interaction structure 72. Those skilled in the art will appreciate that this is possible because all relevant 3D information is known or is measurable by coordinate sensing device 201 and 301. If the decision is positive, program flow continues to 110h, at which method M is used to map the intersection point of the z'-axis with interaction structure 72 to computer screen interaction region 51. This mapped position, as well as the user's desire to execute a direct-pointing action are communicated to the cursor control routine (not shown) running on the computer.

After 110h, program flow continues to 110i where a decision is made whether the user wishes to execute an action associated with the position of cursor 501. For example, activating button 203a or 203b or the like may indicate such a request. If the decision is negative, program flow reverts to 110c.

If the decision at 110i is positive, program flow continues to 110j, where the cursor control routine (not shown) is requested to execute the intended action. Such an action may, for instance, be a 'double-click' action or the like. Program flow then reverts to 110c.

There may be situations for which the system of equations that allows determination of all coordinates of the points in set P will be somewhat ill-posed. This could for example occur if locations CA and CB are chosen too close together, or if the angles of some pointing lines 21 with respect to interaction region 71 are too small, as will be appreciated by those skilled in the art. In such cases, the user may be directed to choose a different point for locations CA and/or CB from where the various points C(p) are to be highlighted.

Thus, methods and means are disclosed that afford a highly flexible and easily deployable system for interacting with a presentation in a direct-pointing manner at a location not specifically designed or adapted for such a purpose. Moreover, although it is desirable to have highly accurate coordinate sensing device 201 and 301, in some instances such may not be necessary because the visual feedback afforded by a

US 7,746,321 B2

15

displayed cursor will compensate to a large extent for any errors made in the measurements of coordinate parameters. The same holds true for the importance of any discrepancies between the actual shape of interaction region 71 and that of the interaction structure 72 that is assumed to coincide with it. Also, minor discrepancies between the actual position and orientation of interaction region 71 and the assumed position and orientation of interaction structure 72 (which is assumed to coincide with interaction region 71) need not be of critical importance, as will be appreciated by those skilled in the art.

Mathematically, there are infinite possible shapes for interaction structure 72 as well as infinite a priori relationships, sets P, A, B and methods M. To further explain the invention, what follows is a list of examples that are believed to be encountered most often. These examples are not meant to restrict the scope of the present invention in any way, but merely serve as further clarification.

Referring to FIG. 7, it can be assumed that the venue where the presentation is to be made is set up such that projection image 70 and interaction region 71 are substantially rectangular. Such may be the case when the optical axis of projection device 40 is substantially parallel to the normal to projection region 60. Projection region 60 may be a projection screen on a stand, as shown, but may also be a wall or any other substantially vertical surface. It can also be assumed that the bottom and top edges of both projection image 70 and interaction region 71 are substantially horizontal. Furthermore, it can be assumed that interaction region 71 is substantially the same size as projection image 70 and that computer screen interaction region 51 is substantially the same size as computer screen image 50. Additionally, it can be assumed that calibration points 721a, 721d substantially coincide with the projected versions of screen marks 521a, 521d. Finally, it is assumed that base station 30 is positioned such that the x-y-plane is substantially horizontal and the x-z-plane substantially coincides with the plane of interaction region 71. To facilitate in the positioning of base station 30, the user may be aided by level-sensing device 303 and visible markings 302.

Referring to FIGS. 3 and 7, process elements 80a-j may then result, either through default settings or through user-supplied settings, in the assumptions that interaction structure 72 is a rectangle that lies in the x-z plane and that its top and bottom edges are parallel to the x-y plane.

Referring to FIGS. 4 and 7, program element 90a may then result in a set P containing three points that define the upper-right corner C(1), the upper-left corner C(2) and the lower-left corner C(3) of interaction structure 72. Additionally, program element 90a may determine point CA (not denoted as such in FIG. 7) to lie away from projection region 60, for example at the center of one of the two instantiations of pointing device 20, as shown in FIG. 7. Point CB may be determined anywhere in space. Program element 90a may also result in sets A and B each containing three lines, connecting the points in set P to points CA and CB respectively. Program element 90c may then result in a priori relationships such that all points in set P have y-coordinate equal to zero, that the upper-left corner will have an x-coordinate equal to the x-coordinate of the lower-left corner and that its z-coordinate will be equal to the z-coordinate of the upper-right corner. It will then be appreciated by those skilled in the art that this a priori information, together with complete 3D information on two lines in set A will be sufficient to uniquely determine the position, size and orientation of interaction structure 72 with respect to the x y z coordinate system. Therefore, program elements 90d, 90e, 90f, 90g may result in an empty set B. Moreover, program elements 90h, 90i, 90j, 90k may result in the removal from set A of line A(2), connecting point CA to point C(2).

16

Referring to FIGS. 5 and 7, program elements 100a-p may result in the program identifying point C(1) by instructing the computer (not shown) and projection device 40 to project screen mark 521a onto projection region 60, resulting in the appearance of calibration point 721a. Subsequently, the user is required to use light-beam projection device 202 to highlight calibration point 721a and indicate the success of this action to the computer (not shown) by, for example, pressing button 203a. As a result, the orientation and position of the z'-axis are assumed to define line A(1). The same actions are then performed for point C(3) and line A(3). Since set B is empty, the user need not be required to reposition pointing device 20. The two depictions of pointing device 20 in FIG. 7 are meant to illustrate that pointing device 20 only needs to be redirected and not repositioned during this exercise. It will be appreciated by those skilled in the art that program element 100p will then successfully result in a full 3D description of the three points in set P.

Referring to FIGS. 6 and 7, program element 110a may then result in the description of interaction structure 72 as a rectangle with upper-right corner C(1), upper-left corner C(2) and lower-left corner C(3). Step 110b may then result in a method M that maps a point δ (not shown) in interaction structure 72 to a point ε (not shown) in computer screen interaction region 51 in such a way that the ratio of distances between δ and any two of the four corners of interaction structure 72 is the same as the ratio of distances between ε and the two corresponding corners of computer screen interaction region 51, as will be appreciated by those skilled in the art. Steps 110c-k may then result in a very intuitive cursor control device that responds to a direct-pointing action by de-activating light-beam projection device 202 and showing cursor 501 at substantially point-of-aim 210 of pointing device 20 whenever point-of-aim 210 lies in projection image 70 (which in this example, by assumption, substantially coincides with interaction region 71). Since there is no necessity for a computer generated cursor and a light spot to be visible simultaneously there will not be any cause for confusion as to which of the two is the 'actual cursor'. Cursor 501 may be hidden from view when point-of-aim 210 does not lie in interaction structure 72, in which case light-beam projection device 202 may be activated automatically. Also, intuitive actions such as 'double click' may be provided by steps 110c-k.

Referring to FIG. 8, it can be assumed that the venue where the presentation is to be given is set up such that projection image 70 and interaction region 71 are substantially rectangular. Such may be the case when the optical axis of projection device 40 is substantially parallel to the normal to projection region 60. Projection region 60 may be a projection screen on a stand, as shown, but may also be a wall or any similar surface. Projection region 60 can be assumed to be oriented substantially vertically. It can also be assumed that the bottom and top edges of both projection image 70 and interaction region 71 are substantially horizontal. Furthermore, it can also be assumed that interaction region 71 is substantially the same size as projection image 70 and that computer screen interaction region 51 is substantially the same size as computer screen image 50. Additionally, it can be assumed that calibration points 721a, 721c, 721d substantially coincide with the projected versions of screen marks 521a, 521c, 521d. Finally, it can be assumed that base station 30 is positioned such that the x-y-plane is substantially horizontal. No assumptions are made regarding the x-z-plane and the y-z-plane other than that they are substantially vertical. To facilitate in the positioning of base station 30, the user may be aided by level-sensing device 303.

US 7,746,321 B2

17

Referring to FIGS. **3** and **8**, program elements **80***a-j* may then result, either through default settings or user-supplied settings, in the assumptions that interaction structure **72** is a rectangle of which the top and bottom edges are parallel to the x-y-plane (i.e., they are horizontal) and the left and right edges are perpendicular to the x-y-plane (i.e., they are vertical).

Referring to FIGS. **4** and **8**, program element **90***a* may then result in a set P containing three points that define the upper-left corner C(**1**), the upper-right corner C(**2**) and the lower-left corner C(**3**) of interaction structure **72**. Additionally, program element **90***a* may determine point CA (not denoted as such in FIG. **8**) to lie away from projection region **60**, for example, at the center of one of the three instantiations of pointing device **20**, as shown in FIG. **8**. Point CB (not denoted as such in FIG. **8**) may be determined to be displaced from point CA in a direction substantially parallel to interaction region **71**, over a distance that may be the same order of magnitude as the size of interaction region **71**. Program element **90***a* may also result in sets A and B each containing three lines, connecting the points in set P to points CA and CB respectively. Program element **90***c* may then result in a priori relationships requiring that the upper-left corner will have x- and y-coordinates equal to the x- and y-coordinates of the lower-left corner and that its z-coordinate will be equal to the z-coordinate of the upper-right corner. As will be explained in detail below, the a priori information together with complete 3D information on two lines in set A and one line in set B will be enough to uniquely determine the position, size and orientation of interaction structure **72** with respect to the x y z coordinate system. Therefore, program elements **90***d*, **90***e*, **90***f*, **90***g* may result in set B containing only line B(**3**). Moreover, program elements **90***h*, **90***i*, **90***j*, **90***k* may result in set A containing only lines A(**1**) and A(**2**)

Referring to FIGS. **5** and **8**, program elements **110***a-p* may result in the program identifying point C(**1**), C(**2**) and C(**3**) by means of projection device **40**, in a manner similar to the one described in the previous example. In this case, however, C(**1**) and C(**2**) may be highlighted from approximately the same location CA, but C(**3**) needs to be highlighted from a different location CB. To explain that the above-mentioned information is enough to uniquely establish the position, size and orientation of interaction structure **72**, define the points in set P as:

$$C(1) = \begin{pmatrix} x_1 + \lambda_1 \cdot Rx_1 \\ y_1 + \lambda_1 \cdot Ry_1 \\ z_1 + \lambda_1 \cdot Rz_1 \end{pmatrix} \quad (1)$$

$$C(2) = \begin{pmatrix} x_1 + \lambda_2 \cdot Rx_2 \\ y_1 + \lambda_2 \cdot Ry_2 \\ z_1 + \lambda_2 \cdot Rz_2 \end{pmatrix} \quad (2)$$

$$C(3) = \begin{pmatrix} x_3 + \lambda_3 \cdot Rx_3 \\ y_3 + \lambda_3 \cdot Ry_3 \\ z_3 + \lambda_3 \cdot Rz_3 \end{pmatrix} \quad (3)$$

Here, points CA and CB are defined as $(x_1, y_1, z_1)$ and $(x_3, y_3, z_3)$ respectively. Moreover, lines A(**1**), A(**2**) and B(**3**) are defined as passing through CA, CA and CB respectively, lying in directions governed by $(Rx_1, Ry_1, Rz_1)$, $(Rx_2, Ry_2, Rz_2)$ and $(Rx_3, Ry_3, Rz_3)$. All of these quantities are presumed to be measured by coordinate sensing device **201** and **301**. For a unique description of the points in set P a solution is required for $\lambda_1$, $\lambda_2$ and $\lambda_3$.

18

Using these definitions the conditions described above can be written as:

$$\begin{bmatrix} Rz_1 & -Rz_2 & 0 \\ Rx_1 & 0 & -Rx_3 \\ Ry_1 & 0 & -Ry_3 \end{bmatrix} \begin{pmatrix} \lambda_1 \\ \lambda_2 \\ \lambda_3 \end{pmatrix} = \begin{pmatrix} 0 \\ x_3 - x_1 \\ y_3 - y_1 \end{pmatrix} \quad (4)$$

which can be solved in a straightforward manner according to the expression:

$$\begin{pmatrix} \lambda_1 \\ \lambda_2 \\ \lambda_3 \end{pmatrix} = \begin{pmatrix} [Rx_3 \cdot (y_3 - y_1) + Ry_3 \cdot (x_1 - x_3)] / [Rx_3 \cdot Ry_1 - Rx_1 \cdot Ry_3] \\ [Rz_1 / Rz_2] \cdot [Rx_3 \cdot (y_3 - y_1) + Ry_3 \cdot (x_1 - x_3)] / \\ [Rx_3 \cdot Ry_1 - Rx_1 \cdot Ry_3] \\ [Rx_1 \cdot (y_3 - y_1) + Ry_1 \cdot (x_1 - x_3)] / [Rx_3 \cdot Ry_1 - Rx_1 \cdot Ry_3] \end{pmatrix} \quad (5)$$

Note that this solution shows that, if point C(**3**) was highlighted from any point on pointing line **21** that is used to highlight point C(**1**), i.e.,

$$\begin{pmatrix} x_3 \\ y_3 \\ z_3 \end{pmatrix} = \begin{pmatrix} x_1 + \tau \cdot Rx_1 \\ y_1 + \tau \cdot Ry_1 \\ z_1 + \tau \cdot Rz_1 \end{pmatrix} \quad (6)$$

the solution for the three unknown $\lambda$'s would collapse to

$$\begin{pmatrix} \lambda_1 \\ \lambda_2 \\ \lambda_3 \end{pmatrix} = \begin{pmatrix} \tau \\ \tau Rz_1 / Rz_2 \\ 0 \end{pmatrix} \quad (7)$$

making unique determination of interaction structure **72** impossible. Conversely, the fact that points C(**1**) and C(**2**) are, in this example, both highlighted from substantially the same point CA does not cause any problems. It will be appreciated by those skilled in the art that C(**1**) and C(**2**) may also be highlighted from different points, without loss of functionality.

Referring to FIGS. **6** and **8**, the course and results of program elements **110***a-k* will be similar to those described in Example 1.

Referring to FIG. **9**, in another example, the only assumptions made are that interaction region **71** is substantially the same size as projection image **70**, computer screen interaction region **51** is substantially the same size as computer screen image **50**, calibration points **721***a*, **721***b*, **721***c*, **721***d* substantially coincide with the projected versions of screen marks **521***a*, **521***b*, **521***c* and **521***d* and computer screen interaction region **51** is substantially rectangular. This situation may arise when the optical axis of projection device **40** is not aligned with the normal to projection surface **60**.

Referring to FIGS. **3** and **9**, program elements **80***a-j* may then result, either through default settings or user supplied settings, in the assumption that interaction structure **72** is a quadrangle; no assumptions are made regarding its position or orientation.

Referring to FIGS. **4** and **9**, program elements **90***a* may then result in a set P containing four points that define the upper-right, upper-left, lower-right and lower-left corners of interaction structure **72**. Additionally, program element **90***a* may conceive point CA (not denoted as such in FIG. **9**) to lie

US 7,746,321 B2

19

away from projection region **60**, for example at the center of the first of the two instantiations of pointing device **20**, as shown in FIG. **9**. Point CB may, for example, be determined to lie at the center of the second of the two instantiations of pointing device **20**, as drawn in FIG. **9**. Now, program elements **90***d*, **90***e*, **90***f*, **90***g* and steps **90***h*, **90***i*, **90***j*, **90***k* may result in sets A and B each containing 4 lines.

Referring to FIGS. **5** and **9**, program elements **110***a-p* may result in the program identifying the four points in set P by means of projection device **40**, in a manner similar to the one described in Example 1. In this case, however, all four points in set P may be highlighted from approximately the same location CA first, after which all four points may be highlighted from approximately the same location CB. Note that FIG. **9**, for reasons of clarity, only depicts the highlighting of calibration point **721***a*. Each point C(i) may then be constructed as the point lying halfway the shortest line segment connecting lines A(i) and B(i); this line segment may have zero length.

Referring to FIGS. **6** and **9**, the course and results of program elements **110***a-k* will be similar to those described with respect to the first example, with the exception of program element **110***b*, the mapping element. Now, a more elaborate method M is needed than the one described in previous examples. For example, a method such as described in U.S. Pat. No. 6,373,961 to Richardson (2002) may be utilized, but other appropriate methods may also be used.

A second embodiment will now be made with reference to FIG. **10**, which shows pointing device **20** and base station **30**. Here, in addition to any or all of the elements mentioned in the previous embodiment, pointing device **20** is also provided with distance measuring device **206**, the position and orientation of which with respect to the x' y' z' coordinate system may be ascertained at the place of manufacture thereof and will be presumed to be known. Distance measuring device **206** may for example be embodied by a focus adjustment, or optical sensor. A digital camera may also be used. Distance measuring device **206** may determine the point-of-aim-distance **211** between the origin of the x' y' z' coordinate system and the point-of-aim, measured substantially parallel to the z'-axis (see also FIG. **2**). The point of aim **210** may lie on projection region **60**, on which interaction region **71** may lie. Distance measuring device **206** may have associated with it a manual focus adjustment that may be adjusted by the user (manual focus adjustment not shown). Alternatively, distance measuring device **206** may comprise a circuit (not shown) that automatically determines the point-of-aim-distance **211** between the origin of the x' y' z' coordinate system and the point-of-aim. For example, if the point-of-aim lies on projection region **60**, distance measuring device **206** may bounce light off of projection region **60**. In doing so, use may for instance be made of light-beam projection device **202**. Any other appropriate mechanism for determining distance may also be used for distance measuring device **206**. The optical axes of light-beam projection device **202** and distance measuring device **206** may coincide, for instance by making use of partially-reflecting elements (not shown) such as disclosed in U.S. Pat. No. 4,768,028 to Blackie (1988).

The operation of the present embodiment will now be described with reference to FIGS. **2**, **10**, and **3**. The process elements in FIG. **3** will be identical to the ones described in the first embodiment, resulting in similar assumptions regarding the shape of interaction region **71** (and interaction structure **72**) and possibly orientation and position of interaction structure **72**.

Referring to FIG. **11**, instead of the program elements described above with reference to FIG. **4**, program flow now continues at **120***a*. Program elements **120***a-120***h* are shown to be similar to program elements **90***a-90***m* (FIG. **4**), except that only point CA, set A and counter a are considered. That is to

20

say, in the present embodiment it is no longer necessary to determine the second point CB and associated repositioning of pointing device **20** during the calibration procedure.

After program element **120***h*, program flow continues with program elements outlined in FIG. **12**. Referring to FIG. **12**, program elements **130***a-130***g* are seen to be similar to steps **110***a-110***p* (FIG. **5**). Comparing program element **130***f* with program element **110***f* (FIG. **5**), it can be seen that at **130***f* the program also stores information on the point-of-aim-distance (**211** in FIG. **2**) between the origin of the x' y' z' coordinate system and point C(p). Comparing elements **130***g* and **100***p* (FIG. **5**), it can be seen that these point-of-aim-distances (**211** in FIG. **2**) are also used in determining the 3D coordinates of the points in set P.

With complete information on the 3D coordinates of the points in set P, it is then possible to construct a 3D description of interaction structure **72** (in FIG. **2**). Therefore, program elements **110***a-110***k* as described above with reference to FIG. **6** may also be followed in the present embodiment.

Thus, methods and means are disclosed that afford a highly flexible and easily deployable system for interacting with a presentation in a direct-pointing manner at a location not specifically equipped for such a purpose. Moreover, when utilizing the second preferred embodiment it is often sufficient for the user to highlight various calibration points **721***a*, **721***b*, . . . from one and the same position, making the calibration procedure even more easy to follow.

Another embodiment will now be explained with reference to FIG. **13**. FIG. **13** shows another embodiment of the pointing device **20**. Pointing device **20** may be equipped with any or all of the elements mentioned in the other embodiments, such as described above with reference to FIG. **1** and FIG. **10**. The present embodiment may include a base station **30** that has associated with it a coordinate system x y z. However, in the present embodiment it can be assumed that the position of pointing device **20** will remain substantially unchanged relative to interaction region **71** over an extended period of time, and that the origin of coordinate system x y z may be assumed to be virtually anywhere instead of being related to the base station **30**. Furthermore, if any of the axes of the x y z system are chosen to be related to (locally) well-established, independent and stationary directions such as, for example, the Earth's magnetic field and/or the Earth's gravitational field, the Earth itself may be interpreted as embodying base station **30**. Under such circumstances there may not be a need for an artificial base station **30**; coordinate sensing device **201** may then, for example, be embodied by devices sensing the directions of the Earth magnetic and gravitational fields, such as accelerometers and a compass (for example, model no. HMR3300 device as manufactured by Honeywell International Inc., Morristown, N.J.), and communication and control device **204** may be configured to communicate directly with the computer (not shown).

The operation of the present embodiment will now be described with reference to FIGS. **8**, **13**, and **3**. The remainder of the description of the present embodiment will, for purposes of explanation, include the assumption that any separately embodied base station **30** (FIGS. **8** and **13**) is omitted entirely. It is also assumed that one of the axes of the orthogonal coordinate system x z is substantially parallel to the Earth's gravity field (or has a defined relationship thereto), while the second and third axes of the coordinate system are in a fixed, known relationship to the at least one geographically defined axis. In the present embodiment it is assumed that the relative position of pointing device **20** with respect to interaction region **71** remains substantially unchanged, therefore the origin of coordinate system x y z will, for purposes of explanation, be chosen to coincide with a fixed point in the pointing device **20**. For the purpose of the present embodi-

US 7,746,321 B2

21

ment, it should be understood that the three instantiations of pointing device **20** as shown in FIG. **8** substantially coincide.

It can be assumed that in the present embodiment that a display system is arranged at the venue where a presentation is to be made, as a combination of a portable projection device **40** and projection surface **60**, for example a wall. It will furthermore be assumed that this display system is connected, using appropriate means, to the computer (not shown) that generates the

Upon arriving at the venue, the user connects pointing device **20** to the computer (not shown), for example via a USB connection (not shown), or using a wireless relay device (not shown). Also, the computer may recognize the connection and start a program, part of which may be contained in communication and control device **204** or in control logic contained in the wireless relay device itself (not shown). Alternatively, the user may be required to load the program into the computer manually via a CD drive, a floppy drive, memory stick or the like (not shown). In any case, the program may initiate a calibration routine that has as its object establishing the shape, position, size and orientation of a well-defined interaction structure **72**, relative to the x y z coordinate system, wherein the interaction structure **72** is assumed to substantially coincide with a scaled and parallel version of interaction region **71**. The flow of this program will be explained with reference to FIG. **3**.

At **80**a the program is initiated. At **80**b defaults are entered for interaction region **71**. Specifically, interaction region **71** is assumed to be a substantially parallel and scaled version of a well-defined interaction structure **72**. Moreover, the respective corners of interaction region **71** and interaction structure **72** are assumed to substantially lie on lines intersecting each other in the origin of coordinate system x y z. It should be noted that FIG. **8** shows an interaction region **71** and an interaction structure **72** that are almost coincident, but this is only meant for illustrative purposes and is not a limitation on the scope of the invention. Again referring to FIG. **3**, at **80**b default values are also established for the orientation and position of the interaction structure **72**. For example, the default values may provide that interaction region **71** is substantially a parallel and scaled version of an interaction structure **72** that is a flat rectangle of which the two most vertical sides are substantially parallel to the Earth's gravitational field, and of which the two most horizontal sides are substantially perpendicular to the Earth's gravitational field; moreover, the default values may provide that the respective corners of interaction region **71** and interaction structure **72** substantially lie on lines intersecting each other in the origin of coordinate system x y z. The default values may furthermore provide that the position of interaction structure **72** is such that the distance between pointing device **20** and the lower left corner of interaction structure **72** is equal to 1. Note that other values for the foregoing distance may be equally valid in the present embodiment. Based on the foregoing default values, calibration points **721**a, **721**c, **721**d, . . . can define characteristic features of interaction region **71** and can also define characteristic features of interaction structure **72**.

At **80**c a decision is made whether the default values for interaction region **71** and interaction structure **72** should be accepted or overridden by the user. If the default values are to be accepted, the program flow continues with to **80**j, the details of which are explained below with reference to FIG. **11**. If the defaults are to be overridden, the program flow continues with elements **80**d-**80**i, during which the user may override any of the default settings. The user may be aided during program elements **80**d-**80**i by a library of predetermined shapes, predetermined orientations and/or predetermined positions. Alternatively, the user can be provided with the capability to construct custom shapes, orientations and/or positions. In any event, program flow continues to **80**j.

22

Referring to FIG. **11**, program flow now continues to **120**a. Program elements **120**a-**120**h are substantially similar to program elements **90**a-**90**m (FIG. **4**), except that only point CA, set A and counter a are considered. In the present embodiment it is not required to determine a second point CB and an associated repositioning of pointing device **20** during the calibration procedure.

After **120**h, program flow continues with elements described with reference to FIG. **14**. In FIG. **14**, program elements **140**a-**140**g are shown to be similar to steps **130**a-**130**g (FIG. **12**). Comparing element **140**f with element **130**f (FIG. **12**), it can be seen that element **140**f does not include storing information for any directly measured distance. Element **140**f need not include storing information on the position of the z'-axis, because the position of pointing device **20** is assumed to remain substantially unchanged over an extended period of time. Comparing elements **140**g and **130**g, it can be seen that any directly measured distance is not needed to determine the 3D coordinates of the points in set P (see FIG. **4**). In fact, having the default distance (set to 1) between pointing device **20** and the lower left corner of interaction structure **72** is sufficient for operation of the system in the present embodiment. To explain this fact, reference is again made to FIG. **8**. Using the above default values, interaction structure **72** will be completely defined by, for example, its upper-left corner C(**1**), its upper-right corner C(**2**) and its lower-left corner C(**3**)

$$C(1) = \lambda_1 \cdot \begin{pmatrix} Rx1 \\ Ry1 \\ Rz1 \end{pmatrix} \tag{8}$$

$$C(2) = \lambda_2 \cdot \begin{pmatrix} Rx2 \\ Ry2 \\ Rz2 \end{pmatrix} \tag{9}$$

$$C(3) = \lambda_3 \cdot \begin{pmatrix} Rx3 \\ Ry3 \\ Rz3 \end{pmatrix} \tag{10}$$

lying on lines A(**1**), A(**2**) and A(**3**) that connect the origin to points $(Rx_1, Ry_1, Rz_1)$, $(Rx_2, Ry_2, Rz_2)$ and $(Rx_3, Ry_3, Rz_3)$ respectively. Using these definitions, the conditions described above determine relationships between the various variables that can be written as

$$\begin{bmatrix} Rz_1 & -Rz_2 & 0 \\ Rx_1 & 0 & -Rx_3 \\ Ry_1 & 0 & -Ry_3 \end{bmatrix} \begin{bmatrix} \lambda_1 \\ \lambda_2 \\ \lambda_3 \end{bmatrix} = \begin{bmatrix} 0 \\ 0 \\ 0 \end{bmatrix} \tag{12}$$

which will have non-trivial solutions only if the determinant of the matrix equals zero. Then, it can be shown that any combination of $(\lambda_1, \lambda_2, \lambda_3)$ that can be written in the form:

$$\begin{pmatrix} \lambda_1 \\ \lambda_2 \\ \lambda_3 \end{pmatrix} = \begin{pmatrix} Rz2 / Rz1 \\ 1 \\ (Rz2 \cdot Rx1) / (Rz1 \cdot Rx3) \end{pmatrix} \cdot \alpha \tag{13}$$

where $\alpha$ is any arbitrary real number, will generate solutions for interaction structure **72** that are parallel to each other. The assumption that the distance between pointing device **20** and the lower left corner of interaction structure **72** is 1 will hence uniquely generate one of these solutions. To see that

US 7,746,321 B2

23

other assumptions regarding this distance do not influence the operation of the present embodiment, reference is made to FIG. **15**. In FIG. **15**, projections of two parallel solutions for interaction structure **72** are shown, obtained for different values of distances CA-C(**3**). When it is assumed, for purposes of explanation, that these two solutions are parallel to the z-x plane, FIG. **15** may be interpreted as a projection of the two solutions onto the x-y plane. These projections are shown as the thick line segments C(**3**)-C(**2**) and CC**3**-CC**2**. FIG. **15** also shows the projection of point CA (i.e., the origin of coordinate system x y z), from where the lower left and upper right corners of interaction structure **72** were highlighted, and line-segments C(**3**)-CA and C(**2**)-CA which coincide with the (projections of) the highlighting lines A(**3**) and A(**2**) (not denoted as such in FIG. **15**). Finally, line-segment BB**1**-CA indicates (the projection of) a pointing line that is consistent with a point-of-aim BB**1** on the one and point-of-aim BB**2** on the other of the two solutions for interaction structure **72**. To show that BB**1** and BB**2** represent the same horizontal coordinate when measured relative to the appropriate solution for interaction structure **72**, the lengths of line-segments C(**3**)-BB**1**, C(**2**)-BB**1**, CC**3**-BB**2**, CC**2**-BB**2**, BB**1**-CA and BB**2**-CA are represented by bb**1**, bb**2**, b**1**, b**2**, aa**12** and a**12**, respectively. It is sufficient to show that bb**1**/bb**2**=b**1**/b**2**. Consider the following equalities:

$$\frac{bb1}{\sin\beta1} = \frac{aa12}{\sin\alpha1} \qquad (14)$$

$$\frac{bb2}{\sin\beta2} = \frac{aa12}{\sin\alpha2} \qquad (15)$$

while, at the same time

$$\frac{b1}{\sin\beta1} = \frac{a12}{\sin\alpha1} \qquad (16)$$

$$\frac{b2}{\sin\beta2} = \frac{a12}{\sin\alpha2} \qquad (17)$$

From this it follows that

$$\frac{aa12}{bb1} = \frac{a12}{b1} \qquad (18)$$

$$\frac{aa12}{bb2} = \frac{a12}{b2} \qquad (19)$$

which, in turn, provides that

$$bb1\frac{a12}{b1} = bb2\frac{a12}{b2} \Rightarrow \frac{bb1}{bb2} = \frac{b1}{b2} \qquad (20)$$

This implies that BB**1** and BB**2** represent the same horizontal coordinate when measured relative to the appropriate solution for interaction structure **72**. If FIG. **15** is interpreted as a projection onto the z-y-plane, it can be concluded that BB**1** and BB**2** also represent the same vertical coordinate when measured relative to the appropriate solution of interaction structure **72**. Therefore the initial assumption that the distance between C(**3**) and CA is equal to 1 does not influence the operation of the third preferred embodiment.

24

It is theoretically possible that there are no non-zero solutions for the parameters $\lambda_1$, $\lambda_2$ and $\lambda_3$, when the determinant referred to above in equation (12) is non-zero. Such may be the case, for example, due to errors in measurements or in the assumed rectangular shape of interaction region **71**. In such cases additional techniques may be used to find an acceptable solution for interaction structure **72**. For example, a minimization routine may be used to find a solution for interaction structure **72** that minimizes a summation of the distances between some of its corners (which, by assumption, lie on lines connecting the origin of coordinate system x y z with the corners of interaction region **71**) and the highlighting lines.

With complete information on the 3D coordinates of C(**1**), C(**2**) and C(**3**) it is possible to construct a 3D description of interaction structure **72**. Therefore, program elements 110a-110k as described in the first embodiment and explained above with reference to FIG. **6** may also be followed in the present embodiment.

There may be situations in which the user is not able to hold pointing device **20** continuously at precisely the same position while performing the actions required by the calibration procedure described in FIGS. **3**, **11** and **14**, or during the use of the system as a direct-pointing device. Such changes in position of the pointing device **20** can cause errors in the calculation of the point-of-aim. It will be appreciated that if the discrepancy between the calculated and the true point-of-aim is small enough, the visual feedback provided by the displayed cursor (**501** in FIG. **1**) during use of the system as a direct-pointing device will still afford the user the perception that direct-pointing is being performed.

There are many other methods capable of establishing position, size and orientation of interaction structure **72**, as will be appreciated by those skilled in the art. For example, if the distance between pointing device **20** and interaction structure **72** is presumed known, if interaction structure **72** is assumed to be rectangular with two vertical and two horizontal sides and if its aspect ratio (the ratio between its horizontal size and its vertical size) is also presumed known, then knowledge of two lines from CA to the upper-right and lower-left corner is sufficient to narrow the number of solutions for interaction structure **72** down to 2, dictated by 2 solutions of a quadratic equation. One further assumption is then required to determine which of these 2 solutions is the correct one; this assumption may be in the form of a third line passing through yet another characteristic point of interaction structure **72**, but it may also be in the form of knowledge of the (approximate) angle between the plane in which interaction structure **72** lies and a line connecting the origin to one of its corners. Other scenarios may also be conceived for which solutions may be devised that are within the scope of the general methods set forth herein.

In the present embodiment, using well-established and stationary directions such as, for example, the Earth's magnetic field and the Earth's gravitational field, it may be possible to omit a separately embodied base station, making the present embodiment of the system possibly more compact, less expensive to make and easier to deploy.

Another embodiment of a system according to the invention will now be described with reference to FIG. **16**. In the present embodiment a handheld presentation device **25** contains a power source **205**, communication and control device **204** and a directional sound recording device **251**. The sensitivity region of the directional sound recording device **251** may be substantially oriented along the long axis of presentation device **25**. Any or all of the features contained in pointing device **20**, already described in previous embodiments or to-be-described in the additional embodiments, may also be

US 7,746,321 B2

25

contained in presentation device 25; any or all of features 201-207 are collectively depicted as module 200. In the same way, the fourth preferred embodiment also may but need not provide base station 30 and its associated elements, such as elements 301-305 or a wireless relay device (not shown in FIG. 16).

The directional sound recording device 251 may be provided with so-called zoom capabilities, such as those afforded by, for example, the ECM-Z60 Super Zoom Microphone as manufactured by Sony. Alternatively, directional sound recording device 251 may comprise multiple directional microphones (not shown) with different sensitivity regions, so that zoom capabilities may be emulated. In these cases, presentation device 25 may also be provided with zoom control device 252, capable of adjusting the sensitive volume of directional sound recording device 251 either by manual control or automatically. Directional sound recording device 251 may communicate with the computer (not shown) and/or base station 30 (not shown in FIG. 16) through communication and control device 204 and/or 304 (not shown in FIG. 16). A control program described in FIG. 17 may be transferred to the computer (not shown) or be incorporated in communication and control device 204 and/or 304. Moreover, there may be provided a storage medium for storage of sound data (not shown) in one of the components of the described system, as well as means to play back sound, such as a loudspeaker (not shown).

During a presentation it may occur that a member of the audience wishes to communicate verbally with the presenter (user). Often, the acoustics of the room preclude other members of the audience from hearing such communication In such cases, the user may point presentation device 25 in the direction of the member of the audience who wishes to communicate with the user. The user may then activate directional sound recording device 251 by activating controls such as button 203a or zoom control device 252. The latter may also be used to acoustically zoom in on the particular member of the audience. Directional sound recording device 251 may then communicate with the computer (not shown) and record the communication, for example, in computer memory (not shown). At the same or later time the user may request the recording to be played back, for instance over speakers (not shown) driven by the computer (not shown), by activating controls such as button 203b. The computer program may be configured such that one and the same command from the user, such as the activation of button 203a or zoom control device 252, initiates substantially simultaneous recording and playback. Measures to counteract any acoustical interference when playback and recording occur almost simultaneously may be implemented as well. Such measures are well known in the art.

Referring to FIG. 17, to facilitate the recording and playback of sounds, general elements, 150a-150q of a program are shown. These program elements may be executed by the computer (not shown), and may be loaded into the computer by such means as floppy discs, memory sticks or CDs (not shown). The programs may be pre-loaded in base station 30, its associated wireless relay device (both not shown in FIG. 16) or presentation device 25, and transferred by means of a USB port or the like (not shown) upon connecting any of these components to the computer (not shown).

At 150a the program is initialized, old recordings are erased and a record-flag and a playback-flag are unset; this indicates that both recording and playback are not activated.

Program flow continues to 150b, where a decision is made whether the user requests the program to end. Buttons (203a, 203b in FIG. 16) or the like may be used for this purpose.

26

If the decision at 150b is positive, program flow continues to 150q, where any recording or playback is stopped, playback and record flags are unset, old recordings are erased and the program ends. If the decision at 150b is positive, program flow continues to 150c.

At 150c a decision is made whether the user has requested sound recording. If the decision is positive, program flow continues to 150d. If the decision is negative, program flow continues on to 150f.

At 150d a decision is made whether the record-flag is unset, indicating that recording is not already in progress. If the decision is negative, program flow continues to 150f. If the decision is positive, program flow continues to 150e, where the record flag is set, any old recordings are erased and sound recording is started, after which the program flow continues to 150f.

At 150f, a decision is made whether the user has requested sound playback. If this decision is positive, program flow continues to 150g. If the decision is negative, program flow continues to 150i.

At 150g a decision is made regarding whether the playback flag is unset, indicating that playback is not already in progress. If the decision is negative, program flow continues to 150i. If the decision is positive, and there is some sound data to be played back, program flow continues to 150h, where the playback flag is set and sound playback is started, after which the program flow continues to 150i.

At 150i a decision is made whether the user has requested that sound recording is to be terminated. If the decision is positive, program flow continues to 150j. If the decision is negative, program flow continues on to step 150m.

At 150j a decision is made whether the record-flag has been set, indicating that recording is in progress. If the decision is negative, program flow continues to 150m. If the decision is positive, program flow continues to 150k, where the record flag is unset and sound recording is stopped, after which the program flow continues to 150m.

At 150m a decision is made whether the user has requested that sound playback is to be terminated. If the decision is positive, or if the end of the recorded sound has been reached, program flow continues to 150n. If the decision is negative, program flow reverts to step 150b.

At 150n a decision is made whether the playback flag has been set, indicating that playback is in progress. If the decision is negative, program flow reverts to 150b. If the decision is positive, program flow continues to 150p, where the playback flag is unset and sound playback is stopped, after which the program flow reverts to 150b.

Thus, methods and means are disclosed that afford a user the capability to easily capture and playback comments made by a member of the audience, even in the presence of substantial background noise.

While the above description contains many specificities, these should not be construed as limitations on the scope of the invention, Many other variations are possible. For example, presentation device 25 or pointing device 20 may be hand held, but may also be carried by the user in a different manner, such as by means of a headset, finger-worn ring or the like.

Although the first, second and third embodiments make use of the assumption that the interaction structure 72 and interaction region 71 are quadrangles, this need not be the case even when the corresponding computer screen interaction region 51 is rectangular in shape. For example, projection region 60 may be spherical in shape. This may cause the projection of a square computer screen interaction region 51 to result in interaction region 71 having the general shape of

US 7,746,321 B2

27

a sphere-segment. Other shapes are also possible, depending on a number of factors such as the angle between the optical axis of projection device 40 and projection region 60. It will be appreciated by those skilled in the art that set P (see FIG. 4, step 90a and FIG. 11, step 120a) and method M (see FIG. 6, step 110b) may become more complicated under these circumstances, but may still be well defined. In fact, method M and sets P, A, B may be constructed in any way that is advantageous to the particular system application. It is also possible to determine more points and associated line sets than just CA and CB, and associated line sets A and B. Specifically, set P may have more or fewer than the number of points described with reference to the foregoing embodiments, depending on the complexity of the presentation venue. Also, sets A and B may contain more lines than the minimum number needed to establish the coordinates of the points in set P.

The present invention may make use of mathematical techniques not described explicitly herein but well known to those skilled in the art to aid with various aspects of the present invention, for example in the determination of position and/or orientation of interaction structure 72. The second example of the first embodiment, for example, was described as relying on three lines highlighting corners of the interaction structure 72. It is also possible that a more accurate solution for the position and/or orientation of interaction structure 72 may be obtained when the user is requested to also highlight the fourth corner of the screen. An appropriate minimization routine may then be used to find a solution characterized by, for example, a minimum accumulated distance between the four corners of interaction structure 72 and the closest highlighting line.

Moreover, although set P is described as containing points that are needed to completely define interaction structure 72, other embodiments of the invention may use so-called "control points" for quality control purposes. Such control points may be used to test the validity of the assumptions made concerning, for example, the shape, the position, size and/or orientation of interaction region 71 and, therefore, interaction structure 72, as well as to test the accuracy of the measurements made to establish the 3D features of the various lines. As an example, consider the case in which interaction structure 72 is taken to be a rectangle for which all data needed to uniquely establish its size, orientation and position with respect to the x y z coordinate system has been ascertained by the program elements described with respect to the foregoing embodiments. Moreover, in this example interaction region 71 and, therefore, interaction structure 72, are assumed to substantially coincide with the projection of a rectangular computer screen interaction region 51. Then, the computer may display a suitable screen mark 521a, 521b, . . . at, for example, the center of computer screen interaction region 51, which may be projected by projection device 40 onto projection region 60. It will be appreciated that the process elements described herein may be used to calculate 3D coordinates of this projected point, based on the available data regarding shape, size, orientation and position of interaction structure 72. The user may then be required to highlight the projected point using light-beam projection device 202 and indicate the success of this action to the computer by, for example, activating button 203a. If all measurements and highlighting actions were accurate enough and no false assumptions were made, the 3D coordinates of the projected point should substantially conform to the 3D characteristics of the z'-axis. If the discrepancy is deemed too large the user may be required to repeat part or all of the calibration steps outlined in the present invention.

28

There may also be more than one method M and sets P, A and B, each of which may be associated with a different interaction structure 72 and interaction region 71. There may be more than one interaction structure 72 and interaction region 71, each of which may, but need not, lie on projection region 60 and each of which may, but need not, be associated by means of projecting screen marks 521a, 521b, . . . , with one or more computer screen interaction regions 51.

Although coordinate sensing device (201 and 301 in FIG. 1.) were in some embodiments described as being able to provide information on the 3D position and 3D orientation of pointing device (20 in FIG. 2) relative to the x y z coordinate system, it should be understood that such information provision requirements may be relaxed under some circumstances. Specifically, in the first embodiment it is only required that the 3D position and 3D orientation of pointing line (21 in FIG. 2) to be known, instead of having complete information on the position of pointing device (20 in FIG. 2) along the pointing line. That is, in some cases pointing device may be moved along pointing line without loss of functionality. In such embodiments the coordinate sensing devices need only provide information on the 3D position and 3D orientation of a line (as opposed to a line-segment) substantially intersecting pointing device. If coordinate sensing devices are able to provide complete 3D information (i.e., 3D position and 3D orientation) of pointing device, as opposed to pointing line, the extra positional information may, for example, be used to implement the capability to zoom in on a region around point-of-aim (210 in FIG. 2); other actions may also be based on the extra positional information. The foregoing capability may be inferred from the description of the third embodiment, in which the coordinate sensing device only is used to provide information on the angle between the pointing line and two other fixed lines, instead of full position and orientation information about a line segment.

Although the first, second and third embodiments describe the application of the invention as a cursor control device, the invention may also be used to facilitate non-cursor-related applications. Such applications may include "virtual writing" on the interaction region 71, target practice and the like. Also, the invention may be used other than for presentations. For example, methods of the invention may be employed to control a cursor on a television screen in order to make selections from menus associated with such things as Digital Satellite Television; other applications may also be anticipated.

Moreover, the features of the present invention that enable the tracking of point-of-aim relative to an interaction region may be enhanced by algorithms that allow the filtering of involuntary, fast and/or small hand-movements (that may be caused, for example, by the activation of buttons). Such algorithms may be used to control a point that moves less erratically than the actual point-of-aim while still being associated with it. Such motion filtering may produce a more steady motion of cursor 501. Such algorithms may also be used when the user is required to highlight calibration points 721a, 721b, . . . . Filter algorithms are well-known in the art.

The present invention also contemplates the inclusion into pointing device 20 or presentation device 25 of sensors capable of detecting motion or acceleration, both linear and angular, in addition to or as part of coordinate sensing device 201. Such sensors may be used to detect unintended motion or acceleration of pointing device 20 or presentation device 25 that may be caused, for example, by trembling of the user's hand. The programs described above with reference to FIGS. 5, 6, 12 and 14 may be enhanced by algorithms that compare the output of such sensors and/or coordinate sensing device to predefined thresholds, so that a change in measured orienta-

US 7,746,321 B2

29

30

tion and/or position by coordinate sensing device 201 may be recognized as significant only if such output exceeds these thresholds. Using threshold selection, a change in cursor position may only be affected if inferred to be intentional, avoiding the type of "jitter" associated with the use of regular laser pointers by a user with an unsteady hand.

Furthermore, pointing device 20 may be equipped with an image capturing device, such as a digital camera, preferably with zoom and controllable focus capabilities. Other image capturing devices, in combination with appropriate optical devices, may also be used. As stated before, such a digital camera may be used as an embodiment of distance measuring device 206. Referring to FIG. 18, such a digital camera or the like (not shown) may also be used to aid in the process of highlighting the calibration points 721a, 721b . . . . Images of calibration points 721a, 721b, . . . and light spots at point-of-aim 210 may be captured during the time when the user is engaged in the highlighting process. These images may be temporarily stored, together with the position and orientation of the z'-axis at the time the image was acquired. During the highlighting process, it is likely that point-of-aim 210 changes slightly. The resulting sequence of images may then be used to more accurately estimate the orientation and position of the pointing line 21 that connects the origin of the x' y' z' system to calibration point 721a, 721b, . . . . For example, an averaging algorithm may be used. Alternatively, the stored position and orientation of the z'-axis corresponding to the captured image for which the light spot at point-of-aim 210 is closest to the center of calibration point 721a, 721b, . . . may be taken as the position and orientation of the pointing line 21 that connects the origin of the x' y' z' system to calibration point 721a, 721b, . . . .

Some features may also be omitted without affecting the overall applicability of the present invention. For example, level-sensing device (303 in FIG. 1) and visible markings (302 in FIG. 1) may be helpful but are not of critical importance and may be omitted. If level-sensing device 303 are present, the output may also be utilized to correct the orientation of the x y z coordinate system to ensure that its x-y plane is substantially horizontal, as previously explained. In such a case, the visible markings 302 may no longer precisely indicate the position of certain coordinate planes or even the origin of the x y z coordinate system. If the orientation of the uncorrected x-y-plane with respect to a horizontal surface is small enough, though, visible markings 302 may still provide sufficiently reliable information on coordinate planes and origin of the corrected x y z coordinate system.

Furthermore, the programs outlined in FIGS. 3, 4, 5, 6, 11, 12, 14 and 17 may be changed appropriately without loss of functionality, particularly with respect to the order of some of the elements. The programs may also be written in any language that is advantageous to particular the implementation, including without limitation C, Java, and VisualBasic.

Other embodiments that include automatic activation and de-activation of light-beam projection device 202, or include provision for instructing the cursor control routines to show or hide computer cursor 501 are also within the scope of the present invention. For example, automatic activation and de-activation of light-beam projection device 202 may occur depending on whether or not the z'-axis intersects one of the interaction structures 72, or regions of space close to them. This may be performed by instructions to the cursor control routines to show or hide computer cursor 501. Also, means may be provided to activate light-beam projection device 202 manually.

Furthermore, pointing device 20 and presentation device 25 may include a conventional, indirect pointing device such as a trackball or the like, to be used in situations where direct pointing is not possible or not desired. As a practical matter, coordinate sensing device 201, in some embodiments in combination with coordinate sensing device 301, may be used to affect cursor control in an indirect manner if the intended use makes this desirable. To effect cursor control in indirect pointing applications, pointing device 20 or presentation device 25 may include a user input device that enables the user to select whether indirect cursor motion control is desired, or may include sensors and/or algorithms that enable determining when direct pointing actions are not possible. For example, an algorithm or sensor may be included that enables determination of whether pointing device 20 or presentation device 25 is within the operational range of base station 30. The third described embodiment, specifically, may be enhanced with algorithms and/or sensors, such as accelerometers, that enable to determination of whether pointing device 20 or presentation device 25 have been displaced significantly from the position at which the calibration procedure was performed, making direct pointing actions no longer possible without additional calibration steps. As part of the third described embodiment, additional input devices and algorithms may be included that enable the user to mark an orientation in space such that indirect cursor motion control may be effected based on the changes in orientation with respect to this marked orientation, as described in the cited prior art. Other embodiments of a system may also be enhanced by such functionality and input devices.

In addition to the previously described methods to determine size, position and orientation of interaction region 71, other methods are also within the scope of the invention. These include methods based on the use of digital cameras and the like. The position and orientation of such cameras, relative to the x y z coordinate system, may be tracked by using a device such as coordinate sensing device 201 and 301. For example, given sufficient knowledge of the optical characteristics of a digital camera, 3D features of an object may be determined from one or more images taken from one or more positions. Using such images, a complete 3D description of interaction region 71 may be determined.

Another alternative for establishing 3D position, size and orientation of interaction region 71 is provided by a digital camera or the like used in addition to, or as embodiment of, the distance measuring device 206. In such embodiments the direction relative to the x' y' z' coordinate system of the axis along which distance is measured may be controlled and measured by mounting the digital camera and/or distance measuring device 206 in such a way that their orientation relative to the x' y' z' coordinate system may be controlled and measured. Other implementations in which the foregoing components are positionally fixed are also contemplated. For purposes of explanation, the axis along which distance is measured is denoted as the z''-axis, and the z''=0 position is assumed to coincide with the origin of the x' y' z' coordinate system. The orientation of the z''-axis with respect to the x' y' z' coordinate system, and also with respect to the x y z coordinate system may therefore be assumed to be known. In this embodiment, calibration points 721a, 721b, . . . may be displayed simultaneously, as projections of screen marks 521a, 521b, . . . , and may differ in appearance, such that they may be distinguished by image processing software. Alternatively, calibration points 721a, 721b, . . . may appear as projections of screen marks 521a, 521b, . . . in an automatically controlled sequence. The user may then be queried to direct pointing device 20 in the general direction of interaction region 71 in such a way that the digital camera may image the calibration point under consideration. An automated calibration

US 7,746,321 B2

31

sequence may then be executed, wherein the z"-axis is directed, in sequence, to calibration points $721a$, $721b$, . . . etc. The image processing software may identify the various calibration points $721a$, $721b$, . . . and the 3D position of these points may then be determined from knowledge of the orientation of the z"-axis and the coordinates of the z"=0 position with respect to the x y z coordinate system, in addition to the measured point-of-aim-distance 211 between the calibration points $721a$, $721b$, . . . and the origin of the x' y' z' coordinate system. This embodiment may also provide light-beam projection device 202 mounted in a way that enables control of the direction of the light-beam relative to the x' y' z' coordinate system. This light-beam may be used to aid in positioning the z"-axis. Embodiments where light-beam projection device 202 are fixed or left out entirely are also contemplated.

The present invention also contemplates situations in which parts of the calibration procedures outlined may be repeated at appropriate times. For example, when the relative position of base station 30 and interaction region 71 changes substantially there may be a need to recalibrate the system. Such may also be the case when the position with respect to interaction region 72 of pointing device 20 or presentation device 25 changes significantly, while operation of a particular embodiment of the invention operated using the assumption that such position remains substantially unchanged. As another example, coordinate sensing device 201 and/or coordinate sensing device 301 may include time-integrated acceleration measuring devices. In such a case accuracy of coordinate sensing may deteriorate over time, because of drift in the base acceleration measurements. When the deterioration has become large enough to be unacceptable to the user, the user may be queried to place pointing device 20 in certain defined positions with respect to the x y z coordinate system, so as to re-initialize coordinate sensing device 201 and 301.

The present invention also contemplates the use of a plurality of pointing devices 20 and/or presentation devices 25. Each of the plurality of pointing devices 20 or presentation devices 25 may be uniquely identifiable by the computer, for example by carrying a unique ID code inside their respective communication and control device 204. Each of the plurality of pointing or presentation devices may be associated with a specific cursor and/or a specific interaction region 71. For example, a first pointing device may be used to control a corresponding cursor on the left-hand one of two interaction regions 71, and a second pointing device may be used to control a corresponding cursor on the right-hand one of two interaction regions 71. Alternatively, both pointing devices may be used to control a corresponding, identifiable cursor on the same interaction region 71.

Furthermore, the present invention contemplates the use of a plurality of entities such as base station 30, a particular one of which may be associated with the origin of the x y z coordinate system. Such a base station may be designated as the 'master base station'. Each of the base stations may include coordinate sensing device 201, so that their respective position and orientation relative to the master base station can be determined with greater accuracy than that afforded by the coordinate sensing device 201 that is incorporated in pointing device 20. Using such multiple base stations and coordinate sensing devices, 3D data pertaining to pointing device 20 may be determined relative to the closest base station, and the relative position and orientation of that base station with respect to the master base station may be used to establish the 3D data pertaining to pointing device 20 with respect to the x y z coordinate system. Alternatively, signals from multiple base stations, as measured by the coordinate sensing device 201 disposed in pointing device 20, may be used simulta-

32

neously to reduce measurement errors. Generally speaking, determining the 3D data pertaining to pointing device 20 with respect to the x y z coordinate system by making use of only one base station 30 may be less accurate than by making use of a plurality of base stations. Hence, the effective range of operation of pointing device 20 may be enhanced by distributing a plurality of base stations over a large region of space.

Referring to FIG. 19, in another embodiment, different devices than light-beam projection devices may be used to determine the position of the points in set P. For example, light-beam projection device 202 may be omitted in an embodiment where pointing device 20 has the general shape of an elongated body, such as a pointing stick. The length of this stick may be predetermined or variable. For example, pointing device 20 could be in the shape of an extendable, or telescopic pen such as the INFINITER Laser Baton sold by Bluesky Marketing—Unit 29, Six Harmony Row, Glasgow, G51 3BA, United Kingdom. The process of highlighting a calibration point $721a$ $721b$, . . . , in this embodiment may be replaced by the action of pointing to the calibration point $721a$, $721b$, . . . , thereby guided by the elongated shape of pointing device 20 instead of the light spot shown in FIG. 18 at point-of-aim 210. Distance measuring device 206 may also be provided in a related embodiment, similar to the second described embodiment. For example, distance measuring device 206 may include a device to measure the distance from the tip of the elongated body of pointing device 20 to the origin of the x' y' z' coordinate system. In such an embodiment, in order to obtain measurements of point-of-aim-distance 211, as described for example at program element $130f$ (see FIG. 12), the user might be queried to make physical contact between the tip of pointing device 20 and the calibration point. Referring to FIG. 19, pointing device 20 may also comprise contact-sensing device 207, for example at the tip of pointing device 20, capable of indicating physical contact between the tip of pointing device 20 and a surface. Contact-sensing device 207 may be in the form of a pressure-sensor or switch. Such sensors are known in the art.

The present invention also contemplates the use of various other sensors integrated in pointing device 20, presentation device 25 and/or base station 30 to help determine the position and/or orientation of interaction structure 72. For example, pointing device 20, presentation device 25 and/or base station 30 may include ultrasonic emitting and detecting devices to enable measuring substantially the shortest distance between a known point in the x y z coordinate system (e.g., the position of pointing device 20, of presentation device 25 or of base station 30) and the plane in which projection region 60 lies. The user may be queried to align pointing device 20, presentation device 25 or base station 30 such that the distance measuring device is oriented substantially perpendicularly to projection region 60. It should be understood that other types of sensors may be included in pointing device 20, presentation device 25 or base station 30 to help constrain the position and/or orientation of interaction structure 72.

In some cases it may be unnecessary to provide a separately embodied base station 30. For example, coordinate sensing device 201 may partly or completely rely on inertial sensing means such as accelerometers and gyroscopes, or on distance measurements with respect to walls, ceiling and/or floor. In such cases it would be possible to leave out base station 30 entirely and simply choose an appropriate x y z coordinate system. In such embodiments communication and control device 204 could be configured to communicate directly with the computer.

US 7,746,321 B2

33

The present invention also contemplates the use of automated procedures to establish the nature of the calibration points 721a, 721b, 721c, 721d, based on the measurements of the orientation and/or position of the pointing lines 21 that substantially pass through them. For example, with reference to FIG. 7, calibration points 721a and 721d need not be explicitly identified to the user as upper-right and lower-left corner respectively, but may merely be identified as diagonally opposite corners. Those skilled in the art will appreciate that in such a case an automated procedure may use the measurements of orientation and/or position of both pointing lines 21, specifically with respect to the x-y-plane, to identify which of the two lines passes through the upper one of the two diagonally opposite corners. The practical consequence to the user is that the user need not be concerned about which of the two calibration points 721a and 721d is highlighted first. Similar arguments can be used to construct automated procedures that determine whether a pointing line 21 substantially passes through a left or a right corner of interaction region 71 (and, by assumption, of interaction structure 72). For example, the a-priori assumption may be made that the clockwise angle between a pointing line 21 through a left corner and a pointing line 21 through a right corner, measured parallel to the x-y-plane, should not exceed 180 degrees, as will be appreciated by those skilled in the art.

Finally, although the methods disclosed by the present invention are described in 3D, the invention may also be applied in 2D scenarios.

While the invention has been described with respect to a limited number of embodiments, those skilled in the art, having benefit of this disclosure, will appreciate that other embodiments can be devised which do not depart from the scope of the invention as disclosed herein. Accordingly, the scope of the invention should be limited only by the attached claims.

What is claimed is:

1. A method for controlling a parameter related to a position of a computer display cursor based on a point-of-aim of a pointing device within an interaction region, comprising:

projecting an image of a computer display to create the interaction region;

establishing at least one calibration point having a predetermined relation to said interaction region;

directing a pointing line to substantially pass through said calibration point while measuring a position of and an orientation of the pointing device, said pointing line having a predetermined relationship to said pointing device; and

controlling the parameter related to the position of the cursor within the interaction region using measurements of the position of and the orientation of the pointing device.

2. The method of claim 1, further comprising:

initializing boundaries of the interaction region to substantially coincide with a predetermined interaction structure and formulating a description of said interaction structure, whereby said description may be used to constrain a position of at least a second calibration point.

3. The method according to claim 2, wherein said description uses the measurements of orientation and position of the pointing device from said measuring at said calibration point.

4. The method according to claim 3, wherein said interaction structure is a rectangle, and wherein a side of said interaction structure has a predetermined relation to a device used to measure the orientation and position of the pointing device.

34

5. A method for controlling a parameter related to position of a cursor on a projected computer screen image, comprising:

measuring an angle between a pointing line and a first line, said first line being related in a predetermined way to at least one of Earth's magnetic field direction and Earth's gravity field direction, and said pointing line having a predetermined relation to a pointing device;

using a parameter related to the measured angle to control the parameter of said cursor on said computer screen image.

6. The method of claim 5, further comprising:

first measuring the angle between said pointing line and said first line, said pointing line having a predetermined relation to a point-of-aim;

establishing a calibration point, said calibration point having a predetermined relation to said computer screen image;

directing said pointing line to substantially pass through said calibration point while second measuring the angle between said pointing line and said first line;

using the first measured angle and the second measured angle to constrain a parameter related to said point-of-aim whereby the cursor parameter is controlled by position of said point-of-aim measured relative to said projected computer screen image.

7. A method for controlling a computer display cursor in an interaction region, comprising:

establishing a calibration point having a predetermined relation to said interaction region;

first measuring at least one of a position and orientation of a pointing line while directing said pointing line to substantially pass through said calibration point, the first measurement used to constrain a parameter of said calibration point, the pointing line having a predetermined relationship to at least one of position and orientation of a pointing device;

using a characteristic feature of said interaction region to establish a property of a common point of said pointing line and said interaction region measured relative to said interaction region;

measuring at least one of position and orientation of the pointing device; and

using the characteristic feature of said interaction region and measurement of the pointing device to control the cursor on a computer display image.

8. The method of claim 7, further comprising constraining a coordinate of a point-of-aim of said pointing device, measured relative to said interaction region, said point-of-aim substantially lying on said pointing line, the constraining comprising:

second measuring the at least one of a position of a point of and an orientation of said pointing line and using the second measurement of said pointing line and the first measurement of said pointing line to constrain the coordinate of said point-of-aim, whereby said first measurement is used to constrain the coordinate of said point-of-aim relative to said interaction region.

9. The method according to claim 8, further comprising:

initializing said interaction region to have a predetermined relationship with a predetermined interaction structure; and

formulating a description of said interaction structure, whereby said description is used to constrain a parameter of said point-of-aim relative to said interaction region.

US 7,746,321 B2

35

**10**. The method according to claim **9**, further comprising:
combining said description of said interaction structure with the first measurement of said pointing line and said second measurement of said pointing line to constrain a coordinate of an intersection point of said pointing line and said interaction structure during said second measurement.

**11**. The method according to claim **10**, further comprising controlling said cursor on said computer display image based on the relation between said intersection point and said description of said interaction structure.

**12**. A method for controlling a parameter related to position of a cursor on a computer screen image, comprising:
measuring a first angle between a pointing line and a first line;
measuring a second angle between said pointing line and a second line, said first line being related in a predetermined way to a geographic reference, said second line being related in a predetermined way to a geographic reference, said pointing line having a predetermined relation to said pointing device, and
using a first parameter related to the first angle, and a second parameter related to the second angle to control the parameter of said cursor on said computer screen image,
whereby said cursor position parameter is controlled by movement of said pointing device.

**13**. The method of claim **12**, further comprising constraining a parameter of a point-of-aim of said pointing device with respect to an interaction region, the constraining comprising:
first measuring the first angle and the second angle wherein said pointing line has a predetermined relation to said point-of-aim;
establishing a calibration point having a predetermined relation to said interaction region;
second measuring the first angle and the second angle while directing said pointing line to substantially pass through said calibration point; and
using the first measurement and the second measurement of said first and second angles to constrain the coordinate of said point-of-aim, whereby the parameter of said cursor on said computer screen image is controlled by the parameter of said point-of-aim measured relative to said interaction region.

**14**. The method of claim **12** wherein the geographic reference for the first line is one of Earth's magnetic field direction and Earth's gravity field direction, and the geographic reference for the second line is one of Earth's magnetic field direction and Earth's gravity field direction.

**15**. A pointing device for controlling a feature on an image generated by a computer, comprising:
a handheld enclosure having a predetermined relation to a pointing line;
a sensing device for generating first data indicative of a first spatial state of said enclosure while the pointing line is directed at a first calibration point, said first calibration point having a predetermined relation to the image, and for generating second data indicative of a second spatial state of said enclosure while the pointing line is directed at a non-calibration point on the image; and
a communication element coupled to said sensing device for providing control data to the computer for controlling the feature on the image, said control data being based on said first data and said second data,
wherein the feature on the image can be controlled based on the relation between the first spatial state and the second spatial state of said enclosure.

36

**16**. The pointing device according to claim **15**, wherein said sensing device generates third data indicative of a third spatial state of said enclosure while the pointing line is directed at a second calibration point, said second calibration point having a predetermined relation to the computer image, wherein said control data is further based on said third data, and
wherein the feature on the image can be further controlled based on the relation between the third spatial state and the second spatial state and the first spatial state of said enclosure.

**17**. The pointing device according to claim **16**, wherein said sensing device includes at least one of an accelerometer, a gravity sensor, a magnetic field sensor, a gyroscope, an image sensor and an inclinometer.

**18**. The pointing device according to claim **16**, wherein said first spatial state, said second spatial state and said third spatial state comprise an orientation of said enclosure.

**19**. The pointing device according to claim **15**, wherein said sensing device includes an accelerometer.

**20**. The pointing device according to claim **19**, wherein said first spatial state and said second spatial state comprise an orientation of said enclosure.

**21**. The pointing device according to claim **15**, wherein said sensing device includes a gravity sensor.

**22**. The pointing device according to claim **15**, wherein said sensing device includes a magnetic field sensor.

**23**. The pointing device according to claim **15**, wherein said sensing device includes a gyroscope.

**24**. The pointing device according to claim **23**, wherein said first spatial state and said second spatial state comprise an orientation of said enclosure.

**25**. The pointing device according to claim **15**, wherein said sensing device includes an image sensor.

**26**. The pointing device according to claim **15**, wherein said sensing device includes an inclinometer.

**27**. An apparatus for determining a spatial relation between a computer generated image and a user-wielded pointing device, comprising:
a sensing device for generating first calibration data indicative of a first spatial state of the pointing device, said sensing device being at least partly contained in the pointing device;
a user input device to indicate that the pointing device is located at a first position and directed towards a first point, said first point having a predetermined relation to the image; and
a processor coupled to said sensing device and said user input device and programmed to use said first calibration data to determine the spatial relation between the image and the pointing device located at said first position,
wherein the spatial relation is provided to control a feature on the image.

**28**. The apparatus of claim **27**, wherein said sensing device generates second calibration data indicative of a second spatial state of the pointing device,
wherein said user input device further indicates that the pointing device is substantially located at the first position and directed towards a second point, said second point having a predetermined relation to the image, and
wherein said processor further uses said second calibration data in determining the spatial relation between the image and the pointing device located at said first position.

**29**. The apparatus of claim **28**, wherein said sensing device generates third and fourth calibration data indicative of third and fourth spatial states of the pointing device,

A112

US 7,746,321 B2

37

wherein said user input device further indicates that the pointing device is substantially located at the first position and directed towards third and fourth points, said third and fourth points each having a predetermined relation to the image, and

wherein said processor further uses said third and fourth calibration data in determining the spatial relation between the image and the pointing device located at said first position.

**30**. The apparatus of claim **28**, wherein said sensing device includes at least one of an accelerometer, a gravity sensor, a magnetic field sensor, a gyroscope, an image sensor and an inclinometer.

**31**. The apparatus of claim **27**, wherein said sensing device includes at least one of an accelerometer, a gravity sensor, a magnetic field sensor, a gyroscope, an image sensor and an inclinometer.

**32**. The apparatus of claim **27**, wherein said sensing device generates second calibration data indicative of a second spatial state of the pointing device,

wherein said user input device further indicates that the pointing device is substantially located at a second position and directed towards a second point, said second point having a predetermined relation to the image, and

wherein said processor further uses said second calibration data in determining the spatial relation between the image and the pointing device.

**33**. An apparatus for controlling a feature on an image generated by a computer, comprising:

a handheld enclosure including a sensing device which provides data;

a user input device to indicate that said enclosure is being directed towards a first calibration point, said first calibration point having a predetermined relation to the image; and

a processor coupled to said sensing device and said user input device and programmed to provide control data for controlling the feature on the image, said processor using data provided by said sensing device to develop first calibration data related to said enclosure being directed towards said first calibration point and non-calibration data related to said enclosure being directed towards a non-calibration point, said processor further using said first calibration data and said non-calibration data to develop said control data.

**34**. The apparatus according to claim **33**, wherein said user input device further indicates that said enclosure is being directed towards a second calibration point, said second calibration point having a predetermined relation to the image; and

wherein said processor further uses data provided by said sensing device to develop second calibration data related to said enclosure being directed towards said second calibration point, with said second calibration data being further used to develop said control data.

**35**. The apparatus according to claim **34**, wherein said sensing device includes at least one of an accelerometer, a gravity sensor, a magnetic field sensor, a gyroscope, an image sensor and an inclinometer.

**36**. The apparatus according to claim **33**, wherein said sensing device includes an imaging device,

wherein said user input device further indicates that said enclosure is directed at third and fourth calibration points, said third and fourth calibration points having a predetermined relation to the image; and

wherein said processor further uses data provided by said sensing device to develop third and fourth calibration

38

data related to said enclosure being directed at said third and fourth calibration points, with said third and fourth calibration data being further used to develop said control data.

**37**. The apparatus according to claim **33**, wherein said sensing device includes at least one of an accelerometer, a gravity sensor, a magnetic field sensor, a gyroscope, an image sensor and an inclinometer.

**38**. The apparatus according to claim **33**, wherein said first calibration data is used to determine a spatial relation between said enclosure and the image, and wherein said spatial relation and said non-calibration data are used to develop said control data.

**39**. The apparatus according to claim **33**, further comprising:

a distance determining device coupled to said processor for determining distance between said enclosure and a target point in a plane substantially containing the image,

wherein said processor uses said distance in developing said control data, and

wherein the controlling a feature on the image comprises a zoom event.

**40**. An apparatus for controlling a feature on an image generated by a computer, comprising:

a handheld enclosure including a sensing device which provides data;

a user input device for collecting first calibration data indicating that said enclosure is directed towards a first calibration point, said first calibration point having a predetermined relation to the image; and

a processor coupled to said sensing device and said user input device and programmed to provide control data for controlling the feature on the image, said processor using said first calibration data and data provided by said sensing device while the enclosure is being directed at other than said first calibration point to develop said control data.

**41**. The apparatus according to claim **40**, wherein said user input device further collects second calibration data indicating that said enclosure is directed towards a second calibration point, said second calibration point having a predetermined relation to the image; and

wherein said processor further uses said second calibration data in the developing said control data.

**42**. The apparatus according to claim **41**, wherein said sensing device includes at least one of an accelerometer, a gravity sensor, a magnetic field sensor, a gyroscope, an image sensor and an inclinometer.

**43**. The apparatus according to claim **40**, wherein said sensing device includes at least one of an accelerometer, a gravity sensor, a magnetic field sensor, a gyroscope, an image sensor and an inclinometer.

**44**. A computer-readable medium or media storing computer-executable instructions for directing a computer to perform a method for controlling a feature on an image generated by a computer using a handheld enclosure which has a pointing line having a predetermined relation with the enclosure and a sensing device which provides sensor data, the method comprising:

determining a first spatial state of the enclosure while the pointing line is directed at a first calibration point, said first calibration point having a predetermined relation to the image, based on received sensor data;

determining a second spatial state of the enclosure while the pointing line is directed at a non-calibration point on the image based on received sensor data; and

A113

US 7,746,321 B2

39

controlling the feature on the image based on the relation between the first spatial state and the second spatial state of the enclosure.

**45**. The computer-readable medium or media of claim **44**, the method further comprising:

determining a third spatial state of the enclosure while the pointing line is directed at a second calibration point, said second calibration point having a predetermined relation to the computer image, based on received sensor data,

wherein the feature on the image is further controlled based on the relation between the first, second and third spatial states of the enclosure.

**46**. The computer-readable medium or media of claim **44**, wherein said first spatial state and said second spatial state comprise an orientation of the enclosure.

**47**. A computer-readable medium or media storing computer-executable instructions for directing a computer to perform a method for controlling a feature on an image generated by a computer using a handheld pointing device which has a sensing device which provides sensor data and a user input device to indicate that the pointing device is directed at a point, the method comprising:

determining a first spatial state of the pointing device based on received sensor data when the user input device indicates that the pointing device is located at a first position and directed towards a first point, said first point having a predetermined relation to the image; and

determining the spatial relation between the image and the pointing device located at said first position based on the first spatial state; and

controlling the feature on the image based on the first spatial state and the spatial relation.

**48**. The computer-readable medium or media of claim **47**, the method further comprising:

determining a second spatial state of the pointing device when the user input device indicates that the pointing device is substantially located at a second position and directed towards a second point, said second point having a predetermined relation to the image,

wherein determining the spatial relation between the image and the pointing device located at said first position is further based on said second spatial state.

**49**. The computer-readable medium or media of claim **48**, the method further comprising:

determining third and fourth spatial states of the pointing device when the user input device further indicates that the pointing device is substantially located at the first position and directed towards third and fourth points, said third and fourth points each having a predetermined relation to the image, and

40

wherein determining the spatial relation between the image and the pointing device located at said first position is further based on said third and fourth spatial states.

**50**. The computer-readable medium or media of claim **47**, the method further comprising:

determining a second spatial state of the pointing device when the user input device indicates that the pointing device is substantially located at a second position and directed towards a second point, said second point having a predetermined relation to the image,

wherein determining the spatial relation between the image and the pointing device is further based on said second spatial state.

**51**. A computer-readable medium or media storing computer-executable instructions for directing a computer to perform a method for controlling a feature on an image generated by a computer using a handheld enclosure which has a sensing device which provides sensor data and a user input device to indicate that the pointing device is directed at a point, the method comprising:

determining first calibration data when the user input device indicates that the enclosure is being directed towards a first calibration point, said first calibration point having a predetermined relation to the image, based on received sensor data;

determining non-calibration data when the enclosure is being directed towards a non-calibration point on the image based on received sensor data; and

controlling the feature on the image based on said first calibration data and said non-calibration data.

**52**. The computer-readable medium or media of claim **51**, the method further comprising:

determining second calibration data when the user input device indicates that the enclosure is being directed towards a second calibration point, said second calibration point having a predetermined relation to the image, based on received sensor data,

wherein controlling the feature on the image is further based on said second calibration data.

**53**. The computer-readable medium or media of claim **52**, the method further comprising:

determining third and fourth calibration data when the user input device indicates that the enclosure is directed at third and fourth calibration points, said third and fourth calibration points having a predetermined relation to the image, based on received sensor data,

wherein controlling the feature on the image is further based on said third and fourth calibration data related.

\* \* \* \* \*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ULTIMATEPOINTER, L.L.C | Nintendo Co., Ltd. et al. |

| (b) County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Gregory L. Maag, Charles J. Rogers, and Thomas L. Warden, CONLEY ROSE, P.C., 600 Travis Street, Suite 7100, Houston, Texas 77002; (713) 238-8000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
    Plaintiff

☒ 3  Federal Question
    *(U.S. Government Not a Party)*

☐ 2  U.S. Government
    Defendant

☐ 4  Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☒ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district *(specify)*
☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
35 U.S.C. § 271
Brief description of cause:
Patent infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☑ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 12/30/2011 | //Thomas  L. Warden// |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

A115

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ULTIMATEPOINTER, LLC,

                        Plaintiff,

        v.

NINTENDO CO. LTD., *ET AL.*,

                        Defendants.

Civil Action No. 6:11-CV-496 (LED)

Jury Trial Demanded

**DEFENDANTS' MOTION TO SEVER AND TRANSFER THE
CLAIMS AGAINST NINTENDO AND TO STAY THE CLAIMS
AGAINST THE RETAILER DEFENDANTS**

# <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND ......................................................................... 1

    I.  Nintendo Is The Real Party In Interest In This Litigation. .......................................... 1

        A.  Nature and Stage of the Proceedings. ....................................................1
        B.  The Complaints Identify Only Nintendo Products. .................................2
        C.  The Technology of the '321 Patent.........................................................3

    II.  The Parties Have No Meaningful Connections With This District. ............................ 4

ARGUMENT ............................................................................................... 5

    I.  The Claims Against Defendant Nintendo Should Be Severed From The Claims Against The Retailer Defendants. ................................................................. 5

        A.  UPoint's Claims Against the Retailer Defendants are Peripheral to its Claims Against Nintendo. ......................................................................6
        B.  Adjudication of the Claims Against Nintendo Will Dispose of the Claims Against the Retailer Defendants. .........................................................7

    II.  The Severed Claims Against Nintendo Should Be Transferred To The Western District Of Washington. .......................................................................... 8

        A.  The Claims Against Nintendo Could Have Been Brought in the Western District of Washington. ..........................................................................9
        B.  The Private Interest Factors Weigh Heavily in Favor of Transfer..........9
            1.     The ease of access to sources of proof favors transfer.................... 9
            2.     The convenience of the parties and witnesses favors transfer. ....... 10
            3.     The remaining two private interest factors are neutral. .................. 13

        C.  The Public Interest Factors Favor Transfer. .........................................13
            1.     The Western District of Washington has a strong interest in this case........... 13
            2.     The administrative difficulties flowing from court congestion slightly favors transfer. ................................................................. 14

    III.  The Claims Against The Retailer Defendants Should Be Stayed............................. 14

CONCLUSION........................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

<small>CASES</small>

*Affinity Labs. of Tex., LLC v. Apple, Inc.*,
   2009 U.S. Dist. LEXIS 130635 (E.D. Tex., Aug. 25, 2009) ....................................................14

*Corry v. CFM Majestic, Inc.*,
   16 F. Supp. 2d 660 (E.D. Va. 1998) .........................................................................................10

*Farina v. Nokia Inc.*,
   625 F.3d 97 (3d Cir. 2010)..........................................................................................................8

*HTI IP LLC v. DriveOK, Inc.*,
   2010 U.S. Dist. LEXIS 82691 (E.D. Tex. 2010) .....................................................................14

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009).................................................................................................10

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009)............................................................................................ passim

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008).............................................................................................9, 10

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (en banc) ("Volkswagen II")....................................................9, 14

*J&J Sports Prods. v. Riviera*,
   No. H-10-1138, 2010 U.S. Dist. LEXIS 89484 (S.D. Tex. Aug. 30, 2010) ............................14

*Koh v. Microtek Int'l, Inc.*,
   250 F. Supp. 2d 627 (E.D. Va. 2003) .............................................................................7, 8, 16

*LG Elecs., Inc. v. First Int'l Computer, Inc.*,
   138 F. Supp. 2d 574 (D.N.J. 2001) ...............................................................................7, 8, 10

*LG Elecs. v. Asustek Computers*,
   126 F.Supp.2d 414 (E.D. Va. 2000) .....................................................................................7, 16

*Microlinc, LLC v. Intel Corp.*,
   No. 2:07-cv-488, 2010 U.S. Dist. LEXIS 99255 (E.D. Tex. Sept. 20, 2010)..........................16

*Remmers v. United States*,
   No. 1:09-cv-345, 2009 U.S. Dist. LEXIS 100847 (E.D. Tex. Oct. 28, 2009) ........................14

*Shifferaw v. Emson USA*,
     2010 WL 1064380 (E.D. Tex. 2010) .............................................................. passim

*Siemens Aktiengesellschaft v. Sonotone Corp.*,
     370 F. Supp. 970 (N.D. Ill. 1973) ........................................................................10

*Toshiba Corp. v. Hynix Semiconductor, Inc.*,
     No. 3:04-cv-239, 2005 WL 2415960 (N.D. Tex. Sept. 30, 2005) ....................7, 16

*Ultimate Pointer, LLC v. Nintendo Co., Ltd. et al*,
     Civil Action No. 6:11-cv-00571 (E.D. Tex. [Tyler Div.]) .........................................1

*West Coast Trends, Inc. v. Ogio Int'l, Inc.*,
     No. 6:10-cv-688, 2011 U.S. Dist. LEXIS 124343 (E.D. Tex., Oct. 27, 2011) (Love, J.)........14

STATUTES

28 U.S.C. § 1391(c) (2011)...............................................................................................10

28 U.S.C. § 1404(a) .......................................................................................................6, 9

35 U.S.C. § 299(a) ..............................................................................................................8

OTHER AUTHORITIES

FED. R. CIV. P. 15(c)(1)........................................................................................................8

FED. R. CIV. P. 21 ................................................................................................................6

This case is, in actuality, a patent infringement dispute between the plaintiff, UltimatePointer, LLC ("UPoint"), and Defendants Nintendo Co., Ltd. ("NCL") and Nintendo of America Inc. ("NOA") (collectively "Nintendo"). The remaining twenty-one (21) defendants ("the Retailer Defendants")[1] are involved in this action simply because they sell or resell the accused Nintendo products—"Nintendo Wii systems, games, controllers, sensors and related accessories."[2] The resolution of UPoint's claims against Nintendo will thus also dispose of UPoint's claims against the Retailer Defendants, which are peripheral to UPoint's claims against Nintendo, the real party in interest. UPoint's claims against Nintendo should, therefore, be severed from its claims against the Retailer Defendants. The claims against Nintendo should then be transferred to the Western District of Washington because the Western District of Washington is clearly the more convenient forum once the Retailer Defendants are severed from this action. The claims against the Retailer Defendants should be stayed pending resolution of the claims against Nintendo to preserve judicial economy.

## FACTUAL BACKGROUND

I.    **Nintendo Is The Real Party In Interest In This Litigation.**

   A.    **Nature and Stage of the Proceedings.**

UPoint filed its original complaint against Nintendo and eighteen (18) Retailer Defendants on September 15, 2011 (one day before the American Invents Act ("AIA") became effective) alleging that "Nintendo Wii systems, games, and related accessories" infringe U.S. Patent No. 7,746,321 ("the '321 patent").[3] Less than a week later, UPoint amended its

---

[1] The twenty-one (21) Retailer Defendants are JJ Games, LLC; GameStop Corp.; Best Buy Stores, L.P.; Bestbuy.com, LLC; Best Buy Purchasing, LLC; Sears, Roebuck and Co.; Kmart Corp.; Target Corp.; WalMart Stores, Inc.; WalMart Stores Texas, LLC; Sam's East, Inc.; Sam's West, Inc.; RadioShack Corp.; Toys "R" US-Delaware, Inc.; Dell, Inc.; QVC, Inc.; Trans World Entertainment Corp.; BJ's Wholesale Club, Inc.; PC Connection, Inc.; CompUSA.com, Inc.; and Tiger Direct, Inc.

[2] *See* Second Amended Complaint, at ¶ 1 (Dkt. # 79). To conserve resources, copies of the pleadings are not attached to this Motion, but rather will be referred to by Docket ("Dkt.") number. Ultimate Pointer filed a second case styled *Ultimate Pointer, LLC v. Nintendo Co., Ltd. et al*, Civil Action No. 6:11-cv-00571 (E.D. Tex. [Tyler Div.]) on November 1, 2011 ("the 571 case") alleging infringement of a related patent against Nintendo and naming the same group of Retailer Defendants. Defendants are concurrently filing a similar Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants in that case.

[3] Complaint, at ¶ 1 (Dkt. 1). A copy of the '321 patent is attached to the Declaration of Trey Yarbrough ("Yarbrough Decl."), at Ex. 1(a).

complaint,[4] adding, among other things, (i) new accusations against Nintendo's "controllers" and "sensors" (*compare* Complaint, ¶ 1 with FAC, ¶ 1), (ii) new Retailer Defendants Sam's East, Inc. and WalMart Stores Texas, LLC (FAC, ¶¶ 12, 14), (iii) new allegations of induced and contributory infringement based on conduct occurring after the filing of the original complaint (FAC, ¶¶ 54-56), and (iv) a new willfulness allegation against NCL (*compare* Complaint ¶ 30 and 32 with FAC ¶¶ 32 and 34).  UPoint filed its Second Amended Complaint on December 30, 2011, dropping Best Buy Co, Inc. and Toys "R" Us, Inc. and adding three additional Best Buy entities as well as Toys "R" Us-Delaware, Inc.  To date, none of the Defendants have answered or otherwise responded in this case.

**B.      The Complaints Identify Only Nintendo Products.**

The Second Amended Complaint (like the FAC) identifies "Nintendo Wii systems, games, controllers, sensors, and related accessories" as the accused products.  The products at issue in this case are thus all Nintendo products.  As such, it is the Nintendo entities that possess the information regarding how the accused products were designed and operate.  The Nintendo Wii systems were designed, developed, and tested by NCL in Japan.  Declaration of Toshiro Hibino ("Hibino Decl.), at ¶ 4.  NCL and its employees in Japan are responsible for the development of all Nintendo hardware systems and all Nintendo software for the Wii system, and the documents relating to this design and development are primarily located in Kyoto, Japan.  *Id*., at ¶¶ 4-5.  NCL also coordinates the manufacture of the Nintendo Wii system, Nintendo Wii games, and Nintendo's Wii accessories.  *Id.*, at ¶ 4.  NOA is responsible for the marketing, sales and distribution of the Wii system to retailers in the United States.  Declaration of Jacqualee Story ("Story Decl."), at ¶ 4.  NOA is, likewise, responsible for the marketing, sales, and distribution of Nintendo Wii games and Nintendo's Wii accessories in the United States.  *Id.*

The Retailer Defendants, on the other hand, are not involved in the design, development or manufacture of the Nintendo Wii systems, games, controllers, sensors or accessories.  It is highly unlikely, therefore, that the Retailer Defendants have any knowledge of the technical

---

[4] *See* First Amended Complaint ("FAC") (Dkt. 3).

features of any of the Nintendo Wii systems, games, controllers, sensors or accessories, other than the public knowledge any consumer might have regarding these accused products. Nintendo, consequently, is the real party in interest in this litigation.

### C.   The Technology of the '321 Patent.

A brief review of the '321 patent further confirms that the Retailer Defendants will not likely have documents or witnesses relevant to the infringement analysis.  The '321 patent is titled "Easily Deployable Interactive Direct-Pointing System and Presentation Control System And Calibration Method Therefor."  According to the patent, "[t]he invention relates generally to devices for making presentations in front of audiences and, more specifically, to devices and methods for making presentations for which interaction with the displayed information through direct-pointing is desired."  Yarbrough Decl., Ex. 1(a), col. 1, ll. 20-24.  More specifically, and referring to Figure 2 below, the '321 patent is directed to a system that uses a handheld pointing device (20), a pointing line (21) and one or more on-screen calibration points (721(a) -(d)) to generate data that identifies the precise three-dimensional location (the x, y and z axes coordinates) of the hand held device.  The system then uses that location information to control a mouse cursor or other features on a projected computer-generated image.  The claims generally relate to the internal operation of such a system.



Fig. 2

A122

Nintendo does not provide design, development, source code, or other technical documentation relating to the Nintendo Wii system or other Nintendo designed and/or developed games, controllers, or accessories to retailers. Hibino Decl., ¶ 6. It is, therefore, highly unlikely that the Retailer Defendants would possess information relevant to the '321 patent.

## II. The Parties Have No Meaningful Connections With This District.

Neither the Plaintiff nor the inventor is located in this district. UPoint is a Delaware limited liability company formed approximately five months before this lawsuit was filed. Yarbrough Decl., at ¶ 26, Ex. 18. UPoint's principal place of business is Houston, Texas.[5] Second Amended Complaint (Dkt. # 79), at ¶ 2. The sole named inventor, Erik Banning, likewise, appears to reside in Houston, Texas. Yarbrough Decl., at ¶ 28, Ex. 20.

Nintendo does not have any connections with this district. NCL is a corporation organized under the laws of Japan, with its headquarters located in Kyoto, Japan. *See* Hibino Decl., at ¶ 2. NCL does not operate an office in Texas, employ anyone in Texas, or maintain documents in Texas. *Id.* at ¶ 7. NOA is a corporation organized under the laws of the State of Washington, with its headquarters and principal place of business in Redmond, Washington. Story Decl., at ¶ 2. NOA also was incorporated in 1982 as a wholly owned subsidiary of NCL. *Id.* at ¶ 3. NOA does not operate an office in Texas, employ anyone in Texas, or maintain documents in Texas. *Id.* at ¶ 4.[6]

The Retailer Defendants' connections with this district are not relevant. As stated previously, Nintendo does not provide any retailers with technical documentation relating to the Nintendo Wii systems or for Nintendo designed and/or developed games, controllers, or accessories. Hibino Decl., at ¶ 6. None of the Retailer Defendants, therefore, have documents (whether located in this district, in Texas, or elsewhere) relating to the substantive technology of

---

[5] A second UPoint entity, UltimatePointer Limited, appears to be located in the United Kingdom. Yarbrough Decl., at ¶ 27; Ex. 19.

[6] Nintendo's only connections in this forum involve a subsidiary of NOA (NES Merchandising, Inc. ("NMI")) that supports retail sales throughout the United States, including in Texas. Story Decl., at ¶ 10. NMI does not employ anyone with knowledge relevant to this action. *Id.* NCL also has an affiliate located in Austin, Texas (Retro Studios, Inc.) that develops games for Nintendo hardware systems. Hibino Decl., at ¶ 8. Retro Studios does not posses any documents relevant to this action or employ anyone with knowledge relevant to this action. *Id.*

- 4 -

the Nintendo Wii systems or other accused products.  Nor do the Retailer Defendants have

witnesses who could testify regarding the details of how the Wii system or other accused

products operate.  Indeed, the only information the Retailer Defendants have related to this case

is their sales information.  That information, however, is not relevant because the patent

exhaustion doctrine would prevent UPoint from recovering damages from both Nintendo and the

Retailer Defendants for the same products.  Nintendo, moreover, is funding the defense of the

Retailer Defendants with respect to the Wii system and the other accused products and has

agreed to indemnify the Retailer Defendants in the event liability is found with respect to those

products.  Consequently, any connections the Retailer Defendants may have to this district are

not relevant to the issues in this case.

## ARGUMENT

Patent Plaintiffs have long included retailers of a manufacturer's products as defendants

in patent cases to increase the pressure on the manufacturer to settle the case and/or to help

establish venue.  For just as long, courts have rightly severed the patentee's claims against the

manufacturer-defendant from the claims against the retailer-defendants because the claims

against the retailer-defendants are peripheral to the claims against the manufacturer.  This district

is no exception.  *See Shifferaw v. Emson USA*, No. 2:09-cv-54, 2010 WL 1064380 (E.D. Tex.

Mar. 18, 2010) (severing claims against manufacturer Mishan, transferring those claims to the

Southern District of New York, and staying the remaining claims against retailers Amazon and

Academy pending resolution of the transferred claims).  This Court should follow the rationale

of *Shifferaw*, and (i) sever the claims against Nintendo, (ii) transfer those claims to the Western

District of Washington, and (iii) stay the claims against the Retailer Defendants until the claims

against Nintendo have been finally adjudicated.

**I.     The Claims Against Defendant Nintendo Should Be Severed From The Claims
        Against The Retailer Defendants.**

District courts have broad discretion to sever any claim against a party under FED. R. CIV.

P. 21.  *See Shifferaw*, 2010 WL 1064380, at *2.  Under circumstances similar to these, this

district has found that severance is proper where:  (1) the remaining claims are peripheral to the

- 5 -

A124

severed claims, and (2) adjudication of the severed claims would potentially dispose of the remaining claims. *Id.*, at * 1 (citing *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. 3:04-cv-239, 2005 WL 2415960, at *4-7 (N.D. Tex. Sept. 30, 2005)). These cases also typically determine whether the § 1404(a) factors warrant transfer of the severed claims as part of the overall sever/stay analysis. *Id.*

### A. UPoint's Claims Against the Retailer Defendants are Peripheral to its Claims Against Nintendo.

Many courts have found that patent-infringement claims against a distributor or retailer are peripheral to claims against the manufacturer. *See Shifferaw,* 2010 WL 1064380, at *3; *Toshiba Corp.,* 2005 WL 2415960, at *6 (severing and transferring claims against manufacturer to the Northern District of California and staying claims against sales representatives); *LG Elecs., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 422-24 (E.D. Va. 2000) (severing and transferring claims against manufacturer to Northern District of California and staying claims against reseller).[7]

This case is no different: UPoint's claims against the Retailer Defendants are peripheral to its claims against Nintendo. NCL is responsible for the development of all Nintendo hardware systems and all Nintendo software for the Wii system, as well as for the Wii system's design and testing. Hibino Decl., at ¶ 4. NCL also coordinates the manufacture of the Wii system, Nintendo's Wii games, and Nintendo's Wii accessories. *Id.* NOA then markets, sells and distributes the Wii systems, Nintendo's Wii games, and Nintendo's Wii accessories in the United States. *See* Story Decl., at ¶ 4.

The Retailer Defendants, conversely, are barely even peripherally involved in issues in this case. They have no involvement in the design, manufacture, or importation of the accused products. Moreover, as stated above, Nintendo has indemnified and is paying for the defense of the Retailer Defendants with respect to the accused products. Put simply, Nintendo is the real party in interest. *Shifferaw*, 2010 WL 1064380, at *3-4.

---

[7] *See also Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627 (E.D. Va. 2003) (sever and transfer); *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574 (D.N.J. 2001) (sever and transfer).

- 6 -

**B.      Adjudication of the Claims Against Nintendo Will Dispose of the Claims Against the Retailer Defendants.**

The adjudication of the claims against Nintendo will dispose of the entire case.  The Retailer Defendants could only be found liable for infringement if Nintendo is found to infringe. *See Shifferaw*, 2010 WL 1064380, at *3 (citations omitted).  If Nintendo is not found to infringe, then UPoint has no claims against the Retailer Defendants.  But, even if Nintendo were found liable and UPoint were to collect damages from Nintendo, the claims against the Retailer Defendants are still disposed of because UPoint cannot receive a double recovery for the same sales. *Id.*, at *3; *Koh*, 250 F. Supp. 2d at 632-33 (patentee cannot recover twice for the same sale) (citing *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568-69 (Fed. Cir. 1993) (patentee can collect only one royalty from a patent infringement)).  Moreover, as in *Shifferaw*, the Retailer Defendants will stipulate to be bound by the rulings of the Western District of Washington thus further evidencing that the adjudication of the claims against Nintendo will dispose of the entire case. *Shifferaw*, 2010 WL 1064380, at *3; *First Int'l Comp., Inc..*, 138 F. Supp. 2d at 585.  Consequently, this is not a case where severance will create multiple lawsuits that have to be developed in their entirety.  Nor will severance impose a significant burden on UPoint, witnesses, or the federal court system.[8]

In sum, the Court should sever UPoint's claims against Nintendo from the claims against the Retailer Defendants.  As in *Shifferaw*, each of the factors necessary for severance is present here—the claims against the Retailer Defendants are peripheral to those against Nintendo, and the adjudication of the claims against Nintendo will likely dispose of the remaining claims.

---

[8] UPoint may attempt to avoid severance by arguing that this case includes non-Nintendo products.  Such an argument will miss the mark, however.  UPoint made numerous amendments in the FAC that do not relate back to the original complaint because they did not arise out of the conduct, transaction, or occurrence set out, or attempted to be set out, in the original complaint. *See* Factual Background; FED. R. CIV. P. 15(c)(1).  The recently enacted joinder provisions of the America Invents Act ("AIA"), consequently, apply to this action. *See, e.g. Farina v. Nokia Inc.*, 625 F.3d 97, 111-12 (3d Cir. 2010) (Class Action Fairness Act enacted after the original complaint but before the amended complaint applied when the amended complaint did not relate back to the original complaint).  Those provisions state in relevant part that joinder of multiple defendants in a patent action is proper only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing …, offering for sale, or selling of the same accused product or process …".  Thus, to the extent UPoint attempts to include any non-Nintendo products in this action, the Defendants are misjoined. *See* 35 U.S.C. 35 U.S.C. § 299(a).

Additionally, as set forth below, transfer of the severed claims to the Western District of Washington is warranted under § 1404(a).

## II.    The Severed Claims Against Nintendo Should Be Transferred To The Western District Of Washington.

A district court may transfer a civil action "[f]or the convenience of parties and witnesses [and] in the interests of justice" to any other district "where it might have been brought." 28 U.S.C. § 1404(a). In this Circuit, "[a] motion to transfer venue should be granted upon a showing that the transferee venue 'is clearly more convenient' than the venue chosen by the plaintiff." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009)).

The transfer inquiry has two parts. First, as a threshold matter, the Court must decide whether the action could have been brought in the transferee court. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("Volkswagen II"). Second, the Court must decide whether transfer is appropriate for the "convenience of the parties and witnesses" and "the interests of justice." *Id.*, at 315. In determining the convenience of the two venues, the Fifth Circuit considers both the "private" and "public" factors. The private interest factors to be considered include: "(1) the relative ease and access to the sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in application of foreign law." *Id.*

A. **The Claims Against Nintendo Could Have Been Brought in the Western District of Washington.**

This threshold factor is easily satisfied.  NOA is subject to jurisdiction in the Western District of Washington by virtue of the location of NOA's principal place of business in Redmond, Washington.  *See* 28 U.S.C. § 1391(c) (2011).  Nor can UPoint argue that venue in Washington would be improper with respect to NCL because NCL has at least the same contacts with the Western District of Washington as it does with the Eastern District of Texas.  Accordingly, venue in the Western District of Washington is proper for this case.  *See, e.g., Nintendo*, 589 F.3d at 1198.[9]

B. **The Private Interest Factors Weigh Heavily in Favor of Transfer.**

1. **The ease of access to sources of proof favors transfer.**

The bulk of the relevant evidence in patent cases usually comes from the accused infringer.  *See Genentech*, 566 F. 3d at 1345.  Thus, it is the location of the defendant's documents that typically determines the weight of this factor.

Here, the majority of Nintendo's relevant documents are located in Japan and Washington.  NCL's principal place of business is in Kyoto, Japan.  Hibino Decl., at ¶¶ 2-3.  Because NCL designed and developed the Wii systems, as well as the other accused products, the majority of the technical documents are located in Kyoto, Japan.  *Id.*, at ¶¶ 4-5.  NOA's headquarters and principal place of business is in Redmond, Washington.  Story Decl., at ¶ 2.  Some divisions of NOA also operate out of offices in North Bend and Kirkland, Washington, and Redwood City, California.  *Id.*, at ¶ 5.  Most of the marketing, sales and financial documents regarding the Wii system are located at NOA's headquarters in Redmond, Washington, with

---

[9] UPoint may argue that transfer is improper because the entire action could not have been brought in the Western District of Washington.  Such an argument misses the mark.  While certain cases imply that the threshold transfer inquiry applies to the case as a whole (*see, e.g., Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660, 664-65 (E.D. Va. 1998); *Siemens Aktiengesellschaft v. Sonotone Corp.*, 370 F. Supp. 970, 972 (N.D. Ill. 1973)), these cases still permit transfer of the severed claims even in instances where the case as a whole could not have been filed in the transferee district.  Moreover, the majority view is to apply the threshold inquiry only to the severed claims/party. *See, e.g., Shifferaw*, 2010 WL 1064380, at * 1 n.2 (transferring the claims against the severed manufacturer (Mishan) to the Southern District of New York despite stipulation that retailer defendant (Academy) was not subject to personal jurisdiction in that district); *First Int'l Comp., Inc.,* 138 F. Supp. 2d at 584 (applying this threshold test to the parties that have been severed, "the Court is not confined to view the facts as they existed at the time of the filing of the complaint").

some in Redwood City, California.[10]  *Id.*, at ¶¶ 6-7.  Therefore, the vast majority of documents produced in this action by NOA and NCL will be from their Washington and Japan offices.

Conversely, very little, if any, relevant evidence is located in the Eastern District of Texas.  UPoint is not incorporated in this district.  Nor does it have a principal place of business in this district.  Nor does it appear to have any connection to this district whatsoever.  Thus, UPoint likely does not maintain documents in this district.  Moreover, because Mr. Banning does not reside in this district, it is also unlikely that he maintains any documents in this district.[11] Additionally, UltimatePointer Limited appears to be located in the United Kingdom and thus does not likely have any documents in this district.  This factor thus weighs heavily in favor of transfer.

### 2. The convenience of the parties and witnesses favors transfer.

The convenience and cost of attendance for witnesses is an important factor in the transfer calculus.  *Nintendo*, 589 F.3d at 1198-99 (citing *Genentech*, 566 F.3d at 1343).  Additional distance from home means additional travel time, which increases the cost for meals and lodging, which further increases the time that fact witnesses must be away from their regular jobs.  *Id.*  The Fifth Circuit follows the so-called 100-mile rule:  "when the distance between an existing venue for trial of a matter and a proposed venue … is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Id.*

This factor weighs heavily in favor of transfer.  Several of Nintendo's employees will undoubtedly be witnesses in this litigation.  NCL and NOA employees will likely be required to testify regarding the design, testing, research, production, sales and marketing of the Wii system.

---

[10] NOA also has a small office located in New York, New York that is responsible for the design of Nintendo's consumer-facing website.  Story Decl., at ¶ 8.  The vast majority of employees in the New York office are thus dedicated to website activities, with a small number of employees responsible for trend and entertainment marketing sales.  *Id.*  The office does not employ anyone with knowledge relevant to this lawsuit or contain documents relevant to this lawsuit.  *Id.*

[11] UPoint may argue that Mr. Banning has relevant documents in Houston, Texas.  The volume of these documents, however, will likely be far less than the volume of Nintendo documents and, in any event, the burden to transport these documents in electronic form to Tyler, Texas should be no greater than transporting them in electronic form to Seattle, Washington as Federal Express serves both cities.

All of the individuals NCL and NOA have identified as possibly having relevant knowledge are located either in the Western District of Washington, in California, or in Japan.  *See* Hibino Decl., at ¶¶ 9-12; Story Decl., ¶¶ 11-14.  None of them reside in Texas.

More specifically, the following potential Nintendo witnesses have been identified to date:

- <u>Jacqualee Story</u>.  Ms. Story is the Executive Vice President of Business Affairs for NOA.  Ms. Story has knowledge about the background of NOA and Nintendo's products in general, including the Wii system, as well as patent licensing.  Ms. Story resides in the Redmond, Washington area and works out of NOA's headquarters in Redmond.  Story Decl., at ¶ 11.

- <u>Rod Teuber</u>.  Mr. Teuber is the Corporate Controller for NOA.  Mr. Teuber coordinates financial reporting activities for NOA and assures proper financial reporting and compliance with generally accepted accounting principles.  Mr. Teuber has knowledge about sales of the Nintendo Wii system in North America.  Mr. Teuber resides in the Redmond, Washington area and works at NOA's headquarters in Redmond.  *Id.*, at ¶ 12.

- <u>Jon Pedersen</u>.  Mr. Pedersen is the Senior Director of Technical Services at NOA.  Mr. Pedersen manages the consumer repairs program, retailer returns, refurbished product recovery, retail display reports, and commercial product support.  Mr. Pedersen has information regarding the design and testing of the Wii system.  Mr. Pedersen resides in the Kirkland, Washington area and works at the NOA office in Kirkland.  *Id.*, at ¶ 13.

- <u>Nicolas Chavez</u>.  Mr. Chavez is the Director of Consumer Marketing for NOA.  Mr. Chavez has knowledge about the marketing of Nintendo products in North America.  Mr. Chavez resides in the Redwood City, California area and works out of NOA's office in Redwood City.  *Id.*, at ¶ 14.

- <u>Akio Ikeda</u>.  Mr. Ikeda is a Manager in NCL's Integrated Research and Development Division, and was the leader of the team that invented the Wii Remote.  Mr. Ikeda has knowledge about the design, development and testing of the Wii system.  Mr. Ikeda resides in Japan.  Hibino Decl., at ¶ 9.

- <u>Susumu Inoue</u>.  Mr. Inoue is an Assistant Manager in NCL's Integrated Research and Development Division.  Mr. Inoue has knowledge regarding the design, development and testing of the Wii Remote.  Mr. Inoue resides in Japan.  *Id.*, at ¶ 10.

- <u>Kuniaki Ito</u>.  Mr. Ito is an employee in NCL's Integrated Research and Development Division.  Mr. Ito has knowledge regarding the design, development and testing of the Wii Remote.  Mr. Ito resides in Japan.  *Id.*, at ¶ 11.

- <u>Keizo Ohta</u>.  Mr. Ohta is a Manager in the Technology Development Department in NCL's Entertainment Analysis and Development Division.  Mr. Ohta has knowledge regarding the design, development and testing of the Wii remote.  Mr. Ota resides in Japan.  *Id.*, at ¶ 12.

- 11 -

It would be significantly more burdensome for these individuals (as well as other Nintendo employees residing in Japan, Washington, or California) to travel to the Eastern District of Texas for trial than to attend trial in the Western District of Washington. For example, each of the Japanese witnesses identified would have to travel an additional 1,756 miles (or 7 hours) by plane to Texas as compared to Washington State. *Nintendo*, 589 F.3d at 1199.[12] Further adding to the inconvenience of a Texas trial, as opposed to a Washington trial, is that NCL employees (as well as NOA employee Mr. Chavez) could work from NOA's headquarters in Redmond, Washington during part of the Washington trial, resulting in a significantly smaller disruption to NCL's business than if the trial occurred in Texas. Hibino Decl., at ¶ 13; Story Decl., at ¶ 15.

UPoint will, no doubt, argue that transfer to Washington State will inconvenience Mr. Banning. That argument rings hollow. If traveling for trial was truly inconvenient for Mr. Banning, UPoint would have filed in its home district, the Southern District of Texas, instead of in Tyler, Texas, some 206 miles from Mr. Banning's home. Yarbrough Decl., at ¶ 20, Ex. 13; *see HTI IP LLC v. DriveOK, Inc.*, 2010 U.S. Dist. LEXIS 82691, at *15 (E.D. Tex. 2010) (transferring case to California despite one inventor residing in Houston). Where, as here, plaintiff is not a resident of the chosen forum, the court gives less deference to the chosen forum. *See J&J Sports Prods. v. Riviera*, No. H-10-1138, 2010 U.S. Dist. LEXIS 89484, *7 (S.D. Tex. Aug. 30, 2010). Post *Volkswagen II*, the consequences of such a choice is a lowered burden for the party seeking transfer when the operative facts occurred outside the forum. *See, e.g.*, *Remmers v. United States*, No. 1:09-cv-345, 2009 U.S. Dist. LEXIS 100847, at *21 (E.D. Tex. Oct. 28, 2009).

---

[12] Travel from NCL headquarters in Kyoto, Japan to the Eastern District of Texas requires approximately eighteen to twenty one hours minimum in each direction, whereas travel to the Western District of Washington can be completed in approximately fourteen to eighteen hours. Yarbrough Decl., at ¶¶ 3-9, Exs. 2-6. Travel from NOA's Redmond and Kirkland facilities to Federal Court in Seattle takes less than one hour, whereas travel from these locations to Tyler, Texas takes six to eight hours. *Id.*, at ¶¶ 10-14, Exs. 7-9. Travel from NOA's Redwood City, California location to Federal Court in Seattle takes approximately three hours, whereas travel from this location to Tyler, Texas takes approximately six to nine hours. *Id.*, at ¶¶ 15-19, Exs. 10-12.

### 3. The remaining two private interest factors are neutral.

The availability of compulsory process for non-party witnesses and the other practical problems factors are neutral.  Nintendo is unaware of any non-party witnesses who reside within the subpoena power of this Court.[13]  Nor is Nintendo aware of any non-party witnesses who are outside of the subpoena power of this Court, yet within the subpoena power of the Western District of Washington.  Similarly, there is little possibility of delay and/or prejudice if the transfer is granted.  UPoint has agreed to multiple extensions of the answer or other responses for the Retailer Defendants for several months, agreed to provide NCL and NOA a seventy-five (75) day stay of the answer or other response date in exchange for NCL agreeing to accept service of the Complaint, and recently filed a Second Amended Complaint (Dkt. 79).  The Court has also not yet set the date for the scheduling conference.  Additionally, both districts have adopted Patent Rules and have patent savvy judges.  *See* Yarbrough Decl., ¶¶ 24-25, Ex. 17.

### C. The Public Interest Factors Favor Transfer.

### 1. The Western District of Washington has a strong interest in this case.

The Fifth Circuit has flatly rejected the argument that citizens of a venue chosen by a plaintiff have a "substantial interest" in adjudicating a case locally because some of the allegedly infringing products are sold or otherwise made their way into that district.  *See, e.g., Nintendo,* 589 F.3d at 1198 (citing *Volkswagen II,* 545 F.3d at 317-18).  This Court has, however, recognized the Western District of Washington's "high" local interest in adjudicating patent cases relating to Nintendo because of Nintendo's substantial presence in that district.  *Id.* Conversely, Nintendo is not aware of any witness or evidence that would indicate a local interest in this case.  This factor, therefore, weighs heavily in favor of transfer.

---

[13] UPoint may argue that this factor favors transfer because Mr. Lutsch, the attorney who prosecuted the '321 patent, resides in Houston, Texas.  Houston, however, is not within this district.  Nor is Mr. Lutsch, who is located approximately 196 miles from this Court's address (Yarbrough Decl., at ¶ 21, Ex. 14), within the Court's subpoena power.  Where a non-party witness is located outside the plaintiff's chosen venue, but within Texas, numerous courts have found this factor to be neutral or even slightly in favor of transfer.  *See, e.g., West Coast Trends, Inc. v. Ogio Int'l, Inc.,* No. 6:10-cv-688, 2011 U.S. Dist. LEXIS 124343, at *8 (E.D. Tex., Oct. 27, 2011) (Love, J.) (transferring the case to Utah and finding compulsory process factor neutral where three prosecution attorneys were located in California and one was located in Austin, Texas); *Affinity Labs. of Tex., LLC v. Apple, Inc.,* No. 9:09-cv-47, 2009 U.S. Dist. LEXIS 130635, at *10-11 (E.D. Tex. Aug. 25, 2009).

- 13 -

## 2. The administrative difficulties flowing from court congestion slightly favors transfer.

The average time from filing to trial in the Eastern District of Texas is 23.7 months. Yarbrough Decl., at ¶ 22, Ex. 15.  The average time from filing date to trial in the Western District of Washington is 19.0 months.  *Id.*, ¶ 23, Ex. 16.  Speedy resolution of this case thus favors transfer.[14]

## III. The Claims Against The Retailer Defendants Should Be Stayed.

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of cases on its docket, with economy of time and effort for itself, for counsel, and for the litigants.  *Toshiba*, 2005 WL 2415960, at *8 (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163 (1936)).  Courts routinely stay claims against the retailers that sell the allegedly infringing articles once claims against the manufacturer are severed and transferred.  *See Shifferaw,* 2010 U.S. WL 1064380 at * 4; *Toshiba Corp.,* 2005 WL 2415960 at * 5.[15]  In determining whether to stay a case Courts may consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set."  *See Microlinc, LLC v. Intel Corp.*, No. 2:07-cv-488, 2010 U.S Dist. LEXIS 99255, * 9 (E.D. Tex. Sept. 20, 2010).

Here, each of these factors weigh strongly in favor of a stay.  First, as explained above, this case is primarily a patent infringement suit against Nintendo, the real party in interest, and therefore, a stay against the Retailer Defendants will not unduly prejudice or present any disadvantage to UPoint.  Second, a stay of the claims against the Retailer Defendants will undoubtedly simplify the issues in question and trial of the case.  Lastly, this case is in its infancy—no party has answered and a scheduling conference is not even set.  Accordingly, this

---

[14] The remaining public interest factors—familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflicts of laws or the application of foreign law—are neutral.  Both courts are familiar with the federal patent law that governs the case and Nintendo is unaware of any conflicts of law issues that may arise.

[15] *See also Koh,* 250 F. Supp. 2d at 632; *Asustek Computers,* 126 F. Supp. 2d at 421-22; *Corry,* 16 F. Supp. 2d at 667; *Siemens,* 370 F. Supp. at 970.

Court should exercise its discretion and stay the claims against the Retailer Defendants in this case.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants[16] respectfully request that the Court sever the claims against Nintendo from the claims against the Retailer Defendants and transfer the claims against Nintendo to the Western District of Washington.  The Retailer Defendants further request that all claims against them be stayed pending the final resolution of the claims against Nintendo.

---

[16] Defendant JJ Games does not join the Motion at this time based on the representation of Plaintiff's counsel that JJ Games will shortly be dismissed from this case without prejudice (Dkt. 81).  Should dismissal not occur, JJ Games will promptly join this Motion and also agrees to be bound by the decisions of the transferee court.

Dated:  January 20, 2012

Respectfully submitted

By: /s/ Mark C. Nelson                    

Mark C. Nelson
Texas Bar No. 00794361
mark.nelson@snrdenton.com
Steven M. Geiszler
Texas Bar No. 24032227
steven.geiszler@snrdenton.com
SNR DENTON US, LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas   75201-1858
Telephone:  (214) 259-0900
Facsimile:   (214) 259-0910

Arthur S. Beeman (Lead Attorney)
Admitted *pro hac vice*
arthur.beeman@snrdenton.com
SNR DENTON US, LLP
525 Market Street, Suite 2600
San Francisco, California 94105-2708
Telephone:  (415) 882-0138
Facsimile:   (415) 882-0300

**Attorneys for Nintendo Co., LTD. (NCL);
Nintendo of America Inc. (NOA); Best Buy
Stores, L.P.; BestBuy.com, LLC; Best Buy
Purchasing, LLC; BJ's Wholesale Club, Inc.;
CompUSA.com, Inc.; TigerDirect, Inc.; Dell
Inc.; GameStop Corporation; JJ Games, LLC;
PC Connection, Inc.; QVC, Inc.; Sears,
Roebuck & Co.; Kmart Corporation; Target
Corporation; Toys "R" Us-Delaware; Trans
World Entm't Corp.; Wal-Mart Stores, Inc.;
Wal-Mart Stores Texas, LLC; Sam's East, Inc.;
and Sam's West, Inc.**

Trey Yarbrough
Texas Bar No. 22133500
trey@yw-lawfirm.com
Debby E. Gunter
Texas Bar No. 24012752
debby@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Telephone: (903) 595-3111
Facsimile: (903) 595-0191

**Attorneys for Nintendo Co., LTD. (NCL); Nintendo of America Inc. (NOA); Best Buy Stores, L.P.; BestBuy.com, LLC; Best Buy Purchasing, LLC; BJ's Wholesale Club, Inc.; CompUSA.com, Inc.; TigerDirect, Inc.; Dell Inc.; GameStop Corporation; JJ Games, LLC; PC Connection, Inc.; QVC, Inc.; Sears, Roebuck & Co.; Kmart Corporation; Target Corporation; Toys "R" Us-Delaware; Trans World Entm't Corp.; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas, LLC; Sam's East, Inc.; and Sam's West, Inc.**

Michael C. Smith
Texas Bar No. 18650410
michaelsmith@siebman.com
SIEBMAN BURG PHILLIPS & SMITH, LLP
P O Box 1556
Marshall, TX 75671-1556
Telephone: (903) 938-8900
Facsimile: (972) 767-4620

David E Finkelson
Virginia Bar No. 44059
dfinkelson@mcguirewoods.com
MCGUIREWOODS LLP
One James Center
901 E Cary St
Richmond, VA 23219
Telephone: (804) 775-1157
Facsimile: (804) 225-5377

**Attorneys for Defendants Wal-Mart Stores, Inc., Wal-Mart Stores Texas, L.L.C., Sam's East, Inc., and Sam's West, Inc.**

- 17 -

Dated:  January 20, 2012

Respectfully submitted

By: /s/ Christopher M. Joe w/permission
Christopher M Joe
Texas Bar No. 00787770
Buether Joe & Carpenter LLC
1700 Pacific Avenue
Suite 2390
Dallas, TX 75201
214/466-1272
Fax: 214/635-1828
Email: Chris.Joe@bjciplaw.com

**Attorney for RadioShack Corporation**

## CERTIFICATE OF CONFERENCE

Mark C. Nelson, counsel for Nintendo and all retailers except RadioShack, met and conferred with Thomas Warden, counsel for Plaintiff, by telephone on January 19, 2012. Counsel for Plaintiff indicated that Plaintiff opposes this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2012 I electronically filed the foregoing Defendants' Motion To Sever And Transfer The Claims Against Nintendo And To Stay The Claims Against The Retailer Defendants with the Clerk of the Court by using the CM/ECF System, which will serve all counsel of record by notice of electronic filing pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5.2.

By: /s/ Mark C. Nelson
   Mark C. Nelson

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ULTIMATEPOINTER, LLC,<br><br>           **Plaintiff,**<br><br>      **v.**<br><br>NINTENDO CO. LTD., *ET AL.*,<br><br>           **Defendants.** | **Civil Action No. 6:11-CV-496 (LED)**<br>**Civil Action No. 6:11-CV-571 (LED)**<br><br>**Jury Trial Demanded** |

**DECLARATION OF TREY YARBROUGH IN SUPPORT OF DEFENDANTS' MOTION
TO SEVER AND TRANSFER THE CLAIMS AGAINST NINTENDO AND TO STAY
THE CLAIMS AGAINST THE RETAILER DEFENDANTS**

I, Trey Yarbrough, make the following declaration in support of Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against Retailer Defendants.

1.      I am an attorney licensed by the State Bar of Texas and a member of the firm Yarbrough Wilcox, PLLC. I am admitted to practice before the United States District Court for the Eastern District of Texas. I serve as local counsel for Defendants Nintendo Co., Ltd. ("NCL"), Nintendo of America Inc. ("NOA"), and the Retailer Defendants in this matter.

2.      Attached as Exhibit 1 are true and correct copies of U.S. Patent No. 7,746,321 ("'321 Patent") and U.S. Patent No. 8,049,729 ("'729 Patent).

**Travel Times for Parties and Witnesses**

*Travel Times for NCL Employees*

3.      Attached as Exhibit 2 is a true and correct copy of a web page from http://maps.google.com indicating that travel from NCL's offices in Kyoto, Japan to Narita International Airport ("NRT") takes approximately 4 and a half hours.

- 1 -

4.       Attached as Exhibit 3 is a true and correct copy of a web page from www.kayak.com indicating the flight time from NRT to Dallas Fort Worth Airport ("DFW") ranges from 11 and a half hours to 15 hours.

5.       Attached as Exhibit 4 is a true and correct copy of a web page from http://maps.google.com indicating the driving distance from DFW to the U.S. Courthouse in the Eastern District of Texas, Tyler Division, located at 211 West Ferguson Street in Tyler, Texas is approximately 120 miles or approximately 2 hours.

6.       Based on the foregoing maps and information, for NCL employees based in Kyoto, Japan to attend proceedings in the Eastern District of Texas, it will take approximately 18 to 21 hours of travel. This includes travel to NRT from NCL's offices, which, based upon information and belief, is the closest airport with direct flights to Dallas, the range of flight time from NRT to DFW, and driving time from DFW to the U.S. Courthouse in Tyler, Texas.

7.       Attached as Exhibit 5 is a true and correct copy of a web page from www.kayak.com indicating the flight time from NRT to Seattle-Tacoma International Airport ("SEA") ranges from approximately 9 to 13 hours.

8.       Attached as Exhibit 6 is a true and correct copy of a web page from http://maps.google.com indicating the driving distance from SEA to the U.S. Courthouse in the Western District of Washington, Seattle Division, located at 700 Stewart Street in Seattle, Washington, is approximately 15 miles or approximately 22 minutes.

9.       Based upon the foregoing maps and information, for NCL employees to attend proceedings in the Western District of Washington, it will take approximately 14 to 18 hours of travel. This includes travel to NRT, from NCL's offices which, based upon information and belief, is the closest airport with direct flights to Seattle, the flight time from NRT to SEA, which, based upon information and belief, is the closest airport to the U.S. Courthouse in the Western District of Washington, Seattle Division, and driving time from SEA to the U.S. Courthouse in Seattle, Washington.

- 2 -

A139

*Travel Times for NOA Employees*

10.    Attached as Exhibit 7 is a true and correct copy of a web page from http://maps.google.com indicating the driving distance from NOA's headquarters located at 4820 150th Ave. N.E. in Redmond, Washington to SEA is approximately 22 miles or approximately 27 minutes.

11.    Attached as Exhibit 8 is a true and correct copy of a web page from www.kayak.com indicating the flight time from SEA to DFW ranges from approximately 3 and a half hours to 5 hours.

12.    Based upon the foregoing maps and information, for NOA employees based in Redmond, Washington to attend proceedings in the Eastern District of Texas, it will take approximately 6 to 8 hours of travel, including travel from NOA's location in Redmond, Washington to SEA, the flight time from SEA to DFW, and travel from DFW to the U.S. Courthouse in the Eastern District of Texas, Tyler Division.

13.    Attached as Exhibit 9 is a true and correct copy of a web page from http://maps.google.com indicating the driving distance from NOA's location in Redmond, Washington to the U.S. Courthouse in Seattle, Washington is approximately 13 miles or approximately 16 minutes.

14.    Based upon the foregoing map, for NOA employees based in Washington to attend proceedings in the Western District of Washington, it will take approximately 20 to 45 minutes to travel from NOA headquarters in Redmond, Washington to the U.S. Courthouse in the Western District of Washington, Seattle Division.

15.    Attached as Exhibit 10 is a true and correct copy of a web page from http://maps.google.com indicating the driving distance from NOA's location at 2000 Bridge Pkwy, Number 200, Redwood City, California to San Francisco International Airport ("SFO") is approximately 11.6 miles or approximately 18 minutes.

16.    Attached as Exhibit 11 is a true and correct copy of a web page from www.kayak.com indicating the flight time from SFO to SEA is approximately 2 hours.

- 3 -

**A140**

17.     Attached as Exhibit 12 is a true and correct copy of a web page from www.kayak.com indicating the flight time from SFO to DFW ranges from approximately 3 hours and 10 minutes to 8 hours.

18.     Based upon the foregoing map, for NOA employees based in Redwood City, California to attend proceedings in the Western District of Washington, it will take approximately three hours to travel to the U.S. Courthouse in the Western District of Washington, Seattle Division.

19.     Based upon the foregoing maps and information, for NOA employees based in Redwood City, California to attend proceedings in the Eastern District of Texas, it will take approximately 6 to 9 hours of travel, including travel from NOA's location in Redwood City, California to SFO, the flight time from SFO to DFW, and travel from DFW to the U.S. Courthouse in the Eastern District of Texas, Tyler Division.

<em>Travel Times for Inventor Erik Banning and Prosecuting Attorneys</em>

20.     Attached as Exhibit 13 is a true and correct copy of a web page from http://maps.google.com indicating the driving distance from Mr. Banning's most recent home address to the U.S. Courthouse in Tyler, Texas, is approximately 206 miles or approximately 3 hours and 55 minutes.

21.     Attached as Exhibit 14 is a true and correct copy of a web page from http://maps.google.com indicating the driving distance from the Wong Cabello Lutsch & Rutherford, LLP offices in Houston, Texas to the U.S. Courthouse in Tyler, Texas, is approximately 196 miles or approximately 3 hours and 43 minutes.

**Judicial Caseload in the Eastern District of Texas and Western District of Washington**

22.     Attached as Exhibit 15 is a true and correct copy of the 2011 Judicial Caseload Profile for the U.S. District Court for the Eastern District of Texas, available from the U.S. Courts' website at http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/DistrictCourtsSep2011.aspx.

- 4 -

23.     Attached as Exhibit 16 is a true and correct copy of the 2011 Judicial Caseload Profile for the U.S. District Court for the Western District of Washington, available from the U.S. Courts' website at http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/DistrictCourtsSep2011.aspx.

## Western District of Washington Local Patent Rules

24.     The Western District of Washington has adopted Supplemental Patent Rules, which became effective on January 1, 2009 pursuant to General Order No. 08-04.

25.     Attached as Exhibit 17 is a true and correct copy of the U.S. District Court for the Western District of Washington's Local Patent Rules, available from the U.S. District Court for the Western District of Washington's website at http://www.wawd.uscourts.gov/documents/homepageannouncements/2009%20local%20rules/patent%20rules%20-%20final.pdf.

## The Corporate History of UltimatePointer, LLC

26.     Attached as Exhibit 18 is a true and copy of the Certificate of Formation for UltimatePointer, LLC available from the Delaware Secretary of State.

27.     Attached as Exhibit 19 is a true and correct copy of a D&B Report European Comprehensive Report with the following address for UltimatePointer Limited: Unit 4 Alpha Centre, Stirling University, Stirling, Stirlingshire, United Kingdom FK9 4NF.

28.     The sole named inventor, Erik Banning appears to reside in Houston, Texas. Attached as Exhibit 20 is a redacted copy of a Lexis Nexis accurint report showing Mr. Banning's most recent address.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of January, 2012, in Tyler, Texas.

TREY YARBROUGH

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

|  |  |
|---|---|
| ULTIMATEPOINTER, LLC,<br><br>     **Plaintiff,**<br><br>  **v.**<br><br>**NINTENDO CO. LTD.,** *ET AL.,*<br><br>     **Defendants.** | **Civil Action No. 6:11-CV-496 (LED)**<br><br>**Jury Trial Demanded** |

## DECLARATION OF TOSHIRO HIBINO IN SUPPORT OF DEFENDANTS' MOTION TO SEVER AND TRANSFER THE CLAIMS AGAINST NINTENDO AND TO STAY THE CLAIM AGAINST THE RETAILER DEFENDANTS

  I, Toshiro Hibino, make the following declaration in support of Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants. I make this declaration based upon my own personal knowledge, and if called upon to testify before the Court, would testify as follows:

  1.  I am the Deputy General Manager in the Intellectual Property Department at Nintendo Co., Ltd.

  **Nintendo Co., Ltd.**

  2.  Nintendo Co., Ltd. (NCL) is a corporation organized under the laws of Japan, with its headquarters located in Kyoto, Japan. NCL began as a sole proprietorship in 1889 to manufacture and sell Japanese playing cards, though it was not known as NCL at that time. In 1947, NCL's predecessor entity was incorporated. In 1963, the entity was re-named NCL and expanded to the home entertainment industry in the 1970s.

  3.  NCL employs approximately one thousand eight hundred-twenty six (1,826) people. On thousand two hundred-twenty eight (1,228) of NCL's employees are located at its

- 1 -

headquarters in Kyoto, Japan, and the remaining NCL employees are located at smaller offices in Japan.

4. NCL's Integrated Research and Development Division was responsible for the development of the Wii system. The Integrated Research and Development Division employees approximately one hundred sixteen (116) people. NCL's employees are also responsible for the design and testing of the Nintendo Wii system, as well as for the development of all Nintendo hardware systems and all Nintendo software for the Wii system. Those activities were performed at Nintendo's headquarters in Kyoto, Japan. NCL also coordinates the manufacture of the Nintendo Wii system, Nintendo Wii games, and Nintendo's Wii accessories.

5. Documents related to the business activities of NCL are located in Kyoto, Japan. These include documents related to finance; the design, development and testing of Nintendo products, including such documents for the Wii system, Nintendo controllers and games, and Nintendo accessories; contracts and agreements; human resources; marketing; advertising; and the results of surveys, studies and evaluations.

6. NCL does not provide any retailers with design, development, source code, or other technical documentation relating to the Nintendo Wii systems or other Nintendo designed and/or developed games, controllers, or accessories.

7. NCL does not operate an office in Texas, employ anyone in Texas, or maintain any documents in Texas.

8. Retro Studios, Inc., a wholly owned subsidiary of NCL, is a game development studio located in Austin, Texas. Retro Studios, Inc. develops games for Nintendo hardware systems. Retro Studios, Inc. does not possess any documents relevant to this action or employ anyone with knowledge relevant to this action.

**Some Potential NCL Witnesses**

9. **Akio Ikeda.** Mr. Ikeda is a Manager in NCL's Integrated Research and Development Division, and was the leader of the team that invented the Wii Remote. Mr. Ikeda

- 2 -

A145

has knowledge about the design, development and testing of the Wii system. Mr. Ikeda resides in Japan.

     10.    **Susumu Inoue.**  Mr. Inoue is an Assistant Manager in NCL's Integrated Research and Development Division. Mr. Inoue has knowledge regarding the design, development and testing of the Wii Remote. Mr. Inoue resides in Japan.

     11.    **Kuniaki Ito**. Mr. Ito is an employee in NCL's Integrated Research and Development Division. Mr. Ito has knowledge regarding the design, development and testing of the Wii Remote. Mr. Ito resides in Japan.

     12.    **Keizo Ohta.**  Mr. Ohta is a Manager in the Technology Development Department in NCL's Entertainment Analysis and Development Division. Mr. Ohta has knowledge regarding the design, development and testing of the Wii remote. Mr. Ohta resides in Japan.

     13.    NCL employees are able to work at NOA headquarters in Redmond, Washington, when traveling to the Seattle area. This ability to work at NOA during part of any trial held in Washington would cause a significantly smaller disruption to NCL's business than travel to Tyler, Texas to attend trial.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

     Executed this 19 day of January, 2012, in Kyoto, Japan.

                                  TOSHIRO HIBINO

- 3 -

A146

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ULTIMATEPOINTER, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>NINTENDO CO. LTD., *ET AL.*,<br><br>                    Defendants. | Civil Action No. 6:11-CV-496 (LED)<br><br>Jury Trial Demanded |

### DECLARATION OF JACQUALEE STORY IN SUPPORT OF DEFENDANTS' MOTION TO SEVER AND TRANSFER THE CLAIMS AGAINST NINTENDO AND TO STAY THE CLAIMS AGAINST THE RETAILER DEFENDANTS

I, Jacqualee Story, make the following declaration in support of Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants. I make this declaration based upon my own personal knowledge, and if called upon to testify before the Court, would testify as follows:

1.      I am the Executive Vice President of Business Affairs for Nintendo of America Inc. (NOA). I have been employed by NOA since 1990.

**Nintendo of America Inc.**

2.      NOA is a corporation organized under the laws of the State of Washington, with its headquarters and principal place of business in Redmond, Washington.

3.      NOA was incorporated in 1982 as a wholly owned subsidiary of Nintendo Co., Ltd. ("NCL").

4.      NOA is primarily responsible for the marketing, sales and distribution of Nintendo products including the Wii system and Nintendo's Wii games and accessories, in North

- 1 -

A147

America. NOA sells the Wii system to customers in the state of Washington and throughout the United States.

5.      NOA currently has 1,206 employees. Of those employees, 1,096 work at NOA's offices in the State of Washington. Specifically, 801 of NOA's employees are located at its principal place of business in Redmond, Washington. In addition, NOA maintains two facilities near Redmond. NOA has a packaging and shipping facility in North Bend, Washington, where 169 individuals work, and an operations facility in Kirkland, Washington, where 126 individuals work. NOA also employs 73 people in Redwood City, California. NOA has a small office in New York City where 37 employees work.

6.      NOA's Redmond, Washington campus is the strategic center of NOA's business. NOA's Chief Executive Officer and its President are based in Redmond. Decisions relating to NOA's overall business are made in Redmond. Key sales and marketing decisions related to the sale for Wii system in the United States also occur in Redmond.

7.      Most documents related to the business activities of NOA are located in Redmond, Washington. These include documents related to finance, sales and forecasting for Nintendo products in North America, consumer service, design of manuals and product packaging for Nintendo products such as the Wii system, licensing, contracts and agreements, advertising, marketing, human resources, and results of surveys, studies and evaluations. Some additional documents and knowledge related to marketing campaigns are located in Redwood City, California.

8.      NOA's New York office is responsible for the design of Nintendo's consumer-facing websites. The vast majority of employees in the New York office are dedicated to website activities, with a small number of employees responsible for sales activities and trend and entertainment marketing. The office does not employ anyone with knowledge relevant to this lawsuit.

9.      NOA does not operate an office in Texas, employ anyone in Texas, or maintain any documents in Texas.

- 2 -

**A148**

10.     NES Merchandising, Inc. (NMI), a wholly owned subsidiary of NOA, is a corporation that supports retail sales throughout the United States, including Texas.  NMI does not possess any documents relevant to this action or employ anyone with knowledge relevant to this action.

**Some Potential NOA Witnesses**

11.     **Jacqualee Story.**  I am the Executive Vice President of Business Affairs for NOA.  I have knowledge about the background of NOA and Nintendo products in general, including the Wii system, as well as patent licensing.  I live in the Redmond, Washington area and work at the NOA headquarters in Redmond, Washington.

12.     **Rod Teuber.**  Mr. Teuber is the Corporate Controller for NOA.  Mr. Teuber coordinates financial reporting activities for NOA and assures proper financial reporting and compliance with generally accepted accounting principles.  Mr. Teuber has knowledge about sales of the Wii system in North America.  Mr. Teuber resides in the Redmond, Washington area and works at NOA's headquarters in Redmond, Washington.

13.     **Jon Pedersen**.  Mr. Pedersen is the Senior Director of Technical Services at NOA.  Mr. Pederson manages or is knowledgeable about the consumer repairs program, retailer returns, refurbished product recovery, retail display reports, and commercial product support.  Mr. Pedersen has knowledge regarding the operation and testing of the Wii system.  Mr. Pedersen resides in the Mill Creek, Washington area and works at the NOA office in Kirkland, Washington.

14.     **Nicolas Chavez**.  Mr. Chavez is the Director of Consumer Marketing for NOA.  Mr. Chavez has knowledge about the marketing of Nintendo products in North America.  Mr. Chavez resides in the Redwood City, California area and works at NOA's office in Redwood City, California.

15.     Trial in Seattle, Washington would be much more convenient for NOA's employees because it would eliminate the burden imposed by traveling to Tyler, Texas, and therefore eliminate the need for NOA employees to be absent from work more than is necessary.

- 3 -

A149

Additionally, trial in Seattle would be more convenient for Mr. Chavez because Seattle is geographically closer to Redwood City than is Tyler, Texas, and because, if trial were in Seattle, Mr. Chavez could work out of NOA's Redmond office during part of the trial resulting in significantly less disruption to NOA's business than if trial occurred in Texas.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of January, 2012, in Newcastle, Washington.

JACQUALEE STORY

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ULTIMATEPOINTER, LLC,

                    Plaintiff,

v.

NINTENDO CO. LTD., *ET AL.*,

                    Defendants.

Civil Action No. 6:11-CV-571 (LED)

Jury Trial Demanded

**DEFENDANTS' MOTION TO SEVER AND TRANSFER THE
CLAIMS AGAINST NINTENDO AND TO STAY THE CLAIMS
AGAINST THE RETAILER DEFENDANTS**

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................ 1

    I.   Nintendo Is The Real Party In Interest In This Litigation. ......................................... 1
    II.  The Technology of the '729 Patent ........................................................................... 3
    III. The Parties Have No Meaningful Connections With This District. ............................. 3

ARGUMENT ..................................................................................................................... 4

    I.   The Claims Against Defendant Nintendo Should Be Severed From The Claims
        Against The Retailer Defendants. .............................................................................. 5

        A.  UPoint's Claims Against the Retailer Defendants are Peripheral to its Claims
            Against Nintendo. ............................................................................................. 5
        B.  Adjudication of the Claims Against Nintendo Will Dispose of the Claims
            Against the Retailer Defendants. ...................................................................... 6
        C.  The America Invents Act Also Supports Severance. .......................................... 6

    II.  The Severed Claims Against Nintendo Should Be Transferred To The Western
        District Of Washington. ............................................................................................ 8

        A.  The Claims Against Nintendo Could Have Been Brought in the Western
            District of Washington. ..................................................................................... 9
        B.  The Private Interest Factors Weigh Heavily in Favor of Transfer ...................... 9

        1.     The ease of access to sources of proof favors transfer ..................................... 9
        2.     The convenience of the parties and witnesses favors transfer. ...................... 10
        3.     The remaining two private interest factors are neutral. ................................. 13

        C.  The Public Interest Factors Favor Transfer. ..................................................... 13

        1.     The Western District of Washington has a strong interest in this case. .......... 13
        2.     The administrative difficulties flowing from court congestion slightly
               favors transfer. ............................................................................................. 14

    III. The Claims Against The Retailer Defendants Should Be Stayed. ............................ 14

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Affinity Labs. of Tex., LLC v. Apple, Inc.*,
    2009 U.S. Dist. LEXIS 130635 (E.D. Tex., Aug. 25, 2009) ....................................................14

*Corry v. CFM Majestic, Inc.*,
    16 F. Supp. 2d 660 (E.D. Va. 1998) ..........................................................................................10

*HTI IP LLC v. DriveOK, Inc.*,
    2010 U.S. Dist. LEXIS 82691 (E.D. Tex. 2010) ......................................................................13

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)..................................................................................................10

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009)............................................................................................ passim

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)....................................................................................................9

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) ("Volkswagen II")..................................................9, 13

*J&J Sports Prods. v. Riviera*,
    No. H-10-1138, 2010 U.S. Dist. LEXIS 89484 (S.D. Tex. Aug. 30, 2010) ............................13

*Koh v. Microtek Int'l, Inc.*,
    250 F. Supp. 2d 627 (E.D. Va. 2003) .............................................................................6, 7, 15

*LG Elecs., Inc. v. First Int'l Computer, Inc.*,
    138 F. Supp. 2d 574 (D.N.J. 2001) .............................................................................6, 7, 10

*LG Elecs. v. Asustek Computers*,
    126 F.Supp.2d 414 (E.D. Va. 2000) ......................................................................................5, 15

*Microlinc, LLC v. Intel Corp.*,
    No. 2:07-cv-488, 2010 U.S Dist. LEXIS 99255 (E.D. Tex. Sept. 20, 2010)...........................15

*MyMail, Ltd. v. America Online, Inc.*,
    223 F.R.D. 455 (E.D. Tex. 2004)................................................................................................8

*Remmers v. United States*,
    No. 1:09-cv-345, 2009 U.S. Dist. LEXIS 100847 (E.D. Tex. Oct. 28, 2009) .........................14

*Shifferaw v. Emson USA*,
   2010 WL 1064380 (E.D. Tex. 2010) ............................................................... passim

*Siemens Aktiengesellschaft v. Sonotone Corp.*,
   370 F. Supp. 970 (N.D. Ill. 1973) .............................................................................10

*Toshiba Corp. v. Hynix Semiconductor, Inc.*,
   No. 3:04-cv-239, 2005 WL 2415960 (N.D. Tex. Sept. 30, 2005) .....................5, 15

*Ultimate Pointer, LLC v. Nintendo Co., Ltd. et al*,
   Civil Action No. 6:11-cv-00496 (E.D. Tex. [Tyler Div.]) .........................................1

*West Coast Trends, Inc. v. Ogio Int'l, Inc.*,
   No. 6:10-cv-688, 2011 U.S. Dist. LEXIS 124343 (E.D. Tex., Oct. 27, 2011) (Love, J.) ........14

STATUTES

28 U.S.C. § 1391(c) (2011) ............................................................................................9

28 U.S.C. § 1404(a) ...................................................................................................5, 8

35 U.S.C. § 299(a) .........................................................................................................7

35 U.S.C. § 299(b) .........................................................................................................7

OTHER AUTHORITIES

FED. R. CIV. P. 21 ...........................................................................................................5

This case is, in actuality, a patent infringement dispute between the plaintiff, UltimatePointer, LLC ("UPoint"), and Defendants Nintendo Co., Ltd. ("NCL") and Nintendo of America Inc. ("NOA") (collectively "Nintendo").  The remaining twenty-one (21) defendants ("the Retailer Defendants")[1] are involved in this action simply because they sell or resell the accused Nintendo products—"Nintendo Wii systems, as well as games, controllers, sensors and related accessories compatible and intended for use with Wii systems."[2]  The resolution of UPoint's claims against Nintendo will thus also dispose of UPoint's claims against the Retailer Defendants, which are peripheral to UPoint's claims against Nintendo, the real party in interest.  UPoint's claims against Nintendo should, therefore, be severed from its claims against the Retailer Defendants.  The claims against Nintendo should then be transferred to the Western District of Washington because the Western District of Washington is clearly the more convenient forum once the Retailer Defendants are severed from this action.  The claims against the Retailer Defendants should be stayed pending resolution of the claims against Nintendo to preserve judicial economy.

## FACTUAL BACKGROUND

### I.      Nintendo Is The Real Party In Interest In This Litigation.

UPoint filed this second case against Nintendo and the Retailer Defendants on November 1, 2011, the date U.S. Patent No. 8,049,729 ("the '729 patent") issued.[3]  Nearly two months later UPoint amended its Complaint, dropping Best Buy Co, Inc. and Toys "R" Us, Inc. and adding

---

[1] The twenty-one (21) Retailer Defendants are JJ Games, LLC; GameStop Corp.; Best Buy Stores, L.P.; Bestbuy.com, LLC; Best Buy Purchasing, LLC; Sears, Roebuck and Co.; Kmart Corp.; Target Corp.; WalMart Stores, Inc.; WalMart Stores Texas, LLC; Sam's East, Inc.; Sam's West, Inc.; RadioShack Corp.; Toys "R" US-Delaware, Inc.; Dell, Inc.; QVC, Inc.; Trans World Entertainment Corp.; BJ's Wholesale Club, Inc.; PC Connection, Inc.; CompUSA.com, Inc.; and Tiger Direct, Inc.

[2] *See* First Amended Complaint ("FAC")*,* at ¶ 1 (Dkt. # 7).  To conserve resources, copies of the pleadings are not attached to this Motion, but rather will be referred to by Docket ("Dkt.") number.  This is the second of two cases that Ultimate Pointer filed against Nintendo and the Retailer Defendants.  The first case styled *Ultimate Pointer, LLC v. Nintendo Co., Ltd. et al*, Civil Action No. 6:11-cv-00496 (E.D. Tex. [Tyler Div.]) was filed on September 15, 2011 ("the 496 case") and alleges infringement of a related patent  Defendants are concurrently filing a similar Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants in that case.

[3] A copy of the '729 patent is attached to the Declaration of Trey Yarbrough ("Yarbrough Decl.") at Ex.1(b).

three additional Best Buy entities as well as Toys "R" Us-Delaware, Inc.[4]  To date, none of the Defendants have answered or otherwise responded in this case.

The FAC (like the original complaint) identifies "Nintendo Wii systems, as well as games, controllers, sensors, and related accessories compatible and intended for use with Wii systems" as the accused products.[5]  The products at issue in this case are thus all Nintendo products.  As such, it is the Nintendo entities that possess the information regarding how the accused products were designed and operate.  The Nintendo Wii systems were designed, developed, and tested by NCL in Japan.  Declaration of Toshiro Hibino ("Hibino Decl.), at ¶ 4.  NCL and its employees in Japan are responsible for the development of all Nintendo hardware systems and all Nintendo software for the Wii system, and the documents relating to this design and development are primarily located in Kyoto, Japan.  *Id.*, at ¶¶ 4-5.  NCL also coordinates the manufacture of the Nintendo Wii system, Nintendo Wii games, and Nintendo's Wii accessories.  *Id.*, at ¶ 4.  NOA is responsible for the marketing, sales and distribution of the Wii system to retailers in the United States.  Declaration of Jacqualee Story ("Story Decl."), at ¶ 4.  NOA is, likewise, responsible for the marketing, sales, and distribution of Nintendo Wii games and Nintendo's Wii accessories in the United States.  *Id.*

The Retailer Defendants, on the other hand, are not involved in the design, development or manufacture of the Nintendo Wii systems, games, controllers, sensors or accessories.  It is highly unlikely, therefore, that the Retailer Defendants have any knowledge of the technical features of any of the Nintendo Wii systems, games, controllers, sensors or accessories, other than the public knowledge any consumer might have regarding these accused products.  Nintendo, consequently, is the real party in interest in this litigation.

---

[4] *See* First Amended Complaint (Dkt. 7).
[5] Although Plaintiff used slightly different language when describing the accused products in this case than was used in the 496 case, when asked by counsel whether the scope of the 571 case differed from the scope of the 496 case, Plaintiff's counsel indicated that it did not.

## II.     The Technology of the '729 Patent

A brief review of the '729 patent further confirms that the Retailer Defendants will not likely have documents or witnesses relevant to the infringement analysis.  The '729 patent is a continuation of the application that led to U.S. Patent No. 7,746,321—the patent asserted in the 496 case.  Rather than repeat the technology section from Defendants' Motion to Sever, Transfer, and Stay filed in that case ("the 496 Motion"), Defendants incorporate the technology section from that Motion by reference.  It is, therefore, highly unlikely that the Retailer Defendants would possess information relevant to the '729 patent for the same reasons as set forth in the 496 motion.

## III.     The Parties Have No Meaningful Connections With This District.

Neither the Plaintiff nor the inventor is located in this district.  UPoint is a Delaware limited liability company formed approximately five months before this lawsuit was filed.  Yarbrough Decl., at ¶ 26, Ex. 18.  UPoint's principal place of business is Houston, Texas.[6]  SAC (Dkt. # 79), at ¶ 2.  The sole named inventor, Erik Banning, likewise, appears to reside in Houston, Texas.  Yarbrough Decl., at ¶ 28, Ex. 20.

Nintendo does not have any connections with this district.  NCL is a corporation organized under the laws of Japan, with its headquarters located in Kyoto, Japan.  *See* Hibino Decl., at ¶ 2.  NCL does not operate an office in Texas, employ anyone in Texas, or maintain documents in Texas.  *Id.*, at ¶ 7.  NOA is a corporation organized under the laws of the State of Washington, with its headquarters and principal place of business in Redmond, Washington.  Story Decl., at ¶ 2.  NOA was incorporated in 1982 as a wholly owned subsidiary of NCL.  *Id.* at ¶ 3.  NOA does not operate an office in Texas, employ anyone in Texas, or maintain documents in Texas.  *Id.* at ¶ 4.[7]

---

[6] A second UPoint entity, UltimatePointer Limited, appears to be located in the United Kingdom.  Yarbrough Decl., at ¶ 7; Ex. 19.

[7] Nintendo's only connections in this forum involve a subsidiary of NOA (NES Merchandising, Inc. ("NMI")) that supports retail sales throughout the United States, including in Texas.  Story Decl., at ¶ 10.  NMI does not employ anyone with knowledge relevant to this action.  *Id.*  NCL also has an affiliate located in Austin, Texas (Retro Studios, Inc.) that develops games for Nintendo hardware systems.  Hibino Decl., at ¶ 8.  Retro Studios does not posses any documents relevant to this action or employ anyone with knowledge relevant to this action.  *Id.*

The Retailer Defendants' connections with this district are not relevant.  As stated previously, Nintendo does not provide any retailers with technical documentation relating to the Nintendo Wii systems or for Nintendo designed and/or developed games, controllers, or accessories.  Hibino Decl., at ¶ 6.  None of the Retailer Defendants, therefore, have documents (whether located in this district, in Texas, or elsewhere) relating to the substantive technology of the Nintendo Wii systems or other accused products.  Nor do the Retailer Defendants have witnesses (whether in this district or elsewhere) who could testify regarding the details of how the Wii system or other accused products operate.  Indeed, the only information the Retailer Defendants have related to this case is their sales information.  That information, however, is not relevant because patent exhaustion doctrine would prevent UPoint from recovering damages from both Nintendo and the Retailer Defendants for the same products.  Nintendo, moreover, is funding the defense of the Retailer Defendants with respect to the Wii system and the other accused products and has agreed to indemnify the Retailer Defendants in the event liability is found with respect to those products.  Consequently, any connections the Retailer Defendants may have to this district are not relevant to the issues in this case.

## ARGUMENT

Patent Plaintiffs have long included retailers of a manufacturer's products as defendants in patent cases to increase the pressure on the manufacturer to settle the case and/or to help establish venue.  For just as long, courts have rightly severed the patentee's claims against the manufacturer-defendant from the claims against the retailer-defendants because the claims against the retailer-defendants are peripheral to the claims against the manufacturer.  This district is no exception.  *See Shifferaw v. Emson USA*, No. 2:09-cv-54, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) (severing claims against manufacturer Mishan, transferring those claims to the Southern District of New York, and staying the remaining claims against retailers Amazon and Academy pending resolution of the transferred claims).  This Court should follow the rationale of *Shifferaw*, and (i) sever the claims against Nintendo, (ii) transfer those claims to the Western

District of Washington, and (iii) stay the claims against the Retailer Defendants until the claims against Nintendo have been finally adjudicated.

## I. The Claims Against Defendant Nintendo Should Be Severed From The Claims Against The Retailer Defendants.

District courts have broad discretion to sever any claim against a party under FED. R. CIV. P. 21. *See Shifferaw*, 2010 WL 1064380, at \*2. Under circumstances similar to these, this district has found that severance is proper where: (1) the remaining claims are peripheral to the severed claims, and (2) adjudication of the severed claims would potentially dispose of the remaining claims. *Id.*, at \*1 (citing *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. 3:04-cv-239, 2005 WL 2415960, at \*4-7 (N.D. Tex. Sept. 30, 2005)). These cases also typically determine whether the § 1404(a) factors warrant transfer of the severed claims as part of the overall sever/stay analysis. *Id.*

### A. UPoint's Claims Against the Retailer Defendants are Peripheral to its Claims Against Nintendo.

Many courts have found that patent-infringement claims against a distributor or retailer are peripheral to claims against the manufacturer. *See Shifferaw,* 2010 WL 1064380, at \*3; *Toshiba Corp.,* 2005 WL 2415960, at \*6 (severing and transferring claims against manufacturer to the Northern District of California and staying claims against sales representatives); *LG Elecs., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 422-24 (E.D. Va. 2000) (severing and transferring claims against manufacturer to Northern District of California and staying claims against reseller).[8]

This case is no different: UPoint's claims against the Retailer Defendants are peripheral to its claims against Nintendo. NCL is responsible for the development of all Nintendo hardware systems and all Nintendo software for the Wii system, as well as for the Wii system's design and testing. Hibino Decl., at ¶ 4. NCL also coordinates the manufacture of the Wii system, Nintendo's Wii games, and Nintendo's Wii accessories. *Id.* NOA then markets, sells and

---

[8] *See also Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627 (E.D. Va. 2003) (sever and transfer); *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574 (D.N.J. 2001) (sever and transfer).

distributes the Wii systems, Nintendo's Wii games, and Nintendo's Wii accessories in the United States.  *See* Story Decl., at ¶ 4.

The Retailer Defendants, conversely, are barely even peripherally involved in issues in this case.  They have no involvement in the design, manufacture, or importation of the accused products.  Moreover, as stated above, Nintendo has indemnified and is paying for the defense of the Retailer Defendants with respect to the accused products.  Put simply, Nintendo is the real party in interest.  *Shifferaw*, 2010 WL 1064380, at *3-4.

> **B.**    **Adjudication of the Claims Against Nintendo Will Dispose of the Claims Against the Retailer Defendants.**

The adjudication of the claims against Nintendo will dispose of the entire case.  The Retailer Defendants could only be found liable for infringement if Nintendo is found to infringe. *See Shifferaw*, 2010 WL 1064380, at *3 (citations omitted).  If Nintendo is not found to infringe, then UPoint has no claims against the Retailer Defendants.  But, even if Nintendo were found liable and UPoint were to collect damages from Nintendo, the claims against the Retailer Defendants are still disposed of because UPoint cannot receive a double recovery for the same sales.  *Id.*, at *3; *Koh*, 250 F. Supp. 2d at 632-33 (patentee cannot recover twice for the same sale) (citing *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568-69 (Fed. Cir. 1993) (patentee can collect only one royalty from a patent infringement)).  Moreover, as in *Shifferaw*, the Retailer Defendants will stipulate to be bound by the rulings of the Western District of Washington thus further evidencing that the adjudication of the claims against Nintendo will dispose of the entire case.  *Shifferaw*, 2010 WL 1064380, at *3; *First Int'l Comp., Inc..*, 138 F. Supp. 2d at 585.  Consequently, this is not a case where severance will create multiple lawsuits that have to be developed in their entirety.  Nor will severance impose a significant burden on UPoint, witnesses, or the federal court system.

> **C.**    **The America Invents Act Also Supports Severance.**

UPoint may attempt to avoid severance by arguing that this case includes non-Nintendo products.  Such an argument, however, runs afoul of the America Invents Act ("AIA").  The

joinder provision of the AIA states in relevant part that joinder of multiple defendants in a patent action is proper only if:

> (1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing …, offering for sale, or selling of the same accused product or process; and

> (2) questions of fact common to all defendants … will arise in the action.

35 U.S.C. § 299(a).  The statute goes further and identifies insufficient conditions for joinder:

> (b) Allegations insufficient for Joinder - For purposes of this subsection, accused infringers may not be joined in one action as defendants …, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit.

35 U.S.C. § 299(b).

There are no allegations asserted against Nintendo and the Retailer Defendants jointly, severally, or in the alternative.  Nor would any purported right to relief arise out of the same transaction or occurrence if this case involves non-Nintendo products.  As stated in the House Report, the AIA intended to "legislatively abrogate[] the construction of Rule 20(a) adopted in *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004)" to "effectively conform[] these courts' jurisprudence to that followed by a majority of jurisdictions."  H.R. REP. NO. 112-98, pt. 1, at 55 n.61 (citing *Rudd v. Lux Prods. Corp.*, C.A. 09-6957, 2011 WL 148052 (N.D. Ill. Jan 12, 2011)).  Expanding this case to include non-Nintendo, purportedly Wii-compatible products would result in each defendant or defendant group being accused of infringement based, at least in part, on different products potentially made by different manufacturers in the same case—a result the AIA was enacted to prevent.  The remedy for such misjoinder is severance:  the relief sought in this Motion.

In sum, the Court should sever UPoint's claims against Nintendo from the claims against the Retailer Defendants.  As in *Shifferaw*, each of the factors necessary for severance is present

here—the claims against the Retailer Defendants are peripheral to those against Nintendo, and the adjudication of the claims against Nintendo will likely dispose of the remaining claims. Moreover, a contrary result runs afoul of the AIA.  Additionally, as set forth below, transfer of the severed claims to the Western District of Washington is warranted under § 1404(a).

## II.    The Severed Claims Against Nintendo Should Be Transferred To The Western District Of Washington.

A district court may transfer a civil action "[f]or the convenience of parties and witnesses [and] in the interests of justice" to any other district "where it might have been brought."  28 U.S.C. § 1404(a).  In this Circuit, "[a] motion to transfer venue should be granted upon a showing that the transferee venue 'is clearly more convenient' than the venue chosen by the plaintiff."  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009)).

The transfer inquiry has two parts.  First, as a threshold matter, the Court must decide whether the action could have been brought in the transferee court.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("Volkswagen II").  Second, the Court must decide whether transfer is appropriate for the "convenience of the parties and witnesses" and "the interests of justice."  *Id.*, at 315.  In determining the convenience of the two venues, the Fifth Circuit considers both the "private" and "public" factors.  The private interest factors to be considered include:  "(1) the relative ease and access to the sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  The public interest factors include:  "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in application of foreign law."  *Id.*

### A.    The Claims Against Nintendo Could Have Been Brought in the Western District of Washington.

This threshold factor is easily satisfied.  NOA is subject to jurisdiction in the Western District of Washington by virtue of the location of NOA's principal place of business in Redmond, Washington.  *See* 28 U.S.C. § 1391(c) (2011).  Nor can UPoint argue that venue in Washington would be improper with respect to NCL because NCL has at least the same contacts with the Western District of Washington as it does with the Eastern District of Texas. Accordingly, venue in the Western District of Washington is proper for this case.  *See, e.g., Nintendo*, 589 F.3d at 1198 (finding that patent infringement lawsuit could have been brought against NCL and NOA in the Western District of Washington).[9]

### B.    The Private Interest Factors Weigh Heavily in Favor of Transfer.

### 1.    The ease of access to sources of proof favors transfer.

The bulk of the relevant evidence in patent cases usually comes from the accused infringer.  *See Genentech*, 566 F. 3d at 1345.  Thus, it is the location of the defendant's documents that typically determines the weight of this factor.

Here, the majority of Nintendo's relevant documents are located in Japan and Washington.  NCL's principal place of business is in Kyoto, Japan.  Hibino Decl., at ¶¶ 2-3. Because NCL designed and developed the Wii systems, as well as the other accused products, the majority of the technical documents are located in Kyoto, Japan.  *Id.*, at ¶¶ 4-5.  NOA's headquarters and  principal place of business is in Redmond, Washington.  Story Decl., at ¶ 2. Some divisions of NOA also operate out of offices in North Bend and Kirkland, Washington, and Redwood City, California.  *Id.*, at ¶ 5.  Most of the marketing, sales and financial documents

---

[9] UPoint may argue that transfer is improper because the entire action could not have been brought in the Western District of Washington.  Such an argument misses the mark.  While certain cases imply that the threshold transfer inquiry applies to the case as a whole (*see, e.g., Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660, 664-65 (E.D. Va. 1998); *Siemens Aktiengesellschaft v. Sonotone Corp.*, 370 F. Supp. 970, 972 (N.D. Ill. 1973)), these cases still permit transfer of the severed claims even in instances where the case as a whole could not have been filed in the transferee district.  Moreover, the majority view is to apply the threshold inquiry only to the severed claims/party. *See, e.g., Shifferaw*, 2010 WL 1064380, at *1 n.2 (transferring the claims against the severed manufacturer (Mishan) to the Southern District of New York despite stipulation that retailer defendant (Academy) was not subject to personal jurisdiction in that district); *First Int'l Comp., Inc.,* 138 F. Supp. 2d at 584 (applying this threshold test to the parties that have been severed, "the Court is not confined to view the facts as they existed at the time of the filing of the complaint").

regarding the Wii system are located at NOA's headquarters in Redmond, Washington, with some in Redwood City, California.[10]  *Id.*, at ¶¶ 6-7.  Therefore, the vast majority of documents produced in this action by NOA and NCL will be from their Washington and Japan offices.

Conversely, very little, if any, relevant evidence is located in the Eastern District of Texas.  UPoint is not incorporated in this district.  Nor does it have a principal place of business in this district.  Nor does it appear to have any connection to this district whatsoever.  Thus, UPoint likely does not maintain documents in this district.  Moreover, because Mr. Banning does not reside in this district, it is also unlikely that he maintains any documents in this district.[11]  Additionally, UltimatePointer Limited appears to be located in Scotland and thus does not likely have any documents in this district.  This factor thus weighs heavily in favor of transfer.

### 2. The convenience of the parties and witnesses favors transfer.

The convenience and cost of attendance for witnesses is an important factor in the transfer calculus.  *Nintendo*, 589 F.3d at 1198-99 (citing *Genentech*, 566 F.3d at 1343).  Additional distance from home means additional travel time, which increases the cost for meals and lodging, which further increases the time that fact witnesses must be away from their regular jobs.  *Id.*  The Fifth Circuit follows the so-called 100-mile rule:  "when the distance between an existing venue for trial of a matter and a proposed venue … is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Id.*

This factor weighs heavily in favor of transfer.  Several of Nintendo's employees will undoubtedly be witnesses in this litigation.  NCL and NOA employees will likely be required to testify regarding the design, testing, research, production, sales and marketing of the Wii system.

---

[10] NOA also has a small office located in New York, New York that is responsible for the design of Nintendo's consumer-facing website.  Story Decl., at ¶ 8.  The vast majority of employees in the New York office are thus dedicated to website activities, with a small number of employees responsible for trend and entertainment marketing sales.  *Id.*  The office does not employ anyone with knowledge relevant to this lawsuit or contain documents relevant to this lawsuit.  *Id.*

[11] UPoint may argue that Mr. Banning has relevant documents in Houston, Texas.  The volume of these documents, however, will likely be far less than the volume of Nintendo documents and, in any event, the burden to transport these documents in electronic form to Tyler, Texas should be no greater than transporting them in electronic form to Seattle, Washington as Federal Express serves both cities.

All of the individuals NCL and NOA have identified as possibly having relevant knowledge are located either in the Western District of Washington, in California, or in Japan. *See* Hibino Decl., at ¶¶ 9-12; Story Decl., ¶¶ 11-14. None of them reside in Texas.

More specifically, the following potential Nintendo witnesses have been identified to date:

- Jacqualee Story. Ms. Story is the Executive Vice President of Business Affairs for NOA. Ms. Story has knowledge about the background of NOA and Nintendo's products in general, including the Wii system, as well as patent licensing. Ms. Story resides in the Redmond, Washington area and works out of NOA's headquarters in Redmond. Story Decl., at ¶ 11.

- Rod Teuber. Mr. Teuber is the Corporate Controller for NOA. Mr. Teuber coordinates financial reporting activities for NOA and assures proper financial reporting and compliance with generally accepted accounting principles. Mr. Teuber has knowledge about sales of the Nintendo Wii system in North America. Mr. Teuber resides in the Redmond, Washington area and works at NOA's headquarters in Redmond. *Id.*, at ¶ 12.

- Jon Pedersen. Mr. Pedersen is the Senior Director of Technical Services at NOA. Mr. Pedersen manages the consumer repairs program, retailer returns, refurbished product recovery, retail display reports, and commercial product support. Mr. Pedersen has information regarding the design and testing of the Wii system. Mr. Pedersen resides in the Kirkland, Washington area and works at the NOA office in Kirkland. *Id.*, at ¶ 13.

- Nicolas Chavez. Mr. Chavez is the Director of Consumer Marketing for NOA. Mr. Chavez has knowledge about the marketing of Nintendo products in North America. Mr. Chavez resides in the Redwood City, California area and works out of NOA's office in Redwood City. *Id.*, at ¶ 14.

- Akio Ikeda. Mr. Ikeda is a Manager in NCL's Integrated Research and Development Division, and was the leader of the team that invented the Wii Remote. Mr. Ikeda has knowledge about the design, development and testing of the Wii system. Mr. Ikeda resides in Japan. Hibino Decl., at ¶ 9.

- Susumu Inoue. Mr. Inoue is an Assistant Manager in NCL's Integrated Research and Development Division. Mr. Inoue has knowledge regarding the design, development and testing of the Wii Remote. Mr. Inoue resides in Japan. *Id.*, at ¶ 10.

- Kuniaki Ito. Mr. Ito is an employee in NCL's Integrated Research and Development Division. Mr. Ito has knowledge regarding the design, development and testing of the Wii Remote. Mr. Ito resides in Japan. *Id.*, at ¶ 11.

- Keizo Ohta. Mr. Ohta is a Manager in the Technology Development Department in NCL's Entertainment Analysis and Development Division. Mr. Ohta has knowledge regarding the design, development and testing of the Wii remote. Mr. Ota resides in Japan. *Id.*, at ¶ 12.

- 11 -

A165

It would be significantly more burdensome for these individuals (as well as other Nintendo employees residing in Japan, Washington, or California) to travel to the Eastern District of Texas for trial than to attend trial in the Western District of Washington. For example, each of the Japanese witnesses identified would have to travel an additional 1,756 miles (or 7 hours) by plane to Texas as compared to Washington State. *Nintendo*, 589 F.3d at 1199.[12] Further adding to the inconvenience of a Texas trial, as opposed to a Washington trial, is that NCL employees (as well as NOA employee Mr. Chavez) could work from NOA's headquarters in Redmond, Washington during part of the Washington trial, resulting in a significantly smaller disruption to NCL's business than if the trial occurred in Texas. Hibino Decl., at ¶ 13; Story Decl., at ¶ 15.

UPoint will, no doubt, argue that transfer to Washington State will inconvenience Mr. Banning. That argument rings hollow. If traveling for trial was truly inconvenient for Mr. Banning, UPoint would have filed in its home district, the Southern District of Texas, instead of in Tyler, Texas, some 206 miles from Mr. Banning's home. Yarbrough Decl., at ¶ 20, Ex. 13; *see HTI IP LLC v. DriveOK, Inc.*, 2010 U.S. Dist. LEXIS 82691, at *15 (E.D. Tex. 2010) (transferring case to California despite one inventor residing in Houston). Where, as here, plaintiff is not a resident of the chosen forum, the court gives less deference to the chosen forum. *See J&J Sports Prods. v. Riviera*, No. H-10-1138, 2010 U.S. Dist. LEXIS 89484, *7 (S.D. Tex. Aug. 30, 2010). Post *Volkswagen II*, the consequences of such a choice is a lowered burden for the party seeking transfer when the operative facts occurred outside the forum. *See, e.g.*, *Remmers v. United States*, No. 1:09-cv-345, 2009 U.S. Dist. LEXIS 100847, at *21 (E.D. Tex. Oct. 28, 2009).

---

[12] Travel from NCL headquarters in Kyoto, Japan to the Eastern District of Texas requires approximately eighteen to twenty one hours minimum in each direction, whereas travel to the Western District of Washington can be completed in approximately fourteen to eighteen hours. Yarbrough Decl., at ¶¶ 3-9, Exs. 2-6. Travel from NOA's Redmond and Kirkland facilities to Federal Court in Seattle takes less than one hour, whereas travel from these locations to Tyler, Texas takes six to eight hours. *Id.*, at ¶¶ 10-14, Exs. 7-9. Travel from NOA's Redwood City, California location to Federal Court in Seattle takes approximately three hours, whereas travel from this location to Tyler, Texas takes approximately six to nine hours. *Id.*, at ¶¶ 15-19, Exs. 10-12.

### 3.     The remaining two private interest factors are neutral.

The availability of compulsory process for non-party witnesses and the other practical problems factors are neutral.  Nintendo is unaware of any non-party witnesses who reside within the subpoena power of this Court.[13]  Nor is Nintendo aware of any non-party witnesses who are outside of the subpoena power of this Court, yet within the subpoena power of the Western District of Washington.  Similarly, there is little possibility of delay and/or prejudice if the transfer is granted.  UPoint has agreed to a seventy-five (75) day stay of the answer or other response date in exchange for NCL agreeing to accept service of the Amended Complaint making the current answer or other response due date is April 9, 2012.[14]  Additionally, both districts have adopted Patent Rules and have patent savvy judges.  *See* Yarbrough Decl., ¶¶ 24-25, Ex, 17.

### C.     The Public Interest Factors Favor Transfer.

### 1.     The Western District of Washington has a strong interest in this case.

The Fifth Circuit has flatly rejected the argument that citizens of a venue chosen by a plaintiff have a "substantial interest" in adjudicating a case locally because some of the allegedly infringing products are sold or otherwise made their way into that district.  *See*, *e.g.*, *Nintendo*, 589 F.3d at 1198 (citing *Volkswagen II*, 545 F.3d at 317-18).  This Court has, however, recognized the Western District of Washington's "high" local interest in adjudicating patent cases relating to Nintendo because of Nintendo's substantial presence in that district.  *Id.*

---

[13] UPoint may argue that this factor favors transfer because Mr. Lutsch, the attorney who prosecuted the '321 patent, resides in Houston, Texas.  Houston, however, is not within this district.  Nor is Mr. Lutsch, who is located approximately 196 miles from this Court's address (Yarbrough Decl., at ¶ 21, Ex. 14), within the Court's subpoena power.  Where a non-party witness is located outside the plaintiff's chosen venue, but within Texas, numerous courts have found this factor to be neutral or even slightly in favor of transfer.  *See*, *e.g.*, *West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 U.S. Dist. LEXIS 124343, at *8 (E.D. Tex., Oct. 27, 2011) (Love, J.) (transferring the case to Utah and finding compulsory process factor neutral where three prosecution attorneys were located in California and one was located in Austin, Texas); *Affinity Labs. of Tex., LLC v. Apple, Inc.*, No. 9:09-cv-47, 2009 U.S. Dist. LEXIS 130635, at *10-11 (E.D. Tex. Aug. 25, 2009) (finding this factor weighed in favor of transfer where plaintiff identified four non-party witnesses outside this district but within Texas, and defendant identified five non-party witnesses closer to transferee venue).

[14] Defendants anticipate filing an unopposed motion to that effect shortly.

Conversely, Nintendo is not aware of any witness or evidence that would indicate a local interest in this case. This factor, therefore, weighs heavily in favor of transfer.

### 2. The administrative difficulties flowing from court congestion slightly favors transfer.

The average time from filing to trial in the Eastern District of Texas is 23.7 months. Yarbrough Decl., at ¶ 22, Ex. 15. The average time from filing date to trial in the Western District of Washington is 19.0 months. *Id.* at ¶ 23, Ex. 16. Speedy resolution of this case thus favors transfer.[15]

## III. The Claims Against The Retailer Defendants Should Be Stayed.

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of cases on its docket, with economy of time and effort for itself, for counsel, and for the litigants. *Toshiba*, 2005 WL 2415960, at *8 (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163 (1936)). Courts routinely stay claims against the retailers that sell the allegedly infringing articles once claims against the manufacturer are severed and transferred. *See Shifferaw,* 2010 U.S. WL 1064380 at *4; *Toshiba Corp.,* 2005 WL 2415960 at *5.[16] In determining whether to stay a case Courts may consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *See Microlinc, LLC v. Intel Corp.*, No. 2:07-cv-488, 2010 U.S Dist. LEXIS 99255, *9 (E.D. Tex. Sept. 20, 2010).

Here, each of these factors weigh strongly in favor of a stay. First, as explained above, this case is primarily a patent infringement suit against Nintendo, the real party in interest, and therefore, a stay against the Retailer Defendants will not unduly prejudice or present any disadvantage to UPoint. Second, a stay of the claims against the Retailer Defendants will

---

[15] The remaining public interest factors—familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflicts of laws or the application of foreign law—are neutral. Both courts are familiar with the federal patent law that governs the case and Nintendo is unaware of any conflicts of law issues that may arise.

[16] *See also Koh,* 250 F. Supp. 2d at 632; *Asustek Computers,* 126 F. Supp. 2d at 421-22; *Corry*, 16 F. Supp. 2d at 667; *Siemens,* 370 F. Supp. at 970.

undoubtedly simplify the issues in question and trial of the case.  Lastly, this case is in its infancy—no party has answered and a scheduling conference is not even set.  Accordingly, this Court should exercise its discretion and stay the claims against the Retailer Defendants in this case.

## CONCLUSION

For the foregoing reasons, Defendants[17] respectfully request that the Court sever the claims against Nintendo from the claims against the Retailer Defendants and transfer the claims against Nintendo to the Western District of Washington.  The Retailer Defendants further request that all claims against them be stayed pending the final resolution of the claims against Nintendo.

---

[17] Defendant JJ Games does not join the Motion at this time based on the representation of Plaintiff's counsel that JJ Games will shortly be dismissed from this case without prejudice (Dkt. 81).  Should dismissal not occur, JJ Games will promptly join this Motion and also agrees to be bound by the decisions of the transferee court.

Dated:  January 20, 2012                Respectfully submitted

                                        By: /s/ Mark C. Nelson

                                        Mark C. Nelson
                                        Texas Bar No. 00794361
                                        mark.nelson@snrdenton.com
                                        Steven M. Geiszler
                                        Texas Bar No. 24032227
                                        steven.geiszler@snrdenton.com
                                        SNR DENTON US, LLP
                                        2000 McKinney Avenue, Suite 1900
                                        Dallas, Texas  75201-1858
                                        Telephone:  (214) 259-0900
                                        Facsimile:  (214) 259-0910

                                        Arthur S. Beeman (Lead Attorney)
                                        Admitted *pro hac vice*
                                        arthur.beeman@snrdenton.com
                                        SNR DENTON US, LLP
                                        525 Market Street, Suite 2600
                                        San Francisco, California 94105-2708
                                        Telephone:  (415) 882-0138
                                        Facsimile:  (415) 882-0300

                                        **Attorneys for Nintendo Co., LTD. (NCL);
                                        Nintendo of America Inc. (NOA); Best Buy
                                        Stores, L.P.; BestBuy.com, LLC; Best Buy
                                        Purchasing, LLC; BJ's Wholesale Club, Inc.;
                                        CompUSA.com, Inc.; TigerDirect, Inc.; Dell
                                        Inc.; GameStop Corporation; JJ Games, LLC;
                                        PC Connection, Inc.; QVC, Inc.; Sears,
                                        Roebuck & Co.; Kmart Corporation; Target
                                        Corporation; Toys "R" Us-Delaware; Trans
                                        World Entm't Corp.; Wal-Mart Stores, Inc.;
                                        Wal-Mart Stores Texas, LLC; Sam's East, Inc.;
                                        and Sam's West, Inc.**

Trey Yarbrough
Texas Bar No. 22133500
trey@yw-lawfirm.com
Debby E. Gunter
Texas Bar No. 24012752
debby@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Telephone: (903) 595-3111
Facsimile: (903) 595-0191

**Attorneys for Nintendo Co., LTD. (NCL); Nintendo of America Inc. (NOA); Best Buy Stores, L.P.; BestBuy.com, LLC; Best Buy Purchasing, LLC; BJ's Wholesale Club, Inc.; CompUSA.com, Inc.; TigerDirect, Inc.; Dell Inc.; GameStop Corporation; JJ Games, LLC; PC Connection, Inc.; QVC, Inc.; Sears, Roebuck & Co.; Kmart Corporation; Target Corporation; Toys "R" Us-Delaware; Trans World Entm't Corp.; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas, LLC; Sam's East, Inc.; and Sam's West, Inc.**

Michael C. Smith
Texas Bar No. 18650410
michaelsmith@siebman.com
SIEBMAN BURG PHILLIPS & SMITH, LLP
P O Box 1556
Marshall, TX 75671-1556
Telephone: (903) 938-8900
Facsimile: (972) 767-4620

David E Finkelson
Virginia Bar No. 44059
dfinkelson@mcguirewoods.com
MCGUIREWOODS LLP
One James Center
901 E Cary St
Richmond, VA 23219
Telephone: (804) 775-1157
Facsimile: (804) 225-5377

**Attorneys for Defendants Wal-Mart Stores, Inc., Wal-Mart Stores Texas, L.L.C., Sam's East, Inc., and Sam's West, Inc.**

- 17 -

Dated:  January 20, 2012

Respectfully submitted

By: /s/ Christopher M. Joe w/permission
Christopher M Joe
Texas Bar No. 00787770
Buether Joe & Carpenter LLC
1700 Pacific Avenue
Suite 2390
Dallas, TX 75201
214/466-1272
Fax: 214/635-1828
Email: Chris.Joe@bjciplaw.com

**Attorney for RadioShack Corporation**

## CERTIFICATE OF CONFERENCE

Mark C. Nelson, counsel for Nintendo and all retailers except RadioShack, met and conferred with Thomas Warden, counsel for Plaintiff, by telephone on January 19, 2012. Counsel for Plaintiff indicated that Plaintiff opposes this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2012 I electronically filed the foregoing Defendants' Motion To Sever And Transfer The Claims Against Nintendo And To Stay The Claims Against The Retailer Defendants with the Clerk of the Court by using the CM/ECF System, which will serve all counsel of record by notice of electronic filing pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5.2.

By: /s/ Mark C. Nelson
Mark C. Nelson

14992206\V-1

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ULTIMATEPOINTER, L.L.C., | § | |
| | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:11-CV-00496-LED |
| | § | |
| vs. | § | |
| | § | |
| NINTENDO CO., LTD. *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF ULTIMATEPOINTER, L.L.C.'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
TO SEVER AND TRANSFER THE CLAIMS AGAINST NINTENDO AND
TO STAY THE CLAIMS AGAINST THE RETAILER DEFENDANTS**

Plaintiff UltimatePointer, L.L.C., ("UltimatePointer") files this response in opposition to

Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims

Against the Retailer Defendants ("Motion") (Dkt. No. 83).

I.     **TABLE OF CONTENTS**

II.    **TABLE OF AUTHORITIES** ...........................................................................iii

III.   **TABLE OF EXHIBITS** ................................................................................... v

IV.   **SUMMARY AND BACKGROUND** ................................................................ 1

V.    **ARGUMENT AND AUTHORITIES IN SUPPORT** ...................................... 2

     **A.**    **The Court Should Not Sever and Stay The Claims Against The Retailer Defendants Because These Claims Are Not Peripheral and Would Not Be Resolved By the Adjudication of Claims Against Nintendo** ........................... 2

          **1.**    Defendants' Infringing Products .................................................. 4

          **2.**    **The Claims Against the Retailer Defendants Involve Different Products and Different Bases of Liability** .................... 5

          **3.**    **35 U.S.C. § 299 Does Not Support Severance** .............................. 8

     **B.**    **The Court Should Not Transfer This Case to Washington** ................................ 13

VI.   **CONCLUSION** ............................................................................................ 15

445443.1/2884.00200

## II.      TABLE OF AUTHORITIES

**CASES FROM THE UNITED STATES SUPREME COURT**

Birdsell v. Shaliol,
    112 U.S. 485 (1884)...................................................................................12

Global-Tech Applicances, Inc. v. SEB S.A.,
    131 S.Ct. 2060 (2011)..................................................................................8

United Mine Workers v. Gibbs,
    383 U.S. 715 (1966)....................................................................................2

**CASES FROM THE UNITED STATES COURTS OF APPEAL**

Anderson v. Red River Waterway Comm'n,
    231 F.3d 211 (5th Cir. 2000)......................................................................2

Farina v. Nokia Inc.,
    625 F.3d 97 (3rd Cir. 2010).........................................................................9

Gould v. Control Laser Corp.,
    705 F.2d 1340 (Fed. Cir. 1983) ..................................................................2

In re TS Tech USA Corp.,
    551 F.3d 1315 (Fed. Cir. 2008) ..................................................................2

In re Volkswagen of Am., Inc.,
    566 F.3d 1349 (Fed. Cir. 2009) ..................................................................3

Liaw Su Teng v. Skaarup Shipping Corp.,
    743 F.2d 1140 (5th Cir. 1984), overruled on other grounds by
    In re Air Crash Disaster Near New Orleans, Louisiana,
    821 F.2d 1147 (5th Cir. 1987) ..................................................................14

Lucent Techs., Inc. v. Gateway, Inc.,
    580 F.3d 1301 (Fed. Cir. 2009) ..................................................................8

Rite-Hite Corp. v. Kelley Co., Inc.,
    56 F.3d 1538 (Fed. Cir. 1995) ....................................................................8

Shockley v. Arcan, Inc.,
    248 F.3d 1349 (Fed. Cir. 2001) ................................................................12

**CASES FROM THE UNITED STATES DISTRICT COURTS**

Adrain v. Genetec Inc.,
    No. 2:08-CV-423,
    2009 WL 3063414 (E.D. Tex. Sept. 22, 2009) ........................................3

Balthasar Online, Inc. v. Newtork Solutions, LLC.,
    654 F. Supp. 2d 546 (E.D. Tex. 2009) ....................................................14

Centre One v. Vonage Holdings Corp.,
    2009 WL 2461003 (E.D. Tex. Aug.10, 2009) ..........................................3

Ei-Land Corp. v. Simpson Strong-Tie Co., Inc.,
    No. 2:09-CV-337-CE,
    2010 WL 3859783 (E.D. Tex. Sept. 30, 2010) ...................................................................2

Hanley v. First Investors Corp.,
    151 F.R.D. 76 (E.D. Tex. 1993) .......................................................................................13

MicroUnity Sys. Eng'g, Inc. v. Acer Inc.,
    No. 2:10–CV–91–TJW–CE,
    2011 WL 4591917 (E.D. Tex. Sept. 30, 2011) ........................................................ passim

MyMail, Ltd. v. America Online, Inc.,
    223 F.R.D. 454 (E.D. Tex. 2004) .....................................................................................15

Shifferaw v. Emson USA,
    No. 2:09-CV-54-TJW-CE,
    2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ...................................................................3

Soverain Software LLC v. Amazon.com, Inc.,
    356 F. Supp.2d 660 (E.D. Tex. 2005) ................................................................................2

**CASES FROM THE STATE COURTS**

Tork-Hiis v. Commonwealth,
    558 Pa. 170, 735 A.2d 1256, 1258 (1999) .......................................................................10

**STATUTES AND RULES**

28 U.S.C. § 1404 ...................................................................................................1, 2, 13, 14

35 U.S.C. § 154 .................................................................................................................7

35 U.S.C. § 271 ..............................................................................................................7, 8

35 U.S.C. § 299 .....................................................................................................9, 11, 12

FED. R. CIV. P. 15 ........................................................................................................10, 11

FED. R. CIV. P. 18 ..............................................................................................................12

Fed. R. Civ. P. 20 .........................................................................................................12, 13

FED. R. CIV. P. 21 ...............................................................................................................2

FED. R. CIV. P. 3 .................................................................................................................9

Local Rule CV-7 ..............................................................................................................15

Pub. L. 112-29 § 19 (Sept. 16, 2011) .................................................................................9

## III.    TABLE OF EXHIBITS

Exhibit A          United States Patent No. 7,746,321 entitled "Easily Deployable Interactive Direct-Pointing System and Presentation Control System and Calibration Method Therefor" (June 29, 2010)

Exhibit B          United States Patent No. 8,049,729 entitled "Easily Deployable Interactive Direct-Pointing System and Presentation Control System and Calibration Method Therefor" (November 1, 2011)

Exhibit C          Letter Agreement Between Counsel dated Dec. 29, 2011

Exhibit D          E-Mails Between Counsel dated Dec. 29, 2011

Exhibit E          Exhibit 5 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1655 (3rd ed.1998 & Supp. 2011)

Exhibit F          8 DONALD S. CHISUM, CHISUM ON PATENTS §§ 21.03[3][e], 21.03[6][a] (2002 & Supp. 2011)

Exhibit G          Declaration of Thomas L. Warden

446213.1/2884.00100

## IV.    SUMMARY AND BACKGROUND

The Court should deny Defendants' request to sever and stay the claims against the Retailer Defendant because the claims against them are not merely "peripheral" to the claims against Nintendo.  The claims against the Retailer Defendants involve additional products and other grounds of liability such that they would not be resolved by the adjudication of claims against Nintendo.  The Court should deny Defendants' requests to transfer the claims against Nintendo because this request is entirely dependent on improper severance.

UltimatePointer filed this action on September 15, 2011 asserting that Defendants infringe United States Patent No. 7,746,321 ("the '321 patent) by, *inter alia*, selling Nintendo Wii systems and associated games and accessories.  (Pl.'s Orig. Compl., Dkt. No. 1.)  The present action is closely related to Civil Action No. 6:11-CV-00571-LED filed on November 1, 2011 in which UltimatePointer asserts that the same Defendants infringe a continuation of the '321 patent, United States Patent No. 8,049,729 ("the '729 patent").

This case has not yet been set for a scheduling conference.  The parties have not yet made initial disclosures or commenced discovery.

On January 20, 2012, together with their Answers, Defendants filed their Motion seeking to sever UltimatePointer's claims against the 20 Retailer Defendants, transfer the claims against Nintendo Co., Ltd. ("Nintendo Japan") and Nintendo of America Inc. ("Nintendo US") (collectively "Nintendo") pursuant to 28 U.S.C. § 1404(a), and to stay the claims against the Retailer Defendants.

445443.1/2884.00200

## V.    ARGUMENT AND AUTHORITIES IN SUPPORT

### A.    The Court Should Not Sever and Stay The Claims Against The Retailer Defendants Because These Claims Are Not Peripheral and Would Not Be Resolved By the Adjudication of Claims Against Nintendo

Severance is governed by Rule 21, which simply provides that "the court may at any time, on just terms, . . . sever any claim against a party." FED. R. CIV. P. 21.  Courts have broad discretion in considering whether to sever.  *MicroUnity Sys. Eng'g, Inc. v. Acer Inc.*, No. 2:10–CV–91–TJW–CE, 2011 WL 4591917 at *2 (E.D. Tex. Sept. 30, 2011) (citing *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000)).[1]  However, "'[u]nder the Rules, . . . joinder of claims, parties and remedies is strongly encouraged.'"  *Id.* at *3 (emphasis added) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)).  Severance in patent cases does not ordinarily involve issues of substantive patent law such that Fifth Circuit precedent is usually controlling.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

When the movant seeks severance to facilitate a convenience transfer, severance and transfer are only proper when (1) the remaining claims would be merely "peripheral" to the severed claims, (2) adjudication of the severed claims would likely dispose of the remaining claims, and (2) the factors under 28 U.S.C. § 1404(a) warrant transfer of the severed claims.  *Ei-Land Corp. v. Simpson Strong-Tie Co., Inc.*, No. 2:09-CV-337-CE, 2010 WL 3859783 at *6 (E.D. Tex. Sept. 30, 2010) (denying severance principally because transfer was unwarranted). Here, if the severed claims would not dispose of the remaining claims, then the creation of multiple lawsuits would unnecessarily waste the parties' time, energy, and money, unnecessarily burden the

---

[1]     District courts also have the inherent power to stay cases as a matter of controlling their dockets.  *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983).  To determine whether a stay is warranted, courts should consider whether a stay would unduly prejudice or tactically disadvantage the non-movant, whether it would simplify the issues, and whether discovery is complete or a trial date is set.  *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp.2d 660, 662 (E.D. Tex. 2005).

federal court system, and "create[] an unnecessary risk of inconsistent claim construction and adjudication." *Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414 at *2, 3 (E.D. Tex. Sept. 22, 2009) (denying severance) (citing, e.g., *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009); *Centre One v. Vonage Holdings Corp.*, 2009 WL 2461003 at *7 (E.D. Tex. Aug.10, 2009)).

When a patent owner asserts claims of infringement against a manufacturer and its retailer for distribution of the same product, those <u>particular</u> claims may be considered peripheral. *See Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380 at *3 (E.D. Tex. Mar. 18, 2010) (distribution of single "Ab Rocket" product). For those claims, where the severed defendant also agrees to be bound by any judgment against the remaining defendant, the remaining claim would likely dispose of the severed claims. *Id*. Conversely, where claims against multiple defendants involve <u>different</u> products or <u>different</u> bases of liability, the claims are not likely peripheral and severance would not likely dispose of the entire case. *See MicroUnity*, 2010 WL 4591917 at *4. In *MicroUnity*, the patent owner asserted infringement against several computer chip manufacturers, cell phone manufacturers, and cell phone retailers for selling standardized "ARM" computer chips and different products including the chips. *Id*. at *3. The court refused to sever the claims against the cell phone manufacturers and retailers from claims against the chip manufacturer because a resolution of the claims against the chip manufacturers would not resolve the remaining claims. The cell phone manufacturers included additional software in their products and the retailers were accused of inducing infringement by their customers, such that severance "would require conducting two duplicative proceeding that could prejudice [the patent owner], burden the federal court system, and creates an unnecessary risk of inconsistent rulings and judgments." *Id*. at *4.

### 1.  *Defendants' Infringing Products*

Defendant Nintendo Japan manufacturers and sells Wii systems, games, and accessories. (*See* Defs.' Mot., Hibino Decl. at 2, ¶ 4.)  Defendant Nintendo US is a wholly owned subsidiary of Nintendo Japan and is "primarily" responsible for marketing, sales, and distribution of Nintendo products in North America.  (*Id*., Story Decl. at 1-2, ¶¶ 3, 4.)  Nintendo appears to be the sole manufacturer of Wii systems, which include a Wii console, a sensor bar, and a Wii Remote.  Wii consoles bear a label indicating that they are made in China.  (Ex. G, Warden Decl. at 1, ¶ 4.)



Nintendo also distributes a few of the many Wii games and accessories.  On its web site (nintendo.com), Nintendo maintains a list of many of its own Wii games as well as numerous third party Wii games.  (*Id*. at 1, ¶ 5.)  Here, Nintendo lists nearly 2,000 Wii games, only 151 of which are Nintendo products.  (*Id*., Ex. G-2)  Nintendo lists over 1,800 Wii games made by over 200 third party publishers, including Activision, Disney Interactive, Electronic Arts, Konami, Sega, THQ, and Ubisoft.  (*Id*.)  Presently, Nintendo does not offer any products for sale on its web site and does not appear to sell any products directly to consumers.  Instead, Nintendo offers links to retailers like the Retailer Defendants where Nintendo's Wii consoles and games, as well as the numerous third party Wii games, may be purchased.  (*Id*. at 2, ¶ 6.)



The Retailer Defendants all offer for sale Nintendo Wii systems, Nintendo Wii games, as well as non-Nintendo Wii games and accessories manufactured by third parties.  Unlike Nintendo, the Retailer Defendants also sell products directly to consumers, both online and at physical locations.  And unlike Nintendo, many of the Retailer Defendants also offer for sale used Nintendo Wii systems, used Wii games, and used Wii accessories (both Nintendo and non-Nintendo products).  (*Id*. at 2, ¶ 7.)

> **2.**   ***The Claims Against the Retailer Defendants Involve Different Products and Different Bases of Liability***

UltimatePointer's claims against the Retailer Defendants are not peripheral and a resolution of UltimatePointer's claims against Nintendo would not resolve the claims against the Retailer Defendants.

Sales of Wii Games Published by Third Parties

First, as Defendants allude in their Motion, (Defs.' Mot. at 7, n.8), the Retailer Defendants all offer for sale and sell Wii games and accessories made by third parties.  Thus, it appears that the Retailer Defendants (and not Nintendo) may be the party liable for infringing sales of the numerous third party Wii games.  For example, claim 44 of the '321 patent recites a "computer-readable medium or media storing computer-executable instructions for directing a computer to perform a method for controlling a feature on an image."[2]  (Ex. A, '321 Patent at col. 38, line 54 to col. 39, line 3.)  Thus, the Retailer Defendants' sales of third party Wii games may directly infringe claims of the '321 patent.  And while Nintendo has suggested that it would indemnify the Retailer Defendants for sales of *Nintendo* products, it has not suggested such an indemnity for sales of any *third party* products.

---

[2]   UltimatePointer's concurrently-filed response to Defendants' motion in the companion case contains a more detailed introduction to the technology underlying the '321 patent-in-suit and the '729 patent.

Similarly, the Retailer Defendants may be liable for contributory or inducing direct infringement by end-users arising from their sales of third party Wii games that invoke the "calibration" routine recited in the claims of both the '321 patent and the '729 patent (as discussed below).  *See* 35 U.S.C. 271(b), (c) (prohibiting inducement of infringement and contributory infringement by supplying a material component of a patented machine).  Again, it appears that only the Retailer Defendants may be liable for these sales.  ***See MicroUnity***, 2010 WL 4591917 at *4 (denying severance based in part on the existence of such claims).

<u>Sales of Nintendo Wii Systems with Wii Games Published by Third Parties</u>

The Retailer Defendants may also be directly liable for certain infringing sales of Nintendo Wii systems when sold together with third party Wii games.  For example, claim 40 of the '321 patent recites an apparatus for controlling a screen feature which includes a user input device for collecting calibration data when a handheld enclosure is directed at a calibration point, and a processor programmed to control the feature using the calibration data.  (Ex. A, '321 Patent at col. 38, lines 24-38.)  Similarly, claim 5 of the '729 patent recites an "apparatus for controlling a feature on a computer generated image" using "calibration points" having a predetermined relation to the image, an image sensor generating data for the calibration points, and a processor programmed to use the calibration data to control the feature.  (Ex. B, '729 Patent at col. 34, lines 27-38.)  Without programming provided by a game, the Nintendo Wii system itself includes a calibration routine, but this routine does not use a "calibration point." (Ex. G, Warden Decl. at 2, ¶ 8 (referring to Exhibit G-6).)  However, the Retailer Defendants' sales of Nintendo Wii systems together with third party Wii games which do provide the calibration programming, may directly infringe claims from both patents.  Yet, because Nintendo

does not appear to sell any third party games, an adjudication of the claims against Nintendo would not resolve these claims against the Retailer Defendants.

Nintendo's Sales Before Patent Issuance, and Nintendo Products Acquired from Non-Nintendo Sources

Nintendo would be jointly liable for any downstream sales of its own products that were originally sold within the United States after issuance of the patent-in-suit.  *See* Part V.A.3.b) *infra*.  However, Nintendo may not be liable for downstream sales of Nintendo products that it originally sold *before* issuance.  *See* 35 U.S.C. § 154(d) (providing damages upon publication only for limited circumstances).  For example, Nintendo may not be liable for sales of Nintendo products that were originally sold by Nintendo before issuance, but are now being sold as "used" by the Retailer Defendants.  Thus, an adjudication of the claims against Nintendo would not resolve a claim against the Retailer Defendants for these post-issuance downstream sales.

Similarly, Nintendo may not be liable for sales of Wii products that Nintendo did not import into the United States.  Infringement generally requires importing or selling within the United States.  35 U.S.C. § 271(a).  However, Ms. Story's declaration attached to Defendants' Motion fails to describe how Nintendo Wii products are imported, and it indicates that Nintendo US is only "primarily" responsible for distribution in North America.  (Defs.' Mot., Story Decl. at 1-2, ¶ 4.)  Thus, an adjudication the claims against Nintendo would not likely resolve any claims against the Retailer Defendants for products imported or distributed by other.

The Retailer Defendants' Inducing Infringement by End-Users

The '321 patent also includes method claims reciting steps actions that may be performed by an end-user.  For example, an end-user could be found to directly infringe method claim 1 if he or she performs the steps of the claim, e.g., "directing a point line to substantially pass through [a] calibration point."  (Ex. A, '321 Patent, col. 33, lines 39-54.)  In turn, a Retailer Defendant may be

found to have induced this infringement by advertising, marketing, and by operating Wii systems at store locations. Claims of inducing infringement like these may be at issue even if Nintendo's sales of its Wii systems do not directly infringe any apparatus claims. A resolution of these inducement claims would be fact specific and depend on the actions and intent of the Retailer Defendants. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068-70 (2011) (discussing intent). Thus, these claims are not peripheral and would not be resolved by claims for Nintendo's sales of Wii systems. *See MicroUnity*, 2010 WL 4591917 at *4.

<u>Third Party Accessories</u>

Lastly, only the Retailer Defendants may be liable for contributory infringement by selling third party Wii accessories that form a material part of the Wii system, for example, handheld controllers and sensor bars. *See* 35 U.S.C. § 271(c). (*See also* Ex. G, Warden Decl. at 2, ¶ 9 (noting accessories).) In addition, sales of other third party Wii accessories may form part of reasonable royalty damages whenever infringing Wii systems form the basis of demand for these accessories. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995). An adjudication of the claims against Nintendo, which does not even sell any third party products, would not likely resolve damages based on the Retailer Defendants' sales of third party accessories.

For these reasons, UltimatePointer's claims against the Retailer Defendants are not merely "peripheral" to the claims against Nintendo, and an adjudication of the claims against Nintendo would not resolve all of the claims against the Retailer Defendants. Under these circumstances, severance is not warranted. *MicroUnity*, 2010 WL 4591917 at *4.

### 3. 35 U.S.C. § 299 Does Not Support Severance

Defendants assert that the newly enacted America Invents Act ("AIA") supports severance because UltimatePointer may assert infringement for sales of non-Nintendo products. (Defs.' Mot.

at 7, n.8.)  Contrary to Defendants' arguments, the Retailer Defendants are properly joined under the AIA, even for claims based on non-Nintendo products, because UltimatePointer asserts at least one right to relief against all Defendants for their sales of the same Nintendo products.  The fact that UltimatePointer has additional rights to relief against the Retailer Defendants for their sales of non-Nintendo products does not defeat joinder under the AIA.

        a)    <u>35 U.S.C. § 299 Does Not Apply Because this Action Was Commenced Before the Effective Date of the AIA</u>

Pursuant to 35 U.S.C. § 299(a), accused infringers may be joined in one action only if:

> (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product . . .; and

> (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299.

Section 19(e) of the AIA provides that the new joinder provision "shall apply to any civil action <u>commenced</u> on or after the date of the enactment of this Act[,]" September 16, 2011.  Pub. L. 112-29 § 19(e) (Sept. 16, 2011) (emphasis added).  Here, a civil action is considered "commenced" by filing a complaint.  FED. R. CIV. P. 3.  Thus, UltimatePointer "commenced" this action on September 15, 2011, prior to the enactment of the AIA.

Nonetheless, Defendants argue that the AIA should still apply because UltimatePointer amended its Complaint after the enactment of the AIA, and that these amendments should not relate back to the Original Complaint.  In support, Defendants cite ***Farina v. Nokia Inc.***, 625 F.3d 97, 111-12 (3rd Cir. 2010), which found an amended complaint adding parties would not relate back for determining whether the action was commenced for the purpose of the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The Third Circuit found that an amendment to add "LG

-9-

defendants" would not relate back to the original complaint in state court because these LG defendants were "unrelated to any of the named defendants" and Pennsylvania law did not permit relation back for the addition of "new and distinct" defendants. *Farina*, 625 F.3d at 112-13 (citing, e.g., ***Tork-Hiis v. Commonwealth.***, 558 Pa. 170, 735 A.2d 1256, 1258 (1999)). Defendants' argument fails on multiple levels.

First, the present action was originally filed in federal court and the only claims at issue in this action invoke federal question subject matter jurisdiction. (Pl.'s Orig. Compl., Dkt. No. 1, at 7, ¶ 23.) Accordingly, Pennsylvania law regarding relation back has no application to this action.

In addition, under the appropriate federal standard for relation back, UltimatePointer's Second Amended Complaint relates back to its Original Complaint. Under Rule 15 of the Federal Rules of Civil Procedure, an amended pleading relates back when

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) . . ., the party to be brought in by amendment:

>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1).

The only substantive changes from the Original Complaint to the Second Amended Complaint are (1) the addition of Wal-Mart Stores Texas, L.L.C. and Sam's East, Inc. as affiliated entities of the original Defendants Wal-Mart Stores, Inc. and Sam's West, Inc.; (2) more detailed allegations of inducing and contributory infringement; (3) the substitution of Best Buy Stores, L.P., Best Buy.com, LLC, and Best Buy Purchasing, LLC in place of their parent company Best Buy

-10-

Co., Inc.; and (4) the substitution of Toys "R" Us-Delaware, Inc. in place of its parent Toys "R" Us, Inc. (*Cf. generally* Pl.'s Orig. Compl., Dkt. No. 1, with Pl.'s First Am. Compl., Dkt. No. 3, and Pl.'s Second Am. Compl., Dkt. No. 79.)

These are precisely the types of amendments that relate back under Rule 15(c). Defendants had knowledge of and indeed specifically requested the substitutions in the Second Amended Complaint. (*See* Ex. C, Letter Agreement dated Dec. 29, 2011.) Moreover, the allegations of inducing and contributory infringement, and the claims against the new defendants arose from the same conduct, transactions, or occurrences regarding the distribution of Wii products as were set out in the Original Complaint. (*Cf. generally* Pl.'s Orig. Compl., Dkt. No. 1, with Pl.'s First Am. Compl., Dkt. No. 3, and Pl.'s Second Am. Compl., Dkt. No. 79; *see also* Corporate Disclosure Stmts., Dkt. Nos. 115, 117 (noting that Wal-Mart Stores Texas and Sam's East are subsidiaries of the original Defendants); Ex. D, E-Mails dated Dec. 29, 2011 (noting substitutions).)

Accordingly, the Second Amended Complaint relates back to the Original Complaint, such that this action was "commenced" before the effective date of 35 U.S.C. § 299.

b) <u>Joinder Is Proper Even If This Action Is Subject to 35 U.S.C. § 299</u>

Even if 35 U.S.C. § 299 applied to this action, joinder of all Defendants is nonetheless proper because UltimatePointer asserts at least one right to relief against all Defendants for their sales of the same core products — Nintendo Wii systems and Nintendo Wii games.

First, 35 U.S.C. § 299 requires that "<u>any</u> right to relief is asserted against the parties jointly." 35 U.S.C. § 299 (emphasis added). It does not require that "all" claims each satisfy 35 U.S.C. § 299. This reading comports with the traditional rules for joinder of claims. "A party asserting a claim . . . may join, . . . *as many claims as it has* against an opposing party." FED. R.

-11-

A188

CIV. P. 18(a) (emphasis added); *see also* 5 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1655 (3rd ed.1998 & Supp. 2011) (Ex. E).[3]

In the present case, UltimatePointer indeed asserts that the Retailer Defendants infringe the patent-in-suit by selling non-Nintendo products made by third parties. However, UltimatePointer also asserts at least one right to relief against all Defendants' for their sales of the same Nintendo products. Thus, the existence of this right to relief satisfies Section 299.

With respect to the other substantive requirements of Section 299, all Defendants in this action would be jointly and severally liable for their sales of Nintendo products (e.g., Nintendo Wii systems).

> [P]arties that make and sell an infringing device [like Nintendo] are joint tort-feasors with parties [like the Retailer Defendants] that purchase an infringing device for use or resale. Each joint tort-feasor is liable for the full amount of damages (up to a full single recovery) suffered by the patentee.

*Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001) (citations omitted, emphasis added) (citing, e.g., *Birdsell v. Shaliol*, 112 U.S. 485, 488-89 (1884)).

UltimatePointer's right to relief for all Defendants' sales of Nintendo products also "aris[es] out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, . . . offering for sale, or selling of the same accused product or process." A resolution of this right to relief would also involve "questions of fact common to all defendants." These requirements from Section 299 closely mirror the traditional requirements for joinder under Rule 20(a), with the addition that the a right to relief arise from selling or offering to sell "the same accused product." *Cf.* Fed. R. Civ. P. 20(a).

---

[3] "Rule 20 operates independently of Rule 18 . . . . to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants . . ., even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions." *Id*.

"Transactions or occurrences satisfy the series of transactions or occurrences requirement of Rule 20(a) if there is some connection or logical relationship between the various transactions or occurrences." *MicroUnity*, 2010 WL 4591917 at *3 (citing *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993)). In the present case, the Defendants' sales of the same Nintendo products are connected and logically related because these products were all originally made and sold by Nintendo. *See MicroUnity*, 2010 WL 4591917 at *3. A resolution of these infringement claims will also involve common questions of law and fact. *Id*. Thus, UltimatePointer's claims against all Defendants satisfy both Section 299 and the tradition joinder requirements under Rule 20. *See, e.g.*, 8 DONALD S. CHISUM, CHISUM ON PATENTS §§ 21.03[3][e], 21.03[6][a], at 21-561, 21-579 to 21-580 (2002 & Supp. 2011) (Ex. F) (noting that the "same transaction test will be met when . . . each infringer occupies a position in a chain of production, distribution, and use of the accused infringing product").

**B.    The Court Should Not Transfer This Case to Washington**

In their Motion, Defendants seek to transfer this case to the Western District of Washington pursuant to 28 U.S.C. § 1404(a). Nintendo Japan asserts that Washington would be more convenient because it would be less "disruptive" to its 4 potential trial witnesses (out of 1,826 total employees) who must travel from Japan. (*See* Defs.' Mot., Hibino Decl. at 1-3, ¶¶ 3, 4, 9-12.) Nintendo US asserts that Washington would be more convenient because its headquarters is in Washington and its 4 potential trial witnesses (out of 1,206 total employees) are all nearby in California or Washington. (*See* Defs.' Mot., Story Decl. at 2, 3, ¶¶ 3, 4, 11-14.) The Court should deny Defendants' request to transfer venue because, without severance, Defendants must show that they would <u>all</u> be subject to personal jurisdiction in Washington, that venue would be proper for <u>all</u> Defendants in Washington, <u>and</u> that Washington would be collectively more convenient for <u>all</u> Defendants.

-13-

To support a transfer under Section 1404(a), the movant must first show that the transferee forum is one in which the action "might have been brought." 28 U.S.C. § 1404(a). This requires showing that *all* defendants were subject to personal jurisdiction in the transferee forum, and that venue is proper for *all* defendants in the transferee forum. ***Liaw Su Teng v. Skaarup Shipping Corp.***, 743 F.2d 1140, 1148 (5th Cir. 1984), ***overruled on other grounds by In re Air Crash Disaster Near New Orleans, Louisiana***, 821 F.2d 1147 (5th Cir. 1987); ***Balthasar Online, Inc. v. Network Solutions, LLC.***, 654 F. Supp. 2d 546, 549 (E.D. Tex. 2009) (citing ***Liaw Su Teng*** and reiterating requirements as to all defendants).

As demonstrated in Part V.A *supra*, severance is improper. In addition, Defendants have failed to show personal jurisdiction or proper venue for any of the Retailer Defendants in Washington. Accordingly, the Court should deny Defendants' request to transfer venue.

Defendants have similarly failed to show how Washington would be a more convenient venue for any of the 20 Retailer Defendants, how Washington might provide easier access to sources of proof for any of the Retailer Defendants, or why Washington would have a special interest in any of the Retailer Defendants. None of the Retailer Defendants has any apparent connection to Washington. In fact, Tyler, Texas appears closer than Washington does for every one of the parties in this lawsuit, with the sole exception of Nintendo.

-14-



| (1) Nintendo US | (7) RadioShack |
| (2) GameStop | (8) Toys "R" Us |
| (3) Best Buy Stores, BestBuy.com, and Best Buy Purchasing | (9) Dell |
| (4) Sears and Kmart | (10) QVC |
| (5) Target | (11) Trans World |
| (6) Wal-Mart Stores, Wal-Mart Texas, Sam's East, and Sam's West | (12) BJ's Wholesale |
| | (13) PC Connection |
| | (14) Tiger Direct and CompUSA |

Thus, for this independent reason, the Court should deny Defendants' request to transfer venue. *See MicroUnity*, 2010 WL 4591917 at *5 ("After denying Qualcomm's motion to sever, it is clear Qualcomm's motion to transfer venue should also be denied. Qualcomm does not provide any proof, such as affidavits or declarations, concerning the locations of witnesses, documents, and other relevant information for the other defendants in this lawsuit.") (citation omitted).

## VI.   CONCLUSION

For all these reasons, Plaintiff Ultimate Pointer, L.L.C. respectfully requests that the Court deny Defendants' Motion. In accordance with Local Rule CV-7(a), an appropriate proposed order is attached hereto.

-15-

Respectfully submitted on this 20th day of February, 2012.

/s/ Gregory L. Maag, with permission by
 Thomas L. Warden
Gregory L. Maag, *Lead Attorney*
State Bar No. 12748500
gmaagconleyrose.com
Charles J. Rogers
State Bar No. 00786205
crogersconleyrose.com
Thomas L. Warden
State Bar No. 24004174
twardenconleyrose.com
CONLEY ROSE, P.C.
600 Travis Street, Suite 7100
Houston, Texas 77002
Telephone: (713) 238-8000
Facsimile:  (713) 238-8088

ATTORNEYS FOR PLAINTIFF
ULTIMATEPOINTER, L.L.C.

-16-

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February 2012, the foregoing **Plaintiff UltimatePointer, L.L.C.'s Response in Opposition to Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants** was filed electronically using the Court's CM/ECF system, and that the Notice of Electronic Filing from the court is proof of service of the document on all counsel who are registered users of the CM/ECF system and therefore deemed to have consented to electronic service.


/s/ Thomas L. Warden
Thomas L. Warden

446213.1/2884.00100

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ULTIMATEPOINTER, L.L.C., | § § § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:11-CV-00571-LED |
| | § § | |
| vs. | § § | |
| NINTENDO CO., LTD. *et al.*, | § § | |
| Defendants. | § § | |

**PLAINTIFF ULTIMATEPOINTER, L.L.C.'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
TO SEVER AND TRANSFER THE CLAIMS AGAINST NINTENDO AND
<u>TO STAY THE CLAIMS AGAINST THE RETAILER DEFENDANTS</u>**

Plaintiff UltimatePointer, L.L.C., ("UltimatePointer") files this response in opposition to

Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims

Against the Retailer Defendants ("Motion") (Dkt. No. 9).

# I.    TABLE OF CONTENTS

## II.   TABLE OF AUTHORITIES ....................................................................................iii

## III.  TABLE OF EXHIBITS ......................................................................................... v

## IV.   SUMMARY AND BACKGROUND ..................................................................... 1

## V.    ARGUMENT AND AUTHORITIES IN SUPPORT ............................................ 1

A.    The Court Should Not Sever and Stay The Claims Against The Retailer Defendants Because These Claims Are Not Peripheral and Would Not Be Resolved By Claims Against Nintendo...................................................... 1

1.    UltimatePointer's Patented Technology ....................................... 3

2.    Defendants' Infringing Products ................................................... 5

3.    The Claims Against the Retailer Defendants Involve Different Products and Different Bases of Liability................................... 6

4.    The Retailer Defendants Are Properly Joined Under 35 U.S.C. § 299................................................................................................ 9

B.    The Court Should Not Transfer This Case to Washington ................... 12

## VI.   CONCLUSION .................................................................................................. 14

## II.     TABLE OF AUTHORITIES

**CASES FROM THE UNITED STATES SUPREME COURT**

Birdsell v. Shaliol,
    112 U.S. 485 (1884)..........................................................................................16

Global-Tech Applicances, Inc. v. SEB S.A.,
    131 S.Ct. 2060 (2011)......................................................................................10

United Mine Workers v. Gibbs,
    383 U.S. 715 (1966)............................................................................................2

**CASES FROM THE UNITED STATES COURTS OF APPEAL**

Anderson v. Red River Waterway Comm'n,
    231 F.3d 211 (5th Cir. 2000)..............................................................................2

Farina v. Nokia Inc.,
    625 F.3d 97 (3rd Cir. 2010)..............................................................................11

Gould v. Control Laser Corp.,
    705 F.2d 1340 (Fed. Cir. 1983) ..........................................................................2

In re TS Tech USA Corp.,
    551 F.3d 1315 (Fed. Cir. 2008) ..........................................................................2

In re Volkswagen of Am., Inc.,
    566 F.3d 1349 (Fed. Cir. 2009) ..........................................................................3

Liaw Su Teng v. Skaarup Shipping Corp.,
    743 F.2d 1140 (5th Cir. 1984), overruled on other grounds by
    In re Air Crash Disaster Near New Orleans, Louisiana,
    821 F.2d 1147 (5th Cir. 1987)..........................................................................15

Lucent Techs., Inc. v. Gateway, Inc.,
    580 F.3d 1301 (Fed. Cir. 2009) ..........................................................................9

Rite-Hite Corp. v. Kelley Co., Inc.,
    56 F.3d 1538 (Fed. Cir. 1995) ............................................................................9

Shockley v. Arcan, Inc.,
    248 F.3d 1349 (Fed. Cir. 2001) ........................................................................14

**CASES FROM THE UNITED STATES DISTRICT COURTS**

Adrain v. Genetec Inc.,
    No. 2:08-CV-423,
    2009 WL 3063414 (E.D. Tex. Sept. 22, 2009) ..................................................3

Balthasar Online, Inc. v. Newtork Solutions, LLC.,
    654 F. Supp. 2d 546 (E.D. Tex. 2009) ..............................................................16

Centre One v. Vonage Holdings Corp.,
    2009 WL 2461003 (E.D. Tex. Aug.10, 2009) ....................................................3

-iii-

Ei-Land Corp. v. Simpson Strong-Tie Co., Inc.,
    No. 2:09-CV-337-CE,
    2010 WL 3859783 (E.D. Tex. Sept. 30, 2010) ...................................................................2

Hanley v. First Investors Corp.,
    151 F.R.D. 76 (E.D. Tex. 1993) ........................................................................................14

MicroUnity Sys. Eng'g, Inc. v. Acer Inc.,
    No. 2:10–CV–91–TJW–CE,
    2011 WL 4591917 (E.D. Tex. Sept. 30, 2011) ........................................................... passim

MyMail, Ltd. v. America Online, Inc.,
    223 F.R.D. 454 (E.D. Tex. 2004) ......................................................................................16

Shifferaw v. Emson USA,
    No. 2:09-CV-54-TJW-CE,
    2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ....................................................................3

Soverain Software LLC v. Amazon.com, Inc.,
    356 F. Supp.2d 660 (E.D. Tex. 2005) ................................................................................2

## CASES FROM THE STATE COURTS

Tork-Hiis v. Commonwealth,
    558 Pa. 170, 735 A.2d 1256, 1258 (1999) .........................................................................11

## STATUTES AND RULES

28 U.S.C. § 1404 ......................................................................................................................1, 2, 15

35 U.S.C. § 154 ...................................................................................................................................8

35 U.S.C. § 271 ...............................................................................................................................8, 9

35 U.S.C. § 299 ...................................................................................................................10, 13, 14

FED. R. CIV. P. 15 .......................................................................................................................11, 12

FED. R. CIV. P. 18 ............................................................................................................................13

Fed. R. Civ. P. 20 ............................................................................................................................14

FED. R. CIV. P. 21 ..............................................................................................................................2

FED. R. CIV. P. 3 ..............................................................................................................................10

Local Rule CV-7 ................................................................................................................................2

Pub. L. 112-29 § 19 (Sept. 16, 2011)................................................................................................10

## III.    TABLE OF EXHIBITS

Exhibit A          United States Patent No. 7,746,321 entitled "Easily Deployable Interactive Direct-Pointing System and Presentation Control System and Calibration Method Therefor" (June 29, 2010)

Exhibit B          United States Patent No. 8,049,729 entitled "Easily Deployable Interactive Direct-Pointing System and Presentation Control System and Calibration Method Therefor" (November 1, 2011)

Exhibit C          Letter Agreement Between Counsel dated Dec. 29, 2011

Exhibit D          E-Mails Between Counsel dated Dec. 29, 2011

Exhibit E          Exhibit 5 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1655 (3rd ed.1998 & Supp. 2011)

Exhibit F          8 DONALD S. CHISUM, CHISUM ON PATENTS §§ 21.03[3][e], 21.03[6][a] (2002 & Supp. 2011)

Exhibit G          Declaration of Thomas L. Warden

446213.1/2884.00100

## IV.    SUMMARY AND BACKGROUND

The Court should deny Defendants' request to sever and stay the claims against the Retailer Defendant because the claims against them are not merely "peripheral" to the claims against Nintendo.  The claims against the Retailer Defendants involve additional products and other grounds of liability such that they would not be resolved by the adjudication of different claims against Nintendo.  The Court should deny Defendants' requests to transfer the claims against Nintendo because this request is entirely dependent on improper severance.

UltimatePointer filed this action on November 1, 2011 asserting that Defendants infringe United States Patent No. 8,049,729 ("the '729 patent") by, *inter alia*, selling Nintendo Wii systems and associated games and accessories.  (Pl.'s Orig. Compl., Dkt. No. 1.)  The present action is closely related to Civil Action No. 6:11-CV-00496-LED filed on September 15, 2011 in which UltimatePointer asserts that the same Defendants infringe the parent patent related to the '729 patent, United States Patent No. 7,746,321 ("the '321 patent).

Defendants have not yet answered and this case has not yet been set for a scheduling conference.  The parties have not yet made initial disclosures or commenced discovery.

On January 20, 2012, Defendants filed their Motion seeking to sever UltimatePointer's claims against the 20 Retailer Defendants, transfer the claims against Nintendo Co., Ltd. ("Nintendo Japan") and Nintendo of America Inc. ("Nintendo US") (collectively "Nintendo") pursuant to 28 U.S.C. § 1404(a), and to stay the claims against the Retailer Defendants.

## V.    ARGUMENT AND AUTHORITIES IN SUPPORT

### A.    The Court Should Not Sever and Stay The Claims Against The Retailer Defendants Because These Claims Are Not Peripheral and Would Not Be Resolved By the Adjudication of Claims Against Nintendo

Severance is governed by Rule 21, which simply provides that "the court may at any time, on just terms, . . . sever any claim against a party."  FED. R. CIV. P. 21.  Courts have broad

-1-

discretion in considering whether to sever. *MicroUnity Sys. Eng'g, Inc. v. Acer Inc.*, No. 2:10–CV–91–TJW–CE, 2011 WL 4591917 at *2 (E.D. Tex. Sept. 30, 2011) (citing *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000)).[1]  However, "'[u]nder the Rules, . . . joinder of claims, parties and remedies is strongly encouraged.'"  *Id.* at *3 (emphasis added) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)).  Severance in patent cases does not ordinarily involve issues of substantive patent law such that Fifth Circuit precedent is usually controlling. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

When the movant seeks severance to facilitate a convenience transfer, severance and transfer are only proper when (1) the remaining claims would be merely "peripheral" to the severed claims, (2) adjudication of the severed claims would likely dispose of the remaining claims, and (2) the factors under 28 U.S.C. § 1404(a) warrant transfer of the severed claims. *Ei-Land Corp. v. Simpson Strong-Tie Co., Inc.*, No. 2:09-CV-337-CE, 2010 WL 3859783 at *6 (E.D. Tex. Sept. 30, 2010) (denying severance principally because transfer was unwarranted). Here, if the severed claims would not dispose of the remaining claims, then the creation of multiple lawsuits would unnecessarily waste the parties' time, energy, and money, unnecessarily burden the federal court system, and "create[] an unnecessary risk of inconsistent claim construction and adjudication." *Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414 at *2, 3 (E.D. Tex. Sept. 22, 2009) (denying severance) (citing, e.g., *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009); *Centre One v. Vonage Holdings Corp.*, 2009 WL 2461003 at *7 (E.D. Tex. Aug.10, 2009)).

---

[1]    District courts also have the inherent power to stay cases as a matter of controlling their dockets.  *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983).  To determine whether a stay is warranted, courts should consider whether a stay would unduly prejudice or tactically disadvantage the non-movant, whether it would simplify the issues, and whether

When a patent owner asserts claims of infringement against a manufacturer and its retailer for distribution of the same product, those <u>particular</u> claims may be considered peripheral. *See Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380 at *3 (E.D. Tex. Mar. 18, 2010) (distribution of single "Ab Rocket" product). For those claims, where the severed defendant also agrees to be bound by any judgment against the remaining defendant, the remaining claim would likely dispose of the severed claims. *Id*. Conversely, where claims against multiple defendants involve <u>different</u> products or <u>different</u> bases of liability, the claims are not likely peripheral and severance would not likely dispose of the entire case. *See MicroUnity*, 2010 WL 4591917 at *4. In *MicroUnity*, the patent owner asserted infringement against several computer chip manufacturers, cell phone manufacturers, and cell phone retailers for selling standardized "ARM" computer chips and different products including the chips. *Id*. at *3. The court refused to sever the claims against the cell phone manufacturers and retailers from claims against the chip manufacturer because a resolution of the claims against the chip manufacturers would not resolve the remaining claims. The cell phone manufacturers included additional software in their products and the retailers were accused of inducing infringement by their customers, such that severance "would require conducting two duplicative proceeding that could prejudice [the patent owner], burden the federal court system, and creates an unnecessary risk of inconsistent rulings and judgments." *Id*. at *4.

### 1.   *UltimatePointer's Patented Technology*

The '729 patent-in-suit, as well as the '321 patent at issue in the companion case, are both entitled "Easily Deployable Interactive Direct-Pointing System and Presentation Control System and Calibration Method Therefor." (Ex. A at 1; Ex. B at 1.) The '729 patent issued from a

---

discovery is complete or a trial date is set. *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp.2d 660, 662 (E.D. Tex. 2005).

continuation of the application for the '321 patent.  (Ex. B at 1.)  In both cases, UltimatePointer asserts that Defendants infringe the patent-in-suit by, *inter alia*, making and/or selling Nintendo Wii systems, as well as games, controllers, sensors, and related accessories.  (Pl.'s First Am. Compl., Dkt. No. 7, at 2, ¶ 1; Pl.'s Second Am. Compl., No. 6:11-CV-00496-LED, Dkt. No. 79, at 2, ¶ 1.)

Both of the patents at issue generally describe controlling the movement of a cursor or "feature" on a computer display based on the point-of-aim of a handheld pointing device.  (Ex. A, '321 Patent, Abstract; Ex. B, '321 Patent, Abstract.)  The claims of both patents generally recite methods and apparatuses which control a display feature (e.g., cursor 501) based on sensor data indicating a pointing line (e.g., 21), or based on differences of position or orientation of the pointing line with reference to a calibration point (e.g., 521a-d).  (*See* '321 Patent, Claims 5, 12, and '729 Patent, Claims 7, 13 (pointing line); '321 Patent, Claims 1, 7, 15, 27, 33, 40, and '729 Patent, Claims 1, 5, 9, 12, 13 (calibration)).  The '321 Patent also includes claims directed to a computer readable medium containing instructions which direct a computer to control a display feature based on calibration data.  (*See* '321 Patent, Claims 44-53.)



Fig. 2

-4-

### 2. Defendants' Infringing Products

Defendant Nintendo Japan manufacturers and sells Wii systems, games, and accessories. (*See* Defs.' Mot., Hibino Decl. at 2, ¶ 4.) Defendant Nintendo US is a wholly owned subsidiary of Nintendo Japan and is "primarily" responsible for marketing, sales, and distribution of Nintendo products in North America. (*Id*., Story Decl. at 1-2, ¶¶ 3, 4.) Nintendo appears to be the sole manufacturer of Wii systems, which include a Wii console, a sensor bar, and a Wii Remote. Wii consoles bear a label indicating that they are made in China. (Ex. G, Warden Decl. at 1, ¶ 4.)



Nintendo also distributes a few of the many Wii games and accessories. On its web site (nintendo.com), Nintendo maintains a list of many of its own Wii games as well as numerous third party Wii games. (*Id*. at 1, ¶ 5.) Here, Nintendo lists nearly 2,000 Wii games, only 151 of which are Nintendo products. (*Id*., Ex. G-2) Nintendo lists over 1,800 Wii games made by over 200 third party publishers, including Activision, Disney Interactive, Electronic Arts, Konami, Sega, THQ, and Ubisoft. (*Id*.) Presently, Nintendo does not offer any products for sale on its web site and does not appear to sell any products directly to consumers. Instead, Nintendo offers links to retailers like the Retailer Defendants where Nintendo's Wii consoles and games, as well as the numerous third party Wii games, may be purchased. (*Id*. at 2, ¶ 6.)



The Retailer Defendants all offer for sale Nintendo Wii systems, Nintendo Wii games, as well as non-Nintendo Wii games and accessories manufactured by third parties. Unlike Nintendo, the Retailer Defendants also sell products directly to consumers, both online and at physical locations. And unlike Nintendo, many of the Retailer Defendants also offer for sale used Nintendo Wii systems, used Wii games, and used Wii accessories (both Nintendo and non-Nintendo products). (*Id*. at 2, ¶ 7.)

### 3. *The Claims Against the Retailer Defendants Involve Different Products and Different Bases of Liability*

UltimatePointer's claims against the Retailer Defendants are not peripheral and a resolution of UltimatePointer's claims against Nintendo would not resolve the claims against the Retailer Defendants.

<u>Sales of Wii Games Published by Third Parties</u>

First, as Defendants allude in their Motion, (Defs.' Mot. at 6-7), the Retailer Defendants all offer for sale and sell Wii games and accessories made by third parties. Thus, it appears that the Retailer Defendants (and not Nintendo) may be the party liable for infringing sales of the numerous third party Wii games. For example, claim 44 of the '321 patent recites a "computer-readable medium or media storing computer-executable instructions for directing a computer to perform a method for controlling a feature on an image." (Ex. A, '321 Patent at col. 38, line 54 to col. 39, line 3.) Thus, the Retailer Defendants' sales of third party Wii games may directly infringe claims of the '321 patent. And while Nintendo has suggested that it would indemnify the Retailer Defendants for sales of *Nintendo* products, it has not suggested such an indemnity for sales of any *third party* products.

Similarly, the Retailer Defendants may be liable for contributory or inducing direct infringement by end-users arising from their sales of third party Wii games that invoke the

"calibration" routine recited in the claims of both the '321 patent and the '729 patent (as discussed below).  *See* 35 U.S.C. 271(b), (c) (prohibiting inducement of infringement and contributory infringement by supplying a material component of a patented machine).  Again, it appears that only the Retailer Defendants may be liable for these sales.  ***See MicroUnity***, 2010 WL 4591917 at *4 (denying severance based in part on the existence of such claims).

<u>Sales of Nintendo Wii Systems with Wii Games Published by Third Parties</u>

The Retailer Defendants may also be directly liable for certain infringing sales of Nintendo Wii systems when sold together with third party Wii games.  For example, claim 40 of the '321 patent recites an apparatus for controlling a screen feature which includes a user input device for collecting calibration data when a handheld enclosure is directed at a calibration point, and a processor programmed to control the feature using the calibration data.  (Ex. A, '321 Patent at col. 38, lines 24-38.)  Similarly, claim 5 of the '729 patent recites an "apparatus for controlling a feature on a computer generated image" using "calibration points" having a predetermined relation to the image, an image sensor generating data for the calibration points, and a processor programmed to use the calibration data to control the feature.  (Ex. B, '729 Patent at col. 34, lines 27-38.)  Without programming provided by a game, the Nintendo Wii system itself includes a calibration routine, but this routine does not use a "calibration point." (Ex. G, Warden Decl. at 2, ¶ 8 (referring to Exhibit G-6).)  However, the Retailer Defendants' sales of Nintendo Wii systems together with third party Wii games which do provide the calibration programming, may directly infringe claims from both patents.  Yet, because Nintendo does not appear to sell any third party games, an adjudication of the claims against Nintendo would not resolve these claims against the Retailer Defendants.

Nintendo's Sales Before Patent Issuance, and Nintendo Products Acquired
from Non-Nintendo Sources

Nintendo would be jointly liable for any downstream sales of its own products that were originally sold within the United States after issuance of the patent-in-suit. See Part V.A.3 *infra*. However, Nintendo may not be liable for downstream sales of Nintendo products that it originally sold before issuance. *See* 35 U.S.C. § 154(d) (providing damages upon publication only for limited circumstances). For example, Nintendo may not be liable for sales of Nintendo products that were originally sold by Nintendo before issuance, but are now being sold as "used" by the Retailer Defendants. Thus, an adjudication of the claims against Nintendo would not resolve a claim against the Retailer Defendants for these post-issuance downstream sales.

Similarly, Nintendo may not be liable for sales of Wii products that Nintendo did not import into the United States. Infringement generally requires importing or selling within the United States. 35 U.S.C. § 271(a). However, Ms. Story's declaration attached to Defendants' Motion fails to describe how Nintendo Wii products are imported, and it indicates that Nintendo US is only "primarily" responsible for distribution in North America. (Defs.' Mot., Story Decl. at 1-2, ¶ 4.) An adjudication of the claims against Nintendo would not likely resolve any claims against the Retailer Defendants for products imported or distributed by others.

The Retailer Defendants' Inducing Infringement by End-Users

The '321 patent also includes method claims reciting steps that may be performed by an end-user. For example, an end-user could be found to directly infringe method claim 1 if he or she performs the steps of the claim, e.g., "directing a point line to substantially pass through [a] calibration point." (Ex. A, '321 Patent, col. 33, lines 39-54.) In turn, a Retailer Defendant may be found to have induced this infringement by advertising, marketing, and by operating Wii systems at store locations. Claims of inducing infringement like these may be at issue even if Nintendo's

-8-

sales of its Wii systems do not directly infringe any apparatus claims.  A resolution of these inducement claims would be fact specific and depend on the actions and intent of the Retailer Defendants.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068-70 (2011) (discussing intent).  Thus, these claims are not peripheral and would not be resolved by claims for Nintendo's sales of Wii systems.  *See MicroUnity*, 2010 WL 4591917 at *4.

<u>Third Party Accessories</u>

Lastly, only the Retailer Defendants may be liable for contributory infringement by selling third party Wii accessories that form a material part of the Wii system, for example, handheld controllers and sensor bars.  *See* 35 U.S.C. § 271(c). (*See also* Ex. G, Warden Decl. at 2, ¶ 9 (noting accessories).)   In addition, sales of other third party Wii accessories may form part of reasonable royalty damages whenever infringing Wii systems form the basis of demand for these accessories.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995).  An adjudication of the claims against Nintendo, which does not even sell any third party products, would not likely resolve damages based on the Retailer Defendants' sales of third party accessories.

For these reasons, UltimatePointer's claims against the Retailer Defendants are not merely "peripheral" to the claims against Nintendo, and an adjudication of the claims against Nintendo would not resolve all of the claims against the Retailer Defendants.  Under these circumstances, severance is not warranted.  *MicroUnity*, 2010 WL 4591917 at *4.

## 4.  *The Retailer Defendants Are Properly Joined Under 35 U.S.C. § 299*

Defendants assert that the newly enacted America Invents Act ("AIA") supports severance because UltimatePointer may assert infringement for sales of non-Nintendo products.  (Defs.' Mot. at 6-8.)  Contrary to Defendants' arguments, the Retailer Defendants are properly joined under the AIA, even for claims based on non-Nintendo products, because UltimatePointer asserts at least one

right to relief against all Defendants for their sales of the same Nintendo products.  The fact that

UltimatePointer has additional rights to relief against the Retailer Defendants for their sales of non-

Nintendo products does not defeat joinder under the AIA.

Pursuant to 35 U.S.C. § 299(a), accused infringers may be joined in one action only if:

> (1) <u>any</u> right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product . . .; and

> (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299 (emphasis added).

First, 35 U.S.C. § 299 requires that "<u>any</u> right to relief is asserted against the parties

jointly."  35 U.S.C. § 299 (emphasis added).  It does not require that "all" claims each satisfy 35

U.S.C. § 299.  This reading comports with the traditional rules for joinder of claims.  "A party

asserting a claim . . . may join, . . . *as many claims as it has* against an opposing party."  FED. R.

CIV. P. 18(a) (emphasis added); ***see also*** 5 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND

PROCEDURE § 1655 (3rd ed.1998 & Supp. 2011) (Ex. E).[2]

In the present case, UltimatePointer indeed asserts that the Retailer Defendants infringe the

patent-in-suit by selling non-Nintendo products made by third parties.  However, UltimatePointer

<u>also</u> asserts at least one right to relief against all Defendants' for their sales of the same Nintendo

products.  Thus, the existence of this right to relief satisfies Section 299.

---

[2]     "Rule 20 operates independently of Rule 18 . . . .  to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants . . ., even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions."  ***Id***.

With respect to the other substantive requirements of Section 299, all Defendants in this action would be jointly and severally liable for their sales of Nintendo products (e.g., Nintendo Wii systems).

> [P]arties that make and sell an infringing device [like Nintendo] are <u>joint</u> tort-feasors with parties [like the Retailer Defendants] that purchase an infringing device for use or resale.  Each joint tort-feasor is liable for the full amount of damages (up to a full single recovery) suffered by the patentee.

***Shockley v. Arcan, Inc.***, 248 F.3d 1349, 1364 (Fed. Cir. 2001) (citations omitted, emphasis added) (citing, e.g., ***Birdsell v. Shaliol***, 112 U.S. 485, 488-89 (1884)).

UltimatePointer's right to relief for all Defendants' sales of Nintendo products also "aris[es] out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, . . . offering for sale, or selling of the same accused product or process."  A resolution of this right to relief would also involve "questions of fact common to all defendants." These requirements from Section 299 closely mirror the traditional requirements for joinder under Rule 20(a), with the addition that the a right to relief arise from selling or offering to sell "the same accused product."  ***Cf.*** Fed. R. Civ. P. 20(a).

"Transactions or occurrences satisfy the series of transactions or occurrences requirement of Rule 20(a) if there is some connection or logical relationship between the various transactions or occurrences."  ***MicroUnity***, 2010 WL 4591917 at *3 (citing ***Hanley v. First Investors Corp.***, 151 F.R.D. 76, 79 (E.D. Tex. 1993)).  In the present case, the Defendants' sales of the same Nintendo products are connected and logically related because these products were all originally made and sold by Nintendo.  ***See MicroUnity***, 2010 WL 4591917 at *3.  A resolution of these infringement claims will also involve common questions of law and fact.  ***Id***.  Thus, UltimatePointer's claims against all Defendants satisfy both Section 299 and the tradition joinder requirements under Rule 20.  ***See, e.g.***, 8 DONALD S. CHISUM, CHISUM ON PATENTS §§ 21.03[3][e], 21.03[6][a], at 21-561,

446213.1/2884.00100

21-579 to 21-580 (2002 & Supp. 2011)  (Ex. F) (noting that the "same transaction test will be met when . . . each infringer occupies a position in a chain of production, distribution, and use of the accused infringing product").

> **B.**     **The Court Should Not Transfer This Case to Washington**

In their Motion, Defendants seek to transfer this case to the Western District of Washington pursuant to 28 U.S.C. § 1404(a).  Nintendo Japan asserts that Washington would be more convenient because it would be less "disruptive" to its 4 potential trial witnesses (out of 1,826 total employees) who must travel from Japan.  (*See* Defs.' Mot., Hibino Decl. at 1-3, ¶¶ 3, 4, 9-12.) Nintendo US asserts that Washington would be more convenient because its headquarters is in Washington and its 4 potential trial witnesses (out of 1,206 total employees) are all nearby in California or Washington.  (*See* Defs.' Mot., Story Decl. at 2, 3, ¶¶ 3, 4, 11-14.)  The Court should deny Defendants' request to transfer venue because, without severance, Defendants must show that they would <u>all</u> be subject to personal jurisdiction in Washington, that venue would be proper for <u>all</u> Defendants in Washington, <u>and</u> that Washington would be collectively more convenient for <u>all</u> Defendants.

To support a transfer under Section 1404(a), the movant must first show that the transferee forum is one in which the action "might have been brought."  28 U.S.C. § 1404(a).  This requires showing that *all* defendants were subject to personal jurisdiction in the transferee forum, and that venue is proper for *all* defendants in the transferee forum.  ***Liaw Su Teng v. Skaarup Shipping Corp.***, 743 F.2d 1140, 1148 (5th Cir. 1984), ***overruled on other grounds by In re Air Crash Disaster Near New Orleans, Louisiana***, 821 F.2d 1147 (5th Cir. 1987); ***Balthasar Online, Inc. v. Network Solutions, LLC.***, 654 F. Supp. 2d 546, 549 (E.D. Tex. 2009) (citing ***Liaw Su Teng*** and reiterating requirements as to all defendants).

-12-

As demonstrated in Part V.A *supra*, severance is improper. In addition, Defendants have failed to show personal jurisdiction or proper venue for any of the Retailer Defendants in Washington. Accordingly, the Court should deny Defendants' request to transfer venue.

Defendants have similarly failed to show how Washington would be a more convenient venue for any of the 20 Retailer Defendants, how Washington might provide easier access to sources of proof for any of the Retailer Defendants, or why Washington would have a special interest in any of the Retailer Defendants. None of the Retailer Defendants has any apparent connection to Washington. In fact, Tyler, Texas appears closer than Washington does for every one of the parties in this lawsuit, with the sole exception of Nintendo.



| | |
|---|---|
| (1) Nintendo US | (7) RadioShack |
| (2) GameStop | (8) Toys "R" Us |
| (3) Best Buy Stores, BestBuy.com, and Best Buy Purchasing | (9) Dell |
| (4) Sears and Kmart | (10) QVC |
| (5) Target | (11) Trans World |
| (6) Wal-Mart Stores, Wal-Mart Texas, Sam's East, and Sam's West | (12) BJ's Wholesale |
| | (13) PC Connection |
| | (14) Tiger Direct and CompUSA |

-13-

Thus, for this independent reason, the Court should deny Defendants' request to transfer venue. *See MicroUnity*, 2010 WL 4591917 at *5 ("After denying Qualcomm's motion to sever, it is clear Qualcomm's motion to transfer venue should also be denied. Qualcomm does not provide any proof, such as affidavits or declarations, concerning the locations of witnesses, documents, and other relevant information for the other defendants in this lawsuit.") (citation omitted).

**CONCLUSION**

For all these reasons, Plaintiff Ultimate Pointer, L.L.C. respectfully requests that the Court deny Defendants' Motion. In accordance with Local Rule CV-7(a), an appropriate proposed order is attached hereto.

Respectfully submitted on this 20th day of February, 2012.

/s/ Gregory L. Maag, with permission by
  Thomas L. Warden
Gregory L. Maag, *Lead Attorney*
State Bar No. 12748500
gmaagconleyrose.com
Charles J. Rogers
State Bar No. 00786205
crogersconleyrose.com
Thomas L. Warden
State Bar No. 24004174
twardenconleyrose.com
CONLEY ROSE, P.C.
600 Travis Street, Suite 7100
Houston, Texas 77002
Telephone: (713) 238-8000
Facsimile: (713) 238-8088

ATTORNEYS FOR PLAINTIFF
ULTIMATEPOINTER, L.L.C.

-14-

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February 2012, the foregoing ***Plaintiff UltimatePointer, L.L.C.'s Response in Opposition to Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants*** was filed electronically using the Court's CM/ECF system, and that the Notice of Electronic Filing from the court is proof of service of the document on all counsel who are registered users of the CM/ECF system and therefore deemed to have consented to electronic service.

/s/ Thomas L. Warden
Thomas L. Warden

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | § | |
|---|---|---|
| ULTIMATEPOINTER, L.L.C., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:11-CV-00496-LED |
| | § | |
| vs. | § | |
| | § | |
| NINTENDO CO., LTD. *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF ULTIMATEPOINTER, L.L.C.'S
SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION
TO SEVER AND TRANSFER THE CLAIMS AGAINST NINTENDO AND
<u>TO STAY THE CLAIMS AGAINST THE RETAILER DEFENDANTS</u>**

Plaintiff's claims against Nintendo should not be severed from its claims against the Retailer Defendants.  Contrary to Defendants' argument, the Complaint should be *liberally construed in Plaintiff's favor* as not limited to only Nintendo's products.  Here, the Retailer Defendants sell infringing products made by third parties, e.g., Wii games, controllers, sensors, and accessories.  Thus, an adjudication of the claims against Nintendo for its sales of Nintendo products would not resolve the claims against the Retailer Defendants for their sales of third party products.  Further, even if it applies in this case, 35 U.S.C. § 299 fails to support severance because it expressly allows joinder when "any right to relief" is asserted against all defendants for infringement relating to the same product.  Notably, the statute does not require that "all rights to relief" relate to the same accused product.  Thus, joinder under § 299 is proper because all Defendants' sell the same infringing Nintendo Wii systems.  Nintendo's request to transfer should be denied because, without severance, Nintendo has failed to show that Washington would have been a proper or more convenient venue for any of the Retailer Defendants.

## A.   Severance Is Improper Because Plaintiff's Claims Are Not Limited to Nintendo's Products

Plaintiff's Complaint should not be narrowly construed as limited to only Nintendo's products or as excluding any of the Wii games, controllers, or sensors made by third parties. Under Rule 8(a) of the Federal Rules of Civil Procedure, a claim for relief need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[1]  (Emphasis added.)  In addition, all pleadings should be construed liberally "to do substantial justice," FED. R. CIV. P. 8(f), and to avoid "cases turning on technicalities," 5 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1215 (3d ed. 2011) (Ex. A).  Accordingly, courts are "obligated to make

---

[1]       These allegations need only be "simple, concise, and direct." FED. R. CIV. P. 8(d).  "No technical form is required. . . . [and a] party may state as many separate claims or defenses as it has, regardless of consistency. *Id.*

a determined effort to understand what the pleader is attempting to set forth and to construe the pleading <u>in his or her favor</u>, whenever the interest of justice so requires." ***Id.***, § 1286 (footnote omitted, emphasis added); ***see also Harrington v. State Farm Fire & Cas. Co.***, 563 F.3d 141, 147 (5th Cir. 2009) (noting that "[t]his Court construes the complaint liberally in favor of the plaintiff"); ***Woodard v. Andrus***, 419 F.3d 348, 351 (5th Cir. 2005) (noting similarly).

Moreover, in the context of pleading patent infringement in the Eastern District, when the plaintiff asserts facts sufficient to give fair notice of the acts of infringement, courts ordinarily do not require that a complaint identify particular product names or model numbers. ***E.g., Tune Hunter Inc. v. Samsung Telecommunications Am., LLC***, No. 2:09–CV–148, 2010 WL 1409245, *3-4 (E.D. Tex. April 1, 2010) (approving general identification of accused products as "music identification systems, devices, products, and/or components"). This is because the Local Rules later require detailed infringement contentions which support the complaint with a specific identification of each accused instrumentality. ***Id.***; ***see also Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 563 (2007) ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.") (citing, e.g., ***Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.***, 40 F.3d 247, 251 (7th Cir. 1994) (noting that once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint")); ***Traffic Information, LLC v. YAHOO! Inc.***, No. 2:09-CV-246, 2010 WL 2545500, *2 (E.D. Tex. April 13, 2010) (approving general identification of accused product because "[a]dditional detail, such as the accused product names, will be provided in the Local Rule 3-1 disclosures") (citing cases).[2]

---

[2]     Similarly, a plaintiff ordinarily need not amend its complaint to specifically identify related accused products or to seek discovery on such products. ***E.g., Polycom, Inc. v. Codian Ltd.***, No. 2:05-CV-520, 2007 WL 194588, *2 (E.D. Tex. Jan. 22, 2007) ("The Court is not convinced Plaintiffs are required to amend their complaint to specifically include the MSE 8000 and IP VCR 2200 products as accused instrumentalities[.]");

In its Complaint, UltimatePointer identified the accused products as "Nintendo Wii systems, games, controllers, sensors and related accessories." (Pl.'s Second Am. Compl., Dkt. No. 79, at 2, ¶ 1.) Here, UltimatePointer stated that these Wii systems were "Nintendo Wii systems," but in so doing it did not specify that all games, controllers, sensors and related accessories were "Nintendo" games, "Nintendo" controllers, "Nintendo" sensors, etc. Accordingly, Plaintiff's complaint should be liberally construed to encompass third party games, controllers, sensors, and related accessories. *See* FED. R. CIV. P. 8; *Twombly*, 550 U.S. at 563; *Harrington*, 563 F.3d at 147.

Second, Defendants argue that severance may be justified even if the Complaint is not limited to Nintendo's products because (1) third party games and accessories <u>may not</u> actually infringe, (2) Nintendo may still be liable for sales of used Nintendo products <u>if</u> Plaintiff is awarded pre-issuance damages arising since publication of the patent-in-suit, and (3) Plaintiff's recovery from Nintendo for making Wii systems <u>may</u> bar a recovery for the Retailer Defendants' inducement of infringement by end users. In essence, Defendants' arguments do nothing more than seek to controvert the facts underlying Plaintiff's claims. At the initial pleading stage, such arguments fail to demonstrate that claims against the Retailer Defendants would be necessarily resolved by an adjudication of the claims against Nintendo.

With respect to third party games and accessories, the Court should reject Defendants' argument as factually flawed and effectively requesting summary judgment without any supporting evidence. Importantly, both Nintendo and third parties offer Wii games that include different calibration functions. (*E.g.,* Ex. B (identifying games).) In addition, the fact that Nintendo may

---

*Epicrealm Licensing, LLC v. Autoflex Leasing, Inc.*, No. 2:05-CV-163, 2007 WL 2580969, *3 (E.D. Tex. Aug. 27, 2007) (Discovery may include products and services "reasonably similar" to the those accused in the PICs. "This finding best comports with the 'notice pleading and broad discovery regime created by the Federal Rules[.]'") (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006)).

sell 700 of the 2,000 different Wii games does not *a fortiori* show that an adjudication of the claims against Nintendo would resolve anyone's liability for any sales of the remaining 1,300 non-Nintendo games. Defendants' argument that accessories are not even relevant to infringement similarly misses the mark. Accessories are not merely generic disk "fixers" or cables; rather, they include sensor bars and controllers which form a material part of the claimed invention. (*See* Pl.'s Resp., Dkt. No. 130 at PageID # 974-76, 981, 982 (identifying third party Wii controllers and sensors).)

The Court should also reject Defendants' arguments regarding inducement by the Retailer Defendants. Here, Nintendo has failed to stipulate that it would be liable for any inducement by the Retailer Defendants. This is for good reason because liability for inducement of the method claims may well require more than simply manufacturing Wii systems. For the method claims, inducing end-users to infringe may depend on the Retailer Defendants' sales of third party games and controllers/sensors, bundling of Wii systems with third party games, or their marketing and operation of Wii systems with third party games at store locations — all actions for which Nintendo would presumably not be liable. Inducing infringement would also not require access to Nintendo's "confidential documentation." (Reply at 4, n.5.) Rather, inducing infringement of the method claims would simply require instructing an end user to perform method steps, e.g., "directing a point line to substantially pass through [a] calibration point." (Pl.'s Resp., Dkt. No. 130, Ex. A, '321 Patent at col. 33, ll. 39-54.)

## B.     Joinder Is Proper Under the AIA (35 U.S.C. § 299)

In their Reply, Defendants argue that 35 U.S.C. § 299 also supports severance. Here, Defendants argue that § 299 applies to this case because Plaintiff's First Amended Complaint "made numerous, substantive additions to the Original Complaint that do not relate back to the

Original Complaint. (Reply at 5.) However, Defendants have failed to point out a single of these "numerous" additions that allegedly do not relate back to the Original Complaint. (*Cf.* Pl.'s Resp., Dkt. No. 130, at 10-11 (describing the amendments and demonstrating that they relate back).) Moreover, the concept of relationship back is not somehow tied to the number of amendments. Rather, it simply requires that a claim arise from the same conduct, and for new parties, notice and the defendant's knowledge that it was the intended subject of the claim. FED. R. CIV. P. 15(c)(1). Here, UltimatePointer's amendments satisfy Rule 15(c)(1) such that its Second Amended Complaint relates back and § 299 does not apply.

If the Court finds that § 299 does apply, Defendants then argue that it supports severance for the reasons stated in its Reply filed in the co-pending sister case (Dkt. No. 30 in No. 6:11-CV-00571). Briefly, in that Reply, Defendants argue that § 299 prohibits joinder unless all claims for relief relate to the same accused product. (*Id*. at 5.) The Court should reject Defendants' argument as contrary to the plain language of § 299, which states that defendants "may be joined . . . only if . . . any right to relief is asserted against the parties . . . relating to . . . the same accused product") (emphasis added). *See White v. United States*, 543 F.3d 1330, 1337 (Fed. Cir. 2008) (noting that "judicial inquiry ends where statutory language is plain and unambiguous"). Here, all Defendants are accused of selling the same infringing Wii systems, so all are properly joined under § 299.

## C.    Conclusion

For all these reasons, Plaintiff Ultimate Pointer respectfully requests that the Court deny Defendants' Motion.

Respectfully submitted on this 12th day of March, 2012.

/s/ Gregory L. Maag, with permission by
  Thomas L. Warden
Gregory L. Maag, *Lead Attorney*
State Bar No. 12748500
gmaag@conleyrose.com
Charles J. Rogers
State Bar No. 00786205
crogers@conleyrose.com
Thomas L. Warden
State Bar No. 24004174
twarden@conleyrose.com
CONLEY ROSE, P.C.
600 Travis Street, Suite 7100
Houston, Texas 77002
Telephone: (713) 238-8000
Facsimile:  (713) 238-8088

ATTORNEYS FOR PLAINTIFF
ULTIMATEPOINTER, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March 2012, the foregoing *Plaintiff UltimatePointer, L.L.C.'s Sur-Reply in Opposition to Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants* was filed electronically using the Court's CM/ECF system, and that the Notice of Electronic Filing from the court is proof of service of the document on all counsel who are registered users of the CM/ECF system and therefore deemed to have consented to electronic service.

/s/ Thomas L. Warden
Thomas L. Warden

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

|  |  |  |
|---|---|---|
| ULTIMATEPOINTER, L.L.C., | § | |
| | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:11-CV-00571-LED |
| | § | |
| vs. | § | |
| | § | |
| NINTENDO CO., LTD. *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF ULTIMATEPOINTER, L.L.C.'S
SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION
TO SEVER AND TRANSFER THE CLAIMS AGAINST NINTENDO AND
TO STAY THE CLAIMS AGAINST THE RETAILER DEFENDANTS**

Plaintiff's claims against Nintendo should not be severed from its claims against the Retailer Defendants.  Contrary to Defendants' argument, the Complaint should be *liberally construed in Plaintiff's favor* as not limited only to Nintendo's products.  Here, the Retailer Defendants sell infringing products made by third parties, e.g., Wii games, controllers, and accessories.  Thus, an adjudication of the claims against Nintendo for its sales of Nintendo products would not resolve the claims against the Retailer Defendants for their sales of these third party products.  The America Invents Act, 35 U.S.C. § 299, also fails to support severance because it expressly allows joinder when "<u>any</u> right to relief" is asserted against all defendants for infringement relating to the same product.  Notably, the statute does not require that "<u>all</u> rights to relief" relate to the same accused product.  Thus, joinder under § 299 is proper because all Defendants' sell the same infringing Nintendo Wii systems.  Nintendo's request to transfer should be denied because, without severance, Nintendo has failed to show that Washington would have been a proper or more convenient venue for any of the Retailer Defendants.

## A.  Severance Is Improper Because Adjudication of the Claims Against Nintendo Could Not Possibly Resolve the Claims Against the Retailer Defendants

In their Reply, Defendants first argue that, as a general rule, severance may be proper if a plaintiff's claims against one defendant would "likely" resolve the claims against the other defendants.  (Reply at 1-2.)  In support, Defendants cite ***Schifferaw v. Emerson USA***, No. 2:09-CV-54, 2010 WL 1064380, at *3 (E.D. Tex. Mar. 18, 2010), and ***LG Elecs., Inc. v. First Int'l Computer, Inc.***, 138 F. Supp.2d 574, 585 (D.N.J. 2001).  In ***Schifferaw***, the only accused product was the "Ab Rocket" made by defendant "Mishan" and simply re-sold by the two other defendants Amazon and Academy.  2010 WL 1064380, at *1, *3.  In the ***LG*** case, the accused products were motherboards that were made and distributed by defendants "FIC" and "FICA" and simply re-sold by defendant "Expert."  The ***Schifferaw*** and ***LG*** courts found that the claims against Amazon,

Academy, and Expert would likely be resolved by the claims against Mishan, FIC, and FICA. 2010 WL 1064380, at *3; 138 F. Supp.2d at 585-86. In the present case, the claims against the Retailer Defendants for their sales of <u>third party</u> Wii games, controllers, sensors, and accessories could not possibly be resolved by an adjudication of the claims asserted against Nintendo because Nintendo does not make, sell, or distribute any of these third party products. Conveniently, Defendants therefore argue that Plaintiff's infringement claims must be strictly limited to Nintendo products.

However, Plaintiff's Complaint identifies the accused products as "Nintendo Wii systems, *as well as* games, controllers, sensors and related accessories compatible and *intended for use with* Wii systems." (Pl.'s First Am. Compl., Dkt. No. 7, at 2, ¶ 1 (emphasis added).) Importantly, Plaintiff did not plead the accused products as being limited to Nintendo Wii systems, *Nintendo* games, *Nintendo* controllers, *Nintendo* sensors, and related *Nintendo* accessories as Defendants now argue. Defendants make this dubious argument solely to help their effort seeking to transfer this case. ***See Eolas Techs., Inc. v. Adobe Sys., Inc.***, 6:09-CV-446, 2010 WL 3835762, *7 (E.D. Tex. Sept. 28, 2010) (Davis, J.) ("Defendants' arguments are dubious, at best. Defendants ask the Court to discount Eolas's contacts with the Eastern District because those contacts do not serve Defendants' desire for transfer.")

Contrary to Defendants' argument, Plaintiff's Complaint should not be narrowly construed as limited to only Nintendo's products or as excluding third party Wii games, controllers, sensors, or accessories. Rather, under the federal standards for notice pleading, courts are "obligated to make a determined effort to understand what the pleader is attempting to set forth and to construe the pleading <u>in his or her favor</u>, whenever the interest of justice so requires." 5 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1286 (3d ed. 2011) (Ex. A) (footnote omitted,

emphasis added); *see also Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (noting that "[t]his Court construes the complaint liberally in favor of the plaintiff"); *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005) (noting similarly). Accordingly, Plaintiff's complaint should be liberally construed to encompass third party games, controllers, sensors, and related accessories.

Second, Defendants argue that severance may be justified even if Plaintiff's claims are not limited to Nintendo's products because Plaintiff presently has not pled contributory or inducing infringement against the Retailer Defendants.[1]  (Reply at 2-3.)  However, Defendants neglect to mention that the Retailer Defendants are accused of direct infringement by their own conduct. Here, for example, as explained in Plaintiff's Response, the Retailer Defendants <u>directly</u> infringe the patent-in-suit by selling Nintendo Wii systems together with third-party games.  (*See* Pl.'s Resp., Ex. G at PageID # 922-62 (identifying third party Wii games).)   In the co-pending companion case, the Retailer Defendants directly infringe the patent-in-suit by selling third party Wii games with or without a Nintendo Wii system.  (*See* Ex. B (describing games with a calibration function).)  None of these claims would even be at issue in a case against Nintendo alone.  Thus, these claims could not possibly be resolved simply by an adjudication of the claims against Nintendo.  As such, these claims preclude severance.  *See MicroUnity Sys. Eng'g, Inc. v. Acer Inc.*, No. 2:10–CV–91, 2011 WL 4591917, at *2-*4 (E.D. Tex. Sept. 30, 2011) (noting that courts have a "strong" preference to avoid severance, and denying severance where claims against multiple defendants involved different products and different bases of liability such that one set of claims would not likely dispose of the entire case); *Cf. Schifferaw*, 2010 WL 1064380, at * 3 ("Where a <u>single</u> manufacturer is the <u>only</u> entity in the U.S. who makes and sells the <u>only</u> accused

---

[1]     Defendants also rely on their related argument in the Reply they filed in the co-pending companion case (6:11-CV-00496).

product to retailers, a patent infringement claim against a retailer is peripheral to the claims against the manufacturer.") (emphasis added).

## B.     Joinder Is Proper Under the AIA (35 U.S.C. § 299)

In their Reply, Defendants argue that 35 U.S.C. § 299 also supports severance.  Here, Defendants argue that § 299 permits joinder of defendants only if all claims for relief relate to the same accused product.  (Reply at 4-5.)  In support, Defendants cite a portion of the Senate debate and argue that § 299 would "do little to reduce the joinder of multiple defendants" if they could be joined based "a single, common accused product."  (**Id**.)

Contrary to Defendants' argument, Section 299 provides that defendants "may be joined in one action . . . only if . . . any right to relief is asserted against the parties jointly, severally, or in the alternative . . . relating to . . . the same accused product or process."  (Emphasis added.)  Thus, the plain language of § 299 allows joinder when any right to relief is against all defendants relating to the same accused product.  Defendants' simply ignore this portion of the statute.  Ordinarily, this should end the judicial inquiry.  "[I]t is a bedrock canon of statutory construction that our judicial inquiry ends where statutory language is plain and unambiguous."  **White v. United States**, 543 F.3d 1330, 1337 (Fed. Cir. 2008) (citing **Conn. Nat'l Bank v. Germain**, 503 U.S. 249, 253-54 (1992) (noting that a statute must be presumed to say what it means and mean what it says); **BedRoc Ltd., LLC v. United States**, 541 U.S. 176, 183, 186-87 (2004) (explaining that "there is no occasion to resort to legislative history" where the statutory text is clear)).

Moreover, the legislative history of § 299 does not conflict with its plain meaning as allowing joinder when any right to relief is asserted against all defendants relating to the same accused product.  The following is the relevant portions of the Senate debate cited by Defendants:

> This new section bars joinder of accused infringers as codefendants . . . if the only
> common fact and transaction among the defendants is that they are alleged to have

infringed the same patent. . . .  [M]ore than one party can be joined on a side . . . only if there is asserted . . . against all of them <u>one or more</u> claims for relief arising out of the same transaction or occurrence or series of transactions or occurrences.

157 Cong. Rec. S5402-02, at S5429 (daily ed. Sept. 8, 2011) (statement of Sen. Kyl) (emphasis added, quotation omitted).   Accordingly, this legislative history actually supports Plaintiff's proposed plain language construction of § 299.

Defendants next ask the Court to construe § 299 contrary to its plain meaning simply because it might otherwise lead to results that the Defendants perceive as "absurd."  (Reply at 5.) Here, Defendants have failed to explain why it would be "absurd" or even inequitable to join multiple defendants in a single action when, as in the present case, they all sell at least one common infringing product.  The Court should reject Defendants' argument as nothing more than a general protest against a plaintiff's right to choose the parties and the venue.  ***See Eolas***, 2010 WL 3835762, at *7 ("It is not within the Court's proper role to encourage or discourage suit against certain parties. As the plaintiff, Eolas is the master of its suit. Within the rules, Eolas is entitled to decide who it will sue, where and when it will bring suit, and on what causes of actions or patent claims it will sue.").

In the present case, as in the co-pending companion case, judicial economy, consistency, and the administration of justice are best served by denying severance and keeping all Defendants in the same action.  ***See id***. at *2 (noting perils of severance) (citing ***MyMail, Ltd. v. America Online, Inc.***, 223 F.R.D. 455, 457-58 (E.D. Tex. 2004) (Davis, J.)).

**C.    Conclusion**

For all these reasons, Plaintiff Ultimate Pointer respectfully requests that the Court deny Defendants' Motion.

Respectfully submitted on this 12th day of March, 2012.

/s/ Gregory L. Maag, with permission by
 Thomas L. Warden
Gregory L. Maag, *Lead Attorney*
State Bar No. 12748500
gmaag@conleyrose.com
Charles J. Rogers
State Bar No. 00786205
crogers@conleyrose.com
Thomas L. Warden
State Bar No. 24004174
twarden@conleyrose.com
CONLEY ROSE, P.C.
600 Travis Street, Suite 7100
Houston, Texas 77002
Telephone: (713) 238-8000
Facsimile:  (713) 238-8088

ATTORNEYS FOR PLAINTIFF
ULTIMATEPOINTER, L.L.C.

**A229**

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March 2012, the foregoing ***Plaintiff UltimatePointer, L.L.C.'s Sur-Reply in Opposition to Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants*** was filed electronically using the Court's CM/ECF system, and that the Notice of Electronic Filing from the court is proof of service of the document on all counsel who are registered users of the CM/ECF system and therefore deemed to have consented to electronic service.


/s/ Thomas L. Warden
Thomas L. Warden

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ULTIMATEPOINTER, LLC,

                    Plaintiff,

        v.                                    Civil Action No. 6:11-CV-496 (LED)

NINTENDO CO. LTD., *ET AL.*,                  Jury Trial Demanded

                    Defendants.

**DEFENDANTS' SUR-SUR-REPLY IN SUPPORT OF THEIR MOTION TO SEVER
AND TRANSFER THE CLAIMS AGAINST NINTENDO AND TO STAY
THE CLAIMS AGAINST THE RETAILER DEFENDANTS**

UPoint waited until its Sur-Reply before identifying three non-parties—Activision, Electronic Arts, and Sega—as sources of allegedly infringing games. *See* Warden Decl. at ¶2. For reasons unknown to Defendants, UPoint utterly failed to name those entities or their games in its complaints (original, first amended, or second amended) or its earlier Opposition papers. Regardless, the claims against the Retailer Defendants should still be stayed and the claims against Nintendo should still be transferred.[1]

## I.    The Newly Identified Non-Nintendo Games Do Not Affect Severance.

UPoint's identification of third-party games does not alter the core severance analysis. Regardless of whether a game is developed by Nintendo or by a third party, the Retailer Defendants do nothing other than purchasing and selling the games to end-users. The Retailer Defendants have no relevant technical information regarding the games, and so cannot provide documents or witnesses relevant to the functionality of any games. *See* Exhibits A-M (declarations from Retailer Defendants). The inclusion of the Retailer Defendants in this action serves no practical purpose, and is a transparent attempt to avoid the most convenient forum for this case. The claims against the Retailer Defendants should be severed and stayed. *See Shiferaw v. Emson USA*, No. 2:09-cv-54, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010).

## II.    The Newly Identified Non-Nintendo Games Foreshadow Improper Joinder.

UPoint's identification of ostensibly accused games from third-parties Activision, Electronic Arts, and Sega (*see* Warden Decl. at ¶2) further shows that UPoint is attempting to contravene the AIA's joinder provision. UPoint argues that third-party games are the crux of the alleged infringement of claim 44 of the '321 patent and any similar claims to "computer-readable medium or media." Opp. at 5. Such allegations will not only draw in third-parties, but will also make them

---

[1] Because sur-sur-replies are disfavored by the Court, Defendants Wal-Mart Stores, Inc., Wal-Mart Stores Texas, LLC, Sam's East, Inc., and Sam's West, Inc. do not join in the instant brief. They do, however, remain movants per the Motion and Reply.

the primary focus of the ultimate question of infringement and the primary sources of discovery. This would inflict the very harms the AIA was designed to prevent: the joinder of claims against Nintendo's, Activision's, Electronic Arts's, and Sega's unique products without any common issues of fact. In the sole accused Nintendo game, Link's Crossbow Training, the alignment adjustment requires using a control stick to adjust the height and cursor speed, a method that is not present in the third-party games. *See* Warden Decl. at Page ID# 1164. These so-called "calibration" functions contain factual differences that preclude joinder. Joinder, moreover, is not appropriate solely because downstream retailers might sell these products.

## III. Inclusion of Third-Party Game Publishers Would Further Favor Transfer.

Any inclusion of third-party game publishers, whether as defendants or subjects of third-party discovery, further favors transferring this litigation. All three non-Nintendo game publishers are headquartered in California: Activision Blizzard, Inc. in Santa Monica; Electronic Arts, Inc. in Redwood City; and Sega of America, Inc. in San Francisco.[2] The witnesses and documents at those locations are much closer to the Western District of Washington than this District. *See Digital Reg of Texas LLC v. Adobe Systems Inc.*, No. 6:11-cv-305, Dkt. 160 at 3-4 (E.D. Tex. Mar. 28, 2012) (considering defendants' presence in or proximity to transferee district). Indeed, the current case is similar to *Digital Reg of Texas*, in which the Court recently granted transfer. There, eight of nine companies were based in Northern California or Western Washington. *Id.* Here, all four companies likely to have technical documents and information are based in Northern California or Western Washington.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Defendants' Motion and Reply, Defendants' Motion should be granted.

---

[2] *See* http://www.activisionblizzard.com/corp/b/aboutUs/ourCompany.html; http://aboutus.ea.com/home.action; http://www.sega.com/corporate/.

Dated: April 12, 2012

Respectfully submitted

By: /s/ Mark C. Nelson _____

Mark C. Nelson
Texas Bar No. 00794361
mark.nelson@snrdenton.com
Steven M. Geiszler
Texas Bar No. 24032227
steven.geiszler@snrdenton.com
SNR DENTON US, LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas  75201-1858
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910

Arthur S. Beeman (Lead Attorney)
Admitted *pro hac vice*
arthur.beeman@snrdenton.com
SNR DENTON US, LLP
525 Market Street, Suite 2600
San Francisco, California 94105-2708
Telephone:  (415) 882-0138
Facsimile:  (415) 882-0300

Trey Yarbrough
Texas Bar No. 22133500
trey@yw-lawfirm.com
Debby E. Gunter
Texas Bar No. 24012752
debby@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Telephone:  (903) 595-3111
Facsimile:  (903) 595-0191

**Attorneys for Nintendo Co., Ltd.; Nintendo of America Inc.; Best Buy Stores, L.P.; BestBuy.com, LLC; Best Buy Purchasing, LLC; BJ's Wholesale Club, Inc.; CompUSA.com, Inc.; TigerDirect, Inc.; Dell Inc.; GameStop Corporation; PC Connection, Inc.; QVC, Inc.; Sears, Roebuck & Co.; Kmart Corporation; Target Corporation; Toys "R" Us-Delaware; Trans World Entm't Corp.**

Dated:  April 12, 2012          Respectfully submitted

                             By: /s/ Christopher M. Joe w/permission
                             Christopher M Joe
                             Texas Bar No. 00787770
                             BUETHER JOE & CARPENTER LLC
                             1700 Pacific Avenue
                             Suite 2390
                             Dallas, TX 75201
                             214/466-1272
                             Fax: 214/635-1828
                             Email: Chris.Joe@bjciplaw.com

                             **Attorney for RadioShack Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2012, I electronically filed the foregoing Defendants' Sur-Sur Reply in Support of Their Motion To Sever And Transfer The Claims Against Nintendo And To Stay The Claims Against The Retailer Defendants with the Clerk of the Court by using the CM/ECF System, which will serve all counsel of record by notice of electronic filing pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5.2.

                             By: /s/ Mark C. Nelson
                                 Mark C. Nelson

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| **ULTIMATEPOINTER, LLC,** | **ORAL HEARING REQUESTED** |
| Plaintiff, | |
| v. | **Civil Action Nos. 6:11-CV-496 (LED)** |
| | **6:11-CV-571 (LED)** |
| **NINTENDO CO., LTD. *ET AL.*,** | **Jury Trial Demanded** |
| Defendants. | |

## DEFENDANTS' MOTION TO SEVER THE RETAILER DEFENDANTS FOR MISJOINDER PURSUANT TO FED. R. CIV. P. 20 AND 21 AND TO DISMISS OR, ALTERNATIVELY, TO STAY THE LITIGATION AGAINST THE RETAILER DEFENDANTS

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ........................................................................................... 2

ARGUMENT .................................................................................................................. 5

    A.    Joinder Is Only Appropriate In Limited Circumstances. .........................................5

    B.    The Claims Against Nintendo And The Claims Against The Retailer Defendants Are Misjoined Because There Is No Substantial Evidentiary Overlap Between Them. ........................................................................................6

        1.    There Is No Substantial Evidentiary Overlap Between the Claims Against Nintendo Games and the Claims Against Non-party Games. ......................... 7

        2.    There Is No Substantial Evidentiary Overlap Between the Claims Against Nintendo Controllers and the Claims Against Non-party Controllers............. 8

        3.    There Is No Substantial Evidentiary Overlap Between the Claims Against Combinations Of Nintendo Products and the Claims Against Combinations Involving Non-party Products. ...................................................................... 9

        4.    There Is No Substantial Evidentiary Overlap Between the Indirect Infringement Allegations. ............................................................................ 10

    C.    That The Accused Products May Be Used With A Wii Console Does Not Indicate Evidentiary Overlap. ...............................................................................11

    D.    Due To The Severe Prejudice And Juror Confusion That Would Otherwise Occur, The Case(s) Against The Retailer Defendants Involving The Non-Party Products Should Be Severed, And Once Severed, Dismissed Without Prejudice Or Stayed. ...............................................................................13

CONCLUSION............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps">CASES</span>

*Acevedo v. Allsup's Convenience Stores, Inc.*,
600 F.3d 516 (5th Cir. 2010) ............................................................................5, 13

*Androphy v. Smith & Nephew, Inc.*,
31 F. Supp. 2d 620 (N.D. Ill. 1998) ..........................................................................6

*Body Science LLC v. Boston Scientific Corp.*,
No. 11-C-03619, 2012 WL 718495 (N.D. Ill. Mar. 6, 2012) ....................................6

*Brandywine Commc'ns Techs., LLC v. Apple, Inc.*,
No. 6:11-cv-1512-Orl-36KRS, 2012 WL 527057 (M.D. Fla. Jan. 26, 2012).....................6, 12

*DSU Medical Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) (*en banc*) .............................................................10

*Global-Tech. Appliances, Inc. v. SEB SA*,
131 S.Ct. 2060 (2011)...........................................................................................10, 11

*Golden Scorpio Corp. v. Steel Horse Bar & Grill*,
596 F. Supp. 2d 1282 (D. Ariz. 2009) .......................................................................6

*Gould v. Control Laser Corp.*,
705 F.2d 1279 (Fed. Cir. 1983).................................................................................15

*In re EMC*,
677 F.3d 1351 (Fed. Cir. 2012)......................................................................... passim

*Innovus Prime, LLC v. LG Elec., Inc.*
No. C 11-04223 JW, 2012 WL 161207 (N.D. Cal. Jan. 18, 2012)....................14, 15

*K-Beech, Inc. v. John Does 1-41*,
No. V-11-46, 2012 WL 773683. (S.D. Tex. Mar. 8, 2012) .......................................6

*Landis v. North Am. Co.*,
299 U.S. 248 (1936).................................................................................................15

*Lektron, Inc. v. GE Lighting, Inc.*,
No. 11-CV-413-TCK-PJC, 2012 WL 1085486 (N.D. Okla. Mar. 30, 2012) ...........6

*Medsquire LLC v. Quest Diagnostics, Inc.*,
No. 2:11-cv-04504-JHN-PLAx, 2011 WL 7710203 (C.D. Cal. Dec. 1, 2011) ......13

A238

*Microlinc, LLC v. Intel Corp.*,
    No. 2:07-cv-488, 2010 WL 3766655 (E.D. Tex. Sept. 20, 2010)............................................15

*Pergo, Inc. v. Alloc, Inc.*,
    262 F. Supp. 2d 122 (S.D.N.Y. 2003)........................................................................................6

*Phillips Elec. N. Am. Corp. v. Contec Corp.*,
    220 F.R.D. 415 (D. Del. 2004) ..................................................................................................6

*Tompkins v. Able Planet Inc.*,
    No. 6:10-cv-58, 2011 WL 7718756 (E.D. Tex. Feb. 17, 2011)..................................................6

*Tuft v. Texas*,
    397 Fed. Appx. 59 (5th Cir. 2010)..............................................................................................6

*WiAV Networks, LLC v. 3Com Corp.*,
    No. C 10-3448 WHA, 2010 WL 3895047 (N.D. Cal. Oct. 1, 2010) ..................................13, 14

## STATUTES

35 U.S.C. § 299 ...................................................................................................................................13

## OTHER AUTHORITIES

Fed. R. Civ. P. 20(a) ................................................................................................................5, 6, 11

Fed. R. Civ. P. 21 ...........................................................................................................................5, 6

In January 2012, Defendants moved to sever and transfer the claims against Nintendo Co., Ltd. ("NCL") and Nintendo of America Inc. ("NOA") (collectively, "Nintendo") from the claims against the twenty Retailer Defendants and to stay the claims against the Retailer Defendants because those claims are peripheral to this litigation. That motion is pending.

Recently, Plaintiff served Infringement Contentions ("PICs") accusing not only Nintendo products, but also some 1,800 non-Nintendo products made by roughly 200 different, non-party manufacturers ("the non-party products"). This Motion addresses Plaintiff's claims against those non-party products. Having not named the non-party products' manufacturers or developers in the lawsuit, Plaintiff tethers its allegations against the non-party products to Retailer Defendants that allegedly sell such products. This case thus presents the classic misjoinder situation where different manufacturers' products are accused of infringing the same patent in a single case. Indeed, Plaintiff admitted that, stating "[t]he claims against the Retailer Defendants involve *different products* and *different bases of liability*."[1]

Claims against independent parties may not be joined in the same lawsuit unless the claims are a part of the same transaction or occurrence. Patent infringement claims are part of the same transaction or occurrence only if the claims have substantial evidentiary overlap.[2] There is no substantial evidentiary overlap between the patent infringement claims against the Nintendo products and the patent infringement claims against the non-party products. The reason is simple—the evidence relating to the alleged infringement by the Nintendo products is in the possession of Nintendo while the evidence relating to the non-party products is presumably in the possession of the companies that manufactured or developed the products. None of the evidence is in the possession of the Retailer Defendants. Naming the Retailer

---

[1] Plaintiff's Response in Opposition to Sever/Transfer Motion ("Opp. to Sever/Transfer"), at 5 (heading 2) (Dkt. No. 130) (emphasis added)
[2] *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012).

Defendants as proxies further compounds the burden of defending this case because it requires 20 Defendant Retailers to defend claims against 1,800+ non-party products about which they have no material information.

In sum, the Retailer Defendants do not belong in this case. With respect to the Nintendo products, the Retailer Defendants are peripheral. With respect to the non-party products, many of which directly compete with the accused Nintendo products, the Retailer Defendants are misjoined. There is no legitimate reason to lump more than 2,000 different accused products made by approximately 200 non-parties in a single case. Allegations against the Retailer Defendants involving the non-party products should be severed and dismissed without prejudice or, alternatively, stayed until the case against Nintendo is resolved.

## FACTUAL BACKGROUND

This case began as a straightforward case centered around Nintendo.[3] Defendants thus moved to sever and transfer the case against Nintendo and to stay the case against the Retailer Defendants. Faced with that motion, Plaintiff manufactured a reason why the claims against the Retailer Defendants are allegedly not peripheral. Plaintiff argued that non-party products allegedly infringe independent of Nintendo products, and that those products *operate differently* than the Nintendo products.[4] Plaintiff thus believes it has a basis to assert infringement against non-party products that *is different from and independent of* its infringement claims against

---

[3] *See* Complaint, at ¶1 (Dkt. No. 1) (accusing "Nintendo Wii systems, games, and related accessories (the 'accused products').")"; First Amended Complaint, at ¶ 1 (Dkt. No. 3) (accusing "Nintendo Wii systems, games, controllers, sensors and related accessories (the 'accused products')"); Second Amended Complaint for Patent Infringement, at ¶ 1 (Dkt. No. 79) (accusing "Nintendo Wii systems, games, controllers, sensors and related accessories (the 'accused products');" *see also id.* at ¶ 26 (alleging that accused products are manufactured by Nintendo); *see also* Sever/Transfer Motion, at 1-2; Sever/Transfer Reply (Dkt. No. 131), at 1-2.
[4] Opp. to Sever/Transfer, at 5-6; Sur-Reply to Sever/Transfer, at 3 (Dkt. No. 132).

Nintendo's products: *"The claims against the Retailer Defendants involve* different products *and* different bases of liability*."*  Opp. to Sever/Transfer, at 5.[5]

The full scope of Plaintiff's allegations against the Retailer Defendants became clear on June 8, 2012, when Plaintiff served its PICs.[6]  The PICs for the 496 case identify approximately 2,000 allegedly infringing products manufactured or developed by roughly 200 different companies—only one of which (Nintendo)—is a named party.[7]  Many of these products, in particular, the non-party controllers and sensor bars, compete with Nintendo's products.  More specifically, the PICs allege that (i) nearly 2,000 games created by approximately 170 different, non-party game developers infringe claim 47; (ii) any combination of a Wii console, any one of 68 controllers created by more than 20 different, non-party manufacturers, and any one of 42 sensor bars created by more than 14 different, non-party manufacturers infringe numerous other claims; (iii) each of the 68 controllers individually infringe still other claims; and (iv) combinations of a Wii console, any one of the 68 controllers, any one of the 42 sensor bars, and any one of 13 games infringe still other claims.[8]  The table on the next page summarizes the number of allegedly infringing combinations of products and the number of different non-party manufacturers that design one or more of the products accused.[9]

---

[5] Plaintiff's Sur-Reply to Sever/Transfer identified seven non-party games as additional purportedly infringing products.  *See* Dkt. 132 and accompanying Warden Declaration identifying games from three non-party developers (Activision, Electronic Arts, and Sega).
[6] A copy of the main document of the PICs in the 496 case, as well as Exhibits A-I thereto, is attached as Ex. 1(A-I).  A copy of the main document for the PICs in the 571 case is attached as Ex. 2.  A copy of Plaintiff's claim chart for the '571 case is attached as Ex. 2(I).  The remaining Exhibits A-H are the same for both the 496 and 571 cases.  Exhibit J is omitted because it contains confidential material and is not directly relevant to this motion.
[7] *See*, Ex. 1, at 5-7, and Exs. A, E, F, G and H, attached thereto.
[8] *Id.*
[9] In addition, the PICs also recite boilerplate indirect infringement allegations in both the 496 and 571 cases against both Nintendo and the Retailer Defendants.  Plaintiff, however did not plead indirect infringement against the Retailer Defendants in the 571 case.  Ex. 1, at 4, 7; Ex. 2, at 2-3; 571 Amended Complaint (Dkt. No. 7).

- 3 -

| Asserted Claim | Approximate Number of Accused Products/Combinations[10] | Approximate Number of Separate Companies Accused Products/Combinations |
|---|---|---|
| 5, 12 | 3,400 | 24 |
| 6, 27, 31, 33, 37 | 37,128 | 27 |
| 15, 19, 20, 23, 25 | 68 | 20 |
| 32, 34 | 25,704 | 27 |
| 44, 51 | 13 | 4 |
| 47 | 1,975 | 193 |
| 52 | 1 | 1 |

The PICs in the 571 case are similarly broad.  Plaintiff alleges that the combination of a Wii console with any one of the 68 controllers manufactured by more than 20 different companies identified in Ex. 1(A) and any one of the 42 sensor bars manufactured by at least 14 different companies identified in Ex. 1(E) infringe each of the asserted claims.  Ex. 2, at 3.  Plaintiff thus alleges infringement by 2,856 different product combinations manufactured and developed by 30+ different companies, of which only Nintendo is a party to the case.

These allegations, however, are without evidentiary support.  Plaintiff's two "claim charts" (one for each case) contain no substantive references to non-party products, or to Nintendo products for that matter.[11]  For the 496 case, Plaintiff's claim repeats the same four high-level figures, recites a generic "controller 7," generic "IR lights 8a and 8b," and generic "game 4," and concludes that these generic examples are "representative" of each of the accused controllers, sensor bars, and games.[12]  The chart then repeats the claim language to allege infringement for each of the 37,128 accused combinations (only 32 of which contain solely Nintendo products).  Nor does Plaintiff chart any of the nearly 2,000 games that purportedly infringe claim 47.  The "claim chart" in the 571 case similarly fails to chart even one of the 2,856 accused combinations.[13]  In short, Plaintiff assumes, without providing any support, that all of

---

[10] Each separate combination of an accused product is counted as a separate product.

[11] *See generally* Exs. 1(I) and 2(I) charting only a generic, "representative" game, controller, sensor bar, and combination.  The Defendants have raised the deficiencies in the Infringement Contentions with the Plaintiff.  *See* Ex. 3, (7/19/12 Nelson letter to Warden).  Plaintiff has so far failed to respond in any way.

[12] Ex. 1(I), at 2, 9, 14, 27, 32, 40, 45, and 50.

[13] *See generally* Ex. 2(I).  Pages 1, 7 and 13 repeat the same "representative" language.

the controllers, sensor bars, and games are identical.  The evidence necessary to test this

assumption, however, is not in the hands of the named parties but in the hands of non-parties.

*See* Plaintiff's Initial Disclosures, at 10 (identifying "one or more representatives of the third

party " game developers, controller manufacturers, and/or sensor bar manufacturers identified in

the PICs as having "knowledge of the accused third party" games, controllers, and sensor bars).[14]

## ARGUMENT

Joinder in a patent case is not appropriate unless there is substantial evidentiary overlap

in the facts giving rise to the cause of action against each defendant.  No such overlap exists

between Nintendo and the Retailer Defendants or between the Retailer Defendants themselves.

## A.    Joinder Is Only Appropriate In Limited Circumstances.

Federal Rule of Civil Procedure 21 states that "the court may at any time, on just terms,

add or drop a party.  The court may also sever any claim against a party."  But Rule 21 does not

provide standards for district courts to determine if parties are misjoined.  Courts, therefore, look

"to Rule 20 for guidance."  *In re EMC*, 677 F.3d at 1356 (quoting *Acevedo v. Allsup's*

*Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)).  Under Federal Rule of Civil

Procedure 20, multiple defendants may be joined in the same action only if:

> (A) any right to relief is asserted against them jointly, severally, or
> in the alternative with respect to or arising out of the same
> transaction, occurrence, or series of transactions or occurrences;
> and
>
> (B) any question of law or fact common to all defendants will arise
> in this action.

FED. R. CIV. P. 20(a)(2).  Both prongs of the test must be met to join claims against multiple

defendants.  *Id.*  Thus, even if a common question of law or fact exists, the claims must still

involve the same transaction or occurrence to be properly joined.  *Id.*

---

[14] A copy of Plaintiff's Initial Disclosure is attached as Ex. 4.

Independent defendants satisfy the transaction-or-occurrence test when there is a "logical relationship" between the separate causes of action. *In re EMC*, 677 F.3d at 1358. This "logical relationship" is satisfied if there is "substantial evidentiary overlap" in facts giving rise to the cause of action against "each" defendant. *Id.* Put another way, "[t]o be part of the 'same transaction' requires shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts." *Id.*, at 1359. Thus, the Federal Circuit cautions: "[u]nless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.*[15]

**B.      The Claims Against Nintendo And The Claims Against The Retailer Defendants Are Misjoined Because There Is No Substantial Evidentiary Overlap Between Them.**

Plaintiff attempts the very joinder prohibited by Rules 20 and 21, and by the Federal Circuit. Typically, products developed and/or manufactured by separate companies do not share overlapping facts, let alone a substantial number of them. *See, e.g., Body Science LLC*, 2012 WL 718495, at *3 (finding misjoinder because "[d]efendants are separate companies that separately

---

[15] The Federal Circuit's holding in *EMC* is in accord with the vast majority of district court decisions addressing the joinder-of-multiple-defendants-in-a-single-case issue. *See, e.g., Body Science LLC v. Boston Scientific Corp.*, No. 11-C-03619, 2012 WL 718495, at *3 (N.D. Ill. Mar. 6, 2012) ("a party fails to satisfy Rule 20(a)'s requirement of a common transaction or occurrence where unrelated defendants, based on different acts, are alleged to have infringed the same patent."); *Brandywine Commc'ns Techs., LLC v. Apple, Inc.*, No. 6:11-cv-1512-Orl-36KRS, 2012 WL 527057, at *2 (M.D. Fla. Jan. 26, 2012) ("The mere fact that the same patent is at issue is not enough to meet the 'same transaction or occurrence' requirement of Rule 20"); *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1285 (D. Ariz. 2009) ("The authority of other courts provides that allegations against multiple and unrelated defendants for acts of patent, trademark, and copyright infringement do not support joinder under Rule 20(a)."); *Phillips Elec. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 417 (D. Del. 2004) ("Allegations of infringement against two unrelated parties based on different acts do not arise from the same transaction."); *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) ("the fact that two parties may manufacture or sell similar products . . . not sufficient to join unrelated parties as defendants . . . in the same lawsuit"); *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998) (finding misjoinder because the defendants "are separate companies that independently design, manufacture and sell different products").

The *EMC* holding is also consistent with joinder decisions in this circuit. *See, e.g., Tuft v. Texas*, 397 Fed. Appx. 59, 62 (5th Cir. 2010) (confinement claims against multiple defendants misjoined); *Tompkins v. Able Planet Inc.*, No. 6:10-cv-58, 2011 WL 7718756, at *2 (E.D. Tex. Feb. 17, 2011) (patent false marking claims against multiple defendants misjoined); *K-Beech, Inc. v. John Does 1-41*, No. V-11-46, 2012 WL 773683. at *5 (S.D. Tex. Mar. 8, 2012) (copyright infringement claims against different parties misjoined).

design, develop, manufacture, and sell different Accused Products"); *Lektron, Inc. v. GE Lighting, Inc.*, No. 11-CV-413-TCK-PJC, 2012 WL 1085486, at *2 (N.D. Okla. Mar. 30, 2012) (same). The situation here is no exception.

>    1.    **There Is No Substantial Evidentiary Overlap Between the Claims Against Nintendo Games and the Claims Against Non-party Games.**

Plaintiff asserts Claim 47 against 148 Nintendo games and 1,801 non-party games. Plaintiff's claim chart contains no specific information regarding how any particular game purportedly infringes this claim. Plaintiff states only that "game 4 is representative of each game identified on any of Exs. F-H." *See* Ex. 1(I), at 45. Plaintiff goes on to state that "game 4 is a computer-readable medium or media storing executable instructions for directing computer 3 [which Plaintiff identifies as a Wii console] to perform a method for controlling a feature on an image generated by computer 3 using a handheld controller 7." *Id.* These general statements, however, do not provide any indication of Plaintiff's theory of infringement.

Nor do these statements provide any evidence that the functionality of a Nintendo published game is representative of the functionality of any non-party game, and vice versa.[16] Each game developer determines the functionality and source code for each game. Stated another way, it is the game developers' game code that determines the functionality, such as the undefined "feature on an image" discussed in the PICs. Plaintiff, moreover, admits that the Nintendo games and the non-party games have different functionality: "Nintendo and third parties offer Wii games that include *different* calibration functions." *See* Sur-Reply to Sever/Transfer, at 3. (emphasis added) To evaluate infringement of claim 47, therefore, requires evaluation of the functionality (and potentially the source code) for each of the 1800+ non-party games. Neither Nintendo nor the Retailer Defendants have such code. *See* Retailer Defendant

---

[16] The accused Nintendo games are also not representative of one another. For example, many of the Nintendo games identified on Ex. 1(F) are WiiWare or Virtual Console games, which are not stored on discs and do not (in the case of Virtual Console games) recognize motion-based inputs.

Declarations, at ¶¶ 2, 3 (attached as Exs. 5(A-L)); Declaration of Steve Rabin, ¶ 2 (attached as Ex. 6(A)). And , tellingly, Plaintiff seemingly intends to obtain this information from the non-party game publishers. *See generally* Ex. 4 (Initial Disclosure), at 10 (identifying "one or more representatives of the [200+] third party Wii game developers/manufactures identified in UltimatePointer's PR 3-1 Contentions[,]" [not Nintendo or the Retailer Defendants] as having "knowledge of the accused third party Wii games …"). Thus, there is no evidentiary overlap between Nintendo and the Retailer Defendants with respect to the non-party games (or with respect to the Nintendo games for that matter). Nor is there evidentiary overlap between the Retailer Defendants themselves.

### 2. There Is No Substantial Evidentiary Overlap Between the Claims Against Nintendo Controllers and the Claims Against Non-party Controllers.

Plaintiff asserts Claims 15, 19, 20, and 25 in the 496 case against eight Nintendo controllers and 60 non-party controllers. Plaintiff's claim chart contains no specific information on how any particular controller might infringe these claims. Plaintiff simply states that "controller 7 is representative of each controller identified in Exs. A-D," and that "[h]andheld controller is a pointing device for controlling a feature on an image generated by Wii computer 3 on screen 2." *See*, *e.g.*, Ex. 1(I), at 14. The remainder of the chart purports to identify portions of a generic, unidentified controller that allegedly meets the claim limitations. *Id.*, at 15-18.[17]

The choice of architecture, hardware, software or firmware, and functionality provided by the controllers is entirely within the purview of the controller manufacturer and/or developer. Although some of the various controllers may look superficially similar, Nintendo and the various third-party controller manufacturers compete in the controller market, independently designing, developing, manufacturing, and selling their respective controllers. Neither Nintendo

---

[17] The charts against dependent claims 19-20, and 25 provide no additional, relevant detail. *Id.*, at 22.

nor the Retailer Defendants are aware of, review, or provide any assistance in the development of the hardware, software/firmware, and/or functionality of the various non-party manufactured controllers. *See* Exs. 5(A-L), ¶ 4; Declaration of Enrique Palomares ("Palomares Decl."), at ¶ 3, attached as Ex. 6(B). Defendants, moreover, do not have technical documentation that contains material information concerning non-party controller architecture, hardware, software or functionality. Exs. 5(A-L), at ¶ 3; Palomares Decl., at ¶ 2. And defendants could not provide witnesses who could testify about these topics. Given this independent manufacture and development, evidence regarding the architecture or functionality of any given Nintendo controller does not prove how any non-party controller works, and vice versa. Because it is necessary to evaluate the architecture and functionality of each of the approximately 60 non-party controllers to determine infringement of these claims, and because the necessary information is likely in the possession of the non-party controller manufacturers,[18] there is no evidentiary overlap between Nintendo and the Retailer Defendants with respect to non-party controllers (or with respect to the Nintendo controllers for that matter). Nor is there evidentiary overlap between the Retailer Defendants themselves.

3.     **There Is No Substantial Evidentiary Overlap Between the Claims Against Combinations Of Nintendo Products and the Claims Against Combinations Involving Non-party Products.**

Plaintiff asserts claims 5, 6, 27, 31-34, and 37 in the 496 case against a combination of a Nintendo Wii console with either Nintendo or non-party games, Nintendo or non-party controllers, and Nintendo or non-party sensor bars.[19] Again, the choice of architecture, hardware, and functionality provided by the sensor bar is up to the sensor bar manufacturer. Neither Nintendo nor the Retailer Defendants are involved in the design or development of the

---

[18] Plaintiff's Initial Disclosure again indicates the technical information regarding non-party controllers will come from "third party manufacturers". Ex. 4, at 10.
[19] In the 571 case, Plaintiff accuses "[t]he combination of a Wii console, any controller identified on Ex. A, [and] any sensor bar identified on Ex. E." Ex. 2, at 3.

non-party sensor bars and (with one exception)[20] do not have technical information regarding the sensor bars' architecture, hardware, or functionality. Exs. 5(A-L), at ¶¶ 2-3; Ex. 6(B), at ¶ 3. Given this independent development, evidence regarding the architecture, hardware or functionality of any Nintendo sensor bar does nothing to prove the technical structure or specific functionality of any non-party sensor bar, and vice versa.

Plaintiff's claim charts, however, provide no information on how each of the 39,984 allegedly infringing combinations (the total combinations accused in both cases) purportedly performs the claimed methods and/or is purportedly arranged to form the claimed apparatus. Again, Plaintiff simply charts an allegedly "representative" combination of a generic Wii console, controller, sensor bar, and certain games. Ex. 1(I), at 2, 14, 23, 32, 40, 45 and 50 (496 case); *see also* Ex. 2(I), at 1, 7, and 13) (charting "representative" combination of a Wii console, controller, and sensor bar). In the 496 case, only 32 of the combinations involve solely Nintendo products.[21] Consequently, it is expected that Plaintiff will need to obtain additional technical information to determine infringement for the remaining tens of thousands of allegedly infringing combinations that contain at least one non-party product. Even according to Plaintiff, this information must likely come from a multitude of different, non-party manufacturers.[22] Accordingly, there is no substantial evidentiary overlap with respect to the claims against combinations of a Wii console, games, controllers, and sensor bars.

### 4. There Is No Substantial Evidentiary Overlap Between the Indirect Infringement Allegations.

There is also no overlap in the evidence necessary to prove indirect infringement by Nintendo or the Retailer Defendants. Indirect infringement depends upon the intent of the alleged indirect infringer. *See Global-Tech. Appliances, Inc. v. SEB SA*, 131 S.Ct. 2060, 2067-68

---

[20] Nintendo has some information on the accused BD&A "Wireless Ultra Sensor Bar." Ex. 6(B), at ¶ 3.
[21] Similarly, in the 571 case only a small fraction of the combinations involve only Nintendo products.
[22] *See* Ex. 4, at 10 (indicating that information on third-party products will likely come from third party witnesses).

(2011). To prove inducement it is necessary to demonstrate that the alleged inducer intended that its actions constitute infringement of the asserted patent. *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc*). With respect to the Nintendo products, it is Nintendo that would be the likely source of any evidence relating to its state of mind. With respect to the non-party products, the non-party developers/manufacturers are likely the source of any relevant evidence regarding their state of mind and/or whether they were even aware of the patent. The Retailer Defendants, on the other hand, are unlikely to possess any relevant evidence because they do not possess technical information regarding the Wii console, games, controllers, or sensor bars. Exs. 5(A-L), at ¶¶ 2-3. Given this lack of technical knowledge, the Retailer Defendants cannot possess the requisite intent that their acts constitute infringement. Nor could they be considered to be willfully blind. *Global-Tech.*, 131 S.Ct. at 2067-68 (2011).[23]

## C. That The Accused Products May Be Used With A Wii Console Does Not Indicate Evidentiary Overlap.

Plaintiff may argue that there is substantial evidentiary overlap because a Wii console is used with each allegedly infringing game, controller, and sensor bar. As such, Plaintiff may contend that it is appropriate to treat the accused Nintendo products and the non-party products similarly. Such an argument would miss the mark.

First, Plaintiff expressly stated that its claims against Nintendo and those against the Retailer Defendants' non-party products are precisely the type of claims that cannot be joined under Rule 20(a): "The claims against the Retailer Defendants involve different products and different bases of liability." *See* Opp. to Sever/Transfer, at 5. Plaintiff thus admits that simply having the capability to operate with a Wii console does not constitute sufficient factual overlap. Further, at least claims 6, 15, 19-20, 23, 25, 27, 31-34, 37, 44, 51, and 52 involve a calibration

---

[23] Plaintiff did not, in fact, plead indirect infringement in the 571 case.

- 11 -

point and/or calibration data.  Plaintiff also admitted that the allegedly infringing calibration functionality is greatly, if not entirely, dependent upon the individual game software.  *See*, *e.g.*, Opp. to Sever/Transfer, at 6 (indicating that the "calibration point" claim element is not met "[w]ithout the programming provided by a game."); Sur-Reply to Sever/Transfer, at 3 ("Nintendo and third parties offer Wii games that include different calibration functions").  Additionally, Plaintiff acknowledges that the calibration functionality can vary significantly on a game-by-game basis.  *See* Exs. 1(G) and 1(H) (noting different calibration functionalities in different games); Ex. B to Sur-Reply to Sever/Transfer (compare the control stick adjustments of Nintendo's Link's Crossbow Training to corner-shooting procedures of the seven third-party games).  Thus, by Plaintiff's own admission, the claims against the Retailer Defendants involving non-party products are different than the claims against Nintendo.

Second, mere similarities among accused products are not sufficient to support joinder. *See EMC*, 677 F.3d at 1359 ("The sameness of the accused products is not enough to establish that claims of infringement arise from the 'same transaction.'").  Rather, to support the joinder of claims against separate products in a single lawsuit, there must be actual, substantial factual overlap (*i.e.*, whether the factual investigation of the infringement of Party A would be substantially repeated in the factual investigation of the infringement of Party B).  Were the situation otherwise, vertical joinder would become the norm.  For example, joinder of handset makers, chip makers, and carriers in the same lawsuit would be permissible under the guise of a common phone network.  Such joinder, however, is not permissible.  *See*, *e.g.*, *Brandywine*, 2012 WL 572057, at *3 (severing case in similar circumstances).

Finally, the America Invents Act ("AIA") prevents such a result.  The AIA prohibits joining multiple defendants in a single case based solely upon allegations that they each have infringed a patent.  35 U.S.C. § 299.  That Retailer Defendants are used as proxies for the

- 12 -

manufacturers of the accused products cannot defeat the clear intent of the statute—to prevent patent allegations against multiple, different products from being combined in the same case.[24]

In sum, there is no substantial evidentiary overlap between the claims against the Nintendo products and the claims against the non-party products. *EMC*, Rules 20 and 21, and the AIA, therefore, require that that misjoined non-party product claims be severed from the claims against the Nintendo products.

**D.    Due To The Severe Prejudice And Juror Confusion That Would Otherwise Occur, The Case(s) Against The Retailer Defendants Involving The Non-Party Products Should Be Severed, And Once Severed, Dismissed Without Prejudice Or Stayed.**

If this case goes forward in its present form, the Retailer Defendants will suffer severe prejudice. They are not the real parties in interest and are without access to the technical documents and witnesses relating to the non-party products. Nintendo will also be severely prejudiced because it will be required to share limited trial time with numerous Retailer Defendants and/or other manufacturers who may become involved in the case. The Court and jury will be overwrought trying to hear a case involving potentially hundreds of thousands of infringement proofs (37,000+ combinations x 18 asserted claims just for the 496 case) that involve numerous third-party manufacturers. The AIA and severance law exist to prevent precisely these types of devastating practical consequences. *See Acevedo*, 600 F.3d at 521-22 (judicial economy not promoted by joining claims requiring different witnesses and documents).

The Federal Circuit recently decided how the courts should determine misjoinder in patent cases adopting an approach taken by other circuits. *In re EMC*, 677 F.3d at 1359 (misjoinder in patent cases a matter of Federal Circuit law). Employing that approach, district courts in the Ninth Circuit, for example, routinely dismiss misjoined defendants. *See, e.g.,*

---

[24] The AIA joinder provision was enacted to conform the law across the various jurisdictions—law that recognized that judicial economy and fairness are best served by severing such cases. *See* Sever/Transfer Motion in 571 case (Dkt. 9), at 6-8 (citing legislative history).

*Innovus Prime, LLC v. LG Elec., Inc.*, No. C 11-04223 JW, 2012 WL 161207, at *3 (N.D. Cal. Jan. 18, 2012). Judge Ware noted, "in considering the issue of misjoinder, the Court solely looks to the allegations in Plaintiff's operative complaint, and does not consider the speculative contentions in Plaintiff's moving papers suggesting that [Defendant] "may have" jointly infringed with other Defendants or induced other Defendants to infringe." *Id.* That guidance is applicable here because Plaintiff's Complaints focus on Nintendo products. There is no allegation that Nintendo worked in concert with unnamed manufactures to infringe the patent-in-suit. Similarly, in *WiAV Networks*, *LLC v. 3Com Corp.*, Judge Alsup dismissed all defendants but Hewlett-Packard because he found misjoinder even where the accused products implemented the same wireless standard. 2010 WL 3895047, at *2. Such analysis is applicable here as well. Just because the non-party products are allegedly compatible with the Nintendo Wii console does not mean they all function in the same manner. Dismissal of the misjoined Retailer Defendants is thus proper.

Plaintiff may seek to keep all 200 de facto defendants together in the same proceeding by arguing that judicial economy would be best served by consolidating the potential myriad of infringement suits for purposes of discovery and/or claim construction. But simultaneously working on so many claims and parties is not practical, and if attempted, would severely prejudice Nintendo, the Retailer Defendants, and the multitude of non-party manufacturers who would need to coordinate their responses and defenses to Plaintiff's claims. Thus, severance and dismissal of claims against non-Nintendo products remains the best option for moving this case forward.[25] If the Court is not inclined to dismiss the Retailer Defendants, Defendants request that the Court use its discretionary power to stay the Retailer Defendants pending the resolution of the suit against Nintendo. *See Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *Gould v.*

---

[25] *See*, *e.g.*, *Innovus*, 2012 WL 161207, at *3.

- 14 -

*Control Laser Corp.*, 705 F.2d 1279, 1340-41 (Fed. Cir. 1983) ("district courts have broad discretionary power to control their dockets"). Each of the three factors courts typically consider in determining whether to grant a stay,[26] weigh heavily in favor of a stay. First, a stay would not unduly prejudice Plaintiff. Rather, failure to grant a stay will unduly prejudice Nintendo and the Retailer Defendants which would have to litigate a 2,000-product case without access to technical information on most of the accused products. The likelihood of competing claim construction positions will also be greatly reduced. Second, permitting the case to first proceed against Nintendo will simplify the issues in dispute. The number of accused products will be reduced by approximately 90%, and the need for third-party discovery and/or third-party intervention will be drastically reduced. Indeed, it is difficult to envision trying this case in its present form as it would require infringement proof for thousands of products/combinations. Finally, the trial date is more than two years away. The parties have not yet produced documents and discovery has only just begun. Consequently, staying the Retailer Defendants meets all of the *Microlinc* factors and saves the Court, attorneys, and parties substantial resources.

## CONCLUSION

Defendants respectfully request that the Court sever allegations involving the non-party products from this action because the Retailer Defendants are misjoined. Defendants further request that the Court dismiss, or alternatively stay, the severed case(s) against the Retailer Defendants involving those products without prejudice.

---

[26] *See, e.g., Microlinc, LLC v. Intel Corp.*, No. 2:07-cv-488, 2010 WL 3766655, at *1 (E.D. Tex. Sept. 20, 2010).

- 15 -

A254

Dated:  August 3, 2012                    Respectfully submitted


By: /s/ Mark C. Nelson                          

Mark C. Nelson
Texas Bar No. 00794361
mark.nelson@snrdenton.com
Steven M. Geiszler
Texas Bar No. 24032227
steven.geiszler@snrdenton.com
SNR DENTON US, LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas   75201-1858
Telephone:  (214) 259-0900
Facsimile:   (214) 259-0910

Arthur S. Beeman (Lead Attorney)
Admitted *pro hac vice*
arthur.beeman@snrdenton.com
SNR DENTON US, LLP
525 Market Street, Suite 2600
San Francisco, California 94105-2708
Telephone:  (415) 882-0138
Facsimile:   (415) 882-0300


**Attorneys for Nintendo Co., LTD. (NCL); Nintendo of America Inc. (NOA); Best Buy Stores, L.P.; BestBuy.com, LLC; Best Buy Purchasing, LLC; BJ's Wholesale Club, Inc.; CompUSA.com Inc.; TigerDirect, Inc.; Dell Inc.; GameStop Corp.; PC Connection, Inc.; QVC, Inc.; Sears, Roebuck & Co.; Kmart Corporation; Target Corporation; Toys "R" Us-Delaware, Inc.; Trans World Entm't Corp.; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas, LLC; Sam's East, Inc.; and Sam's West, Inc.**

Trey Yarbrough
Texas Bar No. 22133500
trey@yw-lawfirm.com
Debby E. Gunter
Texas Bar No. 24012752
debby@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Telephone: (903) 595-3111
Facsimile: (903) 595-0191

**Attorneys for Nintendo Co., LTD. (NCL); Nintendo of America Inc. (NOA); Best Buy Stores, L.P.; BestBuy.com, LLC; Best Buy Purchasing, LLC; BJ's Wholesale Club, Inc.; CompUSA.com Inc.; TigerDirect, Inc.; Dell Inc.; GameStop Corp.; PC Connection, Inc.; QVC, Inc.; Sears, Roebuck & Co.; Kmart Corporation; Target Corporation; Toys "R" Us-Delaware, Inc.; Trans World Entm't Corp.**

Michael C. Smith
Texas Bar No. 18650410
michaelsmith@siebman.com
SIEBMAN BURG PHILLIPS & SMITH, LLP
P O Box 1556
Marshall, TX 75671-1556
Telephone: (903) 938-8900
Facsimile: (972) 767-4620

David E Finkelson
Virginia Bar No. 44059
dfinkelson@mcguirewoods.com
MCGUIREWOODS LLP
One James Center
901 E Cary St
Richmond, VA 23219
Telephone: (804) 775-1157
Facsimile: (804) 225-5377

**Attorneys for Defendants Wal-Mart Stores, Inc., Wal-Mart Stores Texas, L.L.C., Sam's East, Inc., and Sam's West, Inc.**

- 17 -

Dated:  August 3, 2012

Respectfully submitted

By: /s/ Christopher M. Joe w/permission
Christopher M Joe
Texas Bar No. 00787770
Buether Joe & Carpenter LLC
1700 Pacific Avenue
Suite 2390
Dallas, TX 75201
214/466-1272
Fax: 214/635-1828
Email: Chris.Joe@bjciplaw.com

**Attorney for RadioShack Corporation**

## CERTIFICATE OF CONFERENCE

Mark C. Nelson, counsel for Nintendo and all retailers except RadioShack, met and conferred with Thomas Warden, counsel for Plaintiff, on August 1, 2012.  Counsel for Plaintiff indicated that Plaintiff opposes this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2012 I electronically filed the foregoing Defendants' Motion To Sever And Transfer The Claims Against Nintendo And To Stay The Claims Against The Retailer Defendants with the Clerk of the Court by using the CM/ECF System, which will serve all counsel of record by notice of electronic filing pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5.2.

By: /s/ Mark C. Nelson
Mark C. Nelson

15021711\V-1

- 18 -

A257

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ULTIMATEPOINTER, L.L.C., | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO.  6:11-CV-00496-LED |
| vs. | § § | |
| NINTENDO CO., LTD. *et al*., | § § | |
| Defendants. | § § | JURY DEMANDED |

**UltimatePointer, L.L.C.'s Disclosure of Asserted Claims and Infringement Contentions
Pursuant to Patent Local Rule 3-1 and 3-2**

**I.    Patent Rule 3-1**

(a)    UltimatePointer contends that claims 5, 6, 12, 15, 19, 20, 23, 25, 27, 31, 32, 33, 34 ,

37, 44, 47, 51 and 52 of U.S. Patent No. 7,746,321 are infringed by each Defendant.

(b)    For the claims asserted as to Nintendo    Co. Ltd. and Nintendo of Amer ica, Inc.,

UltimatePointer contends that at least the following instrumentalities infringe:

| Asserted Claim | Accused Instrumentality |
|---|---|
| 5 | The combination of a Wii cons ole, a Nintendo sensor ba r, any contr oller identified on Exhibit B. |
| 6 | The combination of a Wii cons ole, a Nintendo sensor ba r, any contr oller identified on Exhibit B, and any game identified on Ex. G or H. |
| 12 | The combination of a Wii cons ole, a Nintendo sensor ba r, any contr oller identified on Exhibit B. |
| 15 | All controllers identified on Ex. B. |
| 19 | All controllers identified on Ex. B |
| 20 | All controllers identified on Ex. B |
| 23 | All controllers identified on Ex. D. |
| 25 | All controllers identified on Ex. B. |

| Asserted Claim | Accused Instrumentality |
|---|---|
| 27 | The combination of a Wii console, a Nintendo sensor bar, any controller identified on Exhibit B, and any game identified on Ex. G or H.<br><br>Depending on the Court's claim construction, then in addition, or in the alternative: All controllers identified on Ex. B. |
| 31 | The combination of a Wii console, a Nintendo sensor bar, any controller identified on Exhibit B, and any game identified on Ex. G or H.<br><br>Depending on the Court's claim construction, then in addition, or in the alternative: All controllers identified on Ex. B. |
| 32 | The combination of a Wii console, a Nintendo sensor bar, any controller identified on Exhibit B, and any game identified on Ex. H.<br><br>Depending on the Court's claim construction, then in addition, or in the alternative: All controllers identified on Ex. B. |
| 33 | The combination of a Wii console, a Nintendo sensor bar, any controller identified on Exhibit B, and any game identified on Ex. G or H.<br><br>Depending on the Court's claim construction, then in addition, or in the alternative: All controllers identified on Ex. B. |

| Asserted Claim | Accused Instrumentality |
|---|---|
| 34 | The combination of a Wii console, a Nintendo sensor bar, any controller identified on Exhibit B, and any game identified on Ex. H.<br><br>Depending on the Court's claim construction, then in addition, or in the alternative: All controllers identified on Ex. B. |
| 37 | The combination of a Wii console, a Nintendo sensor bar, any controller identified on Exhibit B, and any game identified on Ex. G or H.<br><br>Depending on the Court's claim construction, then in addition, or in the alternative: All controllers identified on Ex. B. |
| 44 | All Wii games listed on Ex. G or H. |
| 47 | All Wii games listed on Ex. F, G or H. |
| 51 | All Wii games listed on Ex. G or H. |
| 52 | All Wii games listed on Ex. H. |

Nintendo Co. Ltd. and/or Nintendo of America, Inc. making, using, selling, offering for sale and/or importing any of the instrumentalities identified above constitutes direct infringement. In addition, Nintendo Co. Ltd. and/or Nintendo of America, Inc. making, using, selling, offering for sale or importing any Wii console, any controller identified on Ex. B, any sensor bar, and/or any game identified on any of Ex. F-H is an indirect infringement as contributing to or inducing the direct infringement by the remaining Defendants, end users, and/or other purchasers.

For each of the claims asserted against each other Defendant, UltimatePointer contends that at least the following instrumentalities infringe:

| Asserted Claim | Accused Instrumentality |
|---|---|
| 5 | The combination of a Wii console, any controller identified on Exhibit A, any sensor bar identified on Ex. E. |
| 6 | The combination of a Wii console, any controller identified on Exhibit A, any sensor bar identified on Ex. E, and any game identified on Ex. G or H. |
| 12 | The combination of a Wii console, any controller identified on Exhibit A, any sensor bar identified on Ex. E. |
| 15 | All controllers identified on Ex. A. |
| 19 | All controllers identified on Ex. A |
| 20 | All controllers identified on Ex. A |
| 23 | All controllers identified on Ex. C. |
| 25 | All controllers identified on Ex. A. |
| 27 | The combination of a Wii console, any controller identified on Exhibit A, any sensor bar identified on Ex. E, and any game identified on Ex. G or H.<br><br>Depending on the Court's claim construction, then in addition, or in the alternative: All controllers identified on Ex. A. |

| Asserted Claim | Accused Instrumentality |
|:---:|:---|
| 31 | The combination of a Wii console, a ny controller identified on Exhibit A, any sensor bar identified on Ex. E, and any game identified on Ex. G or H.<br><br>Depending on the Court's clai m construction, then in addition, or i n the alternative: All controllers identified on Ex. A. |
| 32 | The combination of a Wii console, a ny controller identified on Exhibit A, any sensor bar identified on Ex. E, and any game identified on Ex. H.<br><br>Depending on the Court's clai m construction, then in addition, or i n the alternative: All controllers identified on Ex. A. |
| 33 | The combination of a Wii console, a ny controller identified on Exhibit A, any sensor bar identified on Ex. E, and any game identified on Ex. G or H.<br><br>Depending on the Court's clai m construction, then in addition, or i n the alternative: All controllers identified on Ex. A. |
| 34 | The combination of a Wii console, a ny controller identified on Exhibit A, any sensor bar identified on Ex. E, and any game identified on Ex. H.<br><br>Depending on the Court's clai m construction, then in addition, or i n the alternative: All controllers identified on Ex. A. |

| Asserted Claim | Accused Instrumentality |
|:---:|:---|
| 37 | The combination of a Wii console, a ny controller identified on Exhibit A, any sensor bar identified on Ex. E, and any game identified on Ex. G or H.<br><br>Depending on the Court's clai m construction, then in addition, or i n the alternative: All controllers identified on Ex. A. |
| 44 | All Wii games listed on Ex. G or H. |
| 47 | All Wii games listed on Ex. F, G or H. |
| 51 | All Wii games listed on Ex. G or H. |
| 52 | All Wii games listed on Ex. H. |

The making, using, selling, offering for sale and/or importing any of the i nstrumentalities identified above by the other De fendants (The De fendants other than Nintendo Co. Ltd. and/ or Nintendo of America, Inc.) constitutes direct infringement. In addition, the making, using, selling, offering for sale or importing by the other Defendants of any Wii console, any controller identified on Ex. A, a ny sensor bar identified on Ex. E, a nd/or any game identified on any of Ex. F- H is an indirect infringement as contributing to or inducing t he direct infringement by end users and/or other purchasers.

(c)    Claim charts providing the information required by Patent Rule 3-1(c) are attached as Exhibit I.

(d)     Presently, UltimatePointer believes and th us contends that all ele ments of each asserted claim are literally present in the accuse d instrumentalities; however, some of the clai m elements relate to non-public aspect s of the soft ware, firmware, processors and the like that are employed by De fendants. Ulti matePointer reserves the right to am end its contentions once discovery and disclosures related to these m atters are obtained from De fendants and third party manufacturers, such amendments including adding Doc trine of Equivalents c ontentions, if appropriate.

(e)     Each of the asserted cl aims of the '321 pate nt claims priority to U.S. Pr ovisional Patent Application number 60/575,671 and has a filing date of May 28, 2004. Each of the asserted claims has an invention date at least as early as October 29, 2003.

(f)     UltimatePointer has produced one or more appa ratus, products, devices, process , methods, acts, or other instrume ntalities that practice the clai med invention. The correlation between those items and the asserted claims is as follows:

| | Prototype | | | | | |
|---|---|---|---|---|---|---|
| '321 Patent Claim | 1 | 2 | 3 | 4 | 5 | 6 |
| 5 | | Yes | Yes | Yes | Yes | Yes |
| 6 | | Yes | Yes | Yes | Yes | Yes |
| 12 | | Yes | Yes | Yes | Yes | Yes |
| 15 | Yes | Yes | Yes | Yes | Yes | Yes |
| 19 | | Yes | Yes | Yes | Yes | Yes |
| 20 | | Yes | Yes | Yes | Yes | Yes |
| 23 | | | Yes | Yes | Yes | Yes |

| '321 Patent Claim | Prototype | | | | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 25 | | | | | | |
| 27 | Yes | Yes | Yes | Yes | Yes | Yes |
| 31 | | Yes | Yes | Yes | Yes | Yes |
| 32 | Yes | Yes | Yes | Yes | Yes | Yes |
| 33 | Yes | Yes | Yes | Yes | Yes | Yes |
| 34 | Yes | Yes | Yes | Yes | Yes | Yes |
| 37 | | Yes | Yes | Yes | Yes | Yes |
| 44 | Yes | Yes | Yes | Yes | Yes | Yes |
| 47 | Yes | Yes | Yes | Yes | Yes | Yes |
| 51 | | Yes | Yes | Yes | Yes | Yes |
| 52 | Yes | Yes | Yes | Yes | Yes | Yes |

Additional information regarding the foregoing Prototypes 1-6 is shown in Exhibit J.

## II.    Patent Rule 3-2

(a)    Documents identified by Patent Rule 3-2(a) are being produced with production numbers UP 000623 – 692 and UP 0100000 - 68023, and the non-stamped native electronic files included on the enclosed media.

(b)    Documents identified by Patent Rule 3-2(b) are being produced with production numbers UP 000623 – 692 and UP 0100000 - 68023, and the non-stamped native electronic files included on the enclosed media.

(c)    The file history for the patent-in suit is being produced with production numbers

UP 000001 – 622.

Respectfully submitted on this 8th day of June, 2012.

Gregory L. Maag, *Lead Attorney*
State Bar No. 12748500
gmaag@conleyrose.com
Charles J. Rogers
State Bar No. 00786205
crogers@conleyrose.com
Thomas L. Warden
State Bar No. 24004174
twarden@conleyrose.com
CONLEY ROSE, P.C.
1001 McKinney Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 238-8000
Facsimile:  (713) 238-8088

ATTORNEYS FOR PLAINTIFF AND
COUNTER-DEFENDANT
ULTIMATEPOINTER, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June 2012, the foregoing ***UltimatePointer, L.L.C.'s Disclosures Under Patent Local Rule 3-1 and 3-2*** was served on all counsel of record by electronic mail.

Gregory L. Maag

**Exhibit A**

**UltimatePointer, L.L.C.'s Disclosures
Under Patent Local Rule 3-1 and 3-2**

**EXHIBIT A**

**ACCUSED CONTROLLERS**

| Manufacturer | Description |
|---|---|
| ACC | Wii Afterglow Remote<br><br>Wii Icon Kids Remote |
| AGPtek | Gaming Accessory Kit (includes controller for Wii) |
| Bensussen-Deutsch | Wii Lego Play & Build Remote |
| BD&A | Pro Pack Mini Plus for Nintendo Wii<br><br>Wii Lego Play & Build Remote |
| DreamGear | DGWii 3140 Gaming Pad<br><br>DGWii 3112 Gaming Pad<br><br>DGWii 3141 Gaming Pad<br><br>DGWii 3140 Action Remote Controller Plus with Motion Sense Technology<br><br>DGWii 3141 Action Remote Controller Plus with Motion Sense Technology<br><br>DGWii 3146 Action Remote Controller Plus with Motion Sense Technology<br><br>DGWii 3147 Action Pack Plus with Motion Sense Technology<br><br>Action Remote Controller<br><br>Action Remote Controller Plus<br><br>Action Pack Plus with Motion Sense Technology<br><br>Wii Action Remote<br><br>Wii Action Remote with Built in Motion Plus |

| Manufacturer | Description |
|---|---|
| Game On | Minii Mo Remote |
| Hip Street | Wii Hip Street Wireless Remote |
| i-Con by ASD | Nintendo Wii Kid-Friendly Remote<br><br>Wii Remote Pack |
| Intec | Wave Gaming Pad<br><br>Wave Plus Gaming Pad<br><br>Wave Controller<br><br>Wave Plus Controller<br><br>G5701 Wave Plus Controller<br><br>G5759 Wave Plus Controller<br><br>Wii Wave Remote |
| Mad Catz | Wireless Remote for Nintendo Wii<br><br>Wii Call of Duty: Black Ops Controller Pack |
| Nintendo | Wii Remote<br><br>Wii Remote Plus<br><br>Wii Motion Plus<br><br>Wii Mini Remote (as bundled in Wii Pro Pack)<br><br>Wiimote<br><br>Wii Remote with Motion Plus Plug In<br><br>Wii Motion Color Plus Remote<br><br>Wii Color Plus Remote |

| Manufacturer | Description |
|---|---|
| Nyko Technologies | Wand |
| | Wand+ |
| | Wand Plus |
| | Wii Wand |
| | Wii Wand Plus |
| | Wii Wand+ |
| | 87074 Nintendo Wii Wand |
| | 87100 Wand + Gaming Pad |
| | 87091 Wand Gaming Pad |
| | 87079 Wii Wand Core Pak – Wand Controller |
| | 87091 Wireless Motion Sensing Wand for Nintendo Wii Featuring Trans-Port Technology |
| | 87096 Wireless Motion Sensing Wand for Nintendo Wii Featuring Trans-Port Technology |
| | Wii Wand Motion Sensing Controller |
| Pelican | Afterglow AW.1 Controller for Nintendo Wii |
| Performance Designed Products (PDP) | Afterglow Deluxe Controller for Nintendo Wii |
| | Afterglow AW.1 Remote |
| | TRON Remote Controller for Nintendo Wii |

| Manufacturer | Description |
|---|---|
| Power A | Wii Mini Remote Plus

Lego Remote

Lego Play and Build Remote for Nintendo Wii

Pro Pack Mini

Pro Pack Mini Plus |
| Shinobii | X cross Remote |
| Snakebyte | Wii MiniMote

Wii Gaming Pad

Wii Premium Remote XL+ |
| Unknown | xRemote Controller Built-In Motionplus for Wii (offered by Sears)

RVLAWRBA Wii Remote Plus Controller |
| Wiix Play | Wii X-Mote Remote Controller |

**Exhibit B**

**UltimatePointer, L.L.C.'s Disclosures
Under Patent Local Rule 3-1 and 3-2**

**EXHIBIT B**

**ACCUSED NINTENDO CONTROLLERS**

| Manufacturer | Description |
|---|---|
| Nintendo | Wii Remote |
| | Wii Remote Plus |
| | Wii Motion Plus |
| | Wii Mini Remote (as bundled in Wii Pro Pack) |
| | Wiimote |
| | Wii Remote with Motion Plus Plug In |
| | Wii Motion Color Plus Remote |
| | Wii Color Plus Remote |

**Exhibit C**

**UltimatePointer, L.L.C.'s Disclosures
Under Patent Local Rule 3-1 and 3-2**

**EXHIBIT C**

**ACCUSED CONTROLLERS WITH GYROSCOPE**

| Manufacturer | Description |
|---|---|
| Any | Any controller in combination with a Nintendo Wii Motion Plus Plug In |
| BD&A | Pro Pack Mini Plus for Nintendo Wii |
| DreamGear | DGWii 3140 Action Remote Controller Plus with Motion Sense Technology |
| | DGWii 3141 Action Remote Controller Plus with Motion Sense Technology |
| | DGWii 3146 Action Remote Controller Plus with Motion Sense Technology |
| | DGWii 3147 Action Pack Plus with Motion Sense Technology |
| | Action Remote Controller Plus |
| | Action Pack Plus with Motion Sense Technology |
| | Wii Action Remote with Built in Motion Plus |
| Intec | Wave Plus Gaming Pad |
| | Wave Plus Controller |
| | G5701 Wave Plus Controller |
| | G5759 Wave Plus Controller |
| Nintendo | Wii Remote Plus |
| | Wii Remote with Motion Plus Plug In |
| | Wii Motion Color Plus Remote |
| | Wii Color Plus Remote |

-1-

A277

| Nyko Technologies | Wand+ |
| --- | --- |
| | Wand Plus |
| | Wii Wand Plus |
| | Wii Wand+ |
| | 87100 Wand + Gaming Pad |
| | 87091 Wireless Motion Sensing Wand for Nintendo Wii Featuring Trans-Port Technology |
| | 87096 Wireless Motion Sensing Wand for Nintendo Wii Featuring Trans-Port Technology |
| | Wii Wand Motion Sensing Controller |
| Power A | Wii Mini Remote Plus |
| | Pro Pack Mini Plus |
| Snakebyte | Wii Premium Remote XL+ |
| Unknown | xRemote Controller Built-In Motionplus for Wii (offered by Sears) |
| | RVLAWRBA Wii Remote Plus Controller |

**Exhibit D**

**UltimatePointer, L.L.C.'s Disclosures
Under Patent Local Rule 3-1 and 3-2**

**EXHIBIT D**

**ACCUSED NINTENDO CONTROLLERS WITH GYROSCOPE**

| Manufacturer | Description |
|---|---|
| Nintendo | Wii Remote Plus<br><br>Wii Remote with Motion Plus Plug In<br><br>Wii Motion Color Plus Remote<br><br>Wii Color Plus Remote |

A280

**Exhibit E**

**UltimatePointer, L.L.C.'s Disclosures
Under Patent Local Rule 3-1 and 3-2**

**EXHIBIT E**

**ACCUSED SENSOR BAR**

| Manufacturer | Description |
|---|---|
| BD&A | Wii Ultra Wireless Sensor Bar |
| | Wii Ultra Sensor Bar |
| | Wii Wireless Ultra Sensor Bar |
| CET | Nintendo Wii Compatible Wireless Sensor Bar |
| | Nintendo Wii Compatible Wired Sensor Bar |
| | Nintendo Wii Compatible Wireless Folding Sensor Bar with Revolving Stand |
| DreamGear | DGWii 1066 Wireless Sensor Bar |
| | Wireless Sensor Swivel Bar Nintendo Wii Infrared Signal Distance over 8 Feet |
| | Wireless Sensor Swivel Bar for Nintendo Wii |
| | Wii Wireless Sensor Bar |
| | Wireless Sensor Swivel Bar (Wii) |
| eForCity | Wireless Sensor Bar for Nintendo Wii |
| | Wired Sensor Bar for Nintendo Wii |
| | Wireless Ray Sensor Bar |
| | New Wireless Ray Sensor Bar for Nintendo Wii Remote |
| | Wireless Infrared Ray Sensor Bar |
| Game On | Wireless Sensor Bar for Nintendo Wii |

| Manufacturer | Description |
|---|---|
| Intec | G5611 Nintendo Wii Wireless Sensor Bar<br><br>Wireless Sensor Bar (Wii)<br><br>Wireless Sensor Bar for Wii<br><br>Wii Wireless Sensor Bar |
| MCM | Nintendo Wii Replacement Wireless Sensor Bar |
| Memorex | Nintendo Wii Extended-range Wireless Sensor Bar<br><br>98311 Nintendo Wii Extended-range Wireless Sensor Bar<br><br>Wii Wireless Sensor bar |
| Nintendo | Wii Sensor Bar |
| Nyko | Wireless Sensor Bar for Nintendo Wii<br><br>Wii Wireless Sensor Bar |
| Power A | Wii Sensor Bar<br><br>Ultra Wireless Sensor Bar for Nintendo Wii<br><br>Wii Ultra Sensor Bar<br><br>Wii Ultra Wireless Sensor Bar<br><br>Wireless Ultra Sensor Bar Wii<br><br>Nintendo Wii Ultra Sensor Bar with Extended Play Range<br><br>Nintendo Wireless Ultra Sensor Bar for Wii |
| Rocketfish | Wireless Sensor for Nintendo Wii |
| Sunvalley | Wireless/Cordless Infrared Sensor Bar for Nintendo Wii with Timer Function |

| Manufacturer | Description |
|---|---|
| Unknown | Wii Compatible Wireless Folding Sensor Bar with Revolving Stand GDF00058<br><br>Wii Compatible Wired Sensor Bar GDF00059<br><br>Wii Compatible Wireless Sensor Bar GDF00060<br><br>Wired Infrared Sensor Bar for Nintendo Wii Remote Controller OT011-BL<br><br>OEM Wireless Ultra Sensor Bar Wii Model: 617885959141 |

**Exhibit F**

**UltimatePointer, L.L.C.'s Disclosures
Under Patent Local Rule 3-1 and 3-2**

**EXHIBIT F**

The following are the Wii games described by Nintendo as having been released as of May 30, 2012.

| Title | Publisher |
|---|---|
| 1942 | Capcom |
| "Aha! I Found it!" Hidden Object Game | Ateam Inc |
| "Aha! I Got It!" Escape Game | Ateam Inc |
| $1,000,000 Pyramid, The | Ubisoft |
| 10 Minute Solution | Activision |
| 101-in-1 Explosive Megamix | Nordcurrent |
| 101-in-1 Party Megamix | Atlus |
| 101-in-1 Sports Party Megamix | Atlus |
| 1080° Snowboarding | Nintendo |
| 2 Fast 4 Gnomz | QubicGames |
| 2010 FIFA World Cup South Africa | Electronic Arts |
| 3-2-1, Rattle Battle! | Tecmo |
| 3D Pixel Racing | Microforum |
| 5 Arcade Gems | Nordcurrent |
| 5 in 1 Solitaire | Digital Leisure |
| 5 Spots Party | Cosmonaut Games |
| A Boy and His Blob: Trouble on Blobolonia | Majesco Sales Inc. |
| A Monsteca Coral: Monsters vs. Robots | Onteca |
| ABBA You Can Dance | Ubisoft |
| AC/DC Live: Rock Band Track Pack | Electronic Arts |
| Academy of Champions | Ubisoft |
| Action Girlz Racing | Conspiracy |

| Title | Publisher |
|---|---|
| Active Life: Explorer | NAMCO BANDAI Games America Inc. |
| Active Life: Extreme Challenge | NAMCO BANDAI Games America Inc. |
| Active Life: Magical Carnival | NAMCO BANDAI Games America Inc. |
| Active Life: Outdoor Challenge | NAMCO BANDAI Games America Inc. |
| ActRaiser | Square Enix |
| Adventure Island | Hudson Entertainment, Inc. |
| Adventure Island: The Beginning | Hudson Entertainment, Inc. |
| Adventure on LOST ISLAND - Hidden Object Game | Ateam Inc |
| ADVENTURES OF LOLO | HAL Laboratory, Inc. |
| Adventures of Lolo 2 | HAL Laboratory, Inc. |
| Adventures of Tintin: The Game | Ubisoft |
| Aero the Acrobat 2 | Sunsoft |
| Agatha Christie: And Then There Were None | Dreamcatcher |
| Agatha Christie: Evil Under the Sun | Dreamcatcher |
| Air "Zonk" | Hudson Entertainment, Inc. |
| Airport Mania: First Flight | Lemon Games |
| Aladdin Magic Racer | Crave Entertainment |
| Alex Kidd in Miracle World | Sega |
| Alex Kidd in Shinobi World | Sega |
| Alex Kidd in the Enchanted Castle | Sega |
| Alex Kidd: The Lost Stars | Sega |
| Alice in Wonderland | Disney Interactive |
| Alien Crush | Hudson Entertainment, Inc. |
| Alien Crush Returns | Hudson Entertainment, Inc. |
| Alien Monster Bowling League | Destineer |

| Title | Publisher |
|---|---|
| Alien Racing | Zoo Games |
| Alien Soldier | Sega |
| Alien Storm | Sega |
| Alien Syndrome | Sega |
| Aliens in the Attic | Playlogic Entertainment |
| All Around Hunter | 505 Games |
| All Star Cheer Squad | THQ |
| All Star Cheer Squad 2 | THQ |
| All Star Karate | THQ |
| Alone in the Dark | Atari |
| Altered Beast | Sega |
| Altered Beast | Sega |
| Alvin and the Chipmunks | Brash Entertainment |
| Alvin and the Chipmunks: Chipwrecked | Majesco Sales Inc. |
| Alvin and the Chipmunks: The Squeakquel | Majesco Sales Inc. |
| Amazing Brain Train!, The | Wahoo Studios |
| Amazing Race | Ubisoft |
| Amazing Spider-Man | Activision |
| American Pool Deluxe | Gamecock Media Group |
| America's Next Top Model | Conspiracy |
| AMF Bowling: Pinbusters | Mud Duck Productions |
| AMF Bowling: World Lanes | Mud Duck Productions |
| And Yet It Moves | Broken Rules |
| Anima: Ark of Sinners | Anima Game Studio |
| Animal Crossing: City Folk | Nintendo |
| Animal Kingdom: Wildlife Expedition | Natsume |

| Title | Publisher |
|---|---|
| Animal Planet Vet Life | Activision |
| Ant Bully, The | Midway Home Entertainment |
| Ant Nation | Konami |
| Anubis II | Conspiracy |
| Aqua Panic! | XS Games |
| AquaSpace | Nintendo |
| Arc Rise: Fantasia | Ignition |
| Arcade Essentials | Nordcurrent |
| Arcade Shooter: Ilvelo | UFO |
| Arcade Shooting Gallery | Zoo Games |
| Arcade Sports | Icon Games |
| Arcade Zone | Activision |
| Arctic Tale | Destination Software |
| Are You Smarter Than a Fifth Grader: Back to School | THQ |
| Are You Smarter Than a Fifth Grader: Game Time | THQ |
| Are You Smarter Than a Fifth Grader: Make the Grade | THQ |
| Areo the Acrobat | Sunsoft |
| Arkanoid Plus! | Taito |
| Army Men: Soldiers of Misfortune | Zoo Games |
| Army Rescue | UFO |
| Around the World | Wizarbox |
| Around the World in 50 Games | Zoo Games |
| Art of Balance | Shin'en Multimedia |
| ART OF FIGHTING | D4 Enterprise |

| Title | Publisher |
|---|---|
| Art of Fighting 2 | SNK |
| Art of Murder | City Interactive |
| Art Style: CUBELLO | Nintendo |
| Art Style: light trax | Nintendo |
| Art Style: ORBIENT | Nintendo |
| Art Style: ROTOHEX | Nintendo |
| Art Style: Rotozoa | Nintendo |
| Arthur and the Revenge of Maltazar | Ubisoft |
| Astro Boy: The Video Game | D3Publisher of America |
| Astro Bugz Revenge | Sudden Games |
| Atrevete A Sonar | Gamexpress Latin America |
| Attack of the Movies 3D | Majesco Sales Inc. |
| ATV: Quad Kings | Zoo Games |
| Avatar: The Last Airbender | THQ |
| Avatar: The Last Airbender - Into the Inferno | THQ |
| Avatar: The Last Airbender - The Burning Earth | THQ |
| AXELAY | Konami |
| Aya and the Cubes of Light | Object Vision Software |
| Babysitting Mama | Majesco Sales Inc. |
| Bachelor, The: The Videogame | Warner Bros. Interactive Entertainment |
| Back to the Future: The Game | Telltale |
| Backyard Baseball '10 | Atari |
| Backyard Baseball 2009 | Atari |
| Backyard Football | Atari |
| Backyard Football 2009 | Atari |

| Title | Publisher |
|---|---|
| Backyard Football 2010 | Atari |
| Backyard Sports: Rookie Rush | Atari |
| Backyard Sports: Sandlot Sluggers | Atari |
| Bakugan Battle Brawlers | Activision |
| Bakugan Battle Brawlers - Defenders of the Core | Activision |
| Balloon Fight | Nintendo |
| Balloon Pop | UFO |
| Balloon Pop Festival | UFO |
| Balls of Fury | Destination Software |
| Band Hero | Activision |
| Bang Attack | Engine Software |
| Barbie and the Three Musketeers | Activision |
| Barbie Groom and Glam Pups | THQ |
| Barbie Horse Adventures: Riding Camp | Activision |
| Barbie Jet, Set, & Style | THQ |
| Barbie: Island Princess | Activision |
| Barnyard | THQ |
| Baroque | Atlus |
| Baseball | Nintendo |
| Baseball Blast | 2K Sports |
| Baseball Stars 2 | D4 Enterprise |
| Bases Loaded | Jaleco |
| Basketball Hall of Fame: Ultimate Hoops Challenge | Zoo Games |
| Bass Pro Shops: The Hunt | XSEED Games |

| Title | Publisher |
|-------|-----------|
| Bass Pro Shops: The Hunt - Trophy Showdown | XSEED Games |
| Bass Pro Shops: The Strike | XSEED Games |
| Bass Pro Shops: The Strike - Tournament Edition | XSEED Games |
| Batman: The Brave and the Bold | Warner Bros. Interactive Entertainment |
| Battalion Wars 2 | Nintendo |
| Battle Lode Runner | Hudson Entertainment, Inc. |
| Battle of Giants: Dinosaurs Strike | Ubisoft |
| Battle of the Bands | THQ |
| Battle Poker | Left Field Productions |
| Battle Rage | Destineer |
| Battle vs Chess | South Peak Interactive |
| Battleship | Activision |
| Beach Fun: Summer Challenge | Zoo Games |
| Beastly | Storm City Games |
| Bee Movie Game | Activision |
| Bejeweled 2 | PopCap Games |
| Ben 10 Alien Force: The Rise of Hex | Konami |
| Ben 10: Alien Force | D3Publisher of America |
| Ben 10: Alien Force - Vilgax Attacks | D3Publisher of America |
| Ben 10: Galactic Racing | D3Publisher of America |
| Ben 10: Protector of Earth | D3Publisher of America |
| Ben 10: Ultimate Alien: Cosmic Destruction | D3Publisher of America |
| Bermuda Triangle: Saving the Coral | Storm City Games |
| Beyblade: Metal Fusion - Metal Fortress | Hudson Entertainment, Inc. |

| Title | Publisher |
|---|---|
| Beyond Oasis | Sega |
| Big Bass Arcade | Reverb Communications |
| Big Beach Sports | THQ |
| Big Beach Sports 2 | THQ |
| Big Brain Academy: Wii Degree | Nintendo |
| Big Buck Hunter Pro | Crave Entertainment |
| Big Kahuna Party | Reflexive Entertainment, Inc. |
| Big League Sports | Activision Blizzard |
| Big League Sports: Summer Sports | Activision |
| Big Town Shootout | Performance Designed Products |
| BIGFOOT: Collision Course | Zoo Games |
| Bigfoot: King of Crush | Zoo Games |
| Biggest Loser Challenge, The | THQ |
| Biggest Loser, The | THQ |
| BIGS 2, The | 2K Sports |
| BIGS, The | 2K Games |
| Billy the Wizard | Conspiracy |
| BINGO PARTY Deluxe | Ateam Inc |
| Bio Miracle Bokutte Upa | Konami |
| Bio-Hazard Battle | Sega |
| Bionicle Heroes | Eidos Interactive |
| Birthday Party Bash | Take 2 Interactive Software |
| Bit Boy | Bplus |
| BIT.TRIP BEAT | Aksys Games |
| BIT.TRIP Complete | Aksys Games |
| BIT.TRIP CORE | Aksys Games |

| Title | Publisher |
|---|---|
| BIT.TRIP RUNNER | Aksys Games |
| BIT.TRIP VOID | Aksys Games |
| BIT.TRIP.FATE | Aksys Games |
| BIT.TRIP.FLUX | Aksys Games |
| bittos+ | Machine |
| Black Eyed Peas: Experience | Ubisoft |
| Black Tiger | Capcom |
| Blades of Steel | Konami |
| Blast Works: Build, Trade, Destroy | Majesco Sales Inc. |
| Blaster Master | Sunsoft |
| Blaster Master Overdrive | Sunsoft |
| Blazing Angels: Squadrons of WWII | Ubisoft |
| Blazing Lazers | Hudson Entertainment, Inc. |
| Bleach: Shattered Blade | Sega |
| Block Breaker Deluxe | Gameloft |
| Block Party | Activision |
| Blood Beach | Coresoft |
| Bloody Wolf | G-Mode |
| Bloons | Hands-On Mobile |
| BLUE'S JOURNEY | D4 Enterprise |
| Bobby Carrot Forever | FDG Entertainment |
| Boingz | RealArcade |
| Bolt | Disney Interactive |
| Bomberman '93 | Hudson Entertainment, Inc. |
| Bomberman '94 | Hudson Entertainment, Inc. |
| Bomberman Blast | Hudson Entertainment, Inc. |

A294

| Title | Publisher |
|---|---|
| Bomberman Hero | Square Enix |
| Bomberman Land | Hudson Entertainment, Inc. |
| Bonanza Bros. | Sega |
| Bonk 3: Bonk's Big Adventure | Hudson Entertainment, Inc. |
| Bonk's Adventure | Hudson Entertainment, Inc. |
| Bonk's Revenge | Hudson Entertainment, Inc. |
| Bonsai Barber | Nintendo |
| Boogerman: A Pick and Flick Adventure | Sega |
| Boogie | Electronic Arts |
| Boogie Superstar | Electronic Arts |
| Boom Blox | Electronic Arts |
| Boom Blox Bash Party | Electronic Arts |
| Boot Camp Academy | Zoo Games |
| Boulder Dash | Commodore Gaming |
| Boy and His Blob, A | Majesco Sales Inc. |
| Brain Challenge | Gameloft |
| Brain Drain | Enjoy Gaming |
| Bratz Girlz Really Rock | THQ |
| Bratz Kidz: Slumber Party | The American Game Factory |
| Bratz: The Movie | THQ |
| Brave: A Warrior's Tale | South Peak Interactive |
| Bravoman | Hudson Entertainment, Inc. |
| Brawl Brothers | Jaleco |
| Break In | Hudson Entertainment, Inc. |
| Breath of Fire II | Capcom |

| Title | Publisher |
|---|---|
| Broken Sword: Shadow of the Templars - Director's Cut | Ubisoft |
| Brothers in Arms: Double Time | Ubisoft |
| Bruiser & Scratch | Steel Penny Games, Inc. |
| Brunswick Cosmic Bowling | Gamemill Entertainment |
| Brunswick Pro Bowling | Crave Entertainment |
| Bubble Bobble | Taito |
| Bubble Bobble Plus | Taito |
| Buck Fever | Destineer |
| Build N Race | Zoo Games |
| Build-A-Bear Workshop: A Friend Fur All Seasons | The American Game Factory |
| Build-A-Bear Workshop: Friendship Valley | Activision |
| Bully: Scholarship Edition | Rockstar Games |
| B-Units: Build It! | 505 Games |
| Burger Bot | Virtual Play Games |
| Burger Island | Destineer |
| BurgerTime World Tour | MonkeyPaw Games |
| Burn the Rope | Big Blue Bubble Inc. |
| Burning Fight | SNK |
| Bust-A-Move Bash! | Majesco Sales Inc. |
| BUST-A-MOVE PLUS! | Taito |
| Busy Scissors | Little Orbit |
| Cabela's Adventure Camp | Activision |
| Cabela's Big Game Hunter 2008 | Activision |
| Cabela's Big Game Hunter 2010 | Activision |

| Title | Publisher |
|---|---|
| Cabela's Big Game Hunter 2012 | Activision |
| Cabela's Dangerous Hunts 2009 | Activision |
| Cabela's Dangerous Hunts 2011 | Activision |
| Cabela's Legendary Adventures | Activision |
| Cabela's Monster Buck Hunter | Activision |
| Cabela's North American Adventure | Activision |
| Cabela's Outdoor Adventures | Activision |
| Cabela's Survival: Shadows of Katmai | Activision |
| Cabela's Trophy Bucks | Activision |
| Cages Pro Style Batting Practice | Konami |
| Cake Mania: In the Mix! | Majesco Sales Inc. |
| California Games | Commodore Gaming |
| California Sports | Destineer |
| Call of Duty 3 | Activision |
| Call of Duty 4: Modern Warfare Reflex | Activision |
| Call of Duty: Black Ops | Activision |
| Call of Duty: Modern Warfare 3 | Activision |
| Call of Duty: World at War | Activision |
| Calling | Hudson Entertainment, Inc. |
| Calvin Tucker's Redneck Farm Animal Racing Tournament | Zoo Games |
| Calvin Tucker's Redneck Jamboree | Zoo Games |
| Camaro: Wild Ride | Storm City Games |
| Canada Hunt | Virtual Play Games |
| Candace Kane's Candy Factory | Destineer |
| Captain America: Super Soldier | Sega |

| Title | Publisher |
|---|---|
| Carmen Sandiego Math Adventures: The Big Ben Burglary | Learning Company |
| Carmen Sandiego Math Adventures: The Case of the Crumbling Cathedral | Learning Company |
| Carmen Sandiego Math Adventures: The Great Gateway Grab | Learning Company |
| Carmen Sandiego Math Adventures: The Lady Liberty Larceny | Learning Company |
| Carmen Sandiego: Adventures in Math - The Island of Diamonds | Learning Company |
| Carnival Games | Global Star Software |
| Carnival Games: MiniGolf | Take 2 Interactive Software |
| Carnival King | Incredible Technologies |
| Cars 2: The Video Game | Disney Interactive |
| Cars Mater-National | THQ |
| Cars Toon: Mater's Tall Tales | Disney Interactive |
| Cars: Race-O-Rama | THQ |
| Cartoon Network Punch Time Explosion | Crave Entertainment |
| Casper's Scare School: Spooky Sports Day | Crave Entertainment |
| Castle of Shikigami III | Aksys Games |
| Castlevania | Konami |
| Castlevania II Simon's Quest | Konami |
| Castlevania III: Dracula's Curse | Konami |
| Castlevania: Judgment | Konami |
| Castlevania: Rondo of Blood | Konami |
| Castlevania: The Adventure Rebirth | Konami |
| Cate West: The Vanishing Files | Destineer |
| Cave Story | Nicalis |

| Title | Publisher |
|---|---|
| Celebrity Sports Showdown | Electronic Arts |
| Centipede: Infestation | Atari |
| Challenge Me: Brain Puzzles 2 | Oxygen Games |
| Challenge Me: Word Puzzles | Oxygen Games |
| Champion Jockey: G1 Jockey & Gallop Racer | Tecmo Koei |
| Championship Foosball | 505 Games |
| Chaotic: Shadow Warriors | Activision |
| CHARM GIRLS CLUB Pajama Party | Electronic Arts |
| Chase H.Q. | Hudson Entertainment, Inc. |
| Chess Challenge! | Digital Leisure |
| Chess Crusade | Destination Software |
| Chew Man Fu | Hudson Entertainment, Inc. |
| chick chick BOOM | tons of bits |
| Chicken Blaster | Zoo Games |
| Chicken Riot | City Interactive |
| Chicken Shoot | Destination Software |
| China Warrior | Hudson Entertainment, Inc. |
| Cho Aniki | Hudson Entertainment, Inc. |
| Christmas Clix | JV Games Inc |
| Chronicles of Narnia, The: Prince Caspian | Buena Vista Interactive |
| Chrono Trigger | Square Enix |
| Chronos Twins DX | EnjoyUp Games |
| Chrysler Classic Racing | Destination Software |
| Chuck E Cheese Kart Racing | UFO |
| Chuck E Cheese Party Games | UFO |
| Chuck E Cheese Sports Games | UFO |

| Title | Publisher |
|---|---|
| Chuck E Cheese's Super Collection | UFO |
| CID the Dummy | Oxygen Games |
| Circle, The: Martial Arts Fighter | Destineer |
| Circus Games | Ubisoft |
| City Builder | Tomy Corporation |
| City Connection | Jaleco |
| Classic British Motor Racing | Destineer |
| Clay Fighter | Interplay |
| Cloudy with a Chance of Meatballs | Ubisoft |
| Clu Clu Land | Nintendo |
| Cocoto Fishing Master | Neko Entertainment |
| Cocoto Kart Racer | Conspiracy |
| Cocoto Magic Circus | Conspiracy |
| Cocoto Platform Jumper | Neko Entertainment |
| Code Lyoko: Quest for Infinity | The American Game Factory |
| Cold Stone Creamery: Scoop It Up | Zoo Games |
| ColorZ | Exkee |
| Columns | Sega |
| Columns III: Revenge of Columns | Sega |
| Combat Wings: The Great Battles of WWII | City Interactive |
| Combatribes, The | Aksys Games |
| Comix Zone | Sega |
| Conduit 2, The | Sega |
| Conduit, The | High Voltage Software, Inc. |
| Contra III: The Alien Wars | Konami |
| Contra Rebirth | Konami |

-15-

A300

| Title | Publisher |
|---|---|
| Cook Wars | Ubisoft |
| Cooking Mama: Cook Off | Majesco Sales Inc. |
| Cooking Mama: World Kitchen | Majesco Sales Inc. |
| Copter Crisis | Digital Leisure |
| Coraline | D3Publisher of America |
| Cosmic Family | Ubisoft |
| Counter Force | Conspiracy |
| Country Dance | Gamemill Entertainment |
| Country Dance 2 | Gamemill Entertainment |
| Country Dance Special Edition | Gamemill Entertainment |
| Cozy Fire | dtp entertainment AG |
| Cranium Kabookii | Ubisoft |
| Crash Bandicoot: Mind Over Mutant | Activision Blizzard |
| Crash Car Racer | Maximum Family Games |
| Crash N the Boys Street Challenge | Aksys Games |
| Crash of the Titans | Vivendi Games |
| Cratermaze | Hudson Entertainment, Inc. |
| Crayola Colorful Journey | Crave Entertainment |
| Crazy Chicken Tales | Conspiracy |
| Crazy Garage | Playlogic Entertainment |
| Crazy Machines | Mentor Interactive |
| Crazy Mini Golf 2 | XS Games |
| Create | Electronic Arts |
| Critter Round-Up | Konami |
| Cruise Party | Enjoy Gaming |
| Cruise Ship Vacation Games | Activision |

A301

| Title | Publisher |
|---|---|
| Cruis'n | Midway Home Entertainment |
| Cruis'n USA | Nintendo |
| Crystal Defenders R1 | Square Enix |
| Crystal Defenders R2 | Square Enix |
| CSI: Deadly Intent | Ubisoft |
| CSI: Fatal Conspiracy | Ubisoft |
| CSI: Hard Evidence | Ubisoft |
| CueSports - Pool Revolution | Hudson Entertainment, Inc. |
| Cursed Mountain | Deep Silver |
| Cyberbike Cycling Sports | Agetec |
| Cybernator | Hudson Entertainment, Inc. |
| Cybernoid | Commodore Gaming |
| Daisy Fuentes Pilates | Sega |
| Dance Dance Revolution | Konami |
| Dance Dance Revolution: Disney Grooves | Konami |
| Dance on Broadway | Ubisoft |
| Dance Sensation! | Majesco Sales Inc. |
| Dance! It's Your Stage | Conspiracy |
| DanceDanceRevolution Hottest Party | Konami |
| DanceDanceRevolution Hottest Party 2 | Konami |
| DanceDanceRevolution Hottest Party 3 | Konami |
| DanceDanceRevolution II | Konami |
| Dancing with the Stars | Activision |
| Dancing with the Stars: We Dance! | Activision |
| Daring Game for Girls, The | Majesco Sales Inc. |
| Darius Twin | Taito |

A302

| Title | Publisher |
|-------|-----------|
| Dart Rage | JV Games Inc |
| Data East Arcade Classics | Majesco Sales Inc. |
| Dave Mirra BMX Challenge | Crave Entertainment |
| Dawn of Discovery | Ubisoft |
| de Blob | THQ |
| de Blob 2: The Underground | THQ |
| Dead Moon | Natsume |
| Dead Rising: Chop Till You Drop | Capcom |
| Dead Space Extraction | Electronic Arts |
| Deadliest Catch: Sea of Chaos | Crave Entertainment |
| Deadly Creatures | THQ |
| Deal or No Deal | Zoo Games |
| Deal or No Deal: Anniversary Edition | Zoo Games |
| Death Jr.: Root of Evil | Eidos Interactive |
| Deca Sports | Hudson Entertainment, Inc. |
| Deca Sports 2 | Hudson Entertainment, Inc. |
| Deca Sports 3 | Hudson Entertainment, Inc. |
| Deepak Chopra's Leela | THQ |
| Deer Captor | Aksys Games |
| Deer Drive | Mastiff |
| Def Jam Rapstar | Konami |
| Defend Your Castle | XGen Studios |
| Defendin' De Penguin | Crave Entertainment |
| Derby Dogs | Aksys Games |
| Despicable Me | D3Publisher of America |
| Destiny of Zorro, The | 505 Games |

| Title | Publisher |
|---|---|
| Destroy All Humans! Big Willy Unleashed | THQ |
| Detana Twin Bee | Konami |
| Devil's Crush | Hudson Entertainment, Inc. |
| Dewy's Adventure | Konami |
| Diatomic | Grendel Games |
| Dig Dug | NAMCO BANDAI Games America Inc. |
| Digital Champ Battle Boxing | Hudson Entertainment, Inc. |
| Dino Strike | Zoo Games |
| Dinosaur Hunter | Activision |
| Dirt 2 | Codemasters |
| Disney Channel All Star Party | Disney Interactive |
| Disney Club Penguin: Game Day | Disney Interactive |
| Disney Guilty Party | Disney Interactive |
| Disney Princess: Enchanted Journey | Disney Interactive |
| Disney Princess: Enchanting Storybooks | THQ |
| Disney Sing It | Disney Interactive |
| Disney Sing It: Family Hits | Disney Interactive |
| Disney Sing It: High School Musical 3: Senior Year | Disney Interactive |
| Disney Sing It: Party Hits | Disney Interactive |
| Disney Sing It: Pop Hits | Disney Interactive |
| Disney Th!nk Fast | Disney Interactive |
| Disney Universe | Disney Interactive |
| Disney/Pixar Cars | THQ |
| Disney's Chicken Little: Ace in Action | Buena Vista Games |
| Disney's Meet the Robinsons | Buena Vista Games |

| Title | Publisher |
|---|---|
| Divas on Ice | 505 Games |
| Dive: The Medes Islands Secret | Cosmonaut Games |
| DJ Hero | Activision |
| DJ Hero 2 | Activision |
| Doc Clock - The Toasted Sandwich of Time | Stickmen Studios |
| Doctor Fizzwhizzle's Animal Rescue | Conspiracy |
| Dodge Racing: Charger vs. Challenger | Zoo Games |
| DOG Island, The | Ubisoft |
| Dokapon Kingdom | Atlus |
| Domino Rally | Playlogic Entertainment |
| Don King Boxing | 2K Sports |
| Donkey Kong | Nintendo |
| Donkey Kong 3 | Nintendo |
| Donkey Kong Country | Nintendo |
| Donkey Kong Country 2: Diddy's Kong Quest | Nintendo |
| Donkey Kong Country 3: Dixie Kong's Double Trouble | Nintendo |
| Donkey Kong Country Returns | Nintendo |
| Donkey Kong Jr. | Nintendo |
| Donkey Kong Jr. Math | Nintendo |
| Donkey Kong: Barrel Blast | Nintendo |
| Dood's Big Adventure | THQ |
| Dora the Explorer: Dora Saves the Crystal Kingdom | Take 2 Interactive Software |
| Dora the Explorer: Dora Saves the Snow Princess | Take 2 Interactive Software |

| Title | Publisher |
|---|---|
| Dora the Explorer: Dora's Big Birthday Adventure | Take 2 Interactive Software |
| DoReMi Fantasy: Milon's DokiDoki Adventure | Hudson Entertainment, Inc. |
| Double Dragon | Aksys Games |
| Double Dribble | Konami |
| Double Dungeons | Hudson Entertainment, Inc. |
| Dr. Mario RX Online | Nintendo |
| Dr. Robotnik's Mean Bean Machine | Sega |
| Dracula: Undead Awakening | Chillingo |
| Drag & Stock Racer | Maximum Family Games |
| Dragon Ball Z: Budokai Tenkaichi 2 | Atari |
| Dragon Ball Z: Budokai Tenkaichi 3 | Atari |
| Dragon Ball: Revenge of King Piccolo | NAMCO BANDAI Games America Inc. |
| Dragon Blade: Wrath of Fire | D3Publisher of America |
| Dragon Quest Swords: The Masked Queen and the Tower of Mirrors | Square Enix |
| Dragon Spirit | NBGI |
| DragonMaster Spell Caster | Stickmen Studios |
| Dragonology | Codemasters |
| Dragon's Curse | Hudson Entertainment, Inc. |
| Dragon's Lair Trilogy | Destineer |
| Drawn to Life: The Next Chapter | THQ |
| Drawsome Artist & Drawsome Sketch Quest | Ubisoft |
| Dream Cheer and Dance | Zoo Games |
| Dream Pinball 3D | South Peak Interactive |
| Dream Salon | Zoo Games |

| Title | Publisher |
|-------|-----------|
| Dreamworks Madagascar Kartz | Activision |
| Dreamworks Super Star Kartz | Activision |
| Driift Mania | Konami |
| Drill Sergeant Mindstrong | XSEED Games |
| Driver: Parallel Lines | Ubisoft |
| Driver: San Francisco | Ubisoft |
| Drop Off | G-Mode |
| DT Carnage | Agetec |
| Dungeon Explorer | Hudson Entertainment, Inc. |
| Dynamite Headdy | Sega |
| Dynastic Hero, The | Hudson Entertainment, Inc. |
| EA Playground | Electronic Arts |
| EA Sports Active | Electronic Arts |
| EA Sports Active 2 | Electronic Arts |
| EA Sports Active: More Workouts | Electronic Arts |
| EA Sports Active: NFL Training Camp | Electronic Arts |
| EA Sports Grand Slam Tennis | Electronic Arts |
| EA Sports NBA Jam | Electronic Arts |
| Earthworm Jim | Sega |
| Earthworm Jim 2 | Sega |
| Eat! Fat! FIGHT! | Tecmo |
| Ecco Jr. | Sega |
| Ecco the Dolphin | Sega |
| Ecco: The Tides of Time | Sega |
| Eco Shooter: Plant 530 | Nintendo |
| Eduardo the Samurai Toaster | Semnat Studios |

| Title | Publisher |
|---|---|
| El Chavo | Gamexpress Latin America |
| Elebits | Konami |
| Elevator Action | Taito |
| Emergency Heroes | Ubisoft |
| Emergency Mayhem | Codemasters |
| Endless Ocean | Nintendo |
| Endless Ocean: Blue World | Nintendo |
| Enduro Racer | Sega |
| Enjoy Your Massage! | Microforum |
| Epic Mickey | Disney Interactive |
| Equilibrio | D-K Games |
| Escape from Bug Island | Eidos Interactive |
| Escape the Museum | Majesco Sales Inc. |
| escapeVektor: Chapter 1 | Nnooo |
| Eternal Champions | Sega |
| Excite Truck | Nintendo |
| Excitebike | Nintendo |
| Excitebike: World Rally | Nintendo |
| Excitebots: Trick Racing | Nintendo |
| Exed Exes | Capcom |
| Exerbeat | NAMCO BANDAI Games America Inc. |
| F1 2009 | Codemasters |
| FaceBreaker K.O. Party | Electronic Arts |
| Family & Friends Party | Gammick Entertainment |
| Family Card Games | Aksys Games |
| Family Feud 2010 | Ubisoft |

| Title | Publisher |
|---|---|
| Family Feud 2012 | Ubisoft |
| Family Feud Decades | Ubisoft |
| Family Fun Football | Tecmo |
| Family Game Night 4: The Game Show | Electronic Arts |
| Family Game Night Fun Pack | Electronic Arts |
| Family Games | Icon Games |
| Family Gameshow | Storm City Games |
| Family Glide Hockey | Aksys Games |
| Family Go-Kart Racing | Aksys Games |
| Family Mini Golf | Aksys Games |
| Family Party: 30 Great Games | D3Publisher of America |
| Family Party: 30 Great Games Outdoor Fun | D3Publisher of America |
| Family Party: 30 Great Games Winter Fun | D3Publisher of America |
| Family Party: 90 Great Games Party Pack | D3Publisher of America |
| Family Party: Fitness Fun | D3Publisher of America |
| Family Pirate Party | Aksys Games |
| Family Slot Car Racing | Aksys Games |
| Family Table Tennis | Aksys Games |
| Family Tennis | Aksys Games |
| Fantastic Four: Rise of the Silver Surfer | 2K Games |
| Fantasy Aquarium World | Destineer |
| Fantasy Slots: Adventure Slots and Games | Aksys Games |
| Fantasy Zone | Sega |
| Fantasy Zone II: The Tears of Opa-Opa | Sega |
| Far Cry: Vengeance | Ubisoft |
| FAST - Racing League | Shin'en Multimedia |

| Title | Publisher |
|---|---|
| Fast Draw Showdown | Digital Leisure |
| Fast Food Panic | South Peak Interactive |
| Fatal Fury | D4 Enterprise |
| Fatal Fury 2 | D4 Enterprise |
| Fatal Fury 3: Road to the Final Victory | SNK |
| Fatal Fury Special | D4 Enterprise |
| Faxanadu | Hudson Entertainment, Inc. |
| Fenimore Fillmore "The Westener" | Revistronic |
| Ferrari Challenge: Trofeo Pirelli | Activision |
| Ferrari: The Race Experience | Conspiracy |
| FIFA Soccer 08 | Electronic Arts |
| FIFA Soccer 09 All-Play | Electronic Arts |
| FIFA Soccer 10 | Electronic Arts |
| FIFA Soccer 11 | Electronic Arts |
| FIFA Soccer 12 | Electronic Arts |
| Fighter's History Dynamite | D4 Enterprise |
| Fighting Street | Capcom |
| Final Fantasy | Square Enix |
| Final Fantasy Crystal Chronicles: Crystal Bearers | Square Enix |
| Final Fantasy Crystal Chronicles: Echoes of Time | Square Enix |
| Final Fantasy Crystal Chronicles: My Life as a Darklord | Square Enix |
| Final Fantasy Crystal Chronicles: My Life as a King | Square Enix |
| Final Fantasy Fables: Chocobo's Dungeon | Square Enix |

| Title | Publisher |
|-------|-----------|
| Final Fantasy II | Square Enix |
| Final Fantasy III | Square Enix |
| Final Fantasy IV: The After Years | Square Enix |
| Final Fantasy: Mystic Quest | Square Enix |
| Final Fight | Capcom |
| Final Fight 2 | Capcom |
| Final Fight 3 | Capcom |
| Final Soldier | Hudson Entertainment, Inc. |
| Fire Emblem: Radiant Dawn | Nintendo |
| Fireplacing | Komer Entertainment |
| Fish Tank | iFun4all |
| Fish'Em All | Abylight |
| Fishie Fishie | D-K Games |
| Fishing Master | Hudson Entertainment, Inc. |
| Fishing Master World Tour | Hudson Entertainment, Inc. |
| Fishing Resort | XSEED Games |
| Fit & Fun | Tivola |
| Fit in Six | Ubisoft |
| Fix It | South Peak Interactive |
| Flatout | Zoo Games |
| Flight Control | Firemint |
| FlingSmash | Nintendo |
| Flip's Twisted World | Majesco Sales Inc. |
| Flowerworks | Nocturnal Entertainment |
| Fluidity | Nintendo |
| Food Network: Cook or Be Cooked | NAMCO BANDAI Games America Inc. |

| Title | Publisher |
|---|---|
| Ford Racing Off Road | Empire Interactive |
| Forgotten Worlds | Capcom |
| Fortune Street | Nintendo |
| Fragile Dreams: Farewell Ruins of the Moon | XSEED Games |
| Freddi Fish: Kelp Seed Mystery | Majesco Sales Inc. |
| Free Running | Graffiti |
| Fritz Chess | Deep Silver |
| Frogger Returns | Konami |
| Fun! Fun! Minigolf | Shin'en Multimedia |
| Furry Legends | Gamelion |
| Furu Furu Park | Majesco Sales Inc. |
| F-Zero | Nintendo |
| F-Zero X | Nintendo |
| G.I. Joe: Rise of the Cobra | Electronic Arts |
| Gabrielle's Ghostly Groove | Natsume |
| Gain Ground | Sega |
| Galaga | NAMCO BANDAI Games America Inc. |
| GALAGA '90 | NBGI |
| Galaxy Force II | Sega |
| Gallop & Ride | THQ |
| Game Party | Midway Home Entertainment |
| Game Party 2 | Midway Home Entertainment |
| Game Party 3 | Warner Bros. Interactive Entertainment |
| GAPLUS | NBGI |
| Garfield Show, The: Threat of Space Lasagna | Zoo Games |
| Gate of Thunder | Hudson Entertainment, Inc. |

| Title | Publisher |
|---|---|
| Gem Smashers | Crave Entertainment |
| Gene Labs | Frontline Studios |
| Generator Rex: Agent of Providence | Activision |
| Genghis Khan II: Clan of the Gray Wolf | Koei |
| Geometry Wars: Galaxies | Sierra Entertainment, Inc. |
| Geon Cube | UFO |
| George of the Jungle: Search for the Secret | Crave Entertainment |
| Get Fit with Mel B | Deep Silver |
| Get Up and Dance | O-Games |
| Get Up Games: Family Sports | O-Games |
| G-Force | Disney Interactive |
| Ghost Mania | Legendo |
| Ghost Mansion Party | Gameloft |
| Ghost Recon: Future Soldier | Ubisoft |
| Ghost Squad | Sega |
| Ghostbusters: The Video Game | Atari |
| Ghostslayer | Gevo Entertainment |
| Ghosts'n Goblins | Capcom |
| Ghosts'n Goblins | Capcom |
| Ghoul Patrol | LucasArts |
| Ghouls'n Ghosts | Capcom |
| Glacier 2 | Zoo Games |
| Glacier 3 | Zoo Games |
| Gley Lancer | Sega |
| Gnomz | QubicGames |
| Go Diego Go: Great Dinosaur Rescue | Take 2 Interactive Software |

A313

| Title | Publisher |
|---|---|
| Go Diego Go: Safari Rescue | Take 2 Interactive Software |
| Go Play Circus Star | Majesco Sales Inc. |
| Go Play City Sports | Majesco Sales Inc. |
| Go Play Lumberjacks | Majesco Sales Inc. |
| Go Vacation | NAMCO BANDAI Games America Inc. |
| Godfather, The: Blackhand Edition | Electronic Arts |
| Gods vs Humans | ZALLAG |
| Godzilla: Unleashed | Atari |
| Golden Axe | Sega |
| Golden Axe | Sega |
| Golden Axe II | Sega |
| Golden Axe III | Sega |
| Golden Compass, The | Sega |
| Goldeneye 007 | Activision |
| Gold's Gym Cardio Workout | Ubisoft |
| Gold's Gym Dance Workout | Ubisoft |
| Goosebumps HorrorLand | Elastic/Scholastic Interactive |
| Gormiti: The Lords of Nature | Konami |
| GP Classic Racing | Maximum Family Games |
| Grade Advantage: Power Math | Tivola |
| Gradius | Konami |
| GRADIUS II GOFER NO YABOU | Hudson Entertainment, Inc. |
| Gradius III | Konami |
| Gradius Rebirth | Konami |
| Gravitronix | Medaverse Studios |
| Grease | 505 Games |

| Title | Publisher |
|---|---|
| Green Day: Rock Band | Electronic Arts |
| Green Lantern: Rise of the Manhunters | Warner Bros. Interactive Entertainment |
| Greg Hastings Paintball 2 | Majesco Sales Inc. |
| Gremlins: Gizmo | NECA |
| Grey's Anatomy | Ubisoft |
| Grim Adventures of Billy & Mandy, The | Midway Home Entertainment |
| Groovin' Blocks | Zoo Games |
| Groovin' Blocks | Empty Clip Studios |
| GT Pro Series | Ubisoft |
| GTI Club Supermini Festa | Konami |
| Guilty Gear XX Accent Core | Aksys Games |
| Guilty Gear XX Accent Core Plus | Aksys Games |
| Guinness World Records: The Videogame | Warner Bros. Interactive Entertainment |
| Guitar Hero III: Legends of Rock | Activision |
| Guitar Hero V | Activision |
| Guitar Hero: Aerosmith | Activision |
| Guitar Hero: Metallica | Activision |
| Guitar Hero: Smash Hits | Activision |
| Guitar Hero: Van Halen | Activision |
| Guitar Hero: Warriors of Rock | Activision |
| Guitar Hero: World Tour | Activision |
| Gummy Bears Magic Medallion | Storm City Games |
| Gummy Bears Mini-Golf | Storm City Games |
| Gunblade NY and LA Machineguns Arcade Hits Pack | Sega |
| Gunslingers | Valcon Games |

| Title | Publisher |
|---|---|
| Gunstar Heroes | Sega |
| Gyrostarr | High Voltage Software, Inc. |
| Hannah Montana: Spotlight World Tour | Disney Interactive |
| Hannah Montana: The Movie | Disney Interactive |
| Happy Feet | Midway Home Entertainment |
| Happy Feet Two - The Videogame | Warner Bros. Interactive Entertainment |
| Happy Hammerin' | Gamebridge |
| Happy Holidays Christmas | 505 Games |
| Happy Holidays Halloween | 505 Games |
| Hardy Boys: The Hidden Theft | Dreamcatcher |
| Harley Davidson: Road Trip | Destineer |
| Harley Pastemak's Hollywood Trainer | Majesco Sales Inc. |
| Harry Potter and the Deathly Hallows - Part 1 | Electronic Arts |
| Harry Potter and the Deathly Hallows - Part 2 | Electronic Arts |
| Harry Potter and the Half Blood Prince | Electronic Arts |
| Harry Potter and the Order of the Phoenix | Electronic Arts |
| Harvest Moon | Natsume |
| Harvest Moon: Animal Parade | Natsume |
| Harvest Moon: Magical Melody | Natsume |
| Harvest Moon: My Little Shop | Natsume |
| Harvest Moon: Tree of Tranquility | Natsume |
| Harvey Birdman: Attorney at Law | Capcom |
| Hasbro Family Game Night | Electronic Arts |
| Hasbro Family Game Night 2 | Electronic Arts |
| Hasbro Family Game Night 3 | Electronic Arts |
| Hasbro Family Game Night Value Pack | Electronic Arts |

| Title | Publisher |
|---|---|
| Haunted House | Atari |
| HB Arcade Cards | HB Studios |
| HB Arcade Disc Golf | HB Studios |
| Heathcliff: The Fast and the Furriest | Storm City Games |
| Heatseeker | Codemasters |
| Heavenly Guardian | UFO |
| Heavy Fire: Afghanistan - The Chosen Few | Mastiff |
| Heavy Fire: Black Arms | Teyon |
| Heavy Fire: Special Operations | Teyon |
| Helix | Ghostfire Games |
| Hello Kitty Seasons | Zoo Games |
| Hell's Kitchen: The Video Game | Ubisoft |
| Help Wanted | Hudson Entertainment, Inc. |
| Heracles Chariot Racing | Neko Entertainment |
| Heron: Steam Machine | Triangle Studios |
| Hidden Mysteries: Titanic - Secrets of the Fateful Voyage | Activision |
| High Rise | Virtual Play Games |
| High School Musical 3: Senior Year DANCE! | Disney Interactive |
| High School Musical: Sing It! | Disney Interactive |
| High Voltage Hot Rod Show | High Voltage Software, Inc. |
| History Channel: Battle for the Pacific | Activision |
| Hockey Allstar Shootout | Big Blue Bubble Inc. |
| Hollywood Squares | Ubisoft |
| Home Sweet Home | Big Blue Bubble Inc. |
| Honda ATV Fever | Storm City Games |

| Title | Publisher |
|---|---|
| Hooked Again!: Real Motion Fishing | Aksys Games |
| Hooked! Real Motion Fishing | Aksys Games |
| Hoopworld | Virtual Toys |
| Horizon Riders | Sabarasa |
| Horrible Histories: Ruthless Romans | Graffiti |
| Horrid Henry | South Peak Interactive |
| Horse Life Adventures | Valcon Games |
| Hot Wheels Battle Force 5 | Activision |
| Hot Wheels: Beat That! | Activision |
| Hot Wheels: Track Attack | THQ |
| Hotel for Dogs | 505 Games |
| House of the Dead 2 & 3 Return | Sega |
| House of the Dead: OVERKILL | Sega |
| How to Train your Dragon | Activision |
| Hubert the Teddy Bear: Winter Games | Teyon |
| Hyperfighters | Zoo Games |
| Hysteria Hospital: Emergency Ward | Oxygen Games |
| I - Sing | Dreamcatcher |
| I Love Horses: Rider's Paradise | Destineer |
| I Spy: Game Pack | Scholastic Inc. |
| I SPY: Spooky Mansion | Scholastic Inc. |
| I Spy: Two Games in One | Scholastic Inc. |
| iCarly | Activision |
| iCarly 2: iJoin the Click! | Activision |
| Ice Age 2: The Meltdown | Sierra Entertainment, Inc. |
| Ice Age: Dawn of the Dinosaurs | Activision |

A318

| Title | Publisher |
|-------|-----------|
| Ice Climber | Nintendo |
| Ice Hockey | Nintendo |
| Igor The Game | South Peak Interactive |
| Imagine Party Babyz | Ubisoft |
| Imagine: Fashion Party | Ubisoft |
| Impossible Mission | Codemasters |
| Incoming! | JV Games Inc |
| Incredible Hulk | Sega |
| Incredible Maze | Digital Leisure |
| Indiana Jones and the Staff of Kings | LucasArts |
| Indiana Jones' Greatest Adventures | LucasArts |
| Indianapolis 500 Legends | Destineer |
| Inkub | Cosmonaut Games |
| International Karate | Commodore Gaming |
| Iron Chef America: Supreme Cuisine | Destineer |
| Iron Man | Sega |
| Iron Man 2 | Sega |
| Ironclad | SNK |
| Island of Dr. Frankenstein | Storm City Games |
| Ivy the Kiwi? | XSEED Games |
| J.J. & JEFF | Hudson Entertainment, Inc. |
| Jakers! Let's Explore | Graffiti |
| Jam City Roller Girls | Frozen Codebase |
| Jambo! Safari: Animal Rescue | Sega |
| James Cameron's Avatar: The Game | Ubisoft |
| JAWS: Ultimate Predator | Majesco Sales Inc. |

A319

| Title | Publisher |
|---|---|
| Jeep Thrills | Zoo Games |
| Jelly Belly Ballistic Beans | Zoo Games |
| JellyCar 2 | Disney Interactive |
| Jenga | Atari |
| Jeopardy | THQ |
| Jerry Rice and Nitus' Dog Football | Crave Entertainment |
| Jett Rocket | Shin'en Multimedia |
| Jewel Keepers: Easter Island | Nocturnal Entertainment |
| Jewel Master: Cradle of Rome | Destineer |
| Jewel Quest Triology | Gamemill Entertainment |
| Jillian Michaels' Fitness Ultimatum 2009 | Majesco Sales Inc. |
| Jillian Michaels' Fitness Ultimatum 2010 | Majesco Sales Inc. |
| Jillian Michaels' Fitness Ultimatum 2011 | Majesco Sales Inc. |
| Jimmie Johnson's Anything With an Engine | Konami |
| Jumper Griffin's Story | Brash Entertainment |
| JumpStart Crazy Karts | Knowledge Adventure |
| JumpStart Escape from Adventure Island | Knowledge Adventure |
| JumpStart Get Moving Family Fitness | Knowledge Adventure |
| JumpStart Pet Rescue | Knowledge Adventure |
| Jungle Speed | Playful Entertainment Inc. |
| Junior League Sports | XS Games |
| Ju-On: The Grudge | XSEED Games |
| Jurassic: The Hunted | Activision |
| Just Dance | Ubisoft |
| Just Dance 2 | Ubisoft |
| Just Dance 3 | Ubisoft |

A320

| Title | Publisher |
|---|---|
| Just Dance Kids | Ubisoft |
| Just Dance Kids 2 | Ubisoft |
| Just Dance Summer Party | Ubisoft |
| Just Jam | Big John Games |
| Kamen Rider Dragon Knight | D3Publisher of America |
| Karaoke Joysound | Konami |
| Karaoke Revolution | Konami |
| Karaoke Revolution Glee | Konami |
| Karaoke Revolution Glee Volume 2 | Konami |
| Karaoke Revolution Glee Volume 3 | Konami |
| Karaoke Revolution Presents: American Idol Encore | Konami |
| Karaoke Revolution Presents: American Idol Encore 2 | Konami |
| Kart Racer | Virtual Play Games |
| Kawasaki Jet Ski | Destineer |
| Kawasaki Quad Bikes | Destineer |
| Kawasaki Snow Mobiles | Destineer |
| Kevin Van Dam's Big Bass Challenge | Zoo Games |
| Kid Adventures: Sky Captain | D3Publisher of America |
| Kid Chameleon | Sega |
| Kid Icarus | Nintendo |
| KidFit Island Resort | Crave Entertainment |
| Kidz Bop Dance Party | D3Publisher of America |
| Kidz Sports American Football | Destineer |
| Kidz Sports Basketball | Destineer |

A321

| Title | Publisher |
|---|---|
| Kidz Sports Crazy Golf | Destineer |
| Kidz Sports Ice Hockey | Destineer |
| Kidz Sports International Soccer | Destineer |
| King of Clubs | Crave Entertainment |
| King of Fighters '94, The | D4 Enterprise |
| King of Fighters '95, The | D4 Enterprise |
| King of Fighters '97, The | D4 Enterprise |
| King of Fighters: The Orochi Saga | SNK |
| King of the Monsters | SNK |
| King's Knight | Square Enix |
| Kirby 64: The Crystal Shards | Nintendo |
| Kirby Super Star | Nintendo |
| Kirby's Adventure | Nintendo |
| Kirby's Avalanche | Nintendo |
| Kirby's Dream Course | Nintendo |
| Kirby's Dream Land 3 | Nintendo |
| Kirby's Epic Yarn | Nintendo |
| Kirby's Return to Dream Land | Nintendo |
| Klonoa | NAMCO BANDAI Games America Inc. |
| Kore Gang | Atari |
| Kororinpa: Marble Mania | Hudson Entertainment, Inc. |
| Kung Fu Funk: Everybody is Kung Fu Fighting! | Stickmen Studios |
| Kung Fu Panda | Activision |
| Kung Fu Panda 2 | THQ |
| Kung Fu Panda: Legendary Warriors | Activision |

| Title | Publisher |
|---|---|
| Kyotokei | Microforum |
| Landstalker: The Treasures of King Nole | Sega |
| Lara Croft Tomb Raider: Anniversary | Eidos Interactive |
| Last Airbender, The | Conspiracy |
| Last Ninja 2 | Commodore Gaming |
| Lead the Meerkats | Lapland Studio |
| Learning with the PooYoo's: Episode 1 | Lexis Numerique |
| Learning with the PooYoo's: Episode 2 | Lexis Numerique |
| Learning with the PooYoo's: Episode 3 | Lexis Numerique |
| LEGEND OF HERO TONMA | IREM |
| Legend of Kage, The | Taito |
| Legend of Spyro, The: The Eternal Night | Vivendi Games |
| Legend of Spyro: Dawn of the Dragon, The | Sierra Entertainment, Inc. |
| Legend of the Dragon | The Game Factory |
| Legend of the Guardians: The Owls of Ga'Hoole | Warner Bros. Interactive Entertainment |
| Legend of The Mystical Ninja, The | Konami |
| Legend of Zelda, The | Nintendo |
| Legend of Zelda, The: A Link to the Past | Nintendo |
| Legend of Zelda, The: Majora's Mask | Nintendo |
| Legend of Zelda, The: Ocarina of Time | Nintendo |
| Legend of Zelda, The: Twilight Princess | Nintendo |
| Legend of Zelda: Skyward Sword | Nintendo |
| LEGO Batman: The Videogame | Warner Bros. Interactive Entertainment |
| Lego Harry Potter: Years 1-4 | Warner Bros. Interactive Entertainment |
| Lego Harry Potter: Years 5-7 | Warner Bros. Interactive Entertainment |

A323

| Title | Publisher |
|---|---|
| Lego Indiana Jones 2: The Adventure Continues | LucasArts |
| LEGO Indiana Jones: The Original Adventures | LucasArts |
| LEGO Pirates of the Caribbean: The Video Game | Disney Interactive |
| LEGO Rock Band | Warner Bros. Interactive Entertainment |
| LEGO Star Wars III: The Clone Wars | LucasArts |
| LEGO Star Wars: The Complete Saga | LucasArts |
| Let's CATCH | Sega |
| Let's Dance | Maximum Family Games |
| Let's Paint | Zoo Games |
| Let's Play Ballerina | Deep Silver |
| Let's Play Garden | Deep Silver |
| Let's Tap | Sega |
| Life Force | Konami |
| Light Crusader | Sega |
| Liight | Studio Walljump |
| lilt line | Gaijin Games |
| Line Attack Heroes | Nintendo |
| Line Rider 2: Unbound | Genius Products, Inc |
| Link's Crossbow Training | Nintendo |
| LIT | Wayforward Technologies |
| Little King's Story | XSEED Games |
| Little League World Series 2008 | Activision Value |
| Little League World Series 2009 | Activision |
| Little League World Series Double Play | Activision |

| Title | Publisher |
|---|---|
| Little Tournament Over Yonder | Gevo Entertainment |
| Littlest Pet Shop | Electronic Arts |
| Littlest Pet Shop 3: Biggest Stars | Electronic Arts |
| Littlest Pet Shop Friends | Electronic Arts |
| Lode Runner | Hudson Entertainment, Inc. |
| London Taxi Rush Hour | Destineer |
| Looney Tunes: Acme Arsenal | Warner Bros. Interactive Entertainment |
| Lord of the Rings: Aragorn's Quest | Warner Bros. Interactive Entertainment |
| Lords of Thunder | Hudson Entertainment, Inc. |
| Lost in Blue: Shipwrecked! | Konami |
| Lost in Shadow | Hudson Entertainment, Inc. |
| LostWinds | Frontier |
| LostWinds: Winter of the Melodias | Frontier |
| Lucha Libre AAA 2011: Heroes of the Ring | Gamexpress Latin America |
| Lunar Pool | D4 Enterprise |
| Luxor 3 | Mumbo Jumbo |
| Luxor: Pharaoh's Challenge | Mumbo Jumbo |
| M&M's Adventure | Zoo Games |
| M&M's Beach Party | Zoo Games |
| M&M's Kart Racing | Destination Software |
| Maboshi's Arcade | Nintendo |
| Mach Rider | Nintendo |
| Mad Dog McCree Gunslinger Pack | Majesco Sales Inc. |
| Madagascar Escape 2 Africa | Activision |
| Madden NFL 07 | Electronic Arts |
| Madden NFL 08 | Electronic Arts |

A325

| Title | Publisher |
|---|---|
| Madden NFL 09 All-Play | Electronic Arts |
| Madden NFL 10 | Electronic Arts |
| Madden NFL 11 | Electronic Arts |
| Madden NFL 12 | Electronic Arts |
| MadStone | Riverman Media |
| MADWORLD | Sega |
| Magic Destiny | Shanblue Interactive |
| Magic Obelisk, The | Game Arts |
| Magical Drop II | D4 Enterprise |
| Magical Drop III | D4 Enterprise |
| MAGICIAN LORD | D4 Enterprise |
| Magnetica Twist | Nintendo |
| MAGNETIS | Yullaby |
| Major League Baseball 2K10 | Take 2 Interactive Software |
| Major League Baseball 2K11 | Take 2 Interactive Software |
| Major League Baseball 2K12 | Take 2 Interactive Software |
| Major League Baseball 2K8 | Take 2 Interactive Software |
| Major League Baseball 2K9 | 2K Sports |
| Major League Eating: The Game | Mastiff |
| Major Minor's Majestic March | Majesco Sales Inc. |
| Man vs. Wild | Crave Entertainment |
| Manhunt 2 | Rockstar Games |
| Manic Monkey Mayhem | Code Monkeys Ltd |
| MAPPY | NBGI |
| Marble Saga: Kororinpa | Hudson Entertainment, Inc. |
| Margot's Word Brain | Zoo Games |

| Title | Publisher |
|---|---|
| Marines: Modern Urban Combat | Destineer |
| Mario & Sonic at the London 2012 Olympic Games | Sega |
| Mario & Sonic at the Olympic Games | Sega |
| Mario & Sonic at the Olympic Winter Games | Sega |
| Mario Bros. | Nintendo |
| Mario Golf | Nintendo |
| Mario Kart 64 | Nintendo |
| Mario Kart Wii | Nintendo |
| Mario Party 2 | Nintendo |
| Mario Party 8 | Nintendo |
| Mario Party 9 | Nintendo |
| Mario Sports Mix | Nintendo |
| Mario Strikers Charged | Nintendo |
| Mario Super Sluggers | Nintendo |
| Mario Tennis | Nintendo |
| Mart Racer | Joju Games |
| Martian Panic | Empire Interactive |
| Marvel Super Hero Squad | THQ |
| Marvel Super Hero Squad: Comic Combat | THQ |
| Marvel Super Hero Squad: The Infinity Gauntlet | THQ |
| Marvel Ultimate Alliance II | Activision |
| Marvel: Ultimate Alliance | Activision |
| Mathews Bowhunting | Zoo Games |
| Max & the Magic Marker | Easy Interactive |

| Title | Publisher |
|---|---|
| Max & the Magic Marker | Press Play |
| MDK 2 | Interplay |
| Medal of Honor Heroes 2 | Electronic Arts |
| Medal of Honor Vanguard | Electronic Arts |
| Medieval Games | Bethesda Softworks |
| Mega Man | Capcom |
| Mega Man 10 | Capcom |
| Mega Man 2 | Capcom |
| Mega Man 3 | Capcom |
| Mega Man 4 | Capcom |
| Mega Man 5 | Capcom |
| Mega Man 9 | Capcom |
| Mega Man X | Capcom |
| Mega Turrican | Sega |
| Megamind: Mega Team Unite | THQ |
| Men in Black III | Activision |
| Mercury Meltdown Revolution | Ignition |
| Merv Griffin's Crosswords | THQ |
| Metal Marines | NBGI |
| Metal Slug | D4 Enterprise |
| Metal Slug 2 | SNK |
| Metal Slug Anthology | SNK Playmore USA |
| Metroid | Nintendo |
| Metroid Prime 3: Corruption | Nintendo |
| Metroid Prime Trilogy | Nintendo |
| Metroid: Other M | Nintendo |

| Title | Publisher |
|---|---|
| Michael Jackson: The Experience | Ubisoft |
| Midnight Bowling | Gameloft |
| Midnight Pool | Gameloft |
| Mighty Bomb Jack | Tecmo |
| Military Madness | Hudson Entertainment, Inc. |
| Military Madness: Netaris | Hudson Entertainment, Inc. |
| Milon's Secret Castle | Hudson Entertainment, Inc. |
| Mini Desktop Racing | Conspiracy |
| Mini Ninjas | Eidos Interactive |
| MiniCopter: Adventure Flight | Aksys Games |
| MiniGolf Resort | Tivola |
| Minute to Win It | Zoo Games |
| Mix Superstar | Digital Leisure |
| MLB Power Pros | Take 2 Interactive Software |
| MLB Power Pros 2008 | 2K Sports |
| MLB Superstars | 2K Sports |
| Moki Moki | Natsume |
| Monado: Beginning of the World | Nintendo |
| Monkey King - The Legend Begins, The | UFO |
| Monkey Mischief | Activision |
| Monochrome Racing | Nordcurrent |
| Monopoly Collection | Electronic Arts |
| Monopoly Streets | Electronic Arts |
| Monopoly: Here and Now | Electronic Arts |
| Monster 4X4: Stunt Racer | Ubisoft |
| Monster 4x4: World Circuit | Ubisoft |

A329

| Title | Publisher |
|---|---|
| Monster High: Ghoul Spirit | THQ |
| Monster Hunter Tri | Capcom |
| Monster Jam | Activision |
| Monster Jam: Path of Destruction | Activision |
| Monster Jam: Urban Assault | Activision |
| Monster Lab | Eidos Interactive |
| Monster Lair | Hudson Entertainment, Inc. |
| Monster Mayhem: Build and Battle | Crave Entertainment |
| Monster Trucks Mayhem | Zoo Games |
| Monster Trux Arenas: Special Edition | Conspiracy |
| Monster Trux Extreme: Offroad Edition | Destineer |
| Monsters vs. Aliens Video Game | Activision |
| Mortal Kombat: Armageddon | Midway Home Entertainment |
| Mortimer Beckett and the Secrets of Spooky Manor | RealNetworks, Inc. |
| Moto Roader | Hudson Entertainment, Inc. |
| MotoGP 08 | Capcom |
| MotoHeroz | RedLynx |
| Mountain Sports | Activision |
| Mouse House | Big John Games |
| Movie Games | Ubisoft |
| Mr. Bean's Wacky World | Crave Entertainment |
| Mr. Driller W | NAMCO BANDAI Games America Inc. |
| Mummy: Tomb of the Dragon Emporer | Sierra Entertainment, Inc. |
| Munchables, The | NAMCO BANDAI Games America Inc. |
| Muramasa: The Demon Blade | Ignition |

| Title | Publisher |
|---|---|
| Muscle March | NAMCO BANDAI Games America Inc. |
| MUSHA | Sega |
| Mushroom Men: The Spore Wars | Gamecock Media Group |
| Music Party: Rock the House | Conspiracy |
| MX vs. ATV Untamed | THQ |
| My Aquarium | Hudson Entertainment, Inc. |
| My Aquarium 2 | Hudson Entertainment, Inc. |
| My Baby First Steps | South Peak Interactive |
| My Ballet Studio | 505 Games |
| My Dolphin | T&S Ltd |
| My Fitness Coach | Ubisoft |
| My Fitness Coach 2: Exercise and Nutrition | Ubisoft |
| My Horse and Me | Atari |
| My Horse and Me: Riding for Gold | Atari |
| My Little Baby | dtp entertainment AG |
| My Personal Golf Trainer with IMG Academies and David Leadbetter | XS Games |
| My Planetarium | Hudson Entertainment, Inc. |
| My Pokémon Ranch | Nintendo |
| My Spanish Coach | Ubisoft |
| My Vet Practice - Marine Life Rescue | Conspiracy |
| My Word Coach | Ubisoft |
| My Zoo | Hudson Entertainment, Inc. |
| MySims | Electronic Arts |
| MySims Agents | Electronic Arts |
| MySims Collection | Electronic Arts |

| Title | Publisher |
|---|---|
| MySims Kingdom | Electronic Arts |
| MySims Party | Electronic Arts |
| MySims Racing | Electronic Arts |
| MySims Skyheroes | Electronic Arts |
| Mystery Case Files: The Malgrave Incident | Nintendo |
| Mystery of Whiterock Castle | Playtainment |
| Myth Makers Orbs of Dooms | Destineer |
| Myth Makers Super Kart GP | Conspiracy |
| Myth Makers: Trixie in Toyland | Conspiracy |
| Namco Museum Megamix | NAMCO BANDAI Games America Inc. |
| Namco Museum Remix | NAMCO BANDAI Games America Inc. |
| Nancy Drew: The White Wolf of Icicle Creek | Sega |
| NARUTO Shippuden: Clash of Ninja Revolution 3 | Tomy Corporation |
| Naruto Shippuden: Dragon Blade Chronicles | Tomy Corporation |
| Naruto: Clash of Ninja Revolution | Tomy Corporation |
| Naruto: Clash of Ninja Revolution 2 | Tomy Corporation |
| NASCAR Kart Racing | Electronic Arts |
| NASCAR the Game 2011 | Activision |
| NASCAR Unleashed | Activision |
| NAT GEO CHALLENGE! Wild Life | D3Publisher of America |
| National Geographic Challenge! | Ignition |
| Natsume Championship Wrestling | Natsume |
| NBA 2K10 | 2K Sports |
| NBA 2K11 | 2K Sports |
| NBA 2K12 | 2K Sports |

| Title | Publisher |
|---|---|
| NBA Live 08 | Electronic Arts |
| NBA LIVE 09 All-Play | Electronic Arts |
| NCAA Football 09 All-Play | Electronic Arts |
| NCIS | Ubisoft |
| Need for Speed Carbon | Electronic Arts |
| Need for Speed: Hot Pursuit | Electronic Arts |
| Need for Speed: Nitro | Electronic Arts |
| Need for Speed: ProStreet | Electronic Arts |
| Need for Speed: The Run | Electronic Arts |
| Need for Speed: Undercover | Electronic Arts |
| Neighborhood Games | THQ |
| NEO TURF MASTERS | SNK |
| Neopets Puzzle Adventure | Capcom |
| Nerf "N-Strike" | Electronic Arts |
| Nerf "N-Strike" Double Blast Bundle | Electronic Arts |
| Nerf 2: "N-Strike" Elite | Electronic Arts |
| NES Open Tournament Golf | Nintendo |
| NES Play Action Football | Nintendo |
| Neutopia | Hudson Entertainment, Inc. |
| Neutopia II | Hudson Entertainment, Inc. |
| New Adventure Island | Hudson Entertainment, Inc. |
| New Carnival Games | Take 2 Interactive Software |
| New Play Control! Donkey Kong Jungle Beat | Nintendo |
| New Play Control! Mario Power Tennis | Nintendo |
| New Play Control! Pikmin | Nintendo |
| New Super Mario Bros. Wii | Nintendo |

| Title | Publisher |
|---|---|
| New U Mind Body Yoga & Pilates Workout | Deep Silver |
| Newton vs. The Horde | Radiation Burn |
| NHL 2K10 | 2K Sports |
| NHL 2K11 | Take 2 Interactive Software |
| NHL 2K9 | 2K Sports |
| NHL Slapshot | Electronic Arts |
| Ni Hao, Kai-Lan: Super Game Day | Take 2 Interactive Software |
| Nickelodeon Dance | Take 2 Interactive Software |
| Nickelodeon Fit | Take 2 Interactive Software |
| Nicktoons MLB | Take 2 Interactive Software |
| Nicktoons: Attack of the Toybots | THQ |
| Night at the Museum: Battle of the Smithsonian | Majesco Sales Inc. |
| NiGHTS: Journey of Dreams | Sega |
| Niki - Rock 'n' Ball | Bplus |
| Ninja Combat | D4 Enterprise |
| Ninja Commando | SNK |
| Ninja Gaiden | Tecmo |
| Ninja Gaiden | Tecmo |
| Ninja Gaiden II: The Dark Sword of Chaos | Tecmo |
| Ninja Gaiden III: The Ancient Ship of Doom | Tecmo |
| Ninja JaJaMaru-kun | Jaleco |
| Ninja Reflex | Electronic Arts |
| Ninja Spirit | IREM |
| Ninjabread Man | Conspiracy |
| Nitrobike | Ubisoft |

| Title | Publisher |
|---|---|
| No More Heroes | Ubisoft |
| No More Heroes 2: Desperate Struggle | Ubisoft |
| Nobunaga's Ambition | Koei |
| North American Hunting Extravaganza | Destineer |
| North American Hunting Extravaganza II | Destineer |
| NPPL Championship Paintball 2009 | Activision |
| Nutrition Matters | 505 Games |
| NyxQuest: Kindred Spirits | Over the Top Games |
| Obscure: The Aftermath | Ignition |
| Ocean Commander | UFO |
| Octomania | Conspiracy |
| Offroad Extreme! Special Edition | Conspiracy |
| Offshore Tycoon | UFO |
| Ogre Battle 64: Person of Lordly Caliber | Square Enix |
| Ogre Battle: The March of the Black Queen | Square Enix |
| Okami | Capcom |
| Once Upon a Time | Storm City Games |
| One Piece: Unlimited Adventure | NAMCO BANDAI Games America Inc. |
| Onechanbara Bikini Zombie Slayers | D3Publisher of America |
| Onslaught | Hudson Entertainment, Inc. |
| Oops! Prank Party | Hudson Entertainment, Inc. |
| Open Season | Ubisoft |
| Operation Wolf | Taito |
| Opoona | Koei |
| Order Up! | Zoo Games |
| Ordyne | NAMCO BANDAI Games America Inc. |

A335

| Title | Publisher |
|---|---|
| Oregon Trail | Crave Entertainment |
| Our House: Party! | Majesco Sales Inc. |
| Outdoor Action Double Pack | Mastiff |
| Outdoors Unlimited | Mastiff |
| Overflow | Digital Leisure |
| Overlord Dark Legend | Codemasters |
| Overturn | Studio Zan |
| Pac-Attack | NBGI |
| Pacific Liberator | Zoo Games |
| Pac-Man | NAMCO BANDAI Games America Inc. |
| Pac-Man Party | NAMCO BANDAI Games America Inc. |
| Paint Splash | KnapNok Games |
| Pajama Sam in Don't Fear the Dark | Majesco Sales Inc. |
| Pallurikio | Playstos Games |
| Paper Mario | Nintendo |
| Paper Wars: Cannon Fodder | iFun4all |
| Party Fun Pirate | Tomy Corporation |
| Party Pigs: Farmyard Games | Destineer |
| Paws & Claws Pet Resort | THQ |
| Paws & Claws Pet Vet | THQ |
| PDC World Championship Darts 2008 | Oxygen Games |
| PDC World Championship Darts 2010 | Oxygen Games |
| Pearl Harbor Trilogy - 1941 Red Sun Rising | Legendo |
| Penguins & Friends: Hey! That's My Fish | Gammick Entertainment |
| Penguins of Madagascar: Dr. Blowhole Returns - Again | THQ |

| Title | Publisher |
|---|---|
| Penny Racers Party: Turbo-Q Speedway | Tomy Corporation |
| Pet Pals: Animal Doctor | Legacy Interactive |
| Petz Catz 2 | Ubisoft |
| Petz Crazy Monkeyz | Ubisoft |
| Petz Dogz 2 | Ubisoft |
| Petz Horse Club | Ubisoft |
| Petz Horsez 2 | Ubisoft |
| Petz Rescue Wildlife Vet | Ubisoft |
| Petz Sports | Ubisoft |
| Phantasy Star | Sega |
| Phantasy Star II | Sega |
| Phantasy Star III: Generations of Doom | Sega |
| Phantasy Star IV | Sega |
| Phantom Brave: We Meet Again | NIS America |
| Pheasants Forever: Wingshooter | Gamemill Entertainment |
| Phineas and Ferb: Across the Second Dimension | Disney Interactive |
| Phoenix Wright Ace Attorney: And Justice for All | Capcom |
| Phoenix Wright Ace Attorney: Trials and Tribulations | Capcom |
| Phoenix Wright: Ace Attorney | Capcom |
| Pictionary | THQ |
| PictureBook Games: Pop-Up Pursuit | Nintendo |
| PilotWings | Nintendo |
| Pimp My Ride | Activision |
| Pinball | Nintendo |

| Title | Publisher |
|---|---|
| Pinball Hall of Fame - The Gottlieb Collection | Crave Entertainment |
| Pinball Hall of Fame - The Williams Collection | Crave Entertainment |
| Pinocchio's Puzzles | EnjoyUp Games |
| Pirate Blast | Zoo Games |
| Pirates of the Caribbean: At World's End | Disney Interactive |
| Pirates Plund-Arr | Majesco Sales Inc. |
| Pirate's Quest: Hunt for Blackbeard's Booty | Activision |
| Pirates vs Ninjas Dodgeball | Gamecock Media Group |
| Pirates: The Key of Dreams | Oxygen Games |
| Pit Crew Panic! | Hudson Entertainment, Inc. |
| Pitfall: The Big Adventure | Activision |
| Pitfall: The Mayan Adventure | Activision |
| Pitstop II | Commodore Gaming |
| Pizza Delivery Boy | Majesco Sales Inc. |
| Planet 51 | Sega |
| Planet Fish | Ludia |
| Planet Pachinko | Allied Kingdoms Inc. |
| PLÄTTCHEN twist 'n' paint | Bplus |
| Play With Birds | Games Farm |
| Playmobil Circus | Dreamcatcher |
| Pocoyo Racing | Easy Interactive |
| Pokémon Battle Revolution | Nintendo |
| Pokémon Puzzle League | Nintendo |
| Pokémon Rumble | Nintendo |
| Pokémon Snap | Nintendo |

| Title | Publisher |
|---|---|
| PokéPark 2: Wonders Beyond | Nintendo |
| PokéPark Wii: Pikachu's Adventure | Nintendo |
| Pong Toss - Frat Party Games | JV Games Inc |
| Pong Toss Pro - Frat Party Games | JV Games Inc |
| Pony Friends 2 | Square Enix |
| Pool Hall Pro | Playlogic Entertainment |
| Pool Party | South Peak Interactive |
| Pop | Nnooo |
| Pop'Em Drop'Em SAMEGAME | Hudson Entertainment, Inc. |
| Pop'n Music | Konami |
| PopStar Guitar | XS Games |
| Potpourrii | Abstraction Games |
| Power Golf | Hudson Entertainment, Inc. |
| Power Punch | XSEED Games |
| Power Rangers Samurai | NAMCO BANDAI Games America Inc. |
| Powerball | Sega |
| Press Your Luck 2010 | Ubisoft |
| Price is Right 2010 | Ubisoft |
| Price is Right Decades | Ubisoft |
| Price is Right, The | Ubisoft |
| Prince of Persia: Rival Swords | Ubisoft |
| Prince of Persia: The Forgotten Sands | Ubisoft |
| Princess and the Frog | Disney Interactive |
| Princess Isabella: A Witch's Curse | Destineer |
| Princess Tomato in the Salad Kingdom | Hudson Entertainment, Inc. |
| Pro Bull Riders: Out of the Chute | Crave Entertainment |

A339

| Title | Publisher |
|---|---|
| Pro Evolution Soccer 2008 | Konami |
| Pro Evolution Soccer 2009 | Konami |
| Pro Evolution Soccer 2010 | Konami |
| Pro Evolution Soccer 2011 | Konami |
| Pro Evolution Soccer 2012 | Konami |
| Professor Heinz Wolff's Gravity | Deep Silver |
| Project Runway | Atari |
| Protöthea | Ubisoft |
| Psychosis | Hudson Entertainment, Inc. |
| Pub Darts | Big Blue Bubble Inc. |
| Pucca's Kisses Game | Bigben Interactive |
| Pulseman | Sega |
| Punch-Out!! | Nintendo |
| Punch-Out!! Featuring Mr. Dream | Nintendo |
| Puppy Luv: Your New Best Friend | Activision |
| Purr Pals | Crave Entertainment |
| Puss in Boots | THQ |
| Puyo Puyo 2: Tsuu | Sega |
| Puzzle Challenge: Crosswords and More! | Crave Entertainment |
| Puzzle Kingdoms | Zoo Games |
| Puzzle Quest: Challenge of the Warlords | D3Publisher of America |
| Puzzler Collection | Zoo Games |
| Quantum of Solace | Activision |
| Rabbids Go Home | Ubisoft |
| Rabbids Lab | Ubisoft |
| Rabbids Party Collection | Ubisoft |

| Title | Publisher |
|-------|-----------|
| Racers' Island - Crazy Arenas | ZALLAG |
| Racers' Islands - Crazy Racers | ZALLAG |
| Racquet Sports | Ubisoft |
| Rage of the Gladiator | Ghostfire Games |
| Rainbow Islands: Towering Adventure | Taito |
| Rally Racer | Maximum Family Games |
| Ram Racing | Storm City Games |
| Rampage: Total Destruction | Midway Home Entertainment |
| Rango the Video Game | Electronic Arts |
| Rapala Fishing Frenzy | Activision |
| Rapala Pro Bass Fishing | Activision |
| Rapala Tournament Fishing | Activision |
| Rapala: We Fish | Activision |
| Ratatouille | THQ |
| Raving Rabbids: Travel in Time | Ubisoft |
| Rayman Orgins | Ubisoft |
| Rayman: Raving Rabbids | Ubisoft |
| Rayman: Raving Rabbids 2 | Ubisoft |
| Rayman: Raving Rabbids TV Party | Ubisoft |
| Reader Rabbit 1st Grade | Graffiti |
| Reader Rabbit 2nd Grade | Graffiti |
| Reader Rabbit Kindergarten | Graffiti |
| Reader Rabbit Preschool | Graffiti |
| Ready 2 Rumble Revolution | Atari |
| Real Heroes: Firefighter | Conspiracy |
| Rebel Raiders: Operation Nighthawk | XS Games |

| Title | Publisher |
|---|---|
| Rec Room | Destineer |
| Red Steel | Ubisoft |
| Red Steel 2 | Ubisoft |
| Reel Fishing Angler's Dream | Natsume |
| Reel Fishing Challenge | Natsume |
| Reel Fishing Challenge II | Natsume |
| Reload: Target Down | Mastiff |
| Remington Great American Bird Hunt | Mastiff |
| Remington Super Slam Hunting: Africa | Mastiff |
| Remington Super Slam Hunting: Alaska | Mastiff |
| Remington Super Slam Hunting: North America | Mastiff |
| Renegade | Aksys Games |
| Resident Evil 4 Wii Edition | Capcom |
| Resident Evil Archives: Resident Evil | Capcom |
| Resident Evil Archives: Resident Evil Zero | Capcom |
| Resident Evil: The Darkside Chronicles | Capcom |
| Resident Evil: The Umbrella Chronicles | Capcom |
| Revenge of Shinobi, The | Sega |
| Rhythm Heaven Fever | Nintendo |
| Rig Racer 2 | Destineer |
| Ringling Bros and Barnum & Bailey Circus | Take 2 Interactive Software |
| Rio | THQ |
| Riot Zone | Hudson Entertainment, Inc. |
| Ristar | Sega |
| Rival Turf! | Jaleco |

| Title | Publisher |
|---|---|
| River City Ransom | Aksys Games |
| Robin Hood: The Return of Richard | Nordcurrent |
| Robocalypse: Beaver Defense | Vogster Entertainment |
| Robox | DreamBox |
| Rock Band | MTV Games |
| Rock Band 2 | Electronic Arts / MTV Games |
| Rock Band 3 | Electronic Arts |
| Rock Band Country Track Pack Volume 2 | Electronic Arts |
| Rock Band Metal Track Pack | Electronic Arts |
| Rock Band Track Pack Classic Rock | Electronic Arts |
| Rock Band Track Pack Country Rock | Electronic Arts |
| Rock Band Track Pack Volume 1 | MTV Games |
| Rock Band Track Pack Volume 2 | Electronic Arts |
| Rock Blast | UFO |
| Rock 'N Roll Adventures | Conspiracy |
| Rock 'n Roll Climber | Nintendo |
| Rock of the Dead | Conspiracy |
| Rock Revolution | Konami |
| Rock University Presents the Naked Brothers Band | THQ |
| Rockstar Games Presents Table Tennis | Rockstar Games |
| Rogue Trooper: The Quartz Zone Massacre | Graffiti |
| Rolling Stone: Drum King | 505 Games |
| Rolling Thunder 2 | NAMCO BANDAI Games America Inc. |
| Romance of the Three Kingdoms IV: Wall of Fire | Koei |

| Title | Publisher |
|---|---|
| Roogoo: Twisted Towers | South Peak Interactive |
| Rooms: The Main Building | Hudson Entertainment, Inc. |
| Rooster Hunt | City Interactive |
| R-TYPE | Sega |
| R-Type | Hudson Entertainment, Inc. |
| R-Type III: The Third Lightning | Jaleco |
| Rubik's Puzzle Gallery: RUSH | Two Tribes |
| Rubik's World | The American Game Factory |
| Rudolph the Red-Nosed Reindeer | Crave Entertainment |
| Rune Factory Frontier | XSEED Games |
| Rune Factory: Tides of Destiny | Natsume |
| RYGAR | Tecmo |
| Rygar: The Battle of Argus | Tecmo |
| S.C.A.T. | Natsume |
| Safari Adventures: Africa | Conspiracy |
| Safecracker | Dreamcatcher |
| Saint | UFO |
| Sakura Wars: So Long, My Love | NIS America |
| Sam & Max: Beyond Time and Space | Atari |
| Sam & Max: Season One | Dreamcatcher |
| Samantha Swift and the Secret Scroll | Mumbo Jumbo |
| Samba De Amigo | Sega |
| Samurai Ghost | NBGI |
| Samurai Shodown | SNK |
| Samurai Shodown 2 | SNK |
| Samurai Shodown Anthology | SNK |

| Title | Publisher |
|---|---|
| Samurai Shodown III | D4 Enterprise |
| Samurai Shodown IV: Amakusa's Revenge | D4 Enterprise |
| Samurai Warriors 3 | Nintendo |
| Samurai Warriors: KATANA | Koei |
| Sandy Beach | Konami |
| Santa Claus is Coming to Town | Crave Entertainment |
| Satisfashion | Destineer |
| Scarface: The World Is Yours | Vivendi Games |
| Scene It: Bright Lights, Big Screen | Warner Bros. Interactive Entertainment |
| Scene It: Twilight | Konami |
| Science Papa | Activision |
| Scooby Doo! and the Spooky Swamp | Warner Bros. Interactive Entertainment |
| Scooby Doo: First Frights | Warner Bros. Interactive Entertainment |
| Score International Baja 1000 | Activision |
| Sea Monsters | Destination Software |
| Secret Command | Sega |
| Secret Files 2: Puritas Cordis | Deep Silver |
| Secret Files: Tunguska | Deep Silver |
| Secret of Mana | Square Enix |
| Secret Saturdays: Beasts of the 5th Sun | D3Publisher of America |
| Sega Bass Fishing | Sega |
| Sega Superstars Tennis | Sega |
| Sengoku BASARA Samurai Heroes | Capcom |
| Sesame Street: Cookie's Counting Carnival | Warner Bros. Interactive Entertainment |
| Sesame Street: Elmo's A-to-Zoo Adventure | Warner Bros. Interactive Entertainment |
| Sesame Street: Elmo's Musical Monsterpiece | Warner Bros. Interactive Entertainment |

| Title | Publisher |
|-------|-----------|
| Sesame Street: Ready, Set, Grover! | Warner Bros. Interactive Entertainment |
| Sexy Poker | Gameloft |
| Shadow Dancer: The Secret of Shinobi | Sega |
| Shadow of the Ninja | Majesco Sales Inc. |
| ShadowPlay | Deep Fried Entertainment |
| Shanghai II: Dragon's Eye | Sega |
| Shaun White Skateboarding | Ubisoft |
| Shaun White Snowboarding: Road Trip | Ubisoft |
| Shaun White Snowboarding: World Stage | Ubisoft |
| Shawn Johnson Gymnastics | Zoo Games |
| Sherlock Holmes: The Mystery of the Mummy | Playlogic Entertainment |
| Sherlock Holmes: The Silver Earring | Dreamcatcher |
| Shimano Xtreme Fishing | Mastiff |
| Shining Force | Sega |
| Shining Force 2 | Sega |
| Shining in the Darkness | Sega |
| Shinobi | Sega |
| Shinobi III: Return of the Ninja Master | Sega |
| Shiren the Wanderer | Atlus |
| Shockman | Hudson Entertainment, Inc. |
| Shootanto: Evolutionary Mayhem | Hudson Entertainment, Inc. |
| Showtime Championship Boxing | Destination Software |
| Shrek Forever After | Activision |
| Shrek the Third | Activision |
| Shrek's Carnival Craze | Activision |
| Sid Meier's Pirates! | Take 2 Interactive Software |

| Title | Publisher |
|---|---|
| Silent Debuggers | G-Mode |
| Silent Hill: Shattered Memories | Konami |
| Silver Star Chess | Agetec |
| Silver Star Reversi | Agetec |
| SimAnimals | Electronic Arts |
| SimAnimals Africa | Electronic Arts |
| SimCity | Nintendo |
| SimCity Creator | Electronic Arts |
| SimEarth: The Living Planet | Hudson Entertainment, Inc. |
| Sims 2 Castaway, The | Electronic Arts |
| Sims 2 Pets, The | Electronic Arts |
| Sims 3, The | Electronic Arts |
| Sin & Punishment | Nintendo |
| Sin & Punishment: Star Successor | Nintendo |
| Sing4: The Hits Edition | Crave Entertainment |
| Six Flags Fun Park | Warner Bros. Interactive Entertainment |
| Skate City Heroes | Zoo Games |
| Skate It | Electronic Arts |
| Ski and Shoot | Conspiracy |
| Ski-Doo Snowmobile Challenge | Valcon Games |
| Sky Crawlers: Innocent Aces | XSEED Games |
| SKYKID | NAMCO BANDAI Games America Inc. |
| Skylanders: Spyro's Adventure | Activision |
| Sled Shred featuring the Jamaican Bobsled Team | South Peak Interactive |
| Sleepover Party | Ubisoft |

A347

| Title | Publisher |
|---|---|
| Smart Series Presents: JaJa's Adventure | UFO |
| Smarty Pants | Electronic Arts |
| Smiley World Island Challenge | Zoo Games |
| Smurfs Dance Party | Ubisoft |
| Snail Mail | Sandlot Games |
| Sneezies | Chillingo |
| Sniper Elite | Virtual Play Games |
| SNK Arcade Classics Vol. 1 | SNK |
| Snowboard Riot! | Hudson Entertainment, Inc. |
| Snowpack Park | Nintendo |
| Soccer | Nintendo |
| Soccer Bashi | Icon Games |
| Soccer Up | EnjoyUp Games |
| Soldier Blade | Hudson Entertainment, Inc. |
| Solitaire & Mahjong | Crave Entertainment |
| Solomon's Key | Tecmo |
| Solomon's Key | Tecmo |
| Sonic & Knuckles | Sega |
| Sonic & Sega All-Stars Racing | Sega |
| Sonic 3D Blast | Sega |
| Sonic and the Black Knight | Sega |
| Sonic and the Secret Rings | Sega |
| Sonic Chaos | Sega |
| Sonic Colors | Sega |
| Sonic Riders: Zero Gravity | Sega |
| Sonic Spinball | Sega |

A348

| Title | Publisher |
|---|---|
| Sonic the Hedgehog | Sega |
| Sonic the Hedgehog | Sega |
| Sonic the Hedgehog 2 | Sega |
| Sonic the Hedgehog 2 | Sega |
| Sonic The Hedgehog 3 | Sega |
| Sonic the Hedgehog 4: Episode 1 | Sega |
| Sonic Unleashed | Sega |
| Sonson | Capcom |
| SoulCalibur Legends | NAMCO BANDAI Games America Inc. |
| Space Camp | Activision |
| Space Chimps | Warner Bros. Interactive Entertainment |
| Space Harrier | Sega |
| Space Harrier | Sega |
| Space Harrier II | Sega |
| Space Invaders Get Even | Taito |
| Space Invaders: The Original Game | Taito |
| Space Station Tycoon | NAMCO BANDAI Games America Inc. |
| Space Trek | Calaris Studios |
| Spaceball Revolution | Virtual Toys |
| Spectrobes: Origins | Disney Interactive |
| Speed | Zoo Games |
| Speed Racer: The Videogame | Warner Bros. Interactive Entertainment |
| Speed Zone | Detn8 |
| Spelunker | Tozai |
| Spider-Man 3 | Activision |
| Spider-Man: Edge of Time | Activision |

| Title | Publisher |
|---|---|
| Spider-Man: Friend or Foe | Activision |
| Spider-Man: Shattered Dimensions | Activision |
| Spider-Man: Web of Shadows | Activision |
| Spiderwick Chronicles, The | Sierra Entertainment, Inc. |
| Spin Master | D4 Enterprise |
| Splatterhouse | NAMCO BANDAI Games America Inc. |
| Splatterhouse 2 | Hudson Entertainment, Inc. |
| SPOGS Racing | D2C Games |
| SpongeBob SquarePants featuring Nicktoons: Globs of Doom | THQ |
| SpongeBob SquarePants: Creature from the Krusty Krab | THQ |
| SpongeBob SquigglePants | THQ |
| SpongeBob's Atlantis SquarePantis | THQ |
| SpongeBob's Boating Bash | THQ |
| SpongeBob's Truth or Square | THQ |
| Spore Hero | Electronic Arts |
| Spot the Differences! | Digital Leisure |
| SPRay | Tecmo |
| Spy Fox in Dry Cereal | Majesco Sales Inc. |
| Spy Games: Elevator Mission | UFO |
| Spyborgs | Capcom |
| Squeeballs Party | Aksys Games |
| SSX Blur | Electronic Arts |
| Star Fox 64 | Nintendo |
| Star Parodier | Hudson Entertainment, Inc. |

| Title | Publisher |
|---|---|
| Star Soldier | Hudson Entertainment, Inc. |
| Star Soldier R | Hudson Entertainment, Inc. |
| Star Trek: Conquest | Bethesda Softworks |
| Star Wars The Clone Wars: Lightsaber Duels | LucasArts |
| Star Wars The Clone Wars: Republic Heroes | LucasArts |
| Star Wars: The Force Unleashed | LucasArts |
| Star Wars: The Force Unleashed II | LucasArts |
| STARFORCE | Tecmo |
| StarTropics | Nintendo |
| Step Up! | Golem Labs |
| Stonekeep: Bones of the Ancestors | Interplay |
| Stop Stress: A Day of Fury | Abylight |
| Story Hour Adventures | Zoo Games |
| Story Hour Fairy Tales | Zoo Games |
| Storybook Workshop | Konami |
| Strategist | Playlogic Entertainment |
| Street Fighter Alpha 2 | Capcom |
| Street Fighter II Turbo: Hyper Fighting | Capcom |
| Street Fighter II: Champion Edition | Capcom |
| Street Fighter II: Special Champion Edition | Capcom |
| Street Fighter II: The World Warrior | Capcom |
| Street Slam | D4 Enterprise |
| Streets of Rage | Sega |
| Streets of Rage 2 | Sega |
| Streets of Rage 3 | Sega |
| Strider | Sega |

| Title | Publisher |
|---|---|
| Strong Bad Episode 1: Homestar Ruiner | Telltale |
| Strong Bad Episode 2: Strong Badia the Free | Telltale |
| Strong Bad Episode 3: Baddest of the Bands | Telltale |
| Strong Bad Episode 4: Dangeresque 3 | Telltale |
| Strong Bad Episode 5: 8-Bit Is Enough | Telltale |
| Stunt Cars | Icon Games |
| Sudoku Ball Detective | Playlogic Entertainment |
| Sudoku Challenge | Digital Leisure |
| Summer Athletics: The Ultimate Challenge | Conspiracy |
| Summer Camp Showdown | Majesco Sales Inc. |
| Summer Games II | Commodore Gaming |
| Summer Sports 2: Island Sports Party | Destineer |
| Summer Sports: Paradise Island | Destineer |
| Summer Stars | Deep Silver |
| Super Adventure Island | Hudson Entertainment, Inc. |
| Super Adventure Island II | Hudson Entertainment, Inc. |
| Super Air Zonk | Hudson Entertainment, Inc. |
| Super Bonk | Hudson Entertainment, Inc. |
| Super C | Konami |
| Super Castlevania IV | Konami |
| Super Dodge Ball | Aksys Games |
| Super Empire Strikes Back | LucasArts |
| Super Fantasy Zone | Sega |
| Super Ghouls 'n Ghosts | Capcom |
| Super Karts | Maximum Family Games |
| Super Mario 64 | Nintendo |

| Title | Publisher |
| --- | --- |
| Super Mario All Stars | Nintendo |
| Super Mario Bros. | Nintendo |
| Super Mario Bros. 2 | Nintendo |
| Super Mario Bros. 3 | Nintendo |
| Super Mario Bros.: The Lost Levels | Nintendo |
| Super Mario Galaxy | Nintendo |
| Super Mario Galaxy 2 | Nintendo |
| Super Mario Kart | Nintendo |
| Super Mario RPG: Legend of the Seven Stars | Nintendo |
| Super Mario World | Nintendo |
| Super Metroid | Nintendo |
| Super Monkey Ball: Banana Blitz | Sega |
| Super Monkey Ball: Step and Roll | Sega |
| Super Paper Mario | Nintendo |
| Super Pick Ups | XS Games |
| Super Punch-Out!! | Nintendo |
| Super Return of the Jedi | LucasArts |
| Super R-Type | IREM |
| Super Smash Bros. | Nintendo |
| Super Smash Bros. Brawl | Nintendo |
| Super Star Soldier | Hudson Entertainment, Inc. |
| Super Star Wars | LucasArts |
| Super Street Fighter II: The New Challengers | Capcom |
| Super Swing Golf | Tecmo |
| Super Swing Golf Season 2 | Tecmo |
| Super Thunder Blade | Sega |

| Title | Publisher |
|-------|-----------|
| Super Truck Racer | Maximum Family Games |
| Super Turrican | Seika |
| Super Turrican 2 | Factor 5 |
| Supersonic Racers | Zoo Games |
| Surf's Up | Ubisoft |
| Survivor | Dreamcatcher |
| Sushi Go Round | South Peak Interactive |
| Sword of Vermillion | Sega |
| Swords | Majesco Sales Inc. |
| Swords & Soldiers | Romino Games |
| Tak: Guardians of Gross | THQ |
| Tale of Despereaux, The | Brash Entertainment |
| Tales of Bearsworth Manor: Chaos Conflicts | Square Enix |
| Tales of Bearsworth Manor: Puzzling Pages | Square Enix |
| Tales of Elastic Boy - Mission 1 | Lexis Numerique |
| Tales of Monkey Island: Chapter Five | Telltale |
| Tales of Monkey Island: Chapter Four | Telltale |
| Tales of Monkey Island: Chapter One | Telltale |
| Tales of Monkey Island: Chapter Three | Telltale |
| Tales of Monkey Island: Chapter Two | Telltale |
| Tales of Symphonia: Dawn of the New World | NAMCO BANDAI Games America Inc. |
| Tamagotchi: Party On! | NAMCO BANDAI Games America Inc. |
| Tangled | Disney Interactive |
| Target Toss Pro: Bags | Incredible Technologies |
| Target Toss Pro: Lawn Darts | Incredible Technologies |
| Target: Terror | Konami |

| Title | Publisher |
|---|---|
| Tatsunoko vs. Capcom: Ultimate All-Stars | Capcom |
| Team Elimination Game | Ubisoft |
| Tecmo Bowl | Tecmo |
| Tecmo Bowl | Tecmo |
| Teenage Mutant Ninja Turtles | Konami |
| Ten Pin Alley 2 | XS Games |
| Tenchu: Shadow Assassins | Ubisoft |
| Tennis | Nintendo |
| Tetris Party | Tetris Online, Inc. |
| Tetris Party Deluxe | Tetris Online, Inc. |
| Texas Hold 'Em Poker | Gameloft |
| Texas Hold 'Em Tournament | Digital Leisure |
| Th!nk Logic Trainer | Conspiracy |
| The Beatles: Rock Band | Electronic Arts |
| The Clumsey's | Majesco Sales Inc. |
| The Ignition Factor | Jaleco |
| The Last Ninja | Commodore Gaming |
| The Simpsons Game | Electronic Arts |
| The Three Musketeers: One for All! | Legendo |
| THE TOWER OF DRUAGA | NBGI |
| thinkSMART Family! | Conspiracy |
| Thomas & Friends: Hero of the Rails | Majesco Sales Inc. |
| Thor: God of Thunder | Sega |
| Thrillville: Off the Rails | LucasArts |
| ThruSpace | Nintendo |
| Tiger Woods PGA Tour 07 | Electronic Arts |

| Title | Publisher |
|-------|-----------|
| Tiger Woods PGA Tour '08 | Electronic Arts |
| Tiger Woods PGA Tour 09 All-Play | Electronic Arts |
| Tiger Woods PGA Tour 10 | Electronic Arts |
| Tiger Woods PGA Tour 11 | Electronic Arts |
| Tiger Woods PGA Tour 12: The Masters | Electronic Arts |
| Tiki Towers | RealArcade |
| Titanic Mystery | O-Games |
| TMNT | Ubisoft |
| TMNT Smash UP | Ubisoft |
| TNA IMPACT! | Midway Home Entertainment |
| ToeJam & Earl | Sega |
| ToeJam & Earl in Panic on Funkotron | Sega |
| Toki Tori | Two Tribes |
| Tom Clancy's Ghost Recon | Ubisoft |
| Tom Clancy's H.A.W.X. 2 | Ubisoft |
| Tom Clancy's Splinter Cell: Double Agent | Ubisoft |
| Tomb Raider: Underworld | Eidos Interactive |
| Tomena Sanner | Konami |
| Tony Hawk: RIDE | Activision |
| Tony Hawk: SHRED | Activision |
| Tony Hawk's Downhill Jam | Activision |
| Tony Hawk's Proving Ground | Activision |
| Top Hunter | D4 Enterprise |
| Top Shot Arcade | Activision |
| Top Spin 3 | 2K Games |
| Top Spin 4 | 2K Sports |

| Title | Publisher |
|---|---|
| Toribash | Nabi Studios |
| Tornado Outbreak | Konami |
| Totally Spies! Totally Party! | Valcon Games |
| Tournament of Legends | Sega |
| Tournament Pool | Destineer |
| Tower Toppler | Commodore Gaming |
| Toy Story 3: The Video Game | Disney Interactive |
| Toy Story Mania! | Disney Interactive |
| Trackmania: Built To Race | Dreamcatcher |
| Transformers: Dark of the Moon | Activision |
| Transformers: Fall of Cybertron | Activision |
| Transformers: Revenge of the Fallen | Activision |
| Transformers: The Game | Activision |
| Transformers: War for Cybertron | Activision |
| Trauma Center: New Blood | Atlus |
| Trauma Center: Second Opinion | Atlus |
| Trauma Team | Atlus |
| Trenches General | Fishing Cactus |
| Triple Crown Championship Snowboarding | Destineer |
| Triple Jumping Sports | Code Monkeys Ltd |
| Triple Running Sports | Code Monkeys Ltd |
| Triple Shot Sports | Code Monkeys Ltd |
| Triple Throwing Sports | Code Monkeys Ltd |
| Trivial Pursuit | Electronic Arts |
| Trivial Pursuit: Bet You Know It | Electronic Arts |
| Tron Evolution: Battle Grids | Disney Interactive |

| Title | Publisher |
|---|---|
| Truck Racer | Virtual Play Games |
| Truth or Lies | THQ |
| Tumblebugs 2 | Gameshastra |
| Turbo Trainz | Graffiti |
| TV Show King | Gameloft |
| TV Show King 2 | Gameloft |
| TV Show King Party | Gameloft |
| Twin Strike: Operation Thunder | Zoo Games |
| Ubongo | Komer Entertainment |
| uDraw Studio | THQ |
| uDraw Studio: Instant Artist | THQ |
| UFC Personal Trainer: The Ultimate Fitness System | THQ |
| Ufouria: The Saga | Sunsoft |
| Ultimate Band | Disney Interactive |
| Ultimate Battle of the Sexes | Conspiracy |
| Ultimate Board Game Collection | Valcon Games |
| Ultimate Duck Hunting | Detn8 |
| Ultimate I SPY | Majesco Sales Inc. |
| Ultimate Party Challenge | Konami |
| Ultimate Shooting Collection | UFO |
| Uncharted Waters: New Horizons | Koei |
| UNO | Gameloft |
| UP | THQ |
| Urban Champion | Nintendo |
| Urbanix | Nordcurrent |

| Title | Publisher |
|---|---|
| V.I.P. Casino: Blackjack | High Voltage Software, Inc. |
| Vacation Isle: Beach Party | Warner Bros. Interactive Entertainment |
| Vacation Sports | Ubisoft |
| Valhalla Knights: Eldar Saga | XSEED Games |
| Vectorman | Sega |
| Vegas Party | Storm City Games |
| Vegas Stakes | Nintendo |
| Veggie World | Undetermined |
| Vertigo | Activision |
| Very Hungry Caterpillar's ABCs, The | CYBIRD |
| Victorious Boxers: Revolution | XSEED Games |
| Victory Run | Hudson Entertainment, Inc. |
| VIGILANTE | Hudson Entertainment, Inc. |
| Violin Paradise | Keystone Game Studio |
| Viral Survival | NIS America |
| Virtua Fighter 2 | Sega |
| Virtua Tennis | Sega |
| Virtua Tennis 4 | Sega |
| Volleyball | Nintendo |
| Voodoo Dice | Ubisoft |
| Wacky Races: Crash and Dash | Eidos Interactive |
| Wacky World of Sports | Sega |
| Walk It Out | Konami |
| Wall-E | THQ |
| Wario Land: Shake It! | Nintendo |
| Wario's Woods | Nintendo |

| Title | Publisher |
|---|---|
| WarioWare D.I.Y. Showcase | Nintendo |
| WarioWare: Smooth Moves | Nintendo |
| WarMen Tactics | Calaris Studios |
| Water Sports | Gamemill Entertainment |
| Water Warfare | Hudson Entertainment, Inc. |
| Wave Race 64 | Nintendo |
| We Cheer | NAMCO BANDAI Games America Inc. |
| We Cheer 2 | NAMCO BANDAI Games America Inc. |
| We Love Golf! | Capcom |
| We Ski | NAMCO BANDAI Games America Inc. |
| We Ski and Snowboard | NAMCO BANDAI Games America Inc. |
| We Wish You a Merry Christmas | Destineer |
| Wheel of Fortune | THQ |
| Where The Wild Things Are | Warner Bros. Interactive Entertainment |
| Where's Waldo? The Fantastic Journey | Ubisoft |
| Who Wants to be a Millionaire? | Ubisoft |
| Wicked Monsters Blast | Valcon Games |
| Wii Fit | Nintendo |
| Wii Fit Plus | Nintendo |
| Wii Music | Nintendo |
| Wii Party | Nintendo |
| Wii Play | Nintendo |
| Wii Play: Motion | Nintendo |
| Wii Sports | Nintendo |
| Wii Sports Resort | Nintendo |
| Wild Earth: African Safari | Majesco Sales Inc. |

| Title | Publisher |
|---|---|
| Wild Guns | Natsume |
| Wild West Guns | Gameloft |
| Wild West Shootout | Zoo Games |
| Wing Island | Hudson Entertainment, Inc. |
| Winter Blast: 9 Snow & Ice Games | Destineer |
| Winter Sports 2: The Next Challenge | Conspiracy |
| Winter Sports 3 | Warner Bros. Interactive Entertainment |
| Winter Sports: The Ultimate Challenge | Conspiracy |
| Winter Stars | Deep Silver |
| Wipeout 2 | Activision |
| Wipeout: The Game | Activision |
| Wizardology | Codemasters |
| Wolf of the Battlefield: COMMANDO | Sega |
| Wolf of the Battlefield: MERCS | Sega |
| Wonder Boy | Sega |
| Wonder Boy III: Monster Lair | Sega |
| Wonder Boy III: The Dragon's Trap | Sega |
| Wonder Boy in Monster Land | Sega |
| Wonder Boy in Monster World | Sega |
| Wonder World Amusement Park | Majesco Sales Inc. |
| Word Searcher | Digital Leisure |
| Word Searcher Deluxe | Digital Leisure |
| WordJong Party | Destineer |
| World Championship Athletics | Conspiracy |
| World Championship Poker featuring Howard Lederer: All In | Crave Entertainment |

| Title | Publisher |
|-------|-----------|
| World Class Baseball | Hudson Entertainment, Inc. |
| WORLD HEROES | D4 Enterprise |
| World of Goo | 2D Boy |
| World of Outlaws: Sprint Cars | THQ |
| World of Zoo | THQ |
| World Party Games | Dreamcatcher |
| World Series of Poker: Tournament of Champions | Activision |
| World Sports Competition | Hudson Entertainment, Inc. |
| Worms: A Space Oddity | THQ |
| Worms: Battle Islands | THQ |
| Wrecking Crew | Nintendo |
| WWE 12 | THQ |
| WWE All-Stars | THQ |
| WWE SmackDown vs. Raw 2008 | THQ |
| WWE SmackDown vs. Raw 2009 | THQ |
| WWE SmackDown vs. Raw 2010 | THQ |
| WWE SmackDown vs. Raw 2011 | THQ |
| WWII Aces | Destineer |
| Xenoblade Chronicles | Nintendo |
| Xevious | NAMCO BANDAI Games America Inc. |
| Xmas Puzzle | EnjoyUp Games |
| X-Men Origins: Wolverine | Activision |
| X-Men: Destiny | Activision |
| Yamaha Supercross | Zoo Games |
| Yard Sale Hidded Treasures: Sunnyville | Konami |

| Title | Publisher |
|---|---|
| Yoga | Dreamcatcher |
| Yogi Bear: The Video Game | D3Publisher of America |
| Yoshi | Nintendo |
| Yoshi's Cookie | Nintendo |
| Yoshi's Story | Nintendo |
| You Don't Know Jack | THQ |
| You, Me, and the Cubes | Nintendo |
| Your Shape: Featuring Jenny McCarthy | Ubisoft |
| Ys Book I and II | Hudson Entertainment, Inc. |
| Yu-Gi-Oh! 5D Duel Transer | Konami |
| Yu-Gi-Oh! 5D's Wheelie Breakers | Konami |
| Yummy Yummy Cooking Jam | Virtual Toys |
| Zack & Wiki: Quest For Barbaros' Treasure | Capcom |
| Zanac | D4 Enterprise |
| Zany Golf | Destineer |
| Zaxxon | Sega |
| Zelda II: The Adventure of Link | Nintendo |
| Zhu Zhu Pets: Wild Bunch | Activision |
| Zoda's Revenge: StarTropics II | Nintendo |
| Zombie Panic in Wonderland | Akaoni Studio |
| Zombies Ate My Neighbors | LucasArts |
| Zombii Attack | Gamers Digital |
| Zoo Disc Golf | Sonalysts, Inc. |
| Zoo Hospital | Majesco Sales Inc. |
| Zoo Vet Endangered Animals | Vivendi Games |
| Zooloretto | Playlogic Entertainment |

| Title | Publisher |
|---|---|
| Zumba Fitness | Majesco Sales Inc. |
| Zumba Fitness 2 | Majesco Sales Inc. |

**Exhibit G**

**UltimatePointer, L.L.C.'s Disclosures
Under Patent Local Rule 3-1 and 3-2**

**EXHIBIT G**

The following are the Wii games that are presently known and available to UltimatePointer which include programming that invokes a calibration procedure using a single, software generated, calibration point that has a predetermined relation to the screen image, wherein a user input signals that the Wii controller is directed at that calibration point.

| Title | Publisher | Calibration Procedure |
|---|---|---|
| Link's Crossbow Training | Nintendo | Adjust Alignment |
| The Legend of Zelda: Skyward Sword | Nintendo | Pause/Point at the Center of the Screen/Press Down |
| The Legend of Zelda: Twilight Princess | Nintendo | Pause/Point at the Center of the Screen/Press Down |
| Wii Sports Resort | Nintendo | Calibration procedure appears at start of game play |

**Exhibit H**

**UltimatePointer, L.L.C.'s Disclosures
Under Patent Local Rule 3-1 and 3-2**

## EXHIBIT H

The following are the Wii games that are presently known and available to UltimatePointer which include programming that invokes a calibration procedure using at least two, software-generated, calibration points that have a predetermined relation to the screen image, wherein a user input signals that the Wii controller is directed at the calibration points.

| Title | Publisher | Calibration Procedure |
|---|---|---|
| Cabela's Big Game Hunter 2012 | Activision | Options/Controls/Layout/Top Shot Elite Style/Calibration (four point calibration) |
| Cabela's Dangerous Hunts 2011 | Activision | Options/Controls/Use Calibration |
| Call of Duty: Modern Warfare: Reflex Edition | Activision | Controls/Button Layout/Wii Zapper Style and Controls/Adjust Wii Zapper |
| Call of Duty: World at War | Activision | Controls/Adjust Wii Zapper Aim/Wii Zapper Calibration |
| Dead Space Extraction | Electronic Arts | Options/Set Player Controls/Wii Zapper/Press 1 and 2 to Calibrate |
| Ghost Squad | Sega | Options/Adjust Aim |
| The Conduit | Sega | Options/Video Options/Sensor Bar Calibration |
| The House of the Dead 2 & 3 Return | Sega | Options/Calibration/Player 1 Calibration |
| The House of the Dead: Overkill | Sega | Options/Player Controls/Aim Calibration |

**Exhibit I**

**UltimatePointer, L.L.C.'s Disclosures
Under Patent Local Rule 3-1 and 3-2**

**EXHIBIT I**

**PR 3.1 DISCLOSURE RE U.S. PATENT NO. 7,746,321**

-1-

461167-v2/2884-00100

**Claim 5**

A method for controlling a parameter related to position of a cursor on a projected computer screen image, comprising:

FIG. 1



The drawing represents a Wii game system 1 having a Wii console or computer 3 (such as the Wii console presently depicted on the Nintendo website at http://www.nintendo.com/wii ) , a handheld controller 7, a Wii game 4, a display screen 2 and IR lights 8a, 8b that are included in what Nintendo and other Defendants refer to as a sensor bar. (http://www.nintendo.com/wii/what-is-wii/#/whats-in-the-box).

For purposes of this chart in identifying where each claim element is found, controller 7 is representative of each controller identified on any of Exs A-D. Likewise, IR lights 8a, 8b are representative of each sensor bar identified on Ex. E, and game 4 is representative of each game identified on any of Exs F-H.

The arrangement shown at left is apparatus enabling performance of a method for controlling a parameter related to position of a cursor on a projected computer screen image.

461167-2/2884-00100

-2-

A371

measuring an angle between a pointing line and a first line, said first line being related in a predetermined way to at least one of Earth's magnetic field direction and Earth's gravity field direction,



FIG. 6

A sensing device in handheld controller 7 includes an image sensing device 40, image processing circuit 41 and accelerometer 37. The sensing device measures an angle between a pointing line and a first line, where the first line is related to the Earth's gravity field direction.

-3-

461167-2/2884-00100

A372

and said pointing line having a predetermined relation to a pointing device;

FIG. 3A



Handheld controller 7 is a pointing device and has an enclosure 31. A pointing line that extends along the Z axis of the enclosure has a predetermined relation to the controller.

461167-2/2884-00100

using a parameter related to the measured angle to control the parameter of said cursor on said computer screen image.

CPU 10 and GPU 12 of computer 3 are coupled to the sensing device in handheld controller 7. A parameter related to the measured angle is used by CPU 10 and/or GPU 12 to control the parameter of the cursor on the image displayed on screen 2.



FIG. 2

461167-2/2884-00100

A374

| **Claim 6**<br>The method of claim 5, further comprising: | | A sensing device in handheld controller 7 includes an image sensing device 40, image processing circuit 41 and accelerometer 37. The sensing device measures the angle between the pointing line and the first line. The pointing line along the Z axis of controller 7 has a predetermined relation to the point-of-aim of the controller 7. |
|---|---|---|
| first measuring the angle between said pointing line and said first line, said pointing line having a predetermined relation to a point-of-aim; | <br>FIG. 6 | |
| establishing a calibration point, said calibration point having a predetermined relation to said computer screen image; | | A first calibration point is established and has a predetermined relation to the image, e.g., a point positioned at the center of the screen 2 and illustrated by a button displayed on the screen 2. A first calibration point may likewise be positioned, for example, at a corner of the screen 2 and illustrated by the image of a button or bulls eye displayed on the screen 2. |

461167-2/2/2884-00100

directing said pointing line to substantially pass through said calibration point while second measuring the angle between said pointing line and said first line;

FIG. 3A



Handheld controller 7 is directed such that the Z axis (the pointing line) substantially passes through the calibration point while the sensing device measures the angle between the pointing line and the first line.

461167-2/2884-00100

using the first measured angle and the second measured angle to constrain a parameter related to said point-of-aim whereby the cursor parameter is controlled by position of said point-of-aim measured relative to said projected computer screen image.



FIG. 2

CPU 10 and/or GPU 12 use the first measured angle and the second measured angle to constrain a parameter related to the point-of-aim of the controller 7, whereby the cursor parameter is controlled by position of the point-of-aim measured relative to the projected computer screen image.

461167-2/2884-00100

A377

**Claim 12**

A method for controlling a parameter related to position of a cursor on a computer screen image, comprising:

FIG. 1



The drawing represents a Wii game system 1 having a Wii console or computer 3 (such as the Wii console presently depicted on the Nintendo website at http://www.nintendo.com/wii) , a handheld controller 7, a Wii game 4, a display screen 2 and IR lights 8a, 8b that are included in what Nintendo and other Defendants refer to as a sensor bar. (http://www.nintendo.com/wii/what-is-wii/#/whats-in-the-box).

For purposes of this chart in identifying where each claim element is found, controller 7 is representative of each controller identified on any of Exs A-D. Likewise, IR lights 8a, 8b are representative of each sensor bar identified on Ex. E, and game 4 is representative of each game identified on any of Exs F-H.

The arrangement shown at left is apparatus enabling performance of a method for controlling a parameter related to position of a cursor on a computer screen image.

461167-v2/2884-00100

A378

| | |
|---|---|
| measuring a first angle between a pointing line and a first line; | A sensing device in handheld controller 7 includes an image sensing device 40, image processing circuit 41 and accelerometer 37. The sensing device measures a first angle between a pointing line and a first line, such as a line that is related to Earth's gravity field direction. |
| | <br>FIG. 6 |
| measuring a second angle between said pointing line and a second line, | The sensing device measures a second angle between the pointing line and a second line, such as a line that is related to Earth's gravity field direction |
| said first line being related in a predetermined way to a geographic reference, | The first line is related to the Earth's gravity field direction. |
| said second line being related in a predetermined way to a geographic reference, | The second line is related to the Earth's gravity field direction. |

461167-2/2884-00100

A379

said pointing line having a predetermined relation to said pointing device, and

FIG. 3A



Handheld controller 7, a pointing device, has an enclosure 31 with a pointing line that extends along the Z axis of the enclosure. The pointing line has a predetermined relation to the controller 7.

-11-

461167-2/2884-00100

**A380**

CPU 10 and GPU 12 of computer 3 are coupled to the sensing device in handheld controller 7. CPU 10 and/or GPU 12 use a first parameter related to the first angle, and a second parameter related to the second angle to control the parameter of the cursor on the image on computer screen 2.



FIG 2

using a first parameter related to the first angle, and a second parameter related to the second angle to control the parameter of said cursor on said computer screen image,

461167-v2/2884-00100

| whereby said cursor position parameter is controlled by movement of said pointing device. | | The cursor position parameter is controlled by moving the handhold controller 7. |
| --- | --- | --- |

-13-

461167-2/2884-00100

**A382**

| Claim 15 | FIG. 1 | |
|---|---|---|
| A pointing device for controlling a feature on an image generated by a computer, comprising; |  | The drawing represents a Wii game system 1 having a Wii console or computer 3 (such as the Wii console presently depicted on the Nintendo website at http://www.nintendo.com/wii ) , a handheld controller 7, a Wii game 4, a display screen 2 and IR lights 8a, 8b that are included in what Nintendo and other Defendants refer to as a sensor bar. (http://www.nintendo.com/wii/what-is-wii/#/whats-in-the-box).

For purposes of this chart in identifying where each claim element is found, controller 7 is representative of each controller identified on any of Exs A-D. Likewise, IR lights 8a, 8b are representative of each sensor bar identified on Ex. E, and game 4 is representative of each game identified on any of Exs F-H.

Handheld controller 7 is a pointing device for controlling a feature on an image generated by Wii computer 3 on screen 2. |

461167-2/2884-00100

A383

a handheld enclosure having a predetermined relation to a pointing line;

Handheld controller 7 has an enclosure 31 with a predetermined relation to a pointing line that extends along the Z axis of the enclosure.

FIG. 3A



-15-

461167-2/2884-00100

**A384**

| | | |
|---|---|---|
| a sensing device for generating first data indicative of a first spatial state of said enclosure while the pointing line is directed at a first calibration point, | **FIG. 6**<br> | A sensing device in the controller 7 includes an image sensing device 40, image processing circuit 41 and accelerometer 37. The sensing device generates first data indicative of a first spatial state of enclosure 31 while the pointing line is directed at a first calibration point. |
| said first calibration point having a predetermined relation to the image, | | A first calibration point has a predetermined relation to the image, e.g., a point positioned at the center of the screen 2 and illustrated by a button displayed on the screen 2. A first calibration point may likewise be positioned, for example, at a corner of the screen 2 and illustrated by the image of a button or bulls eye displayed on the screen 2. |

-16-

461167-2/2884-00100

**A385**

| | | |
|---|---|---|
| and for generating second data indicative of a second spatial state of said enclosure while the pointing line is directed at a non-calibration point on the image; and |   FIG. 6 | The sensing device generates second data indicative of a second spatial state of enclosure 31 while the pointing line is directed at a point that is other than a calibration point. |
| a communication element coupled to said sensing device for providing control data to the computer for controlling the feature on the image, | | The controller 7 includes a wireless module 44 and antenna 45 coupled to the sensing device which provides control data to computer 3 for controlling a feature on the image displayed on screen 2. |
| said control data being based on said first data and said second data, | | The control data provided to computer 3 is based on the first and second data. |

-17-

461167-v2/2884-00100

wherein the feature on the image can be controlled based on the relation between the first spatial state and the second spatial state of said enclosure.

FIG. 2



A feature on the image shown on screen 2 is controlled by computer 3 based on control data received from controller 7. The control data is based on first and second data, which are indicative of first and second spatial states (respectively) of the enclosure 31. The feature on the image therefore can be controlled based on the relation between the first and second spatial state of the enclosure.

461167-v2/2884-00100

**Claim 19**

The pointing device according to claim 15, wherein said sensing device includes an accelerometer.

FIG. 6



The sensing device in enclosure 31 of controllers 7 identified on Ex. A includes an acceleration sensor 37.

-19-

461167-2/2884-00100

A388

| Claim 20 | FIG. 3A | The first spatial state and second |
|---|---|---|
| The pointing device according to claim 19, wherein said first spatial state and said second spatial state comprise an orientation of said enclosure. |  | spatial state include an orientation of the enclosure 31 of controller 7. |

-20-

461167-2/2884-00100

**A389**

-21-

461167-v2/2884-00100

A390

**Claim 23**

The pointing device according to claim 15, wherein said sensing device includes a gyroscope.

FIG. 6



The sensing device in the enclosure 31 of all the controllers 7 identified in Ex. C includes a gyroscope.

**Claim 25**

The pointing device according to claim 15, wherein said sensing device includes an image sensor.

FIG. 6



The sensing device in enclosure 31 of all controllers 7 identified on Ex. A includes an image sensing device 40 and image processing circuit 41.

-22-

461167-2/2884-00100

## Claim 27

An apparatus for determining a spatial relation between a computer generated image and a user-wielded pointing device, comprising:

FIG. 1



The drawing represents a Wii game system 1 having a Wii console or computer 3 (such as the Wii console presently depicted on the Nintendo website at http://www.nintendo.com/wii ), a handheld controller 7, a Wii game 4, a display screen 2 and IR lights 8a, 8b that are included in what Nintendo and other Defendants refer to as a sensor bar. (http://www.nintendo.com/wii/what-is-wii/#/whats-in-the-box).

For purposes of this chart in identifying where each claim element is found, controller 7 is representative of each controller identified on any of Exs A-D. Likewise, IR lights 8a, 8b are representative of each sensor bar identified on Ex. E, and game 4 is representative of each game identified on any of Exs F-H.

The combination shown at left is an apparatus for determining a spatial relation between a computer generated image and a user-wielded pointing device.

-23-

461167-v2/2884-00100

| | | |
|---|---|---|
| a sensing device for generating first calibration data indicative of a first spatial state of the pointing device, | <br>FIG. 6 | The apparatus includes controller 7 having a sensing device that includes image sensing device 40, image processing circuit 41 and accelerometer 37. The sensing device generates first calibration data indicative of a first spatial state of controller 7, which is a pointing device. |
| said sensing device being at least partly contained in the pointing device; | | Image sensing device 40, image processing circuit 41 and accelerometer 37 are contained in controller 7. |

-24-

461167-v2/2884-00100

| | | |
|---|---|---|
| a user input device to indicate that the pointing device is located at a first position and directed towards a first point, | <br>FIG. 3A | Controller 7 includes one or more buttons, each a user input device. A button is pressed to indicate when the pointing device is located at a first position and directed towards a first point. |
| said first point having a predetermined relation to the image; and | | A first point has a predetermined relation to the image, e.g., a point positioned at the center of the screen 2 and illustrated by an image of a button displayed at the screen center. |

-25-

461167-2/2884-00100

A394

a processor coupled to said sensing device and said user input device and programmed to use said first calibration data to determine the spatial relation between the image and the pointing device located at said first position,



FIG. 2

CPU 10 and GPU 12 of computer 3 are coupled to the sensing device and to a control button (user input device) of controller 7 via wireless module 44, receiver unit 6 and other components. CPU 10 and/or GPU 12 are programmed to use the first calibration data to determine the spatial relation between the image on screen 2 and the controller 7 located at the first position

461167-v2/2884-00100

FIG. 6

The spatial relation is used by CPU 10 and/or GPU 12 to control a feature on the image displayed on screen 2.

wherein the spatial relation is provided to control a feature on the image.

-27-

461167-2/2884-00100

**Claim 31**

The apparatus of claim 27, wherein said sensing device includes at least one of an accelerometer, a gravity sensor, a magnetic field sensor, a gyroscope, an image sensor and an inclinometer.

FIG. 6



The sensing device in enclosure 31 of all controllers 7 identified in Exhibit A includes acceleration sensor 37 and an image sensing device 40.

The sensing device in the enclosure 31 of all controllers 7 identified in Ex. C further includes a gyroscope.

-28-

461167-2/2884-00100

**Claim 32**

The apparatus of claim 27, wherein said sensing device generates second calibration data indicative of a second spatial state of the pointing device,



FIG. 6

The sensing device includes image sensing device 40, image processing circuit 41 and accelerometer 37 that generate second calibration data indicative of a second spatial state of enclosure 31 of controller 7, a pointing device.

-29-

461167-2/2884-00100

A398

wherein said user input device further indicates that the pointing device is substantially located at a second position and directed towards a second point, said second point having a predetermined relation to the image, and

FIG. 3A



Controller 7 includes one or more buttons, each a user input device. A button is pressed to indicate when the pointing device is substantially located at a second position and directed towards a second point that has a predetermined relation to the image.

The second point may be positioned, for example, at a corner of the screen 2 and illustrated by the image of a button or bulls eye displayed on the screen 2.

-30-

461167-2/2884-00100

wherein said processor further uses said second calibration data in determining the spatial relation between the image and the pointing device.



FIG. 2

CPU 10 and/or GPU 12 also use the second calibration data in determining the spatial relation between the image on screen 2 and the pointing device, controller 7.

-31-

A400

**Claim 33**

An apparatus for controlling a feature on an image generated by a computer, comprising:

FIG. 1



The drawing represents a Wii game system 1 having a Wii console or computer 3 (such as the Wii console presently depicted on the Nintendo website at http://www.nintendo.com/wii ) , a handheld controller 7, a Wii game 4, a display screen 2 and IR lights 8a, 8b that are included in what Nintendo and other Defendants refer to as a sensor bar. (http://www.nintendo.com/wii/what-is-wii/#whats-in-the-box).

For purposes of this chart in identifying where each claim element is found, controller 7 is representative of each controller identified on any of Exs A-D. Likewise, IR lights 8a, 8b are representative of each sensor bar identified on Ex. E, and game 4 is representative of each game identified on any of Exs F-H.

The combination shown at left is an apparatus for controlling a feature on an image generated by a computer.

-32-

461167-v2/2884-00100

A401

| a handheld enclosure including a sensing device which provides data; | FIG. 6  | Controller 7 includes a handheld enclosure 31 housing image sensing device 40, image processing circuit 41 and accelerometer 37. The sensing device provides data. |
| a user input device to indicate that said enclosure is being directed towards a first calibration point, | FIG. 9A  | Controller 7 includes one or more buttons, each a user input device. A button is pressed to indicate when the enclosure is directed towards a first calibration point. |

461167-2/2884-00100

**A402**

| | |
|---|---|
| said first calibration point having a predetermined relation to the image; and | A first calibration point has a predetermined relation to the image, e.g., a point positioned at the center of the screen 2, and illustrated by an image of a button displayed at the screen center. A first calibration point may likewise be positioned, for example, at a corner of the screen 2 and illustrated by the image of a button or bulls eye displayed on the screen 2. |

-34-

**A403**

a processor coupled to said sensing device and said user input device and programmed to provide control data for controlling the feature on the image,

CPU 10 and GPU 12 of computer 3 are coupled to the sensing device 40, image processing circuit 41, accelerometer 37 and a control button (user input device) of controller 7 via wireless module 44, receiver unit 6 and other components. CPU 10 and/or GPU 12 are programmed to provide control data for controlling the feature on the image displayed on screen 2.



FIG. 2



FIG. 6

-35-

461167-2/2884-00100

| | | |
|---|---|---|
| said processor using data provided by said sensing device to develop first calibration data related to said enclosure being directed towards said first calibration point and non-calibration data related to said enclosure being directed towards a non-calibration point, | <br>FIG. 2 | CPU 10 and/or GPU 12 of computer 3 use data provided by the sensing device to develop first calibration data related to the enclosure 31 being directed towards the first calibration point and non-calibration data related to the enclosure 31 being directed towards a point that is other than a calibration point. |
| said processor further using said first calibration data and said non-calibration data to develop said control data. | | CPU 10 and/or GPU 12 further use the first calibration data and the non-calibration data to develop the control data for controlling the feature on the image displayed on screen 2. |

-36-

A405

| Claim 34 | |
|---|---|
| The apparatus according to claim 33, wherein said user input device further indicates that said enclosure is being directed towards a second calibration point, said second calibration point having a predetermined relation to the image; and | FIG. 3A<br><br> | Controller 7 includes one or more buttons, each a user input device. A button is pressed to indicate when the enclosure 31 is directed towards a second calibration point that has a predetermined relation the image.<br><br>The second point may be positioned, for example, at a corner of the screen 2 and illustrated by the image of a button or bulls eye displayed on the screen 2, as examples. |

-37-

461167-v2/2884-00100

A406

CPU 10 and/or GPU 12 also use data provided by the sensing device to develop second calibration data related to the enclosure 31 being directed towards the second calibration point, with the second calibration data being used to develop the control data.



FIG. 2

wherein said processor further uses data provided by said sensing device to develop second calibration data related to said enclosure being directed towards said second calibration point, with said second calibration data being further used to develop said control data.

461167-2/2884-00100

A407

## Claim 37

The apparatus according to claim 33, wherein said sensing device includes at least one of an accelerometer, a gravity sensor, a magnetic field sensor, a gyroscope, an image sensor and an inclinometer.



FIG. 6

The sensing device in enclosure 31 of all controllers 7 identified in Exhibit A includes an acceleration sensor 37, and an image sensing device 40.

The sensing device in the enclosure 31 of all controllers 7 identified in Ex. C also includes a gyroscope.

461167-2/2884-00100

**A408**

**<u>Claim 44</u>**

A computer-readable medium or media storing computer-executable instructions for directing a computer to perform a method for controlling a feature on an image generated by a computer using a handheld enclosure which has a pointing line having a predetermined relation with the enclosure and a sensing device which provides sensor data, the method comprising:

FIG. 1



The drawing represents a Wii game system 1 having a Wii console or computer 3 (such as the Wii console presently depicted on the Nintendo website at http://www.nintendo.com/wii ) , a handheld controller 7, a Wii game 4, a display screen 2 and IR lights 8a, 8b that are included in what Nintendo and other Defendants refer to as a sensor bar. (http://www.nintendo.com/wii/what-is-wii/#whats-in-the-box).

For purposes of this chart in identifying where each claim element is found, controller 7 is representative of each controller identified on any of Exs A-D. Likewise, IR lights 8a, 8b are representative of each sensor bar identified on Ex. E, and game 4 is representative of each game identified on any of Exs F-H.

Wii game 4 is a computer-readable medium or media storing computer-executable instructions for directing computer 3 to perform a method for controlling a feature on an image generated by computer 3 on screen 2 using a handheld controller 7.

461167-2/2884-00100

A409

| | |
|---|---|
| FIG. 6 | Controller 7 includes a sensing device which provides sensor data. The sensing device includes an image sensing device 40, image processing circuit 41 and accelerometer 37. |
| FIG. 3A | Controller 7 has a pointing line along its Z axis with a predetermined relation with the controller's enclosure 31. |

-41-

determining a first spatial state of the enclosure while the pointing line is directed at a first calibration point,

The sensing device in the controller 7 provides the sensor data to computer 3.

CPU 10 and GPU 12 of computer 3 are coupled to the sensing device in handheld controller 7.

Based on sensor data received from the sensing device in the handheld controller 7, CPU 10 and/or GPU 12 in computer 3 determine a first spatial state of enclosure 31 while the pointing line of the enclosure is directed at a first calibration point.



FIG. 2



FIG. 6

-42-

| | |
|---|---|
| said first calibration point having a predetermined relation to the image, based on received sensor data; | A first calibration point is established and has a predetermined relation to the image, e.g., a point positioned at the center of the screen 2 and illustrated by a button displayed on the screen 2. A first calibration point may likewise be positioned, for example, at a corner of the screen 2 and illustrated by the image of a button or bulls eye displayed on the screen 2. |
| determining a second spatial state of the enclosure while the pointing line is directed at a non-calibration point on the image based on received sensor data; and | Based on sensor data received from the sensing device in the handheld controller 7, CPU 10 and/or CPU 12 determines a second spatial state of enclosure 31 while the pointing line is directed at a point on the image other than a calibration point. |



FIG. 2

461167-2/2884-00100

A412

controlling the feature on the image based on the relation between the first spatial state and the second spatial state of the enclosure.

Based on the relation between the first spatial state and the second spatial state of the enclosure 31, CPU 10 and/or GPU 12 control the feature on the image on computer screen 2.



FIG. 2

461167-2/2884-00100

A413

**Claim 47**

A computer-readable medium or media storing computer-executable instructions for directing a computer to perform a method for controlling a feature on an image generated by a computer using a handheld pointing device which has a sensing device which provides sensor data and a user input device to indicate that the pointing device is directed at a point, the method comprising:

FIG. 1



The drawing represents a Wii game system 1 having a Wii console or computer 3 (such as the Wii console presently depicted on the Nintendo website at http://www.nintendo.com/wii ) , a handheld controller 7, a Wii game 4, a display screen 2 and IR lights 8a, 8b that are included in what Nintendo and other Defendants refer to as a sensor bar. (http://www.nintendo.com/wii/what-is-wii/#whats-in-the-box).

For purposes of this chart in identifying where each claim element is found, controller 7 is representative of each controller identified on any of Exs A-D. Likewise, IR lights 8a, 8b are representative of each sensor bar identified on Ex. E, and game 4 is representative of each game identified on any of Exs F-H.

Wii game 4 is a computer-readable medium or media storing computer-executable instructions for directing computer 3 to perform a method for controlling a feature on an image generated by computer 3 on screen 2 using a handheld controller 7.

461167-x/22884-00100

-45-

A414

FIG. 3A



Controller 7 is a handheld pointing device and includes one or more buttons, each a user input device. A button is pressed to indicate when the enclosure 31 is directed towards a point.

FIG. 6



Controller 7 includes a sensing device which provides sensor data. The sensing device includes an image sensing device 40, image processing circuit 41 and accelerometer 37.

-46-

determining a first spatial state of the pointing device based on received sensor data when the user input device indicates that the pointing device is located at a first position and directed towards a first point, said first point having a predetermined relation to the image; and



FIG. 2

CPU 10 and GPU 12 of computer 3 are coupled to the sensing device in handheld controller 7. Based on sensor data received from the sensing device in the handheld controller 7, CPU 10 and/or GPU 12 determine a first spatial state of enclosure 31 when the user input device indicates that the controller 7 is located at a first position and directed towards a first point having a predetermined relation to the image on screen 2. Such a point may be one positioned at the center of the screen 2, and illustrated by an image of a button displayed at the screen center. Such a point may likewise be positioned, for example, at a corner of the screen 2 and illustrated by the image of a button or bulls eye displayed on the screen 2.

461167-v2/2884-00100

A416

Based on the first special state, CPU 10 and/or GPU 12 determine the spatial relation between the image on screen 2 and the pointing device, controller 7, located at the first position.



FIG. 2

determining the spatial relation between the image and the pointing device located at said first position based on the first spatial state; and

| controlling the feature on the image based on the first spatial state and the spatial relation. | | Based on the first spatial state and the spatial relation, CPU 10 and/or GPU 12 control the feature on the image on computer screen 2. |

461167-2/2884-00100

A418

**Claim 51**

A computer-readable medium or media storing computer-executable instructions for directing a computer to perform a method for controlling a feature on an image generated by a computer using a handheld enclosure which has a sensing device which provides sensor data and a user input device to indicate that the pointing device is directed at a point, the method comprising:

FIG. 1



The drawing represents a Wii game system 1 having a Wii console or computer 3 (such as the Wii console presently depicted on the Nintendo website at http://www.nintendo.com/wii ) , a handheld controller 7, a Wii game 4, a display screen 2 and IR lights 8a, 8b that are included in what Nintendo and other Defendants refer to as a sensor bar. (http://www.nintendo.com/wii/what-is-wii/#/whats-in-the-box).

For purposes of this chart in identifying where each claim element is found, controller 7 is representative of each controller identified on any of Exs A-D. Likewise, IR lights 8a, 8b are representative of each sensor bar identified on Ex. E, and game 4 is representative of each game identified on any of Exs F-H.

Wii game 4 is a computer-readable medium or media storing computer-executable instructions for directing computer 3 to perform a method for controlling a feature on an image on

-50-

461167-v2/2884-00100

A419

screen 2 generated by computer 3 using a handheld controller 7 with enclosure 31.

Controller 7 has a sensing device that provides sensor data and includes an image sensing device 40, image processing circuit 41 and accelerometer 37.

Controller 7 includes one or more buttons, each a user input device. A button is pressed to indicate that the pointing device is directed at a point.



FIG. 6



FIG. 9A

-51-

| | | |
|---|---|---|
| determining first calibration data when the user input device indicates that the enclosure is being directed towards a first calibration point, | <br><br>FIG. 2 | Based on sensor data received from the sensing device, CPU 10 and/or GPU 12 of computer 3 determine first calibration data when the user input device (e.g. button on enclosure 31) indicates that the enclosure 31 of controller 7 is being directed towards a first calibration point. |
| said first calibration point having a predetermined relation to the image, based on received sensor data; | | A first calibration point has a predetermined relation to the image, e.g., a point positioned at the center of the screen 2, and illustrated by an image of a button displayed at the screen center. A first calibration point may likewise be positioned, for example, at a corner of the screen 2 and illustrated by the image of a button or bulls eye displayed on the screen 2. |

461167-2/2884-00100

A421

| determining non-calibration data when the enclosure is being directed towards a non-calibration point on the image based on received sensor data; and | | Based on sensor data received from the sensing device, CPU 10 and/or GPU 12 of computer 3 determine non-calibration data when the enclosure 31 is being directed towards a point that is other than a calibration point. |
|---|---|---|
| controlling the feature on the image based on said first calibration data and said non-calibration data. | | Based on the first calibration data and the non-calibration data, CPU 10 and/or GPU 12 control the feature on the image displayed on screen 2. |

FIG. 2



-53-

461167-2/22884-00100

A422

| Claim 52 | |
|---|---|
| The computer-readable medium or media of claim 51, the method further comprising: | |
| determining second calibration data when the user input device indicates that the enclosure is being directed towards a second calibration point, said second calibration point having a predetermined relation to the image, based on received sensor data, | A second calibration point having a predetermined relation the image may be positioned, for example, at a corner of the screen 2 and illustrated by the image of a button or bulls eye displayed on the screen 2, as examples.

Based on sensor data received from the sensing device, CPU 10 and/or GPU 12 of computer 3 determine second calibration data when the user input device (e.g. button on enclosure 31) indicates that enclosure 31 is being directed towards a second calibration point. |
| wherein controlling the feature on the image is further based on said second calibration data. | Based on the first calibration data and the non-calibration data and the second calibration data, CPU 10 and/or GPU 12 control the feature on the image displayed on screen 2. |

-54-

A423

**Exhibit I**

**UltimatePointer, L.L.C.'s Disclosures
Under Patent Local Rule 3-1 and 3-2**

**EXHIBIT I**

**PR 3.1 DISCLOSURE REGARDING U.S. PATENT NO. 8,049,729**

**Claim 1**

An apparatus for controlling a feature on a computer generated image, the apparatus comprising:



FIG. 1

The drawing represents a Wii game system 1 having a Wii console or computer 3 (such as the Wii console presently depicted on the Nintendo website at http://www.nintendo.com/wii ) , a handheld controller 7, a Wii game 4, a display screen 2 and IR lights 8a, 8b that are included in what Nintendo and other Defendants refer to as a sensor bar. (http://www.nintendo.com/wii/what-is-wii/#/whats-in-the-box).

For purposes of this chart in identifying where each claim element is found, controller 7 is representative of each controller identified on any of Exs A-D. Likewise, IR lights 8a, 8b are representative of each sensor bar identified on Ex. E, and game 4 is representative of each game identified on any of Exs F-H.

The arrangement shown at left is an apparatus for controlling a feature on an image generated by Wii computer 3 on screen 2.

461202-v1/2884-00200

A425

a handheld device including:



FIG. 3A

Controller 7 is a handheld device.

461202-v1/2884-002/00'

**A426**

an image sensor, said image sensor generating data related to the distance between a first point and a second point, the first point having a predetermined relation to the computer generated image and the second point having a predetermined relation to a handheld

enclosure; and



FIG. 6

Enclosure 31 of controller 7 includes an image sensing device 40 and image processing circuit 41 that generate data related to the distance between a first point and a second point, the first point having a predetermined relation to the computer- generated image on screen 2, and the second point having a predetermined relation to the handheld enclosure 31.

-3-

461202-v1/2884-002001

A427

a processor coupled to said handheld device to receive said generated data related to the distance between a first

point and a second point and programmed to use the distance between the first point and the second point to

control the feature on the image.



FIG. 2

CPU 10 and GPU 12 of computer 3 are coupled to the handheld device 7 via wireless module 44, receiver unit 6 and other components to

receive the generated data related to the distance between a first

point and a second point. CPU 10 and /or CPU12 are programmed to use the distance between the first point and the second point to control the feature on the image on screen 2.

-4-

461202-v1/2884-00/200'

A428

| Claim 3 | | |
|---|---|---|
| The apparatus of claim 1, wherein said handheld device further includes: | | |
| at least one sensor generating data related to the orientation of said handheld device, and |  FIG. 6 | The handheld controllers identified on Ex. A-D all include an image sensing device 40 and image processing circuit 41 that generate data related to the orientation of the handheld controller 7.<br><br>In addition, the handheld controllers identified on Ex. A-D all include an acceleration sensor 37 that generates data related to the orientation of the handheld controller 7.<br><br>In addition, the handheld controllers identified on Ex. C and D further include a gyroscope (a sensor) that generates data related to the orientation of the handheld controller 7.<br>. |

461202-v1/2884-002/00'

| wherein said processor is further programmed to use the generated data related to the orientation to control the feature on the image. | CPU 10 and /or GPU 12 are programmed to use the generated data related to the orientation of handheld controller 7 to control the feature on the image on screen 2. |
|---|---|

461202-v1/2884-00/200'

**Claim 5**

An apparatus for controlling a feature on a computer generated image, there being calibration points provided in a predetermined relationship to the image, the apparatus comprising:

FIG. 1



The drawing represents a Wii game system 1 having a Wii console or computer 3 (such as the Wii console presently depicted on the Nintendo website at http://www.nintendo.com/wii) , a handheld controller 7, a Wii game 4, a display screen 2 and IR lights 8a, 8b that are included in what Nintendo and other Defendants refer to as a sensor bar. (http://www.nintendo.com/wii/what-is-wii/#whats-in-the-box).

For purposes of this chart in identifying where each claim element is found, controller 7 is representative of each controller identified on any of Exs A-D. Likewise, IR lights 8a, 8b are representative of each sensor bar identified on Ex. E, and game 4 is representative of each game identified on any of Exs F-H.

The arrangement shown at left is an apparatus for controlling a feature on an image generated by Wii computer 3 on screen 2. Calibration points are provided by IR lights 8a, 8b which are points that are in a predetermined relationship to the image.

461202-v1/2884-00200

Controller 7 is a handheld device.

a handheld device including:

FIG. 3A



461202-v1/2884-002/00'

**A432**

an image sensor, said image sensor generating data including data of the calibration points; and



FIG. 6

Controller 7 includes an image sensing device 40 and image processing circuit 41 that generate data including data of the calibration points, such as points represented by IR lights 8a and 8b of the sensor bar.

**A433**

a processor coupled to said handheld device to receive said generated data including data of the calibration points and programmed to use said generated data including data of the calibration points to control the feature on the image.



FIG. 2

CPU 10 and GPU 12 of computer 3 are coupled to the handheld controller 7 via wireless module 44, receiver unit 6 and other components and receive the generated data, including data of the calibration points. CPU 10 and/or GPU 12 are programmed to use the generated data, including data of the calibration points, to control the feature on the image on screen 2.

-10-

461202-v1/2884-00/200'

A434

| Claim 6 | | |
|---|---|---|
| The apparatus of claim 5, wherein said handheld device further includes: | | |
| at least one sensor generating data related to the orientation of said handheld device, and | <br><br>FIG. 6 | The handheld controllers identified on Ex. A-D all include an image sensing device 40 and image processing circuit 41 that generate data related to the orientation of the handheld controller 7.<br><br>In addition, the handheld controllers identified on Ex. A-D all include an acceleration sensor 37 that generates data related to the orientation of the handheld controller 7.<br><br>In addition, the handheld controllers identified on Ex. C and D further include a gyroscope that generates data related to the orientation of the handheld controller 7. |

-11-

A435

| wherein said processor is further programmed to use the generated data related to the orientation to control the feature on the image. | CPU 10 and/or GPU 12 are programmed to use the generated data related to the orientation to control the feature on the image on screen 2. |
|---|---|

-12-

461202-v1/2884-00200'

**Claim 12**

A method for controlling a feature on a computer generated image, there being calibration points provided in a predetermined relationship to the image, the method comprising:

FIG. 1



The drawing represents a Wii game system 1 having a Wii console or computer 3 (such as the Wii console presently depicted on the Nintendo website at http://www.nintendo.com/wii) , a handheld controller 7, a Wii game 4, a display screen 2 and IR lights 8a, 8b that are included in what Nintendo and other Defendants refer to as a sensor bar. (http://www.nintendo.com/wii/what-is-wii/#whats-in-the-box).

For purposes of this chart in identifying where each claim element is found, controller 7 is representative of each controller identified on any of Exs A-D. Likewise, IR lights 8a, 8b are representative of each sensor bar identified on Ex. E, and game 4 is representative of each game identified on any of Exs F-H.

The arrangement shown at left is apparatus enabling the performance of a method of controlling a feature on an image generated by Wii computer 3 on screen 2 where calibration points are provided by IR lights 8a, 8b, points that are in a predetermined relationship to the image.

461202-v1/2884-002/00'                                      -13-

A437

generating data including data of the calibration points by an image sensor in a handheld device; and



FIG. 6

Handheld controller 7 includes an image sensing device 40, image processing circuit 41 and accelerometer 37 that generate data including data of the calibration points, such as points represented by IR lights 8a and 8b of the sensor bar.

-14-

A438

controlling the feature on the image based on the generated data including data of the calibration points;



FIG. 2

CPU 10 and GPU 12 of computer 3 are coupled to the handheld controller 7 via wireless module 44, receiver unit 6 and other components and receive the generated data, including data of the calibration points. CPU 10 and/or GPU 12 use the generated data, including data of the calibration points, to control the feature on the image on screen 2

461202-v1/2884-00200

I'm

CPU 10 and/or GPU 12 are
programmed to use the generated
data related to the orientation to
control the feature on the image
displayed on screen 2.



FIG. 2

and controlling the feature on the
image using the generated data
related
to the orientation.

461202-v1/2884-00200'

A441

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **ULTIMATEPOINTER, LLC,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 6:11-CV-571-LED** |
| | § | |
| **NINTENDO CO., LTD.,** *et al.*, | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |
| | § | |

## ORDER

Before the Court is Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants (Docket No. 9). Defendants request that the Court sever the claims against the Retailer Defendants because they are peripheral to UltimatePointer's claims against Nintendo. They further request that the Court transfer the severed claims against Nintendo to the Western District of Washington and stay the claims against the Retailer Defendants. After this motion was fully briefed by the parties, Plaintiff served its Preliminary Infringement Contentions Pursuant to Patent Local Rule 3-1 and 3-2. *See* Docket No. 101. Defendants, in turn, filed a Motion to Sever the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants (Docket No. 119) and requested an oral hearing. That motion is now fully briefed by the parties.

In light of the new motion, which addresses the same issues but with the benefit of Plaintiff's Preliminary Infringement Contentions, the Court **DENIES AS MOOT** Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the

Retailer Defendants (Docket No. 9). Further, the Court hereby sets Defendants' Motion to Sever the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants (Docket No. 119) for hearing on **December 4, 2012 at 1:30 P.M.**

**So ORDERED and SIGNED this 21st day of September, 2012.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| **ULTIMATEPOINTER, LLC,** | |
| **Plaintiff,** | |
| | **Civil Action No. 6:11-CV-496 (LED)** |
| **v.** | **6:11-CV-571 (LED)** |
| **NINTENDO CO. LTD.,** *ET AL.*, | **Jury Trial Demanded** |
| **Defendants.** | |

## DEFENDANTS' MOTION TO RECONSIDER SEPTEMBER 21, 2012 ORDERS DENYING AS MOOT DEFENDANTS' MOTION TO SEVER AND TRANSFER THE CLAIMS AGAINST NINTENDO AND TO STAY THE CLAIMS AGAINST THE RETAILER DEFENDANTS (D.I. 184 IN THE 496 CASE AND D.I. 134 IN THE 571 CASE)

On September 21, 2012, the Court issued an Order (D.I. 184 in the 496 case)[1] denying as moot, *sua sponte*, Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants (D.I. 83 in the 496 case)[2] ("Motion to Sever"), in light of Defendants' subsequent Motion to Sever the Retailer Defendants for Misjoinder (D.I. 167 in the 496 case)[3] ("Misjoinder Motion"). But Defendants' Misjoinder Motion did not render the Motion to Sever moot. The two motions turn on different legal arguments and seek different remedies for different reasons. Accordingly, Defendants respectfully ask the Court to reconsider and withdraw its September 21, 2012, Order denying Defendants' Motion to Sever, and instead set that motion for hearing the same day as the Misjoinder Motion, December 4, 2012 (D.I. 184).

---

[1] D.I. 134 in the 571 case.
[2] D.I. 9 in the 571 case.
[3] D.I. 119 in the 571 case.

**A444**

## LEGAL STANDARD FOR MOTION TO RECONSIDER

Because the Court's September 21 Order was not part of a final judgment in this case, the Court considers Defendants' motion for reconsideration pursuant to Federal Rule of Civil Procedure 54(b), which provides that "any order or other decision, however designated, that adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). Under Rule 54, "a district court has the discretion to reconsider and revise its prior orders without the timing restrictions and jurisdictional constraints that limit the court's authority to amend a judgment under Rules 59(e) or 60(b)." *eTool Development, Inc. v. National Semiconductor Corp.*, --- F. Supp. 2d ---, 2012 WL 3112132, *2 (E.D. Tex. July 31, 2012) (Bryson, J.). But while "the source of the Court's authority to revise or amend an order or judgment is different for interlocutory orders than for final orders or judgments, many of the same policy considerations apply both to motions for reconsideration under Rule 54(b) and to motions for reconsideration under Rule 59(e)." *Id.* Accordingly, district courts—including this Court—"frequently apply the same standards to the two." *Id.*

In applying the Rule 59(e) standards set forth by the Fifth Circuit to a motion for reconsideration of an interlocutory order, this Court has established the principles that govern this motion. First, motions for reconsideration are designed to "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Helena Labs. Corp. v. Alpha Scientific Corp.,* 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (Clark, J.) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). Second, "motions for reconsideration should not be used to raise arguments that could, and

should, have been made before entry of judgment or to re-urge matters that have already been advanced by a party." *Id.*

## ARGUMENT

Defendants' Misjoinder Motion did not replace Defendants' Motion to Sever, and the relief requested is different.  Defendants' Motion to Sever is therefore not moot.  The chronology of the motions is illustrative.

When this case was filed Nintendo was the single real party in interest.  UPoint's claims against the Retailer Defendants were, and are, peripheral to the claims against Nintendo products.  Motion to Sever at 5-6.  Resolution of UPoint's claims against Nintendo would dispose of UPoint's claims against the Retailer Defendants who were involved in this action simply because they sell or resell Nintendo products.  *Id.*  Accordingly, Defendants moved to sever Nintendo from the Retailer Defendants.  *Id.*  Defendants also moved to transfer the claims against Nintendo to the Western District of Washington because it is a clearly more convenient forum once the Retailer Defendants are severed from this case.  *Id.* at 8.

During the briefing on Defendants' Motion to Sever, UPoint specifically identified for the first time additional, non-Nintendo products it was accusing.  *See* Plaintiff's Sur-Reply in Opposition to Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants (D.I. 132 in the 496 case), at 3-4.[4]  Plaintiff then expanded the scope of this litigation significantly when it served Infringement Contentions ("PICs") accusing not only Nintendo products, but also some 1,800 other non-Nintendo products made by roughly 200 different non-party manufacturers.  Misjoinder Motion at 1.  UPoint's actions raised an issue that needed to be addressed—UPoint had started asserting claims against independent parties' products that were not part of the same transaction or occurrence.  But such

---

[4] D.I. 31 in the 571 case.

claims cannot be joined in one lawsuit. Defendants, upon receiving the PICs, therefore moved to sever the claims involving the non-party products and either dismiss or stay the case against the Retailer Defendants involving those products. *Id.* at 15.

The two motions are therefore complimentary, not redundant:

- Step One: The Court should decide Defendants' Misjoinder Motion and sever and dismiss or stay all claims involving the non-party products;

- Step Two: The remaining claims will be against Nintendo products. The Court should then grant Defendants' Motion to Sever and sever the Retailer Defendants from the remaining case against Nintendo because—without the inclusion of the non-party products—resolution of UPoint's claims against Nintendo will also dispose of UPoint's peripheral claims against the Retailer Defendants; and

- Step Three: The Court should then transfer the case against Nintendo to the Western District of Washington because it is a clearly more convenient forum once the Retailer Defendants are severed.

Defendants' Misjoinder Motion only deals with Step One. Accordingly, the Motion to Sever is not moot. By denying it as such, the Court has inadvertently denied Defendants' independent arguments to sever the Retailer Defendants from Nintendo entirely, and to transfer the remaining case against Nintendo to the Western District of Washington.

For these reasons, the Defendants respectfully request that Court withdraw its Order dismissing the Motion to Sever as moot and instead set that Motion for hearing the same day as the Misjoinder Motion, December 4, 2012.

A447

Dated:  October 3, 2012

Respectfully submitted,


By: /s/ Mark C. Nelson

Mark C. Nelson
Texas Bar No. 00794361
mark.nelson@snrdenton.com
Steven M. Geiszler
Texas Bar No. 24032227
steven.geiszler@snrdenton.com
SNR DENTON US, LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas   75201-1858
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910

Arthur S. Beeman (Lead Attorney)
Admitted *pro hac vice*
arthur.beeman@snrdenton.com
SNR DENTON US, LLP
525 Market Street, Suite 2600
San Francisco, California 94105-2708
Telephone:  (415) 882-0138
Facsimile:  (415) 882-0300

Trey Yarbrough
Texas Bar No. 22133500
trey@yw-lawfirm.com
Debby E. Gunter
Texas Bar No. 24012752
debby@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Telephone:  (903) 595-3111
Facsimile:  (903) 595-0191

**Attorneys for Nintendo Co., LTD. (NCL);
Nintendo of America Inc. (NOA); Best Buy
Stores, L.P.; BestBuy.com, LLC; Best Buy
Purchasing, LLC; BJ's Wholesale Club, Inc.;
CompUSA.com, Inc.; TigerDirect, Inc.; Dell
Inc.; GameStop Corporation; PC Connection,
Inc.; QVC, Inc.; Sears, Roebuck & Co.; Kmart
Corporation; Target Corporation; Toys "R"
Us-Delaware; Trans World Entm't Corp.**

By: /s/ Christopher M. Joe w/permission
Christopher M Joe
Texas Bar No. 00787770
Buether Joe & Carpenter LLC
1700 Pacific Avenue
Suite 2390
Dallas, TX 75201
214/466-1272
Fax: 214/635-1828
Email: Chris.Joe@bjciplaw.com

**Attorney for RadioShack Corporation**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 3rd day of October, 2012. All other counsel not deemed to have consented to service in such manner will be served via facsimile transmission and/or first class mail.

/s/ Mark C. Nelson
Mark C. Nelson

**IN THE UNITED STATE DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

ULTIMATEPOINTER, L.L.C.,

     Plaintiff,

                                    CIVIL ACTION NOS.
vs.                             6:11-CV-00496-LED
                                      6:11-CV-00571-LED

NINTENDO CO., LTD. *et al*.,

     Defendants.

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO ENFORCE PATENT RULE 3-1</u>**

Plaintiff's Opposition Brief ("Pl Opp.") does not attempt rebut Defendants' Motion to Enforce Patent Rule 3-1 ("Motion"). Instead, Plaintiff provides hundreds of pages of proposed second amended contentions, effectively conceding that its earlier contentions fell short of the proper standard. Plaintiff then argues (1) that Plaintiff offered to provide this information during the meet and confer process, and (2) that the proposed second amended contentions effectively moot the Motion. Plaintiff is incorrect on both counts.

## I.     Plaintiff's Offer To Provide Information Was Not As Specific Or Extensive As Its Opposition Indicates.

The parties met and conferred over several months regarding the sufficiency of Plaintiff's contentions. *See* Motion, at 2-3 and exhibits cited therein. As part of this process, Plaintiff amended its contentions in response to deficiency notices, which included pointing out that the claim charts did not sufficiently identify Plaintiff's infringement theories, or chart any actual product. Plaintiff's amended contentions did not cure these problems. After further meeting and conferring, Defendants indicated that they would imminently file the present Motion. Only then, months after its contentions were originally due, did Plaintiff offer to provide additional information. Plaintiff did not, however, indicate that it had examined 185 games, offer to provide screen shots for each of those games, offer to chart an actual product, or indicate that it was amending its infringement theories for the non-calibration games as set forth below.

## II.    Plaintiff's Second Amended Contentions Fail To Chart An Actual Product.

The claim charts (Pl.'s Exs. I, D.I. 236-8 and 236-10) attached to Plaintiff's proposed second amended contentions, like its first amended and original claim charts, fail to chart any actual product. Instead, all three sets of claim charts identify and chart a generic, "model product" depicted by a handful of high level drawings. While Plaintiff may argue that its inclusion of screen shots (Pl.'s Exs. F1, F2, G, and H) ties some (but not all) of the asserted elements to actual accused products, the charts still fail to show where each element of each asserted claims is purportedly found in the Wii console, any controller, or any sensor bar.

Plaintiff tries to avoid this requirement in two ways. First, Plaintiff argues that Defendants' did not identify any deficiencies with respect to the Wii console. (Pl's Opp., at 9).

This is incorrect.  *See* Motion, at 3, 12-14.

Second, Plaintiff argues that there is no need for it to chart each of the 42 accused third-party controllers because those controllers "share the same relevant mechanical, electrical, and functional features."  (Pl.'s Opp. at 5-6).  Plaintiff further argues that its proposed second amended contentions obviate the need to chart each controller by inserting the word "each" in selected spots to indicate the contentions apply to all controllers and including some language relating to similar alleged, high-level functionality.  *Id.*, at 10-11.  Plaintiff is mistaken.

Each of the third-party manufacturers necessarily had design choices in creating their respective controllers (*e.g.*, different chipsets, hardware, etcetera).  Indeed, if Plaintiff has done even a cursory examination of the accused controllers, that point should be obvious.  For example, a visual comparison of the components in a Nintendo controller versus three third-party controllers reveals that each uses different chipsets.  These differences are relevant to Plaintiff's infringement theories because many of the claims (*e.g.*, claims 15, 19, 20, 23, and 25) require that the controller process data (*e.g.*, the controller generates first and second data indicative of first and second spatial states and then obtains control data based on the first and second data, which is then communicated to the computer).  The type of data collected, generated, and/or further processed and provided by the controller implicates the functionality of the chipsets and other hardware and thus may result in them operating differently from one another and from Nintendo's controllers.  Thus, Plaintiff proposed second amended contentions fail to show that its proposed high-level charts are representative of any of the nearly 50 accused controllers.  Plaintiff should be required to chart each controller.  *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F.Supp.2d 703, 708-09 (E.D. Tex. 2008) (charting a functional standard insufficient); *Bender v. Advanced Micro Devices, Inc.*, No. C-09-1149, 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010) (rejecting single claim chart because plaintiff failed to establish that accused products were representative of one another).

**III.    Plaintiff's Second Amended Contentions Provide A New Theory Of Infringement
         For Certain Games.**

Plaintiff's changing infringement theories is exemplified by its treatment of the "first

- 2 -

A452

point" requirement of claim 47. The claim requires "determining a first spatial state of the pointing device … when the pointing device is … directed at a first point, said first point having a predetermined relation to the image." Plaintiff's original contentions fail to precisely identify the point at all: "[s]uch a point *may* be one positioned at the center of screen 2 [referring to a generic drawing] and illustrated by the image of a button or bull's eye… [s]uch a point *may* likewise be positioned … at the corner of the screen." D.I. 220, Ex. 10, at 47.[1]  After being informed of deficiencies, Plaintiff amended its contentions, purportedly identifying the "first point" by mimicking the claim language:  "The first point is a location having a predetermined relation to the image and the location at which the pointing device is pointed when the pointing device is located in a first position.  An example would be a first calibration point."  *Id.* at 57.[2]

The parties met and conferred and Plaintiff did offer to provide screen shots for an unspecified number of games, but indicated that the screen shots would be identical, and that it would not chart all games.  Because Plaintiff's offer did not resolve the dispute, among other reasons, Defendants filed the present Motion.  Now, in response, Plaintiff's second amended contentions articulate *three new* infringement theories (1, 2 and 4) for the first point:

> (1) the game icon and start button used in the startup procedures depicted in Tabs F1 (disc games) and F2 (virtual console games) of Ex. F; (2) the menu buttons for the operations guide depicted in Tab F2 (virtual console games); (3) the calibration points depicted in Tabs G1 - G4 of Ex. G, and Tabs H1 - H9 of Ex. H; and (4) the menu items, targets, and playing pieces selected and/or pointed to with the Wii controller as shown in the videos of the accused Wii games in Tab F3 of Ex. F."  D.I. 236-8 at 61.

Plaintiff either held these theories back, or Plaintiff developed these new theories in response to Defendants' Motion when it became clear that the vast majority of the 1900+ accused games did not have "first points" as Plaintiff previously described them.[3]  Plaintiff now appears to contend

---

[1] This is the same definition Plaintiff used to define a "calibration point." *Id.* at 16.  Note, Defendants maintain that the "first point" of claim 47 should be properly construed to be a "calibration point," but that is an issue for claim construction.

[2] Plaintiff then included the previous example of where a first point "may" be located that it used in its original contentions. *Id.* at 58.  This example is again the same as Plaintiff identifies for a "calibration point."

[3] Given that Plaintiff indicated it had purchased and tested *eight* games on March 12, 2012 (*see* Sur-Reply in Opp. to Defs' Mot. to Sever and Transfer (D.I. 132-2 in the 496 case)) and now, nine months later, indicates it has tested *185* games, the later is the more likely theory.  This conclusion is further bolstered by Plaintiff's questioning the

that any use of a motion-based controller to interact with any point that is on or part of an image infringes this claim.

Plaintiff's failure to disclose its infringement theories at the proper time prejudiced Defendants.  Had Plaintiff set forth this theory at the outset, Defendants would have performed a correspondingly broad prior art search.[4]  Plaintiff should not be permitted to amend its contentions at this date with new theories of infringement without Defendants' being permitted the opportunity to respond to those theories by, for example, amending their invalidity contentions.  In fact, Plaintiff recently indicated it would oppose Defendants' request to amend their invalidity contentions identifying additional prior located, in part, from searching done as a result of Plaintiff's first amended contentions.[5]

## IV.    Plaintiff's Proposed Second Amended Contentions Are Still Deficient.

Plaintiff's proposed second amended contentions are still deficient.  For example, Plaintiff's claim chart for "first point" with respect to claim 47 still does not indicate how the identified "first points" have a "predetermined relation to the image."  The buttons, menu items, and the like are part of the image, so how can they have a predetermined relationship to it?  Also, how is it determined that the user is using the input device to indicate that the controller is located at a "first position" and directed toward a "first point," as opposed to located at some other position and directed simply to a point that is not the "first point"?  The proposed second amended contentions also fail to adequately identify the "spatial relation between the image and the pointing device," stating simply that it is the "physical relationship" between the image and the pointing device.  D.I. 236-8, at 63.  There are an infinite number of potential "physical relationships" between the image and the pointing device: Which one or ones does Plaintiff allege infringe?  Likewise, Plaintiff's disclosure for "controlling the feature on the image based

relevancy of the pre-filing information requested by Defendants, including specifically the identification of the number of accused products that it purchased and the dates of those purchases.  *See* Ex. 2, Correspondence.
[4] Defendants may, for example, have searched for, and focused on, any product that used a handheld device to start sequence or to navigate a menu (*e.g.*, television art, computer art, and older video game art).  Also, to address Plaintiff's criticism (Pl's Opp., at 13), the Virtual Console games did not appear in Defendants' P.R. 3-3 Invalidity Contentions because Plaintiff did not articulate an infringement theory against those games until now.
[5] As a result, Defendants will shortly be filing a Motion for Leave to Amend.

on the first spatial state and the spatial relation" is little more than a paraphrase of the claim language.[6]  The parties agree that the "spatial state" is the "state of the object [pointing device] in space, characterized by its position and orientation."  Plaintiff's proposed language (*see* fn 6) fails to provide any indication that the system determines the pointing device's position and orientation in space, or that the system uses this allegedly determined information to determine the "spatial relation" between the image and the pointing device, or how the system allegedly controls a feature on the image using the non-explained spatial state and non-explained spatial relation.[7]  Plaintiff's contentions, therefore, remain deficient.  *Global Sessions LP v. Travelocity.com LP*, 2012 WL 1903903, at *2 (E.D. Tex. May 25, 2012) ("a party may not rely on vague, conclusory language or simply mimic the language of the claims.").

The proposed Second Amended Contentions also fail to tie the allegedly infringing products to any particular Defendant.  The Proposed Contentions indicate that each Retailer Defendant infringe 1,912 games,[8] 49 controllers, and 43 sensor bars.  It is unlikely that each Retailer Defendant sells or has sold each of the non-party accused games, controllers, or sensor bars.

## CONCLUSION

Defendants are entitled to know Plaintiff's specific theory of infringement for each accused product and product combination, and Plaintiff is obligated to identify those theories with specificity for each product.  Plaintiff has failed to do so.  The Court should order Plaintiff to further amend its proposed second amended contentions to meet the requirements of P.R. 3-1.

---

[6] *Compare* claim language to Plaintiff's disclosure:  "[k]nowing the first spatial state . . . and knowing the spatial relation . . .the data is compared . . . enabling CPU 10 and/or GPU 12 to control a feature on the image on computer screen 2, such control including causing the feature to change form or appearance on the screen." D.I. 236-8, at 64.
[7] Plaintiff will no doubt blame these failures on Nintendo's purported deficient production. *See* Pl.'s Opp., at 4.  But Plaintiff did not even raise the adequacy of Nintendo's production until *after* this Motion was filed.  To date, Nintendo has (i) produced numerous technical documents regarding the operation of the Wii console, the Nintendo controllers and sensor bar, and (ii) agreed to make source code available for inspection once a Protective Order is entered in the case.  Nintendo has not yet produced e-mail because the parties are still finalizing their custodian lists. Nintendo did not produce information for every accused Nintendo game because Nintendo did not believe such information was relevant based on Nintendo's understanding of Plaintiff's claims.  Lastly, Nintendo and Plaintiff have been working diligently to resolve any discovery disputes relating to Nintendo since Plaintiff raised the issue.
[8] This number reflects Plaintiff's decision to no longer accuse unreleased games that should never have been accused in the first place.

Dated: December 20, 2012

Respectfully submitted

By: /s/ Mark C. Nelson
Mark C. Nelson
Texas Bar No. 00794361
mark.nelson@snrdenton.com
Steven M. Geiszler
Texas Bar No. 24032227
steven.geiszler@snrdenton.com
SNR DENTON US, LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201-1858
Telephone: (214) 259-0900
Facsimile: (214) 259-0910

Arthur S. Beeman (Lead Attorney)
Admitted *pro hac vice*
arthur.beeman@snrdenton.com
SNR DENTON US, LLP
525 Market Street, Suite 2600
San Francisco, California 94105-2708
Telephone: (415) 882-0138
Facsimile: (415) 882-0300

Trey Yarbrough
Texas Bar No. 22133500
trey@yw-lawfirm.com
Debby E. Gunter
Texas Bar No. 24012752
debby@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Telephone:  (903) 595-3111
Facsimile:   (903) 595-0191
**Attorneys for Nintendo Co., Ltd.; Nintendo of
America Inc.; Best Buy Stores, L.P.;
BestBuy.com, LLC; Best Buy Purchasing, LLC;
BJ's Wholesale Club, Inc.; CompUSA.com Inc.;
TigerDirect, Inc.; Dell Inc.; GameStop Corp.;
PC Connection, Inc.; QVC, Inc.; Sears, Roebuck
& Co.; Kmart Corporation; Target
Corporation; Toys "R" Us-Delaware; Trans
World Entm't Corp.; Wal-Mart Stores, Inc.;
Wal-Mart Stores Texas, LLC; Sam's East, Inc.;
and Sam's West, Inc.**

- 6 -

Michael C. Smith
Texas Bar No. 18650410
michaelsmith@siebman.com
SIEBMAN BURG PHILLIPS & SMITH, LLP
P O Box 1556
Marshall, TX 75671-1556
Telephone:  (903) 938-8900
Facsimile:  (972) 767-4620

David E Finkelson
Virginia Bar No.  44059
dfinkelson@mcguirewoods.com
MCGUIREWOODS LLP
One James Center
901 E Cary St
Richmond, VA 23219
Telephone:  (804) 775-1157
Facsimile: (804) 225-5377

**Attorneys for Defendants Wal-Mart Stores, Inc., Wal-Mart Stores Texas, L.L.C., Sam's East, Inc., and Sam's West, Inc.**

Dated:  December 20, 2012

Respectfully submitted

By: /s/ Christopher M. Joe w/permission

Christopher M Joe
Texas Bar No. 00787770
Buether Joe & Carpenter LLC
1700 Pacific Avenue
Suite 2390
Dallas, TX 75201
214/466-1272
Fax: 214/635-1828
Email: Chris.Joe@bjciplaw.com

**Attorney for Defendant RadioShack Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 20th day of December, 2012. Any other counsel of record will be served by first class U.S. mail on this same date.


By: /s/ Mark C. Nelson
        Mark C. Nelson


15041218\V-1

# Exhibit 1

**EXTERIOR**

**i-con by ASD Kid Friendly Remote and Wired Controller Mini**



**PowerA ProPack Mini Plus**



**Nintendo Wii Remote Plus**



**NYKO Wand**





**PCB Top: Nintendo Wii Remote Plus**



**PCB Top: NYKO Wand**



**PCB Top: i-con by ASD Kid Friendly Remote and Wired Controller Mini**



**PCB Top: PowerA ProPack Mini Plus**



- 3 -

**PCB Bottom: Nintendo Wii Remote Plus**

The white circles highlight the microprocessor on the Nintendo Wii Remote Plus, as well as the lack of a corresponding microprocessor chip in the other three controllers.



**PCB Bottom: NYKO Wand**



**PCB Bottom: i-con by ASD Kid Friendly Remote and Wired Controller Mini**



**PCB Bottom: PowerA ProPack Mini Plus**





**Bluetooth Chip: Nintendo Wii Remote Plus**

**Bluetooth Chip: NYKO Wand**



- 7 -

**Bluetooth Chip: i-con by ASD Kid Friendly Remote and Wired Controller Mini**

Defendants were unable to ascertain which chip provided Bluetooth functionality in this device.

This only further demonstrates that Plaintiff's infringement contentions fail the notice function of P.R. 3-1.

- 8 -

**Bluetooth Chip: PowerA ProPack Mini Plus**



A468

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ULTIMATEPOINTER, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| NINTENDO CO., LTD., | § | CIVIL ACTION NO. 6:11-CV-00496-LED |
| NINTENDO OF AMERICA INC., | § | |
| GAME STOP CORPORATION, | § | |
| BEST BUY STORES, L.P., | § | |
| BESTBUY.COM, LLC, | § | |
| BEST BUY PURCHASING, LLC, | § | |
| SEARS, ROEBUCK AND CO., | § | |
| KMART CORPORATION, | § | |
| TARGET CORPORATION, | § | |
| WAL-MART STORES, INC., | § | |
| WAL-MART STORES TEXAS, L.L.C., | § | |
| SAM'S EAST, INC., | § | |
| SAM'S WEST, INC., | § | |
| RADIOSHACK CORPORATION, | § | |
| TOYS "R" US-DELAWARE, INC., | § | |
| DELL INC., | § | |
| QVC, INC., | § | |
| TRANS WORLD ENTERTAINMENT | § | |
| CORPORATION, | § | |
| BJ'S WHOLESALE CLUB, INC., | § | |
| PC CONNECTION, INC., | § | |
| COMPUSA.COM, INC., and | § | |
| TIGER DIRECT, INC., | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff UltimatePointer, L.L.C., files this Third Amended Complaint for Patent

Infringement against Defendants Nintendo Co., Ltd.; Nintendo of America Inc.; GameStop

Corporation; Best Buy Stores, L.P.; BestBuy.com, LLC; Best Buy Purchasing, LLC; Sears,

Roebuck and Co.; Kmart Corporation; Target Corporation; Wal-Mart Stores, Inc.; Wal-Mart

-1-

Stores Texas, L.L.C.; Sam's East, Inc.; Sam's West, Inc.; RadioShack Corporation; Toys "R" Us-Delaware, Inc.; Dell Inc.; QVC, Inc.; Trans World Entertainment Corporation; BJ's Wholesale Club, Inc.; PC Connection, Inc.; CompUsa.com, Inc.; and Tiger Direct, Inc. (collectively the "Defendants"). In support, Plaintiff UltimatePointer, L.L.C. alleges as follows:

## INTRODUCTION

1.     This is an action for patent infringement brought under 35 U.S.C. § 271 for Defendants' direct and indirect infringement of United States Patent No. 7,746,321 ("the '321 patent) by making, using, selling, offering to sell, and/or importing Nintendo Wii video game console systems, Wii games, Wii controllers, and Wii sensor bars (the "accused products") in this Judicial District and elsewhere in the United States, without authorization of the owner of the '321 patent, Plaintiff UltimatePointer, L.L.C.

## THE PARTIES

2.     Plaintiff UltimatePointer, L.L.C. ("UltimatePointer") is a limited liability company organized and existing under the laws of the state of Delaware.

3.     Defendant Nintendo Co., Ltd. ("Nintendo Japan") is a Japanese corporation with a regular place of business at 11-1 Kamitoba hokotate-cho, Minami-ku, Kyoto 601-8501 Japan. Nintendo Japan is not registered to do business in Texas and does not have a regular place of business in Texas. Nintendo Japan has appeared in this action through its counsel of record.

4.     Defendant Nintendo of America Inc. ("Nintendo America") is a corporation organized and existing under the laws of the State of Washington, with a regular place of business at 4600 150th Avenue N.E., Redmond, Washington 98052. Nintendo America is registered to do business in Texas and has appeared in this action through its counsel of record.

-2-

5.      Defendant GameStop Corporation ("GameStop") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 625 Westport Parkway, Grapevine, Texas 76051.  GameStop is registered to do business in Texas and has appeared in this action through its counsel of record.

6.      Defendant Best Buy Stores, L.P. ("Best Buy Stores") is a corporation organized and existing under the laws of the Commonwealth of Virginia with a regular place of business at 7601 Penn Ave South, Richfield, Minnesota 55423.  Best Buy Stores is registered to do business in Texas and has appeared in this action through its counsel of record.

7.      Defendant BestBuy.com, LLC ("BestBuy.com") is a corporation organized and existing under the laws of the Commonwealth of Virginia with a regular place of business at 7601 Penn Ave South, Richfield, Minnesota 55423.  BestBuy.com is registered to do business in Texas and has appeared in this action through its counsel of record.

8.      Defendant Best Buy Purchasing, LLC ("Best Buy Purchasing") is a corporation organized and existing under the laws of the State of Minnesota with a regular place of business at 7601 Penn Ave South, Richfield, Minnesota 55423.  Best Buy Purchasing is not registered to do business in Texas, but has appeared in this action through its counsel of record.

9.      Defendant Sears, Roebuck and Co. ("Sears") is a corporation organized and existing under the laws of the State of New York with a regular place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Sears is registered to do business in Texas and has appeared in this action through its counsel of record.

10.     Defendant Kmart Corporation ("Kmart") is a corporation organized and existing under the laws of the State of Michigan with a regular place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Kmart has a regular place of business in Texas at 1100

-3-

McCann Road, Longview, Texas 75601 and has appeared in this action through its counsel of record.

11.      Defendant Target Corporation ("Target") is a corporation organized and existing under the laws of the State of Minnesota with a regular place of business at 1000 Nicollet Mall, Minneapolis, MN 55403.  Target is registered to do business in Texas and has appeared in this action through its counsel of record.

12.      Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716.  Wal-Mart is registered to do business in Texas and has appeared in this action through its counsel of record.

13.      Defendant Wal-Mart Stores Texas, L.L.C. ("Wal-Mart Texas") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 SW 8th Street, Bentonville, Arkansas 72716.  Wal-Mart Texas is registered to do business in Texas and has appeared in this action through its counsel of record.

14.      Defendant Sam's West, Inc. ("Sam's West") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 SW 8th Street, Bentonville, Arkansas 72716.  Sam's West is registered to do business in Texas and has appeared in this action through its counsel of record.

15.      Defendant Sam's East, Inc. ("Sam's East") is a corporation organized and existing under the laws of the State of Arkansas with a regular place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716.  Sam's East is registered to do business in Texas and has appeared in this action through its counsel of record.

-4-

16. Defendant RadioShack Corporation ("RadioShack") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 300 Trinity Campus Circle, Fort Worth, Texas 76102. RadioShack is registered to do business in Texas and has appeared in this action through its counsel of record.

17. Defendant Toys "R" Us-Delaware, Inc. ("Toys R Us") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at One Geoffrey Way, Wayne, New Jersey 07470. Toys R Us is registered to do business in Texas and has appeared in this action through its counsel of record.

18. Defendant Dell Inc. ("Dell") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 1 Dell Way, Round Rock, Texas 78682. Dell is registered to do business in Texas and has appeared in this action through its counsel of record.

19. Defendant QVC, Inc. ("QVC") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 1200 Wilson Blvd., West Chester, Pennsylvania 19380. QVC is registered to do business in Texas and has a regular place of business in Texas located at 9855 Westover Hills Boulevard San Antonio, Texas 78251. QVC has appeared in this action through its counsel of record.

20. Defendant Trans World Entertainment Corporation ("Trans World") is a corporation organized and existing under the laws of the State of New York with a regular place of business at 38 Corporate Circle, Albany, New York 12203. Trans World is registered to do business in Texas and has a regular place of business in Texas located at 4601 South Broadway Tyler, Texas 75703. Trans World has appeared in this action through its counsel of record.

480972 1/2884 00200

21.     Defendant BJ's Wholesale Club, Inc. ("BJ's Wholesale") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 25 Research Drive, Westborough, Massachusetts 01581.  BJ's Wholesale is not registered to do business in Texas and does not have a regular place of business in Texas.  BJ's Wholesale has appeared in this action through its counsel of record.

22.     Defendant PC Connection, Inc. ("PC Connection") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 730 Milford Road, Merrimack, New Hampshire 03054.  PC Connection is not registered to do business in Texas and does not have a regular place of business in Texas.  PC Connection has appeared in this action through its counsel of record.

23.     Defendant CompUsa.com, Inc. ("CompUsa") is a corporation organized and existing under the laws of the State of Florida with a regular place of business at 7795 West Flagler Street, Suite 35, Miami, Florida 33144.  CompUsa is not registered to do business in Texas and does not have a regular place of business in Texas.  CompUsa has appeared in this action through its counsel of record.

24.     Defendant Tiger Direct, Inc. ("Tiger Direct") is a corporation organized and existing under the laws of the State of Florida with a regular place of business at 7795 West Flagler Street, Suite 35, Miami, Florida 33144.  Tiger Direct is not registered to do business in Texas and does not have a regular place of business in Texas.  Tiger Direct has appeared in this action through its counsel of record.

25.     Defendants Nintendo Japan and Nintendo America manufacture, sell, offer for sale, and/or import the accused Nintendo Wii video game console systems, and certain of the accused Wii games, Wii controllers, and Wii sensor bars.  The remaining Defendants (the

"Retailer Defendants") are retailers who use, sell, offer to sell, and/or import the foregoing accused Nintendo products, as well as accused Wii games, Wii controllers, and Wii sensor bars made by third parties. All of the Defendants use, sell, and/or offer to sell the accused Nintendo Wii video game console systems.

## JURISDICTION AND VENUE

26. The Court has original and exclusive federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Act, 35 U.S.C. § 271. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1400(b) because each of the Defendants resides in this District, is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c), and/or has committed or induced acts of infringement in this District and has a regular and established place of business in this District.

27. Each of the Defendants is subject to this Court's specific personal jurisdiction in compliance with the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because each Defendant has sold accused products in the State of Texas, actively induced and/or contributed to infringement in Texas, and/or has established regular and systematic business contacts with the State of Texas.

28. Joinder of all Defendants is proper under Rule 20 of the Federal Rules of Civil Procedure, and to the extent applicable, 35 U.S.C. § 299. Without limitation, Nintendo Japan and Nintendo America are jointly liable for infringement with the remaining Defendants with respect to successive wholesale and retail sales of the same Nintendo Wii video game console systems, Nintendo Wii games, Nintendo Wii controllers, and Nintendo Wii sensor bars. As such, questions of fact common to all Defendants will arise in the action.

-7-

A475

29.     Plaintiff UltimatePointer's claims against the Retailer Defendants for using, selling, offering to sell, and/or importing accused Wii games, Wii controllers, and Wii sensor bars made by third parties are properly joined under Rule 18 of the Federal Rules of Civil Procedure.  Plaintiff UltimatePointer asserts these claims against the Retailer Defendants who are joined as opposing parties under Rule 20 of the Federal Rules of Civil Procedure and/or 35 U.S.C. § 299.

**COUNT ONE**
**INFRINGEMENT OF UNITED STATES PATENT NO. 7,746,321**

30.     On June 29, 2010, U.S. Patent No. 7,746,321 ("the '321 patent") was duly and lawfully issued for an invention entitled "Easily Deployable Interactive Direct-Pointing System and Presentation Control System and Calibration Method Therefor."

31.     The '321 patent was issued from United States Patent Application Serial No. 11/135,911, which was published on December 8, 2005 as United States Patent Application Publication No. 2005/0270494 A1 ("the '494 publication").

32.     By written assignment from the sole inventor, Plaintiff UltimatePointer owns all right, title, and interest in and to the '321 patent, and all rights arising thereunder, including the right to bring suit and recover damages for past infringement.  A true and correct copy of the '321 patent is attached hereto as Exhibit A.

33.     Nintendo Japan has directly infringed and continues to directly infringe the '321 patent by making, using, selling, offering for sale, and/or importing the accused Nintendo products (Nintendo Wii video game console systems, Nintendo Wii games, Nintendo Wii controllers, and Nintendo Wii sensor bars), and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including resellers and

-8-

A476

end users) to use, sell, offer for sale, and/or import the accused products. Nintendo Japan's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

34.     Nintendo America has directly infringed and continues to directly infringe the '321 patent by making, using, selling, offering for sale, and/or importing the accused Nintendo products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including resellers and end users) to use, sell, offer for sale, and/or import the accused products. Nintendo America's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

35.     Prior to the issuance of the '321 patent or the filing of this action, Nintendo America and/or Nintendo Japan were expressly and specifically notified of the existence of the '494 publication and that unauthorized manufacturing, sales, and importation of the accused products would infringe any patent issued with claims as published in the '494 publication.

36.     Prior to the filing of this action, Nintendo America was further expressly and specifically notified of the issuance and existence of the '321 patent, and that its unauthorized manufacturing, sales, and importation of the accused products was an infringement of the '321 patent.

37.     Nintendo America and/or Nintendo Japan refused to cease infringement after notice of the '494 publication and notice of the '321 patent. Instead, Nintendo America and/or Nintendo Japan continue to deliberately infringe the '321 patent. Nintendo America's and/or Nintendo Japan's infringement of the '321 patent was and is willful and in bad faith, entitling UltimatePointer to increased damages under 35 U.S.C. § 284 and to reasonable attorney fees under 35 U.S.C. § 285.

38.     GameStop has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. GameStop's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

39.     Best Buy Stores has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  Best Buy Stores' actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

40.     BestBuy.com has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  BestBuy.com's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

41.     Best Buy Purchasing has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products.  Best Buy Purchasing's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

-10-

42.     Sears has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Sears's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

43.     Kmart has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Kmart's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

44.     Target has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Target's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

45.     Wal-Mart has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Wal-Mart's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

46.     Wal-Mart Texas has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and

-11-

inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Wal-Mart Texas' actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

47. Sam's West has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Sam's West's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

48. Sam's East has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Sam's East's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

49. RadioShack has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. RadioShack's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

50. Toys R Us has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly

-12-

infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Toys R Us' actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

51. Dell has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Dell's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

52. QVC has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. QVC's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

53. Trans World has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Trans World's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

54. BJ's Wholesale has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused

480972 1/2884 00200

products. BJ's Wholesale's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

55. PC Connection has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. PC Connection's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

56. CompUsa has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. CompUsa's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

57. Tiger Direct has directly infringed and continues to directly infringe the '321 patent by using, selling, offering for sale, and/or importing the accused products, and has indirectly infringed and continues to indirectly infringe the '321 patent by contributing to and inducing others (including end users) to use, sell, offer for sale, and/or import the accused products. Tiger Direct's actions were unauthorized and infringe the '321 patent under 35 U.S.C. § 271.

58. Nintendo Japan and Nintendo America has knowledge of the '321 patent at least as early as December 10, 2010. The Retailer Defendants each had knowledge of the '321 patent at least as early as service of Plaintiff UltimatePointer's Complaint in this action.

-14-

59.     With knowledge of the '321 patent and with the intent to induce infringement by end users and/or downstream resellers, Defendants have induced infringement, and will continue to induce infringement of the '321 patent by, *inter alia*, providing the accused products without license or authority to downstream retailers and/or end users, and by instructing direct infringers to use, sell, and/or offer to sell the accused products in an infringing manner, and by actively encouraging and promoting those infringing activities.   Defendants' actions have caused downstream resellers and end users to directly infringe the '321 patent by using, selling, and/or offering to sell the accused products.   Nintendo Japan and Nintendo America's inducing infringement occurred from at least as early as December 10, 2010.  The Retailer Defendants' inducing infringement occurred from at least as early as service of Plaintiff UltimatePointer's Complaint in this action.

60.     With knowledge of the '321 patent and the intent to contribute to infringement by others, Defendants have contributorily infringed the '321 patent by, *inter alia*, making, selling, offering for sale and/or importing supplemental, ancillary, and/or replacement components that are specially made and/or specially adapted for infringing use with the accused products, including but not limited to, Wii controllers, Wii games, and Wii sensor bars, all of which are designed and intended for use with the accused products and have no substantial non-infringing use.  Defendants' actions have caused downstream resellers and end users to directly infringe the '321 patent by using, selling, and/or offering to sell the accused products.  Nintendo Japan and Nintendo America's contributory infringement occurred from at least as early as December 10, 2010.  The Retailer Defendants' contributory infringement occurred from at least as early as the date Defendants were served with Plaintiff UltimatePointer's Complaint in this action.

-15-

61.     Defendants' infringement of the '321 patent has caused harm and damage to UltimatePointer.  Pursuant to 35 U.S.C. § 284, UltimatePointer is entitled to damages adequate to compensate it for Defendants' infringement in an amount to be determined at trial, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the court.

62.     Nintendo America and/or Nintendo Japan have infringed and continue to infringe claims from the '321 patent that were present in the '494 publication and others that are substantially identical to those present in the '494 publication.  Pursuant to 35 U.S.C. § 154(d), UltimatePointer is therefore entitled to a reasonable royalty for such infringement beginning on the date of publication of the '494 publication.

### JURY DEMAND

63.     UltimatePointer hereby demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff UltimatePointer requests the entry of a judgment in its favor and against Defendants including the following:

a)      A finding and judgment that Defendants have directly and/or indirectly infringed the '321 patent either literally or under the doctrine of equivalents;

b)      A judgment and award of the damages due to Defendants' infringement of the '321 patent, including damages for any continuing post-verdict infringement occurring between time of verdict and entry of final judgment, with an order for an accounting as required, and also including a reasonable royalty for infringement by Nintendo America and/or Nintendo Japan after publication of the '494 publication;

-16-

c)      A finding and judgment that infringement by Nintendo America and/or Nintendo Japan was willful and in bad faith, and an award of enhanced damages since the issuance of the '321 patent pursuant to 35 U.S.C. § 284;

d)      A finding and judgment that infringement by the Retailer Defendants was willful since acquiring knowledge of the '321 patent and continuing to persist in infringement in bad faith, which is a date no later than the date Defendants were served with Plaintiff UltimatePointer's Original Complaint, and an award of enhanced damages pursuant to 35 U.S.C. § 284;

e)      A finding and judgment that this case is exceptional, and an award of reasonable attorney fees to Plaintiff UltimatePointer pursuant to 35 U.S.C. § 285;

f)      An award of pre-judgment and post-judgment interest as allowed by law;

g)      Costs of court; and

h)      Such other and further relief, at law or in equity, as the Court may deem just and proper.

/ / /

480972 1/2884 00200

DATE:   October 9, 2012

Respectfully submitted,

/s/ *Gregory L. Maag*, with permission by
    Thomas L. Warden
Gregory L. Maag, Lead Attorney
State Bar No. 12748500
gmaag@conleyrose.com
Charles J. Rogers
State Bar No. 00786205
crogers@conleyrose.com
Thomas L. Warden
State Bar No. 24004174
twarden@conleyrose.com
CONLEY ROSE, P.C.
600 Travis Street, Suite 7100
Houston, Texas 77002
Telephone: (713) 238-8000
Facsimile:  (713) 238-8088

S. Calvin Capshaw
State Bar No. 03783900
ccapshaw@capshawlaw.com
Elizabeth L. DeRieux
State Bar No. 05770585
ederieux@capshawlaw.com
D. Jeffrey Rambin
State Bar No. 00791478
jrambin@capshawlaw.com
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone: (903) 236-9800
Facsimile:  (903) 236-8787

ATTORNEYS FOR PLAINTIFF
ULTIMATEPOINTER, L.L.C.

-18-

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October, 2012, the foregoing **_Third Amended Complaint for Patent Infringement_** was filed electronically using the Court's CM/ECF system, and that the Notice of Electronic Filing from the court is proof of service of the document on all counsel who are registered users of the CM/ECF system and who are therefore deemed to have consented to electronic service.


/s/ Thomas L. Warden
Thomas L. Warden

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ULTIMATEPOINTER, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| NINTENDO CO., LTD., | § | CIVIL ACTION NO. 6:11-CV-00571-LED |
| NINTENDO OF AMERICA INC., | § | |
| GAME STOP CORPORATION, | § | |
| BEST BUY STORES, L.P., | § | |
| BESTBUY.COM, LLC, | § | |
| BEST BUY PURCHASING, LLC, | § | |
| SEARS, ROEBUCK AND CO., | § | |
| KMART CORPORATION, | § | |
| TARGET CORPORATION, | § | |
| WAL-MART STORES, INC., | § | |
| WAL-MART STORES TEXAS, L.L.C., | § | |
| SAM'S EAST, INC., | § | |
| SAM'S WEST, INC., | § | |
| RADIOSHACK CORPORATION, | § | |
| TOYS "R" US-DELAWARE, INC., | § | |
| DELL INC., | § | |
| QVC, INC., | § | |
| TRANS WORLD ENTERTAINMENT | § | |
| CORPORATION, | § | |
| BJ'S WHOLESALE CLUB, INC., | § | |
| PC CONNECTION, INC., | § | |
| COMPUSA.COM, INC., and | § | |
| TIGER DIRECT, INC., | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |
| | § | |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff UltimatePointer, L.L.C., files this Second Amended Complaint for Patent

Infringement against Defendants Nintendo Co., Ltd.; Nintendo of America Inc.; GameStop

Corporation; Best Buy Stores, L.P.; BestBuy.Com, LLC; Best Buy Purchasing, LLC; Sears,

Roebuck and Co.; Kmart Corporation; Target Corporation; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas, L.L.C.; Sam's East, Inc.; Sam's West, Inc.; RadioShack Corporation; Toys "R" Us-Delaware, Inc.; Dell Inc.; QVC, Inc.; Trans World Entertainment Corporation; BJ's Wholesale Club, Inc.; PC Connection, Inc.; CompUsa.com, Inc.; and Tiger Direct, Inc. (collectively the "Defendants"). In support, Plaintiff UltimatePointer, L.L.C. alleges as follows:

## INTRODUCTION

1.      This is an action for patent infringement brought under 35 U.S.C. § 271 for Defendants' infringement of United States Patent No. 8,049,729 ("the '729 patent) by the Defendants' making, using, selling, offering to sell, and/or importing Nintendo Wii video game console systems, Wii games, Wii controllers, and Wii sensor bars (collectively, the "accused products"), in this Judicial District and elsewhere in the United States, without authorization of the owner of the '729 patent, Plaintiff UltimatePointer, L.L.C.

## THE PARTIES

2.      Plaintiff UltimatePointer, L.L.C. ("UltimatePointer") is a limited liability company organized and existing under the laws of the state of Delaware.

3.      Defendant Nintendo Co., Ltd. ("Nintendo Japan") is a Japanese corporation with a regular place of business at 11-1 Kamitoba hokotate-cho, Minami-ku, Kyoto 601-8501 Japan. Nintendo Japan is not registered to do business in Texas, does not have a regular place of business in Texas. Nintendo Japan has appeared in this action through its counsel of record.

4.      Defendant Nintendo of America Inc. ("Nintendo America") is a corporation organized and existing under the laws of the State of Washington, with a regular place of business at 4600 150th Avenue N.E., Redmond, Washington 98052. Nintendo America is registered to do business in Texas and has appeared in this action through its counsel of record.

-2-

5.     Defendant GameStop Corporation ("GameStop") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 625 Westport Parkway, Grapevine, Texas 76051.  GamesStop is registered to do business in Texas and has appeared in this action through its counsel of record.

6.     Defendant Best Buy Stores, L.P. ("Best Buy Stores") is a corporation organized and existing under the laws of the Commonwealth of Virginia with a regular place of business at 7601 Penn Ave South, Richfield, Minnesota 55423.  Best Buy Stores is registered to do business in Texas and has appeared in this action through its counsel of record.

7.     Defendant BestBuy.com, LLC ("BestBuy.com") is a corporation organized and existing under the laws of the Commonwealth of Virginia with a regular place of business at 7601 Penn Ave South, Richfield, Minnesota 55423.  BestBuy.com is registered to do business in Texas and has appeared in this action through its counsel of record.

8.     Defendant Best Buy Purchasing, LLC ("Best Buy Purchasing") is a corporation organized and existing under the laws of the State of Minnesota with a regular place of business at 7601 Penn Ave South, Richfield, Minnesota 55423.  Best Buy Purchasing is not registered to do business in Texas, but has appeared in this action through its counsel of record.

9.     Defendant Sears, Roebuck and Co. ("Sears") is a corporation organized and existing under the laws of the State of New York with a regular place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Sears is registered to do business in Texas and has appeared in this action through its counsel of record.

10.    Defendant Kmart Corporation ("Kmart") is a corporation organized and existing under the laws of the State of Michigan with a regular place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Kmart has a regular place of business in Texas at 1100

-3-

McCann Road, Longview, Texas 75601 and has appeared in this action through its counsel of record.

11.     Defendant Target Corporation ("Target") is a corporation organized and existing under the laws of the State of Minnesota with a regular place of business at 1000 Nicollet Mall, Minneapolis, MN 55403.  Target is registered to do business in Texas and has appeared in this action through its counsel of record.

12.     Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716.  Wal-Mart is registered to do business in Texas and has appeared in this action through its counsel of record.

13.     Defendant Wal-Mart Stores Texas, L.L.C. ("Wal-Mart Texas") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 SW 8th Street, Bentonville, Arkansas 72716.  Wal-Mart Texas is registered to do business in Texas and has appeared in this action through its counsel of record.

14.     Defendant Sam's West, Inc. ("Sam's West") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 702 SW 8th Street, Bentonville, Arkansas 72716.  Sam's West is registered to do business in Texas and has appeared in this action through its counsel of record.

15.     Defendant Sam's East, Inc. ("Sam's East") is a corporation organized and existing under the laws of the State of Arkansas with a regular place of business at 805 Moberly Lane, Bentonville, Arkansas 72716.  Sam's East is registered to do business in Texas and has appeared in this action through its counsel of record.

-4-

16.     Defendant RadioShack Corporation ("RadioShack") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 300 Trinity Campus Circle, Fort Worth, Texas 76102.  RadioShack is registered to do business in Texas and has appeared in this action through its counsel of record.

17.     Defendant Toys "R" Us-Delaware, Inc. ("Toys R Us") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at One Geoffrey Way, Wayne, New Jersey 07470.  Toys R Us is registered to do business in Texas and has appeared in this action through its counsel of record.

18.     Defendant Dell Inc. ("Dell") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 1 Dell Way, Round Rock, Texas 78682.  Dell is registered to do business in Texas and has appeared in this action through its counsel of record.

19.     Defendant QVC, Inc. ("QVC") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 1200 Wilson Road, West Chester, Pennsylvania 19380.  QVC is registered to do business in Texas and has a regular place of business in Texas located at 9855 Westover Hills Boulevard San Antonio, Texas 78251.  QVC has appeared in this action through its counsel of record.

20.     Defendant Trans World Entertainment Corporation ("Trans World") is a corporation organized and existing under the laws of the State of New York with a regular place of business at 38 Corporate Circle, Albany, New York 12203.  Trans World is registered to do business in Texas and has a regular place of business in Texas located at 4601 South Broadway, Tyler, Texas 75703.  Trans World has appeared in this action through its counsel of record.

-5-

21.     Defendant BJ's Wholesale Club, Inc. ("BJ's Wholesale") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 25 Research Drive, Westborough, Massachusetts 01581.  BJ's Wholesale is not registered to do business in Texas and does not have a regular place of business in Texas.  BJ's Wholesale has appeared in this action through its counsel of record.

22.     Defendant PC Connection, Inc. ("PC Connection") is a corporation organized and existing under the laws of the State of Delaware with a regular place of business at 730 Milford Road, Merrimack, New Hampshire 03054.  PC Connection is not registered to do business in Texas and does not have a regular place of business in Texas.  PC Connection  has appeared in this action through its counsel of record.

23.     Defendant CompUsa.com, Inc. ("CompUsa") is a corporation organized and existing under the laws of the State of Florida with a regular place of business at 7795 West Flagler Street, Suite 35, Miami, Florida 33144.  CompUsa is not registered to do business in Texas and does not have a regular place of business in Texas.  CompUsa  has appeared in this action through its counsel of record.

24.     Defendant Tiger Direct, Inc. ("Tiger Direct") is a corporation organized and existing under the laws of the State of Florida with a regular place of business at 7795 West Flagler Street, Suite 35, Miami, Florida 33144.  Tiger Direct is not registered to do business in Texas and does not have a regular place of business in Texas.  Tiger Direct has appeared in this action through its counsel of record.

25.     Defendants Nintendo Japan and Nintendo America manufacture, sell, offer for sale, and/or import the accused Nintendo Wii video game console systems, and certain of the accused Wii games, Wii controllers, and Wii sensor bars.  The remaining Defendants (the

-6-

"Retailer Defendants") are retailer who use, sell, offer for sale, and/or import the foregoing accused Nintendo products, as well as accused Wii games, Wii controllers, and Wii sensors bars made by third parties. All of the Defendants use, sell, and/or offer to sell the accused Nintendo Wii video game console systems.

## JURISDICTION AND VENUE

26.     The Court has original and exclusive federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Act, 35 U.S.C. § 271. Venue is proper in this Judicial District pursuant to 28 U.S.C. 1400(b) because each of the Defendants resides in this District, is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c), and/or has committed or induced acts of infringement and has a regular and established place of business in this District.

27.     Each of the Defendants is subject to this Court's specific personal jurisdiction in compliance with the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because each Defendant has sold accused products in the State of Texas, actively induced and/or contributed to infringement in Texas, and/or has established regular and systematic business contacts with the State of Texas.

28.     Joinder of all Defendants is proper under Rule 20 of the Federal Rules of Civil Procedure and 35 U.S.C. § 299. Without limitation, Nintendo Japan and Nintendo America are jointly liable for infringement with the remaining Defendants with respect to successive wholesale and retail sales of the same Nintendo Wii video game console systems, Nintendo Wii games, Nintendo Wii controllers, and Nintendo Wii sensor bars. As such, questions of fact common to all Defendants will arise in the action.

-7-

29.     Plaintiff UltimatePointer's claims against the Retailer Defendants for using, selling, offering to sell, and/or importing accused Wii games, Wii controllers, and Wii sensor bars made by third parties are properly joined under Rule 18 of the Federal Rules of Civil Procedure. Plaintiff UltimatePointer asserts these claims against the Retailer Defendants who are joined as opposing parties under Rule 20 of the Federal Rules of Civil Procedure and 35 U.S.C. § 299.

## COUNT ONE
## INFRINGEMENT OF UNITED STATES PATENT NO. 8,049,729

30.     On November 1, 2011, U.S. Patent No. 8,049,729 ("the '729 patent") was duly and lawfully issued for an invention entitled "Easily Deployable Interactive Direct-Pointing System and Presentation Control System and Calibration Method Therefor."

31.     The '729 patent was issued from United States Patent Application Serial No. 12/782,980, which was published on November 11, 2010 as United States Patent Application Publication No. 2010/0283732 ("the '732 publication").

32.     By written assignment from the sole inventor, Plaintiff UltimatePointer owns all right, title, and interest in and to the '729 patent, and all rights arising thereunder, including the right to bring suit and recover damages for past infringement. A true and correct copy of the '729 patent is attached hereto as Exhibit A.

33.     Nintendo Japan has directly infringed and continues to directly infringe the '729 patent by making, using, selling, offering for sale, and/or importing the accused products. Nintendo Japan's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

34.     Nintendo America has directly infringed and continues to directly infringe the '729 patent by making, using, selling, offering for sale, and/or importing the accused products. Nintendo America's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

35.     Prior to the issuance of the '729 patent, and prior to the filing of this action, Nintendo America and Nintendo Japan were expressly and specifically notified of the issuance and existence of U.S. Patent No. 7,746,321 ("the '321 patent"), the parent patent from which the '729 patent is a continuation, and notified that their unauthorized manufacturing, use, sales, and importation of the accused products was an infringement of the '321 patent.

36.     The '321 patent was issued from U.S. Patent Application Serial No. 11/135,911, which was published on December 8, 2005 as U.S. Patent Application Publication No. 2005/0270494A1 ("the '494 publication").  Prior to the issuance of the '729 patent and prior to the filing of this action, Nintendo America and/or Nintendo Japan was expressly and specifically notified of the existence of the '494 publication and that any unauthorized manufacturing, use, sales, and importation of the accused products would infringe any patent issued with claims as published in the '494 publication.

37.     Nintendo America and Nintendo Japan refused to cease infringement after notice of the '494 publication and notice of their infringement of the '321 patent.  Instead, Nintendo America and Nintendo Japan continue to deliberately infringe at least the '321 patent.

38.     GameStop has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  GameStop's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

39.     Best Buy Stores has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  Best Buy Stores' actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

40.     BestBuy.com has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  BestBuy.com's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

41.     Best Buy Purchasing has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  Best Buy Purchasing's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

42.     Sears has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  Sears's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

43.     Kmart has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  Kmart's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

44.     Target has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  Target's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

45.     Wal-Mart has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  Wal-Mart's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

46.     Wal-Mart Texas has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products.  Wal-Mart Texas' actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

47.     Sam's West has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Sam's West's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

48.     Sam's East has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Sam's East's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

49.     RadioShack has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. RadioShack's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

50.     Toys R Us has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Toys R Us' actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

51.     Dell has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Dell's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

52.     QVC has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. QVC's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

53.     Trans World has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Trans World's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

480972 1/2884 00200

54. BJ's Wholesale has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. BJ's Wholesale's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

55. PC Connection has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. PC Connection's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

56. CompUsa has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. CompUsa's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

57. Tiger Direct has directly infringed and continues to directly infringe the '729 patent by using, selling, offering for sale, and/or importing the accused products. Tiger Direct's actions were unauthorized and infringe the '729 patent under 35 U.S.C. § 271.

58. Each of the Defendants had knowledge of the '729 patent at least as early as service of Plaintiff UltimatePointer's Complaint in this action.

59. With knowledge of the '729 patent and with the intent to induce infringement by end users and/or downstream resellers, Defendants have induced infringement, and will continue to induce infringement of the '729 patent by, *inter alia*, providing the accused products without license or authority to downstream retailers and/or end users, and by instructing direct infringers to use, sell, and/or offer to sell the accused products in an infringing manner, and by actively encouraging and promoting those infringing activities. Defendants' actions have caused downstream resellers and end users to directly infringe the '729 patent by using, selling, and/or offering to sell the accused products. Defendants' inducing infringement occurred from at least as early as service of Plaintiff UltimatePointer's Complaint in this action.

60.     With knowledge of the '729 patent and the intent to contribute to infringement by others, Defendants have contributorily infringed the '729 patent by, *inter alia*, making, selling, offering for sale and/or importing supplemental, ancillary, and/or replacement components that are specially made and/or specially adapted for infringing use with the accused products, including but not limited to, Wii controllers, Wii games, and Wii sensor bars, all of which are designed and intended for use with the accused products and have no substantial non-infringing use. Defendants' actions have caused downstream resellers and end users to directly infringe the '729 patent by using, selling, and/or offering to sell the accused products.   Defendants' contributory infringement occurred from at least as early as service of Plaintiff UltimatePointer's Complaint in this action.

61.     Defendants have refused to cease infringement after notice of the '729 patent and the filing of Plaintiff UltimatePointer's Complaint in this action.   Instead, Defendants continue to deliberately infringe the '729 patent.   Defendants' infringement of the '729 patent was and is willful and in bad faith, entitling UltimatePointer to increased damages under 35 U.S.C. § 284 and to reasonable attorney fees under 35 U.S.C. § 285.

62.     Defendants' infringement of the '729 patent has caused harm and damage to UltimatePointer.   Pursuant to 35 U.S.C. § 284, UltimatePointer is entitled to damages adequate to compensate it for Defendants' infringement in an amount to be determined at trial, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the court.

### JURY DEMAND

63.     UltimatePointer hereby demands a trial by jury on all issues so triable.

-13-

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff UltimatePointer requests the entry of a judgment in its favor and against Defendants including the following:

a)      A finding and judgment that Defendants have infringed the '729 patent either literally or under the doctrine of equivalents;

b)      A judgment and award of the damages arising from Defendants' infringement of the '729 patent, including damages for any continuing post-verdict infringement occurring between the time of the verdict and the entry of final judgment, with an order for an accounting as required;

c)      A finding and judgment that Defendants' infringement was willful and in bad faith, and an award of enhanced damages pursuant to 35 U.S.C. § 284 since at least as early as service of Plaintiff UltimatePointer's Complaint in this action;

d)      An award of pre-judgment and post-judgment interest as allowed by law;

e)      Costs of court; and

f)      Such other and further relief, at law or in equity, as the Court may deem just and proper.

/ / /

-14-

DATE:   October 9, 2012                    Respectfully submitted,


                                           /s/ *Gregory L. Maag*, with permission by
                                           ___Thomas L. Warden_____
                                           Gregory L. Maag, Lead Attorney
                                           State Bar No. 12748500
                                           gmaag@conleyrose.com
                                           Charles J. Rogers
                                           State Bar No. 00786205
                                           crogers@conleyrose.com
                                           Thomas L. Warden
                                           State Bar No. 24004174
                                           twarden@conleyrose.com
                                           CONLEY ROSE, P.C.
                                           600 Travis Street, Suite 7100
                                           Houston, Texas 77002
                                           Telephone: (713) 238-8000
                                           Facsimile:  (713) 238-8088

                                           S. Calvin Capshaw
                                           State Bar No. 03783900
                                           ccapshaw@capshawlaw.com
                                           Elizabeth L. DeRieux
                                           State Bar No. 05770585
                                           ederieux@capshawlaw.com
                                           D. Jeffrey Rambin
                                           State Bar No. 00791478
                                           jrambin@capshawlaw.com
                                           CAPSHAW DERIEUX, LLP
                                           114 E. Commerce Ave.
                                           Gladewater, Texas 75647
                                           Telephone: (903) 236-9800
                                           Facsimile:  (903) 236-8787

                                           ATTORNEYS FOR PLAINTIFF
                                           ULTIMATEPOINTER, L.L.C.

480972 1/2884 00200

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October, 2012, the foregoing **Second Amended Complaint for Patent Infringement** was filed electronically using the Court's CM/ECF system, and that the Notice of Electronic Filing from the court is proof of service of the document on all counsel who are registered users of the CM/ECF system and who are therefore deemed to have consented to electronic service.


/s/ *Thomas L. Warden*
Thomas L. Warden

480972 1/2884 00200

1               IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF TEXAS
2                          TYLER DIVISION

3    ULTIMATEPOINTER, LLC           )
                                    )    DOCKET NO. 6:11cv496
4         -vs-                      )              6:11cv571
                                    )    Tyler, Texas
5    NINTENDO COMPANY, LTD.,        )    9:10 a.m.
     ET AL                          )    January 17, 2013
6

7               TRANSCRIPT OF MARKMAN HEARING
               BEFORE THE HONORABLE LEONARD DAVIS,
8           UNITED STATES CHIEF DISTRICT JUDGE

9

              ATTORNEY APPEARANCES PER SIGN-IN SHEETS
10
     FOR THE PLAINTIFF:       MS. ELIZABETH DeRIEUX
11                            MR. GREG MAAG
                              MR. THOMAS WARDEN
12
     FOR THE DEFENDANTS:      MR. TREY YARBROUGH
13                            MR. MARK NELSON
                              MR. ROB NEEDHAM
14                            MR. STEVEN GEISZLER
                              MR. DAVID FINKELSON
15                            MR. CHRIS JOE

16

17
     COURT REPORTER:          MS. SHEA SLOAN
18                            211 West Ferguson
                              Tyler, Texas  75702
19

20
     Proceedings taken by Machine Stenotype; transcript was
21   produced by a Computer.

22

23

24

25

A504

30

1   is specifically how Digitech argued that it had properly

2   joined what the court called every party who sells an

3   infringing product in the universe.

4         Okay.  So Digitech argued that certain retailers --

5   you have got a group of them, and we will call them Retailers

6   1 -- were joined based on their sells of accused cameras made

7   by a single manufacturer.

8         I will skip ahead and look at that real close.

9         Here is actually -- I went and pulled some of the

10  briefing off of Pacer and here is -- this is Digitech's

11  exhibit that it used.  And here is an example of that.

12  Cameras made by this Leica company were sold by Buy.com,

13  B & H, Best Buy, and CDW.  So that is Step 1.

14        That, to be real honest, that is a lot like what we

15  have got in our case, Nintendo in the middle and different

16  defendants, the retailers of the particular Wii systems on the

17  outside.

18        But they went quite a few steps further, and I

19  honestly couldn't tell how many steps they exactly took, but

20  they joined other manufacturers, companies like Nikon, Canon,

21  Pentax, Sony; essentially every camera manufacturer.

22        They joined other manufacturers because these

23  retailers like Buy.com and B & H, Best Buy, and CDW because

24  they also sold these other cameras.  Of course, that is not a

25  situation that we have present in our case.  We have not

93

```
1   adjourned.  Thank you.

2              MR. MAAG:  Thank you, Your Honor.

3              (Hearing adjourned.)

4

5                   C E R T I F I C A T I O N

6

7   I certify that the foregoing is a correct transcript from the

8   record of proceedings in the above-entitled matter.

9

10

11  /s/ Shea Sloan

12  SHEA SLOAN, CSR, RPR
    OFFICIAL COURT REPORTER
13  STATE OF TEXAS NO. 3081

14

15

16

17

18

19

20

21

22

23

24

25
```

JURY, LED3, MEDIATION, PATENT/TRADEMARK

## U.S. District Court [LIVE]
## Eastern District of TEXAS (Tyler)
## CIVIL DOCKET FOR CASE #: 6:11-cv-00496-LED

| | |
|---|---|
| UltimatePointer, L.L.C. v. Nintendo Co., Ltd. et al | Date Filed: 09/15/2011 |
| Assigned to: Judge Leonard Davis | Jury Demand: Both |
| Related Case: 6:11-cv-00571-LED | Nature of Suit: 830 Patent |
| Cause: 35:271 Patent Infringement | Jurisdiction: Federal Question |

**Mediator**

**David Folsom**                                        represented by    **David Folsom**
Special Master - David Folsom
6004 Summerfield Drive
Texarkana, TX 75503
903-255-3251
Fax: 903-255-3266
Email: dfolsom@jw.com
PRO SE

**Technical Advisor**

**Michael McLemore**                              represented by    **Michael T McLemore**
10333 Richmond Ave
Suite 1100
Houston, TX 77042
713/224-1007
Email: mtmesq@flash.net
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**UltimatePointer, L.L.C.**                        represented by    **Charles J Rogers**
Conley Rose, P.C. - Houston
1001 McKinney Street
Suite 1800
Houston, TX 77002
713-238-8049
Fax: 713-238-8008
Email: crogers@conleyrose.com
*ATTORNEY TO BE NOTICED*

**Daymon Jeffrey Rambin**
Capshaw DeRieux LLP
114 E Commerce Avenue
Gladewater, TX 75647
903-233-4830
Fax: 903-236-8787
Email: jrambin@capshawlaw.com

### A507

*ATTORNEY TO BE NOTICED*

**Elizabeth L DeRieux**
Capshaw DeRieux LLP
114 E Commerce Avenue
Gladewater, TX 75647
(903) 233-4816
Fax: (903) 236-8787
Email: ederieux@capshawlaw.com
*ATTORNEY TO BE NOTICED*

**Michael James Guthrie**
Conley Rose
5700 Granite Parkway
Suite 330
Plano, TX 75024-6616
713-238-8000
Fax: 713-238-8008
Email: mguthrie@conleyrose.com
*ATTORNEY TO BE NOTICED*

**Sidney Calvin Capshaw , III**
Capshaw DeRieux LLP
114 E Commerce Avenue
Gladewater, TX 75647
903/233-4826
Fax: 903-236-8787
Email: ccapshaw@capshawlaw.com
*ATTORNEY TO BE NOTICED*

**Gregory Loren Maag**
Conley Rose, P.C. - Houston
1001 McKinney Street
Suite 1800
Houston, TX 77002
713/238-8040
Fax: 713/238-8008
Email: gmaag@conleyrose.com
*ATTORNEY TO BE NOTICED*

**Thomas Loyd Warden**
Conley Rose, P.C. - Houston
1001 McKinney Street
Suite 1800
Houston, TX 77002
713/237-8331
Fax: 713/238-8008
Email: twarden@conleyrose.com
*ATTORNEY TO BE NOTICED*

A508

V.

**Defendant**

**Nintendo Co., Ltd.**                    represented by **Debra Elaine Gunter**
                                          Yarbrough Wilcox, PLLC
                                          100 E. Ferguson Street
                                          Ste 1015
                                          Tyler, TX 75702
                                          903-595-3111
                                          Email: debby@yw-lawfirm.com
                                          *ATTORNEY TO BE NOTICED*

                                          **Herbert A Yarbrough , III**
                                          Attorney at Law
                                          100 E Ferguson
                                          Suite 1015
                                          Tyler, TX 75702
                                          903/595-3111
                                          Fax: 19035950191
                                          Email: trey@yw-lawfirm.com
                                          *ATTORNEY TO BE NOTICED*

                                          **Mark Christopher Nelson**
                                          Dentons US LLP - Dallas
                                          2000 McKinney Avenue
                                          Suite 1900
                                          Dallas, TX 75201
                                          214-259-0901
                                          Fax: 12142590910
                                          Email: mark.nelson@dentons.com
                                          *ATTORNEY TO BE NOTICED*

                                          **Steven Mark Geiszler**
                                          Dentons US LLP - Dallas
                                          2000 McKinney Avenue
                                          Suite 1900
                                          Dallas, TX 75201
                                          214/259-0951
                                          Fax: 214/259-0910
                                          Email: steven.geiszler@dentons.com
                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Nintendo of America Inc.**             represented by **Arthur S Beeman**
                                          SNR Denton US LLP - San Francisco
                                          525 Market Street
                                          26th Floor
                                          San Francisco, CA 94105
                                          415/882-5000
                                          Fax: 415/882-0300

**A509**

Email: arthur.beeman@dentons.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JJ Games, LLC**
*TERMINATED: 02/07/2012*

represented by **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GameStop Corp.**

represented by **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

A510

**Defendant**

**Best Buy Co., Inc.**                    represented by   **Rickey Lawrence Faulkner**
                                                          Coghlan Crowson, LLP
                                                          P. O. Box 2665
                                                          Longview, TX 75606
                                                          9037585543
                                                          Fax: 9037536989
                                                          Email: rfaulkner@ccfww.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Steven Mark Geiszler**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Sears, Roebuck & Co**                   represented by   **Debra Elaine Gunter**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Herbert A Yarbrough , III**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Mark Christopher Nelson**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Steven Mark Geiszler**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Kmart Corporation**                     represented by   **Debra Elaine Gunter**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Herbert A Yarbrough , III**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Mark Christopher Nelson**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Steven Mark Geiszler**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

A511

| | | |
|---|---|---|
| **Target Corporation** | represented by | **Debra Elaine Gunter**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard S Zembek**
Fulbright & Jaworski - Houston
1301 McKinney
Suite 5100
Houston, TX 77010-3095
713/651-5283
Fax: 17136515246
Email: rzembek@fulbright.com
*TERMINATED: 11/28/2011*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Wal-Mart Stores, Inc.** | represented by | **David E Finkelson**<br>McGuire Woods - Richmond<br>One James Center<br>901 E Cary St<br>Richmond, VA 23219<br>804/775-1157<br>Fax: 804/225-5377<br>Email: dfinkelson@mcguirewoods.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Lawrence Augustine Phillips**
Siebman Reynolds Burg & Phillips LLP

300 N Travis St
Sherman, TX 75090-9969
903/870-0070
Fax: 903/870/0066
Email: larryphillips@siebman.com
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)

A512

*ATTORNEY TO BE NOTICED*

**Michael Charles Smith**
Siebman Burg Phillips & Smith, LLP-
Marshall
P O Box 1556
Marshall, TX 75671-1556
903-938-8900
Fax: 19727674620
Email: michaelsmith@siebman.com
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sams West, Inc.**                    represented by  **David E Finkelson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen L Carroll**
McGuire Woods - Chicago
77 West Wacker Dr
Suite 4100
Chicago, IL 60601
312/750-8646
Fax: 312/698-4549
Email: kcarroll@mcguirewoods.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence Augustine Phillips**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Charles Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

A513

**Radioshack Corporation**        represented by   **Christopher Michael Joe**
Buether Joe & Carpenter, LLC
1700 Pacific Avenue
Suite 2390
Dallas, TX 75201
(214) 466-1272
Fax: (214) 635-1828
Email: Chris.Joe@bjciplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Monica Nguyen Tavakoli**
Buether Joe & Carpenter, LLC
1700 Pacific Avenue
Suite 4750
Dallas, TX 75201
214-635-1839
Fax: 972-656-0967
Email: monica.tavakoli@bjciplaw.com
*ATTORNEY TO BE NOTICED*

**Niknaz Bukovcan**
Buether Joe & Carpenter, LLC
1700 Pacific Avenue
Suite 4750
Dallas, TX 75201
214/466-1278
Fax: 214/635-1831
Email: niky.bukovcan@bjciplaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**TOYS R US, INC.**        represented by   **Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dell Inc.**        represented by   **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Deron R Dacus**
The Dacus Firm, PC
821 ESE Loop 323
Suite 430
Tyler, TX 75701
903/705-1117
Fax: 9037051117
Email: ddacus@dacusfirm.com
*ATTORNEY TO BE NOTICED*

**A514**

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Aaron Kerr**
The Dacus Firm, PC
821 ESE Loop 323
Suite 430
Tyler, TX 75701
903-705-1089
Fax: 903-705-1117
Email: pkerr@dacusfirm.com
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**QVC, Inc.**                    represented by **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy S Durst**
Baker Botts - Dallas
2001 Ross Ave
600 Trammell Crow Center
Dallas, TX 75201-2980
214/953-6500
Fax: 12146614816
Email: tim.durst@bakerbotts.com
*TERMINATED: 08/22/2012*

A515

**Defendant**

**Trans World Entertainment
Corporation**                    represented by   **Debra Elaine Gunter**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Herbert A Yarbrough , III**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Mark Christopher Nelson**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Steven Mark Geiszler**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**BJS WHOLESALE CLUB, INC**       represented by   **Debra Elaine Gunter**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Herbert A Yarbrough , III**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Mark Christopher Nelson**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Neil J McNabnay**
                                                  Fish & Richardson - Dallas
                                                  1717 Main St.
                                                  Suite 5000
                                                  Dallas, TX 75201
                                                  (214)747-5070
                                                  Fax: 12147472091
                                                  Email: mcnabnay@fr.com
                                                  *TERMINATED: 11/21/2011*

                                                  **Steven Mark Geiszler**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**PC Connection, Inc.**           represented by   **Debra Elaine Gunter**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Herbert A Yarbrough , III**

A516

(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Compusa.com, Inc.**                    represented by  **David W Denenberg**
Davidoff Hutcher & Citron, LLP -
Garden City NY
200 Garden City Plaza
Suite 315
Garden City, NY 11530
516-248-6400
Fax: 516-248-6422
Email: dwd@dhclegal.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TIGER DIRECT, INC.**                    represented by  **David W Denenberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Debra Elaine Gunter**
(See above for address)

**A517**

*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sam's East Inc**        represented by   **David E Finkelson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen L Carroll**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence Augustine Phillips**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Charles Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wal-Mart Stores Texas LLC**     represented by   **David E Finkelson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence Augustine Phillips**
(See above for address)
*ATTORNEY TO BE NOTICED*

A518

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Charles Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Best Buy Stores, L.P.**                 represented by   **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BestBuy.com, LLC**                       represented by   **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Best Buy Purchasing, LLC**               represented by   **Debra Elaine Gunter**
(See above for address)

A519

*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TOYS R US-DELAWARE, INC.**          represented by  **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Nintendo Co., Ltd.**          represented by  **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Nintendo of America Inc.**          represented by  **Arthur S Beeman**

A520

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**UltimatePointer, L.L.C.**          represented by    **Charles J Rogers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Loren Maag**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Loyd Warden**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Nintendo Co., Ltd.**               represented by    **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)

A521

*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Nintendo of America Inc.**                    represented by    **Arthur S Beeman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**UltimatePointer, L.L.C.**                    represented by    **Charles J Rogers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daymon Jeffrey Rambin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth L DeRieux**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sidney Calvin Capshaw , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Loren Maag**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Loyd Warden**
(See above for address)
*ATTORNEY TO BE NOTICED*

A522

| Date Filed | # | Docket Text |
|---|---|---|
| 09/15/2011 | 1 | COMPLAINT *FOR PATENT INFRINGEMENT* against All Defendants ( Filing fee $ 350 receipt number 0540-3227751.), filed by UltimatePointer, L.L.C.. (Attachments: # 1 Exhibit A - U.S. Patent No. 7,746,321, # 2 Civil Cover Sheet)(Warden, Thomas) (Entered: 09/15/2011) |
| 09/15/2011 | | Judge Leonard Davis added. (mll, ) (Entered: 09/16/2011) |
| 09/16/2011 | 2 | CORPORATE DISCLOSURE STATEMENT filed by UltimatePointer, L.L.C. (Maag, Gregory) (Entered: 09/16/2011) |
| 09/21/2011 | 3 | AMENDED COMPLAINT against All Defendants, filed by UltimatePointer, L.L.C.. (Attachments: # 1 Exhibit USPN 7,746,321)(Maag, Gregory) (Entered: 09/21/2011) |
| 09/21/2011 | 4 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (Maag, Gregory) (Entered: 09/21/2011) |
| 09/21/2011 | 5 | NOTICE of Attorney Appearance by Gregory Loren Maag on behalf of UltimatePointer, L.L.C. (Maag, Gregory) (Entered: 09/21/2011) |
| 09/21/2011 | 6 | E-GOV SEALED SUMMONS Issued as to BJS WHOLESALE CLUB, INC, Best Buy Co., Inc., Compusa.com, Inc., Dell Inc., GameStop Corp., JJ Games, LLC, Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores, Inc., Sam's East Inc, Wal-Mart Stores Texas LLC., and emailed to pltf for service (mll, ) (Entered: 09/21/2011) |
| 09/22/2011 | 7 | NOTICE of Attorney Appearance by Charles J Rogers on behalf of UltimatePointer, L.L.C. (Rogers, Charles) (Entered: 09/22/2011) |
| 10/10/2011 | 8 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Radioshack Corporation.( Joe, Christopher) (Entered: 10/10/2011) |
| 10/11/2011 | 9 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Best Buy Co., Inc..( Faulkner, Rickey) (Entered: 10/11/2011) |
| 10/11/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 8 is granted pursuant to Local Rule CV-12 for Radioshack Corporation to 11/16/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 10/11/2011) |
| 10/11/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 9 is granted pursuant to Local Rule CV-12 for Best Buy Co., Inc. to 11/7/2011. 21 Days Granted for Deadline Extension.( mll, ) (Entered: 10/11/2011) |
| 10/11/2011 | 10 | NOTICE of Attorney Appearance by Niknaz Foroughi Bukovcan on behalf of |

A523

| | | Radioshack Corporation (Bukovcan, Niknaz) (Entered: 10/11/2011) |
|---|---|---|
| 10/12/2011 | 11 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD.*** Defendant's Unopposed First Application for Extension of Time to Answer Complaint re UltimatePointer, L.L.C.( Maag, Gregory) Modified on 10/13/2011 (mjc, ). (Entered: 10/12/2011) |
| 10/12/2011 | 12 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Target Corporation.( Zembek, Richard) (Entered: 10/12/2011) |
| 10/13/2011 | | ***FILED IN ERROR. Document # 11 Defendant's Unopposed Application for Extension of Time. PLEASE IGNORE. DOCUMENT TO BE REFILED WITH FILING ATTORNEY'S INFORMATION.*** (mjc, ) (Entered: 10/13/2011) |
| 10/13/2011 | 13 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re PC Connection, Inc.( Maag, Gregory) (Entered: 10/13/2011) |
| 10/13/2011 | 14 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re JJ Games, LLC.( Warden, Thomas) (Entered: 10/13/2011) |
| 10/13/2011 | 15 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Dell Inc..( Dacus, Deron) (Entered: 10/13/2011) |
| 10/13/2011 | 16 | NOTICE of Attorney Appearance by Mark Christopher Nelson on behalf of Nintendo Co., Ltd., Nintendo of America Inc. (Nelson, Mark) (Entered: 10/13/2011) |
| 10/13/2011 | 17 | NOTICE of Attorney Appearance by Steven Mark Geiszler on behalf of Nintendo Co., Ltd., Nintendo of America Inc. (Geiszler, Steven) (Entered: 10/13/2011) |
| 10/14/2011 | 18 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Wal-Mart Stores, Inc..( Smith, Michael) (Entered: 10/14/2011) |
| 10/14/2011 | 19 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Sams West, Inc..( Smith, Michael) (Entered: 10/14/2011) |
| 10/14/2011 | 20 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Wal-Mart Stores Texas LLC.( Smith, Michael) (Entered: 10/14/2011) |
| 10/14/2011 | 21 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Sam's East Inc.( Smith, Michael) (Entered: 10/14/2011) |
| 10/14/2011 | 22 | APPLICATION to Appear Pro Hac Vice by Attorney Arthur S Beeman for Nintendo of America Inc.. (mll, ) (Entered: 10/14/2011) |
| 10/14/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 12 is granted pursuant to Local Rule CV-12 for Target Corporation to 11/16/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 10/14/2011) |
| 10/14/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 13 is granted pursuant to Local Rule CV-12 for PC Connection, |

A524

| | | |
|---|---|---|
| | | Inc. to 11/16/2011. 30 Days Granted for Deadline Extension. (Filed by pltf on behalf of deft)( mll, ) (Entered: 10/14/2011) |
| 10/14/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 14 is granted pursuant to Local Rule CV-12 for JJ Games, LLC to 11/16/2011. 30 Days Granted for Deadline Extension. (Filed by pltf on behalf of deft)( mll, ) (Entered: 10/14/2011) |
| 10/14/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 15 is granted pursuant to Local Rule CV-12 for Dell Inc. to 11/16/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 10/14/2011) |
| 10/14/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 18 is granted pursuant to Local Rule CV-12 for Wal-Mart Stores, Inc. to 11/16/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 10/14/2011) |
| 10/14/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 19 is granted pursuant to Local Rule CV-12 for Sams West, Inc. to 11/16/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 10/14/2011) |
| 10/14/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 20 is granted pursuant to Local Rule CV-12 for Wal-Mart Stores Texas LLC to 11/21/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 10/14/2011) |
| 10/14/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 21 is granted pursuant to Local Rule CV-12 for Sam's East Inc to 11/21/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 10/14/2011) |
| 10/14/2011 | 23 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re GameStop Corp..( Warden, Thomas) (Entered: 10/14/2011) |
| 10/17/2011 | 24 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re TIGER DIRECT, INC..( Denenberg, David) (Entered: 10/17/2011) |
| 10/17/2011 | 25 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Compusa.com, Inc..( Denenberg, David) (Entered: 10/17/2011) |
| 10/17/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 23 is granted pursuant to Local Rule CV-12 for GameStop Corp. to 11/21/2011. 35 Days Granted for Deadline Extension. (Filed by pltf on behalf of deft.)( mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 24 is granted pursuant to Local Rule CV-12 for TIGER DIRECT, INC. to 11/30/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer |

A525

| | | Complaint 25 is granted pursuant to Local Rule CV-12 for Compusa.com, Inc. to 11/30/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 10/17/2011) |
|---|---|---|
| 10/17/2011 | 26 | Unopposed MOTION for Extension of Time to File Answer by Nintendo Co., Ltd., Nintendo of America Inc.. (Attachments: # 1 Text of Proposed Order) (Geiszler, Steven) (Entered: 10/17/2011) |
| 10/17/2011 | 27 | Return of Service Executed as to TOYS R US, INC. on 9/28/2011, by personal service; answer due: 10/19/2011. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 28 | Return of Service Executed as to Kmart Corporation on 9/28/2011, by personal service; answer due: 10/19/2011. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 29 | Return of Service Executed as to QVC, Inc. on 9/29/2011, by personal service; answer due: 10/20/2011. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 30 | Return of Service Executed as to Best Buy Co., Inc. on 9/26/2011, by personal service. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 31 | Return of Service Executed as to GameStop Corp. on 9/26/2011, by personal service. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 32 | Return of Service Executed as to Nintendo Co., Ltd. on 9/26/2011, by personal service; answer due: 10/17/2011. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 33 | Return of Service Executed as to Sears, Roebuck & Co on 9/26/2011, by personal service; answer due: 10/17/2011. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 34 | Return of Service Executed as to Target Corporation on 9/26/2011, by personal service. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 35 | Return of Service Executed as to Sams West, Inc. on 9/26/2011, by personal service. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 36 | Return of Service Executed as to Wal-Mart Stores, Inc. on 9/26/2011, by personal service. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 37 | Return of Service Executed as to Wal-Mart Stores Texas LLC on 9/28/2011, by personal service. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 38 | Return of Service Executed as to Sam's East Inc on 9/28/2011, by personal service. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 39 | Return of Service Executed as to Radioshack Corporation on 9/26/2011, by personal service. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 40 | Return of Service Executed as to Dell Inc. on 9/26/2011, by personal service. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 41 | Return of Service Executed as to PC Connection, Inc. on 9/26/2011, by personal service. (mll, ) (Entered: 10/17/2011) |
| 10/17/2011 | 42 | Return of Service Executed as to JJ Games, LLC on 9/26/2011, by personal service. (mll, ) (Entered: 10/17/2011) |
| | | |

A526

| | | |
|---|---|---|
| 10/17/2011 | 43 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re TOYS R US, INC..( Warden, Thomas) (Entered: 10/17/2011) |
| 10/19/2011 | 44 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re QVC, Inc..( Durst, Timothy) (Entered: 10/19/2011) |
| 10/19/2011 | 45 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Trans World Entertainment Corporation.( Geiszler, Steven) (Entered: 10/19/2011) |
| 10/21/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 43 is granted pursuant to Local Rule CV-12 for TOYS R US, INC. to 11/18/2011. 30 Days Granted for Deadline Extension. (Filed by pltf on behalf of deft.)( mll, ) (Entered: 10/21/2011) |
| 10/21/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 44 is granted pursuant to Local Rule CV-12 for QVC, Inc. to 11/18/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 10/21/2011) |
| 10/21/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 45 is granted pursuant to Local Rule CV-12 for Trans World Entertainment Corporation to 11/21/2011. 27 Days Granted for Deadline Extension.( mll, ) (Entered: 10/21/2011) |
| 10/24/2011 | 46 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Sears, Roebuck & Co.( Geiszler, Steven) (Entered: 10/24/2011) |
| 10/24/2011 | 47 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Kmart Corporation.( Geiszler, Steven) (Entered: 10/24/2011) |
| 10/25/2011 | 48 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re BJS WHOLESALE CLUB, INC.( McNabnay, Neil) (Entered: 10/25/2011) |
| 10/25/2011 | 49 | Return of Service Executed as to BJS WHOLESALE CLUB, INC on 10/4/2011, by personal service. (mll, ) (Entered: 10/26/2011) |
| 10/26/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 46 is granted pursuant to Local Rule CV-12 for Sears, Roebuck & Co to 11/21/2011. 35 Days Granted for Deadline Extension.( mll, ) (Entered: 10/26/2011) |
| 10/26/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 47 is granted pursuant to Local Rule CV-12 for Kmart Corporation to 11/21/2011. 33 Days Granted for Deadline Extension.( mll, ) (Entered: 10/26/2011) |
| 10/26/2011 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 48 is granted pursuant to Local Rule CV-12 for BJS WHOLESALE CLUB, INC to 11/24/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 10/26/2011) |
| 11/01/2011 | 50 | NOTICE of Attorney Appearance by Herbert A Yarbrough, III on behalf of |

| | | |
|---|---|---|
| | | Nintendo of America Inc. (Yarbrough, Herbert) (Entered: 11/01/2011) |
| 11/01/2011 | 51 | NOTICE of Attorney Appearance by Debra Elaine Gunter on behalf of Nintendo of America Inc. (Gunter, Debra) (Entered: 11/01/2011) |
| 11/03/2011 | 52 | NOTICE of Attorney Appearance by Herbert A Yarbrough, III on behalf of Nintendo Co., Ltd. (Yarbrough, Herbert) (Entered: 11/03/2011) |
| 11/03/2011 | 53 | NOTICE of Attorney Appearance by Debra Elaine Gunter on behalf of Nintendo Co., Ltd. (Gunter, Debra) (Entered: 11/03/2011) |
| 11/04/2011 | 54 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Best Buy Co., Inc..( Geiszler, Steven) (Entered: 11/04/2011) |
| 11/07/2011 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 54 is granted pursuant to Local Rule CV-12 for Best Buy Co., Inc. to 11/30/2011. 23 Days Granted for Deadline Extension.( mll, ) (Entered: 11/07/2011) |
| 11/07/2011 | 55 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Radioshack Corporation.( Joe, Christopher) (Entered: 11/07/2011) |
| 11/09/2011 | 56 | Return of Service Executed as to TIGER DIRECT, INC. on 10/6/2011, by personal service. (mll, ) (Entered: 11/10/2011) |
| 11/09/2011 | 57 | Return of Service Executed as to Compusa.com, Inc. on 10/6/2011, by personal service. (mll, ) (Entered: 11/10/2011) |
| 11/10/2011 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 55 is granted pursuant to Local Rule CV-12 for Radioshack Corporation to 12/16/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 11/10/2011) |
| 11/11/2011 | 58 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re QVC, Inc..( Durst, Timothy) (Entered: 11/11/2011) |
| 11/14/2011 | 59 | Unopposed MOTION for Extension of Time to File Answer by Dell Inc., JJ Games, LLC, Sam's East Inc, Sams West, Inc., TOYS R US, INC., Target Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Geiszler, Steven) (Entered: 11/14/2011) |
| 11/15/2011 | 60 | NOTICE of Attorney Appearance by Steven Mark Geiszler on behalf of Compusa.com, Inc., TIGER DIRECT, INC. (Geiszler, Steven) (Entered: 11/15/2011) |
| 11/15/2011 | 61 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re PC Connection, Inc.( Geiszler, Steven) (Entered: 11/15/2011) |
| 11/16/2011 | 62 | ORDER granting 26 Unopposed Motion for Extension of Time to Answer. Defendants Nintendo Co Ltd and Nintendo of America Inc have up to and including 12/31/2011 in which to answer, move, or otherwise respond to Plaintiff's First Amended Complaint. Signed by Judge Leonard Davis on 11/16/11. (leh, ) (Entered: 11/16/2011) |

A528

| 11/16/2011 | 63 | ORDER granting 59 Unopposed Second Motion for Extension of Time to Answer. Defendants Dell Inc, JJ Games LLC, Sam's West Inc, Sam's East Inc, Wal-Mart Stores Texas LLC, Wal-Mart Stores Inc, Torys "R" Us Inc, and Target Corp shall have until 12/16/2011 to answer, move, or otherwise respond to the First Amended Complaint. Signed by Judge Leonard Davis on 11/16/11. (leh, ) (Entered: 11/16/2011) |
|---|---|---|
| 11/17/2011 | 64 | APPLICATION to Appear Pro Hac Vice by Attorney David E Finkelson for Sam's East Inc, Sams West, Inc., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (mll, ) (Entered: 11/17/2011) |
| 11/17/2011 | 65 | Unopposed MOTION for Extension of Time to File Answer by BJS WHOLESALE CLUB, INC, Best Buy Co., Inc., Compusa.com, Inc., GameStop Corp., Kmart Corporation, Sears, Roebuck & Co, TIGER DIRECT, INC.. (Attachments: # 1 Text of Proposed Order)(Geiszler, Steven) (Entered: 11/17/2011) |
| 11/18/2011 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 58 is granted pursuant to Local Rule CV-12 for QVC, Inc. to 12/6/2011. 15 Days Granted for Deadline Extension.( mll, ) (Entered: 11/18/2011) |
| 11/18/2011 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 61 is granted pursuant to Local Rule CV-12 for PC Connection, Inc. to 12/16/2011. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 11/18/2011) |
| 11/18/2011 | 66 | MOTION to Withdraw as Attorney by BJS WHOLESALE CLUB, INC. (Attachments: # 1 Text of Proposed Order)(McNabnay, Neil) (Entered: 11/18/2011) |
| 11/18/2011 | 67 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Trans World Entertainment Corporation.( Geiszler, Steven) (Entered: 11/18/2011) |
| 11/21/2011 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 67 is granted pursuant to Local Rule CV-12 for Trans World Entertainment Corporation to 12/16/2011. 25 Days Granted for Deadline Extension.( mll, ) (Entered: 11/21/2011) |
| 11/21/2011 | 68 | Unopposed MOTION to Withdraw as Attorney by Target Corporation. (Attachments: # 1 Text of Proposed Order)(Zembek, Richard) (Entered: 11/21/2011) |
| 11/21/2011 | 69 | ORDER granting 65 Motion for Extension of Time to Answer. Defendants Best Buy Co., Inc.; CompUSA.com, Inc.; TigerDirect, Inc.; BJs Wholesale Club,Inc.; GameStop Corporation; Kmart Corporation; and Sears, Roebuck & Co. shall have until 12-16-2011 to answer, move, or otherwise respond to the First Amended Complaint. Signed by Judge Leonard Davis on 11/21/11. cc:attys 11-21-11 (mll, ) (Entered: 11/21/2011) |
| 11/21/2011 | 70 | ORDER granting 66 Motion to Withdraw as Attorney. Attorney Neil J McNabnay terminated. Signed by Judge Leonard Davis on 11/21/11. cc:attys |

A529

| | | |
|---|---|---|
| | | 11-21-11 (mll, ) (Entered: 11/21/2011) |
| 11/21/2011 | 71 | Return of Service Executed as to Trans World Entertainment Corporation on 10/4/2011, by personal service. (mll, ) (Entered: 11/22/2011) |
| 11/28/2011 | 72 | ORDER granting 68 Motion to Withdraw as Attorney. Attorney Richard S Zembek terminated. Signed by Judge Leonard Davis on 11/28/11. cc:attys 11-28-11 (mll, ) (Entered: 11/28/2011) |
| 12/01/2011 | 73 | Unopposed MOTION for Extension of Time to File Answer re 3 Amended Complaint by QVC, Inc.. (Attachments: # 1 Text of Proposed Order)(Durst, Timothy) (Entered: 12/01/2011) |
| 12/02/2011 | 74 | ORDER granting 73 Motion for Extension of Time to Answer. The deadline for QVC, Inc. to file an answer or otherwise respond to Plaintiffs FirstAmended Complaint is extended until 12-16-2011. Signed by Judge Leonard Davis on 12/02/11. cc:attys 12-02-11 (mll, ) (Entered: 12/02/2011) |
| 12/13/2011 | 75 | Unopposed MOTION for Extension of Time to File Answer by BJS WHOLESALE CLUB, INC, Best Buy Co., Inc., Compusa.com, Inc., Dell Inc., GameStop Corp., JJ Games, LLC, Kmart Corporation, PC Connection, Inc., QVC, Inc., Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Geiszler, Steven) (Entered: 12/13/2011) |
| 12/14/2011 | 76 | ORDER granting 75 Motion for Extension of Time to Answer. Defts shall have to 12-31-2011 to answer, move or otherwise respond to the First Amended Complaint. Signed by Judge Leonard Davis on 12/14/11. cc:attys 12-14-11 (mll, ) (Entered: 12/14/2011) |
| 12/15/2011 | 77 | Defendant's Unopposed Third Application for Extension of Time to Answer Complaint re Radioshack Corporation.( Joe, Christopher) (Entered: 12/15/2011) |
| 12/16/2011 | | Defendant's Unopposed Third Application for Extension of Time to Answer Complaint 77 is granted pursuant to Local Rule CV-12 for Radioshack Corporation to 12/31/2011. 15 Days Granted for Deadline Extension.( mll, ) (Entered: 12/16/2011) |
| 12/30/2011 | 78 | Unopposed MOTION for Leave to File *Second Amended Complaint* by UltimatePointer, L.L.C.. (Attachments: # 1 Text of Proposed Order Granting Leave)(Warden, Thomas) (Entered: 12/30/2011) |
| 12/30/2011 | 79 | AMENDED COMPLAINT *for Patent Infringement* against BJS WHOLESALE CLUB, INC, Compusa.com, Inc., Dell Inc., GameStop Corp., JJ Games, LLC, Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc., Best Buy Stores, L.P., BestBuy.com, LLC, Best Buy Purchasing, LLC, TOYS R US-DELAWARE, |

A530

| | | |
|---|---|---|
| | | INC., filed by UltimatePointer, L.L.C.. (Attachments: # 1 Exhibit U.S. Patent No. 7746321, # 2 Civil Cover Sheet)(Warden, Thomas) (Entered: 12/30/2011) |
| 01/03/2012 | 80 | ORDER granting 78 Motion for Leave to File Second Amended Complaint. Signed by Judge Leonard Davis on 01/03/12. cc:attys 1-03-12 (mll, ) (Entered: 01/03/2012) |
| 01/19/2012 | 81 | Unopposed MOTION for Extension of Time to File Answer by JJ Games, LLC. (Attachments: # 1 Text of Proposed Order)(Geiszler, Steven) (Entered: 01/19/2012) |
| 01/20/2012 | 82 | ORDER granting 81 Motion for Extension of Time to Answer. Defendant JJ Games, LLC shall have to 2-03-2012 to answer, move, or otherwise respond to the Second Amended Complaint. Signed by Judge Leonard Davis on 01/20/12. cc:attys 1-20-12 (mll, ) (Entered: 01/20/2012) |
| 01/20/2012 | 83 | MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants* by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit Declaration of Trey Yarbrough, # 2 Exhibit 1A, # 3 Exhibit 1B, # 4 Exhibit 2-11, # 5 Exhibit 12-20, # 6 Exhibit Declaration of Toshiro Hibino, # 7 Exhibit Declaration of Jacqualee Story, # 8 Text of Proposed Order)(Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 84 | ANSWER to 79 Amended Complaint,,, COUNTERCLAIM against UltimatePointer, L.L.C. by Nintendo Co., Ltd., Nintendo of America Inc.. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 85 | CORPORATE DISCLOSURE STATEMENT filed by Nintendo Co., Ltd., Nintendo of America Inc. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 86 | ANSWER to 79 Amended Complaint,, by Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC.(Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 87 | CORPORATE DISCLOSURE STATEMENT filed by Best Buy Purchasing, LLC (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 88 | CORPORATE DISCLOSURE STATEMENT filed by Best Buy Stores, L.P. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 89 | CORPORATE DISCLOSURE STATEMENT filed by BestBuy.com, LLC (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 90 | ANSWER to 79 Amended Complaint,, by BJS WHOLESALE CLUB, INC. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 91 | CORPORATE DISCLOSURE STATEMENT filed by BJS WHOLESALE |

A531

| | | CLUB, INC (Nelson, Mark) (Entered: 01/20/2012) |
|---|---|---|
| 01/20/2012 | 92 | ANSWER to 79 Amended Complaint,, by Compusa.com, Inc., TIGER DIRECT, INC..(Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 93 | *Defendant RadioShack Corporation's Answer to Plaintiff's Second Amended Complaint* ANSWER to 79 Amended Complaint,, by Radioshack Corporation.(Joe, Christopher) (Entered: 01/20/2012) |
| 01/20/2012 | 94 | CORPORATE DISCLOSURE STATEMENT filed by Compusa.com, Inc. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 95 | CORPORATE DISCLOSURE STATEMENT filed by Radioshack Corporation (Joe, Christopher) (Entered: 01/20/2012) |
| 01/20/2012 | 96 | CORPORATE DISCLOSURE STATEMENT filed by TIGER DIRECT, INC. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 97 | ANSWER to 79 Amended Complaint,, by Dell Inc..(Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 98 | CORPORATE DISCLOSURE STATEMENT filed by Dell Inc. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 99 | ANSWER to 79 Amended Complaint,, by GameStop Corp..(Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 100 | CORPORATE DISCLOSURE STATEMENT filed by GameStop Corp. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 101 | ANSWER to 79 Amended Complaint,, by PC Connection, Inc..(Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 102 | CORPORATE DISCLOSURE STATEMENT filed by PC Connection, Inc. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 103 | ANSWER to 79 Amended Complaint,, by QVC, Inc..(Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 104 | CORPORATE DISCLOSURE STATEMENT filed by QVC, Inc. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 105 | ANSWER to 79 Amended Complaint,, by Kmart Corporation, Sears, Roebuck & Co.(Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 106 | CORPORATE DISCLOSURE STATEMENT filed by Kmart Corporation (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 107 | CORPORATE DISCLOSURE STATEMENT filed by Sears, Roebuck & Co (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 108 | ANSWER to 79 Amended Complaint,, by Target Corporation.(Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 109 | CORPORATE DISCLOSURE STATEMENT filed by Target Corporation (Nelson, Mark) (Entered: 01/20/2012) |

A532

| 01/20/2012 | 110 | ANSWER to 79 Amended Complaint,, by TOYS R US-DELAWARE, INC.. (Nelson, Mark) (Entered: 01/20/2012) |
|---|---|---|
| 01/20/2012 | 111 | CORPORATE DISCLOSURE STATEMENT filed by TOYS R US-DELAWARE, INC. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 112 | ANSWER to 79 Amended Complaint,, by Trans World Entertainment Corporation.(Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 113 | CORPORATE DISCLOSURE STATEMENT filed by Trans World Entertainment Corporation (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 114 | ANSWER to 79 Amended Complaint,, by Sam's East Inc, Sams West, Inc., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc..(Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 115 | CORPORATE DISCLOSURE STATEMENT filed by Sam's East Inc (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 116 | CORPORATE DISCLOSURE STATEMENT filed by Sams West, Inc. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 117 | CORPORATE DISCLOSURE STATEMENT filed by Wal-Mart Stores Texas LLC (Nelson, Mark) (Entered: 01/20/2012) |
| 01/20/2012 | 118 | CORPORATE DISCLOSURE STATEMENT filed by Wal-Mart Stores, Inc. (Nelson, Mark) (Entered: 01/20/2012) |
| 01/23/2012 | 119 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD. SEE CORRECTED DOCUMENT 121 .***<br>NOTICE of Attorney Appearance by Herbert A Yarbrough, III on behalf of BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., JJ Games, LLC, Kmart Corporation, PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT., INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc. (Yarbrough, Herbert) Modified on 1/24/2012 (mjc, ). (Entered: 01/23/2012) |
| 01/23/2012 | 120 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD. SEE CORRECTED DOCUMENT 122 .***<br>NOTICE of Attorney Appearance by Debra Elaine Gunter on behalf of BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., JJ Games, LLC, Kmart Corporation, PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT., INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc. (Gunter, Debra) Modified on 1/24/2012 (mjc, ). (Entered: 01/23/2012) |
| 01/23/2012 | 121 | ***CORRECTED DOCUMENT. REPLACES 119 .***<br>NOTICE of Attorney Appearance by Herbert A Yarbrough, III on behalf of |

| | | BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., JJ Games, LLC, Kmart Corporation, PC Connection, Inc., QVC, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation (Yarbrough, Herbert) Modified on 1/24/2012 (mjc, ). (Entered: 01/23/2012) |
|---|---|---|
| 01/23/2012 | 122 | **CORRECTED DOCUMENT. REPLACES 120 .*** NOTICE of Attorney Appearance by Debra Elaine Gunter on behalf of BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., JJ Games, LLC, Kmart Corporation, PC Connection, Inc., QVC, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation (Gunter, Debra) Modified on 1/24/2012 (mjc, ). (Entered: 01/23/2012) |
| 01/24/2012 | | Conformed the docket to match the parties stated in the amended notices of appearance 121 for Trey Yarbrough and 122 for Debra Gunter. (mjc, ) (Entered: 01/24/2012) |
| 02/03/2012 | 123 | NOTICE of Voluntary Dismissal by UltimatePointer, L.L.C. (Warden, Thomas) (Additional attachment(s) added on 2/7/2012: # 1 Text of Proposed Order) (mjc, ). (Entered: 02/03/2012) |
| 02/03/2012 | 124 | Unopposed MOTION for Extension of Time to File Response/Reply as to 83 MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants* by UltimatePointer, L.L.C.. (Attachments: # 1 Text of Proposed Order Granting Extension of Time) (Warden, Thomas) (Entered: 02/03/2012) |
| 02/06/2012 | 125 | ORDER granting 124 Motion for Extension of Time to File Response/Reply re 83 MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants*; Responses due by 2/20/2012. Signed by Judge Leonard Davis on 02/06/12. cc:attys 2-06-12 (mll, ) (Entered: 02/06/2012) |
| 02/06/2012 | 126 | ANSWER to 84 Answer to Amended Complaint, Counterclaim by UltimatePointer, L.L.C..(Warden, Thomas) (Entered: 02/06/2012) |
| 02/06/2012 | 127 | ANSWER to Complaint 93 *Captioned as "Answer"* by UltimatePointer, L.L.C..(Warden, Thomas) (Entered: 02/06/2012) |
| 02/07/2012 | 128 | ORDER granting 123 Notice of Voluntary Dismissal filed by UltimatePointer, L.L.C. All Plaintiffs claims against Defendant JJ Games, L.L.C., are DISMISSED without prejudice. Signed by Judge Leonard Davis on 02/07/12. cc:attys 2-07-12(mll, ) (Entered: 02/07/2012) |
| 02/08/2012 | 129 | NOTICE of Change of Address by Deron R Dacus (Dacus, Deron) (Entered: 02/08/2012) |
| 02/20/2012 | 130 | RESPONSE in Opposition re 83 MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants filed by UltimatePointer, L.L.C..* (Attachments: # 1 Exhibit A- USPN |

A534

| | | |
|---|---|---|
| | | 7,746,321, # [2] Exhibit B - USPN 8,049,729, # [3] Exhibit C - Letter Agreement 12-29-2011, # [4] Exhibit D - E-Mails re Substitution, # [5] Exhibit E - Wright & Miller, Federal Practice & Procedure § 1655, # [6] Exhibit F - Chisum on Patents, # [7] Exhibit G - Warden Declaration (w Exhibits G1-G8, # [8] Text of Proposed Order Denying Motion)(Warden, Thomas) (Additional attachment (s) added on 2/24/2012: # [9] Exhibit A Searchable, # [10] Exhibit B Searchable) (mjc, ). (Entered: 02/20/2012) |
| 03/01/2012 | [131] | REPLY to Response to Motion re [83] MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants filed by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc..* (Attachments: # [1] Exhibit Declaration of Mark C. Nelson, # [2] Exhibit 1, # [3] Exhibit 2, # [4] Exhibit 3)(Nelson, Mark) (Entered: 03/01/2012) |
| 03/12/2012 | [132] | SUR-REPLY to Reply to Response to Motion re [83] MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants filed by UltimatePointer, L.L.C..* (Attachments: # [1] Exhibit A - Wright & Miller, Federal Practice & Procedure, Sections 1215, 1286, # [2] Exhibit B - Warden Declaration)(Warden, Thomas) (Entered: 03/12/2012) |
| 04/12/2012 | [133] | Unopposed MOTION for Leave to File *Sur-Sur-Reply* by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation. (Attachments: # [1] Text of Proposed Order) (Nelson, Mark) (Entered: 04/12/2012) |
| 04/12/2012 | [134] | SUR-REPLY to Reply to Response to Motion re [133] Unopposed MOTION for Leave to File *Sur-Sur-Reply*, [83] MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants filed by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation .* (Attachments: # [1] Exhibit A, # [2] Exhibit B, # [3] Exhibit C, # [4] Exhibit D, # [5] Exhibit E, # [6] Exhibit F, # [7] Exhibit G, # [8] Exhibit H, # [9] Exhibit I, # [10] Exhibit J, # [11] Exhibit K, # [12] Exhibit L, # [13] Exhibit M)(Nelson, Mark) (Entered: 04/12/2012) |
| 04/12/2012 | [135] | NOTICE of Change of Address by Christopher Michael Joe (Joe, Christopher) (Entered: 04/12/2012) |
| | | |

| 04/13/2012 | 136 | ORDER granting 133 Motion for Leave to File Sur-Sur-Reply in Support of Motion to Sever and Transfer Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants. Signed by Judge Leonard Davis on 04/13/12. cc:attys 4-13-12 (mll, ) (Entered: 04/13/2012) |
|---|---|---|
| 05/07/2012 | 137 | NOTICE by UltimatePointer, L.L.C. *of Readiness for Status Conference* (Warden, Thomas) (Entered: 05/07/2012) |
| 05/08/2012 | 138 | ORDER setting Status Conference for 6/4/2012 01:30 PM before Judge Leonard Davis. Signed by Judge Leonard Davis on 05/08/12. cc:attys 5-08-12 (mll, ) (Entered: 05/08/2012) |
| 05/08/2012 | 139 | Unopposed MOTION for Leave to File *First Amended Answer and Defenses* by Compusa.com, Inc., TIGER DIRECT, INC.. (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order)(Geiszler, Steven) (Entered: 05/08/2012) |
| 05/08/2012 | 140 | AMENDED ANSWER to 79 Amended Complaint,, by Compusa.com, Inc., TIGER DIRECT, INC.. (Nelson, Mark) (Entered: 05/08/2012) |
| 05/09/2012 | 141 | ORDER granting 139 Motion for Leave to File Amended Answer. Signed by Judge Leonard Davis on 05/09/12. cc:attys 5-09-12 (mll, ) (Entered: 05/09/2012) |
| 05/11/2012 | 142 | NOTICE by UltimatePointer, L.L.C. *of Readiness for Status Conference [Corrected]* (Warden, Thomas) (Entered: 05/11/2012) |
| 05/22/2012 | 143 | APPLICATION (APPROVED) to Appear Pro Hac Vice by Attorney Karen L Carroll for defendants Sam's East Inc. and Sams West, Inc.. (pkb, ) (Entered: 05/23/2012) |
| 06/01/2012 | 144 | NOTICE of Attorney Appearance by Peter Aaron Kerr on behalf of Dell Inc. (Kerr, Peter) (Entered: 06/01/2012) |
| 06/04/2012 | 145 | NOTICE of Attorney Appearance by Daymon Jeffrey Rambin on behalf of UltimatePointer, L.L.C. (Rambin, Daymon) (Entered: 06/04/2012) |
| 06/04/2012 | 146 | NOTICE of Attorney Appearance by Lawrence Augustine Phillips on behalf of Sam's East Inc, Sams West, Inc., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc. (Phillips, Lawrence) (Entered: 06/04/2012) |
| 06/04/2012 | 147 | Minute Entry for proceedings held before Judge Leonard Davis: **Status Conference held on 6/4/2012.** (Court Reporter Jill McFadden.) (Attachments: # 1 Attorney Sign-In Sheets) (rlf, ) (Entered: 06/04/2012) |
| 06/05/2012 | 148 | ORDER that parties are to submit agreed Docket Control and Discovery Orders to the Court by 06-18-2012. For purposes of computing the time deadlines under the local patent rules, the Court deems 06-18-2012 as the effective Rule 16 Initial Case Management Conference date, and thus plaintiff's PR 3-1 and 3-2 disclosures will be due 06-08-2012. Signed by Judge Leonard Davis on 06/05/12. cc:attys 6-05-12(mll, ) (Entered: 06/05/2012) |
| 06/08/2012 | 149 | NOTICE of Discovery Disclosure by UltimatePointer, L.L.C. *Regarding Service of PR 3-1 and 3-2 Infringement Contentions* (Warden, Thomas) |

| | | (Entered: 06/08/2012) |
|---|---|---|
| 06/18/2012 | 150 | MOTION for Extension of Time to File *Docket Control Order and Discovery Order* by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, L.L.C., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order) (Yarbrough, Herbert) (Entered: 06/18/2012) |
| 06/18/2012 | 151 | NOTICE of Attorney Appearance by Sidney Calvin Capshaw, III on behalf of UltimatePointer, L.L.C. (Capshaw, Sidney) (Entered: 06/18/2012) |
| 06/18/2012 | 152 | NOTICE of Attorney Appearance by Elizabeth L DeRieux on behalf of UltimatePointer, L.L.C. (DeRieux, Elizabeth) (Entered: 06/18/2012) |
| 06/19/2012 | 153 | ORDER granting 150 Motion for Extension of Time. Parties shall submit an agreed Docket Control Order and Discovery Order, or competing proposals and a summary of their disagreements, by 6-25-2012. Signed by Judge Leonard Davis on 06/19/12. cc:attys 6-20-12 (mll, ) (Entered: 06/20/2012) |
| 06/25/2012 | 154 | Joint MOTION *For Entry of Docket Control Order* by Nintendo Co., Ltd., Nintendo of America Inc., UltimatePointer, L.L.C.. (Attachments: # 1 Docket Control Order)(Yarbrough, Herbert) (Entered: 06/25/2012) |
| 06/25/2012 | 155 | Joint MOTION for Extension of Time to File *Dispositive Motions* by Nintendo Co., Ltd., Nintendo of America Inc., UltimatePointer, L.L.C.. (Attachments: # 1 Text of Proposed Order)(Yarbrough, Herbert) (Entered: 06/25/2012) |
| 06/25/2012 | 156 | Joint MOTION *For Entry of Discovery Order* by Nintendo Co., Ltd., Nintendo of America Inc., UltimatePointer, L.L.C.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 06/25/2012) |
| 06/26/2012 | 157 | ORDER granting 155 Motion for Extension of Time. Parties have to 10-17-2013 in which to file dispositive motions. Signed by Judge Leonard Davis on 06/26/12. cc:attys 6-26-12 (mll, ) (Entered: 06/26/2012) |
| 07/02/2012 | 158 | ORDER terminating 156 Motion for Discovery Order. Parties are ordered to submit a discovery order reflecting the resolution of disputes within three business days. Signed by Judge Leonard Davis on 07/02/12. cc:attys 7-02-12 (mll, ) (Entered: 07/02/2012) |
| 07/03/2012 | 159 | NOTICE by UltimatePointer, L.L.C. *of Filing Corrected Docket Control Order* (Attachments: # 1 Text of Proposed Order - Docket Control Order) (Warden, Thomas) (Entered: 07/03/2012) |
| 07/03/2012 | 160 | Submission of Proposed Agreed Discovery order by UltimatePointer, L.L.C. , *Submitted Jointly Pursuant to Court Order (Doc. 158)*. (Attachments: # 1 Text of Proposed Order - Discovery Order)(Warden, Thomas) (Entered: 07/03/2012) |

A537

| | | |
|---|---|---|
| 07/05/2012 | [161](#) | DISCOVERY ORDER. Signed by Judge Leonard Davis on 07/05/12. cc:attys 7-05-12(mll, ) (Entered: 07/05/2012) |
| 07/09/2012 | [162](#) | DOCKET CONTROL ORDER. Mediation Completion due by 12/21/2012. Jury Selection set for 9/2/2014 09:00AM before Judge Leonard Davis. Jury Trial set for 9/8/2014 09:00 AM before Judge Leonard Davis. Markman Hearing set for 1/17/2013 09:00 AM before Judge Leonard Davis. Pretrial Conference set for 8/28/2014 09:00 AM before Judge Leonard Davis. Signed by Judge Leonard Davis on 07/09/12. cc:attys 7-09-12(mll, ) (Entered: 07/09/2012) |
| 07/09/2012 | [163](#) | ORDER REFERRING CASE to Mediator. Hon. David Folsom added as Mediator. Signed by Judge Leonard Davis on 07/09/12. cc:attys 7-09-12 (mll, ) (Entered: 07/09/2012) |
| 07/18/2012 | [164](#) | NOTICE of Discovery Disclosure by Radioshack Corporation *Defendant RadioShack Corporation's Notice of Service of Initial Disclosures* (Joe, Christopher) (Entered: 07/18/2012) |
| 07/18/2012 | [165](#) | NOTICE of Discovery Disclosure by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc. (Nelson, Mark) (Entered: 07/18/2012) |
| 07/18/2012 | [166](#) | NOTICE of Discovery Disclosure by UltimatePointer, L.L.C. (Warden, Thomas) (Entered: 07/18/2012) |
| 08/03/2012 | [167](#) | MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants* by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # [1](#) Exhibit Declaration of Mark C. Nelson, # [2](#) Exhibit 1, # [3](#) Exhibit 1A, # [4](#) Exhibit 1B, # [5](#) Exhibit 1C, # [6](#) Exhibit 1D, # [7](#) Exhibit 1E, # [8](#) Exhibit 1F, # [9](#) Exhibit 1G, # [10](#) Exhibit 1H, # [11](#) Exhibit 1I, # [12](#) Exhibit 2, # [13](#) Exhibit 2I, # [14](#) Exhibit 3, # [15](#) Exhibit 4, # [16](#) Exhibit 5A, # [17](#) Exhibit 5B, # [18](#) Exhibit 5C, # [19](#) Exhibit 5D, # [20](#) Exhibit 5E, # [21](#) Exhibit 5F, # [22](#) Exhibit 5G, # [23](#) Exhibit 5H, # [24](#) Exhibit 5I, # [25](#) Exhibit 5J, # [26](#) Exhibit 5K, # [27](#) Exhibit 5L, # [28](#) Exhibit 6A, # [29](#) Exhibit 6B, # [30](#) Text of Proposed Order)(Nelson, Mark) (Entered: 08/03/2012) |
| 08/03/2012 | [168](#) | NOTICE by GameStop Corp. *Notice of Errata* (Attachments: # [1](#) Exhibit A) (Nelson, Mark) (Entered: 08/03/2012) |

A538

| 08/16/2012 | 169 | Unopposed MOTION to Withdraw as Attorney *(Timothy S. Durst and Baker Botts L.L.P. only)* by QVC, Inc.. (Attachments: # 1 Text of Proposed Order) (Durst, Timothy) (Entered: 08/16/2012) |
|---|---|---|
| 08/17/2012 | 170 | NOTICE of Discovery Disclosure by UltimatePointer, L.L.C. (Warden, Thomas) (Entered: 08/17/2012) |
| 08/17/2012 | 171 | Agreed MOTION To Amend The Scheduling Order by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, L.L.C., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 08/17/2012) |
| 08/17/2012 | 172 | NOTICE of Discovery Disclosure by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc. (Nelson, Mark) (Entered: 08/17/2012) |
| 08/20/2012 | 173 | RESPONSE in Opposition re 167 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants filed by UltimatePointer, L.L.C.*. (Attachments: # 1 Exhibit A - Chisum on Patents, # 2 Exhibit B - Wright & Miller Section 1583, # 3 Exhibit C - Wright & Miller Section 1585, # 4 Exhibit D - Wright & Miller Section 1655, # 5 Text of Proposed Order Denying Motion)(Warden, Thomas) (Entered: 08/20/2012) |
| 08/22/2012 | 174 | ORDER granting 169 Motion to Withdraw as Attorney. Attorney Timothy S Durst terminated. Signed by Judge Leonard Davis on 08/22/12. cc:attys 8-22-12 (mll, ) (Entered: 08/22/2012) |
| 08/22/2012 | 175 | ORDER granting 171 Motion to Amend the Scheduling Order. Signed by Judge Leonard Davis on 08/22/12. cc:attys 8-22-12 (mll, ) (Entered: 08/22/2012) |
| 08/31/2012 | 176 | RESPONSE in Support re 167 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants filed by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-* |

A539

| | | |
|---|---|---|
| | | *DELAWARE, INC.*, Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit 1A, # 2 Exhibit 1B, # 3 Exhibit 1C, # 4 Exhibit 1D, # 5 Exhibit 1E, # 6 Exhibit 1F, # 7 Exhibit 1G)(Nelson, Mark) (Entered: 08/31/2012) |
| 09/05/2012 | 177 | NOTICE by UltimatePointer, L.L.C. *of Disclosure* (Maag, Gregory) (Entered: 09/05/2012) |
| 09/05/2012 | 178 | NOTICE by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc. *of Service of Disclosure* (Nelson, Mark) (Entered: 09/05/2012) |
| 09/07/2012 | 179 | Agreed MOTION To Amend The Scheduling Order by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, L.L.C., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 09/07/2012) |
| 09/10/2012 | 180 | SUR-REPLY to Reply to Response to Motion re 167 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants filed by UltimatePointer, L.L.C..* (Warden, Thomas) (Entered: 09/10/2012) |
| 09/11/2012 | 181 | ORDER granting 179 Motion to Amend the Scheduling Order. Signed by Judge Leonard Davis on 09/11/12. cc:attys 9-11-12 (mll, ) (Entered: 09/11/2012) |
| 09/17/2012 | 182 | Joint MOTION for Entry of Order Regarding E-Discovery by UltimatePointer, L.L.C.. (Attachments: # 1 Text of Proposed Order Regarding E-Discovery)(Warden, Thomas) (Entered: 09/17/2012) |
| 09/20/2012 | 183 | ORDER REGARDING E-DISCOVERY. Signed by Judge Leonard Davis on 09/20/12. cc:attys 9-20-12(mll, ) (Entered: 09/20/2012) |
| 09/21/2012 | 184 | ORDER denying as moot 83 Motion to Sever and Transfer; setting for hearing 167 Motion to Sever and Dismiss. Motion Hearing set for 12-04-2012 at 1:30 pm. Signed by Judge Leonard Davis on 09/21/12. cc:attys 9-24-12 (mll, ) (Entered: 09/24/2012) |
| 09/21/2012 | | Set Deadlines per 184 Order as to 167 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to* |

A540

| | | |
|---|---|---|
| | | *Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants*. Motion Hearing set for 12/4/2012 01:30 PM before Judge Leonard Davis. (mll, ) (Entered: 09/24/2012) |
| 10/02/2012 | 185 | Agreed MOTION to Amend the Scheduling Order by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, L.L.C., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 10/02/2012) |
| 10/03/2012 | 186 | MOTION for Reconsideration re 184 Order on Motion to Sever by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 10/03/2012) |
| 10/04/2012 | 187 | NOTICE of Attorney Appearance by Monica Nguyen Tavakoli on behalf of Radioshack Corporation (Tavakoli, Monica) (Entered: 10/04/2012) |
| 10/05/2012 | 188 | ORDER granting 185 Motion to Amend the Scheduling Order. Mediation is to occur 10/22/2012. Signed by Judge Leonard Davis on 10/5/12. (mjc, ) (Entered: 10/05/2012) |
| 10/09/2012 | 189 | AMENDED COMPLAINT *FOR PATENT INFRINGEMENT* against BJS WHOLESALE CLUB, INC, Best Buy Co., Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America, Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc., filed by UltimatePointer, L.L.C.. (Attachments: # 1 Exhibit A - USPN 7,746,321)(Warden, Thomas) (Entered: 10/09/2012) |
| 10/10/2012 | 190 | NOTICE of Discovery Disclosure by Kmart Corporation, Sears, Roebuck & Co *of Supplemental Initial Disclosures* (Nelson, Mark) (Entered: 10/10/2012) |
| 10/11/2012 | 191 | ORDER Setting Hearing on Motion 186 MOTION for Reconsideration re 184 Order on Motion to Sever and Transfer: Motion Hearing set for 12/4/2012 01:30 PM before Judge Leonard Davis. Signed by Judge Leonard Davis on 10/11/12. cc:attys 10-11-12(mll, ) (Entered: 10/11/2012) |
| 10/11/2012 | 192 | NOTICE by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of |

A541

| | | |
|---|---|---|
| | | America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc. re 167 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants Notice of Supplemental Authority* (Attachments: # 1 Exhibit A)(Nelson, Mark) (Entered: 10/11/2012) |
| 10/16/2012 | 193 | Agreed MOTION to Amend/Correct 162 Order, Set Scheduling Order Deadlines, Set Hearings,,, *for Extension of Deadline to Submit Proposed Technical Advisors* by UltimatePointer, L.L.C.. (Attachments: # 1 Text of Proposed Order Granting Extension for Submission of Proposed Technical Advisors)(Warden, Thomas) (Entered: 10/16/2012) |
| 10/17/2012 | 194 | ORDER granting 193 Motion to Amend/Correct Docket Control Order. Parties are to submit proposed technical advisors by 10-23-2012. Signed by Judge Leonard Davis on 10/17/12. cc:attys 10-18-12 (mll, ) (Entered: 10/18/2012) |
| 10/22/2012 | 195 | RESPONSE in Opposition re 186 MOTION for Reconsideration re 184 Order on Motion to Sever MOTION for Reconsideration re 184 Order on Motion to Sever MOTION for Reconsideration re 184 Order on Motion to Sever *filed by UltimatePointer, L.L.C.*. (Attachments: # 1 Text of Proposed Order Denying Motion for Reconsideration)(Warden, Thomas) (Entered: 10/23/2012) |
| 10/23/2012 | 196 | *Defendant RadioShack Corporation's Answer and Defenses to Plaintiff's Third Amended Complaint for Patent Infringement* ANSWER to 189 Amended Complaint,, by Radioshack Corporation.(Tavakoli, Monica) (Entered: 10/23/2012) |
| 10/23/2012 | 197 | ANSWER to 189 Amended Complaint,,, COUNTERCLAIM against UltimatePointer, L.L.C. by Nintendo Co., Ltd., Nintendo of America Inc.. (Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 198 | ANSWER to 189 Amended Complaint,, by Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC.(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 199 | ANSWER to 189 Amended Complaint,, by BJS WHOLESALE CLUB, INC. (Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 200 | ANSWER to 189 Amended Complaint,, by Compusa.com, Inc., TIGER DIRECT, INC..(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 201 | ANSWER to 189 Amended Complaint,, by Dell Inc..(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 202 | ANSWER to 189 Amended Complaint,, by GameStop Corp..(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 203 | ANSWER to 189 Amended Complaint,, by PC Connection, Inc..(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 204 | ANSWER to 189 Amended Complaint,, by QVC, Inc..(Nelson, Mark) |

A542

| | | (Entered: 10/23/2012) |
|---|---|---|
| 10/23/2012 | 205 | ANSWER to 189 Amended Complaint,, by Kmart Corporation, Sears, Roebuck & Co.(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 206 | ANSWER to 189 Amended Complaint,, by Target Corporation.(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 207 | ANSWER to 189 Amended Complaint,, by TOYS R US-DELAWARE, INC.. (Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 208 | ANSWER to 189 Amended Complaint,, by Trans World Entertainment Corporation.(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 209 | ANSWER to 189 Amended Complaint,, by Sam's East Inc, Sams West, Inc., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc..(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 210 | NOTICE by UltimatePointer, L.L.C. *of Joint Selection of Proposed Technical Advisor* (Warden, Thomas) (Entered: 10/23/2012) |
| 10/30/2012 | 211 | Unopposed MOTION to Seal *Defendants' Letter Brief and Attached Exhibits* by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 10/30/2012) |
| 10/30/2012 | 212 | SEALED Letter Brief filed by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit 1 - Letter Brief, # 2 Exhibit A, # 3 Exhibit B)(Nelson, Mark) (Entered: 10/30/2012) |
| 10/31/2012 | 213 | ORDER granting 211 Motion to File Under Seal. Signed by Judge Leonard Davis on 10/31/12. cc:attys 10-31-12 (mll, ) (Entered: 10/31/2012) |
| 10/31/2012 | 214 | ORDER appointing Michael McLemore, as technical advisor, with his costs to be assessed equally between Plaintiff and Defendant and timely paid as billed. Signed by Judge Leonard Davis on 10/31/12. cc:attys 10-31-12(mll, ) (Entered: 10/31/2012) |
| 11/06/2012 | 215 | Agreed MOTION to Amend/Correct *Scheduling Order* by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC |

A543

| | | |
|---|---|---|
| | | Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, L.L.C., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 11/06/2012) |
| 11/12/2012 | 216 | JOINT CLAIM CONSTRUCTION AND PREHEARING STATEMENT filed by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, L.L.C., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit B-1, # 4 Exhibit B-2)(Nelson, Mark) (Entered: 11/12/2012) |
| 11/13/2012 | 217 | ORDER granting 215 Motion to Amend/Correct Docket Control Order. Signed by Judge Leonard Davis on 11/13/12. cc:attys 11-13-12 (mll, ) (Entered: 11/13/2012) |
| 11/13/2012 | 218 | ANSWER to 197 Answer to Amended Complaint, Counterclaim by UltimatePointer, L.L.C..(Warden, Thomas) (Entered: 11/13/2012) |
| 11/14/2012 | 219 | Agreed MOTION for Extension of Time to File *Joint Claim Construction and Prehearing Statement and Complete Claim Construction Discovery* by Nintendo Co., Ltd., Nintendo of America Inc.. (Attachments: # 1 Text of Proposed Order)(Yarbrough, Herbert) (Entered: 11/14/2012) |
| 11/14/2012 | 220 | MOTION To Enforce Patent Rule 3-1 by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 1(A), # 3 Exhibit 1(B), # 4 Exhibit 1(C), # 5 Exhibit 1(D), # 6 Exhibit 1(E), # 7 Exhibit 1(F), # 8 Exhibit 1(G), # 9 Exhibit 1(H), # 10 Exhibit 1(I), # 11 Exhibit 2, # 12 Exhibit 2(I), # 13 Exhibit 3, # 14 Exhibit 4(I), # 15 Exhibit 5(I), # 16 Exhibit 6, # 17 Text of Proposed Order)(Nelson, Mark) (Entered: 11/14/2012) |
| 11/14/2012 | 221 | ORDER that parties meet and confer and narrow the number of disputed terms to a reasonable number. Parties shall file an amended P.R. 4-3 Statement by 11-19-2012. The Court reminds the parties that the page limits governing dispositive motions pursuant to Local Rule CV-7(a) apply to claim construction briefing and will not be extendend absent a showing of good cause. Signed by Judge Leonard Davis on 11/14/12. cc:attys 11-15-12(mll, ) (Entered: 11/15/2012) |
| | | |

A544

| 11/19/2012 | 222 | Agreed MOTION To Amend The Scheduling Order by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, L.L.C., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 11/19/2012) |
|---|---|---|
| 11/19/2012 | 223 | ORDER granting 219 Motion for Extension of Time. Signed by Judge Leonard Davis on 11/16/12. cc:attys 11-19-12 (mll, ) (Entered: 11/19/2012) |
| 11/19/2012 | 224 | FIRST AMENDED JOINT CLAIM CONSTRUCTION AND PREHEARING STATEMENT filed by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, L.L.C., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit B-1, # 4 Exhibit B-2) (Nelson, Mark) (Entered: 11/19/2012) |
| 11/19/2012 | 225 | Letter Brief filed by UltimatePointer, L.L.C. (Attachments: # 1 Exhibit 1 - Letter Answer)(Rogers, Charles) (Entered: 11/19/2012) |
| 11/20/2012 | 226 | Letter Brief filed by UltimatePointer, L.L.C. (Attachments: # 1 Exhibit 1 - Corrected Letter Answer)(Rogers, Charles) (Entered: 11/20/2012) |
| 11/26/2012 | | NOTICE of Hearing on Motion 167 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants*, 186 MOTION for Reconsideration re 184 Order on Motion to Sever MOTION for Reconsideration re 184 Order on Motion to Sever MOTION for Reconsideration re 184 Order on Motion to Sever : Motion Hearing set for 12/4/2012 AT 1:30 PM HAS BEEN CONTINUED AND **MOTION HEARING IS RESET TO 1/8/2013 AT 01:30 PM before Judge Leonard Davis.** (rlf) (Entered: 11/26/2012) |
| 11/26/2012 | 227 | CLAIM CONSTRUCTION BRIEF filed by UltimatePointer, L.L.C.. (Attachments: # 1 Exhibit A - USPN 7,746,321, # 2 Exhibit B - USPN 8,049,729, # 3 Exhibit C (Part 1 of 3) - Merriam Webster's 2003 Dictionary, # 4 Exhibit C (Part 2 of 3) - Merriam Webster's 2003 Dictionary, # 5 Exhibit C (Part 3 of 3) - Merriam Webster's 2003 Dictionary, # 6 Exhibit D - Microsoft Computer Dictionary, # 7 Exhibit E - IEEE 100 2000 Standards, # 8 Exhibit F (Part 1 of 2) - Academic Press Dictionary, # 9 Exhibit F (Part 2 of 2) - Academic Press Dictionary, # 10 Exhibit G (Part 1 of 3) - Random House Dictionary, # 11 Exhibit G (Part 2 of 3) - Random House Dictionary, # 12 Exhibit G (Part 3 of 3) - Random House Dictionary, # 13 Exhibit H (Part 1 of |

A545

| | | |
|---|---|---|
| | | 2) - Webster 3rd New International Dictionary, # 14 Exhibit H (Part 2 of 2) - Webster 3rd New International Dictionary, # 15 Exhibit I - USPN 7,833,100, # 16 Exhibit J - USPUB 2007-0013657, # 17 Exhibit K- USPA 11-135,911, # 18 Exhibit L - USPA 11-483,170, # 19 Exhibit M - Declaration of Richard Hooper PhD PE, # 20 Exhibit N - Weisscam - Image Sensor - NINUPOINT00014658, # 21 Exhibit O - CVEL - Optical Image Sensors - NINUPOINT00014616-17)(Warden, Thomas) (Entered: 11/26/2012) |
| 11/27/2012 | 228 | ORDER granting 222 Motion to Amend the Scheduling Order. Signed by Judge Leonard Davis on 11/27/12. cc:attys 11-27-12 (mll, ) (Entered: 11/27/2012) |
| 11/27/2012 | 229 | NOTICE by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc. *Of Compliance Regarding Technology Tutorial* (Yarbrough, Herbert) (Entered: 11/27/2012) |
| 11/27/2012 | 230 | NOTICE by UltimatePointer, L.L.C. *of Compliance Regarding Tutorial for the Patented Technology* (Attachments: # 1 Exhibit Plaintiff's Tutorial Regarding the Patented Technology)(Maag, Gregory) (Entered: 11/27/2012) |
| 11/28/2012 | 231 | Unopposed MOTION to Seal *Defendants' Reply Letter Brief* by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 11/28/2012) |
| 11/28/2012 | 232 | SEALED Reply Letter Brief re 212 SEALED Notice of Compliance - Letter Brief, filed by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit 1)(Nelson, Mark) (Entered: 11/28/2012) |
| 11/30/2012 | 233 | ORDER granting 231 Motion to File Under Seal. Signed by Judge Leonard Davis on 11/30/12. cc:attys 11-30-12 (mll, ) (Entered: 11/30/2012) |
| 12/03/2012 | 234 | Unopposed MOTION for Extension of Time to File Response/Reply *to Defendants' Motion to Enforce Patent Rule 3-1* by UltimatePointer, L.L.C.. |

A546

| | | |
|---|---|---|
| | | (Attachments: # 1 Text of Proposed Order)(Warden, Thomas) (Entered: 12/03/2012) |
| 12/04/2012 | 235 | ORDER granting 234 Motion for Extension of Time to File Response/Reply re 220 MOTION To Enforce Patent Rule 3-1; Responses due by 12/10/2012. Signed by Judge Leonard Davis on 12/04/12. cc:attys 12-04-12 (mll, ) (Entered: 12/04/2012) |
| 12/11/2012 | 236 | RESPONSE in Opposition re 220 MOTION To Enforce Patent Rule 3-1 *filed by UltimatePointer, L.L.C.*. (Attachments: # 1 Exhibit 1 - Proposed Second Amended PR 3-1 and 3-2 Disclosure for the '321 Patent, # 2 Exhibit 1 F - All Accused Wii Games, # 3 Exhibit 1 F1 - Disc-Based Game Startup Procedures, # 4 Exhibit 1 F2 - Virtual Console Game Startup Procedures, # 5 Exhibit 1 F3 - Wii Game Video List, # 6 Exhibit 1 G1-G4 - Wii Games with Single-Point Calibration, # 7 Exhibit 1 H1-H9 - Wii Games with Two-Point Calibration, # 8 Exhibit 1 I - Proposed Second Amended Claim Chart for the '321 Patent, # 9 Exhibit 2 - Proposed Second Amended PR 3-1 and 3-2 Disclosure for the '729 Patent, # 10 Exhibit 2 I - Proposed Second Amended Claim Chart for the '729 Patent, # 11 Exhibit K - The Wii Shop Channel, # 12 Exhibit L - Exhibit F Games Missed by Nintendo, # 13 Exhibit M - Examples of Additional Predetermined Points, # 14 Text of Proposed Order Denying Motion)(Warden, Thomas) (Entered: 12/11/2012) |
| 12/12/2012 | 237 | Agreed MOTION Amend the Scheduling Order by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, L.L.C., Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 12/12/2012) |
| 12/17/2012 | 238 | DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF to 227 Claim Construction Brief, filed by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Appendix 1, # 2 Appendix 2, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Exhibit Q)(Nelson, Mark) (Entered: 12/17/2012) |
| 12/17/2012 | 239 | ORDER granting 237 Motion to Amend the Scheduling Order. Signed by Judge Leonard Davis on 12/14/12. cc:attys 12-18-12 (mll, ) (Entered: 12/18/2012) |

A547

| | | |
|---|---|---|
| 12/18/2012 | 240 | NOTICE by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc. re 238 Reply to Claim Construction Brief,,, *Correction of Confidentiality Designation* (Nelson, Mark) (Entered: 12/18/2012) |
| 12/19/2012 | 241 | ORDER granting 212 SEALED Notice of Compliance - Letter Brief, requesting permission to file a motion for summary judgment of invalidity based on indefiniteness. Signed by Judge Leonard Davis on 12/19/12. cc:attys 12-19-12(mll, ) (Entered: 12/19/2012) |
| 12/20/2012 | 242 | REPLY to Response to Motion re 220 MOTION To Enforce Patent Rule 3-1 *filed by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc..* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Nelson, Mark) (Entered: 12/20/2012) |
| 12/21/2012 | 243 | MOTION for Summary Judgment *of Invalidity Based on Indefiniteness,* by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Text of Proposed Order)(Nelson, Mark) (Entered: 12/21/2012) |
| 12/27/2012 | | NOTICE of Hearing on Motion (167 in 6:11-cv-00496-LED) MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants,* (119 in 6:11-cv-00571-LED) MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants* : **Motion Hearing set for 1/8/2013 at 1:30 PM has been continued and will be heard 1/17/2013 at 09:00 AM before Judge Leonard Davis.** (rlf) (Entered: 12/27/2012) |
| 12/27/2012 | 244 | Opposed MOTION *For Leave To Supplement Invalidity Contentions* by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams |

| | | |
|---|---|---|
| | | West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Text of Proposed Order)(Nelson, Mark) (Entered: 12/27/2012) |
| 12/31/2012 | 245 | SUR-REPLY to Reply to Response to Motion re 220 MOTION To Enforce Patent Rule 3-1 *filed by UltimatePointer, L.L.C.*. (Warden, Thomas) (Entered: 12/31/2012) |
| 01/04/2013 | 246 | NOTICE by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc. *Notice of Estimated Time Needed for Markman Hearing* (Nelson, Mark) (Entered: 01/04/2013) |
| 01/04/2013 | 247 | REPLY to 227 Claim Construction Brief, *filed by UltimatePointer, L.L.C.*. (Attachments: # 1 Exhibit P. Pointing Demonstrative - Missing a Calibration Point, # 2 Exhibit Q. Pointing Demonstrative - Interaction Structure 72 Does Not Match Interaction Region 71, # 3 Exhibit R. Banning Deposition 10-26-2012)(Warden, Thomas) (Entered: 01/04/2013) |
| 01/10/2013 | 248 | JOINT CLAIM CONSTRUCTION CHART Under PR 4-5(d) filed by All Parties (Attachments: # 1 Exhibit 1 - Disputed Constructions, # 2 Exhibit 2 - Agreed Constructions, # 3 Appendix A - 321 Patent Claims, # 4 Appendix B - 729 Patent Claims)(Warden, Thomas) (Entered: 01/10/2013) |
| 01/14/2013 | 249 | RESPONSE in Opposition re 244 Opposed MOTION *For Leave To Supplement Invalidity Contentions filed by UltimatePointer, L.L.C.*. (Attachments: # 1 Exhibit 1 - Nintendo's Invalidity Contentions (2012-08-21), # 2 Exhibit 2 - Retailer Defs.' Invalidity Contentions (2012-10-12), # 3 Exhibit 3 - Defs.' Prior Art Exs. 20 and 22, # 4 Exhibit 4 - Defs.' Invalidity Chart 19 Excerpt, # 5 Exhibit 5 - Defs.' Invalidity Chart 30, # 6 Exhibit 6 - Defendants Invalidity Charts 139-649 inter alia, # 7 Exhibit 7 - Sega Amusements Website, # 8 Exhibit 8 - Sega Amusements Game Websites, # 9 Exhibit 9 - Sega Manuals (Excerpted), # 10 Exhibit 10 - E-Mail Forwarding New Charts, # 11 Exhibit 11 - International Arcade Museum, # 12 Exhibit 12 - Iovate Health v. Bio-Engieered Supplements, # 13 Exhibit 13 - Unified Messaling v. Facebook, # 14 Exhibit 14 - VernetX v. Microsoft, # 15 Text of Proposed Order Order Denying Leave to Amend)(Warden, Thomas) (Entered: 01/14/2013) |
| 01/14/2013 | 250 | RESPONSE in Opposition re 243 MOTION for Summary Judgment *of* |

| | | |
|---|---|---|
| | | *Invalidity Based on Indefiniteness, filed by UltimatePointer, L.L.C..* (Attachments: # 1 Text of Proposed Order Denying Defendants' Motion for Summary Judgment of Invalidity Based on Indefiniteness)(Rogers, Charles) (Entered: 01/14/2013) |
| 01/16/2013 | 251 | REPLY to Response to Motion re 243 MOTION for Summary Judgment *of Invalidity Based on Indefiniteness, filed by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc..* (Geiszler, Steven) (Entered: 01/16/2013) |
| 01/17/2013 | 252 | Minute Entry for proceedings held before Judge Leonard Davis: Markman Hearing held on 1/17/2013, Motion Hearing held on 1/17/2013 re 167 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants.* (Court Reporter Shea Sloan) (Attachments: # 1 Sign In Sheets) (cwk) (Entered: 01/17/2013) |
| 01/25/2013 | 253 | ORDER TO PAY COURT TECHNICAL CONSULTANT. Signed by Judge Leonard Davis on 01/25/13. cc:attys 1-25-13(mll, ) (Entered: 01/25/2013) |
| 01/25/2013 | 254 | REPLY to Response to Motion re 244 Opposed MOTION *For Leave To Supplement Invalidity Contentions filed by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc..* (Attachments: # 1 Exhibit 26) (Geiszler, Steven) (Entered: 01/25/2013) |
| 02/04/2013 | 255 | SUR-REPLY to Reply to Response to Motion re 244 Opposed MOTION *For Leave To Supplement Invalidity Contentions filed by UltimatePointer, L.L.C..* (Attachments: # 1 Exhibit 1 - Sega HOTD (Defs.' Ex. 19) (Excerpted), # 2 Exhibit 2 - Sega HOTD2 (Defs.' Ex. 45) (Excerpted), # 3 Exhibit 3 - Sega HOTD3 (Defs.' Ex. 46) (Excerpted), # 4 Exhibit 4 - Sega Confidential Mission (Defs.' Ex. 47) (Excerpted), # 5 Exhibit 5 - Oh '309 Patent (Defs.' Ex. 50) (Excerpted))(Warden, Thomas) (Entered: 02/04/2013) |
| 02/20/2013 | 256 | NOTICE of Attorney Appearance by Michael James Guthrie on behalf of UltimatePointer, L.L.C. (Guthrie, Michael) (Entered: 02/20/2013) |
| 03/27/2013 | 257 | ORDER denying 167 Motion to Sever; denying 186 Motion for Reconsideration re 167 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants* filed by |

A550

| | | |
|---|---|---|
| | | Wal-Mart Stores Texas LLC, PC Connection, Inc., Trans World Entertainment Corporation, TOYS R US-DELAWARE, INC., BestBuy.com, LLC, Sams West, Inc., Target Corporation, Kmart Corporation, Nintendo Co., Ltd., Sears, Roebuck & Co, TIGER DIRECT, INC., Sam's East Inc, GameStop Corp., Compusa.com, Inc., Best Buy Purchasing, LLC, Wal-Mart Stores, Inc., Dell Inc., Nintendo of America Inc., BJS WHOLESALE CLUB, INC, Best Buy Stores, L.P., Radioshack Corporation, QVC, Inc., 186 MOTION for Reconsideration re 184 Order on Motion to Sever MOTION for Reconsideration filed by PC Connection, Inc., Trans World Entertainment Corporation, TOYS R US-DELAWARE, INC., BestBuy.com, LLC, Target Corporation, Kmart Corporation, Nintendo Co., Ltd., Sears, Roebuck & Co, TIGER DIRECT, INC., GameStop Corp., Compusa.com, Inc., Best Buy Purchasing, LLC, Dell Inc., Nintendo of America Inc., BJS WHOLESALE CLUB, INC, Best Buy Stores, L.P., Radioshack Corporation, QVC, Inc. Signed by Judge Leonard Davis on 3/27/13. (mjc, ) (Entered: 03/27/2013) |
| 03/29/2013 | 258 | NOTICE by BJS WHOLESALE CLUB, INC, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com, Inc., Dell Inc., GameStop Corp., Kmart Corporation, Nintendo Co., Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Sam's East Inc, Sams West, Inc., Sears, Roebuck & Co, TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas LLC, Wal-Mart Stores, Inc. (Nelson, Mark) (Entered: 03/29/2013) |
| 04/24/2013 | 259 | NOTICE of Change of Address by Karen L Carroll (Carroll, Karen) (Entered: 04/24/2013) |
| 04/24/2013 | 260 | NOTICE of Change of Address by Karen L Carroll (Carroll, Karen) (Entered: 04/24/2013) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/06/2013 15:22:38 | | |
| **PACER Login:** | sn0012 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:11-cv-00496-LED |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

A551

JURY, LED3, MEDIATION, PATENT/TRADEMARK

# U.S. District Court [LIVE]
## Eastern District of TEXAS (Tyler)
## CIVIL DOCKET FOR CASE #: 6:11-cv-00571-LED

| | |
|---|---|
| UltimatePointer, LLC v. Nintendo Co., LTD., et al | Date Filed: 11/01/2011 |
| Assigned to: Judge Leonard Davis | Jury Demand: Both |
| Related Case: 6:11-cv-00496-LED | Nature of Suit: 830 Patent |
| Cause: 35:271 Patent Infringement | Jurisdiction: Federal Question |

**Mediator**

| | | |
|---|---|---|
| **David Folsom** | represented by | **David Folsom** |
| | | Special Master - David Folsom |
| | | 6004 Summerfield Drive |
| | | Texarkana, TX 75503 |
| | | 903-255-3251 |
| | | Fax: 903-255-3266 |
| | | Email: dfolsom@jw.com |
| | | PRO SE |

**Technical Advisor**

| | | |
|---|---|---|
| **Michael McLemore** | represented by | **Michael T McLemore** |
| | | 10333 Richmond Ave |
| | | Suite 1100 |
| | | Houston, TX 77042 |
| | | 713/224-1007 |
| | | Email: mtmesq@flash.net |
| | | *ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **UltimatePointer, LLC** | represented by | **Charles J Rogers** |
| | | Conley Rose, P.C. - Houston |
| | | 1001 McKinney Street |
| | | Suite 1800 |
| | | Houston, TX 77002 |
| | | 713-238-8049 |
| | | Fax: 713-238-8008 |
| | | Email: crogers@conleyrose.com |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Daymon Jeffrey Rambin** |
| | | Capshaw DeRieux LLP |
| | | 114 E Commerce Avenue |
| | | Gladewater, TX 75647 |
| | | 903-233-4830 |
| | | Fax: 903-236-8787 |
| | | Email: jrambin@capshawlaw.com |

A552

*ATTORNEY TO BE NOTICED*

**Elizabeth L DeRieux**
Capshaw DeRieux LLP
114 E Commerce Avenue
Gladewater, TX 75647
(903) 233-4816
Fax: (903) 236-8787
Email: ederieux@capshawlaw.com
*ATTORNEY TO BE NOTICED*

**Michael James Guthrie**
Conley Rose
5700 Granite Parkway
Suite 330
Plano, TX 75024-6616
713-238-8000
Fax: 713-238-8008
Email: mguthrie@conleyrose.com
*ATTORNEY TO BE NOTICED*

**Sidney Calvin Capshaw , III**
Capshaw DeRieux LLP
114 E Commerce Avenue
Gladewater, TX 75647
903/233-4826
Fax: 903-236-8787
Email: ccapshaw@capshawlaw.com
*ATTORNEY TO BE NOTICED*

**Thomas Loyd Warden**
Conley Rose, P.C. - Houston
1001 McKinney Street
Suite 1800
Houston, TX 77002
713/237-8331
Fax: 713/238-8008
Email: twarden@conleyrose.com
*ATTORNEY TO BE NOTICED*

**Gregory Loren Maag**
Conley Rose, P.C. - Houston
1001 McKinney Street
Suite 1800
Houston, TX 77002
713/238-8040
Fax: 713/238-8008
Email: gmaag@conleyrose.com
*ATTORNEY TO BE NOTICED*

A553

V.

**Defendant**

**Nintendo Co. Ltd.**                      represented by  **Debra Elaine Gunter**
                                                            Yarbrough Wilcox, PLLC
                                                            100 E. Ferguson Street
                                                            Ste 1015
                                                            Tyler, TX 75702
                                                            903-595-3111
                                                            Email: debby@yw-lawfirm.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Herbert A Yarbrough , III**
                                                            Attorney at Law
                                                            100 E Ferguson
                                                            Suite 1015
                                                            Tyler, TX 75702
                                                            903/595-3111
                                                            Fax: 19035950191
                                                            Email: trey@yw-lawfirm.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Mark Christopher Nelson**
                                                            Dentons US LLP - Dallas
                                                            2000 McKinney Avenue
                                                            Suite 1900
                                                            Dallas, TX 75201
                                                            214-259-0901
                                                            Fax: 12142590910
                                                            Email: mark.nelson@dentons.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Steven Mark Geiszler**
                                                            Dentons US LLP - Dallas
                                                            2000 McKinney Avenue
                                                            Suite 1900
                                                            Dallas, TX 75201
                                                            214/259-0951
                                                            Fax: 214/259-0910
                                                            Email: steven.geiszler@dentons.com
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Nintendo of America Inc.**                represented by  **Debra Elaine Gunter**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Herbert A Yarbrough , III**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

A554

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JJ Games, LLC**                      represented by    **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Game Stop Corporation**              represented by    **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Best Buy Co Inc**

**Defendant**

**Sears Roebuck & Co.**                represented by    **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

## A555

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**KMart Corporation**          represented by **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Target Corporation**          represented by **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wal-Mart Stores, Inc.**          represented by **David E Finkelson**
McGuire Woods - Richmond
One James Center
901 E Cary St
Richmond, VA 23219
804/775-1157

A556

Fax: 804/225-5377
Email: dfinkelson@mcguirewoods.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence Augustine Phillips**
Siebman Reynolds Burg & Phillips LLP

300 N Travis St
Sherman, TX 75090-9969
903/870-0070
Fax: 903/870/0066
Email: larryphillips@siebman.com
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Charles Smith**
Siebman Burg Phillips & Smith, LLP-
Marshall
P O Box 1556
Marshall, TX 75671-1556
903-938-8900
Fax: 19727674620
Email: michaelsmith@siebman.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wal-Mart Stores Texas, Inc**　　　represented by **David E Finkelson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence Augustine Phillips**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Charles Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sam's East Inc**　　　represented by **David E Finkelson**
(See above for address)

**A557**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen L Carroll**
McGuire Woods - Chicago
77 West Wacker Dr
Suite 4100
Chicago, IL 60601
312/750-8646
Fax: 312/698-4549
Email: kcarroll@mcguirewoods.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence Augustine Phillips**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Charles Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sam's West, Inc.**                    represented by  **David E Finkelson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen L Carroll**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence Augustine Phillips**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Charles Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

A558

**Radioshack Corporation**                represented by **Christopher Michael Joe**
                                                          Buether Joe & Carpenter, LLC
                                                          1700 Pacific Avenue
                                                          Suite 2390
                                                          Dallas, TX 75201
                                                          (214) 466-1272
                                                          Fax: (214) 635-1828
                                                          Email: Chris.Joe@bjciplaw.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Monica Nguyen Tavakoli**
                                                          Buether Joe & Carpenter, LLC
                                                          1700 Pacific Avenue
                                                          Suite 4750
                                                          Dallas, TX 75201
                                                          214-635-1839
                                                          Fax: 972-656-0967
                                                          Email: monica.tavakoli@bjciplaw.com
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Niknaz Bukovcan**
                                                          Buether Joe & Carpenter, LLC
                                                          1700 Pacific Avenue
                                                          Suite 4750
                                                          Dallas, TX 75201
                                                          214/466-1278
                                                          Fax: 214/635-1831
                                                          Email: niky.bukovcan@bjciplaw.com
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**TOYS R US, INC.**

**Defendant**

**Dell, Inc.**                            represented by **Debra Elaine Gunter**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Herbert A Yarbrough , III**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Mark Christopher Nelson**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Steven Mark Geiszler**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**A559**

**Defendant**

**QVC, Inc.**                                    represented by  **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Trans World Entertainment Corporation**          represented by  **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BJ's Wholesale Club, Inc.**           represented by  **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)

A560

*ATTORNEY TO BE NOTICED*

**Defendant**

**PC Connection, Inc.**                    represented by    **Debra Elaine Gunter**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Herbert A Yarbrough , III**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Mark Christopher Nelson**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Steven Mark Geiszler**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Compusa.com Inc.**                       represented by    **Debra Elaine Gunter**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Herbert A Yarbrough , III**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Mark Christopher Nelson**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Steven Mark Geiszler**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**TIGER DIRECT, INC.**                     represented by    **Debra Elaine Gunter**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Herbert A Yarbrough , III**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Mark Christopher Nelson**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Steven Mark Geiszler**

A561

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TOYS R US-DELAWARE, INC.**            represented by  **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BestBuy.com, LLC**            represented by  **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Best Buy Stores, L.P.**            represented by  **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**A562**

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Best Buy Purchasing, LLC**     represented by   **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Nintendo Co. Ltd.**     represented by   **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Nintendo of America Inc.**     represented by   **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

A563

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**UltimatePointer, LLC**                    represented by   **Charles J Rogers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Loyd Warden**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Loren Maag**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Nintendo Co. Ltd.**                       represented by   **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Mark Geiszler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Nintendo of America Inc.**                represented by   **Debra Elaine Gunter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Christopher Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

A564

Steven Mark Geiszler
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

UltimatePointer, LLC                  represented by **Charles J Rogers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daymon Jeffrey Rambin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth L DeRieux**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sidney Calvin Capshaw , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Loyd Warden**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Loren Maag**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/01/2011 | 1 | COMPLAINT *for Patent Infringement* against All Defendants ( Filing fee $ 350 receipt number 0540-3299680.), filed by UltimatePointer, LLC. (Attachments: # 1 Exhibit USPN 8,049,729, # 2 Civil Cover Sheet)(Maag, Gregory) (Additional attachment(s) added on 11/2/2011: # 3 Exhibit - Searchable Patent) (mjc, ). (Entered: 11/01/2011) |
| 11/01/2011 | 2 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (Maag, Gregory) (Entered: 11/01/2011) |
| 11/01/2011 | | Judge Leonard Davis added. (mll, ) (Entered: 11/01/2011) |
| 11/02/2011 | 3 | Notice of Filing of Amended Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (Maag, Gregory) Modified on 11/3/2011 (mjc, ). (Entered: 11/02/2011) |
| 11/04/2011 | 4 | NOTICE of Attorney Appearance by Charles J Rogers on behalf of |

A565

| | | |
|---|---|---|
| | | UltimatePointer, LLC (Rogers, Charles) (Entered: 11/04/2011) |
| 11/04/2011 | 5 | NOTICE of Attorney Appearance by Thomas Loyd Warden on behalf of UltimatePointer, LLC (Warden, Thomas) (Entered: 11/04/2011) |
| 11/23/2011 | 6 | WAIVER OF SERVICE Returned Executed by UltimatePointer, LLC. Radioshack Corporation waiver sent on 11/14/2011, answer due 1/13/2012. (mll, ) (Entered: 11/28/2011) |
| 12/30/2011 | 7 | AMENDED COMPLAINT *for Patent Infringement* against BJ's Wholesale Club, Inc., Compusa.com Inc., Dell, Inc., Game Stop Corporation, JJ Games, LLC, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc., TOYS R US-DELAWARE, INC., BestBuy.com, LLC, Best Buy Stores, L.P., Best Buy Purchasing, LLC, filed by UltimatePointer, LLC. (Attachments: # 1 Exhibit U.S. Patent No. 8,049,729, # 2 Civil Cover Sheet)(Warden, Thomas) (Entered: 12/30/2011) |
| 01/20/2012 | 8 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Radioshack Corporation.( Joe, Christopher) (Entered: 01/20/2012) |
| 01/20/2012 | 9 | MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants* by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit Declaration of Trey Yarbrough, # 2 Exhibit 1A, # 3 Exhibit 1B, # 4 Exhibit 2-11, # 5 Exhibit 12-20, # 6 Exhibit Declaration of Toshiro Hibino, # 7 Exhibit Declaration of Jacqualee Story, # 8 Text of Proposed Order)(Nelson, Mark) (Entered: 01/20/2012) |
| 01/23/2012 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 8 is granted pursuant to Local Rule CV-12 for Radioshack Corporation to 2/12/2012. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 01/23/2012) |
| 01/23/2012 | 10 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD. SEE CORRECTED DOCUMENT 12 .*** NOTICE of Attorney Appearance by Herbert A Yarbrough, III on behalf of BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, JJ Games, LLC, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment |

A566

| | | Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc. (Yarbrough, Herbert) Modified on 1/24/2012 (mjc, ). (Entered: 01/23/2012) |
|---|---|---|
| 01/23/2012 | 11 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD. SEE CORRECTED DOCUMENT 13 .*** NOTICE of Attorney Appearance by Debra Elaine Gunter on behalf of BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, JJ Games, LLC, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc. (Gunter, Debra) Modified on 1/24/2012 (mjc, ). (Entered: 01/23/2012) |
| 01/23/2012 | 12 | ***CORRECTED DOCUMENT. REPLACES 10 .*** NOTICE of Attorney Appearance by Herbert A Yarbrough, III on behalf of BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, JJ Games, LLC, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation (Yarbrough, Herbert) Modified on 1/24/2012 (mjc, ). (Entered: 01/23/2012) |
| 01/23/2012 | 13 | ***CORRECTED DOCUMENT. REPLACES 11 .*** NOTICE of Attorney Appearance by Debra Elaine Gunter on behalf of BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, JJ Games, LLC, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation (Gunter, Debra) Modified on 1/24/2012 (mjc, ). (Entered: 01/23/2012) |
| 01/23/2012 | 14 | Unopposed MOTION for Extension of Time to File Answer by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, JJ Games, LLC, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation. (Attachments: # 1 Text of Proposed Order) (Geiszler, Steven) (Entered: 01/23/2012) |
| 01/24/2012 | | Conformed the docket to match the parties stated in the amended notices of appearance 12 for Trey Yarbrough and 13 for Debra Gunter. (mjc, ) (Entered: 01/24/2012) |
| 01/24/2012 | 15 | ORDER granting 14 Motion for Extension of Time to Answer. Defts shall have to 4-13-2012 to answer, move, or otherwise respond to the First Amended Complaint. Signed by Judge Leonard Davis on 01/24/12. cc:attys 1-24-12 (mll, ) (Entered: 01/24/2012) |

A567

| 02/02/2012 | 16 | Unopposed MOTION for Extension of Time to File Answer re 7 Amended Complaint,, *RadioShack Corporation's Unopposed Second Motion For Extension of Time to Answer, Move, or Otherwise Respond to First Amended Complaint* by Radioshack Corporation. (Attachments: # 1 Text of Proposed Order)(Joe, Christopher) (Entered: 02/02/2012) |
| --- | --- | --- |
| 02/03/2012 | 17 | ORDER granting 16 Motion for Extension of Time to Answer. Defendant RadioShack shall have to 4-13-2012, to answer, move, or otherwise respond to the First Amended Complaint. The Court will not grant any further extensions beyond April 2012 absent a showing of good cause. Signed by Judge Leonard Davis on 02/03/12. cc:attys 2-03-12 (mll, ) (Entered: 02/03/2012) |
| 02/03/2012 | 18 | NOTICE of Voluntary Dismissal by UltimatePointer, LLC (Warden, Thomas) (Additional attachment(s) added on 2/7/2012: # 1 Text of Proposed Order) (mjc, ). (Entered: 02/03/2012) |
| 02/03/2012 | 19 | Unopposed MOTION for Extension of Time to File Response/Reply as to 9 MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants* by UltimatePointer, LLC. (Attachments: # 1 Text of Proposed Order Granting Extension of Time) (Warden, Thomas) (Entered: 02/03/2012) |
| 02/03/2012 | 20 | SUMMONS Issued as to Sam's East Inc, Sam's West, Inc., Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc., and emailed to pltf for service. (mll, ) (Entered: 02/03/2012) |
| 02/06/2012 | 21 | ORDER granting 19 Motion for Extension of Time to File Response/Reply re 9 MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants*; Responses due by 2/20/2012. Signed by Judge Leonard Davis on 02/06/12. cc:attys 2-06-12 (mll, ) (Entered: 02/06/2012) |
| 02/20/2012 | 22 | RESPONSE in Opposition re 9 MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants filed by UltimatePointer, LLC.* (Attachments: # 1 Exhibit A - USPN 7,746,321, # 2 Exhibit B - USPN 8,049,729, # 3 Exhibit C - Letter Agreement 12-29-2011, # 4 Exhibit D - E-Mails re Substitution, # 5 Exhibit E - Wright & Miller, Federal Practice & Procedure § 1655, # 6 Exhibit F - Chisum on Patents, # 7 Exhibit G - Warden Declaration (w Exhibits G1-G8), # 8 Text of Proposed Order Denying Motion)(Warden, Thomas) (Additional attachment (s) added on 2/24/2012: # 9 Exhibit A Searchable, # 10 Exhibit B Searchable) (mjc, ). (Entered: 02/20/2012) |
| 02/24/2012 | 23 | Unopposed MOTION for Extension of Time to File Answer re 7 Amended Complaint,, by Sam's East Inc, Sam's West, Inc., Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Smith, Michael) (Entered: 02/24/2012) |
| 02/27/2012 | 24 | ORDER granting 23 Motion for Extension of Time to Answer. Defendants Wal-Mart Stores, Inc., Wal-Mart Stores Texas, L.L.C., Sams East, Inc., and SamsWest, Inc. shall have until 4-13-2012 to answer, move, or otherwise respondto the First Amended Complaint. The Court will not entertain any |

A568

| | | further extensions absent a showing of good cause. Signed by Judge Leonard Davis on 02/27/12. cc:attys 2-27-12 (mll, ) (Entered: 02/27/2012) |
|---|---|---|
| 02/27/2012 | 25 | Return of Service Executed as to Wal-Mart Stores Texas, Inc on 2/6/2012, by personal service. (mll, ) (Entered: 02/28/2012) |
| 02/27/2012 | 26 | Return of Service Executed as to Wal-Mart Stores, Inc. on 2/6/2012, by personal service. (mll, ) (Entered: 02/28/2012) |
| 02/27/2012 | 27 | Return of Service Executed as to Sam's East Inc on 2/6/2012, by personal service. (mll, ) (Entered: 02/28/2012) |
| 02/27/2012 | 28 | Return of Service Executed as to Sam's West, Inc. on 2/6/2012, by personal service. (mll, ) (Entered: 02/28/2012) |
| 02/29/2012 | 29 | APPLICATION to Appear Pro Hac Vice by Attorney David E Finkelson for Sam's East Inc, Sam's West, Inc., Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (mll, ) (Entered: 02/29/2012) |
| 03/01/2012 | 30 | REPLY to Response to Motion re 9 MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants filed by* BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit Declaration of Mark C. Nelson, # 2 Exhibit 1, # 3 Exhibit 2)(Nelson, Mark) (Entered: 03/01/2012) |
| 03/12/2012 | 31 | SUR-REPLY to Reply to Response to Motion re 9 MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants filed by UltimatePointer, LLC.* (Attachments: # 1 Exhibit A - Wright & Miller, Federal Practice & Procedure, Section 1286, # 2 Exhibit B - Warden Declaration)(Warden, Thomas) (Entered: 03/12/2012) |
| 03/26/2012 | 32 | NOTICE of Attorney Appearance by Niknaz Forughi Bukovcan on behalf of Radioshack Corporation (Bukovcan, Niknaz) (Entered: 03/26/2012) |
| 04/11/2012 | 33 | SUMMONS Issued as to BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Best Buy Stores, # 2 BestBuy.com, # 3 BJ's Wholesale, # 4 CompUsa.com, # 5 Dell, # 6 Gamestop, # 7 Kmart, # 8 Nintendo Co., # 9 Nintendo of America, # 10 PC Connection, # 11 QVC, # 12 Sam's East, # 13 Sam's West, # 14 Sears, # 15 Target, # 16 Tiger Direct, # 17 Toys "R" Us, # 18 Trans World, # 19 Wal-Mart - Texas, # 20 Wal-Mart)(mjc, ) (Entered: 04/11/2012) |

A569

| | | |
|---|---|---|
| 04/12/2012 | [34](#) | Unopposed MOTION for Leave to File *Sur-Sur-Reply* by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation. (Attachments: # [1](#) Text of Proposed Order) (Nelson, Mark) (Entered: 04/12/2012) |
| 04/12/2012 | [35](#) | SUR-REPLY to Reply to Response to Motion re [9](#) MOTION to Sever *and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants,* [34](#) *Unopposed MOTION for Leave to File Sur-Sur-Reply filed by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation* . (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B, # [3](#) Exhibit C, # [4](#) Exhibit D, # [5](#) Exhibit E, # [6](#) Exhibit F, # [7](#) Exhibit G, # [8](#) Exhibit H, # [9](#) Exhibit I, # [10](#) Exhibit J, # [11](#) Exhibit K, # [12](#) Exhibit L, # [13](#) Exhibit M)(Nelson, Mark) (Entered: 04/12/2012) |
| 04/12/2012 | [36](#) | NOTICE of Change of Address by Christopher Michael Joe (Joe, Christopher) (Entered: 04/12/2012) |
| 04/13/2012 | [37](#) | *Defendant RadioShack Corporation's Answer to UltimatePointer, LLC's First Amended Complaint for Patent Infringement* ANSWER to [7](#) Amended Complaint,, by Radioshack Corporation.(Joe, Christopher) (Entered: 04/13/2012) |
| 04/13/2012 | [38](#) | ANSWER to [7](#) Amended Complaint,,, COUNTERCLAIM against UltimatePointer, LLC by Nintendo Co. Ltd., Nintendo of America Inc.. (Nelson, Mark) (Entered: 04/13/2012) |
| 04/13/2012 | [39](#) | ANSWER to [7](#) Amended Complaint,, by Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC.(Nelson, Mark) (Entered: 04/13/2012) |
| 04/13/2012 | [40](#) | ANSWER to [7](#) Amended Complaint,, by BJ's Wholesale Club, Inc..(Nelson, Mark) (Entered: 04/13/2012) |
| 04/13/2012 | [41](#) | ANSWER to [7](#) Amended Complaint,, by Compusa.com Inc., TIGER DIRECT, INC..(Nelson, Mark) (Entered: 04/13/2012) |
| 04/13/2012 | [42](#) | ANSWER to [7](#) Amended Complaint,, by Dell, Inc..(Nelson, Mark) (Entered: 04/13/2012) |
| 04/13/2012 | [43](#) | ANSWER to [7](#) Amended Complaint,, by Game Stop Corporation.(Nelson, Mark) (Entered: 04/13/2012) |
| 04/13/2012 | [44](#) | ANSWER to [7](#) Amended Complaint,, by PC Connection, Inc..(Nelson, Mark) (Entered: 04/13/2012) |
| 04/13/2012 | [45](#) | ANSWER to [7](#) Amended Complaint,, by QVC, Inc..(Nelson, Mark) (Entered: |

| | | 04/13/2012) |
|---|---|---|
| 04/13/2012 | 46 | ANSWER to 7 Amended Complaint,, by KMart Corporation, Sears Roebuck & Co..(Nelson, Mark) (Entered: 04/13/2012) |
| 04/13/2012 | 47 | ANSWER to 7 Amended Complaint,, by Target Corporation.(Nelson, Mark) (Entered: 04/13/2012) |
| 04/13/2012 | 48 | ANSWER to 7 Amended Complaint,, by TOYS R US-DELAWARE, INC.. (Nelson, Mark) (Entered: 04/13/2012) |
| 04/13/2012 | 49 | ANSWER to 7 Amended Complaint,, by Trans World Entertainment Corporation.(Nelson, Mark) (Entered: 04/13/2012) |
| 04/13/2012 | 50 | ANSWER to 7 Amended Complaint,, by Sam's East Inc, Sam's West, Inc., Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc..(Nelson, Mark) (Entered: 04/13/2012) |
| 04/13/2012 | 51 | CORPORATE DISCLOSURE STATEMENT filed by Radioshack Corporation (Joe, Christopher) (Entered: 04/13/2012) |
| 04/13/2012 | 52 | ORDER granting 34 Motion for Leave to File Sur-Sur-Reply in Support of Their Motion to Sever and Transfer the Claims Against Nintendo and to Stay theClaims Against the Retailer Defendants. Signed by Judge Leonard Davis on 04/13/12. cc:attys 4-13-12 (mll, ) (Entered: 04/13/2012) |
| 04/16/2012 | 53 | CORPORATE DISCLOSURE STATEMENT filed by Wal-Mart Stores Texas, Inc (Nelson, Mark) (Entered: 04/16/2012) |
| 04/16/2012 | 54 | CORPORATE DISCLOSURE STATEMENT filed by Wal-Mart Stores, Inc. (Nelson, Mark) (Entered: 04/16/2012) |
| 04/16/2012 | 55 | CORPORATE DISCLOSURE STATEMENT filed by Sam's West, Inc. (Nelson, Mark) (Entered: 04/16/2012) |
| 04/16/2012 | 56 | CORPORATE DISCLOSURE STATEMENT filed by Sam's East Inc (Nelson, Mark) (Entered: 04/16/2012) |
| 04/16/2012 | 57 | CORPORATE DISCLOSURE STATEMENT filed by TIGER DIRECT, INC. (Nelson, Mark) (Entered: 04/16/2012) |
| 04/16/2012 | 58 | CORPORATE DISCLOSURE STATEMENT filed by Compusa.com Inc. (Nelson, Mark) (Entered: 04/16/2012) |
| 04/16/2012 | 59 | CORPORATE DISCLOSURE STATEMENT filed by BJ's Wholesale Club, Inc. (Nelson, Mark) (Entered: 04/16/2012) |
| 04/16/2012 | 60 | CORPORATE DISCLOSURE STATEMENT filed by Dell, Inc. (Nelson, Mark) (Entered: 04/16/2012) |
| 04/16/2012 | 61 | CORPORATE DISCLOSURE STATEMENT filed by QVC, Inc. (Nelson, Mark) (Entered: 04/16/2012) |
| 04/16/2012 | 62 | CORPORATE DISCLOSURE STATEMENT filed by Target Corporation (Nelson, Mark) (Entered: 04/16/2012) |

A571

| | | |
|---|---|---|
| 04/16/2012 | 63 | CORPORATE DISCLOSURE STATEMENT filed by Trans World Entertainment Corporation (Nelson, Mark) (Entered: 04/16/2012) |
| 04/16/2012 | 64 | Return of Service Executed as to Nintendo Co. Ltd. on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 65 | Return of Service Executed as to Nintendo of America Inc. on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 66 | Return of Service Executed as to Game Stop Corporation on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 67 | Return of Service Executed as to Best Buy Stores, L.P. on 4/12/2012, by personal service; answer due: 5/3/2012. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 68 | Return of Service Executed as to BestBuy.com, LLC on 4/12/2012, by personal service; answer due: 5/3/2012. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 69 | Return of Service Executed as to Best Buy Purchasing, LLC on 4/12/2012, by personal service; answer due: 5/3/2012. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 70 | Return of Service Executed as to Sears Roebuck & Co. on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 71 | Return of Service Executed as to KMart Corporation on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 72 | Return of Service Executed as to Target Corporation on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 73 | Return of Service Executed as to TOYS R US-DELAWARE, INC. on 4/12/2012, by personal service; answer due: 5/3/2012. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 74 | Return of Service Executed as to Dell, Inc. on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 75 | Return of Service Executed as to QVC, Inc. on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 76 | Return of Service Executed as to Trans World Entertainment Corporation on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 77 | Return of Service Executed as to BJ's Wholesale Club, Inc. on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 78 | Return of Service Executed as to PC Connection, Inc. on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 79 | Return of Service Executed as to Compusa.com Inc. on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/16/2012 | 80 | Return of Service Executed as to TIGER DIRECT, INC. on 4/12/2012, by personal service. (mll, ) (Entered: 04/17/2012) |
| 04/17/2012 | 81 | CORPORATE DISCLOSURE STATEMENT filed by Sears Roebuck & Co. |

A572

| | | (Nelson, Mark) (Entered: 04/17/2012) |
|---|---|---|
| 04/17/2012 | 82 | CORPORATE DISCLOSURE STATEMENT filed by KMart Corporation (Nelson, Mark) (Entered: 04/17/2012) |
| 04/17/2012 | 83 | CORPORATE DISCLOSURE STATEMENT filed by TOYS R US-DELAWARE, INC. (Nelson, Mark) (Entered: 04/17/2012) |
| 04/18/2012 | 84 | CORPORATE DISCLOSURE STATEMENT filed by Best Buy Stores, L.P. (Nelson, Mark) (Entered: 04/18/2012) |
| 04/18/2012 | 85 | CORPORATE DISCLOSURE STATEMENT filed by Best Buy Purchasing, LLC (Nelson, Mark) (Entered: 04/18/2012) |
| 04/18/2012 | 86 | CORPORATE DISCLOSURE STATEMENT filed by BestBuy.com, LLC (Nelson, Mark) (Entered: 04/18/2012) |
| 04/18/2012 | 87 | CORPORATE DISCLOSURE STATEMENT filed by Game Stop Corporation (Nelson, Mark) (Entered: 04/18/2012) |
| 04/19/2012 | 88 | CORPORATE DISCLOSURE STATEMENT filed by Nintendo Co. Ltd., Nintendo of America Inc. identifying Corporate Parent Nintendo Co., Ltd. for Nintendo of America Inc. ; Corporate Parent None for Nintendo Co. Ltd.. (Geiszler, Steven) (Entered: 04/19/2012) |
| 04/20/2012 | 89 | CORPORATE DISCLOSURE STATEMENT filed by PC Connection, Inc. (Nelson, Mark) (Entered: 04/20/2012) |
| 05/07/2012 | 90 | *ULTIMATEPOINTER, LLC'S* ANSWER to 38 Answer to Amended Complaint, Counterclaim *of Nintendo Co., Ltd. and Nintendo of America Inc.* by UltimatePointer, LLC.(Warden, Thomas) (Entered: 05/07/2012) |
| 05/07/2012 | 91 | ANSWER to Complaint 37 *Captioned as "Answer"* by UltimatePointer, LLC. (Warden, Thomas) (Entered: 05/07/2012) |
| 05/07/2012 | 92 | NOTICE by UltimatePointer, LLC *of Readiness for Status Conference* (Warden, Thomas) (Entered: 05/07/2012) |
| 05/08/2012 | 93 | ORDER setting Status Conference for 6/4/2012 01:30 PM before Judge Leonard Davis. Signed by Judge Leonard Davis on 05/08/12. cc:attys 5-08-12 (mll, ) (Entered: 05/08/2012) |
| 05/11/2012 | 94 | NOTICE by UltimatePointer, LLC *of Readiness for Status Conference [Corrected]* (Warden, Thomas) (Entered: 05/11/2012) |
| 05/21/2012 | 95 | APPLICATION (APPROVED) to Appear Pro Hac Vice by Attorney Karen L Carroll for Sam's East Inc., and Sam's West, Inc.. (pkb, ) (Entered: 05/23/2012) |
| 06/04/2012 | 96 | ***FILED IN ERROR -- SEE # 97 FOR CORRECT DOCKET ENTRY***<br>NOTICE of Attorney Appearance by Daymon Jeffrey Rambin on behalf of UltimatePointer, LLC (Rambin, Daymon) Modified on 6/4/2012 (mll, ). (Entered: 06/04/2012) |
| | | |

A573

| 06/04/2012 | 97 | NOTICE of Attorney Appearance by Daymon Jeffrey Rambin on behalf of UltimatePointer, LLC (Rambin, Daymon) (Entered: 06/04/2012) |
| 06/04/2012 | 98 | NOTICE of Attorney Appearance by Lawrence Augustine Phillips on behalf of Sam's East Inc, Sam's West, Inc., Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc. (Phillips, Lawrence) (Entered: 06/04/2012) |
| 06/04/2012 | 99 | Minute Entry for proceedings held before Judge Leonard Davis: **Status Conference held on 6/4/2012.** (Court Reporter Jill McFadden.) (Attachments: # 1 Attorney Sign-In Sheets) (rlf, ) (Entered: 06/04/2012) |
| 06/05/2012 | 100 | ORDER that parties are to submit agreed Docket Control and Discovery Orders to the Court by 06-18-2012. For purposes of computing the time deadlines under the local patent rules, the Court deems 06-18-2012 as the effective Rule 16 Initial Case Management Conference date, and thus plaintiff's PR 3-1 and 3-2 disclosures will be due 06-08-2012. Signed by Judge Leonard Davis on 06/05/12. cc:attys 6-05-12(mll, ) (Entered: 06/05/2012) |
| 06/08/2012 | 101 | NOTICE of Discovery Disclosure by UltimatePointer, LLC *Regarding Service of PR 3-1 and 3-2 Infringement Contentions* (Warden, Thomas) (Entered: 06/08/2012) |
| 06/18/2012 | 102 | Joint MOTION for Extension of Time to File *Docket Control Order and Discovery Order* by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com LLC, Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, LLC, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order) (Yarbrough, Herbert) (Entered: 06/18/2012) |
| 06/18/2012 | 103 | NOTICE of Attorney Appearance by Sidney Calvin Capshaw, III on behalf of UltimatePointer, LLC (Capshaw, Sidney) (Entered: 06/18/2012) |
| 06/18/2012 | 104 | NOTICE of Attorney Appearance by Elizabeth L DeRieux on behalf of UltimatePointer, LLC (DeRieux, Elizabeth) (Entered: 06/18/2012) |
| 06/19/2012 | 105 | ORDER granting 102 Motion for Extension of Time. Parties shall submit an agreed Docket Control Order and Discovery Order, or competing proposals and a summary of their disagreements, by 6-25-2012. Signed by Judge Leonard Davis on 06/19/12. cc:attys 6-20-12 (mll, ) (Entered: 06/20/2012) |
| 06/25/2012 | 106 | Joint MOTION *For Entry of Docket Control Order* by Nintendo Co. Ltd., Nintendo of America Inc., UltimatePointer, LLC. (Attachments: # 1 Docket Control Order)(Yarbrough, Herbert) (Entered: 06/25/2012) |
| 06/25/2012 | 107 | Joint MOTION for Extension of Time to File *Dispositive Motions* by Nintendo Co. Ltd., Nintendo of America Inc., UltimatePointer, LLC. (Attachments: # 1 Text of Proposed Order)(Yarbrough, Herbert) (Entered: 06/25/2012) |

A574

| | | |
|---|---|---|
| 06/25/2012 | 108 | Joint MOTION *For Entry of Discovery Order* by Nintendo Co. Ltd., Nintendo of America Inc., UltimatePointer, LLC. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 06/25/2012) |
| 06/26/2012 | 109 | ORDER granting 107 Motion for Extension of Time. Parties shall have to 10-17-2013 to file dispositive motions. Signed by Judge Leonard Davis on 06/26/12. cc:attys 6-26-12 (mll, ) (Entered: 06/26/2012) |
| 07/02/2012 | 110 | ORDER terminating 108 Motion for Discovery Order. Parties are ordered to submit a discovery order reflecting the resolution of disputes within three business days. Signed by Judge Leonard Davis on 07/02/12. cc:attys 7-02-12 (mll, ) (Entered: 07/02/2012) |
| 07/03/2012 | 111 | Submission of Proposed Agreed Docket Control/Scheduling order by UltimatePointer, LLC , *Corrected to Identify Judge Leonard Davis as Presiding at the Pretrial Conference*. (Attachments: # 1 Text of Proposed Order - Docket Control Order)(Warden, Thomas) (Entered: 07/03/2012) |
| 07/03/2012 | 112 | Submission of Proposed Agreed Discovery order by UltimatePointer, LLC , *Submitted Jointly Pursuant to Court Order (Doc. 110)*. (Attachments: # 1 Text of Proposed Order - Discovery Order)(Warden, Thomas) (Entered: 07/03/2012) |
| 07/05/2012 | 113 | DISCOVERY ORDER. Signed by Judge Leonard Davis on 07/05/12. cc:attys 7-05-12(mll, ) (Entered: 07/05/2012) |
| 07/09/2012 | 114 | DOCKET CONTROL ORDER. Mediation Completion due by 12/21/2012. Jury Selection set for 9/2/2014 09:00AM before Judge Leonard Davis. Jury Trial set for 9/8/2014 09:00 AM before Judge Leonard Davis. Markman Hearing set for 1/17/2013 09:00 AM before Judge Leonard Davis. Pretrial Conference set for 8/28/2014 09:00 AM before Judge Leonard Davis. Signed by Judge Leonard Davis on 07/09/12. cc:attys 7-09-12(mll, ) (Entered: 07/09/2012) |
| 07/09/2012 | 115 | ORDER REFERRING CASE to Mediator. David Folsom added as Mediator. Signed by Judge Leonard Davis on 07/09/12. cc:attys 7-09-12(mll, ) (Entered: 07/09/2012) |
| 07/18/2012 | 116 | NOTICE of Discovery Disclosure by Radioshack Corporation *Defendant RadioShack Corporation's Notice of Service of Initial Disclosures* (Joe, Christopher) (Entered: 07/18/2012) |
| 07/18/2012 | 117 | NOTICE of Discovery Disclosure by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc. (Nelson, Mark) (Entered: 07/18/2012) |
| 07/18/2012 | 118 | NOTICE of Discovery Disclosure by UltimatePointer, LLC (Warden, Thomas) (Entered: 07/18/2012) |

A575

| 08/03/2012 | 119 | MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants* by BJ's Wholesale Club, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit Declaration of Mark C. Nelson, # 2 Exhibit 1, # 3 Exhibit 1A, # 4 Exhibit 1B, # 5 Exhibit 1C, # 6 Exhibit 1D, # 7 Exhibit 1E, # 8 Exhibit 1F, # 9 Exhibit 1G, # 10 Exhibit 1H, # 11 Exhibit 1I, # 12 Exhibit 2, # 13 Exhibit 2I, # 14 Exhibit 3, # 15 Exhibit 4, # 16 Exhibit 5A, # 17 Exhibit 5B, # 18 Exhibit 5C, # 19 Exhibit 5D, # 20 Exhibit 5E, # 21 Exhibit 5F, # 22 Exhibit 5G, # 23 Exhibit 5H, # 24 Exhibit 5I, # 25 Exhibit 5J, # 26 Exhibit 5K, # 27 Exhibit 5L, # 28 Exhibit 6A, # 29 Exhibit 6B, # 30 Text of Proposed Order)(Nelson, Mark) (Entered: 08/03/2012) |
| --- | --- | --- |
| 08/03/2012 | 120 | NOTICE by Game Stop Corporation *Notice of Errata* (Attachments: # 1 Exhibit A)(Nelson, Mark) (Entered: 08/03/2012) |
| 08/17/2012 | 121 | NOTICE of Discovery Disclosure by UltimatePointer, LLC (Warden, Thomas) (Entered: 08/17/2012) |
| 08/17/2012 | 122 | Agreed MOTION To Amend The Scheduling Order by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, LLC, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 08/17/2012) |
| 08/17/2012 | 123 | NOTICE of Discovery Disclosure by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc. (Nelson, Mark) (Entered: 08/17/2012) |
| 08/20/2012 | 124 | RESPONSE in Opposition re 119 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants filed by UltimatePointer, LLC.* (Attachments: # 1 Exhibit A - Chisum on Patents, # 2 Exhibit B - Wright & Miller Section 1583, # 3 Exhibit C - Wright & Miller Section 1585, # 4 Exhibit D - Wright & Miller Section 1655, # 5 Text of Proposed Order Denying Motion)(Warden, Thomas) (Entered: 08/20/2012) |

A576

| 08/22/2012 | 125 | ORDER granting 122 Motion to Amend the Scheduling Order. Signed by Judge Leonard Davis on 08/22/12. cc:attys 8-22-12 (mll, ) (Entered: 08/22/2012) |
|---|---|---|
| 08/31/2012 | 126 | RESPONSE in Support re 119 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants filed by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.*. (Attachments: # 1 Exhibit 1A, # 2 Exhibit 1B, # 3 Exhibit 1C, # 4 Exhibit 1D, # 5 Exhibit 1E, # 6 Exhibit 1F, # 7 Exhibit 1G)(Nelson, Mark) (Entered: 08/31/2012) |
| 09/05/2012 | 127 | NOTICE by UltimatePointer, LLC *of Disclosure* (Maag, Gregory) (Entered: 09/05/2012) |
| 09/05/2012 | 128 | NOTICE by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc. *of Service of Disclosure* (Nelson, Mark) (Entered: 09/05/2012) |
| 09/07/2012 | 129 | Agreed MOTION To Amend The Scheduling Order by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, LLC, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 09/07/2012) |
| 09/10/2012 | 130 | SUR-REPLY to Reply to Response to Motion re 119 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants filed by UltimatePointer, LLC*. (Warden, Thomas) (Entered: 09/10/2012) |
| 09/11/2012 | 131 | ORDER granting 129 Motion to Amend the Scheduling Order. Signed by Judge Leonard Davis on 09/11/12. cc:attys 9-11-12 (mll, ) (Entered: 09/11/2012) |
| 09/17/2012 | 132 | Joint MOTION for Entry of Order Regarding E-Discovery by |

A577

| | | |
|---|---|---|
| | | UltimatePointer, LLC. (Attachments: # 1 Text of Proposed Order Regarding E-Discovery)(Warden, Thomas) (Entered: 09/17/2012) |
| 09/20/2012 | 133 | ORDER REGARDING E-DISCOVERY. Signed by Judge Leonard Davis on 09/20/12. cc:attys 9-20-12(mll, ) (Entered: 09/20/2012) |
| 09/21/2012 | 134 | ORDER denying as moot 9 Motion to Sever and Transfer; setting for hearing 119 Motion to Sever and Dismiss. Motion Hearing set for 12-04-2012 at 1:30 pm. Signed by Judge Leonard Davis on 09/21/12. cc:attys 9-24-12 (mll, ) (Entered: 09/24/2012) |
| 09/21/2012 | | Set Deadlines per 134 Order as to 119 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants*. Motion Hearing set for 12/4/2012 01:30 PM before Judge Leonard Davis. cc:attys 9-24-12 (mll, ) (Entered: 09/24/2012) |
| 10/02/2012 | 135 | Agreed MOTION to Amend the Scheduling Order by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, LLC, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 10/02/2012) |
| 10/03/2012 | 136 | MOTION for Reconsideration re 134 Order on Motion to Sever by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 10/03/2012) |
| 10/04/2012 | 137 | NOTICE of Attorney Appearance by Monica Nguyen Tavakoli on behalf of Radioshack Corporation (Tavakoli, Monica) (Entered: 10/04/2012) |
| 10/05/2012 | 138 | ORDER granting 135 Motion to Amend the Scheduling Order. Mediation is to occur on 10/22/2012. Signed by Judge Leonard Davis on 10/5/12. (mjc, ) (Entered: 10/05/2012) |
| 10/09/2012 | 139 | AMENDED COMPLAINT *FOR PATENT INFRINGEMENT* against BJ's Wholesale Club, Inc., Best Buy Co Inc, Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc., filed by UltimatePointer, LLC. (Attachments: # 1 Exhibit A - |

A578

| | | USPN 8,049,729)(Warden, Thomas) (Entered: 10/09/2012) |
|---|---|---|
| 10/10/2012 | 140 | NOTICE of Discovery Disclosure by KMart Corporation, Sears Roebuck & Co. *of Supplemental Initial Disclosures* (Nelson, Mark) (Entered: 10/10/2012) |
| 10/11/2012 | 141 | ORDER Setting Hearing on Motion 136 MOTION for Reconsideration re 134 Order on Motion to Sever and Transfer: Motion Hearing set for 12/4/2012 01:30 PM before Judge Leonard Davis. Signed by Judge Leonard Davis on 10/11/12. cc:attys 10-11-12(mll, ) (Entered: 10/11/2012) |
| 10/11/2012 | 142 | NOTICE by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc. re 119 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants Notice of Supplemental Authority* (Attachments: # 1 Exhibit A)(Nelson, Mark) (Entered: 10/11/2012) |
| 10/16/2012 | 143 | Agreed MOTION to Amend/Correct 114 Order, Set Scheduling Order Deadlines, Set Hearings,,, *for Extension of Deadline to Submit Proposed Technical Advisors* by UltimatePointer, LLC. (Attachments: # 1 Text of Proposed Order Granting Extension for Submission of Proposed Technical Advisors)(Warden, Thomas) (Entered: 10/16/2012) |
| 10/17/2012 | 144 | ORDER granting 143 Motion to Amend/Correct Docket Control Order. Parties shall submit proposed technical advisors by 10-23-2012. Signed by Judge Leonard Davis on 10/17/12. cc:attys 10-18-12 (mll, ) (Entered: 10/18/2012) |
| 10/23/2012 | 145 | RESPONSE in Opposition re 136 MOTION for Reconsideration re 134 Order on Motion to Sever MOTION for Reconsideration re 134 Order on Motion to Sever MOTION for Reconsideration re 134 Order on Motion to Sever *filed by UltimatePointer, LLC*. (Attachments: # 1 Text of Proposed Order Denying Motion for Reconsideration)(Warden, Thomas) (Entered: 10/23/2012) |
| 10/23/2012 | 146 | *Defendant RadioShack Corporation's Answer and Defenses to Plaintiff's Second Amended Complaint for Patent Infringement* ANSWER to 139 Amended Complaint,, by Radioshack Corporation.(Tavakoli, Monica) (Entered: 10/23/2012) |
| 10/23/2012 | 147 | ANSWER to 139 Amended Complaint,,, COUNTERCLAIM against UltimatePointer, LLC by Nintendo Co. Ltd., Nintendo of America Inc.. (Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 148 | ANSWER to 139 Amended Complaint,, by Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC.(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 149 | ANSWER to 139 Amended Complaint,, by BJ's Wholesale Club, Inc.. (Nelson, Mark) (Entered: 10/23/2012) |
| | | |

A579

| 10/23/2012 | 150 | ANSWER to 139 Amended Complaint,, by Compusa.com Inc., TIGER DIRECT, INC..(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 151 | ANSWER to 139 Amended Complaint,, by Dell, Inc..(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 152 | ANSWER to 139 Amended Complaint,, by Game Stop Corporation.(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 153 | ANSWER to 139 Amended Complaint,, by PC Connection, Inc..(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 154 | ANSWER to 139 Amended Complaint,, by QVC, Inc..(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 155 | ANSWER to 139 Amended Complaint,, by KMart Corporation, Sears Roebuck & Co..(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 156 | ANSWER to 139 Amended Complaint,, by Target Corporation.(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 157 | ANSWER to 139 Amended Complaint,, by TOYS R US-DELAWARE, INC..(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 158 | ANSWER to 139 Amended Complaint,, by Trans World Entertainment Corporation.(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 159 | ANSWER to 139 Amended Complaint,, by Sam's East Inc, Sam's West, Inc., Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc..(Nelson, Mark) (Entered: 10/23/2012) |
| 10/23/2012 | 160 | NOTICE by UltimatePointer, LLC *of Joint Selection of Proposed Technical Advisor* (Warden, Thomas) (Entered: 10/23/2012) |
| 10/31/2012 | 161 | ORDER appointing Michael McLemore, as technical advisor, with his costs to be assessed equally between Plaintiff and Defendant and timely paid as billed. Signed by Judge Leonard Davis on 10/31/12. cc:attys 10-31-12(mll, ) (Entered: 10/31/2012) |
| 11/06/2012 | 162 | Agreed MOTION to Amend/Correct *Scheduling Order* by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, LLC, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc..(Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 11/06/2012) |
| 11/12/2012 | 163 | JOINT CLAIM CONSTRUCTION AND PREHEARING STATEMENT filed by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America |

A580

| | | |
|---|---|---|
| | | Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, LLC, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit B-1, # 4 Exhibit B-2)(Nelson, Mark) (Entered: 11/12/2012) |
| 11/13/2012 | 164 | ORDER granting 162 Motion to Amend/Correct Docket Control Order. Signed by Judge Leonard Davis on 11/13/12. cc:attys 11-13-12 (mll, ) (Entered: 11/13/2012) |
| 11/13/2012 | 165 | ANSWER to 147 Answer to Amended Complaint, Counterclaim by UltimatePointer, LLC.(Warden, Thomas) (Entered: 11/13/2012) |
| 11/14/2012 | 166 | Agreed MOTION for Extension of Time to File *Joint Claim Construction and Prehearing Statement and Complete Claim Construction Discovery* by Nintendo Co. Ltd., Nintendo of America Inc.. (Attachments: # 1 Text of Proposed Order)(Yarbrough, Herbert) (Entered: 11/14/2012) |
| 11/14/2012 | 167 | MOTION To Enforce Patent Rule 3-1 by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 1(A), # 3 Exhibit 1(B), # 4 Exhibit 1(C), # 5 Exhibit 1(D), # 6 Exhibit 1(E), # 7 Exhibit 1(F), # 8 Exhibit 1(G), # 9 Exhibit 1(H), # 10 Exhibit 1(I), # 11 Exhibit 2, # 12 Exhibit 2(I), # 13 Exhibit 3, # 14 Exhibit 4(I), # 15 Exhibit 5(I), # 16 Exhibit 6, # 17 Text of Proposed Order)(Nelson, Mark) (Entered: 11/14/2012) |
| 11/14/2012 | 168 | ORDER that parties meet and confer and narrow the number of disputed terms to a reasonable number. Parties shall file an amended P.R. 4-3 Statement by 11-19-2012. The Court also reminds parties that the page limits governing dispositive motions pursuant to Local Rule CV-7(a) apply to claim construction briefing and will not be extended absent a showing of good cause. Signed by Judge Leonard Davis on 11/14/12. cc:attys 11-15-12(mll, ) (Entered: 11/15/2012) |
| 11/19/2012 | 169 | Agreed MOTION To Amend The Scheduling Order by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, LLC, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Nelson, Mark) (Entered: 11/19/2012) |
| 11/19/2012 | 170 | ORDER granting 166 Motion for Extension of Time. Signed by Judge |

A581

| | | |
|---|---|---|
| | | Leonard Davis on 11/16/12. cc:attys 11-19-12 (mll, ) (Entered: 11/19/2012) |
| 11/19/2012 | 171 | FIRST AMENDED JOINT CLAIM CONSTRUCTION AND PREHEARING STATEMENT filed by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, UltimatePointer, LLC, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit B-1, # 4 Exhibit B-2) (Nelson, Mark) (Entered: 11/19/2012) |
| 11/26/2012 | | NOTICE of Hearing on Motion 119 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants*, 136 MOTION for Reconsideration re 134 Order on Motion to Sever MOTION for Reconsideration re 134 Order on Motion to Sever MOTION for Reconsideration re 134 Order on Motion to Sever : Motion Hearing set for 12/4/2012 AT 1:30 PM HAS BEEN CONTINUED AND **MOTION HEARING IS RESET TO 1/8/2013 AT 01:30 PM before Judge Leonard Davis.** (rlf) (Entered: 11/26/2012) |
| 11/26/2012 | 172 | CLAIM CONSTRUCTION BRIEF filed by UltimatePointer, LLC. (Attachments: # 1 Exhibit A - USPN 7,746,321, # 2 Exhibit B - USPN 8,049,729, # 3 Exhibit C (Part 1 of 3) - Merriam Webster's 2003 Dictionary, # 4 Exhibit C (Part 2 of 3) - Merriam Webster's 2003 Dictionary, # 5 Exhibit C (Part 3 of 3) -Merriam Webster's 2003 Dictionary, # 6 Exhibit D - Microsoft Computer Dictionary, # 7 Exhibit E - IEEE 100 2000 Standards, # 8 Exhibit F (Part 1 of 2) - Academic Press Dictionary, # 9 Exhibit F (Part 2 of 2) - Academic Press Dictionary, # 10 Exhibit G (Part 1 of 3) - Random House Dictionary, # 11 Exhibit G (Part 2 of 3) - Random House Dictionary, # 12 Exhibit G (Part 3 of 3) - Random House Dictionary, # 13 Exhibit H (Part 1 of 2) - Webster 3rd New International Dictionary, # 14 Exhibit H (Part 2 of 2) - Webster 3rd New International Dictionary, # 15 Exhibit I - USPN 7,833,100, # 16 Exhibit J - USPUB 2007-0013657, # 17 Exhibit K- USPA 11-135,911, # 18 Exhibit L - USPA 11-483,170, # 19 Exhibit M - Declaration of Richard Hooper PhD PE, # 20 Exhibit N - Weisscam - Image Sensor - NINUPOINT00014658, # 21 Exhibit O - CVEL - Optical Image Sensors - NINUPOINT00014616-17)(Warden, Thomas) (Entered: 11/27/2012) |
| 11/27/2012 | 173 | NOTICE by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc. *Of Compliance Regarding Technology Tutorial* (Yarbrough, Herbert) (Entered: 11/27/2012) |
| 11/27/2012 | 174 | NOTICE by UltimatePointer, LLC *of Compliance Regarding Tutorial for the* |

A582

| | | |
|---|---|---|
| | | *Patented Technology* (Attachments: # 1 Exhibit Plaintiff's Tutorial Regarding the Patented Technology)(Maag, Gregory) (Entered: 11/27/2012) |
| 12/03/2012 | 175 | Unopposed MOTION for Extension of Time to File Response/Reply *to Defendants Motion to Enforce Patent Rule 3-1* by UltimatePointer, LLC. (Attachments: # 1 Text of Proposed Order)(Warden, Thomas) (Entered: 12/03/2012) |
| 12/04/2012 | 176 | ORDER granting 169 Motion to Amend the Scheduling Order. Signed by Judge Leonard Davis on 12/04/12. cc:attys 12-04-12 (mll, ) (Entered: 12/04/2012) |
| 12/04/2012 | 177 | ORDER granting 175 Motion for Extension of Time to File Response/Reply re 167 MOTION To Enforce Patent Rule 3-1; Responses due by 12/10/2012. Signed by Judge Leonard Davis on 12/04/12. cc:attys 12-04-12 (mll, ) (Entered: 12/04/2012) |
| 12/11/2012 | 178 | REPLY to Response to Motion re 167 MOTION To Enforce Patent Rule 3-1 *filed by UltimatePointer, LLC.* (Attachments: # 1 Exhibit 1 - Proposed Second Amended PR 3-1 and 3-2 Disclosure for the '321 Patent, # 2 Exhibit 1 F - All Accused Wii Games, # 3 Exhibit 1 F1 - Disc-Based Game Startup Procedures, # 4 Exhibit 1 F2 - Virtual Console Game Startup Procedures, # 5 Exhibit 1 F3 - Wii Game Video List, # 6 Exhibit 1 G1-G4 - Wii Games with Single-Point Calibration, # 7 Exhibit 1 H1-H9 - Wii Games with Two-Point Calibration, # 8 Exhibit 1 I - Proposed Second Amended Claim Chart for the '321 Patent, # 9 Exhibit 2 - Proposed Second Amended PR 3-1 and 3-2 Disclosure for the '729 Patent, # 10 Exhibit 2 I - Proposed Second Amended Claim Chart for the '729 Patent, # 11 Exhibit K - The Wii Shop Channel, # 12 Exhibit L - Exhibit F Games Missed by Nintendo, # 13 Exhibit M - Examples of Additional Predetermined Points, # 14 Text of Proposed Order Denying Motion)(Warden, Thomas) (Entered: 12/11/2012) |
| 12/17/2012 | 179 | DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF to 172 Claim Construction Brief, *filed by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.*. (Attachments: # 1 Appendix 1, # 2 Appendix 2, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Exhibit Q)(Nelson, Mark) (Entered: 12/17/2012) |
| 12/18/2012 | 180 | NOTICE by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment |

A583

| | | |
|---|---|---|
| | | Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc. re 179 Reply to Claim Construction Brief,,, *Correction of Confidentiality Designation* (Nelson, Mark) (Entered: 12/18/2012) |
| 12/20/2012 | 181 | REPLY to Response to Motion re 167 MOTION To Enforce Patent Rule 3-1 *filed by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc..* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Nelson, Mark) (Entered: 12/20/2012) |
| 12/27/2012 | | NOTICE of Hearing on Motion (167 in 6:11-cv-00496-LED) MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants,* (119 in 6:11-cv-00571-LED) MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants* : **Motion Hearing set for 1/8/2013 at 1:30 PM has been continued and will be heard 1/17/2013 at 09:00 AM before Judge Leonard Davis.** (rlf) (Entered: 12/27/2012) |
| 12/27/2012 | 182 | Opposed MOTION *For Leave To Supplement Invalidity Contentions* by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Text of Proposed Order)(Nelson, Mark) (Entered: 12/27/2012) |
| 12/31/2012 | 183 | SUR-REPLY to Reply to Response to Motion re 167 MOTION To Enforce Patent Rule 3-1 *filed by UltimatePointer, LLC.* (Warden, Thomas) (Entered: 12/31/2012) |
| 01/04/2013 | 184 | NOTICE by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc. *Notice of* |

A584

| | | |
|---|---|---|
| | | *Estimated Time Needed for Markman Hearing* (Nelson, Mark) (Entered: 01/04/2013) |
| 01/04/2013 | 185 | REPLY to 172 Claim Construction Brief, *filed by UltimatePointer, LLC*. (Attachments: # 1 Exhibit P. Pointing Demonstrative - Missing a Calibration Point, # 2 Exhibit Q. Pointing Demonstrative - Interaction Structure 72 Does Not Match Interaction Region 71, # 3 Exhibit R. Banning Deposition 10-26-2012)(Warden, Thomas) (Entered: 01/04/2013) |
| 01/10/2013 | 186 | JOINT CLAIM CONSTRUCTION CHART Under PR 4-5(d) filed by All Parties (Attachments: # 1 Exhibit 1 - Disputed Constructions, # 2 Exhibit 2 - Agreed Constructions, # 3 Appendix A - 321 Patent Claims, # 4 Appendix B - 729 Patent Claims)(Warden, Thomas) (Entered: 01/10/2013) |
| 01/14/2013 | 187 | RESPONSE in Opposition re 182 Opposed MOTION *For Leave To Supplement Invalidity Contentions filed by UltimatePointer, LLC*. (Attachments: # 1 Exhibit 1 - Nintendo's Invalidity Contentions (2012-08-21), # 2 Exhibit 2 - Retailer Defs.' Invalidity Contentions (2012-10-12), # 3 Exhibit 3 - Defs.' Prior Art Exs. 20 and 22, # 4 Exhibit 4 - Defs.' Invalidity Chart 19 Excerpt, # 5 Exhibit 5 - Defs.' Invalidity Chart 30, # 6 Exhibit 6 - Defendants Invalidity Charts 139-649 inter alia, # 7 Exhibit 7 - Sega Amusements Website, # 8 Exhibit 8 - Sega Amusements Game Websites, # 9 Exhibit 9 - Sega Manuals (Excerpted), # 10 Exhibit 10 - E-Mail Forwarding New Charts, # 11 Exhibit 11 - International Arcade Museum, # 12 Exhibit 12 - Iovate Health v. Bio-Engieered Supplements, # 13 Exhibit 13 - Unified Messaging v. Facebook, # 14 Exhibit 14 - VernetX v. Microsoft, # 15 Text of Proposed Order Denying Leave to Amend)(Warden, Thomas) (Entered: 01/14/2013) |
| 01/17/2013 | 188 | Minute Entry for proceedings held before Judge Leonard Davis: Markman Hearing held on 1/17/2013. (Court Reporter Shea Sloan.) (Attachments: # 1 Sign In Sheets) (cwk) (Entered: 01/17/2013) |
| 01/25/2013 | 189 | ORDER TO PAY COURT TECHNICAL CONSULTANT. Signed by Judge Leonard Davis on 01/25/13. cc:attys 1-25-13(mll, ) (Entered: 01/25/2013) |
| 01/25/2013 | 190 | REPLY to Response to Motion re 182 Opposed MOTION *For Leave To Supplement Invalidity Contentions filed by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Radioshack Corporation, Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc.*. (Attachments: # 1 Exhibit 26)(Geiszler, Steven) (Entered: 01/25/2013) |
| 02/04/2013 | 191 | SUR-REPLY to Reply to Response to Motion re 182 Opposed MOTION *For Leave To Supplement Invalidity Contentions filed by UltimatePointer, LLC*. (Attachments: # 1 Exhibit 1 - Sega HOTD (Defs.' Ex. 19) (Excerpted), # 2 Exhibit 2 - Sega HOTD2 (Defs.' Ex. 45) (Excerpted), # 3 Exhibit 3 - Sega HOTD3 (Defs.' Ex. 46) (Excerpted), # 4 Exhibit 4 - Sega Confidential |

| | | |
|---|---|---|
| | | Mission (Defs.' Ex. 47) (Excerpted), # 5 Exhibit 5 - Oh '309 Patent (Defs.' Ex. 50) (Excerpted))(Warden, Thomas) (Entered: 02/04/2013) |
| 02/20/2013 | 192 | NOTICE of Attorney Appearance by Michael James Guthrie on behalf of UltimatePointer, LLC (Guthrie, Michael) (Entered: 02/20/2013) |
| 03/27/2013 | 193 | ORDER denying 119 Motion to Sever; denying 136 Motion for Reconsideration re 119 MOTION to Sever *the Retailer Defendants for Misjoinder Pursuant to Fed. R. Civ. P. 20 and 21 and to Dismiss or, Alternatively, to Stay the Litigation Against the Retailer Defendants* filed by Wal-Mart Stores Texas, Inc, PC Connection, Inc., Trans World Entertainment Corporation, TOYS R US-DELAWARE, INC., BestBuy.com, LLC, Compusa.com Inc., Target Corporation, Nintendo Co. Ltd., Dell, Inc., Sears Roebuck & Co., Sam's East Inc, TIGER DIRECT, INC., BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Wal-Mart Stores, Inc., Game Stop Corporation, Nintendo of America Inc., Best Buy Stores, L.P., Radioshack Corporation, Sam's West, Inc., KMart Corporation, QVC, Inc., 136 MOTION for Reconsideration re 134 Order on Motion to Sever MOTION for Reconsideration filed by PC Connection, Inc., Trans World Entertainment Corporation, TOYS R US-DELAWARE, INC., BestBuy.com, LLC, Compusa.com Inc., Target Corporation, Nintendo Co. Ltd., Dell, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Game Stop Corporation, Nintendo of America Inc., Best Buy Stores, L.P., Radioshack Corporation, KMart Corporation, QVC, Inc. Signed by Judge Leonard Davis on 3/27/13. (mjc, ) (Entered: 03/27/2013) |
| 03/29/2013 | 194 | NOTICE by BJ's Wholesale Club, Inc., Best Buy Purchasing, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Compusa.com Inc., Dell, Inc., Game Stop Corporation, KMart Corporation, Nintendo Co. Ltd., Nintendo of America Inc., PC Connection, Inc., QVC, Inc., Sam's East Inc, Sam's West, Inc., Sears Roebuck & Co., TIGER DIRECT, INC., TOYS R US-DELAWARE, INC., Target Corporation, Trans World Entertainment Corporation, Wal-Mart Stores Texas, Inc, Wal-Mart Stores, Inc. (Nelson, Mark) (Entered: 03/29/2013) |
| 04/24/2013 | 195 | NOTICE of Change of Address by Karen L Carroll (Carroll, Karen) (Entered: 04/24/2013) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/06/2013 15:23:35 | | |
| **PACER Login:** | sn0012 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:11-cv-00571-LED |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

A586

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May, 2013, copies of the foregoing

Petitioners' Appendix were served upon the parties as follows:

See attached Service List

via the method indicated.

I further certify that on this 10th day of May, 2013, one original and four

bound copies as well as a CD-ROM containing electronic copies of the foregoing

Petitioners' Appendix were filed, by hand delivery, in the Office of the Clerk, United

States Court of Appeals for the Federal Circuit.

Mark C. Nelson

| Service Upon | Party Represented | Service Method |
|---|---|---|
| The Honorable Leonard Davis<br>Chief District Judge<br>William M Steger Federal Building and<br>United States Courthouse<br>211 W. Ferguson<br>Third Floor<br>Tyler, TX 75702<br>Phone: (903) 590-1084<br>Fax: (903) 590-1190 | n/a | Overnight Courier |
| Charles J Rogers<br>Gregory Loren Maag<br>Thomas Loyd Warden<br>Conley Rose, P.C. - Houston<br>1001 McKinney Street<br>Suite 1800<br>Houston, TX 77002<br>713-238-8049<br>Fax: 713-238-8008<br>crogers@conleyrose.com<br>gmaag@conleyrose.com<br>twarden@conleyrose.com<br><br>Daymon Jeffrey Rambin<br>Elizabeth L DeRieux<br>Sidney Calvin Capshaw , III<br>Capshaw DeRieux LLP<br>114 E Commerce Avenue<br>Gladewater, TX 75647<br>903-233-4830<br>Fax: 903-236-8787<br>jrambin@capshawlaw.com<br>ederieux@capshawlaw.com<br>ccapshaw@capshawlaw.com<br><br>Michael James Guthrie<br>Conley Rose<br>5700 Granite Parkway<br>Suite 330 | UltimatePointer, L.L.C. | Overnight Courier and Email |

| Service Upon | Party Represented | Service Method |
|---|---|---|
| Plano, TX 75024-6616<br>713-238-8000<br>Fax: 713-238-8008<br>mguthrie@conleyrose.com | | |
| David W Denenberg<br>Davidoff Hutcher & Citron, LLP -<br>Garden City NY<br>200 Garden City Plaza<br>Suite 315<br>Garden City, NY 11530<br>516-248-6400<br>Fax: 516-248-6422<br>dwd@dhclegal.com | CompUSA.com Inc.<br>TigerDirect, Inc. | Email |
| Christopher Michael Joe<br>Monica Nguyen Tavakoli<br>Niknaz Bukovcan<br>Buether Joe & Carpenter, LLC<br>1700 Pacific Avenue<br>Suite 2390<br>Dallas, TX 75201<br>(214) 466-1272<br>Fax: (214) 635-1828<br>Chris.Joe@bjciplaw.com<br>monica.tavakoli@bjciplaw.com<br>niky.bukovcan@bjciplaw.com | Radioshack Corporation | Overnight Courier and Email |
| David E Finkelson<br>McGuire Woods - Richmond<br>One James Center<br>901 E Cary St<br>Richmond, VA 23219<br>804/775-1157<br>Fax: 804/225-5377<br>dfinkelson@mcguirewoods.com<br><br>Lawrence Augustine Phillips<br>Michael Charles Smith | Wal-Mart Stores, Inc.<br>Sam's West, Inc.<br>Sam's East Inc<br>Wal-Mart Stores Texas<br>LLC | Overnight Courier and Email |

| Service Upon | Party Represented | Service Method |
|---|---|---|
| Siebman Reynolds Burg & Phillips LLP<br>300 N Travis St<br>Sherman, TX 75090-9969<br>903/870-0070<br>Fax: 903/870/0066<br>larryphillips@siebman.com<br>michaelsmith@siebman.com<br><br>Karen L Carroll<br>McGuire Woods - Chicago<br>77 West Wacker Dr<br>Suite 4100<br>Chicago, IL 60601<br>312/750-8646<br>Fax: 312/698-4549<br>kcarroll@mcguirewoods.com | | |
| Herbert A Yarbrough , III<br>Yarbrough Wilcox, PLLC<br>100 E. Ferguson Street<br>Ste 1015<br>Tyler, TX 75702<br>903-595-3111<br>trey@yw-lawfirm.com<br><br>Mark Christopher Nelson<br>Steven Mark Geiszler<br>Dentons US LLP - Dallas<br>2000 McKinney Avenue<br>Suite 1900<br>Dallas, TX 75201<br>214-259-0901<br>Fax: 12142590910<br>Email: mark.nelson@dentons.com<br>Email: steven.geiszler@dentons.com<br><br>Arthur S Beeman<br>SNR Denton US LLP - San | Nintendo Co., Ltd.<br>Nintendo of America Inc.<br>Best Buy Purchasing, LLC<br>Best Buy Stores, L.P.<br>Bestbuy.Com, LLC<br>BJ's Wholesale Club, Inc.<br>CompUSA.Com Inc.<br>Gamestop Corp.<br>Kmart Corporation<br>PC Connection, Inc.<br>QVC, Inc.<br>Sears, Roebuck and Co.<br>Target Corporation<br>TigerDirect, Inc.<br>Toys "R" Us-Delaware, Inc.<br>Trans World Entertainment Corporation<br>Wal-Mart Stores, Inc.<br>Sam's West, Inc.<br>Sam's East Inc. | |

| Service Upon | Party Represented | Service Method |
|---|---|---|
| Francisco<br>525 Market Street<br>26th Floor<br>San Francisco, CA 94105<br>415/882-5000<br>Fax: 415/882-0300<br>Email:<br>arthur.beeman@dentons.com | Wal-Mart Stores Texas LLC | |

RECEIPT FOR PAYMENT
# United States Court of Appeals
# For The Federal Circuit
### OFFICE OF THE CLERK

Received
From _____Dentons_____
(NAME)

_____
(ADDRESS)

M151 _____
(CASE NO.)                    (SHORT TITLE)                        (DATE)

| ACCOUNT | AMOUNT |
|---|---|
| Clerk's Fee for docketing case To Reinstated | 40 00 |
| Certificate of membership | |
| Certified copy of | |
| | |
| | |
| | |
| Copy of opinion | |
| Copy of documents | |
| Reimbursement fees | |
| | |
| | |

Deputy Clerk X LW                    TOTAL  450 | 00

Credit Card ☐   Cash ☐   Check X   MONEY ORDER ☐

058275