# United States Court of Appeals
# for the Federal Circuit

IN RE NINTENDO CO. LTD, NINTENDO OF AMERICA, INC., BEST BUY PURCHASING, LLC, BEST BUY STORES, L.P., BESTBUY.COM, LLC, BJ'S WHOLESALE CLUB, INC., COMPUSA.COM, INC., GAMESTOP CORP., KMART CORPORATION, PC CONNECTION, INC., QVC, INC., RADIOSHACK CORPORATION, SEARS, ROEBUCK AND CO., TARGET CORPORATION, TIGERDIRECT, INC., TOYS "R" US-DELAWARE, INC., AND TRANSWORLD ENTERTAINMENT CORPORATION,

*Petitioners,*

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 11-CV-0496, Judge Leonard Davis.

## RESPONDENT ULTIMATEPOINTER LLC'S
## PETITION FOR REHEARING *EN BANC*

CHARLES J. ROGERS
CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, TX 77002
(713) 238-8049

*Principal Attorney*

GREGORY L. MAAG
THOMAS L. WARDEN
MICHAEL J. GUTHRIE
CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, TX 77002
(713) 238-8000

*Of Counsel*

**Attorneys for Respondent**
OCTOBER 16, 2013

Counsel for Mandamus Respondent/en banc Petitioner certifies the following:

1.      The full name of every party or amicus represented by me is:

UltimatePointer LLC

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  Not Applicable

3.      All parent corporations and any publicly held companies that own 10% or more of the stock of the party or amicus curiae represented by me are: Not Applicable.

4.      There is no such corporation as listed in paragraph 3.

5.      The names of all law firms and the partners or associates that  appeared for the party or amicus-curiae now represented by me in the trial court or agency or are expected to appear in this Court are:

<u>Conley Rose, P.C.</u>                    <u>Capshaw DeRieux LLP</u>
Gregory L. Maag                     Sidney Calvin Capshaw, III
Charles J. Rogers                   Elizabeth L DeRieux
Thomas L Warden                     Daymon Jeffrey Rambin
Michael J. Guthrie


<u>/s/Charles J. Rogers</u>
Charles J. Rogers
Principal Attorney for
Respondent
UltimatePointer, L.L.C.

# T<small>ABLE OF</small> C<small>ONTENTS</small>

R<small>ULE</small> 35(B) S<small>TATEMENT</small> ...................................................................1

F<small>ACTS</small> S<small>UPPORTING</small> R<small>ECONSIDERATION</small> E<small>N</small> B<small>ANC</small> ......................................2

    I.    The Petitioners had requested the very sequence used by the District Court in deciding Petitioners' Motions. ...................................2

A<small>RGUMENT</small> .................................................................................4

    II.    *Sua sponte* consideration of an unbriefed issue violates *Singleton*. ..............................................................4

    III.    The panel did not consider whether *Singleton* exceptions apply. .........5

        A.    The specifically identified *Singleton* exceptions do not apply here. .............................................7

        B.    The panel did not identify any basis for *sua sponte* consideration. .............................................8

        C.    There is no basis to deviate from the general rule of *Singleton*. ............................................9

    IV.    Mandamus here is inconsistent with the *Cheney* standard of review. ................................................9

        A.    The first *Cheney* prong requires a denial by the district court. ..................................................10

        B.    The first *Cheney* prong is more stringent than the panel states. ................................................11

        C.    The second *Cheney* prong prohibits substitution of discretion. ................................................12

        D.    The third *Cheney* prong encompasses *Singleton*. .....................13

    V.    Mandamus would not have been appropriate even as to the requested relief of Step One – severance of claims to non-Nintendo products. ...........................................14

C<small>ONCLUSION</small> ...........................................................................15

# TABLE OF AUTHORITIES

## Cases

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S.Ct. 88 (1980) .................12

*Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 124 S.Ct. 2576,  159 L.Ed.2d 459 (2004) ................................................................................................ passim

*HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270 (Fed. Cir. 2012).. 1, 4, 5, 8

*In re AD-II Engineering, Inc.*, 236 Fed. Appx. 602 (Fed. Cir. 2007)(unpublished) .............................................................................................11

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ....................................10

*In re U.S.*, 463 F.3d 1328 (Fed. Cir. 2006)................................................... 1, 10, 11

*In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir.2008) (*en banc*) *cert. denied*, 555 U.S. 1172, 129 S.Ct. 1336, 173 L.Ed.2d 587 (2009).. 1, 10, 12, 13

*Kerr v. U.S. Dist. Court for N.D. Cal.*, 426 U.S. 394, 96 S.Ct. 2119 (1976) ..........10

*L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527 (Fed.Cir.1995) .................................8

*Leach v. F.D.I.C.*, 860 F.2d 1266 (5th Cir. 1988) ....................................................8

*McGraw-Edison Co. v. Van Pelt*, 350 F.2d 361 (8th Cir.1965) ..............................13

*Ryan v. Gonzales*, ___ U.S. ____, 133 S.Ct. 696, 184 L.Ed.2d 528 (2013)............12

*Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300,  43 L.Ed.2d 591 (1975) .................................................................................................................5

*Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ....... passim

*Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967)................9

*Wilson v. Principi*, 391 F.3d 1203 (Fed. Cir. 2004) ...................................... 1, 8, 13

*Wulff v. State Bd. of Registration for Healing Arts*, 508 F.2d 1211 (8th Cir. 1974).................................................................................................................6

**Statutes**

§ 1404(a) ............................................................................................2

**Rules**

FED. R. CIV. P. 42 ...........................................................................15

## RULE 35(b) STATEMENT

Based on my professional opinion, I believe the panel's decision is contrary to the following decisions: *Singleton v. Wulff*, 428 U.S.106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1282 (Fed. Cir. 2012); *Wilson v. Principi*, 391 F.3d 1203, 1211 (Fed. Cir. 2004); *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380, 124 S.Ct. 2576, 2587, 159 L.Ed.2d 459 (2004); *In re U.S.*, 463 F.3d 1328, 1332 (Fed. Cir. 2006); *In re Volkswagen of America, Inc.*, 545 F.3d 304, 309 (5th Cir.2008) (*en banc*) *cert. denied*, 555 U.S. 1172, 129 S.Ct. 1336, 173 L.Ed.2d 587 (2009).

Based on my professional judgment, I believe this appeal requires resolution of those conflicts, and answers to these questions of exceptional importance:

1.  When mandamus petitioners request that the district court decide pending motions in a specific order, and the district court does so, and when further, no relief is requested of this Court regarding that sequence and no briefing is submitted thereon, whether it is appropriate for this Court to take up the issue of sequence *sua sponte* in contradiction of (and without addressing) *Singleton*, *HTC Corp*, *Wilson*, and the Supreme Court and circuit cases cited therein?

2.  Whether the *Cheney* factors governing the writ of mandamus, in view of their application by *In re Volkwagen*, permit the *sua sponte* issuance of the extraordinary writ of mandamus on a matter of first impression that was not

presented to the district court?  Stated differently, whether this Court's mandamus

practice has exceeded the bounds of the All Writs Act and the controlling decisions

thereon of the Supreme Court?

/s/ Charles J. Rogers
CHARLES J. ROGERS
CONLEY ROSE, P.C.
*ATTORNEY OF RECORD FOR*
*RESPONDENT*

## FACTS SUPPORTING RECONSIDERATION EN BANC

**I.    The Petitioners had requested the very sequence used by the District Court in deciding Petitioners' Motions.**

The panel decision found mandamus-worthy error in the district court's

sequence of deciding pending motions, even though the sequence of deciding

motions was not before this Court or the district court. *See* Mandamus Order, 4, 11,

14 ("[W]e conclude that the district court erred by not beginning its analysis by

addressing whether the parties should have been severed for purposes of

facilitating transfer ….").  This is a patent infringement case against Nintendo and

against retailers for their sales of both Nintendo products and non-Nintendo  (but

Nintendo-compatible) products.   The Petitioners had made three requests to the

district court: (1) sever the *claims* against retailers concerning the non-Nintendo

products, (2) sever the retailer *parties*, and (3) transfer Nintendo on § 1404(a)

grounds. Mandamus Order, 2-3.    Before this Court, the relief sought was

mandamus as to the district court's denial of the motion to sever *claims*. Petition,

30 ("Petitioners respectfully request that the Court grant this petition for a writ of

2

mandamus, vacate the March 27, 2013 order, and remand with instructions that the district court sever and dismiss the claims against non-Nintendo products.”). Petitioners made no complaint concerning the sequence in which the district court took up the motions.  *Id.*

Petitioners did not complain of the sequence used by the district court because in briefing before the district court, the petitioners had specifically requested this sequence:

- Step One: The Court should decide Defendants’ Misjoinder Motion and sever and dismiss or stay all *claims* involving the non-party products.
- Step Two: The remaining claims will be against Nintendo products. The Court should <u>then</u> grant Defendant’s Motion to Sever and sever the Retailer *Defendants* from the remaining case against Nintendo ….
- Step Three: The Court should <u>then</u> transfer the case against Nintendo ….

A447 (emphasis added).

The district court adopted the Petitioner’s requested sequence, restating it in a footnote of the decision that is now before this Court. A3, at n. 1, A7.

Once the district court had adopted the Petitioner’s requested sequence, the Petitioners made no attempt to withdraw their request to the district court, nor did they make any argument to the district court that the requested sequence had been misapprehended or misapplied. *See* Appendix (no entries after March 27, 2013 Order of the district court).  Before this Court, the Petitioner’s briefing was consistent with their sequence.  Petitioners did not seek the extraordinary relief of

mandamus concerning what it called "Step Two" (severance of parties) or "Step Three" (transfer of Nintendo.)  Instead, Petitioners requested  mandamus only as to "Step One" (severing *claims* as to the non-Nintendo products)  and noted that granting  the requested relief would thereafter "provide the district court the opportunity to consider, for the first time, whether the peripheral claims against the retailers should be severed and stayed, and whether the remaining litigation against only Nintendo should be transferred …." Petition, 30.

**ARGUMENT**

***SUA SPONTE* GRANT OF THE EXTRAORDINARY WRIT ON A MATTER OF FIRST IMPRESSION THAT WAS NOT PRESENTED TO THE DISTRICT COURT IS IMPROPER.**

**II.  *Sua sponte* consideration of an unbriefed issue violates *Singleton*.**

As a general rule, an appellate court does not consider an issue not passed upon below. *Singleton v. Wulff*, 428 U.S.106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).  "[T]he rule discourages parties from inviting an alleged error below only to raise it on appeal." *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1282 (Fed. Cir. 2012).  The *Singleton* rule is widely followed by the circuit courts. *HTC Corp.*, 667 F.3d at 1282 (collecting cases).

UltimatePointer does not assert that the Petitioners invited district court error and then raised it before this Court.  As set out above, the Petitioners'requested relief in this Court was the extraordinary writ as to severance of claims ("Step One"). Petition, 30; A447.  Petitioners acknowledged that the mandamus requested

relief, if granted, would provide the district court the "opportunity to consider" severance of parties ("Step Two") and transfer ("Step Three"). *Id*.

UltimatePointer does assert that the panel *sua sponte* took up an unbriefed issue and declared it error. That violates *Singleton* because the sequence the motions were to be decided was uncontested in the district court, and indeed, was requested by Petitioner. A447 ("should then transfer"). In essence, the panel result is the sort of appeal-on-invited-error prohibited by *HTC Corp*, 667 F.3d at 1281-82 (Citing *Singleton*, 428 U.S. at 120).

## III. The panel did not consider whether *Singleton* exceptions apply.

Since the panel took up the issue of sequence *sua sponte*, neither party addressed whether this case fits within a *Singleton* exception. It does not.

Under compelling circumstances, appellate courts can consider arguments not presented to the district court, and can even take up, *sua sponte*, issues not presented in the appellate briefs. *See Schlesinger v. Councilman*, 420 U.S. 738, 743-44, 95 S.Ct. 1300, 1306, 43 L.Ed.2d 591 (1975) (Requesting, *sua sponte*, that the parties brief the issue of a district court's authority to enjoin court-martial proceedings.).

Subsequent to *Schlesinger*, the Supreme Court reaffirmed the general rule that appellate courts should not consider issues that were not preserved at the district court. *Singleton,* 428 U.S. at 120, 96 S.Ct. at 2877. The Supreme Court noted that the general rule serves to prevent parties from being surprised by an

appellate ruling that turns on an issue that the parties did not have an opportunity to brief. *Id.*

*Singleton* then identified circumstances where deviation from the general rule may be warranted. These include "where the proper resolution is beyond any doubt," and "where 'injustice might otherwise result.'" *Singleton,* 428 U.S. at 121 (citations omitted). The Supreme Court specifically noted that the two circumstances listed were not exhaustive. *Id. at* n.8.

The facts of *Singleton* did not warrant deviation from the general rule. *Id. at* 119-20 ("the Court of Appeals' resolution of the merits seems to us to be an unacceptable exercise of its appellate jurisdiction."). The case concerned a Missouri statute's "medically indicated" restriction on Medicaid reimbursement for abortions. *Id. at* 109. Two physicians had challenged the statute. *Id.* The district court had dismissed their case for lack of standing. *Id.* On appeal, the Eighth Circuit found that the physicians had standing, and what is more, went on to decide the merits of the challenge to the Missouri statute. *Wulff v. State Bd. of Registration for Healing Arts*, 508 F.2d 1211 (8th Cir. 1974). However, the district court had ruled on standing "and no more." *Singleton*, 428 U.S. at 120. There was no prior decision of the Supreme Court going to the merits, therefore the proper result was not beyond doubt, and hence, there was no clear showing of injustice. *Id. at* 121 ("The issue resolved by the Court of Appeals have never been passed upon in any decision of this Court. This being so, injustice was more likely to be

caused than avoided by deciding the issue without petitioner's having had an opportunity to be heard."). The Supreme Court ordered that the case be returned to the district court. *Id.*

A. **The specifically identified *Singleton* exceptions do not apply here.**

The first specifically identified Singleton exception is "where the proper resolution is beyond any doubt …." *Singleton,* 428 U.S. at 121. *Singleton* indicated that a Supreme Court decision was needed to place an issue beyond any doubt. *Id.* The panel's Mandamus Order cites *no decision*, much less any Supreme Court decision, to support its conclusion that the district court erred by deciding motions in the sequence that the Petitioners had requested. Mandamus Order, 11. Far from establishing that the proper sequencing was "beyond any doubt," the Mandamus Order acknowledges the doubt in this area: "We are not unsympathetic to the fact that it is sometimes difficult to sort out the interaction between the various procedural rules which govern joinder and venue." *Id. at* 15. Nonetheless, the panel issued the extraordinary writ of mandamus *sua sponte* on an issue of first impression.

The second specifically identified *Singleton* exception is "where 'injustice might otherwise result.'" *Singleton,* 428 U.S. at 121. On the facts of this case, no injustice will result from leaving the district court's sequence of deciding motions undisturbed. The Petitioners themselves requested the sequence.

**B.    The panel did not identify any basis for *sua sponte* consideration.**

The two exceptions identified in *Singleton* are not exhaustive. *Singleton,* 428 U.S. at 121, n.8.  This Court has developed a longer list of identified exceptions:

> (i) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (ii) the proper resolution is beyond any doubt; (iii) the appellant had no opportunity to raise the objection at the district court level; (iv) the issue presents significant questions of general impact or of great public concern; or (v) the interest of substantial justice is at stake.

*HTC Corp*., 667 F.3d at 1282, *citing L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1531 (Fed.Cir.1995).

Overarching any specifically identified exception are guiding principles that exceptions should indeed be "exceptional," and that they should be applied in "carefully restricted circumstances." *Wilson v. Principi*, 391 F.3d 1203, 1211 (Fed. Cir. 2004).  The overarching principles of this Court comport with those of the Fifth Circuit. *See*, *Leach v. F.D.I.C.*, 860 F.2d 1266, 1274 (5th Cir. 1988).  The Mandamus Order, however, failed to discuss any basis for deviating from the general rule.  The page limits on a petition for rehearing *en banc* preclude a law review article exploring all of the theoretical bases the panel might have used to support the decision, and whether any exception permitted under Federal Circuit jurisprudence would be permitted under Fifth Circuit and Supreme Court authority. The fact of the matter is *no* bases were given, leaving the panel's decision unsupported.

**C.    There is no basis to deviate from the general rule of *Singleton*.**

This is not an exceptional case that warrants deviation from the general rule. The general rule is that appellate courts will not consider unpreserved and unbriefed issues. The specifically identified exceptions in *Singleton* do not apply here. Reopening briefing to address *Singleton* exceptions that could theoretically, in hindsight, be said to support the panel's decision would be inconsistent with *Singleton* itself. None of those grounds are in the panel decision itself. *Singleton's* general rule exists in large part to prevent parties from being "surprised on appeal …." 428 U.S. at 120. *Singleton* reversed the "unacceptable exercise of .. appellate jurisdiction" and sent the case back to the district court. *Id. at* 120-21. The same should be done here. This would be consistent with justice. The Petitioners did not urge the panel to address the sequence in which motions should have been decided. Nor could they have done so -- any argument to that effect would double-back on the request made to, and accepted by, the district court.

**IV.    Mandamus here is inconsistent with the *Cheney* standard of review.**

The writ of mandamus is "one of 'the most potent weapons in the judicial arsenal.'" *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380, 124 S.Ct. 2576, 2587, 159 L.Ed.2d 459 (2004) *quoting Will v. United States*, 389 U.S. 90, 107, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967). A writ of mandamus "is an appropriate remedy for exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *In re Volkswagen of America, Inc*., 545 F.3d 304, 309 (5th

Cir.2008) (*en banc*) *cert. denied*, 555 U.S. 1172, 129 S.Ct. 1336, 173 L.Ed.2d 587 (2009).  Three requirements must be satisfied before a writ of mandamus may be issued: (1) the petitioner must have no other adequate means to obtain the relief requested; (2) the petitioner must show a clear and indisputable right to the relief requested; and (3) the court, in its discretion, must be satisfied that issuance of the writ is appropriate under the circumstances. *Id. at* 311, *citing Cheney*, 542 U.S. at 380-81.

The panel fails to mention *Cheney*, and as a result, failed to conduct the three step analysis required by *Cheney*.  This Court has previously acknowledged that *Cheney* provides the framework governing mandamus review. *In re U.S.*, 463 F.3d 1328, 1332 (Fed. Cir. 2006).  The panel also fails to cite Fifth Circuit authority on the mandamus standard of review.  The Fifth Circuit's application of the *Cheney* standard governs. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319, 1322 (Fed. Cir. 2008).

### A.    The first *Cheney* prong requires a denial by the district court.

"No other adequate means to obtain the relief requested" cannot be met. "Adequate means" takes into account whether the relief was requested – and denied – in the district court. *Kerr v. U.S. Dist. Court for N.D. Cal.*, 426 U.S. 394, 404, 96 S.Ct. 2119 (1976) (privilege had not been asserted by those with standing to do so).  Here, the relief was not even requested in the district court.  Attempts to

obtain mandamus before the district court has issued a denial typically meet with an unpublished denial of mandamus. *See, e.g.*, *In re AD-II Engineering, Inc.*, 236 Fed. Appx. 602 (Fed. Cir. 2007)(unpublished) ("AD-II has not shown that it cannot obtain the relief sought either in the pending district court proceedings, or if unsuccessful in the district court, by subsequent direct appeal."); *See also In re U.S.*, 463 F.3d 1328, 1337 (Fed. Cir. 2006) (recounting the opposed rulings below and concluding "there is no way, other than mandamus, that the government can obtain the relief it seeks."). Failure to meet any one of the *Cheney* requirements is fatal to the mandamus request. *Cheney*, 542 U.S. at 380-81 ("and"). These Petitioners requested the very sequence used by the district court, and sought no relief from the district court when that sequence was adopted. Thus, the first *Cheney* prong cannot be satisfied.

**B. The first *Cheney* prong is more stringent than the panel states.**

The panel's articulation of "no other adequate means" is contrary to *Cheney*. Ignoring the factual record, the panel concludes that mandamus is appropriate because, in a regular appeal, Petitioners would be "unable to demonstrate that [they] would have won the case …" had the district court's sequence-of-decisions been different. Mandamus Order, 15 (internal quotations and citations omitted). The panel's "unable to demonstrate" rule presumes that every imaginable ruling of the district court, however large or small, must be subject to reversal on appeal, or

failing that, immediate reversal on mandamus. That presumption is contrary to law. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S.Ct. 88 (1980) ("Under the rationale employed by the Court of Appeals, any discretionary order, regardless of its interlocutory nature, may be subject to immediate judicial review."); *Cheney*, 542 U.S. at 381 (Noting that the presence of the Vice President as a party "removed this case from the ordinary discovery orders where interlocutory appellate review is unavailable, through mandamus or otherwise."); *See also Ryan v. Gonzales,* ___ U.S. ____, 133 S.Ct. 696, 708, 184 L.Ed.2d 528 (2013) ("We do not presume that district courts need unsolicited advice from us on how to manage their dockets.").

### C. The second *Cheney* prong prohibits substitution of discretion.

There was no clear and indisputable right to the relief requested. The relief granted was not what had been requested. Even if it had been, the right was far from clear. The clear and indisputable requirement precludes appellate substitution-of-judgment on matters of "should have" unless prior case law left the district court no discretion. *In re Volkswagen of America, Inc.*, 545 F.3d, at 312 ("[W]e stress-in no case will we replace a district court's exercise of discretion with our own ….."). Thus, when granting mandamus, the Fifth Circuit has noted that there were no facts on which the district court could lawfully exercise discretion. *Id. at* 318 (granting mandamus where "not a single relevant factor"

supported the district court's order); *See also, Id. at* 312, n. 7, *quoting McGraw-Edison Co. v. Van Pelt*, 350 F.2d 361, 363 (8th Cir.1965) ("If the facts and circumstances are rationally capable of providing reasons for what the district court has done, its judgment based on those reasons will not be reviewed."). The panel decision cites no case to support its conclusion regarding the sequence that must be used in deciding motions. Mandamus Order, 11. The panel admits that "it is sometimes difficult to sort out the interaction between the various procedural rules …." *Id*. at 15. Under the second *Cheney* factor, especially under Fifth Circuit authority, the sequence should have been left to the discretion of the district court. There was a rational basis supporting the district court's sequence: the sequence it used was the one requested by Petitioners.

### D. The third *Cheney* prong encompasses *Singleton*.

Mandamus is a "drastic" remedy, reserved for "really extraordinary" situations. *Cheney*, 542 U.S. at 380 (citations omitted). Likewise, there must be "exceptional" circumstances to warrant deviating from *Singleton's* general rule against appellate review of unpreserved issues. *Wilson,* 391 F.3d at 1211. Consequently, the *Singleton* ramifications should have been discussed in the context of the *Cheney* analysis of whether mandamus was appropriate under the circumstances. There was no such analysis. The combined effect of *Singleton* and *Cheney* present a very high hurdle. The panel did not address that combined

effect. The panel did not consider the broad ramifications of *sua sponte* issuance of the writ on unbriefed and unrequested grounds. *See Beasley v. Shinseki*, 709 F.3d 1154, 1159 (Fed. Cir. 2013)(discussing the "ordinary appeal process mandated by Congress," and the impact that permitting the one mandamus request at hand would have on "the system as a whole ….").  Mandamus regarding the sequence of deciding motions was not appropriate under the circumstances. The circumstances show that the Petitioners themselves requested the sequence.

## V. Mandamus would not have been appropriate even as to the requested relief of Step One – severance of claims to non-Nintendo products.

Having taken up sequence *sua sponte*, the panel unnecessarily and improperly addressed severance of the retailer parties ("Step Two"), transfer of Nintendo ("Step Three").  The panel went so far as to discuss  a question concerning  the scope of UltimatePointer's  original and amended complaints that had not been  ruled on by the district court. Mandamus Order, 5, A 1-7. Concerning the relief requested in the Petition – mandamus as to severance of claims ("Step One") – the panel held that joinder of claims was permissible on the facts of the case, but that the district court should have gone further to conduct a "fairness and efficiency" analysis. Mandamus Order, 14.  As set forth in the Response, however, there were other adequate remedies available to the Petitioners.  The district court has a history of pre-trial assessment under FED. R.

Civ. P. 42 to determine which claims, if any, should be tried together. Mandamus regarding severance of claims is not appropriate.

## CONCLUSION

*Sua sponte* issuance of the extraordinary writ of mandamus on an unbriefed issue of first impression is an inappropriate exercise of appellate jurisdiction. It is contrary to *Singleton*. It is contrary to *Cheney*. By taking up the sequence *sua sponte*, the panel discussed matters unrelated severance of claims ("Step One"). UltimatePointer respectfully requests that the Federal Circuit, grant *en banc* consideration, reverse the panel decision in its entirety, and vacate the same. By exceeding jurisprudential bounds, the panel has prejudiced UltimatePointer and improperly found extraordinary error by the district court on a question the district court was never asked to decide.

Respectfully submitted,

/s/ Charles J. Rogers
Charles J. Rogers
Conley Rose, P.C.
1001 McKinney Street, Suite 1800
Houston, TX 77002-6421
Telephone: (713) 238-8049
Facsimile: (713) 238-8008
E-mail: CRogers@conleyrose.com

Principal Attorney for
Respondent UltimatePointer, L.L.C.

# ADDENDUM

NOTE:  This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE NINTENDO CO., LTD., NINTENDO OF AMERICA INC., BEST BUY PURCHASING, LLC, BEST BUY STORES, L.P., BESTBUY.COM, LLC, BJ'S WHOLESALE CLUB, INC., COMPUSA.COM INC., GAMESTOP CORP., KMART CORPORATION, PC CONNECTION, INC., QVC, INC., RADIOSHACK CORPORATION, SEARS, ROEBUCK AND CO., TARGET CORPORATION, TIGERDIRECT, INC., TOYS "R" US-DELAWARE, INC., AND TRANS WORLD ENTERTAINMENT CORPORATION,**
*Petitioners.*

---

Miscellaneous Docket No. 151

---

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 11-CV-0496, Judge Leonard Davis.

---

## ON PETITION

---

Before LOURIE, O'MALLEY, and REYNA, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

## O R D E R

Petitioners Nintendo Co. Ltd., its American subsidiary, and a group of retailers that sell Nintendo's Wii

gaming systems are currently engaged in a complicated patent infringement action in the United States District Court for the Eastern District of Texas.  They seek a writ of mandamus directing the district court to: (1) sever infringement claims involving hundreds of Wii games and accessories produced by approximately 35 companies other than Nintendo from those claims against Nintendo; and (2) consider their motion to sever and stay the claims against the retailers from those against Nintendo and to transfer the Nintendo claims to the United States District Court for the Western District of Washington.  We grant the petition.

## I. Background

In 2005, respondent UltimatePointer, L.L.C., filed a patent application entitled, "Easily deployable interactive direct-pointing system and presentation control system and calibration method therefor," which resulted in two issued patents at the center of this case.  The first, U.S. Patent No. 7,746,321 (the '321 patent), was issued to respondent in 2010; and the second, U.S. Patent No. 8,049,729 (the '729 patent), was issued to respondent in November 2011—after this litigation had already commenced.

UltimatePointer filed two complaints in the United States District Court for the Eastern District of Texas.  The first complaint alleged that Nintendo Co., Ltd., Nintendo of America, Inc., and several retailers that sell Nintendo products, infringe the '321 patent by "making, using, selling, offering to sell, and/or importing Nintendo Wii systems, games, controllers, sensors and related accessories."  The second complaint asserted the same allegations regarding the later issued '729 patent.

Petitioners moved to sever and stay the claims against the retailers, and transfer the case against Nintendo to the United States District Court for the Western District of Washington, arguing that the retailers were

merely peripheral defendants and the majority of witnesses and evidence would be located at Nintendo's headquarters in Seattle, Washington.  Citing to its right to do so under Rule 18 of the Federal Rules of Civil Procedure, UltimatePointer asserted in its infringement contentions, and ultimately amended its complaints to include, infringement claims against the retailers based on their sale and offer for sale of hundreds of Wii games and accessories created and manufactured by third party manufacturers.  Petitioners filed a second motion to sever, this time seeking to sever all non-Nintendo product claims.

The district court denied all of the motions.  The court first concluded that the defendants could permissibly be joined in this case under Rule 20 of the Federal Rules of Civil Procedure and 35 U.S.C. § 299 because UltimatePointer had asserted "at least one common claim of patent infringement against all defendants for the same accused product."  Because, in the court's view, the joinder of the retailers and Nintendo was permitted by Rule 20, the district court then held that "Rule 18 [of the Federal Rules of Civil Procedure] explicitly allows for the joinder of as many claims as Plaintiff has against an opposing party."  Based on these conclusions, the district court rejected the motion to sever the non-Nintendo claims against the retailers and found the motion to sever the retailers and transfer the case against Nintendo moot.  It made these judgments without considering whether the claims added under Rule 18 should be severed, whether those claims should impact the court's assessment of the original motion to sever, or whether the transferee venue was clearly more convenient for trial of the claims against Nintendo.

## II.  STANDARD OF REVIEW ON MANDAMUS

The traditional use of mandamus has been "to confine an inferior court to a lawful exercise of its prescribed

jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943).   Even under this formulation, however, courts have not confined themselves to any narrow or technical definition of the term "jurisdiction." *See Mallard v. U. S. Dist. Ct.*, 490 U.S. 296, 309 (1989). Mandamus may thus be appropriate in certain cases to further supervisory or instructional goals where issues are unsettled and important.   *See In re BP Lubricants, Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011).

In order to ensure that writs of mandamus are restricted to extraordinary situations, the Supreme Court has set forth two conditions that must be satisfied: first, petitioners must show a "clear and indisputable" right to the writ and, second, petitioners must have "no other adequate means to attain the relief . . . desire[d]." *Kerr v. U. S. Dist. Ct.*, 426 U.S. 394, 403 (1976).   Once these two prerequisites are met, the court's decision whether to issue the writ is largely one of discretion.   *Id.*

## III. DISCUSSION

Petitioners argue that the district court erred when it: (1) denied as moot petitioners' Rule 21 motion to sever the retailers for misjoinder; (2) denied petitioners' request to sever the non-Nintendo product claims, added under Rule 18; and (3) failed to examine whether the litigation against Nintendo should be transferred to the Western District of Washington.

Resolution of this petition involves the interplay between Federal Rules of Civil Procedure 18, 20, and 21, the recently adopted joinder provision of the America Invents Act, 35 U.S.C. § 299, and 28 U.S.C. § 1404(a), the statutory provision applicable to transfer of venue.   Because we find that the district court erred in failing to first consider whether the retailer defendants should have been severed and whether transfer was appropriate prior to addressing whether the non-Nintendo claims could be joined under

Rule 18, we grant the petition and remand for further proceedings.

## A.

We begin by taking a closer look at the procedural posture giving rise to the district court's decision denying Petitioners' motion to sever for misjoinder and the district court's application of Rule 18.

As noted, petitioners first moved to sever the claims against the retailer defendants and transfer the case against Nintendo to the Western District of Washington ("First Motion to Sever").  In that motion, petitioners argued that: (1) UltimatePointer's claims identified only Nintendo products; and (2) adjudication of the claims against Nintendo would dispose of the claims against the retailers.  In response, UltimatePointer argued that its contentions against the retailers were not limited to Nintendo products.  UltimatePointer subsequently served its Preliminary Infringement Contentions ("PICs") accusing Nintendo products as well as non-Nintendo products made by different non-party manufacturers of infringement of the '321 and '729 patents.

Petitioners then filed a motion to sever the non-Nintendo claims against retailer defendants.  ("Second Motion to Sever").  Specifically, petitioners asked the district court to sever all allegations involving non-Nintendo products and either dismiss or stay the case against the retailer defendants involving those products.

On September 21, 2012, the district court denied petitioners' First Motion to Sever as moot in light of the Second Motion to Sever.  UltimatePointer then amended its complaint to add the non-Nintendo infringement claims against the retailers which, to that point, had only appeared in its PICs and its opposition to petitioner's First Motion to Sever.  During this same timeframe,

petitioners sought reconsideration of the court's September 21, 2012 decision, arguing that their First Motion to Sever was not moot because, when the case was initially filed, Nintendo was the single real party in interest, and it was only later that UltimatePointer expanded the scope of the litigation. Petitioners further argued that, by denying their First Motion to Sever as moot, the district court denied without discussion their request to sever the retailer defendants from Nintendo entirely and to transfer the case against Nintendo to the Western District of Washington.

The district court subsequently denied petitioners' Second Motion to Sever. The court concluded that, because the defendants were properly joined in the original complaint, Rule 18 allowed UltimatePointer to join as many claims as it might have against the retailers, including claims totally unrelated to Nintendo or its products. On this premise, the court denied petitioners' request for severance of those new claims. The court also denied the request for reconsideration, doing so, again, without discussion of the merits of petitioners' First Motion to Sever and Transfer.

On appeal, petitioners argue that UltimatePointer should not have been allowed to use Rule 18 as a springboard to add claims involving products by other manufacturers and to use the mere presence of those claims to defeat Nintendo's request that the retailers be severed to facilitate transfer. We agree.

Rule 18—entitled "Joinder of Claims"—provides that "[a] party asserting a claim, counterclaim, or third party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Where, as here, a case involves multiple defendants, a plaintiff may assert a claim under Rule 18 only if the defendants are properly joined in the first instance. *See Intercon Research Assocs. Ltd. v. Dresser*

*Indus., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982) ("[J]oinder of claims under Rule 18 becomes relevant only after the requirements of Rule 20 relating to joinder of parties has been met with respect to the party against whom the claim is sought to be asserted"); *see also generally Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."). Consideration of which *claims* can be asserted under Rule 18 only comes into play once the court has decided which *parties* are properly joined before it, and whether they should remain so joined.

While Rule 18 liberally permits joinder of claims, moreover, it, in fact, "deals only with [the] pleadings." *See* Advisory Committee's 1966 Amendment Notes (hereinafter Advisory Committee's 1966 Note). As the Advisory Committee's 1966 Note explains, "a claim properly joined as a matter of pleading need not be proceeded with together with the other claims if fairness or convenience justifies separate treatment." *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (noting that the joinder of claims, parties, and remedies must be "consistent with fairness to the parties"). Accordingly, when determining whether claims permissibly joined should be severed for purposes of seeking transfer and a stay of proceedings, a court should consider whether it would be convenient or fair to keep the matters together. If inconvenience or unfairness is alleged to arise from the claims proceeding together, courts must exercise their discretion to decide whether the claims should be severed under Rule 21.

Rule 21 provides that, "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." The decision to deny a motion to sever is committed to the discretion of the district court. *In re EMC Corp.*, 677 F.3d 1351, 1355 (Fed. Cir. 2012). This discretion is not unbridled, however; it "must

be exercised within the boundaries set by relevant stat-
utes and precedent," and a "district court abuses its
discretion if it relies on an erroneous conclusion of law."
*Id.* This court generally applies Federal Circuit law,
rather than regional circuit law, to the issue of severance.
*Id.* at 1354. We may, however, look to the decisions of our
sister circuits for guidance. *See id.*

Because Rule 21 does not provide a standard for dis-
trict courts to apply in deciding whether parties or claims
are misjoined, "[w]hen considering a motion to sever
under Rule 21, 'courts have looked to Rule 20 for guid-
ance.'" *EMC*, 677 F.3d at 1356 (quoting *Acevedo v. All-
sup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir.
2010)). Under Rule 20, which is entitled "Permissive
Joinder of Parties," defendants may be joined in a single
action only if: (1) the claims against them are "with re-
spect to or arising out of the same transaction, occurrence,
or series of transactions or occurrences;" and (2) a "ques-
tion of law or fact common to all defendants will arise in
the action." Fed. R. Civ. P. 20(a)(2).

As the district court noted, effective September 16,
2011, joinder in patent cases is governed by the America
Invents Act ("AIA").[1] Under the AIA, "accused infringers
may not be joined in one action as defendants . . . based
solely on allegations that they each have infringed the
patent or patents in suit." 35 U.S.C. § 299(b). Instead,
defendants in patent infringement cases may be joined
only if:

_____

[1]     UltimatePointer's first complaint was filed before
September 16, 2011 and later amended; the second com-
plaint was filed after September 16, 2011. For our pur-
poses, however, there is no difference in the analysis as to
whether Rule 20 or section 299 governs.

(1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and

(2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a). The AIA's joinder provision is more stringent than Rule 20, and adds a requirement that the transaction or occurrence must relate to making, using, or selling of the same accused product or process.

Given the permissive nature of the applicable rules, we have characterized these requirements as necessary, but not sufficient, conditions for joinder. *See EMC*, 677 F.3d at 1355 ("Rule 20's two requirements—that the claims share question[s] of law or fact common to all defendants, and aris[e] out of the same transaction [or] occurrence—help ensure that the scope of the action remains consistent with fairness to the parties." (citations and quotations omitted)). Consistent with that description, we have explained that, "even if a plaintiff's claims arise out of the same transaction and there are questions of law and fact common to all defendants," joinder may still be refused "in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Id.* at 1360 (citing *Acevedo*, 600 F.3d at 521). In reaching the same conclusion, our sister circuits have likewise said that "a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (citation omitted); *see also Intercon*, 696 F.2d at 57-58.

The district court did not assess the propriety of severance or transfer with respect to Nintendo.  Nothing in the court's order even suggests that convenience and fairness were considered in reaching its conclusions. Instead, the court simply found that joinder is appropriate because there is at least one common claim of patent infringement against all defendants for the same accused product. Essentially, the court concluded that, because the retailer defendants *can be* joined under Rule 20 and the AIA, they will not be severed.  If that were the appropriate test, there could never be misjoinder, and the applicable rules would be rendered meaningless.

The district court then found that, because the defendants can be joined, Rule 18 permits joinder of claims wholly unrelated to the claims in the original complaint. In reaching this decision, the district court failed to conduct any inquiry into whether the claims *should* remain joined for post-pleading purposes.  That was error. "Failure to exercise discretion is not exercising discretion; it is making a legal mistake."  *Munoz-Pacheco v. Holder*, 673 F.3d 741, 745 (7th Cir. 2012); *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) ("A district court's failure to exercise discretion constitutes an abuse of discretion."); *Faircloth v. Lamb-Grays Harbor Co., Inc.*, 467 F.2d 685, 697 (5th Cir. 1972) ("'[F]ailure to exercise discretion, or an abuse of it, may be corrected.'" (citations omitted)).  And, in these circumstances, the failure to conduct a thorough assessment of whether these claims and defendants should *remain* joined is not a mere technicality.  In fact, this court has specifically recognized that the joinder of a large number of claims in cases such as this could deprive defendants of "a meaningful opportunity to present individualized defenses on issues such as infringement, willfulness, and damages because each defendant will have limited opportunities to present its own defense to the jury."  *EMC*, 677 F.3d at 1355.  That concern is perhaps even more compelling here given that the vast

majority of the defendants are retailers who lack technical information regarding the accused products and have no control over the technology employed.

After careful consideration of the applicable rules and statutory provisions, we conclude that any determination as to whether the *claims* involving the non-Nintendo products should remain in this case was premature. Before the court addressed whether UltimatePointer could add claims against the retailer defendants under Rule 18, it first needed to assess whether the case against Nintendo—as it was originally filed—should be severed and transferred. The subsequent addition of new non-Nintendo product claims against the retailer defendants does not factor into this inquiry.

Although Rule 18 permits the joinder of claims, it cannot change the character of the relationship between the original parties for purposes of assessing severance and transfer. And, the district court cannot simply assume that the retailer defendants are properly joined and move directly to a Rule 18 inquiry. If, for example, the court finds that the claims against Nintendo products should be severed and transferred, then there is no reason to look to Rule 18. In other words, resolution of the motion to sever and transfer the case against Nintendo should not be driven by claims that were later added under Rule 18.[2]

We find that the district court first should have addressed Petitioners' First Motion to Sever and transfer the case against Nintendo to the Western District of

---

[2]   Petitioners contend that, if we allow Rule 18 to operate as UltimatePointer believes it can, it would frustrate the policy behind Congress's adoption of section 299 of the AIA. We do not disagree, but we do not rely solely on policy reasons to reach our conclusions.

Washington prior to assessing whether additional claims against the retailer defendants could be asserted under Rule 18. And, the court should have exercised its discretion to determine whether fairness and convenience concerns weigh in favor of severance and transfer, without regard to what Rule 18 might allow should severance and transfer not occur.

A district court may transfer a civil action "[f]or the convenience of parties and witnesses [and] in the interests of justice" to any other district "where it might have been brought." 28 U.S.C. § 1404(a). Rule 21 provides courts with considerable latitude to order severance solely for purposes of facilitating transfer. *See, e.g., Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987) ("If, however, suit might have been brought against one or more defendants in the court to which transfer is sought, the claims against those defendants may be severed and transferred while the claims against the remaining defendants, for whom transfer would not be proper, are retained in the original court."); *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) ("We believe that where the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against the other defendants[.]").

As *Wyndham* suggests, if the law were otherwise, the inclusion of some retailer defendants only peripherally involved in the alleged wrongdoing could prevent a court from following binding precedent that requires transfer to a more convenient venue for trial. 398 F.2d at 619*; see also In re Radmax Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) ("A motion to transfer venue pursuant to § 1404(a) should be granted if 'the movant demonstrates that the transferee venue is clearly more convenient . . . .'"); *In re Nintendo*

*Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.").

Because it based its rulings solely on whether joinder was permissible under Rule 20 and 18, the district court never analyzed whether this litigation has any meaningful connection to the Eastern District of Texas. In fact, the court never even mentions § 1404(a) in its order. This approach to the motions before the court is contrary to the principle that a trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case. Indeed, this court has specifically recognized "the importance of addressing motions to transfer at the outset of litigation." *In re EMC Corp.*, 501 Fed. Appx. 973, 975-76 (Fed. Cir. 2013); *see also In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003) ("[The] motion [to transfer] should have taken a top priority in the handling of this case by the . . . District Court."); *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970) ("Judicial economy requires that [a] district court should not burden itself with the merits of the action until it is decided [whether] a transfer should be effected" and thus "it is not proper to postpone consideration of the application for transfer under § 1404(a) until discovery on the merits is completed.").

There are also practical reasons why a different order of proceedings should have been followed here. In all likelihood, the retailers will have very little to offer in the way of evidence regarding the substantive aspects of the infringement case. They can add little to nothing regarding how the technology underlying the accused products works. Indeed, we and other courts have all but said as much in the analogous context of the "customer suit exception," which endorses staying a case against a cus-

14                                    IN RE NINTENDO CO., LTD.

tomer or retailer in light of the notion that the manufac-
turer is the "true defendant." *Katz v. Lear Siegler, Inc.*,
909 F.2d 1459, 1464 (Fed. Cir. 1990); *Codex Corp. v. Milgo
Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977).

Meanwhile, in the absence of considering the conven-
ience factors, Nintendo contends that many of the wit-
nesses in this case will be forced to undergo significant
travel costs and time away from work and home to testify
in the Eastern District of Texas. Thus, to the extent that
severing the parties, staying the cases against the retail-
ers, and transferring the case against Nintendo could
"prevent the waste 'of time, energy and money'" and
"'protect litigants, witnesses and the public against un-
necessary inconvenience and expense[,]'" we think peti-
tioners' First Motion to Sever and transfer must be given
serious consideration. *See Van Dusen v. Barrack*, 376
U.S. 612, 616 (1964) (citation omitted). For these reasons,
we conclude that the district court erred by not beginning
its analysis by addressing whether the parties should
have been severed for purposes of facilitating transfer of
venue; that motion was certainly not "mooted" as the trial
court concluded.

If, moreover, after further proceedings, the district
court finds that the parties should remain joined and the
action against Nintendo should proceed in the Eastern
District of Texas, the court must additionally consider
whether fairness and convenience nonetheless warrant
severance of the non-Nintendo product claims. The fact
that Rule 18 *permits* the joinder of certain claims does not
answer the question of how those claims should be adjudi-
cated. Again, fairness and efficiency must guide that
inquiry.

## B.

Because we find that the district court erred, we agree
with petitioners that the writ should issue here.

In *Hudson v. Parker*, 156 U.S. 277 (1895), the Supreme Court granted a writ in circumstances roughly analogous to these. In *Hudson*, the petitioner sought a writ of mandamus to compel the district court to approve his request to be released on bond pending the outcome of the appeal. *Id.* at 277-78. The issue before the Supreme Court was whether the writ could be used to compel the trial judge to take action. Agreeing with the petitioner, the Supreme Court held that the writ of mandamus may issue where the district court judge "declines to exercise his discretion, or to act at all, when it is his duty to do so . . ." *Id.* at 288.

As in *Hudson*, here the district court had an obligation to exercise its discretion to decide whether the action against the retailer defendants should be severed from the claims against Nintendo for purposes of fairness and convenience and, if not, whether any additional claims asserted under Rule 18 should themselves be severed from the Nintendo product claims. By improperly refusing to exercise that discretion, the district court effectively deprived petitioners of any meaningful review of the questions its motions posed. This case is thus similar to *EMC*, where we granted mandamus directing the lower court to apply the proper standard to a motion to sever and transfer. 677 F.3d at 1360. Like the defendants in *EMC*, petitioners would similarly "be unable to demonstrate 'that it would have won the case had it been tried in a convenient [venue].'" *Id.* at 1355 (citation omitted).

We are not unsympathetic to the fact that it is sometimes difficult to sort out the interaction between the various procedural rules which govern joinder and venue. We also recognize that the parties did not make the district court's task easy (purporting to assert new "claims" in PICs, rather than in a duly filed complaint, moving to "sever" those assertions before there was really anything to sever, and filing confusing briefs and responses thereto). Those realities do not excuse the district

16                                    IN RE NINTENDO CO., LTD.

court's failure to exercise its discretion to consider the severance and transfer motions before it, however.

Accordingly,

IT IS ORDERED THAT:

The petition is granted to the extent that the district court's March 27, 2013 order is vacated and the district court is directed to conduct further proceedings as provided herein.

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 16th day of October, 2013, I caused this Petition for Rehearing *En Banc* to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Mark C. Nelson, Esq.
Steven M. Geiszler, Esq.
Richard Salgado, Esq.
Dentons US LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas  75201
(214) 259-0900
mark.nelson@dentons.com
steven.geiszler@dentons.com
richard.salgado@dentons.com

Arthur S. Beeman, Esq.
Dentons US LLP
525 Market Street, 26th Floor
San Francisco, California  94105
(415) 882-5000
arthur.beeman@dentons.com

*Counsel for Petitioners*

/s/ Charles J. Rogers
Charles J. Rogers
Conley Rose, P.C.
1001 McKinney Street, Suite 1800
Houston, TX 77002-6421
Telephone: (713) 238-8049
Facsimile: (713) 238-8008
E-mail: CRogers@conleyrose.com

Principal Attorney for
Respondent UltimatePointer, L.L.C.